# EXHIBITS TO STIPULATION OF SETTLEMENT

Exhibit A: Guidelines for Determining, Scoring and Awarding Relief in Claim Review

Exhibit B: Class Notice Package

Cover Letter
Notice of Class Action, Proposed Settlement and Fairness Hearing
Release and Waiver (Appendix A to Notice)
Benefit Voucher
Statement of Eligibility
Designation Form
Election Form
Fact Sheet for Qualified Plans
Plan Participant Information Sheet
Change of Address Form
Foreign Language Statement

Exhibit C: Publication Notice

Exhibit D: Proposed Hearing Orders

Exhibit E: Confidentiality Agreement

Exhibit F: Proposed Final Orders and Judgments

Exhibit G: Statement to Accompany Post-Execution Date Responses to Customer Complaints

Exhibit H: Post-Settlement Claim Form Mailing

Exhibit I: Post-Mailing Reminder

Exhibit J: Claim Review Administrative Forms and Letters

350825.1



SCANNED
MAR 0 9 2006
U.S. DISTRICT COURT MPLS

**[PANEL ONE]**

**BENEFIT VOUCHER**
**AMERICAN EXPRESS/IDS LIFE CLASS ACTION SETTLEMENT**
**Voucher[#xxxxxxxxxx]**

*This document is evidence of a valuable death benefit.*
*Please do not discard. Keep this document with your important papers.*
*Should you misplace this document, you may call 1-800-xxx-xxxx in order to obtain the death benefit described below.*

**Owner of Record/Participant:** [Name] **Default Payee:** [Name]

**Default Measuring Life:** [Name]
**Estimated Accidental Death Benefit Amount:** [$ ]
**Accidental Death Benefit Coverage Period:** [ ] years
**Policy Face Amount or Annuity Account Value:** [$ ]
**Status of Policy or Annuity as of 8/31/00:** [Terminated or In Force]
**Policy or Annuity Number.:** [xxxxxxxxxx]

For purposes of the proposed settlement, if your policy is providing coverage under a reduced paid-up or extended term nonforfeiture option or if your annuity has been settled (i.e., annuitized), its status is shown as terminated.

*As part of a proposed class action settlement, the Defendants will provide a free Accidental Death Benefit to all Class Members receiving General Relief.*

The Accidental Death Benefit will take effect only if the proposed settlement is implemented and the above Owner or participant receives General Relief. The settlement cannot be implemented until it has been approved by the Courts and any appeals are resolved in favor of the settlement. You may call the toll free number shown on the back of this voucher after that date for information on the actual effective date of this coverage.

**[PANEL TWO]**

*Payment of the accidental death benefit described in this voucher is subject to the final settlement of the lawsuits captioned* Benacquisto v. American Express Financial Corp., State Court Docket No. 96-18477, Federal Court Docket No. 00-1980, *and the provisions found in the Stipulation of Settlement, including all of its exhibits.*

**Accidental Death Benefit (ADB)**. The ADB provides a benefit to the Payee, payable upon Defendants' timely receipt of due proof of the Accidental Death of the Measuring Life during the ADB coverage period. The ADB coverage is as described in the Stipulation of Settlement and Class Notice. The term "Accidental Death" is defined below. The period of coverage is scheduled to begin on the date the settlement is implemented and lasts for the period of time shown on the front of this Benefit Voucher. The estimated ADB amount is shown above, and the final amount, which will be no less, will be determined as described in the Stipulation of Settlement and Class Notice.

**General Provisions and Definitions**. The following general provisions and definitions apply to this voucher:

Accidental Death. Accidental Death means death occurring as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means within 90 days of the accident. The Accidental Death Benefit will not be paid for death resulting from suicide, while sane or insane; disease or infections, except for an infection resulting from an accidental cut or wound; physical or mental illnesses or the diagnosis or treatment of such illnesses; declared or undeclared war, or an act of war; any drug taken or absorbed, unless prescribed by a physician; committing or attempting to commit an assault or felony; or injuries received while operating, learning to operate or acting as a pilot or crew member of an aircraft.

Estimated Accidental Death Benefit. The amount of the accidental death benefit shown on the front of this voucher is an estimate, based upon the provisions in the Stipulation of Settlement and the Class Notice. The actual amount, which will be no less than the estimated amount, cannot be known before all of the settlement procedures are completed, which will not occur before the Courts approve the settlement, any appeals are exhausted, and the Claim Review Process has been administered. You may call the toll free number shown below after that date for information on the actual date on which the benefits will first be payable.

Measuring Life. The Measuring Life under the accidental death benefit described in this voucher will be the Default Measuring Life shown on the front of this voucher. However, if the Default Measuring Life is deceased, then the accompanying Designation Form must be used to identify an Alternate Measuring Life, which can be your spouse, parent or child (including a stepchild residing with you) or any other person in whom you have an insurable interest.

Payee. The Payee under the accidental death benefit described in this voucher will be the Default Payee shown on the front of this voucher, unless the Designation Form is used to identify an Alternate Payee applicable to the accidental death benefit provided in the settlement.

Reliance on Statements: We will rely on all statements in the application for coverage for any Alternate Measuring Life as being complete and true to the best of that person's knowledge and belief.

Filing Claims. Upon the Accidental Death of the Measuring Life while the accidental death benefit described in this voucher is in effect, you should submit this voucher, together with due proof of the Accidental Death of the Measuring Life, to:

IDS Life Settlement/ADB Claims
P.O. Box _________
Minneapolis, Minnesota __ _____

Claim Deadline. Claims for the accidental death benefit must be submitted no later than the fourth anniversary of the date the settlement is implemented.

**Any Questions?** **Call 1-xxx-xxx-xxxx (or TDD/TYY number 1-xxx-xxx-xxxx)**

350898.1

**IDS LIFE CLASS ACTION**
**INFORMATION CENTER**

**STATEMENT OF ELIGIBILITY**

**Policy/Annuity Ownership Information:**

Owner of Record/Participant:
Name
Street Address
Co-Owners:

Policy or Annuity No.: [xxxxx]
Product Type: [Insurance or Annuity]

Policy/Annuity Status as of August 31, 2000: [In Force] or [Terminated]
For purposes of the proposed settlement, if your policy is providing coverage under a reduced paid-up or extended term nonforfeiture option or if your annuity has been settled (i.e., annuitized), its status is shown as terminated.

**If the address or other information printed here is incorrect, please send any corrections immediately to: IDS Life Class Action Information Center, P.O. Box 1602, Faribault, Minnesota 55021-1602.**

According to our records, you are a member of a class on whose behalf lawsuits have been brought against IDS Life Insurance Company, IDS Life Insurance Company of New York, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company, American Express Financial Corporation and American Express Financial Advisors (collectively referred to as "Defendants"). The lawsuits, and the proposed settlement of the lawsuits, are described in detail in the accompanying Class Notice. **Please read the entire Notice carefully.**

This statement describes the relief that you will be eligible to receive if the proposed settlement is approved by the Courts and you remain a member of the class. Each of the forms of relief offered under the settlement is described in detail in the accompanying Notice at pages ___-___. There will be only one award of relief per Policy or Annuity. Where more than one person or entity has or had an ownership interest in a Policy or Annuity, all owners are presumed to be acting jointly. If one such person or entity requests that the Policy or Annuity be excluded from the Class, then all persons with an ownership interest in that particular Policy or Annuity shall be bound by that decision.

| **Relief For Which You Will Be Eligible<br>If the Proposed Settlement Is Approved** |
|---|
| **<u>GENERAL RELIEF</u>**<br>**Accidental Death Benefit**<br>**Default Payee: [Name]***<br>**Default Measuring Life: [Name]****<br><br>**[OR**<br>**<u>INTERNAL REPLACEMENT RELIEF]</u>**<br><br>**OR**<br>**<u>CLAIM EVALUATION</u>** |

* You may name any other individual as the Payee under the accidental death benefit listed on this statement by using the enclosed Designation Form.

