**EXHIBIT E**

**STATE OF MINNESOTA** **DISTRICT COURT**
**COUNTY OF HENNEPIN** **FOURTH JUDICIAL DISTRICT**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated, : Case No. 96-018477

Plaintiffs,

v.

(Consolidated Cases: 96-018477, 97-004742, 98-105681)

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated, : Case No. 00-1980 DSD/JMM

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

---

**CONFIDENTIALITY AGREEMENT FOR DISCOVERY MATERIALS MADE AVAILABLE TO SETTLEMENT CLASS MEMBERS**

E

1. The undersigned hereby certifies that he/she understands that Confidential Information is being provided to him/her pursuant to the terms and restrictions of the following orders entered in the above-captioned actions: (1) the Findings and Order Conditionally Certifying a Class for Settlement Purposes, Preliminarily Approving the Class Settlement, Directing the Issuance of a Class Notice to the Class and Scheduling a Fairness Hearing, entered by the Minnesota State Court for the County of Hennepin on ________________, 2000 and by the United States District Court for the District of Minnesota on ____________, 2000 (the "Preliminary Certification Order"); (2) the Stipulated Protective Order Regarding Use and Disclosure of Confidential Information entered on March 1, 2000 by the Minnesota State Court for the County of Hennepin in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477 (and the actions consolidated therewith); and (3) the Protective Order entered on ________, 2000 by the United States District Court for the District of Minnesota in the action entitled Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM. (These actions are collectively referred to as the "Actions"; the Minnesota State Court for the County of Hennepin and the United States District Court for the District of Minnesota are referred to as the "Courts"; the March 1, 2000, and _________, 2000 orders are referred to herein as the "Protective Orders.")

2. The undersigned also certifies that he/she (i) has been provided with the Preliminary Certification Order and the Protective Orders, (ii) has read and understands the terms thereof, (iii) consents to be bound by the terms of those Orders and by the terms of any future Orders of the Courts concerning the information he/she shall receive, and (iv) shall use the

Confidential Information and Confidential Settlement Information solely for purposes of evaluating the fairness, reasonableness and adequacy of the proposed settlement in the Actions, *and for no other purpose*.

3. The undersigned specifically certifies, in particular, and without limitation, that he/she shall not use the Confidential Information, Confidential Settlement Information and Confidential Litigation Materials, as those terms are defined in the Protective Orders, obtained pursuant to this Confidentiality Agreement in any other litigation, arbitration, or other judicial or administrative proceeding, including in the investigation or preparation of any such proceeding.

4. To the extent that, in evaluating the fairness of the settlement, the undersigned uses Confidential Information, Confidential Settlement Information or Confidential Litigation Materials produced for settlement purposes only by the defendants outside the customary discovery process, the undersigned specifically certifies that he/she shall not use such Confidential Information, Confidential Settlement Information and Confidential Litigation Materials (i) in the litigation of the Actions should the parties not reach a settlement, (ii) in the litigation of the Actions if the Courts, or either of them, should fail to approve the settlement for any reason, or if any appellate court should reverse an order of either of the Courts approving the proposed settlement, (iii) in any other litigation, arbitration, or other judicial or administrative proceeding, including in the investigation or preparation of any such proceeding.

5. The undersigned may inspect the Confidential Information, Confidential Settlement Information and Confidential Litigation Materials by prior appointment during regular business hours at the offices of Lockridge Grinal Nauen, P.L.L.P. at 100 Washington Avenue

South, Minneapolis, MN 55401. Duplication of documents or materials containing Confidential Information, Confidential Settlement Information and Confidential Litigation Materials shall not be permitted, except for documents that the undersigned Class Member and/or his or her counsel represent to the Courts, or either of them, that they need to duplicate for the Courts, or either of them, in support of an objection. Any notes, memoranda or other documents that the undersigned or his or her counsel may create that refer to the Confidential Information, Confidential Settlement Information or Confidential Litigation Materials shall be treated as Confidential Information, Confidential Settlement Information and Confidential Litigation Materials as well.

6. The undersigned acknowledges that breach of this Confidentiality Agreement, the Preliminary Certification Orders, the Protective Orders, or any other Order of the Courts regarding the use of Confidential Information, Confidential Settlement Information and Confidential Litigation Materials shall be actionable by any aggrieved party, including any party to the aforementioned Actions, and that such breach shall subject the undersigned to any and all applicable legal and equitable remedies for enforcement of this Confidentiality Agreement and/or relief, including damages, for its breach.

