**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESON, ARNOLD MORK, ISABELLA MORK, RONDALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980(DSD/JMM)**

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS ACTION SETTLEMENT AS TO CLAIMS OF RICHARD M. KALAC AND TRUDY A. KALAC BEFORE THE NASD**

## INTRODUCTION

American Express Financial Advisors, Inc. ("AEFA") and Mr. Greg Hogue submit this motion to the Court in order to enforce the terms of a class action settlement that was approved by this Court, Doty, J., as it relates to an action subsequently filed with the National Association of Securities Dealers ("NASD") by class members Trudy A. Kalac ("Mrs. Kalac") and Richard M. Kalac ("Mr. Kalac") (collectively "the Kalacs").

The Kalacs' Statement of Claim before the NASD implicates the same annuity products that were at issue in the case of *Lesa Benacquisto, et al. v. American Express Financial Corporation, et al.* (File Nos. 96-018477 and 00-1980 (DSD/JMM)) ("*Benacquisto*"). A Final Order and Judgment Approving Class Action Settlement and Dismissing Complaint (the "Final Order and Judgment") was entered in this action on May 15, 2001, the effect of which was among other things, to grant final certification of the settlement class, to approve the proposed settlement, and to dismiss the settlement class members' claims. (*See* Final Order and Judgment (attached as Exhibit A)).

The Final Order and Judgment made clear that "[a]ll Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined" from commencing any other lawsuit, arbitration, or administrative, regulatory or other proceeding in any jurisdiction relating to the matters at issue in the case. (*See* Ex. A ¶ 14.) The Final Order and Judgment also explains that this Court "expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment." (*Id.* ¶ 15.)

Because the arbitration commenced by the Kalacs involves claims related to the same annuity products and policies that were at issue in the *Benacquisto* class action, (See further discussion and referenced exhibits infra) and because the Kalacs chose to become class members (and to receive the relief entitled to them as such) this Court should enforce its Final Order and Judgment as to the Kalacs and enter an Order enjoining them from pressing these claims before the NASD.

**THIS COURT'S DECISION IN THE CHANDLER CASE**

This Honorable Court has previously ruled on other cases, virtually identical to the one at issue here, in which investors have brought NASD arbitration claims involving claims covered by the Class Action settlement. For example, this past spring, this Court entered the attached Order (Exhibit B) in the *Chandler* case, awarding relief just like that sought by movant here. In Chandler, the same movant now before this Court respectfully moved the Court "to enforce the Class Action Settlement as to claims of Gene and Willowdean Chandler before the NASD." The Chandlers had submitted an arbitration claim to the NASD in June 2003, seeking relief against AEFA, a defendant in the underlying matter. In its Order dated April 26, 2004, this Court held that "Defendant's motion to enforce class action settlements as to the claims of Gene and Willowdean Chandler before the NASD is granted…" Allowing the arbitration claim to proceed, this Court ruled, "would be to negate the settlement and allow the Chandlers to proceed on claims for which they have been provided a remedy and which were expressly released in the settlement." (Id at 7) In its order, the court held the Chandlers were "permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative,

regulatory or other proceeding based on or relating to the claims and causes of action or the facts and circumstances relating thereto in Benacquisto et al. v. American Express Financial Corp. et al., and case number 96-018477 and any life insurance policy or variable annuity products covered therein…"

The instant case of the Kalacs presents the same situation. The Defendant regrets that it needs to use the Court's valuable time and resources on a matter so clear , straight-forward and capable of resolution by the parties, but movant's attempt to convince the Kalacs to voluntarily dismiss claims barred by the Class Action Settlement has proven unavailing. Accordingly, AEFA, through its counsel, seeks from this Court an Order similar to that issued in the virtually identical Chandler case.

