UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1980(DSD/JMM)

Lesa Benacquisto, Daniel Benacquisto, Richard Thoresen, Elizabeth Thoresen, Arnold Mork, Isabella Mork, Ronald Melchert and Susan Melchert, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**ORDER**

American Express Financial Corporation, American Express Financial Advisors, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company, IDS Life Insurance Company and IDS Life Insurance Company of New York,

Defendants.

This matter is before the court upon the motion of defendant American Express Financial Advisors ("AEFA") "to enforce class action settlement as to claims of Gene and Willowdean Chandler before the NASD." For the reasons that follow, defendant's motion is granted.

**BACKGROUND**

On May 15, 2001, the court issued an order entering final judgment, certifying the class, approving the proposed class settlement and dismissing the complaint in this consolidated class action.[1] (Order of May 15, 2001 at 3, 6, 13 & 17.) Gene and Willowdean Chandler (the "Chandlers") were unnamed class members in that action. Through the class settlement and in exchange for their release of all claims, the Chandlers and other class members received general relief in the form of free accidental death benefit insurance.

In June 2003, the Chandlers submitted an arbitration claim to the National Association of Securities Dealers ("NASD"), seeking relief against AEFA, a defendant in the underlying matter, as well as Grinkmeyer & Assocs., Kerry Grinkmeyer and Chip Grinkmeyer (the "Grinkmeyers"). (Vaccaro Aff. Ex. C.) The Grinkmeyers are investment brokers. They provide financial services and are a franchisee of defendant AEFA. The Chandlers' NASD claim focuses on the alleged unsuitability of variable annuity products sold to them by AEFA, through the Grinkmeyers. The Chandlers claim that they

---

[1] The Hennepin County Minnesota District Court and this court had previously issued a joint order consolidating several related actions and preliminarily certifying a class of plaintiffs. The claims in those actions focused on the alleged unsuitability of certain life insurance policies and deferred annuity plans issued by defendants AEFA, American Express Financial Corporation, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company, IDS Life Insurance Company and IDS Life Insurance Company of New York.

lost over $400,000 as a result of inappropriate investments recommended by the Grinkmeyers and provided by AEFA. (Id. ¶¶ 4-6.)

When AEFA's counsel learned of the Chandlers' NASD claim, he informed counsel for the Chandlers that they were members of the Benacquisto class, they had not opted out of the settlement, they had received general relief in the settlement and they had relinquished any further claims relating to the variable annuity products. (Id. Ex. D.) In response, the Chandlers amended their NASD claim. (Id. Ex. E.) In their amended filing, the Chandlers acknowledge receipt of notice of the Benacquisto class action and their right to opt out of the proposed settlement. (Id. ¶ 1.) However, they allege that Chip Grinkmeyer instructed them to disregard the notice because it did not apply to their investments. (Id. ¶ 2.) They argue that Chip Grinkmeyer's advice relative to the settlement and opt out notice constituted fraud and breach of fiduciary duty and that they should be allowed to pursue their claims against AEFA and the Grinkmeyers notwithstanding the class settlement. (Id. ¶¶ 3-5.) AEFA and the Grinkmeyers now move that the court bar the Chandlers' arbitration of any claims relating to annuities covered by the Benacquisto class settlement.

**DISCUSSION**

In its final order, the court permanently enjoined class members who did not opt out of the settlement from bringing any

subsequent action based on the policies and annuities that were the subject of the litigation. (Order of May 15, 2001 ¶ 14.) The court also expressly retained jurisdiction over "all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and [the] Order and Judgment." (Id. ¶ 19.) The court specifically reserved jurisdiction to determine whether subsequent claims were barred by the order. (Id. ¶ 19(a).) The court possesses the authority to issue injunctions to enforce its final orders. Thompson v. Edward D. Jones & Co., 992 F.2d 187, 189 (8th Cir. 1993).

AEFA and the Grinkmeyers argue that some or all of the Chandlers' NASD claims seek to arbitrate matters covered by the Benacquisto settlement. They point specifically to the reference to accounts 93103417099, 93005201012 and 93100800441 in the NASD claim, all of which were included in the Benacquisto settlement. Despite their failure to opt out of the settlement, the Chandlers contend that they should be permitted to proceed with their NASD claims for two reasons. (Pls.' Mem. Opp'n Mot. to Enforce Settlement at 2.) First, they argue that Chip Grinkmeyer defrauded them of their right to opt out of the settlement by telling them that "(1) the settlement applied only to insurance products; (2) the settlement terms did not apply to the Chandlers' investments; (3) the case had already been settled; and (4) [they] 'should throw the document in the can.'" (Id. at 2.) For that

reason, the Chandlers argue that their unsuitable investment claim should be allowed to go forward. Second, they assert that their claims of fraud, negligence, breach of fiduciary duty, unauthorized practice of law and negligent supervision should be allowed because they were not specifically addressed in the Benacquisto settlement.

