**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESON, ARNOLD MORK, ISABELLA MORK, RONDALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

**Civil No. 00-1980(DSD/JMM)**

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

---

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS ACTION SETTLEMENT AS TO CLAIMS OF PETER G. COVERT, IRA AND LINDA L. COVERT, IRA BEFORE THE NASD

## SUMMARY

This is another case in which claimants (here, Peter G. Covert, IRA and Linda L. Covert, IRA) have filed an NASD arbitration (Case No. 04-05362) in which they assert claims specifically barred from re-litigation by this Court's Order in Benacquisto, et. al. v. AEFA, et.al., Civ. No. 00-1980 (DSD/JMM). The claimants in the NASD arbitration underlying this motion were class members in Benacquisto and did not opt-out. Nonetheless, they have asserted claims which were settled in Benacquisto and thus may not be re-litigated. AEFA, plaintiff herein and defendant in Benacquisto, moves this Court to enjoin the Coverts from re-litigating any claims settled in Benacquisto. In its Benacquisto Order, this court specifically reserved jurisdiction to hear and resolve motions like this one.

This Court has previously issued Orders enforcing its Benacquisto Order in cases filed by claimants the Chandlers (Exhibit 1) and the Kalacs (Exhibit 2). This case raises the exact same issue. Here, the claimants purchased products which were subject to the Benacquisto class action. The Class Action Administrator, Rust Consulting, has determined that the Coverts received notice of the class action and this court's various Orders regarding opt-out rights and the like. The Coverts did not opt out of the Benacquisto settlement (Discovery in the NASD Arbitration has also confirmed that the Coverts did receive everything which Rust Consulting attests that it sent to them). Accordingly, they are bound by this Court's Order. American Express Financial Advisors, Inc.("AEFA") defendant in Benacquisto and now in the Coverts' NASD arbitration claim (Exhibit 3), seeks an appropriate Order from this Court stating the

obvious-claims covered by the settlement in Benacquisto are settled and may not be re-litigated in an NASD arbitration matter.

## FACTS

In late 1999, Claimants met with David Karr ("Karr") and John Fountain ("Fountain"), who are both Financial Advisors with AEFA. After consulting with Karr and Fountain, Claimants each agreed to invest in **an annuity-and, specifically, an annuity at issue in Benacquisto.** .

On December 21, 1999, Mr. Covert invested $387.582.52 in an American Express Retirement Advisor Variable Annuity("RAVA") that was issued through IDS Life Insurance Company ("IDS"). (See Exhibit 4, which is a true and correct copy of the annuity Contract Data for Mr. Covert's IDS annuity.) On December 23, 1999, Mr. Covert invested an additional $159,077.53 in the same annuity.

On December 21, 1999, Mrs. Covert invested $71,903.51 in another American Express Retirement Advisor Variable Annuity that was issued through IDS. (See Exhibit 5, which is a true and correct copy of the annuity Contract Data for Mrs. Covert's IDS annuity.)

On September 8, 2000, Plaintiffs and Defendants in the Benacquisto class action stipulated to settle their lawsuit regarding the sale of certain life insurance and annuity products. (Exhibit 6, pp.4-5.) On October 2, 2000, this Court, the United States District Court for the District of Minnesota ("United States District Court") certified the class in the Benacquisto class action and ordered individual and publication notice to class members. The United States District Court ordered that the class includes, but is not limited to, *all persons who have an ownership interest in an individual deferred annuity*

*contract issued by IDS Life Insurance Company.* The class action notice included IDS annuity contract number 9310-06497128, which is the annuity that Mr. Covert purchased through AEFA, and IDS annuity contract number 9310-064965388, which is the annuity that Mrs. Covert purchased through AEFA. (Id., Exhibit 4 and Exhibit 5.)

The Class Action Administrator for the Benacquisto Class Action, Rust Consulting, has certified that the Coverts received all requisite notices concerning the class action, and did not opt out. (A true and correct copy of the Declaration of Matthew Potter, a Principal Consultant for Rust, is attached hereto as Exhibit 7.) (A true and correct copy of the class action notices sent to the Coverts is also attached hereto as Exhibit 8.) The address to which Rust mailed the class action notice packages is the same address that Claimants indicated on their applications for the IDS annuities. (A true and correct copy of the IDS annuity application for Mr. Covert is attached hereto as Exhibit 9. A true and correct copy of the IDS annuity application for Mrs. Covert is attached hereto as Exhibit 10.) Moreover, the address to which Rust mailed the class action notice packages is the same address that is currently listed as the address of record on the IDS annuity statements for Claimants. (A true and correct copy of a document from AEFA that shows the current address of record for the IDS annuities of Claimants is attached hereto as Exhibit 11.) Rust has not received notification from the Postal Service, either by return of the mailings or otherwise, that the class action notice packages were undeliverable at the addresses to which they were mailed. (Exhibit 7, paragraph 5.)

