Arthur S. Leider
Investors Arbitration Specialists, Inc.
8880 Rio San Diego Drive Ste. 800
San Diego, Ca. 92108
Office - (619) 582-7260
Fax- (619) 615-2024

## NATIONAL ASSOCIATION OF SECURITIES DEALERS DISPUTE RESOLUTION

PETER G. COVERT, IRA and LINDA L. COVERT, IRA

Claimants,

vs.

AMERICAN EXPRESS FINANCIAL ADVISORS, INC.

Respondents.

NASD CASE NO.

STATEMENT OF CLAIM AND DEMAND FOR ARBITRATION

Claimants Peter G. Covert, IRA and Linda L. Covert, IRA ("Claimants") complain against Respondents, and each of them, and allege as follows:

## PARTIES

1 Claimants PETER and LINDA COVERT ("Claimants") are individuals who reside in Riverside, California. During the period in dispute Claimants maintained Individual Retirement Accounts ("IRA") with American Express Financial Advisors, Inc. (Acct. Nos. 1383 1082 6 001 and 1383 1092 5 001). Claimants state that they has no experience in the financial services industry, limited experience in investing in stocks and bonds and justifiably relied upon the advice and recommendations of the Respondents. Claimants further assert that Respondents

had effective control over their retirement accounts and that the investments in dispute were recommended by Respondents.

2. Claimants are informed and believe and thereupon allege that AMERICAN EXPRESS FINANCIAL ADVISORS, INC. ("AXFA") is an NASD member broker-dealer headquartered in Minneapolis, Mn. Claimants further allege that respondent AXFA maintained a branch office in Ontario, Ca. and, during the period in dispute, was subject to the rules and regulations of the NASD as well as all applicable state and federal securities laws.

3. Intentionally left blank.

4. Claimants are informed and believe and thereupon allege that at all material times each of the Respondents was the agent of each of the remaining Respondents and during the acts herein alleged, was acting within the scope of such agency and with the permission and consent of the other respondents.

## JURISDICTION

5. This panel has jurisdiction of the claims herein alleged under the NASD Code of Arbitration Procedure § 10301 (a).

6. Claimants hereby request that this matter be heard by a three-person panel.

7. Claimants hereby request that the hearing in this matter be set in Los Angeles, Ca. as provided for under the NASD Code.

## BACKGROUND

In late 1999 the Coverts retired from their positions with Kaiser Permanente, a leading health maintenance organization. Peter Covert retired after 22 years with Kaiser and Mrs. Covert retired on a medical disability after 16 years with Kaiser. The Claimants had little, if any, experience in investing and based upon the reputation and representations of American

Express Financial Advisors they met with Respondent's associated persons, John Fontaine and David Karr to discuss their post-retirement financial needs and how best to invest their retirement funds which constituted the vast majority of their liquid net worth.

Respondent recommended to both Claimants that they invest both of their IRA rollover accounts in variable annuities. Claimants were informed that this type of investment was safe and appropriate for IRA accounts, that it would provide them with monthly income, that there would be ongoing monitoring of their accounts and that the asset allocations recommended were suitable for retirees. Claimants were further told that the sub-accounts recommended were suitable and when there were any recommended changes they would be contacted.

Based upon the representations of the Respondents employees and the reputation of American Express as one of the world's leading financial services companies Claimants agreed, in late 1999, to invest the entirety of their retirement account which totaled more than $600,000.00 under the management of Respondents.

On numerous occasions Claimant Peter Covert called the Respondent to express his concern about the performance of his and his wife's retirement funds. Respondents' often failed to return his calls in a prompt manner or Mr. Covert was advised that he shouldn't worry and that the stock market eventually would recover. He also was made aware that he would have considerable penalties if the account was liquidated. Mr. Covert further believes that, sometime in 2001 the original advisors Fontaine and Karr left AXPFA and the accounts were reassigned.

## <u>FIRST CAUSE OF ACTION</u>

(Fraudulent and Negligent Misrepresentation against All Respondents)

8. Claimants re-allege and incorporate by reference paragraphs 1 through 7 as though fully set forth herein.

9. Claimants are informed and believe and thereupon allege that the Respondent

believe that there was little or no risk involved because variable annuities contain a death benefit. Claimants were not told that, based upon the current average life expectancy, they would have to wait approximately thirty years to take advantage of said benefit.

