**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESON, ARNOLD MORK, ISABELLA MORK, RONDALD MELCHERT and SUSAN MELCHERT, On behalf of themselves and all others Similarly situated,

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, ANERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

And

Peter G. Covert, IRA and Linda L. Covert, IRA,
Movants,

v.

American Express Financial Advisors, Inc.,

Respondent.

Civil No. 00-1980(DSD/JMM)

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO ENFORCE CLASS ACTION SETTLEMENT AND IN SUPPORT OF MOTION TO ENFORCE ARBITRATION CONTRACT AS TO CLAIMS OF PETER G. COVERT, IRA AND LINDA L. COVERT, IRA BEFORE THE NASD**

SCANNED
MAY 11 2005
U.S. DISTRICT COURT MPLS

## SUMMARY

American Express Financial Advisors, Inc. promised to arbitrate the claims of Peter and Linda Covert under the Code of Arbitration Procedure of the National Association of Securities Dealers (NASD). It made this promise to arbitrate in a written Uniform Submission Agreement on August 17, 2004 over three years after the Court entered its judgment confirming the class action settlement agreement (Ex. 1)[1]. The Coverts also signed a written Uniform Submission Agreement to arbitrate (Ex. 2). The arbitration agreement, voluntarily entered into between the parties, years after the class action settlement, is broad in scope. The parties arbitration agreement is valid, irrevocable and enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. 1-16.

American Express initially invoked the arbitration procedures it had promised to abide by, and asked the arbitrators to dismiss the Covert's claims (Ex. 7). A hearing was held at the request of American Express. The arbitrators concluded that the matter should not be dismissed, but should go forward for a hearing on the merits (Ex. 3). ***Only after obtaining a ruling it did not like did American Express approach this Court to stop the arbitration it had previously agreed to.***

Most of the Covert's losses occurred ***after*** the covered class period. Both parties had an opportunity to present evidence, have the arbitrators review it, and have the arbitrators make findings on the facts and law.

After submitting the issue to arbitration and getting an unfavorable ruling from the arbitrators, American Express then turned to this Court seeking relief. The unusual demand of American Express, ***after waiting for the arbitrators to rule***, conflicts with the "unmistakably clear" purpose of Federal Arbitration Act (FAA) that arbitration "be

---

[1] Exhibits 1-12 are attached to the affidavit of Michael S. MacDonald, dated May, 11, 2005.

speedy and not subject to delay and obstruction in the courts." *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806 (1967).

American Express' improper filing of its Motion To Enforce Class Action Settlement and enjoin the arbitration deprives the Coverts of an important benefit of arbitration--a speedy resolution of its dispute. It also frustrates the strong federal policy favoring arbitration, unlawfully interferes with the Coverts substantive right to arbitrate, and impermissibly intrudes upon the powers of the arbitrators.

What should the Court do? "Section 3 [of the FAA] *requires* a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint*, 388 U.S. at 400, 87 S.Ct. at 1804, quoting 9 U.S.C. § 3, emphasis added. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead *mandates* that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985) *Dean Witter*, emphasis added.

Accordingly, the Coverts ask the Court to 1) issue a stay of further proceedings in this judicial action pursuant to 9 USC 3, 2) compel American Express to arbitrate as it promised, pursuant to 9 USC 4, and deny American Express's motion to enforce the settlement agreement, leaving the parties to the arbitral resolution they contracted for.

## BACKGROUND

**The Parties**

American Express is a broker dealer registered with the Securities and Exchange Commission. The Coverts are individual investors who live in California and first had contact with American Express in June of 1999.

**The NASD**

The NASD is a self regulatory organization established pursuant to the Securities and Exchange Act of 1934. The NASD Code of Arbitration Procedure is subject to review by and has been approved by the SEC.

**The Arbitration Agreements**

American Express entered into an investment advisors agreement with the Coverts. Eventually, American Express bought variable annuities in the Covert's IRA accounts. After a dispute arose, the Coverts, completely unaware of the class action, started an arbitration in the forum chosen by American Express, the NASD. They did this on July 20, 2004 (Ex. 4 pg. 8). A copy of the Covert's submission agreement is attached as Exhibit 1.

