04/18/2005 10:16 FAX 2136132677 NASD-D.R. 003

CV:#00-1980 DSD/JMM

UNIFORM SUBMISSION AGREEMENT

NASD Dispute Resolution

Received NOV 10 2004 NASD Western Regional Dispute Resolution Office
AUG 02 2004

In the Matter of the Arbitration Between

Name of Claimant(s)

Peter G. Covert, IRA
Linda L. Covert, IRA

04-05362

Name of Respondent(s)

American Express Financial Advisors

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations and/or NASD Code of Arbitration Procedure of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission

exh A-1

SCANNED MAY 11 2005 U.S. DISTRICT COURT MPLS

Agreement.

Party(ies) Signature

American Express Financial Advisors

Date: 8-17-04

LC43A: SUBMISSION AGREEMENT
rc:06/02
CC:

Arthur S. Leider, ., Peter G. Covert, IRA
Investors Arbitration Specialists, Inc., 8880 Rio San Diego Drive, Suite 800, San Diego, CA 92108

RECIPIENTS:

David Flower, American Express Financial Advisors
American Express Financial Advisors, Corporate Litigation, 50587 AXP Financial Center, Minneapolis, MN 55474

## NASD ARBITRATION UNIFORM SUBMISSION AGREEMENT

Claimant(s)

**In the Matter of the Arbitration Between**

Name(s) of Claimant(s)
PETER G. COVONT, IRA
LINDA L. COVONT, IRA

**and**

Name(s) of Respondent(s)
AMERICAN EXPRESS FINANCIAL ADVISORS INC.

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.
2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.
3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.
4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.
5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

PETER G. COVONT, IRA
Claimant Name (please print)

[signature]
Claimant's Signature

July 13, 2004
Date

LINDA L. COVONT, IRA
Claimant Name (please print)

[signature]
Claimant's Signature

July 13, 2004
Date

**If needed, copy this page.**

**PREHEARING ORDER ON RESPONDENT'S MOTIONS TO STRIKE CLAIMANTS' UNTIMELY RESPONSE AND TO DISMISS CLAIMANTS' STATEMENT OF CLAIM**

NASD Dispute Resolution Arbitration Number: 04-05362

Claimants: Peter G. Covert, IRA and Linda L. Covert, IRA

Respondent: American Express Financial Advisors, Inc.

Arbitrators:

1. Ms. Deborah L. Cronin, Industry Panelist
2. Mr. David W. Dresnick, Public Panelist
3. Mr. James H. Frank, Public Panelist and Chairperson

NASD Dispute Resolution Representative: Laura McNamire, Esquire, Staff Attorney

Counsel for Claimants: Mr. Arthur S. Leider, Investors' Arbitration Specialists, Inc.

Counsel for Respondent: Ryan K. Woodson, Esquire, Edgerton & Weaver, LLP

Panel and Counsel convened telephonically Monday, February 28, 2005, and Oral Arguments were heard on the Motions served on Claimants, and Claimants' Responses thereto. The procedural and dispositive motions were each addressed, arbitrators posed questions to counselors, and deliberations were then conducted among the panel members.

**The Motions Before the Panel**

Respondent moved the Panel to Strike Claimants' Response to Respondent's Reply to Claimants' Opposition to the Dispositive Motion as inappropriate and untimely. This Motion was served on Claimants and NASD on February 25, 2005, and forwarded to the Panel by facsimile transmission on February 28, 2005.

Respondent had previously served its Motion to Dismiss Claimants' Statement of Claim, Claimants had served their Opposition to the motion, and Respondent had served its Reply thereto. The Motion to Dismiss the Statement of Claim is based on *res judicata*.

Today's prehearing conference had been scheduled during the Initial Prehearing Scheduling Conference of December 28, 2004.

**The Panel's Rulings**

On Respondent's Motion to Strike the Panel rules that it is **GRANTED.**

On Respondent's Motion to Dismiss Claimants' Statement of Claim the Panel rules that it is **DENIED**, and this proceeding shall go forward according to the Scheduling Order of December 28, 2004.

**SO ORDERED**, this day, February 28, 2005.

__________signed____________________
James H. Frank, Esquire, Chairperson
Deborah L. Cronin, Arbitrator
David W. Dresnick, Arbitrator

Arthur S. Leider
Investors Arbitration Specialists, Inc.
8880 Rio San Diego Drive Ste. 800
San Diego, Ca. 92108
Office - (619) 582-7260
Fax- (619) 615-2024

## NATIONAL ASSOCIATION OF SECURITIES DEALERS DISPUTE RESOLUTION

| | |
|---|---|
| PETER G. COVERT, IRA and LINDA L. COVERT, IRA<br><br>Claimants,<br><br>vs.<br><br>AMERICAN EXPRESS FINANCIAL ADVISORS, INC.<br><br>Respondents. | **NASD CASE NO.**<br><br>**STATEMENT OF CLAIM AND DEMAND FOR ARBITRATION** |

Claimants Peter G. Covert, IRA and Linda L. Covert, IRA ("Claimants") complain against Respondents, and each of them, and allege as follows:

**PARTIES**

1. Claimants PETER and LINDA COVERT ("Claimants") are individuals who reside in Riverside, California. During the period in dispute Claimants maintained Individual Retirement Accounts ("IRA") with American Express Financial Advisors, Inc. (Acct. Nos. 1383 1082 6 001 and 1383 1092 5 001). Claimants state that they has no experience in the financial services industry, limited experience in investing in stocks and bonds and justifiably relied upon the advice and recommendations of the Respondents. Claimants further assert that Respondents

had effective control over their retirement accounts and that the investments in dispute were recommended by Respondents.

2. Claimants are informed and believe and thereupon allege that AMERICAN EXPRESS FINANCIAL ADVISORS, INC. ("AXFA") is an NASD member broker-dealer headquartered in Minneapolis, Mn. Claimants further allege that respondent AXFA maintained a branch office in Ontario, Ca. and, during the period in dispute, was subject to the rules and regulations of the NASD as well as all applicable state and federal securities laws.

3. Intentionally left blank.

4. Claimants are informed and believe and thereupon allege that at all material times each of the Respondents was the agent of each of the remaining Respondents and during the acts herein alleged, was acting within the scope of such agency and with the permission and consent of the other respondents.

**JURISDICTION**

5. This panel has jurisdiction of the claims herein alleged under the NASD Code of Arbitration Procedure § 10301 (a).

6. Claimants hereby request that this matter be heard by a three-person panel.

7. Claimants hereby request that the hearing in this matter be set in Los Angeles, Ca. as provided for under the NASD Code.

**BACKGROUND**

In late 1999 the Coverts retired from their positions with Kaiser Permanente, a leading health maintenance organization. Peter Covert retired after 22 years with Kaiser and Mrs. Covert retired on a medical disability after 16 years with Kaiser. The Claimants had little, if any, experience in investing and based upon the reputation and representations of American

Express Financial Advisors they met with Respondent's associated persons, John Fontaine and David Karr to discuss their post-retirement financial needs and how best to invest their retirement funds which constituted the vast majority of their liquid net worth.

Respondent recommended to both Claimants that they invest both of their IRA rollover accounts in variable annuities. Claimants were informed that this type of investment was safe and appropriate for IRA accounts, that it would provide them with monthly income, that there would be ongoing monitoring of their accounts and that the asset allocations recommended were suitable for retirees. Claimants were further told that the sub-accounts recommended were suitable and when there were any recommended changes they would be contacted.

Based upon the representations of the Respondents employees and the reputation of American Express as one of the world's leading financial services companies Claimants agreed, in late 1999, to invest the entirety of their retirement account which totaled more than $600,000.00 under the management of Respondents.

On numerous occasions Claimant Peter Covert called the Respondent to express his concern about the performance of his and his wife's retirement funds. Respondents' often failed to return his calls in a prompt manner or Mr. Covert was advised that he shouldn't worry and that the stock market eventually would recover. He also was made aware that he would have considerable penalties if the account was liquidated. Mr. Covert further believes that, sometime in 2001 the original advisors Fontaine and Karr left AXPFA and the accounts were reassigned.

