IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs,<br><br>vs.<br><br>**AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,**<br><br>Defendants. | Civil No. 00-1980 DSD/JMM<br><br>RESPONSE TO MOTION TO ENFORCE CLASS ACTION SETTLEMENT AS TO CLAIMS OF TRUDY A. KALAC AND RICHARD M. KALAC BEFORE THE NASD<br><br>(ORAL ARGUMENT REQUESTED) |

Trudy A. Kalac and Richard M. Kalac respond to American Express Financial Advisors, Inc.'s ("AEFA") Motion to Enforce Class Action Settlement ("Motion") as follows:

## I. INTRODUCTION

Trudy A. Kalac and Richard M. Kalac (collectively, the "Kalacs") assert claims against AEFA and Mr. Greg Hogue with the National Association of Securities Dealers, Inc., Arbitration No. 04-03420. The NASD Panel has already ordered that the Kalacs may not recover on claims barred by this court's Final Order and Judgment Approving Class Action Settlement and Dismissing Complaint, dated May 15, 2001 ("Final Order"). However, the Final Order explicitly reserves a class member's right to "assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period …." (Final Order, § 13A(3)). The Kalacs conceded to the NASD Panel, and to counsel for AEFA, that they may not recover on claims involving the securities covered by the Final Order ("IDS Securities") to the extent those claims are dependent on facts and circumstances that occurred on or before February 29, 2000, i.e., the last day of the Class Period. The only claims the Kalacs are pursuing the in NASD arbitration, involving IDS Securities, are based on events that occurred in March of 2000 and later. The Final Order expressly allows such claims to proceed. Accordingly, this Court should deny AEFA's Motion.

## II. FACTS

The Kalacs filed their Statement of Claim against AEFA and Greg Hogue ("Hogue") in May , 2004. (Affidavit of B. Scott Whipple ("Whipple Aff."), ¶ 2). Mr. Hogue was a registered representative employed by AEFA. Id. The Kalacs' Statement of Claim asserts that they are entitled to recover losses from AEFA and Mr. Hogue as a result of unsuitable recommendations, breach of fiduciary duty, negligence, negligent

misrepresentations, violations of Oregon securities laws, and AEFA's breach of its duty to supervise Mr. Hogue. Id. AEFA submitted a Uniform Submission Agreement dated July 27, 2004 to the NASD agreeing to arbitrate the Kalacs' claims. See Whipple Aff., Exhibit 1.

AEFA's counsel subsequently filed a Motion to Enforce Class Action Settlement with this Court dated December 15, 2004 ("December Motion").[1] (Whipple Aff., ¶ 3). After leading the NASD Panel and counsel for the Kalacs to believe that AEFA would abide by the Panel's ruling on whether a portion of the claims were precluded by the Final Order, counsel for AEFA obtained an order from this Court pursuant to the December Motion, on January 19, 2004 ("January Order"), without giving notice to the Kalacs' counsel of the hearing date set on the matter. Id.

Counsel for the Kalacs did not learn of this Court's January Order until April 3, 2005, during an initial review of a Motion to Dismiss submitted in the NASD arbitration by AEFA, which included the January Order as an attachment. (Whipple Aff., ¶ 4). Counsel for AEFA participated in a January 26, 2005 hearing with the NASD and did not mention entry of the January Order. Id. In February of 2005, counsel for AEFA also requested rescheduling of an NASD hearing set to consider the issues surrounding the Final Order without mentioning entry of the January Order. Id.

In spite of the lack of disclosure by counsel for AEFA about the proceedings before this Court, the Kalacs conceded to the Panel and AEFA that they would not pursue

[1] Despite a certificate of service certifying that counsel for AEFA caused the December Motion to be mailed to the Kalacs' counsel on December 15, 2004, it was sent by two-day delivery to arrive at the office of the Kalacs' counsel on December 27, 2004.

claims in connection with IDS Securities covered by the Final Order to the extent those claims depend on facts or circumstances that occurred on or before February 29, 2000. (Whipple Aff., ¶ 5). As explained to the Panel, the Kalacs' claims regarding their investments in the IDS Securities arose due to the recommendations by Mr. Hogue to hold those securities in March of 2000 and beyond. Id. In fact, nearly of all of the allegations in the Kalacs' Statement of Claim cited by AEFA and IDS relate to events in March 2000 and beyond. The NASD accepted this concession and issued its own order barring the Kalacs from recovering damages for claims dependent on facts and circumstances that occurred during the Class Period. Id. A copy of the NASD order barring claims based on facts and circumstances arising during the Class Period is attached to the Affidavit of B. Scott Whipple as Exhibit 2.

