**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESON, ARNOLD MORK, ISABELLA MORK, RONDALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated.

Plaintiffs,

v.

**Civil No. 00-1980(DSD/JMM)**

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**REPLY TO RESPONSE TO MOTION TO ENFORCE CLASS ACTION SETTLEMENT AS TO CLAIMS OF RICHARD M. KALAC AND TRUDY A. KALAC BEFORE THE NASD**

## I. Introduction and Summary of Argument

This is the reply brief of IDS Life Insurance Company[1] and American Express Financial Advisors, Inc. (hereinafter collectively "AEFA") in support of their motion to enforce this Court's Orders of May 21, 2001 and January 19, 2005. This Court's January 19, 2005 Order states, in relevant part, that;

[1] IDS Life and AEFA were defendants in Benacquisto. The products at issue are IDS Life products. Although IDS Life is not a party to the NASD arbitration at issue, it is, as a practical matter, impacted by the NASD Panel's Order with respect to the five IDS Life insurance policies and annuities at issue herein.

> **In accordance with the court's final order and permanent injunction dated May 15, 2001, the Kalacs are permanently barred and enjoined from...prosecuting, maintaining,...participating in, or receiving any benefits from, any...arbitration ...based on or relating to ...** ***life insurance policy or variable annuity ... account nos. 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004.***

Exhibit 1.

The Kalacs did not comply with this Court's Order and instead sought relief from the NASD arbitration panel, despite the NASD's own Rule of Arbitration Procedure 10301(d)(2), which states that

> **any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration if the claim is encompassed by a putative or certified class action filed in federal or state court...(unless) claimant demonstrates that it ...has complied with any conditions for withdrawing from the class prescribed by the court....Either party may elect instead(of submitting the issue to the NASD Panel) to petition the court with jurisdiction over the putative or certified class action to resolve such disputes(emphasis added)**

NASD Code of Arbitration Procedure Rule 10301(d)(2), available on line at www.nasdadr.com.

Instead of complying with the Court's Order and Injunction, the Kalacs' counsel proceeded with his strategy (see discussion infra) of requesting that the NASD Panel decide the issue. Before the NASD Panel, claimants' counsel argued as follows:

> **The Class Action settlement does not impact the Kalacs' claims**.... The class action lawsuit settled by AEFA was based on fees it charged in connection with sales and management of IDS variable life insurance and variable annuity products. By not opting out of the class action settlement, the Kalacs received a mere three years of accidental death benefit coverage in exchange for their forbearance in bringing suit in connection with AEFA's fees. At most, the Kalacs were compensated for inappropriate or unlawful fees that AEFA charged on the IDS accounts. **The class action settlement and related release do not bar the Kalacs' claims in connection with account numbers: 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-**

> **004...this panel has *SOLE* (emphasis added) authority, by agreement of the parties, to determine whether the class action settlement applies to the Kalacs' investments in the IDS accounts. (Compare bolded quotes from Kalac brief to the NASD Panel to the language of this Court's Order quoted above.)**
>
> Kalac brief to the NASD arbitration panel, Exhibit 2, pp 9, 10-11, 13, 22.

The panel agreed with the Kalacs, Exhibit 3, paragraph 1, and, accordingly, the Kalacs continue to "prosecute, maintain, participate in, and seek benefits from" an arbitration concerning claims litigated in Benacquisto and specifically concerning IDS Life Insurance policies and annuities numbers: ***90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004.***
– directly contrary to this Court's Orders.

Claimants' arguments that they are somehow exempt from this Court's Orders, or that they are not in violation of this Court's Orders, are plainly without merit. AEFA respectfully requests that the Court re-affirm its January 19, 2005 Order by directing the Kalacs to dismiss their claims in the arbitration concerning or relating to IDS Life insurance policy and annuities numbers: ***90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004.***

AEFA contends that this Court's January 19, 2005 Order is clear and unambiguous. There seems to be nothing hard to understand in an Order from a highly respected Federal Judge to cease and desist from "prosecuting, maintaining,...participating in, or receiving any benefits from, any...arbitration ...based on or relating to ... life insurance

policy or variable annuity ... account nos. 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004."

This Court's Oder of January 19, 2005, was not appealed and it now the law of the Case and must be complied with as written. The Kalacs had the opportunity to argue for a different ruling, prior to the time the court issued its January 19, 2005 Order, but they made a ***strategic litigation choice*** to seek relief from the Panel ***instead***, because they thought the arbitration forum would be a more favorable forum for them than this Court. See exhibits discussed, infra.