** If the person identified above as the Default Measuring Life is deceased, you **must** designate another person as the Measuring Life for purposes of the accidental death benefit identified on this statement. To make this change, please use the enclosed Designation Form **before the settlement is implemented**, or, if

that is impossible due to the date of death of the Measuring Life, within 30 days of the date of death of the Measuring Life. You may change the Default Payee at any time before the death of the Measuring Life. You **should** change the Payee if he or she dies before the date the settlement is implemented or while the death benefit coverage is in effect.

[FRONT]

DESIGNATION FORM
IDS LIFE CLASS ACTION SETTLEMENT

**Owner of Record/Participant: [Name], [Address]**
**Policy or Annuity Number: [xxxxxxxx]**
**Default Payee: [Name]**
**Default Measuring Life: [Name]**

Use the Designation Form below to designate an Alternate Payee. Unless you state otherwise, the Payee will be the Default Payee shown above. Use the Designation Form on the back of this page to designate an Alternate Measuring Life if the person shown above as the Default Measuring Life is deceased as of the date the settlement is implemented. Otherwise, the Measuring Life will be the Default Measuring Life shown above.

**YOU DO NOT NEED TO RETURN THIS DESIGNATION FORM TO TAKE ADVANTAGE OF THE ACCIDENTAL DEATH BENEFITS PROVIDED IN THE SETTLEMENT, except as follows:** If the Default Measuring Life is deceased as of the date the settlement is implemented, then you ARE REQUIRED to change the Measuring Life. To do so, complete the Alternate Measuring Life Designation Form on the next page and mail it to the address provided before the date the settlement is implemented or, if that is impossible because of the date of the Measuring Life's death, within 30 days of the death of the Measuring Life. You may not change the Measuring Life after those dates. You SHOULD change the Payee if the Payee dies before the date the settlement is implemented or during the period your death benefits are in effect. You may change the Payee at any time before payment of a claim for the accidental death benefit.

**If you are not the Owner of Record/Participant, but are acting on behalf of the Owner of Record/Participant, you must provide proof of your authority to act on behalf of the Owner of Record/ Participant. If you are the personal representative of a deceased Owner of Record/Participant, you must provide (1) proof of the death of the Owner of Record/Participant (*i.e.*, a death certificate) and (2) proof of your authority to act on behalf of the deceased Owner of Record/Participant.**

**COMPLETE THIS FORM TO DESIGNATE AN ALTERNATE PAYEE**

I designate and understand that the Default Payee will be changed to the person named below as Alternate Payee.

**Alternate Payee:**

Name: ______________________________
Social Security # ___-__-___
Street Address: ______________________________________________
City: _______________State_______________Zip___________________

**Signature of Owner of Record/Participant or person signing on behalf of Owner of Record/Participant:**

Name Signature: ____________________________ Date: ___________
Street Address:_________________________________________________
City: _______________State_______________Zip___________________

**All completed and signed Designation Forms should be mailed to:**

**IDS Life Class Action Information Center**
**P.O. Box [ ]**
**Faribault, Minnesota 55021-1564**
**Re: Designation Form**

**[BACK]**

**COMPLETE THIS FORM TO DESIGNATE AN ALTERNATE MEASURING LIFE**

The Default Measuring Life is deceased. I am designating the below named Alternate Measuring Life. The person I am designating is currently living and is either my spouse, parent or child (including a stepchild residing with me) or is a person in whom I have an insurable interest.

Name: ______________________________ Social Security #: ___ - __ - ____ Date of Birth: ________

Relationship to you: ________________________________________________________________________

**Signature of Owner of Record/Participant or person signing on behalf of Owner of Record/Participant:**

**Name** Signature: _________________________________ Date: _____________
Street Address: ________________________________________________________
City: __________________ State_________________ Zip______________________

**All completed and signed Designation Forms (including documents proving the death of the Measuring Life) should be mailed before the settlement is implemented, or if that is not possible because of the date of the Measuring Life's death, then within 30 days of the death of the Measuring Life, to:**

**IDS Life Class Action Information Center**
**P.O. Box [ ]**
**Faribault, Minnesota 55021-______**
**Re: Designation Form**

350901.1

**IDS LIFE CLASS ACTION INFORMATION CENTER**

**ELECTION FORM**
**[Eligible for Internal Replacement Remedy]**

**Policy/Annuity Ownership Information:** Owner of Record/Participant:
Name
Street Address

Policy or Annuity Number: [xxxxx]

**RETURN THIS FORM ONLY IF, INSTEAD OF GENERAL RELIEF, YOU WANT TO ELECT EITHER (1) INTERNAL REPLACEMENT RELIEF, OR (2) THE CLAIM REVIEW PROCESS. YOU CANNOT CHOOSE BOTH. IF YOU WANT THE GENERAL RELIEF, YOU SHOULD NOT RETURN THIS ELECTION FORM.**

☐ **I/we are eligible for and want to receive the Internal Replacement Relief with respect to the Policy or Annuity indicated by the number printed above. (If the number printed above is *not* the number for which you want to submit a claim, please print the Policy or Annuity number after this paragraph.) I/we realize that this election will make me/us ineligible for the General Relief and the Claim Review Process. I/we also realize that by merely submitting this Election Form, I/we do not ensure that I/we are eligible for Internal Replacement Relief and that I/we will be provided with notice if I/we are ineligible for the Internal Replacement Relief, and that I/we will be given an opportunity to receive either the General Relief or the Claim Review Process.**

**- OR -**

☐ **I/we want to participate in the Claim Review Process to pursue a claim that I was/we were misled, or that wrongdoing with economic consequences otherwise occurred, with respect to the marketing, sale, administration or servicing of the Policy or Annuity indicated by the number printed above. (If the number printed above is *not* the number for which you want to submit a claim, please print the Policy or Annuity number after this paragraph). I/we understand that the claim, once submitted, will be evaluated by a Claim Evaluator chosen by counsel for plaintiffs and the class and that I/we may or may not receive an award through the Claim Review Process. The relief awarded in the Claim Review Process can range from none at all to relief designed to redress any loss that may have resulted from the alleged wrongdoing. I/we realize that this election will make me/us ineligible for the General Relief and the Internal Replacement Relief.**

______________________________
Signature of Owner

______________________________
Daytime Telephone Number

*You must return this Election Form if you want to (1) elect the Internal Replacement Relief (if you are eligible) or (2) elect to submit a claim to the Claim Review Process. If you elect to submit a claim to the Claim Review Process, then once the proposed settlement is final, you will receive a separate Claim Form with instructions on how to present your claim. DO NOT SUBMIT YOUR SPECIFIC CLAIM AT THIS TIME.

**If you want to elect Internal Replacement Relief or submit a claim to the Claim Review Process, you must complete this Election Form and mail it so that it is postmarked by _______, 200_, to this address:**

**IDS Life Class Action Information Center**
**P.O. Box 1595**
**Faribault, Minnesota 55021-1595**
**Re: Election Form**

**QUESTIONS? CALL 1-xxx-xxx-xxxx**
**(or, if you use TDD/TYY, 1-800-xxx-xxxx)**

**IDS LIFE CLASS ACTION INFORMATION CENTER**

**ELECTION FORM**
**[Not Eligible for Internal Replacement Remedy]**

**Policy/Annuity Ownership Information:** Owner of Record/Participant:
Name
Street Address

Policy or Annuity Number: [xxxxx]

**RETURN THIS FORM ONLY IF, INSTEAD OF GENERAL RELIEF, YOU WANT TO ELECT THE CLAIM REVIEW PROCESS. IF YOU WANT THE GENERAL RELIEF, YOU SHOULD NOT RETURN THIS ELECTION FORM.**

**I/we want to participate in the Claim Review Process to pursue a claim that I was/we were misled, or that wrongdoing with economic consequences otherwise occurred, with respect to the marketing, sale, administration or servicing of the Policy or Annuity indicated by the number printed above. (If the number printed above is *not* the number for which you want to submit a claim, please print the Policy or Annuity number after this paragraph). I/we understand that the claim, once submitted, will be evaluated by a Claim Evaluator chosen by counsel for plaintiffs and the class and that I/we may or may not receive an award through the Claim Review Process. The relief awarded in the Claim Review Process can range from none at all to relief designed to redress any loss that may have resulted from the alleged wrongdoing. I/we realize that this election will make me/us ineligible for the General Relief.**

________________________
Signature of Owner

________________________
Daytime Telephone Number

*You must return this Election Form if you want to elect to submit a claim to the Claim Review Process. If you elect to submit a claim to the Claim Review Process, then once the proposed settlement is final, you will receive a separate Claim Form with instructions on how to present your claim. DO NOT SUBMIT YOUR SPECIFIC CLAIM AT THIS TIME.