7. The undersigned also acknowledges that breach of this Confidentiality Agreement will violate the Preliminary Certification Orders, which incorporate this Agreement and the Protective Orders; breach thus may subject the undersigned to an order of contempt of court or other sanctions, upon application to the Courts, or either of them, by any party aggrieved by such violation, including any party to the aforementioned Actions. The undersigned hereby subjects himself/herself to the jurisdiction of the Courts for purposes of enforcement of the terms

and restrictions of this Confidentiality Agreement and/or the Preliminary Certification Orders, the Protective Orders, or any other Order of either of the Courts relating to the Confidential Information, Confidential Settlement Information and Confidential Litigation Materials.

8. By providing access to Confidential Information, Confidential Settlement Information and Confidential Litigation Materials, no party to these Actions shall be deemed to have waived any claim that such information is privileged, confidential, or protected from discovery as attorney work product, nor shall providing such access be deemed to be an admission or concession that the Confidential Information, Confidential Settlement Information and Confidential Litigation Materials is relevant, responsive, admissible, or otherwise discoverable. The undersigned certifies that he/she will make no argument to contradict this provision in any court or other forum.

9. The provisions of this Confidentiality Agreement shall survive the termination of the Actions. At the earlier of (i) the conclusion of any or all appeals of the Final Order and Judgment approving the proposed settlement, or (ii) such time as the parties terminate their Settlement Agreement, all notes and other records containing or reflecting Confidential Information, Confidential Settlement Information and Confidential Litigation Materials shall be destroyed. The defendants reserve the right to demand written certification of destruction from any person who has been given access to Confidential Information, Confidential Settlement Information and Confidential Litigation Materials.

10. This Confidentiality Agreement shall be enforceable by any aggrieved party hereto, and breach of this Agreement shall give rise to the full array of legal and equitable remedies.

____________________________

Dated: ________________, 200__

350895.1

**EXHIBIT F**

**STATE OF MINNESOTA** **DISTRICT COURT**
**COUNTY OF HENNEPIN** **FOURTH JUDICIAL DISTRICT**

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

Case No. 96-018477

(Consolidated Cases: 96-018477, 97-004742, 98-105681)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

Case No. 00-1980 DSD/JMM

**FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT**

F

WHEREAS plaintiffs and defendants entered into a Stipulation of Settlement, with exhibits (collectively, the "Settlement Agreement"), dated ______, 200_, to settle this class action litigation; and

WHEREAS on _________, 200_, the Courts entered an Order (the "Hearing Order") preliminarily certifying the putative class in these Actions for settlement purposes under Minn. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2) and Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2), ordering individual and publication notice to potential class members, scheduling a Fairness Hearing for __________, 200_, and providing those persons with an opportunity either to exclude themselves from the settlement class or object to the proposed settlement; and

WHEREAS the Courts held a Fairness Hearing on __________, 200_, to determine whether to give final approval to the proposed settlement; and

WHEREAS the Courts have issued Findings of Fact and Conclusions of Law Approving Class Action Settlement, dated _____________, 200_, granting final certification of the settlement class, approving the proposed settlement, and dismissing the settlement class members' claims (among other things); now, therefore,

Based on the submissions of the Parties and Class Members, on the evidence adduced at the Fairness Hearing, and on the Courts' Findings of Fact and Conclusions of Law dated _____________, 2000, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. **Incorporation of Other Documents.** This Order and Judgment Approving Class Action Settlement incorporates and makes a part hereof:

(a) the Stipulation of Settlement dated [__________], 2000, and filed with the Courts on [__________], 2000 (the "Stipulation of Settlement");

(b) the following exhibits to the Stipulation of Settlement: (i) Exhibit A (Guidelines for Determining, Scoring and Awarding Relief in the Claim Review Process); (ii) Exhibit B (Class Notice Package); (iii) Exhibit C (Publication Notice); (iv) Exhibit D (Proposed Hearing Order); (v) Exhibit E (Confidentiality Agreement); (vi) Exhibit G (Statement to Accompany Post-Execution Date Responses to Customer Complaints); (vii) Exhibit H (Post-Settlement Claim Form Mailing); (viii) Exhibit I (Post-Mailing Reminder); and (ix) Exhibit J (Claim Review Administrative Forms and Letters); and

(c) the Report of the Administrator, Exhibit __ to this Order and Judgment (describing the Class Notice Package, its distribution to Class Members, and the Publication Notice).