**THE KALAC'S CLAIMS BEFORE THE NASD**

On or about May 4, 2004, the Kalacs executed an NASD Arbitration Uniform Submission Agreement and submitted a Statement of Claim (the "Claim") to the NASD against AEFA and Mr. Hogue. Kalac, et al. v. American Express Financial Advisors, Inc., and Gregory Hogue, NASD Dispute Resolution Number 04-03420. . (Exs. C and D) The gravamen of the Claim is that by selling variable annuity products to the Kalacs, the Respondents pushed unsuitable products on the Kalacs that provided little or no benefit to the investors, but very large benefits to American Express and its representatives. (Ex. D at ¶2.10.) The Claim further contends that, by placing the Kalacs in unsuitable policies and variable annuity products, American Express and its representatives breached their duty to the Kalacs, "putting their own economic interests above that of the Kalacs, by making investment decisions based upon the commissions that respondents could generate rather than making investment decisions based upon the Kalacs' life situation,"

causing them to lose money that was necessary to support them throughout their retirement years. (Ex. D at ¶3.2.) The Kalacs' Claim references Variable Universal Life Insurance accounts held by both Mr. and Mrs. Kalac and a Flexible Annuity held by Mr. Kalac. (Ex. D at ¶2.10.)

An internal investigation of the Kalac complaint, conducted by AEFA, determined the Kalacs allegations fell under the class action settlements from which the clients received general relief for Variable Universal Life and Flexible Annuity policy numbers: 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; 93103021591-004; and 931-6300267-004 (Ex E).

Correspondence between AEFA and Rust Consulting, Inc. (the Claims Administrator approved by the Court for the class action suit) confirms that the policies cited above were held by the Kalacs with AEFA, were listed in the class, and did receive general relief (Ex. F).

After having determined the Kalacs had asserted claims which had been settled, and were covered by the Class Action Settlement Agreement and Order, David A. Himes, ("Mr. Himes"), associate to Gary R. Irwin, ("Mr. Irwin"), counsel for Respondents in the underlying arbitration, informed claimants' counsel, B. Scott Whipple ("Mr. Whipple"), of the *Benacquisto* settlement and enclosed a copy of the Final Order and Judgment, as well as the Chandler Order referred to above (Ex. G). The Kalacs, through their counsel, however, have refused to dismiss the covered claims, and thus this motion has become necessary.

By this motion, AEFA contends that all claims made in the pending NASD proceeding concerning class action settlement-covered life insurance policies and

annuities are barred by the *Benacquisto* action, pursuant to the terms of the Final Order and Judgment in this case. AEFA does not claim that any and all of the Kalacs' claims in the arbitration are barred by this settlement. AEFA seeks only an Order barring claims with respect to products covered by the Class Action Settlement, namely, Variable Universal Life and Flexible Annuity policy numbers: 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; 93103021591-004; and 931-6300267-004.

**The *Benacquisto* Class Settlement and Its Effects**

Pursuant to the Final Order and Judgment, the *Benacquisto* class, as certified, agreed to release claims related to certain life insurance and annuity products. The certified class consists of:

> (A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, issued at any time during the Class Period; or (ii) an ownership interest in an individual deferred annuity contract or a participation interest in a Group Qualified Annuity issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity.

As reflected in the Notice of Class Action, Proposed Settlement, and Fairness hearing (the "Class Notice") in this case, which was distributed to the Kalacs and to other potential *Benacquisto* class members, the relevant Class Period begins on January 1, 1985 and continues through and including February 29, 2000 (Ex. H).

The Final Order and Judgment further provides that Plaintiffs and all other Class Members contractually agree and acknowledge that they:

> …shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of the, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of actions (defined below) that are based upon, related to, or connected with, directly or indirectly , in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in *Benacquisto*, et al. v. American Express Financial Corporation, et al., NO. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or *Benacquisto*, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District for the District of Minnesota; or (b) that relate in any way to the Relesased Conduct.

(Ex. A at 9, ¶ 13(A)(2).)

"Released conduct" is defined in the Final Order and Judgment as:

> …any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales, or replacements of any Policy or Annuity…

(*Id.* at 9, ¶ 13(B)(2).)