AEFA and the Grinkmeyers respond that the Chandlers' first argument fails because any reliance on Chip Grinkmeyer's statements was unreasonable as a matter of law. The court agrees for the following reasons. First, Chip Grinkmeyer is not a lawyer. "When perplexed by terms in a legal document, a prudent investor does not ring up another layman. He calls a lawyer." VMS Ltd. P'ship Sec. Litig., 26 F.3d 50, 52 (7th Cir. 1994). Second, the notice of proposed settlement included the following information:

> **PART N: HOW TO GET ADDITIONAL INFORMATION**
>
> A toll-free number has been established, and trained personnel who are employed by the independent, Court-approved Administrator are available answer any questions you might have about the proposed settlement. If you have any questions after reading this Notice, or if you need a large-print version of the Class Notice Package, please call **1-800-433-5314**. If you use a TDD/TTY terminal for the hearing impaired, please call 1-800-657-8808.

(Vaccaro Aff. Ex. F at 20.) Rather than calling "trained personnel who are employed by the independent, Court-approved Administrator," the Chandlers sought advice from a broker.

Moreover, when Chip Grinkmeyer's response to their inquiries directly contradicted the plain language of the proposed settlement

notice, the Chandlers neither pursued the matter with their own attorney, nor followed up by calling the toll-free information number. According to the Chandlers, Grinkmeyer told them that the settlement applied only to insurance products. (Vaccaro Aff. Ex. E. at 1.) However, the notice of proposed settlement expressly states that it relates to "certain life insurance policies and deferred annuity contracts." (Id. Ex. F at 1, emphasis added.) They further allege that Grinkmeyer told them the settlement did not apply to their investments. (Id. Ex. E at 1.) Yet the notice repeatedly and consistently refers to "you" and "your" rights, policies and annuities, and states that records indicate that "you ... have or had an ownership interest" in a life insurance policy or annuity that is subject to the lawsuit. (Id. Ex. F.) The Chandlers also claim that Grinkmeyer told them "the case had already been settled." (Id. Ex. E at 1.) However, the notice is captioned "Notice of Class Action, Proposed Settlement and Fairness Hearing," repeatedly referred to the settlement as "proposed," and plainly indicated that final court approval was pending. (Id. Ex. F at 1, 8 & 15.)

Although the issue of reasonableness is at times a question of fact for the jury, reliance is unreasonable as a matter of law when oral statements are directly contradicted by a written expression of the agreement. See Clements Auto Co. v. Service Bureau Corp., 444 F.2d 169, 179 (8th Cir. 1971); General Corp. V. General Motors

Corp., 184 F. Supp. 231, 238-39 (D. Minn. 1960). That is the case here. Because reliance on Chip Grinkmeyer's statements about the proposed settlement was unreasonable, the allegation of fraud does not provide a basis to release the Chandlers from the settlement.

In their second argument, the Chandlers urge that Chip Grinkmeyer's misrepresentations about the notice of proposed class settlement entitle them to relief apart from their inappropriate investment claim. That argument also fails for several reasons. First, while the Chandlers' brief to this court alleges fraud, negligence, breach of fiduciary duty, unauthorized practice of law and negligent supervision, all based on Chip Grinkmeyer's statements about the settlement, their claim to the NASD continues to allege inappropriate funding of their individual retirement accounts. (Pls.' Mem. Opp'n Mot. Enforce Settlement at 3-5; Vaccaro Aff. Ex. C. ¶ 4.) Second, even if the arbitration was limited to Grinkmeyer's statements about the proposed settlement, the action would necessarily regress to the inappropriate funding claim. That is so because the only damage the Chandlers assert is loss of the opportunity to opt out of the class and pursue their claims individually. In either case, the result would be to negate the settlement and allow the Chandlers to proceed on claims for which they have been provided a remedy and which were expressly released in the settlement. Finally, the court notes that

> 'where there is a realistic identity of issues between the settled class action and the

> subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members, the situation is analogous to the barring of such claims that could have been asserted in the class action. Under such circumstances, the paramount policy of encouraging settlements takes precedence.'

Thompson, 992 F.2d at 191 (quoting TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 461 (2d Cir. 1982)). In light of that preference, carefully crafted, comprehensive class settlements should rarely be undone.

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to enforce class action settlement as to claims of Gene and Willowdean Chandler before the NASD [Docket No. 109] is granted.

2. In accordance with the court's final order and permanent injunction dated May 15, 2001, the Chandlers are permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding based on or relating to the claims and causes of action, or the facts and circumstances relating thereto in Benacquisto et al. v. American Express Financial Corp. et al., Civil No. 00-1980(DSD/JMM) and case no. 96-018477 and any life insurance policy

or variable annuity products covered therein, including but not limited to account nos. 93103417099, 93005201012 and 93100800441.

Dated: April 26, 2004

s/David S. Doty
David S. Doty, Judge
United States District Court