In addition, Rust published notice of the class action in the newspaper with the largest circulation in each of the fifty states, as well as the national editions of the New York Times, The Wall Street Journal, and the USA Today. (Exhibit 7, paragraph 6.)

Furthermore, notice of the Benacquisto class action was posted on the Internet websites of counsel for the class members and counsel for Defendants. (Exhibit 6, p. 11.)

The individual and publication notices also included notice of a Fairness Hearing on March 6, 2001 that would provide the potential class members with an opportunity either to exclude themselves from the settlement class or object to the proposed settlement. (Exhibit 6, p. 5)

Claimants never submitted any exclusion request, either timely or untimely, with respect to the Benacquisto class action. (Exhibit 7, paragraph 9.) Therefore, Claimants were members of the Benacquisto class action.

On March 6, 2001, the United States District Court held the Fairness hearing to determine whether to give final approval to the proposed settlement. (Exhibit 6, p. 5) On May 15, 2001, the United States District Court granted final approval of the settlement class, approved the proposed settlement, and dismissed the settlement class members' claims. (Exhibit 6)

After the final approval of the settlement by the United States District Court on November 14, 2001, notice of the General Relief provided under the settlement was mailed to Claimants at 4730 Crest Avenue, Riverside, California 92503-2919. (Exhibit 7, paragraph 7.) (A true and correct copy of the notices of General Relief sent to the coverts are attached hereto as Exhibit 12.) As stated above, this is the same address listed on the IDS annuity applications of Claimants and is the current address of record listed with AEFA for their IDS annuities. (Exhibits 7, 9 and 10) Rust has not received notification from the Postal Service, either by return of mailings or otherwise, that the General Relief

notices were undeliverable at the addresses to which it was mailed. (Exhibit 7, paragraph 8.)

Under the terms of the Benacquisto Settlement Agreement ("Settlement Agreement"), AEFA offered claimants the option of claim review or accidental death insurance coverage. The Coverts elected free Accidental Death Benefit coverage on their IDS annuities. (Exhibit 12.) Mr. Covert received a free Accidental Death Benefit in the amount of $63,321 and Mrs. Covert received a free Accidental Death Benefit in the amount of $55,237. (Id.)

In short, the Coverts purchased products covered by the Benacquisto class action, they received all requisite notices of the Class Action, they did not opt out, they received the benefits provided by the Class Action settlement, and they are now bound by the Settlement.

Nonetheless, on July 20, 2004 the Coverts filed an NASD arbitration claim in which they seek recovery of damages as a result of their purchase of annuities subject to the Benacquisto Class Action Settlement (Exhibit 3) AEFA is the respondent in that action, and has requested that the Coverts dismiss any claims covered by the Benacquisto Class Action settlement. They have refused to do so, and are thus in violation of this Court's Order and Injunction. AEFA now requests that the Court enforce its Order in Benacquisto. This Court retained exclusive jurisdiction over the exact question at issue here-are subsequent actions covered by the Benacquisto Class Action Settlement and this Court's Order approving the settlement, and barring future claims covered by the settlement? Claimants, the Coverts, have sought to have this question decided by the

NASD arbitration panel and , surprisingly, the NASD arbitration panel has ignored this Court's Order.

An arbitration hearing on the merits of the Coverts' claims is scheduled for June 2005. AEFA respectfully requests an Order, identical to those issued in Chandler and Kalac, affirming that any claims settled by the Benacquisto class Action settlement may not be asserted again in the Coverts' NASD arbitration claim.

**THIS COURT'S DECISION IN THE CHANDLER CASE**

This Honorable Court has previously ruled on other cases, virtually identical to the one at issue here, in which investors have brought NASD arbitration claims involving claims covered by the Class Action settlement. For example, this past spring, this Court entered the attached Order (Exhibit 1) in the *Chandler* case, awarding relief just like that sought by movant here. In Chandler, the same movant now before this Court respectfully moved the Court "to enforce the Class Action Settlement as to claims of Gene and Willowdean Chandler before the NASD." The Chandlers had submitted an arbitration claim to the NASD in June 2003, seeking relief against AEFA, a defendant in the underlying matter. In its Order dated April 26, 2004, this Court held that "Defendant's motion to enforce class action settlements as to the claims of Gene and Willowdean Chandler before the NASD is granted..." Allowing the arbitration claim to proceed, this Court ruled, "would be to negate the settlement and allow the Chandlers to proceed on claims for which they have been provided a remedy and which were expressly released in the settlement." (Id at 7) In its Order, this Court held that the Chandlers were "permanently barred and enjoined from filing, commencing, prosecuting, maintaining,

intervening in, participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding based on or relating to the claims and causes of action or the facts and circumstances relating thereto in Benacquisto et al. v. American Express Financial Corp. et al., and case number 96-018477 and any life insurance policy or variable annuity products covered therein…"

Similarly, in Kalac, et al. v. American Express Financial Advisors, Inc., et al. (NASD Dispute Resolution Number 04-03420), a virtually identical situation occurred wherein claimants filed an NASD arbitration including claims which were previously settled by the settlement of the Benacquisto class action. Again, this Court entered an Order stating the obvious-claims settled in Benacquisto were settled and cannot be re-litigated. (Exhibit 2)

The instant case of the Coverts presents the same situation. Accordingly, AEFA, through its counsel, seeks from this Court an Order similar to that issued in the virtually identical Chandler case.