10. Claimants are informed and believe and thereupon allege that Respondent and its employees misrepresented the fact that their risk tolerance, financial needs and investment objectives were taken into account before recommending the investments in dispute. Claimants further allege that Respondents misrepresented the high costs and fees involved in said investments.

11. Claimants further allege that Respondent and its employees misrepresented the risks involved in investing a large percentage of their retirement funds in equity sub-accounts. Claimants were assured that they would not be invested in high risk investments and their accounts would be asset-allocated in a manner appropriate for retirees who wished take minimal risk.

12. Claimants further allege that the Respondent and its employees misrepresented the assertion that their accounts would be constantly monitored in order to minimize their risks. Respondents failed to institute any adequate risk management techniques despite their assurances that Claimants would not be exposed top any unreasonable risk.

13. As a direct and proximate result of Respondent's fraudulent and negligent misrepresentations Claimants have suffered the damages prayed for below.

## SECOND CAUSE OF ACTION

(Breach of Fiduciary Duty against all Respondents).

14. Claimants re-allege and incorporate by reference paragraphs 1 through 13 as though fully set forth herein.

15. Claimants assert that under California Civil Code § 2322 (c) the relationship between a stockbroker and his client is fiduciary in nature. Courts around the country have recognized the fiduciary duty that a broker owes to a customer. "The relationship between the claimant and their stockbroker is fiduciary in nature imposing on respondents the duty to act in the highest good faith." Twomey v. Mitchum, 262 Cal. App. 2d 690, 69 Cal.Rptr.222 (1968), Hobbs v.Bateman Eichler, 164 Cal. App. 3d.174 (1985), Duffy v. Cavalier, 264 Cal.Rptr.740 (1989)

16. Claimants further allege that Respondent breached its duty of fair dealing by recommending that Claimants invest their IRA accounts in a tax-deffered variable annuity. Respondents failed to disclose that variable annuities investments involve high annual fees, that annuities do not provide any tax advantages when used in a retirement account and that they would be paying fees for benefits that were not applicable to IRA accounts.

17. Claimants are informed and believe and thereupon allege that Respondents breached its fiduciary duty by recommending investments based upon the amount of commissions generated to the detriment of the Claimants.

18. Claimants allege that as fiduciary Respondent owed them and other like retirees a duty to make suitable and appropriate investment recommendations. Claimants further that Respondents breached its fiduciary duty by failing to make reasonable asset allocation recommendations and by failing to inform them of the amount of commissions/fees they would be receiving for making said recommendations.

19. As a direct and proximate result of Respondent's breach of its fiduciary duty Claimants have suffered damages as prayed for below.

**THIRD CAUSE OF ACTION**

(Intentional or negligent Omissions in Violation of the NASD Rules of Fair Practice, Rule 10(b)5 of the Securities Exchange Act and Sections 25400 of the California Corporations Code)

20. Claimants reallege and incorporate by reference paragraphs 1-19 as though fully set forth herein.

21 Respondents' wrongful conduct, as alleged in paragraphs 1 through 29 above, constitutes violations of the federal securities laws, including but not limited to Sections 10 and 20 of the Securities Exchange Act of 1934 and Rule 10(b)-5 promulgated thereunder and Sections 25401 et. seq. and 2550 et. seq. and the NASD Rules of Fair Practice.

22. Claimants assert that they relied upon Respondent's material misrepresentations and/or non-disclosures to their detriment. As a result of the aforementioned acts of the Respondent, Claimants were proximately harmed by substantial losses of equity in their assets. Further the aforementioned acts were wanton, willful reckless and oppressive.

23. As a direct and proximate result of Respondent's intentional or negligent omissions of material facts Claimants have suffered the damages prayed for below.

**FOURTH CAUSE OF ACTION**

(Constructive Fraud against All Respondents)

24. Claimant re-allege and reincorporate by reference paragraphs 1-23 as though fully stated herein.

25. " "Constructive fraud" arises from breach of duty by one in confidential or fiduciary relationship to another which induces justifiable reliance by latter to his prejudice." Gold v. Los Angeles Democratic League, 54 Cal Rptr.533, 246 Cal.App.2d 123 (1975).

26. "Constructive fraud may be presumed from confidential relationship or

circumstance of parties' dealings, so that there is no requirement that failure to disclose material facts that should have been disclosed by virtue of confidential relationship be intentional." Byrum v. Brand, 268 Cal.Rptr.609, 219 Cal.App.3d (1990).