All parties signed the NASD's Uniform Submission Agreement (Exhibits 1 and 2). The Uniform Submission Agreement states in part:

> The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/of third party claims which may be asserted, to arbitrate in accordance with the constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization [NASD]. (Exhibits 1 and 2)

Unknown to the Coverts (Ex. 5 and 6), at some time these annuities had become the subject of a class action law suit. The Coverts never received any information

regarding the Class Action, including the opportunity to opt out (Ex. 5 and 6). The Coverts never made any election regarding receipt of a settlement from American Express, including accidental death benefits. The accidental death benefits were a default benefit, in lieu of a settlement selection, that the Coverts were not even aware of (Ex. 5 and 6). Originally, the Coverts purchased over $600,000 in variable annuities. The value of the settlement to the Coverts was about $500.

The class action was settled and included claims for all actions through February 29, 2000 (Notice of Class Action, part B, Description of the Class). Many of the wrongful activities and omissions alleged in the arbitration claim took place after that date. The claims for unsuitability and breach of fiduciary duty regarding the switching of the sub accounts of the annuities were ongoing (Exhibit 4, page 3 lines 7-9, Exhibit 8, Illustration prepared 6/18/01 and Exhibit 9, Exception report dated 3/13/03). The Class action settlement agreement simply does not apply to claims that arise for the first time after February 29, 2000.

American Express could have made the motion they now have in front of this Court when the arbitration was initiated but chose to submit this matter to arbitration (Ex. 1 and 7). Once American Express voluntarily agreed to submit this matter to arbitration, they had two choices under the NASD Code of Arbitration Procedure (Ex. 10) to assert the position that the claim was covered by a class action. They had yet another opportunity to petition the court with jurisdiction over the class action **OR** they could submit the matter to the arbitrators. (NASD Code of Arbitration Procedure Rule 10301(d)(2) below and Ex. 10)

American Express did not file a petition with this Court within the 10 day period provided by Rule 10301(d)(2). Instead, it chose to submit this matter to the arbitrators (Ex. 7). On February 28, 2005 the arbitrators held a hearing on American Express' Motion to Dismiss. Their award was that this matter should proceed to an arbitration hearing on the merits (Ex. 3).

The rules of the NASD, which by written agreement govern this arbitration, say that the arbitrators have the power to determine their own jurisdiction, and resolve any objection about the scope or validity of the agreement. These rules, that American Express promised to abide by, also say that the arbitrators' interpretations "shall be final and binding upon the parties." Rule 10324 of the NASD Code of Arbitration Procedure states:

> *The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties. (Ex. 10).*

## ARGUMENT

### I. AMERICAN EXPRESS ENTERED INTO A CONTRACT, WITH THE COVERTS, TO ARBITRATE THEIR DISPUTE AFTER THE CLASS ACTION SETTLEMENT. AMERICAN EXPRESS GOT A RESULT IT DIDN'T LIKE. NOW IT IS LOOKING FOR ANOTHER FORUM, HOPING FOR A DIFFERENT RESULT. THAT IS JUST PLAIN FORUM SHOPPING AND SHOULD BE CONDEMNED.

American Express received significant benefits under the arbitration agreement. By submitting the matter to the arbitrators it had the benefit of the whole matter being resolved in one forum. Otherwise American Express took the substantial chance that this Court would require them to arbitrate the claims that this Court determined were not covered by the settlement agreement.

The Coverts had a claim and instituted an arbitration proceeding against American Express. Arguably, some of the claims were covered by the class action that had been settled and some were not. American Express agreed to leave the decision regarding all of the claims in the hands of the arbitrators. American Express didn't choose its course of action without time for due consideration. They had 45 days to submit an answer to the arbitration claim, but asked for and received the courtesy of extended time to respond (Exhibit 11). Even after they agreed to arbitrate, American Express had another option regarding the claims they now claim were covered by the class action. Class action disputes, under the arbitration agreement they voluntarily agreed to, are to be resolved as follows:

> *"...Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Rule 10302 or Rule 10308, as applicable. Either party may elect instead to petition the court with jurisdiction over the putative or certified class action to resolve such disputes. Any such petition to the court must be filed within ten business days of receipt of notice that the Director of Arbitration is referring the dispute to a panel of arbitrators." NASD Code of Arbitration Procedure Rule 10301(d)(2).* (Ex. 10)

American Express chose not to exercise the election to petition this Court and instead chose to have the dispute decided by the arbitrators (Ex. 7).