**FIRST CAUSE OF ACTION**

(Fraudulent and Negligent Misrepresentation against All Respondents)

8. Claimants re-allege and incorporate by reference paragraphs 1 through 7 as though fully set forth herein.

9. Claimants are informed and believe and thereupon allege that the Respondent

intentionally misrepresented the risks involved in variable annuities. Claimants were led to believe that there was little or no risk involved because variable annuities contain a death benefit. Claimants were not told that, based upon the current average life expectancy, they would have to wait approximately thirty years to take advantage of said benefit.

10. Claimants are informed and believe and thereupon allege that Respondent and its employees misrepresented the fact that their risk tolerance, financial needs and investment objectives were taken into account before recommending the investments in dispute. Claimants further allege that Respondents misrepresented the high costs and fees involved in said investments.

11. Claimants further allege that Respondent and its employees misrepresented the risks involved in investing a large percentage of their retirement funds in equity sub-accounts. Claimants were assured that they would not be invested in high risk investments and their accounts would be asset-allocated in a manner appropriate for retirees who wished take minimal risk.

12. Claimants further allege that the Respondent and its employees misrepresented the assertion that their accounts would be constantly monitored in order to minimize their risks. Respondents failed to institute any adequate risk management techniques despite their assurances that Claimants would not be exposed top any unreasonable risk.

13. As a direct and proximate result of Respondent's fraudulent and negligent misrepresentations Claimants have suffered the damages prayed for below.

**SECOND CAUSE OF ACTION**

(Breach of Fiduciary Duty against all Respondents).

14. Claimants re-allege and incorporate by reference paragraphs 1 through 13 as though fully set forth herein.

15. Claimants assert that under California Civil Code § 2322 (c) the relationship between a stockbroker and his client is fiduciary in nature. Courts around the country have recognized the fiduciary duty that a broker owes to a customer. "The relationship between the claimant and their stockbroker is fiduciary in nature imposing on respondents the duty to act in the highest good faith." Twomey v. Mitchum, 262 Cal. App. 2d 690, 69 Cal.Rptr.222 (1968), Hobbs v.Bateman Eichler, 164 Cal. App. 3d.174 (1985), Duffy v. Cavalier, 264 Cal.Rptr.740 (1989)

16. Claimants further allege that Respondent breached its duty of fair dealing by recommending that Claimants invest their IRA accounts in a tax-deffered variable annuity. Respondents failed to disclose that variable annuities investments involve high annual fees, that annuities do not provide any tax advantages when used in a retirement account and that they would be paying fees for benefits that were not applicable to IRA accounts.

17. Claimants are informed and believe and thereupon allege that Respondents breached its fiduciary duty by recommending investments based upon the amount of commissions generated to the detriment of the Claimants.

18. Claimants allege that as fiduciary Respondent owed them and other like retirees a duty to make suitable and appropriate investment recommendations. Claimants further that Respondents breached its fiduciary duty by failing to make reasonable asset allocation recommendations and by failing to inform them of the amount of commissions/fees they would be receiving for making said recommendations.

19. As a direct and proximate result of Respondent's breach of its fiduciary duty Claimants have suffered damages as prayed for below.

**THIRD CAUSE OF ACTION**

(Intentional or negligent Omissions in Violation of the NASD Rules of Fair Practice, Rule 10(b)5 of the Securities Exchange Act and Sections 25400 of the California Corporations Code)

20. Claimants reallege and incorporate by reference paragraphs 1-19 as though fully set forth herein.

21. Respondents' wrongful conduct, as alleged in paragraphs 1 through 29 above, constitutes violations of the federal securities laws, including but not limited to Sections 10 and 20 of the Securities Exchange Act of 1934 and Rule 10(b)-5 promulgated thereunder and Sections 12(2) and Section 15 of the Securities Act of 1933, California Corporations Code Sections 25401 et. seq. and 2550 et. seq. and the NASD Rules of Fair Practice.

22. Claimants assert that they relied upon Respondent's material misrepresentations and/or non-disclosures to their detriment. As a result of the aforementioned acts of the Respondent, Claimants were proximately harmed by substantial losses of equity in their assets. Further the aforementioned acts were wanton, willful reckless and oppressive.

23. As a direct and proximate result of Respondent's intentional or negligent omissions of material facts Claimants have suffered the damages prayed for below.

**FOURTH CAUSE OF ACTION**

(Constructive Fraud against All Respondents)

24. Claimant re-allege and reincorporate by reference paragraphs 1-23 as though fully stated herein.

25. " "Constructive fraud" arises from breach of duty by one in confidential or fiduciary relationship to another which induces justifiable reliance by latter to his prejudice." Gold v. Los Angeles Democratic League, 54 Cal Rptr.533, 246 Cal.App.2d 123 (1975).

26. "Constructive fraud may be presumed from confidential relationship or

circumstance of parties' dealings, so that there is no requirement that failure to disclose material facts that should have been disclosed by virtue of confidential relationship be intentional." Byrum v. Brand, 268 Cal.Rptr.609, 219 Cal.App.3d (1990).

27. Claimants assert that Respondent is liable for constructive fraud for sales practice and supervision violations in connection with the recommendation and sales of variable annuities to retirees with IRA accounts. Respondent failed to adequately explain the costs and features of variable annuities, failed to explain the fees and commissions, failed to explain that the costs involved were considerably higher than if Claimants had purchased mutual funds and lacked a reasonable basis for believing these recommendations were suitable.

28. As the direct and proximately result of Respondent's fraudulent course of conduct Claimants are entitled to exemplary or punitive damages as prayed for below.

## PRAYER FOR DAMAGES

WHEREFORE, Claimants pray for an award against Respondent as follows:

1. Compensatory damages in the sum of approximately $ 100,000.00.
2. Punitive or exemplary damages for constructive fraud in the sum of $ 300,000.00.
3. Pre- award interest from January 1, 2000 as the panel may deem just and proper.
4. Any and all costs incurred in bringing this claim including filing fees and hearing fees.
5. Reasonable representation fees as the panel may deem just and proper.
6. Expert witness fees as the panel may deem just and proper.
7. All remaining deferred sales charges remaining on said annuities to be determined.
8. Such other relief as the panel may deem just and proper.

Dated this 20th day of July, 2004

*Arthur S. Leider*

Investors Arbitration
Specialists, Inc.
8880 Rio San Diego Drive
Ste. 800
San Diego, Ca. 92108
Office -(619) 582-7260
Fax- (619) 615-2024
Arthur S. Leider

# EXHIBITS

**EXHIBIT A**

AMERICAN EXPRESS

# Statement of Financial Accounts

**January 1, 2002 - December 31, 2002**

**Group Number** 0396 8407 1 001

**Client Number** 1383 1082 6 001
MR PETER G COVERT SR

**Client Number** 1383 1092 5 001
MRS LINDA L COVERT

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
home2.americanexpress.com/cacc

**Direct your service and investment questions to**
PAUL R MATA CFP
MATA, PHELPS, EAGLES & KAYATTA
A financial advisory branch
430 N Vineyard Ave Ste 101
Ontario CA 91764-5453
909-974-0382
909-974-0392 FAX

## Statement Mailed to

MR PETER G COVERT SR
MRS LINDA L COVERT
4730 CREST AVE
RIVERSIDE CA 92503-2919

## Value of Accounts

**as of December 31, 2002**

**$289,755.43**

## Save, Invest, Spend, Borrow: All in ONE.

Introducing the American Express ONE Financial Account, an investment account with the added benefits of everyday banking, including free unlimited check-writing, an ATM Card, online bill pay and much more. And, with total account assets of $25,000 or more, you can get a complimentary American Express Gold Card. ONE, combined with personalized advice available from your financial advisor, can help you move your money forward as never before. Speak to your advisor for more information. (Financial advisory service is offered separately, priced according to your needs.)