## III. ARGUMENT

As a preliminary matter, the Kalacs specially appear herein and concede that this Court has personal jurisdiction as to the Kalacs to the extent that this Court may interpret the scope of its Final Order approving the class action settlement in the above captioned case. However, the Kalacs do not waive the argument that this Court does not have personal jurisdiction to the extent that their remaining NASD claims involving the IDS Securities arose in Oregon and occurred after the end of the Class Period.

### 1. The Kalacs and the Panel Properly Deferred to the Court and the Class Action Settlement.

AEFA incorrectly argues that the Panel has ignored the Final Order and January Order issued by this Court by allowing the Kalacs to pursue claims in connection with the

IDS Securities, which arose after the Class Period. The polar opposite is true.

The Panel ordered that the Kalacs may not pursue claims barred by this Court's Final Order. See Exhibit 2. The law allows a release to bar future claims for conduct that occurred in the past that are based on the same factual predicate as those claims in the action resulting in the release. Varcallo v. Mass Mut. Life Ins. Co., 226 F.R.D. 207, 244 (D.N.J. 2005). Releases incorporated into an order approving a class action settlement bar only litigation based on the released claims. Tropp v. Western-Southern Life Ins. Co., 381 F.3d 591, 596 (7th Cir. 2004). Where the terms of the release are clear and explicit, the court must enforce the release as written. Id. The "Release and Waiver" approved by this Court's Final order is clear. (Final Order, §13A). AEFA's argument ignores the following clear language of the Final Order: "Nothing in this Release shall be deemed to alter . . . (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur *for the first time* after the last day of the Class Period." Id. (emphasis added). AEFA seems to argue that the "Release and Waiver" approved by the Final Order precludes any claims from ever going forward again in connection with the IDS Securities that were the subject of the lawsuit in Benacquisto v. AEFA, et al. No such language is included in the "Release and Waiver."

2. AEFA Submitted to the Panel's Jurisdiction.

AEFA's Motion also fails to inform the Court that AEFA submitted a Uniform Submission Agreement agreeing that the claims set forth in the Kalacs' Statement of Claim are subject to the NASD arbitration. The Uniform Submission Agreement is attached to the Affidavit of B. Scott Whipple as Exhibit 1. In the Uniform Submission

Agreement, AEFA agreed to "submit(s) the present matter in controversy, as set forth in the attached statement of claims, answers, cross claims, and all related counterclaims and/or third-party claims which may be asserted to arbitration …." AEFA submitted the Uniform Submission Agreement to NASD on July 27, 2004. AEFA did not seek to enforce the "Release and Waiver" approved by the Final Order in this Court until December 15, 2004. The Kalacs' Statement of Claim clearly identified the securities that AEFA claims are covered by the "Release and Wavier." Rather than seeking to enforce the "Release and Waiver" before this Court when AEFA was served with the Kalacs' Statement of Claim in May, 2004, AEFA chose to submit the issue to the NASD by filing its Uniform Submission Agreement.

3. The Panel and Kalacs Recognize the Court's Jurisdiction to Interpret the Scope of the Claims Barred by the Final Order.

Both the Panel and the Kalacs have recognized this Court's jurisdiction to interpret the scope of the claims barred by the Final Order. The Panel's order barring the Kalacs from pursuing claims based on facts or circumstances within the Class Period recognizes this Court's jurisdiction over the matter and defers accordingly. There are no claims before the Panel that may result in damages being awarded to the Kalacs that are barred by the Final Order.