Perhaps claimants' counsel believes we Minnesotans are a bunch of hicks, but we recognize forum shopping when we see it. As the Court can see from the Kalacs' brief to the Panel, Exhibit 2, and selected sections from that brief cited above and below, the Kalacs' counsel appealed to the purported "equity" of the Panel, but if NASD Panels are allowed to substitute their notions of equity in defiance of this Court's Rulings as a matter of law and equity, then the whole structure of class action law and federal court authority would be undone. Claimants in this case and others like it raise interesting questions about class action statutes and whether they are appropriate or not, but those are issues for the legislature to decide. This Court has properly applied the law, is well versed in the facts of the class action lawsuits, and should not allow its carefully crafted rulings to be undone through crafty albeit dishonest lawyering from claimants' counsel.

The Kalacs' counsel did not assert in timely fashion before this Court any of the arguments they now assert (all of which lack merit anyways), and thus the Kalacs have waived all such arguments. However, in the event the Court does decide to entertain

claimants' untimely arguments, AEFA contends that all of claimants' contentions plainly lack merit, as explained below.

## II. Facts and Argument

### A. The Kalacs have waived all of the arguments they now make to this Court and the Court's January 19, 2005 Order should be enforced as written.

This Court's January 19, 2005 Order does not say, as the Kalacs contended before the NASD Arbitration panel and as the Panel ruled(Exhibit 3, paragraph 1), that claims with respect to these five accounts can proceed so long as the *alleged damages* arguably continued to accrue on the five accounts after February 29, 2000. The Order secured from the NASD Panel by claimants' counsel applies regardless of whether or not theclaims at issue are the precise claims settled in Benacquisto, or whether they arose prior to February 29, 2000, or whether they could have been raised in the Benacquisto class actions and are thus barred by the concept of res judicata. This approach would result in a complete re-writing of this Court's Orders and the parties' settlement in Benacquisto.

Indeed, it would have been impossible for the NASD Panel to understand what claims were actually at issue, or could have been raised, in the Benacquisto class actions, because the Kalacs' counsel grossly mischaracterized the many matters at issue in the Benacquisto class actions. (See, e.g., claimant's brief to the NASD panel, Exhibit 2 p. 10-11, and IDS Life's initial briefs to this Honorable Court.) (The Panel's Order contains no discussion of the concept of res judicata, but then NASD panels sometimes don't apply the law and are not trained judges.) If the Benacquisto settlement and release, and

the Orders of this Court, are interpreted in the fashion which claimant argued for and the Panel accepted, then most of the claims the parties thought they had settled in Benacquisto may now be re-litigated. Many of those claims directly concerned alleged damages which would accrue after February 29, 2000-for example, the mortality and expenses charges which impacts the performance of the annuities, and the alleged unnecessary charges within so-called "qualified annuities;" issues the Kalacs' specifically complain of in the NASD arbitration proceeding. (See their Statement of Claim, Exhibit 4 and selections from it in IDS Life's second round of briefing to this Court.) As discussed infra, many types of claims and damages arising after February 29, 20000 are specifically covered by the release in Benacquisto.

Counsel for the Kalacs attempts to mislead the Court into believing that they are not really acting in violation of the Court's Order, even though they are continuing to proceed in the NASD arbitration as if this Court's Orders did not exist. As a practical matter, the Panel's Order reflects one way of nullifying this Court's rulings because the main categories of damages c laimants seek in the arbitration allegedly a rose when the stock market crash occurred after February 29, 2000-while the Benacquisto class actions were pending and long before the cases were settled. (The Kalacs' claims extend beyond merely market crash losses; however, because the calculation of profits and losses necessarily takes into account the fees and expenses on the products. The panel's ruling also allows damage claims based on the sale of products and investment selections prior to February, 29, 2000. This date is not the magical date claimants' counsel contended it

was to the panel, but even if it was, the Panel's ruling still allows claims to proceed which arose prior to this date anyways.)