**If you want to elect to submit a claim to the Claim Review Process, you must complete this Election Form and mail it so that it is postmarked by ___________, 200_, to this address:**

**IDS Life Class Action Information Center**
**P.O. Box 1595**
**Faribault, Minnesota 55021-1595**
**Re: Election Form**

**QUESTIONS? CALL 1-xxx-xxx-xxxx**
**(or, if you use TDD/TYY, 1-800-xxx-xxxx)**

350902.1

# FACT SHEET FOR QUALIFIED PLANS

This Fact Sheet has been sent to you because the Defendants' records indicate that you are or were a trustee, sponsor, or other person who acts on behalf of a tax qualified retirement plan and its participants and beneficiaries (with respect to the plan) that held or holds an interest in one or more group deferred annuity contracts issued by IDS Life Insurance Company or IDS Life Insurance Company of New York that were in force at any time during the period of January 1, 1985 through and including February 29, 2000. (This Fact Sheet refers to such persons as "Qualified Plan Representatives" and to such plans as "Qualified Plans.")

This Fact Sheet is to be read in conjunction with the Notice of Class Action, Proposed Settlement and Fairness Hearing (the "Class Notice"). The Class Notice describes the general provisions of the settlement. This Fact Sheet describes how the general provisions of the settlement relate to Qualified Plans. Please read the Class Notice and this Fact Sheet carefully.

Described below are features of the settlement that you should be aware of in your capacity as a Qualified Plan Representative.

## I. NOTICE TO PLAN PARTICIPANTS

The proposed settlement described in the Class Notice involves both Qualified Plan Representatives and the participants in group deferred annuities used to fund Qualified Plans. In addition to the Class Notice, a separate Plan Participant Information Sheet for Qualified Plan Participants is also being provided to participants in such annuities. Attached hereto is a sample of that Information Sheet and a list of the persons who have been identified as participants in the group deferred annuity contract that is part of your Qualified Plan. Please compare the list of participants to your own records and forward copies of the Class Notice to any participants who are not listed. Extra copies of the Class Notice have been provided to you and additional copies can be obtained by calling the number listed below.

## II. ELECTION OF RELIEF

As set forth in Parts C and E of the Class Notice, Class Members must choose which type of relief to receive unless they exclude themselves from the Class with respect to a particular Policy or Annuity. As a Qualified Plan Representative, you should make this choice, consistent with your obligations to the Qualified Plan. Elections made by plan participants themselves will not be honored.

For each of the participants in your Qualified Plan, you may choose either the General Relief (described in Part E.1 of the Class Notice) or the Claim Review Process (described in Part E.3 of the Class Notice).

If you choose the General Relief for a plan participant, you do not need to take any action. The relief will be provided to the participant if that participant is included on the attached

address) to the IDS Life Class Action Information Center, P.O. Box 1602, Faribault, MN 55021-1602. Only the participant may change the Measuring Life or the Payee as set forth in Part E.1 of the Class Notice.

If you choose the Claim Review Process for a plan participant, you must return the Election Form following the procedures set forth in Part E of the Class Notice. After the settlement has been approved and no more appeals are available, you will be sent a claim form on which you can provide the specifics of the claim.

## III. EXCLUSION FROM THE CLASS

As set forth in Parts C and H of the Class Notice, Class Members may choose to exclude themselves from the Class with respect to a particular Policy or Annuity. As a Qualified Plan Representative, you may request exclusion of all participation interests in a group deferred annuity used to fund your Qualified Plan. Alternatively, if you do not request such exclusion, then each individual participant may request to be excluded from the Class with respect to his or her particular participation interest only; however, if individual participants request to be excluded, it is Defendants' position there will be no right to sue or recover relief based on the Qualified Plan if you do not request exclusion for the entire plan. If you choose to exclude all participation interests in the group deferred annuity used to fund your Qualified Plan, you must follow the procedures set forth in Part H of the Class Notice.

* * *

**If you have any questions about the role of Qualified Plan Representatives with respect to the proposed settlement, please call 1-800-xxx-xxxx.**

350904.1

## PLAN PARTICIPANT INFORMATION SHEET

This Information Sheet has been sent to you because our records indicate that you hold or held a participation interest in one or more group deferred annuity contracts covered by this class action settlement. That means that the group annuity was issued to your employer plan or other similar retirement plan by IDS Life Insurance Company or IDS Life Insurance Company of New York, and was in force at any time during the period of January 1, 1985 through and including February 29, 2000. (This Information Sheet refers to you as a "Participant" and to the plans as "Qualified Plans.") Your Qualified Plan Representative (the person or entity that is acting on behalf of you and the plan (with respect to the plan) such as the trustee or sponsor), has also received notice of this class action settlement.

You should read this Information Sheet along with the Notice of Class Action, Proposed Settlement and Fairness Hearing (the "Class Notice"). The Class Notice describes the general provisions of the settlement. This Information Sheet describes how the general provisions of the settlement relate to you as a Participant in a Qualified Plan. Please read the Class Notice and this Information Sheet carefully.

Described below are features of the settlement that you should be aware of as a Participant in a Qualified Plan.

## I. ELECTION OF RELIEF

As set forth in Parts C and E of the Class Notice, Class Members must choose which type of relief to receive unless they exclude themselves from the Class with respect to a particular Policy or Annuity. As a Participant in a Qualified Plan, your Qualified Plan Representative will fill out the Election Form, thus choosing a form of relief, consistent with his, her or its obligations to the Qualified Plan.

Your Qualified Plan Representative may choose either the General Relief (described in Part E.1 of the Class Notice) or the Claim Review Process (described in Part E.3 of the Class Notice). You may not make this election yourself. Please contact your Qualified Plan Representative if you have questions about the election of relief. (If you do not know who your Qualified Plan Representative is, please contact the IDS Life Class Action Information Center at 1-800-xxx-xxxx.) The obligations of the Qualified Plan Representative are likely governed by the particular plan in which you are or were a participant.

If your Qualified Plan Representative chooses the General Relief with respect to your participation interest, then neither you nor your Qualified Plan Representative needs to take any action. The relief will be provided to you automatically. You may, however, change the Measuring Life or the Payee as set forth in Part E.1 of the Class Notice.

If your Qualified Plan Representative chooses the Claim Review Process with respect to your participation interest, then your Qualified Plan Representative must return the Election Form for your participation interest following the procedures set forth in Part E of the Class Notice. After the settlement has been approved and no more appeals are available, your

Qualified Plan Representative will be sent a claim form on which he or she can provide the specifics of the claim.

## III. EXCLUSION FROM THE CLASS

As set forth in Parts C and H of the Class Notice, Class Members may choose to exclude themselves from the Class with respect to a particular Policy or Annuity. Your Qualified Plan Representative may request exclusion of all participation interests in a group deferred annuity used to fund your Qualified Plan. Alternatively, if your Qualified Plan Representative does not request such exclusion, then you, as an individual Participant, may request to be excluded from the Class with respect to your particular participation interest only. If you wish to be excluded, you must follow the procedures set forth in Part H of the Class Notice. You should know that, if your Qualified Plan Representative does not request to exclude the entire plan, and you request to be excluded and later file a lawsuit against the Defendants based on your participation in the Qualified Plan, it will be the Defendants' position that there will be no right to sue or recover relief.

* * *

If you have any questions about your rights as a Participant in a Qualified Plan with respect to the proposed settlement, please call the IDS Life Class Action Information Center at 1-800-xxx-xxxx.