2. **Jurisdiction.** The Courts have personal jurisdiction over all Class Members (as defined below) and have subject matter jurisdiction over this action and all claims and causes of action resolved by this settlement, including all the Claims and Causes of Action referred to in the Release. Accordingly, the Courts have jurisdiction to approve the proposed settlement, grant final certification of the Class, release Claims and Causes of Action as set forth in the Release, and dismiss this action on the merits and with prejudice.

3. **Final Class Certification.** The Class the Courts previously certified preliminarily is hereby finally certified for settlement purposes under Minn. R. Civ. P. 23(a),

23(b)(3), and 23(c)(2) and Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2). The Class consists of (A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, issued at any time during the Class Period; or (ii) an ownership interest in an individual deferred annuity contract or a participation interest in a Group Qualified Annuity issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity. The Class does not include (i) any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants; or (ii) any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under Section 1035 of the Internal Revenue Code. Notwithstanding the foregoing, the Class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any persons or entities who make a timely election to be excluded from the proposed Class with respect to a particular Policy or Annuity otherwise included within the Class; (ii) any persons or entities who have an ownership interest in (a) a Policy that was terminated prior to the Eligibility Date due to the death of the insured and on which death benefits were paid; (b) an Annuity that was terminated prior to the

Eligibility Date by reason of the death of the annuitant; (c) a Policy or Annuity that was issued, but not accepted or funded, or was returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; (d) a Policy or Annuity that was rescinded as part of a reissue of a new life insurance policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; (e) a Policy or Annuity that is the subject of a release signed by any person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity, (f) a life insurance policy that was a term life insurance policy or graded premium whole life insurance policy; (g) an annuity contract that was settled (*i.e.*, annuitized) prior to the inception of the Class Period; or (h) an annuity contract that was issued as an immediate annuity. A list of those persons who have excluded themselves from the Class, and who therefore are not bound by this Order and Judgment, is on file with the Courts as Plaintiffs' and Defendant's Joint Submission of Requests for Exclusion, dated __________, 200_, and is incorporated herein and made a part hereof.

4. **Appointment of Co-Class Counsel and Lead Counsel and Adequacy of Representation**. The law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Lockridge Grindal Nauen, P.L.L.P. are hereby appointed Co-Class Counsel; the law firm of Milberg Weiss Bershad Hynes & Lerach LLP is hereby appointed Lead Counsel; and the Class representatives have fully and adequately represented the Class for purposes of entering into and implementing

the settlement and have satisfied the requirements of Minn. R. Civ. P. 23(a)(4) and Fed. R. Civ. P. 23(a)(4).

5. <u>**Class Notice**</u>. Notice was provided to the Class in accordance with the Order dated __________, 2000 (the "Hearing Order"). Individual notice was sent by first-class mail, postage prepaid, to the last known address of the Policy and Annuity Owners and, in the case of a Group Qualified Annuity, to persons or entities who hold or held a participation interest in the Group Qualified Annuity, all as reflected by Defendants' records as maintained at the Corporate Office or by the results of any searches performed by a vendor hired by Defendants to update addresses of such persons or entities. In cases of pending litigation against the Defendants, notice was also mailed to any legal counsel known to represent the Class Member. Also in accordance with the Hearing Order, publication notice was published and notice was posted on the internet at the web sites for Defendants and Co-Class Counsel. The Courts find that the notice outlined above:

(a) constituted the best practicable notice to Class Members under the circumstances of this action;

(b) was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this class action; (ii) their right to exclude themselves from the Class and the proposed settlement; (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class' representation by Plaintiffs or Plaintiffs' counsel, and/or the award of

attorneys' fees); (iv) their right to appear at the Fairness Hearing — either on their own or through counsel hired at their own expense — if they did not exclude themselves from the Class; and (v) the binding effect of the Orders and Judgments in this action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

(c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice, and

(d) fully satisfied the requirements of the Minnesota Rules of Civil Procedure (including Minn. R. Civ. P. 23(c)(2) and (e)), the Minnesota Constitution, the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.

6. **Final Settlement Approval.** The terms and provisions of the Settlement Agreement, including all exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the Parties and the Class Members, and in full compliance with all applicable requirements of the Minnesota Rules of Civil Procedure, the Minnesota Constitution, the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. **Early Implementation.** The Defendants are hereby authorized, in their sole discretion but in consultation with Co-Class Counsel, and without requiring further approval of the Courts, to implement the settlement before the Final Settlement Date (as defined in the Settlement Agreement), in which case all provisions in the Settlement Agreement specifying actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date the Defendants elect to implement the settlement.