The Kalacs' Claim states "The Kalacs met with Mr. Hogue in November 1998 and January 1999 to discuss what to do with the funds in Mr. Kalac's profit-sharing account at MICO. Upon the advice and encouragement of Mr. Hogue, Mr. Kalac rolled

over approximately $248,000 from his profit-sharing account into an IRA that Mr. Hogue set-up at American Express. Mr. Hogue invested all of the funds from the MICO profit-sharing account in an American Express Annuity Product." (Ex. C at ¶ 2.7.) The Claim further states "Specifically, on March 26, 2000, Mr. Hogue had invested the money in the Kalacs' joint account in the following mutual funds:...Variable Universal Life Insurance for Mr. Kalac; Variable Universal Life Insurance for Mrs. Kalac; and Flexible Annuity for Mr. Kalac." (Ex. C at ¶2.10.) The annuities and universal life insurance policies which the Kalacs refer to are those covered by the settlement of the Benaquisto class action.

## ARGUMENT

**THE COURT SHOULD ENJOIN THE KALACS FROM PROCEEDING WITH ALL CLASS SETTLEMENT-BARRED CLAIMS BEFORE THE NASD PURSUANT TO THE FINAL ORDER AND JUDGMENT IN *BENACQUISTO***

### I. The Kalacs Assert Claims Relating to Class Settlement-Barred Products.

The Final Order and Judgment entered in *Benacquisto* encompasses, and bars claims relating to, annuity products about which the Kalacs are now complaining before the NASD. Pursuant to the final Order and Judgment, the *Benacquisto* class members agreed to release, acquit, and forever discharge claims related to certain life insurance and annuity products. Therefore, all of the Kalacs' claims relating to such settlement-barred products before the NASD should be enjoined.

### II. The Final Order and Judgment in *Benacquisto* Authorises This Court To Enjoin the Kalacs' NASD Proceeding.

#### A. The Court Has Continuing Jurisdiction in This Matter.

First, the Court's Final Order and Judgment in *Benacquisto* makes clear that the Court retains continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

(a) enforcing the terms and conditions of the Settlement agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of actions allegedly related to this case are or are not barred by this Order and Judgment, etc.);

(b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

(c) entering any other necessary or appropriate Order to protect and effectuate this Court's retention of continuing jurisdiction;

* * *

(Ex. A ¶ 19(a)-(c).)

Thus, the terms of the final Order and Judgment specifically authorize this Court to enter an Order enjoining the Kalacs from pursuing claims respecting their class action-covered annuities before the NASD.

**B. The Kalacs' Claims are Barred Because They Received Notice of the *Benacquisto* Class Action and Chose Not To Opt Out of The Class.**

Second, the Kalacs received proper notice of the *Benacquisto* class action, and they chose not to opt out of the class. The Notice of Class Action was distributed to the Kalacs, through the Court-approved Claims Administrator, Rust Consulting. (Ex. H.). The Kalacs chose not to opt of the class by the deadline set in the Class Notice (January 29, 2001), id., and they therefore became members of the class.

December, 22002, Richard M. Kalac and Trudy A. Kalac received , as members of the class, general relief in the form of free Accidental Death Benefit coverage (*See* Ex. I). Thus, the Kalacs received relief in connection with the annuity products at issue in the class action. In light of these facts, the Kalacs' NASD venued claims concerning the annuity products at issue in *Benacquisto* should be enjoined. The Kalacs' status as class members entitled them to all of the benefits (and detriments) of class membership, and indeed, the Kalacs received relief as class members in the form of free Accidental Death Benefit coverage from IDS Life. (*See* Ex. I).

The Kalacs' position regarding submission of a claim to the NASD regarding policies and annuities covered by the class action does not square with the relevant case law governing class action settlements, and it should therefore be rejected. For example, in Thompson v. Edward D. Jones & Co., 992 F.2d 187 (8th Cir. 1993), the U.S. Court of Appeals for the Eighth Circuit confronted a situation quite similar to the one at bar. In that case, the Eighth Circuit affirmed a District Court decision which enjoined an investor who had been a member of a settled class action from bringing a subsequent suit against a brokerage firm. Id., 992 F.2d at 188. In its Final Judgment of Dismissal respecting the class action, the District Court ordered that "[e]ach member of [the class]...be enjoined from asserting against the defendants...any representative, derivative or other claim of any nature whatsoever which any of them has or may have in connection with the above-described 1983 and 1984 NRM limited partnerships or any other matter released by said class members in connection herewith;..." *Id.* Based on the Final Judgment of Dismissal, the District Court enjoined the investor's subsequently filed action as it related to investments covered by the class action. *Id.* at 189.