**The *Benacquisto* Class Settlement and Its Effects**

Pursuant to the Final Order and Judgment, the *Benacquisto* class, as certified, agreed to release claims related to certain life insurance and annuity products. The certified class consists of:

> (A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, issued at any time during the Class Period; or (ii) an ownership interest in an individual deferred annuity contract or a participation interest in a Group Qualified Annuity issued by IDS, IDSNY, American Centurion Life Assurance Company,

> American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity.

As reflected in the Notice of Class Action, Proposed Settlement, and Fairness hearing (the "Class Notice"), which was distributed to the Coverts and to other potential *Benacquisto* class members, the relevant Class Period begins on January 1, 1985 and continues through and including August 31, 2000 (Exhibit 8).

The Final Order and Judgment further provides that Plaintiffs and all other Class Members contractually agree and acknowledge that they:

> ...shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of the, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of actions (defined below) that are based upon, related to, or connected with, directly or indirectly , in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in *Benacquisto*, et al. v. American Express Financial Corporation, et al., NO. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or *Benacquisto*, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District for the District of Minnesota; or (b) that relate in any way to the Relesased Conduct.

(Ex. 6 at 9, ¶ 13(A)(2).)

"Released conduct" is defined in the Final Order and Judgment as:

> ...any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities,

> including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales, or replacements of any Policy or Annuity…

(*Id.* at 9, ¶ 13(B)(2).)

## ARGUMENT

## THE COURT SHOULD ENJOIN THE COVERTS FROM PROCEEDING WITH ALL CLASS SETTLEMENT-BARRED CLAIMS BEFORE THE NASD PURSUANT TO THE FINAL ORDER AND JUDGMENT IN *BENACQUISTO*

### I. The Coverts Assert Claims Relating to Class Settlement-Barred Products.

The Final Order and Judgment entered in *Benacquisto* encompasses, and bars claims relating to, annuity products about which the Coverts are now complaining before the NASD. Pursuant to the final Order and Judgment, the *Benacquisto* class members agreed to release, acquit, and forever discharge claims related to certain life insurance and annuity products. Therefore, all of the Coverts' claims relating to such settlement-barred products before the NASD should be enjoined.

### II. The Final Order and Judgment in *Benacquisto* Authorizes This Court To Enjoin the Coverts' NASD Proceeding.

#### A. The Court Has Continuing Jurisdiction in This Matter.

First, the Court's Final Order and Judgment in *Benacquisto* makes clear that the Court retains continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

(a) enforcing the terms and conditions of the Settlement agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of actions allegedly related to this case are or are not barred by this Order and Judgment, etc.);

(b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

(c) entering any other necessary or appropriate Order to protect and effectuate this Court's retention of continuing jurisdiction;

* * *

(Ex. 6 ¶ 19(a)-(c).)

Thus, the terms of the final Order and Judgment specifically authorize this Court to enter an Order enjoining the Coverts from pursuing claims respecting their class action-covered annuities before the NASD.

### B. The Coverts' Claims are Barred Because They Received Notice of the *Benacquisto* Class Action and Chose Not To Opt Out of The Class.

Second, the Coverts received proper notice of the *Benacquisto* class action, and they chose not to opt out of the class. The Notice of Class Action was distributed to the Coverts, through the Court-approved Claims Administrator, Rust Consulting. (Exhibits 7 and 8). The Coverts chose not to opt of the class by the deadline set in the Class Notice (January 29, 2001), id., and they therefore became members of the class.

On or about November 14, 2001, Peter G. Covert and Linda L. Covert received , as members of the class, general relief in the form of free Accidental Death Benefit coverage (*See* Ex. 12). Thus, the Coverts received relief in connection with the annuity products at issue in the class action. In light of these facts, the Coverts' NASD venued claims concerning the annuity products at issue in *Benacquisto* should be enjoined. The

Coverts' status as class members entitled them to all of the benefits (and detriments) of class membership, and indeed, the Coverts received relief as class members in the form of free Accidental Death Benefit coverage from IDS Life. (*See* Ex. 12).