27. Claimants assert that Respondent is liable for constructive fraud for sales practice and supervision violations in connection with the recommendation and sales of variable annuities to retirees with IRA accounts. Respondent failed to adequately explain the costs and features of variable annuities, failed to explain the fees and commissions, failed to explain that the costs involved were considerably higher than if Claimants had purchased mutual funds and lacked a reasonable basis for believing these recommendations were suitable.

28. As the direct and proximately result of Respondent's fraudulent course of conduct Claimants are entitled to exemplary or punitive damages as prayed for below.

## PRAYER FOR DAMAGES

WHEREFORE, Claimants pray for an award against Respondent as follows:

1 Compensatory damages in the sum of approximately $ 100,000.00.
2. Punitive or exemplary damages for constructive fraud in the sum of $ 300,000.00.
3. Pre- award interest from January 1, 2000 as the panel may deem just and proper.
4. Any and all costs incurred in bringing this claim including filing fees and hearing fees.
5. Reasonable representation fees as the panel may deem just and proper.
6. Expert witness fees as the panel may deem just and proper.
7. All remaining deferred sales charges remaining on said annuities to be determined.
8. Such other relief as the panel may deem just and proper.

Dated this 20th day of July, 2004

*Arthur S. Leider*

Investors Arbitration
Specialists, Inc.
8880 Rio San Diego Drive
Ste. 800
San Diego, Ca. 92108
Office -(619) 582-7260
Fax- (619) 615-2024
Arthur S. Leider

**EXHIBITS**

**EXHIBIT A**

020039

# Statement of Financial Accounts

January 1, 2002 - December 31, 2002

Group Number 0396 8407 1 001

Client Number 1383 1082 6 001
MR PETER G COVERT SR

Client Number 1383 1092 5 001
MRS LINDA L COVERT

Check Your Accounts
Automated Telephone Service
800-862-7919

Online
home2.americanexpress.com/cacc

Direct your service and investment questions to
PAUL R MATA CFP
MATA, PHELPS, EAGLES & KAYATTA
A financial advisory branch
430 N Vineyard Ave Ste 101
Ontario CA 91764-5453
909-974-0382
909-974-0392 FAX

## Statement Mailed to

MR PETER G COVERT SR
MRS LINDA L COVERT
4730 CREST AVE
RIVERSIDE CA 92503-2919

## Value of Accounts

as of December 31, 2002
$289,755.43

## American Express Portfolio Summary

Where your assets are invested by product



| Percent of all current products | Product type | Value one year ago | Value last statement | Current value |
|---|---|---|---|---|
| 0% | Money Market Funds and Cash | $1.70 | $0.00 | $0.00 |
| 0% | Mutual Funds | $2,873.87 | Not applicable | Not applicable |
| 0% | Securities | Not applicable | Not applicable | Not applicable |
| 100% | Annuities | $427,882.37 | $295,074.34 | $289,755.43 |
| 0% | Certificates | Not applicable | Not applicable | Not applicable |
| 0% | Insurance | Not applicable | Not applicable | Not applicable |
| 0% | Limited Partnerships and REITs | Not applicable | Not applicable | Not applicable |
| 0% | Additional Products | Not applicable | Not applicable | Not applicable |
| 100% | Total value of all accounts | | | $289,755.43 |


## Save, Invest, Spend, Borrow: All in ONE.

Introducing the American Express ONE Financial Account, an investment account with the added benefits of everyday banking, including free unlimited check-writing, an ATM Card, online bill pay and much more. And, with total account assets of $25,000 or more, you can get a complimentary American Express Gold Card. ONE, combined with personalized advice available from your financial advisor, can help you move your money forward as never before. Speak to your advisor for more information. (Financial advisory service is offered separately, priced according to your needs.)


00100039684070000001 12/31/2002

**EXHIBIT B**

Back

# News Release

FOR RELEASE: Wednesday, December 4, 2002
CONTACTS: Nancy A. Condon 202-728-8379
Michael Shokouhi 202-728-8304

NASD

**NASD Fines American Express Financial Advisors $350,000 for Improper Sales of Variable Annuities and Life Insurance**

**Washington, D.C.** — NASD announced today that it has censured and fined American Express Financial Advisors Inc. $350,000 for sales practice and supervision violations in connection with its sale of variable annuities and variable life insurance products over a 30 month period, ending in 2000.