Regarding class action settlement agreements the Eighth Circuit said: "Once approved, a settlement agreement is interpreted as a contract." *Thompson v. Edward D. Jones & Co., 992 F.2d 187 at 191 n.5 (8th Cir. 1993).* The arbitration agreement is simply a subsequent contract, voluntarily entered into between the parties. Paragraph 18 of the Judgment of this Court states: "The parties are hereby authorized, without needing further approval from this Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement – including without

limitation, the Post-Settlement Mailing materials and the forms to be used in the Claim Review Process – as are consistent with this Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement." American Express made a voluntarily choice to submit this matter to the arbitrators for their decision, and thereby ***waived*** any review by this Court. No law or court decision says parties cannot voluntarily enter into arbitration agreements. That is what the parties did here. The parties' decision, to have arbitrators resolve any disputes about the effect of the prior class action settlement, is entirely consistent with the Court's prior judgment, which merely confirmed a different contract. It is highly unlikely anyone involved in the original class action settlement intended this Court's Judgment to forever preclude the parties from voluntarily entering into subsequent contracts, including contracts to arbitrate.

A Court's final judgment is often the end of a dispute between the parties. But this is not always the case. It is certainly not uncommon for parties, after a judgment has been issued, to enter into a settlement contract which may provide for something different than the Court's judgment. Here the parties voluntarily chose to enter into an arbitration contract. The FAA requires the court to respect that contract, just as it would any other contract parties might enter into after a final judgment has been entered. The Court cannot treat arbitration contracts any less favorably than it would any other contract. The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the "*question of arbitrability*," is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v Dean Witter Reynolds, Inc.*, 537 U.S.

79, 123 S.Ct. 79 (2002)[2] quoting *AT&T Technologies, Inc.* v. *Communications Workers*, 475 U.S. 643, 649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986). The language of the NASD code of Arbitration Procedure, Rule 10302(d)(2) (Above and Ex. 10), which became a part of the parties contract, clearly and unmistakably provides otherwise. The Arbitrators have made their decision under the Code and that decision can not be disturbed by judicial intervention.

American Express has chosen to submit the factual arguments regarding this matter to the arbitration panel that ***they participated in the selection of*** (Ex. 10, Rule 10308), and the Court need not, and indeed the Court cannot approach the merits of the claims. The Court cannot inquire into the merits of American Express' supposed defenses to the arbitration claim. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1419. "Whether 'arguable' or not, indeed even if it appears to the court to be frivolous," American Express' defenses are "to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." *Id.* at 649-650, 106 S.Ct. at 1419. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Id.* at 650, 106 S.Ct. at 1419, quoting, *American Mfg. Co.*, 363 U.S. at 568 (footnote omitted).

---

[2] *Howsam v Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 79 (2002) refines In re: Y and A Group Securities Litigation, 38 Fd 3rd 380 (8th Cir.1994). In situations where the arbitration agreement between the parties clearly and unmistakably provides for the decision regarding arbitrability to be made by the arbitrators, then the arbitrators, not the Court shall make that decision.

**II. THE COVERTS WERE NOT NOTIFIED OF THE CLASS ACTION OR OF THE OPPORTUNITY TO OPT OUT. TO ENJOIN THEM FROM PROCEEDING WITH THIS ARBITRATION WOULD BE A DENIAL OF DUE PROCESS. ALSO THE TERMS OF THE SETTLEMENT WERE GROSSLY UNFAIR TO THE COVERTS.**

> Under both the Federal Rules of Civil Procedure and **due process** norms, the adequacy of notice to class members of class certification or settlement depends on the particular circumstances of each case. Fed. R. Civ. P. 23(c)(2)(B). Conformity with the requirements of Fed. R. Civ. P. 23(c)(2) fulfills the **due process** mandate. Thus, for **opt-out class actions, due process** and the Federal Rules require individual notice only to all class members whose names and addresses may be ascertained through reasonable effort. *In re Global Crossing Securities and ERISA Litigation. 225 F.R.D. 436 (S D NY 2004)*

The Coverts did not receive the notices American Express claims were sent (Ex. 1 and 2). American Express had many opportunities to notify the Coverts. They sent the Coverts monthly statements and, when there were issues concerning mutual funds B shares, used those monthly mailings to notify the Coverts of those issues. Due to the on-going relationship the most reasonable form of notice would have been the same as American Express used for the mutual fund notification, inclusion in the monthly statement.