## American Express Portfolio Summary

**Where your assets are invested by product**



| Percent of all current products | Product type | Value one year ago | Value last statement | Current value |
|---|---|---|---|---|
| 0% | Money Market Funds and Cash | $1.70 | $0.00 | $0.00 |
| 0% | Mutual Funds | $2,873.87 | Not applicable | Not applicable |
| 0% | Securities | Not applicable | Not applicable | Not applicable |
| 100% | Annuities | $427,882.37 | $295,074.34 | $289,755.43 |
| 0% | Certificates | Not applicable | Not applicable | Not applicable |
| 0% | Insurance | Not applicable | Not applicable | Not applicable |
| 0% | Limited Partnerships and REITs | Not applicable | Not applicable | Not applicable |
| 0% | Additional Products | Not applicable | Not applicable | Not applicable |
| **100%** | **Total value of all accounts** | **$430,757.94** | **$295,074.34** | **$289,755.43** |

00100039684070000001 12/31/2002

**EXHIBIT B**

Back

# News Release

**FOR RELEASE:** Wednesday, December 4, 2002
**CONTACTS:** Nancy A. Condon 202-728-8379
Michael Shokouhi 202-728-8304

NASD

**NASD Fines American Express Financial Advisors $350,000 for Improper Sales of Variable Annuities and Life Insurance**

**Washington, D.C.** — NASD announced today that it has censured and fined American Express Financial Advisors Inc. $350,000 for sales practice and supervision violations in connection with its sale of variable annuities and variable life insurance products over a 30 month period, ending in 2000.

NASD's review focused on American Express' sale of variable annuities into tax-qualified retirement plans and accounts. A qualified plan is a tax deferred retirement account such as an IRA or 401(k) plan where taxes are paid only when an employee withdraws money. NASD found that American Express, through certain registered representatives, omitted material facts when selling variable annuities into qualified plans. In making some sales, registered representatives failed to disclose that variable annuities do not provide the benefit or advantage of tax deferred earnings when purchased in qualified plans. In general, tax deferral is one of the primary reasons for purchasing a variable annuity.

In the sale of a variable annuity to an account that is already tax deferred, sales should only be made when other benefits of a variable annuity such as a death benefit or annuity payout options support the purchase. Some American Express representatives failed to determine that customers had a need for a benefit offered by a variable annuity, other than tax deferral, when recommending the purchase of the product. Such sales were in violation of NASD rules since the registered representatives lacked a reasonable basis for believing that their recommendations were suitable.

In addition, in certain instances American Express representatives did not adequately explain to customers the costs and features of variable annuities. They also failed to compare and contrast variable annuities with mutual funds in those instances where the customer's needs might have been better met through the purchase of mutual funds. NASD found that American Express had failed to address these issues adequately when it trained representatives and that certain disclosure documents omitted material facts regarding qualified annuities.

In addition, NASD found that the firm failed to establish, maintain and enforce adequate supervisory policies and procedures governing the sale of variable annuities and variable life insurance products during the 30-month period.

"We will continue to focus on variable annuity sales practices through, guidance to investors, notices to broker dealers and enforcement actions to ensure that variable products are sold in an appropriate manner," stated Mary L. Schapiro, NASD Vice Chairman and President of Regulatory Policy and Oversight. "We continue to see instances of abusive sales practices and suitability problems with variable annuities. It is only through effective training and a comprehensive supervisory system that firms can ensure that customers receive important disclosures concerning these complex products and that they are sold only to customers for whom they are suitable."

This case was brought in connection with a series of special examinations conducted over the last several years by NASD that focused on the sale of variable contracts. Due to the dramatic increase in sales of variable products in the last several years, NASD has issued numerous alerts to both firms and investors to help ensure that these products are properly sold which can be found at:

- [illegible]
- [illegible], and
- [illegible]

In settling the matter, American Express neither admitted nor denied NASD's findings.

Investors can obtain more information and the disciplinary record of any NASD-registered broker or brokerage firm by calling (800) 289-9999 or by sending an e-mail through NASD's Web Site at www.nasdr.com.

NASD is the leading private-sector provider of financial regulatory services, dedicated to bringing integrity to the markets and confidence to investors through effective and efficient regulation and complementary compliance and technology-based services. NASD touches virtually every aspect of the securities business – from registering and educating all industry participants, to examining securities firms, enforcing both NASD rules and the federal securities laws, and administering the largest dispute resolution forum for investors and member firms. For more information, please visit our Web site at www.nasd.com.

Arthur S. Leider
Investors Arbitration Specialists, Inc.
8880 Rio San Diego Drive Suite 800
San Diego, Ca. 92108
Office - (619) 582-7260
Fax- (619) 615-2024

**NASD DISPUTE RESOLUTION**

| | |
|---|---|
| **PETER G. COVERT, IRA and LINDA L. COVERT. IRA** | **NASD Case No. 04-05362** |
| **Claimants** | |
| **vs.** | **DECLARATION OF PETER G. COVERT** |
| **AMERICAN EXPRESS FINANCIAL ADVISORS, INC.** | |
| **Respondent.** | |

I, Peter G. Covert, hereby declare that I did not receive any notification from Rust Consulting Company or any other entity regarding the class action known as Benaquisto et al. v. American Express et al.

I further state that had I been given proper notification of said matter I would have elected not to participate in said matter or any subsequent settlement.

I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

Dated this 18th day of January, 2005

[signature]
Peter G. Covert

Arthur S. Leider
Investors Arbitration Specialists, Inc.
8880 Rio San Diego Drive Suite 800
San Diego, Ca. 92108
Office - (619) 582-7260
Fax- (619) 615-2024

**NASD DISPUTE RESOLUTION**

| | |
|---|---|
| **PETER G. COVERT, IRA and LINDA L. COVERT. IRA** **Claimants** vs. **AMERICAN EXPRESS FINANCIAL ADVISORS, INC.** **Respondent.** | **NASD Case No. 04-05362** **DECLARATION OF LINDA L. COVERT** |

I, Linda L. Covert, hereby declare that I did not receive any notification from Rust Consulting Company or any other entity regarding the class action known as <u>Benaquisto et al. v. American Express et al.</u>

I further state that had I been given proper notification of said matter I would have elected not to participate in said matter or any subsequent settlement.

I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

Dated this 18th day of January, 2005

Linda L. Covert

**EDGERTON & WEAVER LLP**
Samuel Y. Edgerton, III (CA Bar No. 127156)
Ryan K. Woodson (CA Bar No. 224765)
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064

Attorneys for Respondent
American Express Financial Advisors, Inc.

**BEFORE THE**

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.**

| | |
|---|---|
| PETER G. COVERT, IRA AND LINDA L. COVERT, IRA,<br><br>Claimants,<br><br>v.<br><br>AMERICAN EXPRESS FINANCIAL ADVISORS, INC.,<br><br>Respondent. | CASE NO. 04-05362<br><br>**AMERICAN EXPRESS FINANCIAL ADVISORS, INC.'S MOTION TO DISMISS CLAIMANTS' STATEMENT OF CLAIM** |

Respondent, American Express Financial Advisors, Inc. ("AEFA"), submits the following Motion to Dismiss the Statement of Claim of Claimants, Peter G. Covert ("Mr. Covert") and Linda L. Covert ("Mrs. Covert") (collectively "Claimants"). The Statement of Claim seeks damages for fraudulent and negligent misrepresentation, breach of fiduciary duty, intentional or negligent omissions in violation of applicable securities rules and laws, and constructive fraud in connection with the sale of two IDS variable annuities to Mr. Covert and Mrs. Covert.

**I.**

**INTRODUCTION**

Claimants were members of a class action in which they sued AEFA to recover damages from the same IDS annuities that are the subject of their Statement of Claim. The title of the

class action lawsuit is Benacquisto, et al. v. American Express Financial Advisors, et al., 2001 U.S. Dist. LEXIS 23914 ("Benacquisto class action") (A true and correct copy of the Benacquisto Final Court Order and Judgment is attached hereto as Exhibit 1).

The class members settled the lawsuit with AEFA and other entities. Under the terms of the settlement, Mr. Covert received a free Accidental Death Benefit on his IDS annuity in the amount of $63,321 and Mrs. Covert received a free Accidental Death Benefit on her IDS annuity in the amount of $55,237. (A true and correct copy of the notices of the free Accidental Death Benefit coverage that AEFA gave Claimants and the booklet that AEFA included in the notices are attached hereto as Exhibit 2.)

The Settlement Agreement between the class members, AEFA and the other Defendants states that the class members, including Claimants, are barred and permanently enjoined from bringing any future claims against Defendants, including AEFA, that in any way relate to the subject matter of the Benacquisto class action, which included the IDS annuities for which Claimants are suing in this matter.