AEFA misstates the Kalacs' allegations against AEFA and Mr. Hogue. The Kalacs allege that they met with AEFA's financial planner, Greg Hogue, in March of 2000, after the end of the Class Period, and informed Mr. Hogue that their investment objectives had changed due to Mr. Kalac's retirement. The Kalacs claim losses

stemming from the post-class period recommendations of Mr. Hogue that they hold their investments in the IDS Securities. Thus, the Kalacs have alleged claims and losses based on facts occurring after the last day of the Class Period. The Kalacs' allegations are not like the hypotheticals that AEFA cites in its memorandum. The Kalacs are not proceeding with claims based upon facts and circumstances occurring during the class period and seeking damages occurring after the class period. Rather, the Kalacs concede, and the Panel's order confirms, that the Kalacs may not recover damages for the recommendation of the initial purchase of the IDS Securities or recommendations made during the Class Period in connection with the IDS Securities. With regard to the IDS Securities, the Kalacs claims are limited to damages resulting from acts and circumstances occurring after the end of the Class Period.

4. The Panel's Ruling Does Not Undermine the Class Action Settlement.

AEFA's argument that it should not have to re-litigate claims already litigated as part of the *Benacquisto* class action rings hollow. AEFA has not previously litigated claims relating to Mr. Hogue's advice to the Kalacs in March 2000 to continue with an aggressive investment strategy, even though the Kalacs suggested a conservative approach and asked Mr. Hogue to "lock in" their gains to ensure that their retirement nest egg was safe. Similarly, AEFA has never litigated whether it was negligent in its supervision of Mr. Hogue, a financial advisor that had so many issues that AEFA considered taking all of his clients from him. The Kalacs concede, and the Panel has ordered, that claims pertaining to the class action settlement are barred. However, the Kalacs' claims, which independently arise from facts or circumstances occurring after the

end of the class period, were not previously litigated and are allowed to proceed by the terms of the Final Order.

5. <u>The Kalacs' Claim for Negligent Supervision is Not Subject to the Final Order</u>.

The Kalacs' have conceded and the Panel has Ordered, that the Kalacs may not recover any damages relating to the IDS securities based on claims arising from facts and circumstances occurring during the Class Period. However, the Kalacs' claims for Negligent Supervision are not part of the definition of "Released Conduct" in the Final Order. Mr. Hogue's many compliance violations (which are detailed in the Kalacs' Memorandum attached as an exhibit to AEFA's Motion) have not been previously litigated. "Released Conduct" is defined as "any and all direct or indirect acts, representation, omission, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or limitation, acts, representations, omissions, suggestions or communications in connection with …." Nothing in the definition of "Released Conduct" prohibits the Kalacs from pursuing their Negligent Supervision claim, though they do not intend to do so for losses relating to the IDS Securities that occurred on or before February 29, 2000.

6. <u>The Class Period is the Critical Date</u>.

Finally, AEFA ignores the plain language of the "Release and Waiver", approved by this Court, regarding the significance of the term "Final Settlement Date". The "Release and Waiver uses the term "Final Settlement Date" to define when the release

becomes effective. The "Final Settlement Date" has nothing to do with defining a temporal limitation on when the released conduct took place. Section 13 of the Final Order defines the temporal limitations explicitly by allowing post class action claims based on "acts, facts or circumstances that occur for the first time after the last day of the Class Period …." The fact that the Kalacs stated claims based on Mr. Hogue's unsuitable recommendations to hold the IDS Securities in March of 2000 and beyond, clearly establishes that the Kalacs may recover damages for these recommendations because the recommendations were given after the last day of the Class Period.

## IV. CONCLUSION

The NASD Panel issued an order that respects this Court's Final Order. The Kalacs may only recover damages from AEFA and Mr. Hogue based on acts, facts or circumstances that occurred for the first time after the end of the Class Period. AEFA's Motion serves no purpose other than to increase the cost of litigation to the Kalacs. This Court should deny AEFA's Motion.

Oral argument is hereby requested.

Dated this 18th day of May, 2005.

Respectfully submitted,

ZIMMERMAN REED, P.L.L.P.

By: s/ David M. Cialkowski
David Cialkowski, MN #0306526
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
(612) 341-0400

B. Scott Whipple
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 S. W. Fifth Avenue, Suite 1600
Portland, OR 97204
(503) 222-9981

Attorneys for Trudy A. Kalac and Richard M. Kalac

## CERTIFICATE OF COMPLIANCE

Pursuant to LR7.1(c), the foregoing memorandum contains 2,334 words in 13 point font, including headings, footnotes, and quotations, and was prepared using Microsoft Word 2003.

s/David M. Cialkowski