Most of the contentions claimants' counsel makes to this court are the direct opposite of what he has contended, in writing, before the NASD arbitration panel. One example is cited above, and here is another one of many which could be cited. In their brief to the NASD Arbitration Panel, the Kalacs' counsel specifically contended that the "**Evidence of Conduct Arguably Covered By the Class Action Settlement is Relevant and Admissible.... (t)he Class Action settlement does not impact the Kalacs claims....**" Kalac brief, Exhibit 2 at pages 12 and 22.(Note that this Court's May 21, 2001 Final Judgment prohibits introduction of such evidence in future actions.) There can be no mistake about what the Kalacs are doing here, despite the clever but disingenuous arguments of their counsel to this Court – they are proceeding in the Arbitration in direct violation of this Court's Orders.

The Court's original Order of January 19, 2005 deals with the issue at hand in precisely the correct manner-the claims the Kalacs have set forth in their NASD arbitration Statement of Claim regarding or relating to account nos. 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004 (a copy of Claimants' NASD Arbitration Statement of Claim is attached hereto as Exhibit 4 for easy reference) may not proceed in the arbitration- period. If the Kalacs do proceed in the NASD arbitration as to the products covered by the class action settlement, the same claims which were or could have been litigated in the Benacquisto class actions, or could

have been litigated as an opt-out claim if the Kalacs had so elected, will be litigated again, outside of the carefully managed opt-out process and, as a practical matter, there will be only minimal if any means for policing whether this Court's Orders have been complied with. The only practical bar which can be applied is the one the Court applied. IDS Life believes the language of the Court's Orders does not reflect a mistake. Contrary to the Kalacs' counsel's arguments to the NASD Panel, the class action settlement was carefully crafted, and the release was written in broad terms precisely to prevent subsequent actions like this from being filed, unless a party choose to opt out (and the Kalacs didn't).

The settlement of the Benacquisto class actions covered broad categories of claims, and the concept of res judicata further bars claims that could have been litigated in the class actions. (and, in fact, even beyond that, extending to other actions which could have been brought by the Final Settlement Date, as specified in this Court's May 21, 2001 Final Judgment.) The Kalacs could have opted out; plainly they received clear and valid legal notice from this Court of their right to do so. They did not avail themselves of this right. They also could have elected claims review, but did not do so. They have not been denied a forum for their claims as the Kalacs' counsel has argued before the NASD arbitration Panel-instead, they just needed to pursue any claims they had or thought they might have in a timely fashion and in accordance with this Court's notices and Orders. Claimants' counsel argued to the NASD panel that the Kalacs did not get fair notice, and created an impression that equity required that they be exempted from the Orders of this Court. The true fact is that the Kalacs were accorded full and fair due process of law.

Counsel for movants IDS Life and AEFA (hereinafter collectively "AEFA") respectfully submit that this Honorable Court will be aided in distinguishing the *arguments* of the Kalacs' counsel from the quite contrary *actual facts* by some explanation of the proceedings here, with quotations from and cites to Exhibits-most of them letters and briefs (admissions) of the Kalacs and their counsel. Calling all of such misrepresentations to the Court would create a brief in excess of the allowable word limit, but the few selected examples set forth below (and above) should give the Court a good idea that claimants' counsel is not being straight with the Court.

As initial background, Exhibit 5 is a certificate of service showing that, on the date the motion papers at issue in the first motion were electronically filed with this Court (December 15, 2004), these same papers were served on the NASD and on Mr. Whipple as counsel for claimants. (Mr. Whipple contended later that actual delivery to him was a few days later -this was admittedly the busy holiday mailing season- but, in any event, he clearly got the papers with plenty of time to respond-indeed, movants' counsel agreed to give him an extension if he needed it.) The Court's law clerks also appear to have plainly and fully complied with all applicable class action case rules by serving the papers electronically on all of the various counsels for the plaintiff class, which class included the Kalacs.

The next three exhibits, 6, 7 and 8, show that claimants' counsel has falsely contended to the Court(and to the arbitration panel) that he was not given sufficient time to file a

response in court, and thus that this Court's rulings should be ignored-the actual fact is that claimants' counsel simply *elected* to not file a response in Court, and made a strategic choice instead to argue his position as to the impact of the Benacquisto settlement and Court Orders before the NASD arbitration panel instead of before this Court because he thought the NASD panel would provide a more favorable forum for his clients' position. (See Exhibits 5-9 and discussion infra.)