350905.1

# CHANGE OF ADDRESS FORM

## IDS LIFE CLASS ACTION INFORMATION CENTER

**USE THIS FORM ONLY TO CHANGE YOUR ADDRESS, OR IF YOU ARE UNSURE THAT THE DEFENDANTS HAVE YOUR CORRECT ADDRESS. YOU MAY COMPLETE AND RETURN THIS FORM AT ANY TIME TO:**

IDS LIFE CLASS ACTION INFORMATION CENTER
P.O. Box 1602
Faribault, MN 55021-1602

Policy or Annuity Number: ______________

POLICY OR ANNUITY OWNER

Name:____________________________________________________________

Street Address:_____________________________________________________

City:__________________________________________State:______________

Zip Code: _ _ _ _ _ _ _ _ _

**ENCLOSED IS AN IMPORTANT LEGAL NOTICE**

THE ENCLOSED NOTICE DESCRIBES YOUR RIGHTS AND HOW THEY WILL BE AFFECTED BY THE PROPOSED SETTLEMENT OF A CLASS ACTION LAWSUIT INVOLVING CERTAIN LIFE INSURANCE POLICIES AND ANNUITY CONTRACTS ISSUED BY IDS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY OF NEW YORK, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY AND AMERICAN PARTNERS LIFE INSURANCE COMPANY. **YOU ARE NOT BEING SUED.**

IF YOU NEED ASSISTANCE OR ADDITIONAL INFORMATION ABOUT THIS NOTICE AND YOUR RIGHTS UNDER THE SETTLEMENT, CALL 1-XXX-XXX-XXXX (OR, IF YOU USE TDD/TTY 1-XXX-XXX-XXXX). OPERATORS WILL BE ABLE TO ASSIST YOU IN THE LANGUAGE OF YOUR CHOICE.

**SE ADJUNTA UN IMPORTANTE AVISO LEGAL**

LA NOTIFICACION OUE SE AJUNTA LE EXPLICA SUS DERECHOS Y COMO LOS MISMOS SERAN AFECTADOS CON LA RESOLUCION PROPUESTA EN UNA DEMANDA COLECTIVA QUE INVOLUCRA CIERTAS POLIZAS DE SEGURO DE VIDA Y ANUALIDADES DE IDS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY OF NEW YORK, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY Y AMERICAN PARTNERS LIFE INSURANCE COMPANY. **A USTED NO SE LE ESTA DEMANDANDO**.

SI NECESITA ASISTENCIA O INFORMACION ADICIONAL SOBRE ESTA NOTIFICACION Y SUS DERECHOS BAJO DICHA RESOLUCION, LLAME AL 1-XXX-XXX-XXXX (O, SI UTILIZA TDD/TTY 1-XXX-XXX-XXXX). LOS OPERADORES DE TELEFONO PODRAN ATENDERELE EN EL IDIOMA DE SU PREFERENCIA.

# APPENDIX

## RELEASE AND WAIVER

(Section XII of the Stipulation of Settlement)

A. Release and Waiver

1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releasees (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).

2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or relate to any of the matters

described in sections XII.B.2.(i)-(xiii) of the Stipulation of Settlement; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in the Stipulation of Settlement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable — notwithstanding that the parties have chosen Minnesota law to govern the Stipulation of Settlement — Plaintiffs and the Class Members hereby agree that these principles (including Cal. Civ. Code Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. <u>Release and Waiver -- Definitions</u>

1. "Claims and Causes of Action" (as used in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held in any Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

# EXHIBIT A

## Guidelines for Determining, Scoring and <u>Awarding Relief in the Claim Review Process</u>

This Exhibit A describes the standards and guidelines to be used in determining and resolving those Claims, described below, asserted with respect to Class Members' Policies and Annuities, as defined in the Stipulation of Settlement.

Neither this Exhibit A, nor any related negotiations, statements or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession in any proceeding (a) of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to Defendants, or as a waiver by Defendants of any applicable defense; or (b) that any particular disclosure or suitability standards, rules, guidelines, practices or procedures govern or governed the purchase, sale or administration of any Policy or Annuity.

## I. DEFINITIONS

A. "Applicant" means the individual or entity that applied for the Policy or Annuity that is the subject of the Claim.

B. "Claim Category" means any of the categories of Claims to be considered as part of the Claim Review Process, as described in section II.A. herein.

C. "Documentation" means (1) any handwritten, printed, recorded or electronic materials created by the Claimant or a representative of the Claimant, the Company, a Company employee or Producer; or (2) any affidavit or statement executed by a person other than the Claimant; <u>provided</u>, <u>however</u>, that any affidavit or statement must be based on personal knowledge, relate directly to the Claim and, in the case of an alleged Misrepresentation or other wrongdoing, purport to demonstrate that it occurred or did not occur; and <u>provided</u>, <u>further</u>, that a completed Claim Form shall not, by itself, constitute Documentation of a Misrepresentation.

D. "Measuring Date" means the date that is the earlier of (i) 15 days following the date upon which the Policy or Annuity was delivered to the Policy owner or Annuity owner; or (ii) 45 days following the Issue Date.

E. "Misrepresentation" (or "Misrepresent") means either an untrue statement of material fact that was made to the Applicant, or an omission to state a material fact necessary to make the statements made to the Applicant, in light of the circumstances under which they were made, not materially misleading.

A

F. For purposes of this Exhibit A, "Replace" or "Replacement" means with respect to life insurance policies, the use of at least 25% of the cash or account value of one or more cash value life insurance policies (excluding graded premium whole life policies) that were issued by one of the Defendants or another company, including, if applicable, paid-up additions, by means of a surrender of, a withdrawal of values from, or a loan against one or more such policies, in order to purchase a new Annuity or purchase or maintain over time a new Policy issued by one of the Defendants. "Replace" or "Replacement" means with respect to deferred annuity contracts, the use of at least 25% of the cash or account value of one or more deferred annuity contracts that were issued by one of the Defendants or another company, by means of a surrender of, a withdrawal of values from, or a loan against one or more such annuity contracts in order to purchase a new Annuity or purchase or maintain over time a new Policy issued by one of the Defendants. The term "Replace" or "Replacement" shall not apply to life insurance policy or annuity contract transactions involving (1) the exercising of a contractual change or conversion privilege; (2) group term life insurance; (3) term insurance; (4) internal Replacement of life insurance under a binding or conditional receipt; (5) immediate annuities; or (6) the settlement (*i.e.*, annuitization) of a deferred annuity.

G. For purposes of this Exhibit A, "Replaced Annuity" means a deferred annuity contract, at least 25% of the values of which were used in order to purchase an Annuity or to purchase or maintain a Policy as described in the definition of "Replace" or "Replacement" in this Exhibit A.

H. For purposes of this Exhibit A, "Replaced Policy" means a cash value life insurance policy, at least 25% of the values of which were used in order to purchase or maintain a Policy or to purchase an Annuity as described in the definition of "Replace" or "Replacement" in this Exhibit A.

I. "Retirement Sale Disclosure" means a disclosure, either orally or in writing, including in an illustration, that informs the Applicant in words or substance that the product being sold is a life insurance policy.

J. "Universal Life Relatedness Disclosure" means a disclosure, either orally or in writing, that informs the Applicant in words or substance that (1) premiums in addition to those illustrated or represented might be required if actual experience is different from underlying assumptions; or (2) fluctuations in interest rates, policy credits and/or charges could result in Policy termination unless additional premiums are paid or that premiums in addition to those illustrated or represented may be required to sustain the Policy.

K. Capitalized terms not defined in this Exhibit A shall have the meanings given to them in the Stipulation of Settlement.

## II. CLAIM CATEGORIZATION

A. <u>Categories of Claims</u>. The Claims to be reviewed under this Exhibit A fall generally into the following categories:

Category 1: Replacement Claims;

Category 2: Performance Claims;

Category 3: Life Insurance Accelerated Payment Claims;

Category 4: Life Insurance Savings and Retirement Misrepresentation Claims;

Category 5: Qualified Annuity Misrepresentation Claims;

Category 6: Annuity Tax Consequence Misrepresentation Claims;

Category 7: Annuity Age Misrepresentation Claims; and

Category 8: Other Marketing, Sales, Administration and Servicing Claims.