8. **Appeal After Early Implementation.** If the Defendants choose to exercise their discretion to implement the settlement before the Final Settlement Date, anyone seeking to appeal from the Courts' rulings must first (i) request to intervene upon a representation of inadequacy of counsel; (ii) request a stay of implementation of the settlement; and (iii) post an appropriate bond. Unless a would-be appellant satisfies all three of these requirements, the Defendants are authorized to implement the settlement before the Final Settlement Date even if such implementation would moot any appeal.

9. **Post-Settlement Mailing.** The Parties are hereby directed to mail the Post-Settlement Mailing materials in the form attached as Exhibit H to the Settlement Agreement, as provided by the Stipulation of Settlement.

10. **Securities Registration Not Required.** The Courts hereby confirm that, to the extent that any rights provided under this settlement (including but not limited to the right to designate another person as eligible to receive the ADB under the Settlement Agreement) might be deemed to be a security under section 3(a)(10) of the Securities Act of 1933, as

amended, registration of any such right would not be required by virtue of the Courts' approval of the settlement.

11. **No Tax Advice Being Given.** The Courts hereby confirm that the Parties and their counsel are not making any representations or providing any opinions or advice concerning the tax consequences of the proposed settlement or the election of any remedies under the settlement to individual Class Members, and the Parties and their counsel shall not be held liable for any tax consequences or elections.

12. **Binding Effect.** The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors, assigns, guardians, attorneys, trustees, and representatives, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Actions or are otherwise encompassed by the Release.

13. **Release.** The following Release, which is also set forth in Section XII of the Stipulation of Settlement, is expressly incorporated herein in all respects, is effective as of the Final Settlement Date, and forever discharges the Releasees from any Claims or Causes of Action in the Actions that arise from or relate to the Released Conduct:

A. Release and Waiver

1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releasees (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with,

directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).

2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or relate to any of the matters described in sections XII.B.2.(i)-(xiii) of the Stipulation of Settlement; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in the Stipulation of Settlement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable — notwithstanding that the parties have chosen Minnesota law to govern the Stipulation of Settlement — Plaintiffs and the Class Members hereby agree that these principles (including Cal. Civ. Code Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. Release and Waiver -- Definitions

1. "Claims and Causes of Action" (as used in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held in any Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

14. **Permanent Injunction.** All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Actions and/or the Released Conduct (as that term is defined in the Settlement Agreement) as to that Policy or Annuity, and (ii) organizing or soliciting the participation of any Class Members in a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit or other proceeding based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Actions and/or the Released Conduct as to that Policy or Annuity. The Courts find that issuance of this permanent injunction

is necessary and appropriate in aid of the Courts' jurisdiction over the action and to protect and effectuate this Order and Judgment.

15. **Enforcement of Settlement.** Nothing in this Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement; nor shall anything in this Order and Judgment preclude Plaintiffs or Class Members from participating in the Claim Review Process described in the Settlement Agreement if they are entitled to do so under the terms of the Settlement Agreement.

16. **Attorneys' Fees and Expenses.** Co-Class Counsel are hereby awarded attorneys' fees and reimbursement of their disbursements and expenses in the amount of $28 million, to be paid by Defendants to Lead Counsel. Such fees and expenses are to be paid by Defendants within 10 days after entry of this Order and Judgment subject to the conditions set forth in the Stipulation of Settlement. Lead Counsel, in its sole discretion, shall allocate and distribute this award of attorneys' fees and expenses among counsel for the Class.

17. **No Other Payments.** The preceding paragraph of this Order and Judgment covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Co-Class Counsel or any other counsel representing Plaintiffs or Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to this action, the settlement of this action, the administration of such settlement, and/or the Released Conduct except to the extent otherwise specified in this Order and Judgment and the Stipulation of Settlement.

18. **Modification of Settlement Agreement.** The Parties are hereby authorized, without needing further approval from the Courts, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement — including without limitation, the Post-Settlement Mailing materials and the forms to be used in the Claim Review Process — as are consistent with this Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement.

19. **Retention of Jurisdiction.** The Courts have jurisdiction to enter this Order and Judgment. Without in any way affecting the finality of this Order and Judgment, the Courts expressly retain jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,

(a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);

(b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining

Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

(c) entering any other necessary or appropriate Orders to protect and effectuate the Courts' retention of continuing jurisdiction;

*provided, however,* that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under paragraphs 7 and 18 above.