On appeal, the Eighth Circuit began by observing that a district court's issuance of an injunction is reviewed under an abuse of discretion standard. *Id.* (citing *Surgidev Corp. v. Eye Technology, Inc.*, 828 F.2d 452, 457 (8th Cir. 1987).) Moreover, the court emphasized that "it is clear that the district court has the authority to issue an injunction enforcing the Final Judgment of Dismissal and Order which embody the terms of the settlement agreement." *Id.* (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992) ("District courts have an inherent authority to enforce their injunctions."); *Untied States v. Fischer*, 864 F.2w 434 436 (7th Cir. 1988); and *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

Responding to a claim made by the investor that the scope of the class action settlement did not cover her subsequent claims, the court referenced the broad language used in the Notice and in the Final Judgment of Dismissal, which precluded class members from commencing any action that a class member "has or may have in connection with the above-described 1983 and 1984 NRM limited partnerships." 992 F.2d at 190. The court concluded that "[t]he settlement bars all claims related to the NRM-83 investments, including those which an individual class member may have had, but knowingly chose to relinquish by remaining a member of the class." *Id.* at 190-191 (citing *TBK Partners, Ltd. V. Western Union Corp.*, 675 F2d. 456, 461 (2d Cir. 1982) ("[W}here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence."); and

*In re VMS Sec. Litig.*, Fed.Sec.L.Rep. ¶ 97,301 (N.D. Ill. Feb. 20, 1992), *aff'd in relevant part,* 21 F.3d 139 (7th Cir. 1994) (arbitration proceedings brought by class members who received notice of proposed settlement and who did not opt out of the class were barred by prior settlement despite fact that suitability and oral misrepresentation claims were not at issue in class action).

The facts of the instant case are not materially different from *Thompson*. As in *Thompson*, this case involves a Final Order and Judgment that encompasses the Kalacs' claims, and it too is drafted in broad terms. Among other things, *Benacquisto* class members agreed that they would not "now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf of the Class or the general public or any other person or entity, any Claims and Causes of actions (defined below) that are base upon, related to, or connected with, directly or indirectly, in whole or in part" the claims at issue. (Ex. A at 9 ¶ 13(A)(2).)

Furthermore, the Kalacs received a class notice document that advised them, among other things, that they could contact a toll-free hotline in order to receive further information about the class settlement (Ex. H). The Kalacs were free to educate themselves about the class action and to explore any questions they had about it. (*See Id.*) In its Chandler Order released this past Spring, this Court cogently explored this very issue and quickly cut through the assorted excuses the Chandlers attempted to rely on in an attempt to exclude their NASD Claim from the class action settlement.

Under the settlement agreement, class members received both the benefits and the detriment, of the contract into which they freely entered. The Kalacs specifically chose

to be a part of this class by not exercising their rights to opt out of it, and they received relief as did other members of the class.

Any rule allowing the Kalacs now to press claims related to these annuities would eviscerate the binding settlement agreement into which the Kalacs entered, and would be contrary to the policy of encouraging class action settlements. *See, eg., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3rd Cir. 2001)(upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actins "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large multi district class action").

## CONCLUSION

For all of these reasons, movant respectfully requests that this Honorable Court enjoin class members, the Kalacs, from proceeding on any claims before the NASD in NASD arbitration number 04-03420 that are barred by the class action settlement. The exact annuities and variable life insurance policies at issue are specified in the attached proposed Order, as well as in Exhibit E from AEFA and F, H and I from Rust Consulting verifying that these products were included in the class action notice and settlement procedures and that the Kalacs did not opt-out.

Dated: December 15, 2004

Edgerton, Weaver & Irwin, LLC

By: Gary R. Irwin
(License #0179991)
5050 Lincoln Drive, Ste. 480
Interlachen Corp. Center
Minneapolis, MN 55436
(952) 345-4444
girwin@neilaw.com

ATTORNEY FOR AMERICAN EXPRESS FINANCIAL ADVISORS, INC., AND GREG HOGUE