The Coverts' position regarding submission of a claim to the NASD regarding policies and annuities covered by the class action does not square with the relevant case law governing class action settlements, and it should therefore be rejected. For example, in *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187 (8th Cir. 1993), the U.S. Court of Appeals for the Eighth Circuit confronted a situation quite similar to the one at bar. In that case, the Eighth Circuit affirmed a District Court decision which enjoined an investor who had been a member of a settled class action from bringing a subsequent suit against a brokerage firm. Id., 992 F.2d at 188. In its Final Judgment of Dismissal respecting the class action, the District Court ordered that "[e]ach member of [the class]...be enjoined from asserting against the defendants...any representative, derivative or other claim of any nature whatsoever which any of them has or may have in connection with the above-described 1983 and 1984 NRM limited partnerships or any other matter released by said class members in connection herewith;..." *Id.* Based on the Final Judgment of Dismissal, the District Court enjoined the investor's subsequently filed action as it related to investments covered by the class action. *Id.* at 189.

On appeal, the Eighth Circuit began by observing that a district court's issuance of an injunction is reviewed under an abuse of discretion standard. *Id.* (citing *Surgidev Corp. v. Eye Technology, Inc.*, 828 F.2d 452, 457 (8th Cir. 1987).) Moreover, the court emphasized that "it is clear that the district court has the authority to issue an injunction enforcing the Final Judgment of Dismissal and Order which embody the terms of the

settlement agreement." *Id.* (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992) ("District courts have an inherent authority to enforce their injunctions."); *Untied States v. Fischer*, 864 F.2w 434 436 (7th Cir. 1988); and *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

Responding to a claim made by the investor that the scope of the class action settlement did not cover her subsequent claims, the court referenced the broad language used in the Notice and in the Final Judgment of Dismissal, which precluded class members from commencing any action that a class member "has or may have in connection with the above-described 1983 and 1984 NRM limited partnerships." 992 F.2d at 190. The court concluded that "[t]he settlement bars all claims related to the NRM-83 investments, including those which an individual class member may have had, but knowingly chose to relinquish by remaining a member of the class." *Id.* at 190-191 (citing *TBK Partners, Ltd. V. Western Union Corp.*, 675 F2d. 456, 461 (2d Cir. 1982) ("[W}here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence."); and *In re VMS Sec. Litig.*, Fed.Sec.L.Rep. ¶ 97,301 (N.D. Ill. Feb. 20, 1992), *aff'd in relevant part,* 21 F.3d 139 (7th Cir. 1994) (arbitration proceedings brought by class members who received notice of proposed settlement and who did not opt out of the class were barred by prior settlement despite fact that suitability and oral misrepresentation claims were not at issue in class action).

The facts of the instant case are not materially different from *Thompson*. As in *Thompson*, this case involves a Final Order and Judgment that encompasses the Coverts' claims, and it too is drafted in broad terms. Among other things, *Benacquisto* class members agreed that they would not "now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf of the Class or the general public or any other person or entity, any Claims and Causes of actions (defined below) that are base upon, related to, or connected with, directly or indirectly, in whole or in part" the claims at issue. (Ex. 1 at 9 ¶ 13(A)(2).)

Furthermore, the Coverts received a class notice document that advised them, among other things, that they could contact a toll-free hotline in order to receive further information about the class settlement (Ex. 8). The Coverts were free to educate themselves about the class action and to explore any questions they had about it. (*See Id.*) In its Chandler Order released this past Spring, this Court cogently explored this very issue and quickly cut through the assorted excuses the Chandlers attempted to rely on in an attempt to exclude their NASD Claim from the class action settlement.

Under the settlement agreement, class members received both the benefits and the detriment, of the contract into which they freely entered. The Coverts specifically chose to be a part of this class by not exercising their rights to opt out of it, and they received relief as did other members of the class.

Any rule allowing the Coverts now to press claims related to these annuities would eviscerate the binding settlement agreement into which the Coverts entered, and would be contrary to the policy of encouraging class action settlements. *See, eg., In re*

*Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3rd Cir. 2001)(upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actins "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large multi district class action").

**CONCLUSION**

For all of these reasons, movant respectfully requests that this Honorable Court enjoin class members, the Coverts, from proceeding on any claims before the NASD in NASD arbitration number 04-05362 that are barred by the class action settlement. The exact annuities and variable life insurance policies at issue are specified in the attached proposed Order, as well as in Exhibit E from AEFA and F, H and I from Rust Consulting verifying that these products were included in the class action notice and settlement procedures and that the Coverts did not opt-out.

Dated: April 13, 2004

Edgerton, Weaver & Irwin, LLC

**s/Gary R. Irwin**
By: Gary R. Irwin
(License #0179991)
5050 Lincoln Drive, Ste. 480
Interlachen Corp. Center
Minneapolis, MN 55436
(952) 345-4444
girwin@neilaw.com

ATTORNEY FOR AMERICAN EXPRESS FINANCIAL ADVISORS, INC.