NASD's review focused on American Express' sale of variable annuities into tax-qualified retirement plans and accounts. A qualified plan is a tax deferred retirement account such as an IRA or 401(k) plan where taxes are paid only when an employee withdraws money. NASD found that American Express, through certain registered representatives, omitted material facts when selling variable annuities into qualified plans. In making some sales, registered representatives failed to disclose that variable annuities do not provide the benefit or advantage of tax deferred earnings when purchased in qualified plans. In general, tax deferral is one of the primary reasons for purchasing a variable annuity.

In the sale of a variable annuity to an account that is already tax deferred, sales should only be made when other benefits of a variable annuity such as a death benefit or annuity payout options support the purchase. Some American Express representatives failed to determine that customers had a need for a benefit offered by a variable annuity, other than tax deferral, when recommending the purchase of the product. Such sales were in violation of NASD rules since the registered representatives lacked a reasonable basis for believing that their recommendations were suitable.

In addition, in certain instances American Express representatives did not adequately explain to customers the costs and features of variable annuities. They also failed to compare and contrast variable annuities with mutual funds in those instances where the customer's needs might have been better met through the purchase of mutual funds. NASD found that American Express had failed to address these issues adequately when it trained representatives and that certain disclosure documents omitted material facts regarding qualified annuities.

In addition, NASD found that the firm failed to establish, maintain and enforce adequate supervisory policies and procedures governing the sale of variable annuities and variable life insurance products during the 30-month period.

"We will continue to focus on variable annuity sales practices through, guidance to investors, notices to broker dealers and enforcement actions to ensure that variable products are sold in an appropriate manner," stated Mary L. Schapiro, NASD Vice Chairman and President of Regulatory Policy and Oversight. "We continue to see instances of abusive sales practices and suitability problems with variable annuities. It is only through effective training and a comprehensive supervisory system that firms can ensure that customers receive important disclosures concerning these complex products and that they are sold only to customers for whom they are suitable."

This case was brought in connection with a series of special examinations conducted over the last several years by NASD that focused on the sale of variable contracts. Due to the dramatic increase in sales of variable products in the last several years, NASD has issued numerous alerts to both firms and investors to help ensure that these products are properly sold which can be found at:

- 
- and
- 

In settling the matter, American Express neither admitted nor denied NASD's findings.

Investors can obtain more information and the disciplinary record of any NASD-registered broker or brokerage firm by calling (800) 289-9999 or by sending an e-mail through NASD's Web Site at

NASD is the leading private-sector provider of financial regulatory services, dedicated to bringing integrity to the markets and confidence to investors through effective and efficient regulation and complementary compliance and technology-based services. NASD touches virtually every aspect of the securities business – from registering and educating all industry participants, to examining securities firms, enforcing both NASD rules and the federal securities laws, and administering the largest dispute resolution forum for investors and member firms. For more information, please visit our Web site at *www.nasd.com*.

## NASD ARBITRATION UNIFORM SUBMISSION AGREEMENT

Claimant(s)

In the Matter of the Arbitration Between

Name(s) of Claimant(s)

Peter G. Covont, IRA

Linda L. Covont, IRA

and

Name(s) of Respondent(s)

American Express Financial Advisors Inc.

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.
2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.
3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.
4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.
5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

Peter G. Covont, IRA

Claimant Name (please print)

[signature]

Claimant's Signature

July 13, 2004

Date

Linda L. Covont, IRA

Claimant Name (please print)

[signature]

Claimant's Signature

July 13, 2004

Date

If needed, copy this page.

:004

UNIFORM SUBMISSION AGREEMENT

**NASD Dispute Resolution**

G 6 2004

In the Matter of the Arbitration Between

Name of Claimant(s)

Peter G. Covert, IRA
Linda L. Covert, IRA

04-05362

Name of Respondent(s)

American Express Financial Advisors

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations and/or NASD Code of Arbitration Procedure of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission

Agreement.

Party(ies) Signature

American Express Financial Advisors

Date: 8-17-04

LC43A: SUBMISSION AGREEMENT
rc:06/02
CC:

Arthur S. Leider, ., Peter G. Covert, IRA
Investors Arbitration Specialists, Inc., 8880 Rio San Diego Drive, Suite 800,
San Diego, CA 92108

RECIPIENTS:

David Flower, American Express Financial Advisors
American Express Financial Advisors, Corporate Litigation,
50587 AXP Financial Center, Minneapolis, MN 55474