Originally, the Coverts purchased over $600,000 in variable annuities. The value of the settlement American Express claims it gave to the Coverts was about $500. Essentially what this class action settlement did was allow American Express to insure themselves against claims for less than .084% (.00084) of the amount invested, which is pretty inexpensive insurance.

**III. THE CLAIMS SUBMITTED TO ARBITRATION THAT FIRST ORIGINATED AFTER FEBRUARY 29, 2000 WERE NOT ENCOMPASSED BY THE CLASS ACTION AND SHOULD PROCEED TO ARBITRATION.**

The activity and the duties of American Express associated with the annuity sub-accounts that arose after February 29, 2000 were not included in the class

action settlement and should proceed to arbitration as voluntarily agreed to by the Coverts and American Express. Claims occurring after the Class Action period are not Settlement Barred Claims. The Covert's claims allege; "... their would be would be ongoing monitoring of their accounts and that the asset allocations recommended were suitable for retirees. Claimants were further told that the sub-accounts recommended were suitable and when there were any recommended changes they would be contacted." (Ex. 4 page 3 lines 6-9). These duties and promises were not breached until well after the class Action period (Ex. 9 American Express Exception Report Dated 3/13/03). These claims are separate and distinct from the claims at issue in the class action. These claims involve acts and omissions that occurred after the class period (Exhibit 4, page 3 lines 7-9, Exhibit 8, Illustration prepared 6/18/01 and Exhibit 9, exception report dated 3/13/03). They would be eligible for relief in Court if it were not for the arbitration agreement and are eligible for arbitration by agreement between these parties. Section 13 A 3 of the Judgment of this Court states: "Nothing in this Release shall be deemed to alter ... (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first day after the last day of the Class Period; ..."

**LEGAL STANDARDS**

The Coverts' request for a stay is based upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, which requires a court to stay litigation upon the request of a party when the litigation involves an issue referable to arbitration. "Section 3 requires a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint*, 388 U.S.

at 400, 87 S.Ct. at 1804, quoting 9 U.S.C. § 3. Section 4 of the FAA, 9 U.S.C. 4 is the basis for Defendants' request that American Express be compelled to submit to arbitration, pursuant to the agreement it signed.

**American Express' Motion To Enforce Class Action Settlement Should Be Stayed Under 9 U.S.C. §3.**

The Federal Arbitration Act ("FAA") is a law passed by Congress to govern the enforcement of arbitration agreements. 9 U.S.C. § 1-16. Arbitration is a lawful activity. Indeed, there is a "national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858 (1984). The FAA reflects an "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806. Consistent with the strong federal policy favoring enforcement of arbitration agreements, the Supreme Court has emphatically held that any doubt about the arbitrability of an issue should be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941 (1983); *see also Bowen v. Amoco Pipline Co.*, 254 F.3d 925, 937 (10th Cir. 2001). In accord with the policies favoring arbitration, all disputes related to the subject matter of an arbitration clause, whether the clause is narrow or broad, must also be arbitrated. *See, e.g. Federated Metals Corp. v. United Steelworkers*, 648 F.2d 856, 860 (3rd Cir. 1988).

Section 2 of the FAA makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 requires a court to stay litigation upon the request of a party when the litigation involves an issue referable to arbitration. 9 U.S.C. § 3. The FAA does not authorize a court to enjoin or stay an arbitration under any circumstance. *In*

*re. Piper Funds, Inc. Institutional Government Income Portfolio Litigation*, 71 F.3d 298, 302 (8th Cir. 1995). Instead, the FAA's only reference to an injunction against an arbitration is found in Section 16, 9 U.S.C. § 16(a)(2), which makes immediately appealable any order granting or continuing an injunction against arbitration. *Id.*

The agreement to arbitrate does not preserve for either party the opportunity to seek interlocutory review of the arbitrators' ruling in the Court. American Express promised that the arbitration would be conducted pursuant to the procedures of the NASD. Such agreements are governed by the Federal Arbitration Act. The Act makes those promises "valid, irrevocable, and enforceable." 9 U.S.C. §2. American Express broke its promises when it filed this Motion seeking a judicial injunction against arbitration. Under the arbitration agreement, the arbitrators have the power to decide the Covert's claims. Section 3 of the FAA says:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3.