Therefore, Claimants' Statement of Claim must be dismissed with prejudice in its entirety.

## II.

## FACTUAL BACKGROUND

In late 1999, Claimants met with David Karr ("Karr") and John Fountain ("Fountain"), who are both Financial Advisors with AEFA. After consulting with Karr and Fountain, Claimants each agreed to invest in an annuity.

On December 21, 1999, Mr. Covert invested $387,582.52 in an American Express Retirement Advisor Variable Annuity that was issued through IDS Life Insurance Company ("IDS"). (Exhibit 3, which is a true and correct copy of the annuity Contract Data for Mr. Covert's IDS annuity.) On December 23, 1999, Mr. Covert invested an additional $159,077.53

in the same annuity. On December 21, 1999, Mrs. Covert invested $71,903.51 in an American Express Retirement Advisor Variable Annuity that was issued through IDS. (Exhibit 4, which is a true and correct copy of the annuity Contract Data for Mrs. Covert's IDS annuity.)

On September 8, 2000, Plaintiffs and Defendants in the Benacquisto class action stipulated to settle their lawsuit regarding the sale of certain life insurance and annuity products. (Exhibit 1, pp. 4-5.) On October 2, 2000, the United States District Court for the District of Minnesota ("United States District Court") certified the class in the Benacquisto class action and ordered individual and publication notice to class members. The United States District Court ordered that the class includes, but is not limited to, *all persons who have an ownership interest in an individual deferred annuity contract issued by IDS Life Insurance Company*. (Id. at pp. 7-8.) The United States District Court ordered that individual notices be sent by first-class mail, postage prepaid, to the last known address of the annuity owners. (Id. at p. 11.) Defendants also hired companies to perform searches in order to update the addresses of potential class members. Id.

On November 13, 2000, as directed by the United States District Court, the Benacquisto class action administrator mailed class action notice packages via First Class Mail to Claimants at 4730 Crest Avenue, Riverside, California, 92503-2919. (Declaration of Matthew Potter, paragraph 2 and paragraph 3.) A true and correct copy of the Declaration of Matthew Potter, a Principal Consultant for Rust Consulting, Inc. ("Rust"), the class action administrator of the Benacquisto class action, is attached hereto as Exhibit 5. The class action notice concerned IDS annuity contract number 9310-06497128, which is the annuity that Mr. Covert purchased through AEFA, and IDS annuity contract number 9310-064965388, which is the annuity that Mrs. Covert purchased through AEFA. (Id., Exhibit 3 and Exhibit 4.)

The address to which Rust mailed the class action notice packages is the same address that Claimants indicated on their applications for the IDS annuities. (A true and correct copy of

the IDS annuity application for Mr. Covert is attached hereto as Exhibit 6. A true and correct copy of the IDS annuity application for Mrs. Covert is attached hereto as Exhibit 7.) Moreover, the address to which Rust mailed the class action notice packages is the same address that is currently listed as the address of record on the IDS annuity statements for Claimants. (A true and correct copy of a document from AEFA that shows the current address of record for the IDS annuities of Claimants is attached hereto as Exhibit 8.) Rust has not received notification from the Postal Service, either by return of the mailings or otherwise, that the class action notice packages were undeliverable at the addresses to which they were mailed. (Exhibit 5, paragraph 5.)

In addition, Rust published notice of the class action in the newspaper with the largest circulation in each of the fifty states, as well as the national editions of the New York Times, The Wall Street Journal, and the USA Today. (Exhibit 5, paragraph 6.) Furthermore, notice of the Benacquisto class action was posted on the Internet websites of counsel for the class members and counsel for Defendants. (Exhibit 1, p. 11.)

The individual and publication notices also included notice of a Fairness Hearing on March 6, 2001 that would provide the potential class members with an opportunity either to exclude himself or herself from the settlement class or object to the proposed settlement. (Exhibit 1, p. 5.)

Claimants never submitted any exclusion request, either timely or untimely, with respect to the Benacquisto class action. (Exhibit 5, paragraph 9.) Therefore, Claimants were members of the Benacquisto class action.

On March 6, 2001, the United States District Court held the Fairness Hearing to determine whether to give final approval to the proposed settlement. (Exhibit 1, p. 5) On May 15, 2001, the United States District Court granted final approval of the settlement class, approved the proposed settlement, and dismissed the settlement class members' claims. (Id.)

After the final approval of the settlement by the United States District Court on November 14, 2001, notice of the General Relief provided under the settlement was mailed to Claimants at 4730 Crest Avenue, Riverside, California 92503-2919. (Exhibit 5, paragraph 7.) As stated above, this is the same address listed on the IDS annuity applications of Claimants and is the current address of record listed with AEFA for their IDS annuities. (Exhibits 6, 7 and 8.) Rust has not received notification from the Postal Service, either by return of the mailings or otherwise, that the General Relief notices were undeliverable at the addresses to which it was mailed. (Exhibit 5, paragraph 8.)

Under the terms of the Benacquisto Settlement Agreement ("Settlement Agreement"), AEFA gave Claimants free Accidental Death Benefit coverage on their IDS annuities. (Exhibit 2.) Mr. Covert received a free Accidental Death Benefit in the amount of $63,321 and Mrs. Covert received a free Accidental Death Benefit in the amount of $55,237. (Id.)

## III.

## LEGAL ANALYSIS

### A. Claimants Were Members of the Benacquisto Class Action and Are Bound to the Settlement Agreement

The United States District Court certified the Benacquisto class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Exhibit 1, p. 5.) Rule 23(b)(3) of the Fed. R. Civ. P. states that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(c)(2)(B) of the Fed. R. Civ. P. states that "[F]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The court will usually require first class mail to all class members whose identity may be ascertained through reasonable means. Eisen v. Carlisle & Jacquelin, 94 U.S. 2140, 2147 (1974). Individual mailing to each class member's last known address is appropriate. White v. National Football League, 41 F.3d 402, 408 (8th Cir. 1994). As long as the best notice practicable was given to the class members, there is no requirement that the class members actually receive the notice. Silber v. Mabon, 18 F.3d 1449, 1451 (9th Cir. 1994). In addition, for class members who cannot be identified, some form of publication and/or broadcast notice is required. Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1304 (9th Cir. 1990). Further, the notice of class certification may be combined with a notice of proposed settlement of the class claims. Weinberger v. Kendrick, 698 F.2d 61, 72 (2nd Cir. 1983).

Rust sent individual class notices to Claimants via first class mail to their address of record. (Exhibit 5, paragraphs 2 and 3.) The notices informed Claimants of the Benacquisto class action and provided them with the opportunity to either exclude themselves from the class or object to the proposed settlement.

In addition, although Claimants were identified as class members, notice of the Benacquisto class action was published in the newspaper with the largest circulation in each of the fifty states, as well as the national additions of the New York Times, The Wall Street Journal, and the USA Today. (Id., paragraph 6.) Finally, notice of the Benacquisto class action was posted on the Internet websites of counsel for Plaintiffs and counsel for Defendants. (Exhibit 1, p. 11.)

The notice of the class action fully complied with the Fed. R. Civ. P. and the orders of the United States District Court. Specifically, the United States District Court ruled that this notice:

(a) constituted the best practicable notice to Class Members under the circumstances of this Action;

(b) was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this class action; (ii) their right to exclude themselves from the Class and the proposed settlement; (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class' representation by Plaintiffs or Plaintiffs' counsel, and/or the award of attorneys' fees); (iv) their right to appear at the Fairness Hearing – either on their own or through counsel hired at their own expense – if they did not exclude themselves from the Class; and (v) *the binding effect of the Order and Judgment in this Action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class*;

(c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and

(d) fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

(Id., pp. 11-12.)

Claimants did not exclude themselves from the Benacquisto class. (Exhibit 5, paragraph 9.) Thus, the Settlement Agreement, Court Order and Judgment bind Claimants to its terms.