Exhibit 6, for example, is a December 28, 2004 letter from the NASD to counsel in the NASD arbitration case, and to the Chair of the Arbitration Panel, advising that a response to AEFA's motion was due by January 7, 2005. Exhibit 7 is a December 29, 2004 letter from claimants' counsel requesting an extension of time to respond to AEFA's motion (both letters thus showing that claimants' counsel had received a copy of AEFA's motion papers with plenty of time to respond , that he was well aware that a motion was pending and that there was a need to respond in a timely fashion).

Exhibit 8 is a January 14, 2004 (sic) (apparently 2005 was intended) letter from the Kalacs' counsel to the NASD administrative staff stating that , "As you know from previous correspondence, it is Claimants' position that Respondents waived the right to seek relief in U.S. District Court when they submitted their Uniform Submission Agreement to NASD Dispute Resolution...During our January 10 discovery conference with the chair of the arbitration panel, Mr. Stan Kaputska, the parties addressed the motion. Mr. Kaputska said he would discuss the Motion with the other members of the Panel and provide the parties with an advisory opinion on how the parties would like to

proceed with regard to Respondents' Motion (before this Court). Therefore, unless otherwise directed, **Claimants do not intend to submit a response to the Motion** until after we have received further guidance from the arbitration panel." (emphasis added)

As the Court can see from Exhibit 2, Claimants' counsel argued in his brief to the NASD Panel that he was prevented from filing a response to IDS Life's motion to this Court and that the Panel should therefore ignore the Court's Order. See Exhibit 5, pp.13-17. This is plainly not the case-he made a *choice* to not file a response in Court.

These documents provide merely a sampling of the same arguments which claimants' counsel orally presented to the NASD arbitration panel, albeit in much more detail. Plainly claimants' counsel was well aware of the Federal Court proceedings, he had received all of AEFA's motion papers, and he simply ***elected to not file a response.*** Instead, he has squarely based his position on a contention that the NASD Panel, not this Court, should decide the issue of whether this Court's Orders bar the Kalacs from proceeding in the arbitration with claims regarding products covered by the Benacquisto settlement. Accordingly, by electing to not file a timely response to the motions of AEFA and IDS Life, claimants have *waived* all of the arguments they now assert before this Court.

This Court's January 19, 2005 Order was a final Order and Injunction, it wasn't appealed, and it should be enforced as written-not with various limitations such as that it doesn't apply if claimant alleges that their damages continued to accrue after February 19, 2000.

Instead, the Court's Order and Injunction simply says that the Kalacs must dismiss their claims in the NASD arbitration concerning or relating to the five products covered by this Court's May 21, 2001 Order and Final Judgment. IDS life cannot see how this Order is unclear in any respect.

Having made a strategic choice to seek relief from this Court's Orders before the NASD arbitration panel, rather than from this Court, claimants' counsel now falsely contends that he admitted to the NASD all along that the scope of this Court's May 21, 2001 and January 19, 2005 Orders was an issue for this Court to decide. Actually, he argued the exact opposite, and now apparently hopes the Court won't notice this so he can proceed to arbitration with respect to the five life insurance policies and annuities covered by this Court's Orders. Exhibit 9, for example, is a January 6, 2005 letter from claimants' counsel to the NASD in which he contends that the NASD arbitration panel, and not this Court, has the jurisdiction to determine what claims could proceed in the arbitration, regardless of this Court's Orders. Specifically, the Kalacs' counsel argued that "Claimants disagree with respondents' assertion that they may pursue relief in the U.S. District Court for the District of Minnesota. Respondents waived the right to seek relief in the United States District Court when they submitted their Uniform Submission agreement ..."[2] Indeed, in claimants' "Memorandum In Opposition to Respondents'

[2] NASD Code of Arbitration Procedure 10301(d)(2) actually provides directly the opposite of what claimant contends is the rule. This Rule states that "Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court...(unless)...claimant demonstrates that it has...complied with any conditions for withdrawing from the class prescribed by the court." Rule 10301(d)(2) continues on to state that "**Either**

Motion to Dismiss," Exhibit 2, the Kalacs' counsel at page 13 argues that "This panel has **SOLE** (emphasis added) authority , by agreement of the parties, to determine whether the class action settlement applies to the Kalacs' investments in the IDS accounts." This argument was again made during oral arguments, albeit in much more detail. Indee, even after filing his brief with this Court, the Kalacs' counsel has recently informed the NASD in writing that "Respondents, apparently unsatisfied with the (Panel's) Ruling, have now turned to the Court to achieve their desired ruling, while ignoring the Uniform Submission Agreement they filed with the NASD agreeing to the panel's authority to decide such issues." Exhibit 10. (AEFA did not so agree, and this Court had already rules on the issue months before the Panel issued a contrary ruling.) Plainly, claimants' counsel is not being candid with this Court in his contention in his brief to this Court that "both the panel and the Kalacs' counsel have recognized this Court's jurisdiction to interpret the scope of the Claims barred by the Final Order…"