1. <u>Category 1: Replacement Claims</u>. The following Claims shall be categorized as Replacement Claims:

a. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date concerning the financial impact on the Applicant of a Replacement.

b. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Policy owner that the Policy owner should ignore and/or discard notice of policy loans, withdrawals or partial surrenders, premiums due or lapse with respect to the Replaced Policy.

c. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Policy owner that (i) existing policy values on the Replaced Policy would be sufficient to pay premiums on the new Policy; (ii) existing premiums on the Replaced Policy would be sufficient to pay premiums on the new Policy; or (iii) a combination of existing policy values and premiums on the Replaced Policy would be sufficient to support the new Policy.

2. <u>Category 2: Performance Claims</u>. The following Claims shall be categorized as Performance Claims. A Claim shall not be characterized as a Performance Claim merely because the owner of a variable universal life insurance policy or a variable annuity chose investment options that did not match the Claimant's expectations.

a. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that the cash values or account value of a Policy would not be less than illustrated, or would be maintained at a certain level over the life of the Policy.

b. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that the Policy's interest crediting rate, where applicable, would not vary over the life of the Policy or would be maintained at a certain level over the life of the Policy.

c. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that the Policy's mortality and expense charges, and/or cost of insurance, administrative or other charges would not vary over the life of the Policy or would be maintained at a certain level over the life of the Policy.

d. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that for a fixed number of payments the Policy would produce predicted, represented or illustrated cash values or account values at a later date, while it was not meaningfully explained on or before the Measuring Date, either orally or in writing, that policy credits and/or charges could change and affect the predicted cash or account value.

e. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date either that the Policy's surrender value would always be in excess of the premiums paid, or that the Policy would always show a positive rate of return on premiums paid, while it was not meaningfully explained before the Measuring Date, either orally or in writing, that surrender values for some initial period would be lower than the premium paid.

f. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the

Measuring Date that the account value of an Annuity would be maintained at a certain level over the life of the Annuity.

g. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that the account value of the variable Annuity would, at the time of the death of the annuitant or Annuity Owner, exceed the purchase payments made in connection with the Annuity (or, where applicable, the Annuity's cash value on the most recent six year anniversary of the Issue Date).

3. <u>Category 3: Life Insurance Accelerated Payment Claims</u>. The following Claims shall be categorized as Life Insurance Accelerated Payment Claims:

a. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that, for the illustrated Policy face amount, no out-of-pocket premiums would be due after a specified date or beyond a specified number or amount of premiums.

b. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant in connection with the provision of unauthorized and misleading sales materials and/or illustrations that, for the illustrated Policy face amount, no additional out-of-pocket premiums would be due after a specified date or beyond a specified number or amount of premiums.

c. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date to the effect that the Claimant's Policy would be a "paid-up" or "fully paid-up" policy.

d. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that the Policy was a "single pay," "x-pay" (where x equals a number of years), "zero-pay" or "no-pay" policy.

4. <u>Category 4: Life Insurance Savings and Retirement Misrepresentation Claims</u>. The following Claims shall be categorized as Life Insurance Savings and Retirement Misrepresentation Claims:

a. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the

Measuring Date that a Policy was primarily an investment, savings, capital, money accumulation, pension or retirement plan, while it was not meaningfully disclosed on or before the Measuring Date that the product was a life insurance policy or the fact that the product was life insurance was misleadingly disguised, de-emphasized or minimized.

b. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date concerning the suitability of using life insurance solely to meet the Applicant's savings and retirement goals.

c. The Policy's premiums were characterized, on or before the Measuring Date, as "deposits," "contributions," or "outlays," or the Policy's values were characterized as "savings," "capital," a "retirement account," a "money accumulation account" or a similar investment terminology and, given the total facts and circumstances surrounding the sale of the Policy, such characterization was likely to mislead the Applicant.

5. <u>Category 5: Qualified Annuity Misrepresentation Claims</u>. The following Claims shall be categorized as Qualified Annuity Misrepresentation Claims:

a. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant purchasing a Qualified Annuity or a participation interest in a Group Qualified Annuity on or before the Measuring Date that misled the Applicant regarding the tax-deferral benefits of the Qualified Annuity or the Qualified Plan.

b. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date that a Qualified Annuity or a participation interest in a Group Qualified Annuity was unconditionally appropriate to fund or constitute a Qualified Plan.

6. <u>Category 6: Annuity Tax Consequences Misrepresentation Claims</u>. The following Claims shall be categorized as Annuity Tax Consequences Misrepresentation Claims:

An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date concerning the treatment of withdrawals from a variable Annuity (other than a Qualified Annuity) as ordinary

income rather than capital gains, and the Claimant suffered a financial loss as a result of that Misrepresentation by, for example, surrendering the Annuity and paying ordinary income tax on gains when a lower capital gains tax would have applied had the Claimant invested in mutual funds that had similar investment objectives to the annuity subaccounts selected by the Claimant.

7. Category 7: Annuity Age Misrepresentation Claims. The following Claims shall be categorized as Annuity Age Misrepresentation Claims:

a. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date concerning the liquidity of the Annuity, including the duration of any surrender charge period, and the Applicant was 85 years old or older on the Annuity's Issue Date.

b. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date concerning the availability of the minimum death benefit guarantee of a variable Annuity, and the Applicant was 75 years old or older on the Annuity's Issue Date.

c. An oral or written Misrepresentation was made by Defendants or one of their Producers to the Applicant on or before the Measuring Date concerning the estate tax consequences of an Annuity, and the Applicant was 75 years old or older on the Annuity's Issue Date.

8. Category 8: Other Marketing, Sales, Administration and Servicing Claims. The following Claims shall be categorized as Other Marketing, Sales, Administration and Servicing Claims:

a. The marketing, sale, administration or servicing of the Policy or Annuity was accomplished by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not materially misleading and that relates to issues other than Category 1, 2, 3, 4, 5, 6 or 7 Claims.

b. The marketing, sale, administration or servicing of the Policy or Annuity violated applicable state statutes or regulations respecting product advertising or retail sales practices or the administration or servicing of Policies or Annuities; provided, however, that this

factor may not be assigned a score of greater than 1 in the absence of a related fraud or deceit.

c. The administration or servicing of the Policy or Annuity violated the Policy's or Annuity's contractual provisions.

d. The Applicant and/or Claimant was the victim of forgery.

e. Wrongdoing other than that set forth in subparagraphs a-d, above, occurred and had adverse economic consequences for the Applicant or the Claimant, and such wrongdoing related to the marketing, sale, administration or servicing of the Policy or Annuity, including the application for or purchase of any Policy or Annuity; the suitability of any Policy or Annuity; the setting of any interest rates, purchase rates or renewal rates on any Policy or Annuity; the setting of any cost of insurance, commissions, taxes, fees or surrender charges, or expenses on any Policy or Annuity or Annuity subaccount; the investment choices made with respect to assets held in any Policy or Annuity; the benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; and the provision of financial or investment advice or the preparation of a financial plan insofar as either resulted in the sale, modification or maintenance of any Policy or Annuity.

**B. <u>Categorization of Claims</u>**

1. The Claim Evaluator shall have responsibility for determining the claim category (or categories) for each Claim submitted to the Claim Review Process. The Claim Evaluator shall categorize each Claim according to one or more of the Claim Categories set forth above.

2. The Claim Evaluator may categorize a Claim according to more than one claim category.

3. To the extent this Exhibit A gives the Claim Evaluator discretion in categorizing, scoring and awarding relief in connection with Claims, the Claim Evaluator shall exercise that discretion in good faith, using his or her best efforts to fairly and reasonably apply the criteria set forth in this Exhibit A.

4. If a Claim Form either (a) presents insufficient information to allow categorization of the Claim to a Claim category; or (b) provides merely identifying information about the Claimant and/or the Policy or Annuity that is the subject of the Claim, and is otherwise blank, then the Claim

Evaluator shall request that the Claimant provide additional information to permit evaluation of the Claim.

a. No Claim shall be assigned to a Claim category unless there is information in the Claim File sufficient to warrant the assignment.

b. If, after a request for additional information, as provided for in this subparagraph 4, in the sole discretion of the Claim Evaluator there is insufficient information in the Claim File to allow for claim categorization, or if the Claim Form is blank except for Claimant identifying information, the Claim shall not be categorized, but the Claimant shall receive General Relief.