20. **No Admissions.** This Order and Judgment, and the Settlement Agreement (and any other document referred to here, or any action taken to carry out this Order and Judgment) shall not be used or construed as an admission or concession by the Defendants of any actual or potential fault, wrongdoing, liability or damages whatsoever, and shall not be used as any evidence or inference of any fault, wrongdoing, liability or damage against the Defendants. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by Defendants as to any actual or potential fault, wrongdoing, liability or damages and shall not be offered or received in evidence or used for impeachment in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Order and Judgment and the Settlement Agreement; *provided, however,* that this Order and Judgment and the Settlement Agreement may be filed in any action against or by the Defendants or Releasees (as defined in the Stipulation of Settlement) to support a defense of *res judicata*, collateral estoppel, release,

waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

21. **Dismissal of Actions.** The Actions, including all individual and Class claims resolved in them, are hereby dismissed on the merits and with prejudice against Plaintiffs and all other Class Members, without fees or costs to any party except as otherwise provided in this Order and Judgment.

SO ORDERED this _____ day of _______________, 200_. LET THE JUDGMENT BE ENTERED ACCORDINGLY.

_______________________________
The Honorable Myron S. Greenberg
Hennepin County District Court Judge

SO ORDERED this _____ day of _______________, 200_. LET THE JUDGMENT BE ENTERED ACCORDINGLY.

_______________________________
The Honorable David S. Doty
United States District Judge

350883.1

**EXHIBIT G**

[DATE]

STATEMENT TO ACCOMPANY POST-EXECUTION DATE
RESPONSES TO CUSTOMER COMPLAINTS

Dear Mr./Ms./Mrs. (Policy or Annuity Owner):

We are writing in response to your recent letter expressing concerns that you have about your policy or annuity.

[After a review of the matter, [issuing defendant] wishes to offer you [description of relief]. In considering this offer, you may want to consider the fact that, as stated in the Class Notice Package that you should have received or will receive shortly, [issuing defendant] has recently agreed to a proposed settlement of a class action lawsuit. You may be entitled to receive benefits under the proposed settlement. You also should know that:]

[OR]

[You should be aware that [issuing defendant] has recently agreed to a proposed settlement of a class action lawsuit and that you may be entitled to receive benefits under the proposed settlement. You should have received or will receive shortly a Class Notice Package that explains the proposed settlement in further detail. For now, you should be aware that:]

- A key feature of the proposed settlement is the Claim Review Process, which provides Class Members with the opportunity to submit a claim of misrepresentation or other claims of wrongdoing in connection with their policies and annuities for review by a Claim Evaluator chosen by counsel for the Class.

- [Although [issuing defendant] is making you an offer of relief in this letter, you still may participate in the Claim Review Process even if you accept its offer. To participate in the Claim Review Process, you must remain a member of the settlement class.]

- [The Claim Review Process may take into account any relief that you have already received from [issuing defendant] in connection with your policy or annuity. In no case, however, would you have to return any relief previously received.]

[NAME] [DATE]

- We are unable to tell you at this time what relief might be available to you in the Claim Review Process. Any such relief would depend on the nature and strength of your claim.

- The Claim Review Process will not begin until the settlement is final. The settlement is not expected to be final for several months at the earliest.

- As an alternative to the Claim Review Process, the proposed settlement offers a form of automatic relief called "General Relief." General Relief provides Class Members with accidental death benefit coverage for up to three years, depending on factors such as the type of policy or annuity you own or owned, the value of or premiums paid on an annuity, or the face amount of a policy.

- As another alternative to the Claim Review Process, if you replaced a life insurance policy issued by IDS Life Insurance Company or IDS Life Insurance Company of New York with another life insurance policy issued by either of those companies, you might be eligible to participate in the relief known as the Internal Replacement Relief. Please review the Class Notice Package for a description of this relief.

The Class Notice describes the settlement and sets forth your rights and your choices with respect to the settlement. If you have not already received notice of the proposed settlement, or if you have any questions about the proposed settlement process, please call 1-800-xxx-xxxx or, if you use TDD/TYY, 1-800-xxx-xxxx.