The Coverts and American Express contracted for an expeditious arbitral resolution of their dispute, not a federal lawsuit. Where parties agree to arbitrate, as the Coverts and American Express did here, they bargain away their right to judicial intervention. They "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 1655 (1991), quoting, *Mitsubishi*

*Motors Corp, v. Sales Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354 (1985). They are entitled to get what they bargained for--an expeditious arbitral resolution free from "delay and obstruction in the courts." *Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806. An injunction or other delay to the arbitration deprives the Coverts the benefit of their arbitral bargain.

Put simply, American Express cannot agree to arbitrate its disputes and, when the arbitrators render a decision they don't like, ignore the agreement and turn to the Federal Court. Forum shopping is not fair. This is a "valid, irrevocable, and enforceable" arbitration contract and subject to 9 U.S.C. § 2, American Express gave the arbitrators the authority to resolve all disputes--including the dispute the Coverts now seek to arbitrate.

**The preferred method of dispute resolution is arbitration and a Court should not alter a clear unmistakable agreement to arbitrate.**

Arbitration is the preferred method of dispute resolution in many complex, highly regulated industries, particularly the securities industry. This industry has a federal regulatory body, the Securities and Exchange Commission (SEC), with a complex body of statues and regulations at the federal level. The 50 states have each developed their own Blue Sky law regulatory systems, statues and rules. The Rules of the NASD are regulated by and approved by the SEC. This includes the NASD Code of Arbitration Procedure, which is the Code under which this contract to arbitrate is to be interpreted and enforced. In this massive and complex industry arbitration is the norm, with the strong endorsement of the Supreme Court. See *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332 (1987) (requiring arbitration of claims under the Securities Exchange Act of 1934 even though 15 U.S.C. 78aa, says "The district courts of

the United States ... shall have exclusive jurisdiction" over claims under the Act.); *Rodriguez de Quijas v. Shearson/Am. Exp.*, 490 U.S. 477 (1989) (requiring arbitration of claims under the Securities Act of 1933).

The rules under which this arbitration is proceeding have been approved by the SEC. The NASD rules are an integral part of a complex industry self regulatory regime subject to SEC control and oversight. The Court should not disturb the operations of this system, but should stay its hand and allow the regime to operate without judicial interference and second guessing.

**American Express Should Be Compelled To Arbitrate**

The Coverts are entitled to pursue their pending arbitration against American Express without judicially imposed obstruction or delay. This is their right under the FAA, 9 U.S.C. § 1-16, and under arbitration agreements voluntarily signed by the parties. Section 4 of the FAA provides a summary procedure for obtaining an order compelling arbitration. 9 U.S.C. § 4. In view of Congress' clear intent to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible, this Court should compel American Express to submit to arbitration. *Moses H. Cone Memorial Hasp. v. Mercury Constr.*, 460 U. S. 1, 22, 103 S.Ct. 927, 940 (1983).

The Court cannot ignore an arbitration agreement that American Express and the Coverts voluntarily entered into. The Court's responsibility is this: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985) (italics in original).

The Supreme Court's relentless effort to enforce arbitration agreements has continued. See e.g. *Pacificare Health Systems v Book*, 538 U.S. 401, 123 S.Ct. 1531, 1536 (2003) (The "proper course is to compel arbitration" even though arbitration agreement may be construed to limit RICO damages); *Green Tree Financial Corp v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 2408 (2003) ("[W]e remand the case so that the arbitrator may decide the question of contract interpretation--thereby enforcing the parties' arbitration agreements according to their terms."); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 79 (2002) (Arbitrator, not the court, should determine whether dispute is "eligible" for arbitration under NASD code). The arbitration agreements at issue in this case should be similarly enforced by an order compelling American Express to arbitrate the Covert's claims.

## CONCLUSION

Defendants respectfully request that this Court 1) stay further proceedings in this case, 2) order American Express to arbitrate the Coverts July, 2004 claims, as provided by the agreements, and 3) deny the motion of American Express.

MICHAEL S. MACDONALD LAW OFFICE

Dated: May 11, 2005

Michael S. MacDonald (MN Atty. I.D. # 0129562)
1880 Livingston, Suite 202
West St. Paul, MN 55118
Attorney for Claimants, Peter Covert and Linda Covert.