**B. Claimants Are Enjoined From Filing Their Statement Of Claim**

The Settlement Agreement, which was approved and ordered by the United States District Court, states that class members who have not been timely excluded from the class are permanently barred and enjoined from filing any other lawsuit *or arbitration* in any jurisdiction that is related to or connected in any way with the claims in the Benacquisto class action lawsuit and the marketing, sale, servicing, suitability or representations made in connection with the IDS annuities of Claimants. (Exhibit 1, p. 23 and p. 26.) The United States District Court ruled that the issuance of the permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the Action and to protect and effectuate this Order and Judgment. (Id. at p. 26.)

Further, the Settlement Agreement states that all class members agree that they shall not now or hereafter initiate, participate in, maintain, or assert against AEFA any claims or causes of action that are based upon, related to, or connected with, directly or indirectly, in whole or in part the allegations, facts or subjects set forth or otherwise raised in the Benacquisto class action. (Id.

at p. 17-18.)

Here, all of the claims in the Statement of Claim of Claimants directly relate to the IDS annuities that were the subject of the Benacquisto class action. The United States District Court barred and enjoined any member of the Benacquisto class from bringing any subsequent lawsuit or arbitration that is related to or connected in any way to the marketing, sale, servicing, suitability or representations made in connection with the IDS annuities of Claimants.

Therefore, Claimants are barred and enjoined by the United States District Court from filing their Statement of Claim.

### B. Claimants Are Barred By The Doctrine of Res Judicata From Filing Their Statement Of Claim

The Settlement Agreement states that "the terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members…and those terms shall have res judicata and other preclusive effect in all pending and future claims, lawsuits or other proceedings." (Id. at p. 15.)

Res judicata is a legal principle that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. (Black's Law Dictionary, Abridged Sixth Edition.)

In Miller Brewing Co. v. Fort Worth Distributing Co., the Fifth Circuit Court of Appeals dismissed plaintiff's case pursuant to the doctrine of res judicata. See Miller Brewing Co. v. Fort Worth Distributing Co., 781 F.2d 494, 499 (5th Cir. 1986). A state court entered a final judgment by dismissing plaintiff's case with prejudice. Id. at 496. Subsequently, plaintiff filed for arbitration on the same subject matter. Id. The Fifth Circuit Court of Appeals ruled that "[S]ince an arbitration award involves the entry of judgment by a court, parties should be barred from seeking relief from arbitration panels when, under the doctrine of res judicata, they would be

barred from seeking relief in the courts." Id. at 499.

Here, Claimants have done the exact same thing. Claimants were members of the Benacquisto class action. Claimants received a free Accidental Death Benefit on their IDS annuities. (Exhibit 2.) The United States District Court approved the Settlement Agreement, which barred Claimants from bringing any subsequent action against AEFA involving the IDS annuities pursuant to the doctrine of res judicata. (Exhibit 1, p. 15, pp. 17-18, p. 23 and p. 26.) The United States District Court entered a final judgment by dismissing all of the claims of the class members on the merits and with prejudice. (Id., p 31-32.) Now, Claimants file a Statement of Claim with the National Association of Securities Dealers seeking to recover damages from the same annuities that were the subject matter of the Benacquisto class action.

Therefore, it cannot be disputed that the doctrine of res judicata bars Claimants from filing their Statement of Claim against AEFA.

## V.

## CONCLUSION

In light of the foregoing, AEFA requests that the arbitration panel dismiss the Statement of Claim of Claimants in its entirety with prejudice. AEFA further requests that the arbitration panel award all costs and attorneys' fees to AEFA.

DATED: January 14, 2005

**EDGERTON & WEAVER LLP**
SAMUEL Y. EDGERTON, III
RYAN K. WOODSON

By: [signature]
Ryan K. Woodson
Attorneys for Respondent
American Express Financial Advisors, Inc.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 2615 Pacific Coast Highway, Suite 300, Hermosa Beach, California 90254.

On January 14, 2005, I served the following document described as:

**AMERICAN EXPRESS FINANCIAL ADVISORS, INC.'S MOTION TO DISMISS CLAIMANTS' STATEMENT OF CLAIM**

on the interested parties in this action by placing the true copies thereof enclosed in sealed envelopes as follows:

Laura D. McNamire, Esq.
Staff Attorney
NASD Dispute Resolution
300 S. Grand Avenue, Suite 900
Los Angeles, CA 90071
Fax: (213) 613-2677

Arthur S. Leider
Investors Arbitration Specialists, Inc.
8880 Rio San Diego Drive, Suite 800
San Diego, California 92108
Fax: (619) 615-2024

( ) I deposited such envelopes in the mail at Hermosa Beach, California. The envelopes were mailed with postage thereon fully prepaid.

( ) By Personal Service, I caused such envelope to be delivered by hand to the individuals at the addresses listed.

(X) By overnight courier (DHL), I caused the above-referenced document(s) to be delivered via DHL using a 2 day service, for delivery to the above addressee(s).

(X) By facsimile machine I caused the above-referenced document(s) to be transmitted to the above-named person at the following telephone number above.

(X) (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

( ) (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

EXECUTED this 14th day of January 2005, at Hermosa Beach, California.

Ivana Maiorano

LEXSEE 2001 U.S. DIST. LEXIS 23914

**LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated, Plaintiffs, v. AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK, Defendants.**

**Case No. 00-1980 DSD/JMM**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

***2001 U.S. Dist. LEXIS 23914***

**May 15, 2001, Decided**
**May 15, 2001, Filed, Judgment Entered**

**DISPOSITION:** Settlement approved and complaint dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT, SUSAN MELCHERT, plaintiffs: Richard A Lockridge, Joseph F Henderson, Lockridge Grindal Nauen, Jack L Chestnut, Karl L Cambronne, Chestnut & Cambronne, Mpls, MN.

For LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT, SUSAN MELCHERT, plaintiffs: Barry A Weprin, Melvyn I Weiss, Regina L LaPolla, Janine L Pollack, Milberg Weiss Bershad Hynes & Lerach, New York, NY.

For LESA BENACQUISTO, plaintiffs: Brad N Friedman, Milberg Weiss Bershad Hynes & Lerach, New York, NY.

For LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT, SUSAN MELCHERT, plaintiffs: Ronald R Parry, Robert R Sparks, Arnzen Parry & Wentz, Covington, KY.

For LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT, SUSAN MELCHERT, plaintiffs: Andrew S Friedman, Steven Hubbard, David Grossman, John R Newcomer, Sheldon S Lustigman, Andrew Lustigman, David J Kessler, Ronald A Uitz, Stephen [*2] L Hubbard, Hubbard & Biederman, Dallas, TX.

For LESA BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT, SUSAN MELCHERT, plaintiffs: Brad N Friedman.

For STEVEN A CREATURO, plaintiff: Clair M Carlin, Carlin Law Office, Poland, OH.

For SUE WATERS PATRICK, ROOSEVELT JONES, MATTIE JONES, RICHARD E MORGAN, JR, Dr., intervenors: Katheryn A Andresen, Lockridge Grindal Nauen, Mpls, MN.

For SUE WATERS PATRICK, RICHARD E MORGAN, JR, Dr., intervenors: Patrick Michael Spott, Orman & Nord, Duluth, MN.

For SUE WATERS PATRICK, ROOSEVELT JONES, MATTIE JONES, RICHARD E MORGAN, JR, Dr., intervenors: Charles H Johnson, Griffis Law Office, Birmingham, AL.

For SUE WATERS PATRICK, ROOSEVELT JONES, MATTIE JONES, RICHARD E MORGAN, JR, Dr., intervenors: Lee A Weiss.

For SUE WATERS PATRICK, intervenor: R Stephen Griffis, Griffis Law Office, Birmingham, AL.

For ROOSEVELT JONES, MATTIE JONES, intervenors: Kearney Dee Hutsler, Hutsler Law Office, Birmingham, AL.

For RICHARD E MORGAN, JR, Dr., intervenor: John J Pentz, The Objectors Group, Sudbury, MA.

For SUSAN WINSOR, intervenor: Eric P Finamore.

For AMERICAN EXPRESS [*3] FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, INC., AMERICAN CENTURION LIFE ASSURANCE COMPANY OF NEW YORK, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY OF NEW YORK, defendants: George F McGunnigle, Jane F Godfrey, Leonard Street and Deinard, Mpls, MN.

For AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, INC., AMERICAN CENTURION LIFE ASSURANCE COMPANY OF NEW YORK, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY OF NEW YORK, defendants: Charles C Platt, Randall M Fox, LeBoeuf Lamb Greene & MacRae, New York, NY.

For AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, defendant: John Walter Getsinger, Leonard Street and Deinhard, Mpls, MN.

For MARION WASHBURN, objector: Joseph Stuart Friedberg, Friedberg Law Office, Mpls, MN.

For MARION WASHBURN, objector: Kenneth E Nelson, Nelson Law Office, Kansas City, MO.

For LEONARD OSBORNE, objector: Neil Osborne.

FRANK PACINELLI, objector, Pro se, Stillwell, KS.

For JACK A MILLER, objector: Katheryn [*4] A Andresen, Lockridge Grindal Nauen, Mpls, MN.

For JACK A MILLER, objector: Charles H Johnson, Charles M Thompson, Thompson Law Office, Birmingham, AL.

For JACK A MILLER, objector: Lee A Weiss.

For FRANK PACINELLI, objector: Mitchell L Burgess, M Tony Patton, David M Peterson, Peterson & Assoc, Kansas City, MO.

For FRANK PACINELLI, objector: Jason L Bush.

For FRANK PACINELLI, objector: Thomas Edward Jamison, Fruth Jamison & Elsass, Mpls, MN.

For LISA KIRBY, R GUSKY, CARL MARGOLIS, objectors: Robert Gerard Malone, Malone Law Office, St Paul, MN.

For LISA KIRBY, R GUSKY, CARL MARGOLIS, objectors: Edward W Cochran.

For LISA KIRBY, R GUSKY, CARL MARGOLIS, objectors: Paul S Rothstein, Rothstein Law Office, Gainesville, FL.

For LISA KIRBY, R GUSKY, CARL MARGOLIS, objectors: Frank H Tomlinson, Pritchard McCall & Jones, Birmingham, AL.

**JUDGES:** Honorable David S. Doty, United States District Judge.

**OPINIONBY:** David S. Doty

**OPINION: FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT AND DISMISSING COMPLAINT**

WHEREAS plaintiffs and defendants entered into a Stipulation of Settlement, with exhibits (collectively, the "Settlement Agreement"), [*5] dated September 18, 2000, to settle this class action litigation; and

WHEREAS on October 2, 2000, this Court and the Minnesota State Court for the County of Hennepin jointly entered an Order (the "Hearing Order") preliminarily certifying the putative class in this Action for settlement purposes under Minn. R. Civ. P. 23.01, 23.02(c), and 23.03(b) and *Fed. R. Civ. P. 23(a), 23(b)(3)*, and *23(c)(2)*, ordering individual and publication notice to potential class members, scheduling a Fairness Hearing for March 6, 2001, and providing those persons with an opportunity either to exclude themselves from the settlement class or object to the proposed settlement; and

WHEREAS this Court and the Minnesota State Court for the County of Hennepin jointly held a Fairness Hearing on March 6, 2001 to determine whether to give final approval to the proposed settlement; and

WHEREAS this Court has issued Findings of Fact and Conclusions of Law Concerning Class Action Settlement, dated MAY 15, 2001, granting final certification of the settlement class, approving the proposed settlement, and dismissing the settlement class members' claims (among other things); now, therefore,

Based on the submissions [*6] of the Parties and Class Members, on the evidence adduced at the Fairness Hearing, and on this Court's Findings of Fact and Conclusions of Law dated MAY 15, 2001, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. **Incorporation of Other Documents.** This Order and Judgment Approving Class Action Settlement incorporates and makes a part hereof:

(a) the Stipulation of Settlement dated September 18, 2000, and filed with the Courts on September 18, 2000 (the "Stipulation of Settlement").

(b) the following exhibits to the Stipulation of Settlement: (i) Exhibit A (Guidelines for Determining, Scoring and Awarding Relief in the Claim Review Process); (ii) Exhibit B (Class Notice Package); (iii) Exhibit C (Publication Notice); (iv) Exhibit D (Proposed Hearing Order); (v) Exhibit E (Confidentiality Agreement); (vi) Exhibit G (Statement to Accompany Post-Execution Date Responses to Customer Complaints); (vii) Exhibit H (Post-Settlement Claim Form Mailing); (viii) Exhibit I (Post-Mailing Reminder); and (ix) Exhibit J (Claim Review Administrative Forms and Letters); and

(c) the Affidavit of Jeffrey D. Dahl, sworn to February 23, 2001, Exhibit [*7] to this Order and Judgment (describing the Class Notice Package, its distribution to Class Members, and the Publication Notice).

2. **Jurisdiction.** This Court has personal jurisdiction over all Class Members (as defined below) and has subject matter jurisdiction over this Action and all claims and causes of action resolved by this settlement, including all the Claims and Causes of Action referred to in the Release. Accordingly, this Court has jurisdiction to approve the proposed settlement, grant final certification of the Class, release Claims and Causes of Action as set forth in the Release, and dismiss this Action on the merits and with prejudice.

3. **Final Class Certification.** The Class that was previously certified preliminarily is hereby finally certified for settlement purposes under *Fed. R. Civ. P. 23(a), 23(b)(3)*, and *23(c)(2)*. The Class consists of (A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories [*8] and commonwealths, issued at any time during the Class Period, or (ii) an ownership interest in an individual deferred annuity contract or a participation interest in a Group Qualified Annuity issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity. The Class does not include (i) any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants; or (ii) any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under *Section 1035 of the Internal Revenue Code*. Notwithstanding the foregoing, the Class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any [*9] persons or entities who make a timely election to be excluded from the proposed Class with respect to a particular Policy or Annuity otherwise included within the Class; (ii) any persons or entities who have an ownership interest in (a) a Policy that was terminated prior to the Eligibility Date due to the death

of the insured and on which death benefits were paid; (b) an Annuity that was terminated prior to the Eligibility Date by reason of the death of the annuitant; (c) a Policy or Annuity that was issued, but not accepted or funded, or was returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; (d) a Policy or Annuity that was rescinded as part of a reissue of a new life insurance policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; (e) a Policy or Annuity that is the subject of a release signed by any person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity; [*10] (f) a life insurance policy that was a term life insurance policy or graded premium whole life insurance policy; (g) an annuity contract that was settled (*i.e.*, annuitized) prior to the inception of the Class Period; or (h) an annuity contract that was issued as an immediate annuity. A list of those persons who have validly excluded themselves from the Class, and who therefore are not bound by this Order and Judgment, is on file with this Court as Plaintiffs' and Defendants' Joint Submission of Exclusions From Class, dated March 21, 2001, and is incorporated herein and made a part hereof. A small number of requests for exclusion were deficient and subject to "cure" letters. The Parties will supplement their submission once those outstanding issues are resolved.

4. **Appointment of Co-Class Counsel and Lead Counsel and Adequacy of Representation.** The law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Lockridge Grindal Nauen, P.L.L.P. are hereby appointed Co-Class Counsel; the law firm of Milberg Weiss Bershad Hynes & Lerach LLP is hereby appointed Lead Counsel; and the Class representatives have fully and adequately represented the Class for purposes of entering [*11] into and implementing the settlement and have satisfied the requirements of *Fed. R. Civ. P. 23(a)(4).*

5. **Class Notice.** Notice was provided to the Class in accordance with the Hearing Order. Individual notice was sent by first-class mail, postage prepaid, to the last known address of the Policy and Annuity Owners and, in the case of a Group Qualified Annuity, to persons or entities who hold or held a participation interest in the Group Qualified Annuity, all as reflected by Defendants' records as maintained at the Corporate Office or by the results of any searches performed by a vendor hired by Defendants to update addresses of such persons or entities. In cases of pending litigation against the Defendants, notice was also mailed to any legal counsel known to represent the Class Member. Also in accordance with the Hearing Order, publication notice was published and notice was posted on the internet at the web sites for Defendants and Co-Class Counsel. This Court finds that the notice outlined above:

> (a) constituted the best practicable notice to Class Members under the circumstances of this Action;
>
> (b) was reasonably calculated, under the circumstances, to apprise [*12] Class Members of (i) the pendency of this class action; (ii) their right to exclude themselves from the Class and the proposed settlement; (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class' representation by Plaintiffs or Plaintiffs' counsel, and/or the award of attorneys' fees); (iv) their right to appear at the Fairness Hearing -- either on their own or through counsel hired at their own expense -- if they did not exclude themselves from the Class; and (v) the binding effect of the Order and Judgment in this Action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;
>
> (c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and
>
> (d) fully satisfied the requirements of the Federal Rules of Civil Procedure (including *Fed. R. Civ. P. 23(c)(2)* and (e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

6. **Final Settlement Approval** [*13] . The terms and provisions of the Settlement Agreement, including all exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the Parties and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law. The Parties and Class Members are

hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. **Early Implementation.** The Defendants are hereby authorized, in their sole discretion but in consultation with Co-Class Counsel, and without requiring further approval of this Court, to implement the settlement before the Final Settlement Date (as defined in the Settlement Agreement), in which case all provisions in the Settlement Agreement specifying actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date the Defendants elect to implement the settlement.