In his January 6 letter to the NASD, Exhibit 9, claimants' counsel also reveals a more truthful version of events. The letter states that "Claimants would like to discuss (with the Panel) respondents' efforts to seek relief in the U.S. District Court for the District of Minnesota during the hearing scheduled for January 10, 2005(a discovery conference by

---

**party may elect instead (of arguing such issues before the NASD Panel) to petition the court with jurisdiction over the putative or certified class action to resolve such disputes."(emphasis added.** NASD Code Of Arbitration Procedure 10301(d)(2), available at www.nasdadr.com

Rule 10301(d)(2) makes clear that such issues will be dealt with long after a party signs a "uniform Submission Agreement." These agreements, which NASD member firms must sign in every NASD arbitration case, simply state that every NASD member(such as AEFA) must abide by the Association's Rules, one of which is Rule 10301(d)(2) of the NASD Code of Arbitration Procedure.

original intent.) Counsel for AEFA contends that claimants' counsel has used AEFA's efforts to enforce the Benacquisto settlement as a method of incensing the Panel against AEFA-indeed, claimants' counsel has asked the NASD to submit all of AEFA's briefs to the Panel for review-the only purpose of which seems to be to prejudice AEFA's defense against claims which it believes lack merit.

In short, the Kalacs' counsel's letters and briefs to the NASD panel make clear that he **elected** not to submit a response to IDS Life's/AEFA's motion to this Court because he decided that the Arbitration Panel, and not this Court, was empowered to, and should, decide the issue of whether portions or all of the NASD arbitration claims were barred by this Court's Final Order and Judgment in Benacquisto. He continued to argue this position to the panel, and the Panel accepted his position. He now seeks to have this Court change its January 19, 2005 ruling through what amounts to a "back-door" appeal, and to have the Court modify its Order to match the NASD panel's decision. However, the Kalacs did not appeal this Court's January 19, 2005 Order and the Court's ruling should now be considered the law of the case.

Now that the Court has issued a ruling on the issue, a ruling the Kalacs' counsel did not appeal, he seeks to argue before this Court that the Order of this Court does not mean what it says on its face, and that the Arbitration Claims should be allowed to proceed. As the Kalacs' counsel argued before the Panel at page 22 of his brief, "The Class Action settlement does not impact the Kalacs' claims," at page 9 that "The Kalacs' claims are not barred by the Class Action Settlement," that "The class action settlement and related

release do not bar the Kalacs' claims in connection with account numbers : 909003948698-004; 909006106934-004; 93002300010-004; 93103019163-004; and 9316300267-004(precisely the accounts which this Court's Order of January 19, 2005 explicitly says are barred from re-litigation in the Arbitration); that "evidence of conduct arguably covered by the Class Action Settlement is Relevant and Admissible;" that "the Class Action Settlement Issues are properly before this Arbitration Panel..",, p. 13, etc. There can be no mistake about it, despite the disingenuous arguments of the Kalacs' counsel to this Court-the Kalacs contend that they are not at all bound by this Court's Orders, that their claims are not impacted by this Court's Orders, and that their Claims should proceed as if this Court's Orders don't exist. Without an Order from this Court enforcing its January 19, 2005 Order, the Kalacs claims with respect to products covered by the Class Action settlement will, as a practical matter, proceed in full. The only difference as to the Court's Orders will be that the NASD Panel has been irritated by the Court's Orders, and the arguments of AEFA in support of the Court's authority and Orders. Settlement of the Class Action will end up being a burden to the settling Defendants, rather than a benefit, in exchange for the millions of dollars IDS Life and AEFA paid to settle the Class Action. As this Court has made clear in previous rulings on similar issues, carefully crafted class action settlements such as the one in Benacquisto should rarely be undone.