## III. SCORING OF CLAIMS

**A.** **Information Submitted to the Claim Evaluator.** The Claimant, Co-Class Counsel, and Defendants shall each have the right to submit any information that the Claimant, Co-Class Counsel or Defendants believe would be helpful to the Claim Evaluator in scoring the Claim, as provided in the Settlement Agreement.

**B.** **Scoring Standards.** With respect to each Claim, the Claim Evaluator shall assign a Claim score for each Claim Category to which the Claim has been assigned, as defined below:

1. Score of 4: For Category 3 Claims only, a Claim shall be given a score of 4 if the Claim File contains handwritten or printed material created by the Defendants or one of their Producers falsely stating, on or before the Measuring Date, that the Defendants would issue the Applicant a "fully paid-up" policy or "paid-up" policy for the originally illustrated face amount without any further premium payments required after a specific number of years.

2. Score of 3: A Claim shall be given a score of 3 if:

   a. It is established by Documentation of a Misrepresentation;

   b. The information in the Claim File, considered as a whole, clearly and convincingly indicates that the Claim is valid;

   c. The Producer admits that he or she made the Misrepresentation described by the Claimant; or

d. In the discretion of the Claim Evaluator the Claim otherwise deserves such designation.

3. Score of 2: A Claim shall be given a score of 2 if:

a. The Claim is supported by the weight of the evidence in the estimation of the Claim Evaluator; or

b. In the determination of the Claim Evaluator, the Documentation presented neither supports nor contradicts the Claim, *but* one or more of the following factors exists:

(1) For Category 1 Claims, a life insurance Policy that is the subject of the Claim replaced a permanent life insurance policy issued by one of the Defendants or another company; provided, however, that a Claim shall not be given a score of 2 pursuant to this subsection if the information in the Claim File demonstrates that the transaction was appropriate for the Applicant's interests as of the date on which the Applicant applied for the Policy.

(2) For Category 3 Claims involving a universal life Policy, the Applicant was provided with an illustration or narrative disclosure statement on or before the Measuring Date that did not contain a Universal Life Relatedness Disclosure.

(3) For Category 4 Claims, the Applicant was not provided with a Retirement Sale Disclosure on or before the Measuring Date.

4. Score of 1: A Claim shall be given a score of 1 if, in the determination of the Claim Evaluator, the evidence presented neither supports nor undermines the Claim.

5. Score of 0: A Claim shall be given a score of 0 if (i) it is contradicted by the Documentation submitted to the Claim Evaluator; or (ii) in the discretion of the Claim Evaluator, the Claim otherwise deserves such a score.

C. **Factors for Consideration**. In assigning a Claim score, the following matters, among others, in the discretion of the Claim Evaluator, may be given consideration with respect to any of the Claim categories:

1. The date the Policy or Annuity was issued and the series, type, policy or annuity features or characteristics, assumptions and methodologies relating to the Policy or Annuity.

2. The extent to which the Policy's or Annuity's features, fees and expenses were disclosed in the contract and, where applicable, the prospectus, including the placement of any disclosure, the emphasis given to the disclosure compared to the document as a whole, and the overall quality of the disclosure.

3. The Applicant's age, sophistication, education, infirmities or financial condition, liquidity needs, or investment objectives at the time of purchase or other relevant time.

4. The Policy or Annuity was sold to the Applicant by a present or former relative, school teacher or coach, or business associate of the Applicant or a Producer who had any similar present or former relationship with the Applicant.

5. The Policy or Annuity was sold by a part time, non-career or other representative not employed by Defendants.

6. The Applicant received advice from an attorney, accountant or other financial advisor (other than the Producer who sold the Policy or Annuity) in connection with the purchase of the Policy or Annuity.

7. The extent to which the Policy is performing or failing to perform as illustrated at the time of sale.

8. The extent to which the Applicant or Claimant suffered a financial loss as a result of the Misrepresentation or other wrongdoing.

9. The Defendant's waiver or reduction of certain load charges, or the failure to do so, in connection with a Replacement in accordance with the Defendant's practice, or subsequently to credit the Policy or Annuity with the amount that should have been waived.

10. The extent to which it is apparent from information contained in the Claim File or other information readily available to the Claim Evaluator from the Claim Files submitted in the Claim Review Process that the Producer procured an inordinate number of Replacement transactions or that the Applicant was induced to replace an existing permanent life insurance policy or annuity contract by any exchange, transfer, or similar program.

11. The Policy or Annuity was sold to the Claimant to Replace another company's life insurance policy or annuity contract.

12. The availability of features on the Replaced Policy or Replaced Annuity that were not available on the replacing Policy or the replacing Annuity, or the availability of features with respect to the replacing Policy or Annuity that were not available on the Replaced Policy or Replaced Annuity.

13. The extent to which information in the Claim File demonstrates that a Defendant and/or Producer violated any applicable statute, regulation or Company policy in connection with the sale, administration or servicing of the Policy or Annuity.

14. The extent to which the Applicant was shown illustrations depicting more than one potential scenario.

15. The format, appearance, assumptions or content of any sales illustration or delivery sheet shown to the Applicant, including the extent to which the illustration fully disclosed all known or foreseeable material risks that the Policy might not perform as represented or illustrated.

16. The Applicant was or was not shown an alternate illustration at or before the Measuring Date depicting the impact of a reduction in the current dividend scale or the current interest rate on the illustrated vanish point.

17. The Applicant was shown a Defendant-approved illustration or delivery sheet that was altered to delete or modify disclosures or to materially change the format, appearance or content of the illustration.

18. The Applicant was shown a Defendant-approved illustration or delivery sheet that contained notations or other interlineations made by the Producer who sold the Policy.

19. The Producer who sold the Policy or Annuity utilized a sales illustration, delivery sheet or promotional or marketing materials that were not approved by the Defendants.

20. The Producer who sold the Policy or Annuity is the subject of other Claims submitted in the Claim Review Process.

21. The extent to which it is apparent from information contained in the Claim File or other information readily available to the Claim Evaluator that the Producer is or was the subject of an inordinate number of sales

practices complaints or was reprimanded or terminated due to improper sales practices.

22. The Claimant's actions were consistent or inconsistent with the presentation on which the Policy or Annuity was sold. The Claim Evaluator shall consider any explanations or circumstances surrounding such actions.

23. The Producer who sold the Policy or Annuity, or any of Defendants' employees, signed the Policy or Annuity owner's name on any transaction document or used a document signed in blank by the Policy or Annuity owner without express authority to do so.

24. The Producer who sold the Policy, or any of Defendants' employees, advised the Policy owner to disregard or discard notices from the Defendants concerning cash withdrawals, loans, premiums due or the pending lapse of or change in existing insurance benefits.

25. The answer to the replacement question in the application for the Policy or Annuity failed to indicate that the transaction was a replacement, when it was in fact a replacement.

26. The death benefits or costs of the Policy or Annuity were suitable or unsuitable given the Applicant's stated income, goals and other financial resources.

27. The Policy was purchased on a vanishing premium basis and the premiums were paid in a lump sum or otherwise pre-paid to the purported vanish point of the Policy.

28. The extent to which any term riders or other riders issued in connection with the Policy impacted the sensitivity of the illustrated vanish date to changes in the current interest crediting rate and the extent to which any such sensitivity was or was not disclosed to the Applicant.

29. The existence of any relationship between an anticipated life event for the Applicant (such as retirement or a specific financial need) and the vanish point represented or illustrated at the time of sale of the Policy.

30. The extent to which the Producer who sold the Policy or the Defendants used phrases such as "vanishing premium," "vanish date," "vanish point," "paid-up," "fully paid-up," or "x-pay," "none," or "zero" (where "x," "none" or "zero" represents the number of premium payments) in connection with the marketing, sale or illustration of the Policy.

31. The extent to which any illustration or delivery sheet shown to the Applicant failed to reflect the impact or results of any riders issued in connection with the sale of the Policy.