Sincerely,

**EXHIBIT H**

[Date]

[Name]
[Street Address]
[City, State & Zip Code]

Claim No. [Number]
Policy or Annuity No. [Number]

Dear [Name]:

The IDS Life Class Action Information Center has received your Election Form stating your wish to participate in the Claim Review Process. Enclosed is the Claim Form, which you should complete to the best of your abilities. If you have any questions, you may call the IDS Life Class Action Information Center at 1-800-xxx-xxxx (or the TDD/TYY terminal at 1-800-xxx-xxxx). We expect to answer calls promptly, but please be patient if there is a brief delay.

When completing the enclosed Claim Form, please provide as much detail as possible. The more detail you provide, the more easily and quickly the Claim Evaluator will be able to process your claim. When you have completed the form, remember to sign it and **send your materials so that they are postmarked no later than [DATE]**. Return the Claim Form and accompanying materials to the IDS Life Class Action Information Center at the address indicated on the enclosed envelope.

After reviewing the Claim Form, if you change your mind about participating in the Claim Review Process and would prefer the General Relief, do not send in the Claim Form. If you do not submit a Claim Form by the deadline, you will give up your right to have your claim considered, but you automatically will become eligible for the General Relief that you would have received if you had not elected the Claim Review Process. If you have any questions about General Relief, please call the IDS Life Class Action Information Center at the toll-free number provided above.

Please be sure to include your Claim Number (provided at the top of this page) in any communication concerning your claim. In addition, we suggest that you retain a copy of whatever papers you send to us.

Sincerely yours,

H

# HOW TO USE THIS
# CLAIM REVIEW CLAIM FORM

You should use this form to explain claims of misrepresentation or other wrongdoing that occurred in connection with your Policy or Annuity. Listed below are examples of the types of claims that might be submitted in the Claim Review Process:

1. Replacement Claims: Any claim that, at the time you bought your Policy or Annuity, the Defendants or their sales representatives misrepresented to you the advantages, disadvantages or financial impact of using the cash or account value or interest from an existing policy or annuity -- whether issued by one of the Defendants or by any other company -- to purchase a new Policy or Annuity issued by one of the Defendants.

2. Performance Misrepresentation Claims: Any claim that the Defendants or their sales representatives misrepresented to you the manner in which a Policy or Annuity would accumulate value. Valid performance claims are not simply claims that the earnings on a Policy or Annuity did not meet your hopes or expectations, but rather, must be based on a claim that it was misrepresented to you by the Defendants or one of their sales representatives that the Policy or Annuity would perform in a certain way that ultimately did not happen. For example, one might seek to base a performance claim on a misrepresentation (1) that the cash or account value in a Policy would not be less than shown to you in an illustration created by the Defendants or one of their sales agents or would be maintained at a certain level over the life of the Policy; (2) that the interest crediting rate on a Policy or Annuity would not vary over the life of the Policy or Annuity or would be maintained at a certain level over the life of the Policy or Annuity; (3) that a Policy's mortality and expense charges, cost of insurance, administrative or other charges would stay lower than the maximum levels guaranteed in the Policy form; (4) that for a fixed number of payments a Policy was guaranteed to produce certain cash values; (5) that a Policy's surrender value would always exceed the amount of premiums paid or that the Policy would always show a positive rate of return; (6) that the account value of an Annuity would be maintained at a certain level over the life of the Annuity; or (7) that a variable Annuity's account value would, at the time of death, always exceed the purchase payments (or where applicable, the Annuity's cash value on the most recent six year anniversary of the Issue Date).

3. Life Insurance Accelerated Payment or "Vanishing Premium" Claims: Any claim that the Defendants or their sales representatives misrepresented to you at the time of purchase that they would issue a "fully paid up" or "paid up" Policy for the originally illustrated face amount of insurance without any further premium payments; or that, in return for a fixed number or amount of premium payments or for premiums paid until a specified age, the Defendants would issue a Policy for the illustrated death benefit without ever requiring any further out-of-pocket premiums; or that the Policy was a "single pay," "x-pay" (where x equals a number of years), "zero-pay" or "no-pay" policy.

4. Life Insurance Savings and Retirement Misrepresentation Claims: Any claim that the Defendants or their sales representatives made misrepresentations at the time of purchase (1) that a Policy was primarily a vehicle for investment, savings, capital, money accumulation, pension or a retirement plan, while not meaningfully disclosing that the product was a life insurance policy or the fact that the product was a life insurance policy was misleadingly disguised, de-emphasized or minimized; or (2) that life insurance was suitable solely to meet the applicant's savings and retirement goals; or (3) that the premiums were "deposits," "contributions" or "outlays" and this characterization was misleading.