8. [*14] **Appeal After Early Implementation.** If the Defendants choose to exercise their discretion to implement the settlement before the Final Settlement Date, anyone seeking to appeal from this Court's rulings must first (i) request to intervene upon a representation of inadequacy of counsel; (ii) request a stay of implementation of the settlement; and (iii) post an appropriate bond. Unless a would-be appellant satisfies all three of these requirements, the Defendants are authorized to implement the settlement before the Final Settlement Date even if such implementation would moot any appeal.

9. **Post-Settlement Mailing.** The Parties are hereby directed to mail the Post-Settlement Mailing materials substantially in the form attached as Exhibit H to the Settlement Agreement, as provided by the Stipulation of Settlement.

10. **Securities Registration Not Required.** This Court hereby confirms that, to the extent that any rights provided under this settlement (including but not limited to the right to designate another person as eligible to receive the ADB under the Settlement Agreement) might be deemed to be a security under section 3(a)(10) of the Securities Act of 1933 [*15] , as amended, registration of any such right would not be required by virtue of this Court's approval of the settlement.

11. **No Tax Advice Being Given.** This Court hereby confirms that the Parties and their counsel are not making any representations or providing any opinions or advice concerning the tax consequences of the proposed settlement or the election of any remedies under the settlement to individual Class Members, and the Parties and their counsel shall not be held liable for any tax consequences or elections.

12. **Binding Effect.** The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors, assigns, guardians, attorneys, trustees, and representatives, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Release.

13. **Release** [*16] . The following Release, which is also set forth in Section XII of the Stipulation of Settlement, is expressly incorporated herein in all respects, is effective as of the Final Settlement Date, and forever discharges the Releasees from any Claims or Causes of Action that arise from or relate to the Released Conduct:

A. Release and Waiver

> 1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releases (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and [*17] Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).
>
> 2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the

Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated [*18] therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its [*19] purchase unless they arise out of or relate to any of the matters described in sections XII.B.2.(i)-(xiii) of the Stipulation of Settlement; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in the Stipulation of Settlement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor [*20] at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable -- notwithstanding that the parties have chosen Minnesota law to govern the Stipulation of Settlement -- Plaintiffs and the Class Members hereby agree that these principles (including *Cal. Civ. Code Section 1542* and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class [*21] Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class

Members in executing this Release fully, finally and forever to settle and release all such matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. Release and Waiver -- Definitions

1. "Claims and Causes of Action" (as used [*22] in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means [*23] any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (iv) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held [*24] in any Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or

maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company n1 and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, [*25] general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

n1 "Company" means IDS Life Insurance Company, IDS Life Insurance Company of New York, the American Express Company, American Express Financial Corporation, American Express Financial Advisors, American Express Service Corporation, American Express Trust Company, American Centurion Life Assurance Company, American Enterprise Life Insurance Company and American Partners Life Insurance Company, collectively.

[*26]

14. **Permanent Injunction.** All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct (as that term is defined in the Settlement Agreement) as to that Policy or Annuity, and (ii) organizing or soliciting the participation of any Class Members in a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit or other proceeding based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct as to that Policy or Annuity. This Court finds [*27] that issuance of this permanent injunction is necessary and appropriate in aid of this Court's jurisdiction over the Action and to protect and effectuate this Order and Judgment.

15. **Enforcement of Settlement.** Nothing in this Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement; nor shall anything in this Order and Judgment preclude Plaintiffs or Class Members from participating in the Claim Review Process described in the Settlement Agreement if they are entitled to do so under the terms of the Settlement Agreement.

16. **Attorneys' Fees and Expenses.** The Court hereby grants Co-Class Counsels' application for an award of attorneys' fees and reimbursement of their disbursements and expenses for their past and future work on the Actions in the amount of $ 28 million, to be paid by Defendants to Lead Counsel. The $ 28 million consists of approximately $ 27,380,000 in fees and $ 620,000 in reimbursement of expenses. Such fees and expenses are to be paid by Defendants within 10 days after the last date of entry of the Order and Judgment in the Actions, subject to the conditions set forth in the Stipulation of Settlement. Plaintiffs' [*28] counsel shall set aside in a Qualified Settlement Fund ten percent, or $ 2,738,000, of the fee award pending substantial completion of the administration of the Claim Review Process. Plaintiffs' counsel shall advise this Court when payments are made to Class Members in the Claim Review Process, and may draw down this final ten percent (plus any accumulated interest) at that time without further order of this Court. Lead Counsel, in its

sole discretion, shall allocate and distribute this award of attorneys' fees and expenses among counsel for the Class.

17. **No Other Payments.** The preceding paragraph of this Order and Judgment covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Co-Class Counsel or any other counsel representing Plaintiffs or Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to the Actions, the settlement of the Actions, the administration of such settlement, and/or the Released Conduct except to the extent otherwise specified in this Order and Judgment and the Stipulation of Settlement.

18. **Modification of Settlement [*29] Agreement.** The Parties are hereby authorized, without needing further approval from this Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement -- including without limitation, the Post-Settlement Mailing materials and the forms to be used in the Claim Review Process -- as are consistent with this Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement.

19. **Retention of Jurisdiction.** This Court has jurisdiction to enter this Order and Judgment. Without in any way affecting the finality of this Order and Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,

(a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is [*30] not a Class Member, whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);

(b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement, and

(c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

*provided, however*, that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under paragraphs 7 and 18 above.

20. **No Admissions.** This Order and Judgment, and the Settlement Agreement (and any other document referred to here, or any action taken to carry out this Order and Judgment) shall not be used or construed as an admission or concession by the Defendants of any actual or potential fault, wrongdoing, liability or damages whatsoever, and shall not be used as any [*31] evidence or inference of any fault, wrongdoing, liability or damage against the Defendants. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by Defendants as to any actual or potential fault, wrongdoing, liability or damages and shall not be offered or received in evidence or used for impeachment in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Order and Judgment and the Settlement Agreement; *provided, however*, that this Order and Judgment and the Settlement Agreement may be filed in any action against or by the Defendants or Releases (as defined in the Stipulation of Settlement) to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

21. **Dismissal of Action.** The Action, including all individual [*32] and Class claims resolved in them, are hereby dismissed on the merits and with prejudice against Plaintiffs and all other Class Members, without fees or costs to any party except as otherwise provided in this Order and Judgment.

22. **Bond Requirement.** Any appeal of the orders and judgment of this Court in this action shall be conditioned upon the posting of a bond by the proposed appellant of $ 500,000.

SO ORDERED this 15th day of MAY, 2001. LET THE JUDGMENT BE ENTERED ACCORDINGLY.

The Honorable David S. Doty

United States District Judge

**Exhibit Index for Affidavit of Colin Mueller**

1) **Exhibit 1 – Chandler Order**

2) **Exhibit 2 – Kalac Order**

3) **Exhibit 3 – Covert's Statement of Claim**

4) **Exhibit 6 – Benacquisto Order**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1980(DSD/JMM)

Lesa Benacquisto, Daniel Benacquisto, Richard Thoresen, Elizabeth Thoresen, Arnold Mork, Isabella Mork, Ronald Melchert and Susan Melchert, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**ORDER**

American Express Financial Corporation, American Express Financial Advisors, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company, IDS Life Insurance Company and IDS Life Insurance Company of New York,

Defendants.