**B. There is no merit in any of the Kalacs' claims that their claims in the Arbitration can proceed regarding *account nos. 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004.***

Even if this Court decides to entertain the Kalacs' untimely arguments on the merits, their arguments plainly lack merit. The gist of the Kalacs' arguments seem to be two-fold. First, they argue that the relevant time period for the settlement of claims at issue in the Class Action begins when claimants argue, subjectively, that their *damages arose*, rather than when the *products were purchased.* IDS Life and AEFA contend that the appropriate standard is an objective one of when the covered products were ***purchased***. Creating a subjective standard of when the damages allegedly arose, rather than on when the covered products were purchased, would have the inevitable result that there would never be any clear definition of a plaintiff class or the scope of a settlement. All of the notices issued by this Court and the Class Action administrator are largely based on when the products at issue were purchased (and, of course, on whether they are the products at issue in the case.) Administering a class action involving approximately 2.0 million clients requires some form of identifiable, objective standard. This Court's Order of May 21, 2001 sets forth such a standard, and this Court's January 19, 2005 Order follows this same approach-and with good reason.

Under claimants' theory, few if any of the claims settled in Benacquisto would actually be settled because claimants can simply argue that their damages arose after they purchased the products at issue. For example, at page 7 of the Kalacs' counsel's brief to the NASD Arbitration Panel, he argued that "there is no rationale reason to purchase an annuity in a tax sheltered account like Mr. Kalacs' IRA" and, at page 12, that "Hogue's(The IDS Life agent) placement of the Kalacs in variable life and variable annuities in tax sheltered accounts exemplifies a continuing course of conduct of

recommending unsuitable investments." The heading to this argument section informs the Panel that "Evidence of Conduct Arguably Covered By the Class Action Settlement is Relevant and Admissible." In other words, although this was one of the key claims at issue in and settled by the Benacquisto settlement, although the accounts at issue are specifically covered by the settlement and although the Kalacs did not opt out, they argue that they can obtain damages if those damages continued to accrue after the Class Period ended. (see, Exhibit 3, NASD Panel Order accepting this position advanced by claimants' counsel). However, such alleged future damages were the precise issue in Benacquisto (Mork and Thoreson). Therein, the class argued that the "annuity wrapper" was unnecessary within tax sheltered accounts, and that, over the projected future life of these annuity products, plaintiffs would pay unnecessary fees and charges. Such damages were projected well beyond the class period. The settlement, however, was based on the date when the claimants *purchased* the products, not on when the alleged damages allegedly arose.(And, indeed, see discussion *infra* on how and why many types of future claims and damages are covered by the settlement, long past the end of the class period, or even the Final Settlement Date.)

The Kalacs' briefing to the NASD Panel also makes clear that they intend to cite the class action settlement as evidence of wrongdoing by AEFA (and, apparently, IDS Life, even though it is not a party to the arbitration.) However, this Court's May 21, 2001 Final Judgment states that

> This release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

Claimants' counsel now seems to be arguing to the Court that some type of limitation on the Benacquisto settlement , other than the one he argued for before the NASD Panel, and which the Panel accepted, should be applied. (This seems to be a tacit admission that the standard adopted by the Panel could not possibly be upheld by this Court) .He now argues that "the Kalacs ...may not recover on claims involving the securities covered by the Final Order to the extent those claims are dependant on facts and circumstances that occurred on or before February 29, 2000, i.e., the last day of the class period." The position he argued for in front of the Panel was even more limiting on the Benacquisto settlement, and it was adopted by the Panel. See NASD Panel Ruling , Exhibit 3. This reveals why this Court's approach makes much more sense-claims concerning or relating to products covered by the Class Action Settlement and the Orders of this Court may not proceed in the NASD arbitration-period. This is precisely what this Court's January 19, 2005 Order states and it makes eminent sense. Otherwise, it is impossible to tell what, if any, limiting standard will be applied by the NASD Panel. As a practical matter, once claims regarding the covered products are allowed to be re-litigated, the claims will take on a life of their own and will end up being included in any panel award-if they rule in favor of claimants. (Although AEFA does not believe claimants will recover anything, the issue here is that they cannot of course be certain of any result in litigation-the issue here is whether they should be exposed to jeopardy on the same claims, or claims which could have been raised in Benacquisto, again.) Also, as the Kalacs' counsel has explicitly stated in his briefings to the NASD Panel, he will also attempt to use the class action settlement, and the issues litigated and settled therein, as evidence of wrongdoing

by the settling defendants. Allowing this to happen would discourage the settlement of class action lawsuits, and is specifically contrary to the terms of the Settlement as approved by this Court.