32. The extent and clarity with which the Policy form, prospectus, illustration, application or account statements indicated that the product was life insurance or that cost of insurance or mortality charges were applicable to the Policy.

33. Whether the Policy's premiums were described as "deposits," "contributions," or "outlays."

34. Whether the Policy's values were characterized as "savings," "capital," a "retirement account," a "money accumulation account" or a similar investment terminology.

35. Prior to the date on which notice of the proposed settlement is first mailed to class members, the Claimant submitted a written complaint to the Defendants, the Producer who sold the Policy or Annuity, or a regulatory agency alleging substantially the same misconduct now being alleged in the Claim.

36. Prior to the date on which notice of the proposed settlement is first mailed to class members, the Claimant submitted a written complaint to the Defendants, the Producer who sold the Policy or Annuity, or a regulatory agency alleging misconduct that contradicts the allegations in the Claim.

37. Relief or other benefits were previously provided to the Claimant by the Defendants in response to a prior similar complaint or other inquiry.

38. The existence of any release signed by the Applicant, the circumstances surrounding the solicitation and execution of any such release and the extent to which any such release was supported by consideration.

39. Whether the Policy or Annuity is beyond the surrender charge period, if any.

40. The interest crediting rates and bonus rates, if any, relating to the Policy or Annuity.

41. Whether the Policy or Annuity owner is responsible for failing to adhere to any originally illustrated or represented factors, the reason for such failure, and whether such failure contributed to the Policy or Annuity not performing as originally illustrated or represented.

42. Whether the appropriate state-required disclosures regarding replacement were provided to the Policy or Annuity owner.

43. Whether the Applicant purchasing a Qualified Annuity was informed that the tax deferred accrual feature is provided by the tax-qualified retirement plan and that the tax deferred accrual feature of the Qualified Annuity is unnecessary.

44. Whether the Applicant purchasing a Qualified Annuity had a need for death protection for heirs and, if so, whether, and the extent to which, the costs and benefits of a life insurance product compared to the death benefit provision of a Qualified Annuity were discussed with the Applicant.

45. Whether the Applicant purchasing a Qualified Annuity as an Individual Retirement Annuity or as part of an Individual Retirement Account knew or received disclosure that, as an alternative, other products could be included in an Individual Retirement Account.

46. The product and Qualified Plan choices available to the Applicant purchasing a Qualified Annuity to fund his or her Qualified Plan.

47. The extent to which the Applicant purchasing a Qualified Annuity knew or received disclosure that a tax-deferred retirement plan was tax deferred.

48. The extent to which the Applicant purchasing a Qualified Annuity believed that the features of a deferred annuity -- such as the guaranteed minimum death benefit, the guaranteed annuity purchase rates, the option of using the fixed account and the option of selecting among multiple proprietary and non-proprietary underlying investment options for a variable Annuity, or a guaranteed rate of interest for a fixed annuity -- had some value in light of his or her personal circumstances.

49. The extent to which the Applicant purchasing a Qualified Annuity was insurable at the time of purchase.

50. The extent to which the Applicant purchasing a variable Annuity (other than Qualified Annuity) knew or was informed that the Annuity was subject to ordinary income tax rates on the returns in its variable subaccounts.

51. The extent to which the Applicant purchasing a variable Annuity (other than a Qualified Annuity) would have benefitted from the application of capital gains taxes as compared to the Annuity's benefit of tax deferral.

52. The extent to which the Applicant purchasing a variable Annuity (other than a Qualified Annuity) would have purchased a mutual fund rather than a variable annuity had he or she been aware that withdrawals from an annuity are subject to ordinary income tax rates rather than capital gains tax rates.

53. The extent to which the Annuity had or has features that provide increased liquidity, including the availability of a nursing home waiver and the ability to withdraw 10% of the contract value annually without a surrender charge, or other free partial withdrawal features.

54. Any other factors that may be relevant to the Claim.

## IV. AWARDS OF RELIEF

### A. General Principles

1. Claimants whose Claims have been assigned to a Claim category will be awarded relief, if any, in accordance with subsections B through I, below.

2. Applying the general principles of equity, taking into account any damages an individual Claimant may have incurred as a result of the misconduct alleged, or any other factors, circumstances or considerations the Claim Evaluator deems relevant, the Claim Evaluator may increase or decrease the relief that otherwise would be awarded to any Claimant, group of Claimants or all Claimants asserting claims in the categories set forth above.

3. Where a Claimant makes allegations that implicate multiple Claim categories, the Claim shall be scored by the Claim Evaluator under each category. After such scoring, the Claim Evaluator will apply the Claim category that will result in the highest level of relief to the Claimant. Duplicative or multiple relief shall not be made available for any Claim.

4. Where enhancements are to be made to a variable universal Policy or a variable Annuity, such enhancements will be made to the fixed account of the Policy or Annuity. If no fixed account is available, such enhancements will be allocated proportionally among the subaccounts in the Class Member's variable account.

5. With respect to Category 1 Claims, the Class Member may make a Claim with respect to each Policy or Annuity that was Replaced during the Class Period with a Policy or Annuity issued by Defendants.

6. Set-Off: Any relief awarded for a Claim shall be reduced by any relief previously granted in favor of the Claimant as a result of a customer or insurance department complaint or inquiry or other claim or litigation involving (i) allegations that are the subject of Claims in the Claim Review Process; and (ii) the same Policy or Annuity that is the subject of the Claim, provided that the Claim Evaluator receives sufficient information to determine an appropriate set-off.

7. If, after all Claims have been scored by the Claim Evaluator, the amounts of the Claim Review relief would exceed the Claim Review Relief Fund, plus any available interest thereon, then the relief rewards shall be reduced by multiplying the amount of each award by the following factor:

$$\frac{\text{Claim Review Relief Fund plus available interest}}{\text{aggregate Claim Review awards.}}$$

8. The remedies awarded by the Claim Evaluator as provided herein shall be credited against the Claim Review Relief Fund on a dollar for dollar basis.

9. Where the highest relief designated for a Claim is a score of "1," the relief shall be provided as described in section V of the Stipulation of Settlement and not from the Claim Review Relief Fund.

10. If there remain unused funds in the Claim Review Relief Fund after all Claims have been scored and the relief for such Claims has been determined, then such unused funds shall be allocated as follows:

(a) If the amount of unused funds in the Claim Review Relief Fund is less than or equal to $2 million, then the unused funds shall be used to increase proportionally the Policy or Annuity enhancements or cash payments to be paid from the Claim Review Relief Fund in the amounts resulting from applying the following formula. The individual increase equals

$$\text{individual enhancement or cash payment} \times \frac{\text{unused amount in Claim Review Relief Fund}}{\text{aggregate Claim Review awards.}}$$

(b) If the amount of unused funds in the Claim Review Relief Fund exceeds $2 million, then the unused funds shall be distributed to Class Members as follows:

(1) First, the unused funds shall be applied to provide ADB coverage to Class Members receiving the Internal

Replacement Relief up to the amounts that such Class Members would have received if they were to receive the General Relief in the first instance.

(2) Second, any remaining unused funds (after unused funds are applied in accordance with subparagraph (1), above) shall be allocated among the three types of relief provided under the Settlement Agreement such that the percentage of the remaining unused amounts to be allocated to the Class Members shall be the result of the following calculation:

$$\text{total Class Member value of relief type} \times \frac{\text{remaining unused funds in Claim Review Relief Fund}}{\text{total Class Member value of settlement}}$$

For purposes of this calculation, the Class Member value of the General Relief shall be equal to $100 million; the Class Member value of the Internal Replacement Relief shall be equal to the value of the ADB coverage provided for in subparagraph (1), above; the Class Member value of the Claim Review Relief shall be equal to the aggregate Claim Review awards. For purposes of this calculation, the "total Class Member value of settlement" shall equal the total of the Class Member value for each of the three types of relief described in the previous sentence.