5. Qualified Annuity Misrepresentation Claims: Any claim that the Defendants or their sales representatives made misrepresentations that misled you into purchasing an Annuity to fund a tax-qualified retirement plan or arrangement (under the Internal Revenue Code), such as an IRA or 401(k) plan, through misrepresentations regarding the tax-deferral benefits of that Annuity or the plan or arrangement, or that such an Annuity was unconditionally appropriate for such plans or arrangements.

6. Annuity Tax Consequences Misrepresentation Claims: Any claim that the Defendants or their sales representatives misrepresented to you at the time of purchase the tax treatment of withdrawals from a variable Annuity concerning the application of ordinary income tax rates rather than capital gains tax rates. These claims will not apply to Annuities that were purchased to fund tax-qualified retirement plans or arrangements (under the Internal Revenue Code). You will only recover under these claims if you purchased your Annuity after August 5, 1997 as a result of a misrepresentation.

7. Annuity Age Misrepresentation Claims: Any claim that the Defendants or their sales representatives misrepresented to you at the time of purchase: (1) the liquidity of the Annuity, including the length of the surrender charge period, and you were at least 85 years old on the issue date of the Annuity; (2) the availability of the minimum death benefit guarantee of a variable Annuity, and you were at least 75 years old on the issue date of the Annuity; or (3) the estate tax consequences of an Annuity, and you were at least 75 years old on the issue date of the Annuity.

8. Other Marketing, Sales, Administration and Servicing Claims. Any claims that (i) the Defendants or their sales representatives made misrepresentations or otherwise misled you in connection with the marketing, sale, administration or servicing of your Policy or Annuity; (ii) the marketing, sale, administration or servicing of your Policy or Annuity violated any applicable statutes or regulations respecting product advertising or retail sales practices or the administration or servicing of Policies or Annuities; (iii) the administration or servicing of your Policy or Annuity violated the contractual provisions of the Policy or Annuity; (iv) you were the victim of forgery in connection with your Policy or Annuity; or (v) wrongdoing other than those set forth above in this paragraph occurred and had adverse economic consequences for the Applicant or the Claimant, and such wrongdoing related to the marketing, sale, administration or servicing of the Policy or Annuity, including the application for or purchase of any Policy or Annuity; the suitability of any

Policy or Annuity; the setting of any interest rates, purchase rates or renewal rates on any Policy or Annuity; the setting of any cost of insurance, commissions, taxes, fees or surrender charges, or expenses on any Policy or Annuity or Annuity subaccount; the investment choices made with respect to assets held in any Policy or Annuity; the benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; and the provision of financial or investment advice or the preparation of a financial plan insofar as either resulted in the sale, modification or maintenance of any Policy or Annuity.

The completed form, including a signed claimant declaration, should be returned to:

The IDS Life Class Action Information Center
P.O. Box _______
Faribault, MN 55402-_____
Re: Claim Form

**The form must be postmarked by [DATE].**

**IF YOU ARE SUBMITTING A CLAIM FOR MORE THAN ONE POLICY OR ANNUITY, YOU MUST FILE A SEPARATE CLAIM FORM FOR EACH POLICY OR ANNUITY. IF YOU ARE A CO-OWNER OF A POLICY OR ANNUITY, ALL CO-OWNERS WILL BE PRESUMED TO BE ACTING TOGETHER IN FILING THE CLAIM.**

**This Claim Form has two parts:**

(1) Part I asks specific questions about you and your Policy or Annuity, and

(2) Part II asks you to describe your claim in your own words.

**You must attach all documents you have that relate to your Policy, Annuity or claim, whether or not they support your claim. (If you have previously corresponded with an attorney acting on your behalf about your claim, you should not include any correspondence between you and your attorney. However, you must include all attachments to any such correspondence if those attachments were not written by or to your attorney.) You also may submit sworn statements from other persons who were present when you purchased your Policy or Annuity or otherwise have personal knowledge of your claim. If your claim relates to the replacement of a life insurance policy (or policies) or annuity contract (or contracts), you must also include all documents in your possession, custody or control that relate to the life insurance policy (or policies) or deferred annuity contract (or contracts) that was replaced.**

If you have any questions about the settlement, the Settlement Agreement or about this Claim Form, please call the IDS Life Class Action Information Center at 1-800-xxx-xxx or the

TDD/TYY terminal at 1-800-xxx-xxx. You may ask to speak with a representative or an attorney representing the Class, at your option.

* * *

Please make sure that you fully describe your claim. Please type or write legibly.