This matter is before the court upon the motion of defendant American Express Financial Advisors ("AEFA") "to enforce class action settlement as to claims of Gene and Willowdean Chandler before the NASD." For the reasons that follow, defendant's motion is granted.

lost over $400,000 as a result of inappropriate investments recommended by the Grinkmeyers and provided by AEFA. (Id. ¶¶ 4-6.)

When AEFA's counsel learned of the Chandlers' NASD claim, he informed counsel for the Chandlers that they were members of the Benacquisto class, they had not opted out of the settlement, they had received general relief in the settlement and they had relinquished any further claims relating to the variable annuity products. (Id. Ex. D.) In response, the Chandlers amended their NASD claim. (Id. Ex. E.) In their amended filing, the Chandlers acknowledge receipt of notice of the Benacquisto class action and their right to opt out of the proposed settlement. (Id. ¶ 1.) However, they allege that Chip Grinkmeyer instructed them to disregard the notice because it did not apply to their investments. (Id. ¶ 2.) They argue that Chip Grinkmeyer's advice relative to the settlement and opt out notice constituted fraud and breach of fiduciary duty and that they should be allowed to pursue their claims against AEFA and the Grinkmeyers notwithstanding the class settlement. (Id. ¶¶ 3-5.) AEFA and the Grinkmeyers now move that the court bar the Chandlers' arbitration of any claims relating to annuities covered by the Benacquisto class settlement.

**DISCUSSION**

In its final order, the court permanently enjoined class members who did not opt out of the settlement from bringing any

subsequent action based on the policies and annuities that were the subject of the litigation. (Order of May 15, 2001 ¶ 14.) The court also expressly retained jurisdiction over "all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and [the] Order and Judgment." (Id. ¶ 19.) The court specifically reserved jurisdiction to determine whether subsequent claims were barred by the order. (Id. ¶ 19(a).) The court possesses the authority to issue injunctions to enforce its final orders. Thompson v. Edward D. Jones & Co., 992 F.2d 187, 189 (8th Cir. 1993).

AEFA and the Grinkmeyers argue that some or all of the Chandlers' NASD claims seek to arbitrate matters covered by the Benacquisto settlement. They point specifically to the reference to accounts 93103417099, 93005201012 and 93100800441 in the NASD claim, all of which were included in the Benacquisto settlement. Despite their failure to opt out of the settlement, the Chandlers contend that they should be permitted to proceed with their NASD claims for two reasons. (Pls.' Mem. Opp'n Mot. to Enforce Settlement at 2.) First, they argue that Chip Grinkmeyer defrauded them of their right to opt out of the settlement by telling them that "(1) the settlement applied only to insurance products; (2) the settlement terms did not apply to the Chandlers' investments; (3) the case had already been settled; and (4) [they] 'should throw the document in the can.'" (Id. at 2.) For that

reason, the Chandlers argue that their unsuitable investment claim should be allowed to go forward. Second, they assert that their claims of fraud, negligence, breach of fiduciary duty, unauthorized practice of law and negligent supervision should be allowed because they were not specifically addressed in the Benacquisto settlement.

AEFA and the Grinkmeyers respond that the Chandlers' first argument fails because any reliance on Chip Grinkmeyer's statements was unreasonable as a matter of law. The court agrees for the following reasons. First, Chip Grinkmeyer is not a lawyer. "When perplexed by terms in a legal document, a prudent investor does not ring up another layman. He calls a lawyer." VMS Ltd. P'ship Sec. Litig., 26 F.3d 50, 52 (7th Cir. 1994). Second, the notice of proposed settlement included the following information:

> **PART N: HOW TO GET ADDITIONAL INFORMATION**
>
> A toll-free number has been established, and trained personnel who are employed by the independent, Court-approved Administrator are available answer any questions you might have about the proposed settlement. If you have any questions after reading this Notice, or if you need a large-print version of the Class Notice Package, please call **1-800-433-5314.** If you use a TDD/TTY terminal for the hearing impaired, please call 1-800-657-8808.

(Vaccaro Aff. Ex. F at 20.) Rather than calling "trained personnel who are employed by the independent, Court-approved Administrator," the Chandlers sought advice from a broker.

Moreover, when Chip Grinkmeyer's response to their inquiries directly contradicted the plain language of the proposed settlement

notice, the Chandlers neither pursued the matter with their own attorney, nor followed up by calling the toll-free information number. According to the Chandlers, Grinkmeyer told them that the settlement applied only to insurance products. (Vaccaro Aff. Ex. E. at 1.) However, the notice of proposed settlement expressly states that it relates to "certain life insurance policies <u>and deferred annuity contracts</u>." (<u>Id.</u> Ex. F at 1, emphasis added.) They further allege that Grinkmeyer told them the settlement did not apply to their investments. (<u>Id.</u> Ex. E at 1.) Yet the notice repeatedly and consistently refers to "you" and "your" rights, policies and annuities, and states that records indicate that "you ... have or had an ownership interest" in a life insurance policy or annuity that is subject to the lawsuit. (<u>Id.</u> Ex. F.) The Chandlers also claim that Grinkmeyer told them "the case had already been settled." (<u>Id.</u> Ex. E at 1.) However, the notice is captioned "Notice of Class Action, Proposed Settlement and Fairness Hearing," repeatedly referred to the settlement as "proposed," and plainly indicated that final court approval was pending. (<u>Id.</u> Ex. F at 1, 8 & 15.)

Although the issue of reasonableness is at times a question of fact for the jury, reliance is unreasonable as a matter of law when oral statements are directly contradicted by a written expression of the agreement. <u>See</u> <u>Clements Auto Co. v. Service Bureau Corp.</u>, 444 F.2d 169, 179 (8th Cir. 1971); <u>General Corp. V. General Motors</u>

Corp., 184 F. Supp. 231, 238-39 (D. Minn. 1960). That is the case here. Because reliance on Chip Grinkmeyer's statements about the proposed settlement was unreasonable, the allegation of fraud does not provide a basis to release the Chandlers from the settlement.

In their second argument, the Chandlers urge that Chip Grinkmeyer's misrepresentations about the notice of proposed class settlement entitle them to relief apart from their inappropriate investment claim. That argument also fails for several reasons. First, while the Chandlers' brief to this court alleges fraud, negligence, breach of fiduciary duty, unauthorized practice of law and negligent supervision, all based on Chip Grinkmeyer's statements about the settlement, their claim to the NASD continues to allege inappropriate funding of their individual retirement accounts. (Pls.' Mem. Opp'n Mot. Enforce Settlement at 3-5; Vaccaro Aff. Ex. C. ¶ 4.) Second, even if the arbitration was limited to Grinkmeyer's statements about the proposed settlement, the action would necessarily regress to the inappropriate funding claim. That is so because the only damage the Chandlers assert is loss of the opportunity to opt out of the class and pursue their claims individually. In either case, the result would be to negate the settlement and allow the Chandlers to proceed on claims for which they have been provided a remedy and which were expressly released in the settlement. Finally, the court notes that

> 'where there is a realistic identity of issues between the settled class action and the

> subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members, the situation is analogous to the barring of such claims that could have been asserted in the class action. Under such circumstances, the paramount policy of encouraging settlements takes precedence.'

Thompson, 992 F.2d at 191 (quoting TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 461 (2d Cir. 1982)). In light of that preference, carefully crafted, comprehensive class settlements should rarely be undone.

**CONCLUSION**

For the reasons stated herein, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to enforce class action settlement as to claims of Gene and Willowdean Chandler before the NASD [Docket No. 109] is granted.

2. In accordance with the court's final order and permanent injunction dated May 15, 2001, the Chandlers are permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding based on or relating to the claims and causes of action, or the facts and circumstances relating thereto in Benacquisto et al. v. American Express Financial Corp. et al., Civil No. 00-1980(DSD/JMM) and case no. 96-018477 and any life insurance policy

or variable annuity products covered therein, including but not limited to account nos. 93103417099, 93005201012 and 93100800441.

Dated: April 26, 2004

s/David S. Doty
David S. Doty, Judge
United States District Court