Neither approach advocated by the Kalacs' counsel-whether it is the one the Panel adopted as to when the damages accrued, or the Kalacs' new argument that the only impact of this Court's Orders is that the Panel cannot explicitly order as to any any conduct occurring exclusively prior to February 29, 2000- is consistent with the terms of the Benacquisto settlement and this Court's Orders. How these ambiguous "standards" would be applied is also unclear-the NASD arbitration hearing is but a month away, yet claimants' counsel is now arguing for application different from the one he previously secured from the Panel.

Moreover, neither "standard" makes any sense in the context of the Kalacs' actual claims in the NASD arbitration. One of the foundations for the Kalacs' counsel's arguments before the NASD Panel seemed to be a claim that the Kalacs' claims in the NASD arbitration arose "independently" of anything occurring during the class period and "for the first time" after the class period. It is not clear whether claimants' counsel continues to advocate this approach in front of the Court, but it may nonetheless be worth considering. Claimants' counsel had previously argued to the NASD Panel that the Kalacs' alleged account losses (actually, they lost nothing) within products covered by the class action may be re-litigated on identical claims as at issue in the class action, so long as the losses arose in part after the end of the class period because such claims

allegedly arose "independently" and "for the first time" after the class period ended. IDS Life and AEFA believe that the claims which the Kalacs have set forth in their NASD Statement of Claim(see Exhibit 4) did not arise "independently" of claims which were or could have been raised in Benacquisto and that they did not arise "for the first time" after the class period ended either. The Kalacs' claims explicitly concern products purchased *during* the class period, and investment advice *rendered during the class period.* Shortly thereafter, there was a downturn in the stock market. Their claims in the NASD arbitration concern the "servicing," "administration" and "maintenance" of products purchased during and covered by the class action settlement-all terms which the Benacquisto release and this Court's May 21, 2001 Order describe as examples of future claims covered by the settlement. Also, the performance of the life insurance and annuities was impacted by the fees and costs the Kalacs agreed to pay when they *purchased* the products-claims based on occurrences within the class period.. It seems disingenuous to argue that such claims arose "independently of" the claims which were or could have been argued in the class action case, and difficult to argue that such claims arose "for the first time" after the class period. Perhaps this is why Claimants seem to have abandoned before this Court this central argument claimants fought for before the NASD Arbitration Panel.

At page 6 of the Kalacs' brief to this Court, the Kalacs argue that they had a change in circumstances after the class period because Mr. Kalac retired in 2000. Accordingly, they contend that they can re-assert claims covered by the Benacquisto settlement. Leaving aside the legal inaccuracy of this argument, the argument is contrary to the

allegations the Kalacs have made in their Statement of Claim in the NASD arbitration. (see Exhibit 4) There, they contend that Mrs. Kalac retired in 1995, and that Mr. Kalac was on the verge of retirement then, and that this made certain investments they made in 1995 unsuitable. Then, they say in their NASD Statement of Claim that Mr. Kalac retired in 1998, and rolled over his qualified plan to AEFA, where it was invested in an IDS Life annuity. They contend that the annuity was unsuitable because the money was already tax-qualified(one of the specific issues in Benacquisto) , and that it was further unsuitable because it was a variable annuity (another claim covered by the Benacquisto settlement.) See Kalacs' Statement of Claim pp. 3-4, Exhibit 4. Now, they say that their retirement came after the class period, so that it provides a basis for their argument that only damages which arose during the class period are covered. Factually, the Kalacs' new contention to this Court is directly contrary to their own pleading in the NASD arbitration.

In any event, leaving aside the factual problem with the Kalacs' claims(as one can verify from reading their own Statement of Claim in the arbitration), thir contention also lacks merit as a matter of law and logic. In this Court's Chandler Order, Exhibit 10,for example, the Court referred to similar claims as ones which inherently "relate back" to "inappropriate funding" claims covered by the Benacquisto settlement.

The second key argument which the Kalacs' counsel argued for in front of the panel, albeit in oral arguments, was that the Benacquisto release only extends through the class

period, ending on February 29, 2000. This is the reason why the Panel applied a date of February 29, 2000 in its Order as the limit of the Final Judgment of this Court(Exhibit 3). The Release in Benacquisto provides, however, that the Release extends through the FINAL SETTLEMENT DATE.( which this Court's records show-according to Rust Consulting) was September 24, 2001-the date the appeal period on this Court's May 15, 2001 Order ran.)