(3) The portion of such remaining unused funds attributable to persons receiving General Relief shall be distributed to such persons in the form of accidental death benefits in an amount resulting from the following formula:

$$\frac{\text{ADB amount specified on Benefit Voucher}}{\$100\text{ million}} \times \text{value of accidental death benefit which can be purchased with the amount resulting in subparagraph (2) for the General Relief, minus administrative cost of providing such accidental death benefit}$$

(4) The portion of such remaining unused funds attributable to persons receiving Internal Replacement Relief shall be distributed to such persons in the form of accidental death benefits in an amount resulting from the following formula:

$$\frac{\text{ADB amount specified on Benefit Voucher}}{\text{value of ADB coverage as per paragraph (b)(1)}} \times \text{value of accidental death benefit which can be purchased with the amount resulting in subparagraph (2) for the Internal Replacement Relief, minus administrative cost of providing such accidental death benefit}$$

(5) The portion of the unused funds attributable to persons receiving relief in the Claim Review Process shall be distributed to such persons in the form of enhancements to the value of the Policy or Annuity (for In Force Policies and Annuities) or cash payments (for Terminated Policies and Annuities) in the amount resulting from the following formula:

$$\frac{\text{individual Claim Review award}}{\text{aggregate Claim Review awards}} \times \text{portion of amount resulting in subparagraph (2) for the Claim Review Process}$$

**B. Category 1 Claims**

1. Score of 3

a. In Force: For Claimants with a score of 3 with respect to an eligible Policy or Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy or Annuity in the amount provided for in Schedule 1.

b. Terminated: For Claimants with a score of 3 with respect to an eligible Policy or Annuity that is Terminated on the Implementation Date, the relief shall be payment equal to the amount provided for in Schedule 1.

2. Score of 2

a. In Force: For Claimants with a score of 2 with respect to an eligible Policy or Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy or Annuity equal to 50% of the amount provided for in Schedule 1.

b. Terminated: For Claimants with a score of 2 with respect to an eligible Policy or Annuity that is Terminated on the Implementation Date, the relief shall be payment equal to 50% of the amount provided for in Schedule 1.

3. For Claimants with a score of 3 or 2 who purchased an eligible Policy as the result of an internal replacement, the Claim Evaluator shall subtract from the amount of relief provided in subparagraphs 1 and 2 above, the amount of any surrender charges that were waived in connection with the replacement transaction.

4. Score of 1. The Claimant will receive the General Relief for which the Policy or Annuity is otherwise qualified.

5. Score of 0. The Claimant will receive no relief, including no General Relief.

C. **Category 2 Claims**

1. Score of 3

a. In Force: For Claimants with a score of 3 with respect to an eligible Policy or Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy equal to the amount provided for in Schedule 2.

b. Terminated: For Claimants with a score of 3 with respect to an eligible Policy or Annuity that is Terminated on the Implementation Date, the relief shall be a payment equal to the amount provided for in Schedule 2.

2. Score of 2

a. In Force: For Claimants with a score of 2 with respect to an eligible Policy or Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy equal to 50% of the amount provided for in Schedule 2.

b. Terminated: For Claimants with a score of 2 with respect to an eligible Policy or Annuity that is Terminated on the Implementation Date, the relief shall be a payment equal to 50% of the amount provided for in Schedule 2.

3. Score of 1. The Claimant will receive the General Relief for which the Policy or Annuity is otherwise qualified.

4. Score of 0. The Claimant will receive no relief, including no General Relief.

**D. Category 3 Claims**

1. Score of 4

a. In Force: For Claimants with a score of 4 with respect to an eligible Policy that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy in the amount provided for in Schedule 3.

b. Terminated: For Claimants with a score of 4 with respect to an eligible Policy that is Terminated on the Implementation Date, the relief shall be a payment equal to the amount provided for in Schedule 3.

2. Score of 3

a. In Force: For Claimants with a score of 3 with respect to an eligible Policy that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy equal to the amount provided for in Schedule 4.

b. Terminated: For Claimants with a score of 3 with respect to an eligible Policy that is Terminated on the Implementation Date, the relief shall be a payment equal to the amount provided for in Schedule 4.

3. Score of 2

a. In Force: For Claimants with a score of 2 with respect to an eligible Policy that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy equal to 50% of the amount provided for in Schedule 4.

b. Terminated: For Claimants with a score of 2 with respect to an eligible Policy that is Terminated on the Implementation Date, the relief shall be a payment equal to 50% of the amount provided for in Schedule 4.

4. Score of 1. The Claimant will receive the General Relief for which the Policy is otherwise qualified.

5. Score of 0. The Claimant will receive no relief, including no General Relief.

**E. Category 4 Claims**

1. Score of 3

a. In Force: For Claimants with a score of 3 with respect to an eligible Policy that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy in the amount provided for in Schedule 5.

b. Terminated: For Claimants with a score of 3 with respect to an eligible Policy that is Terminated on the Implementation Date, the relief shall be payment in the amount equal to the amount provided for in Schedule 5.

2. Score of 2

a. In Force: For Claimants with a score of 2 with respect to an eligible Policy that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Policy or Annuity in the amount of 50% of the amount provided for in Schedule 5.

b. Terminated: For Claimants with a score of 2 with respect to an eligible Policy or Annuity that is Terminated on the Implementation Date, the relief shall be payment in the amount of 50% of the amount provided for in Schedule 5.

3. Score of 1. The Claimant will receive the General Relief for which the Policy is otherwise qualified.

4. Score of 0. The Claimant will receive no relief, including no General Relief.

F. **Category 5 Claims**

1. Score of 3

a. In Force: For Claimants with a score of 3 with respect to an eligible Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Annuity in the amount provided for in Schedule 6.

b. Terminated: For Claimants with a score of 3 with respect to an eligible Annuity that is Terminated on the Implementation Date, the relief shall be a payment equal to the amount provided for in Schedule 6.

2. Score of 2

a. In Force: For Claimants with a score of 2 with respect to an eligible Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Annuity equal to 50% of the amount provided for in Schedule 6.

b. Terminated: For Claimants with a score of 2 with respect to an eligible Annuity that is Terminated on the Implementation Date, the relief shall be a payment equal to 50% of the amount provided for in Schedule 6.

3. Score of 1. The Claimant will receive the General Relief for which the Annuity is otherwise qualified.

4. Score of 0. The Claimant will receive no relief, including no General Relief.

**G. Category 6 Claims**

1. Score of 3.

a. In Force: For Claimants with a score of 3 with respect to an eligible Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Annuity in the amount provided for in Schedule 7.

b. Terminated: For Claimants with a score of 3 with respect to an eligible Annuity that is Terminated on the Implementation Date, the relief shall be payment in the amount provided for in Schedule 7.

2. Score of 2

a. In Force: For Claimants with a score of 2 with respect to an eligible Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Annuity in the amount of 50% of the amount provided for in Schedule 7.

b. Terminated: For Claimants with a score of 2 with respect to an eligible Annuity that is Terminated on the Implementation Date, the relief shall be payment in the amount of 50% of the amount provided for in Schedule 7.

3. Score of 1. The Claimant will receive the General Relief for which the Annuity is otherwise qualified.

4. Score of 0. The Claimant will receive no relief, including no General Relief.

**H. Category 7 Claims**

1. Score of 3

   a. In Force: For Claimants with a score of 3 with respect to an eligible Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Annuity in the amount of the Annuity's outstanding surrender charge as of the Eligibility Date.

   b. Terminated: For Claimants with a score of 3 with respect to an eligible Annuity that is Terminated on the Implementation Date, the relief shall be payment in the amount of any Surrender Charges paid with respect to the Annuity upon termination.

2. Score of 2

   a. In Force: For Claimants with a score of 2 with respect to an eligible Annuity that is In Force on the Implementation Date, the relief shall be an enhancement to the value of the Annuity in the amount of 50% of the amount of the Annuity's outstanding Surrender Charge as of the Eligibility Date.

   b. Terminated: For Claimants with a score of 2 with respect to an eligible Annuity that is Terminated on the Implementation Date, the relief shall be payment in the amount equal to 50% of the amount of any Surrender Charges paid with respect to the Annuity upon termination.

3. Score of 1. The Claimant will receive the General Relief for which the Annuity is otherwise qualified.

4. Score of 0. The Claimant will receive no relief, including no General Relief.