**CLAIM FORM**
**IDS LIFE CLASS ACTION SETTLEMENT**

**PART I**

Please review, confirm and, where necessary, supply the following information. If changes are required to any pre-printed information, please make them in the space provided.

1. Name(s): [to be completed by the Defendants]

2. Policy or Annuity Number: [to be completed by the Defendants]

3. Claim Number: [to be completed by Defendants]

4. Address: [to be completed by the Defendants]

5. Telephone Number: [to be completed by the Defendants, if known]

6. Business Address (optional): ______________________________

7. Business Telephone Number: ______________________________

8. Social Security Number: [to be completed by the Defendants, if known]

9. Name of the Person or Entity That Sold the Policy or Annuity:

## PART II

Please tell us, in your own words and to the best of your recollection, why you believe that you were misled or that wrongdoing with economic consequences otherwise occurred in connection with the marketing, sale, administration or servicing of your Policy or Annuity. Be as specific as you can by providing the following information:

- Your Specific Claim. Describe each particular misrepresentation or wrongdoing that you believe occurred in connection with your Policy or Annuity and how you believe you were misled or otherwise harmed by each misrepresentation or wrongdoing.

- Purchase of the Policy or Annuity. Tell us why you bought your Policy or Annuity. Did your Policy or Annuity serve your goals? If not, why not?

- Discussions with Financial Advisor/Sales Agent. Describe the discussions you had with your sales representative in buying your Policy or Annuity. How was the Policy or Annuity described to you?

- Other Information. Please provide any other information that you believe is important for your claim to be fairly decided.

- Supporting Documents. Identify to the best of your recollection the various documents you were given or shown in connection with your Policy or Annuity. You should describe, for example, any sales materials, illustrations, correspondence, or loan or withdrawal documents that you recall seeing or receiving with respect to your Policy or Annuity. If you signed any blank documents that were later completed by your sales representative, please describe the circumstances and how you believe your sales representative used the documents. **IF YOU HAVE COPIES OF THESE DOCUMENTS IN YOUR POSSESSION, CUSTODY OR CONTROL, YOU MUST ATTACH TO THIS CLAIM FORM A COPY OF EACH DOCUMENT, INCLUDING YOUR POLICY OR ANNUITY AND ANY APPLICATION OR ATTACHMENT TO YOUR POLICY OR ANNUITY. YOUR FAILURE TO PROVIDE A COMPLETED, SIGNED CLAIM FORM AND ALL RELEVANT DOCUMENTS IN YOUR POSSESSION, CUSTODY OR CONTROL WITHOUT REASONABLE JUSTIFICATION MAY RESULT IN DEFAULT OR AN ADVERSE RESULT IN THE CLAIM REVIEW PROCESS.**

**CLAIM NUMBER**____________

This page is for you to describe your claim. If you need more space you may attach as many additional pages as are necessary. Please put your claim number on each page.

**CLAIM NUMBER**____________

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

For Owners and Co-Owners

I swear under penalty of perjury that (*i*) the foregoing is true and correct; (*ii*) I submit herewith copies of all documents in my possession or control relating to the life insurance policy or deferred annuity contract that is the subject of the claim; and (*iii*) all such copies (if any) are authentic and unaltered copies of the original documents. I understand that if I am found to have made a willfully false statement as to any material matter in this Claim Form, I can be criminally prosecuted for perjury and may be subjected to a fine or imprisonment, or both under applicable law.

______________________________
Signature of Owner

______________________________
Signature of Co-Owner, if applicable

350892.1

**EXHIBIT I**

POST-MAILING REMINDER

Claim No. [number]
Policy or Annuity No. [number]

Our records show that you submitted an Election Form electing the Claim Review Process in Benacquisto, et al. v. American Express Financial Corporation, et al. Approximately one month ago, we sent you a Claim Form. You must complete the Claim Form and submit it postmarked no later than [DATE] if you want your claim to be reviewed in the Claim Review Process. If you have not received your Claim Form, please call 1-800-xxx-xxxx (or, if you are hearing-impaired, 1-800-xxx-xxxx), and we will send another Claim Form to you. If you no longer want to submit a claim but instead prefer General Relief, you should not return your Claim Form.

If you do not return your Claim Form on time, you will no longer be eligible to submit a claim. Instead, you will automatically receive the General Relief for which you would have been eligible if you had never elected the Claim Review Process. If you have any questions about the General Relief for which you would have been eligible by not submitting a Claim Form, please call the number listed above.

Thank you,



I