> 1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, **as of the Final Settlement Date**, release, acquit and forever discharge the Releasees…
>
> "Claims and Causes of Action" (as used in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), **that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state of local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement**.(emphasis added)

Moreover, the description of the Claims released by the Benacquisto settlement is very broad, and extends to many types of future claims and also to claims which ***could have been raised*** in the Benacquisto class action(which action was not settled until September 2001.) and to other

actions which could have been filed through the Final Settlement Date. In addition the Release provisions cited above, and several other relevant sections of the Final Judgment of this Court, the Settlement contains the following broad description of what is being released by the settlement:

> 2. "Released Conduct" means any and all direct or indirect acts, **representations, omissions, suggestions, or communications that are related to or connected in any way with** the design, development, marketing, sale, **administration, servicing,** underwriting, **or performance** of the Policies or the Annuities, **including without limitation, acts, representations, omissions, suggestions or communications in connection with** (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) **the suitability of any purchases, sales or replacements of any Policy or Annuity;** (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) **the investment choices made with respect to assets held in any Policy or Annuity;** (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) **the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment;** (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) **the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance**

> **of any Policy or Annuity;** (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) **the administration or servicing of any Policy or Annuity after its purchase.**(emphasis added)

Plainly, the Release in Benacquisto covers the precise claims now made by the Kalacs(see their NASD Statement of Claim, Exhibit 4) and covers claims relating to "maintenance" of investments, the "servicing" and "administration" of the policies, the "performance" of the policies, the "investment selections within the policies" and the "servicing " of any policy "***after its purchase.***" The standard as to what is covered by the class action settlement and release turns on the date of purchase of the policies and annuities, and extends into the future regarding the servicing, administration , provision of investment advice and overall maintenance of those policies, not on whether the alleged damages arose after the class period closed, as the Kalacs' counsel argued for and the Panel accepted. (Indeed, even claimants' counsel does not seem to agree with the ruling of the Panel as set forth at Exhibit 3, making it clear that the Panel's ruling must be reversed, irregardless of how the Court decides between the positions of the parties to this motion to enforce this Court's prior Orders.)

Finally ,logic, common sense, and normal , well-accepted standard settlement practices support this Court's original Orders. The normal settlement of a lawsuit includes all claims which arose, or could have been asserted, through **the date the settlement agreement is signed**. Most court actions take years to conclude. Under

the Kalacs' theory, as adopted by the NASD Panel, a settlement would only extend to a time period which would typically be before the action was even filed. Such an approach is contrary to the terms of the Benacquisto settlement, contrary to normal practice, and contrary to logic. In short, the Court got it right the first time and here needs do no more than enforce its prior Orders as they were originally written.

## III. CONCLUSION

For all the reasons cited above, AEFA and IDS Life respectfully request that this Honorable Court Order the Kalacs to comply with this Court's January 19, 2005 Order and its May 21, 2001 Final Judgment by dismissing any and all claims concerning or relating to IDS Life accounts numbers ***90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004.*** AEFA and IDS Life also respectfully request that the Court Order that the Kalacs comply with this Court's May 21, 2001 Order in full, including but not limited to the provision that the Benacquisto class action settlement, and the underlying allegations therein, are

> the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

Finally, AEFA and IDS Life respectfully request an award of their fees and costs incurred in obtaining enforcement of the Orders of this Honorable Court. AEFA and IDS Life have been put to great expense to enforce a binding settlement, and Orders of this Court which seem clear on their face. They

have had to confront disingenuous arguments and misstatements made by counsel for the Kalacs'-all at great expense. There should be some ramification for the Kalacs and their counsel in ignoring Federal Court Orders, and then attempting to mislead the Court to secure an advantage they obtained through forum shopping and sharp practices.

May 24, 2005.

Edgerton, Weaver & Irwin, LLC

**s/Gary Irwin**
**Gary Irwin**
(License #0179991)
5050 Lincoln Drive, Ste. 480
Interlachen Corp. Center
Minneapolis, MN 55436
(952) 345-4444
girwin@neilaw.com

ATTORNEY FOR
AMERICAN EXPRESS
FINANCIAL ADVISORS, INC.,
AND IDS LIFE INSURANCE
COMPANY