NATIONAL ASSOCIATION OF SECURITIES DEALERS REGULATION, INC.
ARBITRATION PANEL

| | |
|---|---|
| In the matter of the Arbitration between<br><br>TRUDY A. KALAC and RICHARD M. KALAC,<br><br>Claimants,<br><br>vs.<br><br>AMERICAN EXPRESS FINANCIAL ADVISORS and GREG HOGUE,<br><br>Respondents. | No. NASD Arb. No. 04-03420<br><br>CLAIMANTS' MEMORANDUM IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS |

## I. INTRODUCTION

The panel should deny Respondents American Express Financial Advisors Inc.'s ("AEFA") and Gregory D. Hogue's ("Hogue") Motion to Dismiss for the following reasons:

1. The Kalacs' claims are peculiar to them, arose after the end of the class action settlement and are therefore not subject to the class action settlement;

2. The order obtained from the Federal District Court of Minnesota was obtained without the proper notice to Claimants' counsel;

3. Respondent AEFA filed an Uniform Submission Agreement and therefore submitted to the NASD's jurisdiction for all of Claimants' claims;

4. Pursuant to the applicable NASD rules, Hogue has been properly served;

5. AEFA's counsel answered on behalf of Hogue, thereby signaling to both the NASD and Claimants that Hogue had appeared and was not challenging service and to dismiss Hogue at this late date would be unjust;

## IV. ARGUMENT

### A. The Kalacs' Claims are not Barred by the Class Action Settlement

The class action settlement and related release do not bar the Kalacs' claims in connection with account numbers: 90903948698-004; 90906106934-004; 93002300010-004; 93103019163-004; and 9316300267-004 (collectively the "IDS Accounts"). The terms of the Final Order and Judgment Approving Class Action Settlement and Dismissing Complaint ("Final Order") explicitly exclude the Kalacs' suitability, negligence, breach of fiduciary duty, and failure to supervise claims. These claims first arose in March of 2000 (though the Kalacs did not discovery the claims until much later) as a result of AEFA's mismanagement of the IDS Accounts. (A copy of the Class Notice is attached as Exhibit G to Respondent's Motion to Dismiss). The Class Notice states that the release **shall not be "deemed to alter .... a class member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the class period...."** (Ex. G, p. 10)(Emphasis added). There is no dispute that the class period ended on February 29, 2000.

The Kalacs' Statement of Claim makes clear that that their claims are based, in large part, upon Hogue's failure to follow the Kalacs' explicit March 2000 instruction to "lock in" the gains on all of their accounts, including the IDS Accounts. The suitability of the investments in the IDS Accounts should be analyzed from March 2000, when the Kalacs discussed their strategy to place their retirement funds in secure, low risk investments. Hogue was negligent and breached his fiduciary duty to the Kalacs by failing to follow the Kalacs' explicit instruction to preserve their gains. AEFA negligently supervised Mr. Hogue, by inexcusably allowing him to gamble with the Kalacs' money. In discussing this matter with counsel for AEFA, Mr. Irwin, he acknowledged that the class action settlement was not intended to prohibit claims that

arose after the class period. It is axiomatic that a settlement agreement does not usually bar claims based upon facts that arise after the date of the settlement and the class action settlement upon which Respondents' rely is no different in that respect than the typical settlement agreement. Accordingly, even under AEFA's reasoning, it remains liable for conduct in March 2000 and beyond.

The final order also states that "Nothing in this Release shall be deemed to alter a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not within reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in the Stipulation of Settlement." (AEFA Motion to Dismiss, Exhibit G, p. 10). The class action lawsuit settled by AEFA was based on fees it charged in connection with sales and management of IDS variable life insurance and variable annuity products. The Kalacs do not seek recovery based on the fees they were assessed in connection with the IDS Accounts. The Kalacs claims are peculiar to them and fall outside the general categories of claims in the class action suit. The Federal District Court of Minnesota was not apprised of Mr. Kalac's retirement at the end of the 1998 or the Kalacs' conversations with Hogue about "locking in" gains and crafting a conservative portfolio. Nor was the Court apprised of Hogue's long history of compliance violations or AEFA's repeated failure to take corrective action. The Kalacs' claims are independent causes of action based on the suitability of their investments shortly after Richard Kalac's retirement and the subsequent mismanagement of Kalacs' accounts by a trusted fiduciary.

By not opting out of the class action settlement, the Kalacs received a mere three years of accidental death insurance coverage in exchange for their forbearance in

bringing suit in connection with AEFA's fees. At most, the Kalacs were compensated for inappropriate or unlawful fees that AEFA charged on the IDS accounts. However, the proceeds of the class action settlement have no relationship with the damage caused by AEFA by failing to follow the Kalacs' instructions to move them into conservative investments and by recklessly managing of the Kalac's accounts.

AEFA's threat to appeal any award by this panel rings hollow. There is no doubt that the class action settlement or subsequent order do not prohibit claims that arise after the end of the class period. Regardless, these claims are peculiar to the Kalacs and are not subject to the class action settlement.

**B. The Mutual Fund Accounts Are Not at Issue**

AEFA admits that the Kalacs' remaining accounts are not covered by the class action settlement. The Kalacs' investments in the remaining accounts were limited to high-risk mutual funds recommended by Hogue and AEFA. The remaining accounts did not contain the unsuitable IDS variable annuities or variable life insurance policies at issue in the class action lawsuit.

Despite its admission that the remaining accounts are not subject to the class action settlement, AEFA raises the specter of appeal in another attempt to distract the Panel. Respondents cite the *Chandler* case (Attached as Ex H to Respondent's Motion to Dismiss). However, the *Chandler* decision analyzes a claim by a class member for bad advice with regard to the class action settlement documents. There is no mention of any claims that arose after the class period, like the Kalacs' claims. The *Chandler* case is completely unrelated to the case before the panel and is cited by Respondents to unnecessarily complicate the issues and scare the panel into believing that any award will be subject to appeal.

While there is little chance of an appeal in this matter, the Kalacs suggest that any

award could be granted in two parts. One part of the award could relate to the Kalacs' claims as they relate to the IDS Accounts. The second part of the award could relate to the accounts that held the unsuitable equity funds. This procedure would eliminate AEFA's concern that any award the panel issues will be a mixed result of the claims that are clearly not subject to the class action settlement and the IDS accounts, which AEFA argues are subject to the class action settlement (despite the fact that the claims arose after the end of the class period).

**C. The Kalacs did not opt out of the Class.**

The Kalacs did not opt out of the class. The Kalacs are not financially or legally sophisticated and did not fully understand their rights. Even if the Kalacs had understood their legal rights, they probably would not have opted out of the class. At the time of the deadline to opt out of the class the Kalacs had no idea that AEFA was aware of Hogue's pattern of compliance violations or that AEFA had considered taking clients away from Hogue. At that time, the Kalacs still trusted Hogue, a financial advisor backed by the brand name "American Express." Regardless, the class action notices and settlement are facially inapplicable to the facts and claims asserted by the Kalacs in this arbitration, which are peculiar to them and arose after the end of the class period.

**D. Evidence of Conduct Arguably Covered by the Class Action Settlement is Relevant and Admissible in This Case**

Even if the Panel finds that the class action settlement bars recovery on the Kalacs' claims on the IDS Accounts, the manner in which AEFA and Mr. Hogue handled the IDS Accounts is relevant to the Kalacs' claims on the remaining accounts. Hogue's placement of the Kalacs in variable life insurance and variable annuities in tax sheltered retirement accounts exemplifies a continuing course of conduct of recommending unsuitable investments. The Kalacs are entitled to demonstrate how AEFA and Hogue

failed to conduct an appropriate suitability analysis when they recommended the investments in the IDS Accounts to the Kalacs and did not re-tool the investments when the Kalacs asked Hogue about being more conservative, even though the Kalacs paid AEFA and Hogue more than $20,000 in commissions (Ex. BB, AXP 0677-686). Moreover, any settlement relating to the fees charged by AEFA on the IDS Accounts does not render irrelevant the fact that AEFA failed to heed the Kalacs' directives to lock in the gains in all of their accounts in March of 2000.

**E. The Class Action Settlement Issues Are Properly Before This Arbitration Panel**

To the extent that AEFA argues that issues regarding the enforceability of the class action settlement are not properly before this panel, AEFA waived its right to enforce the class action settlement in front of the U.S. District Court of Minnesota when it submitted its Uniform Submission Agreement in this arbitration to the NASD on July 27, 2004. The Uniform Submission Agreements states, in part, that AEFA "submit(s) the present matter in controversy, as set forth in the attached statement of claims, answers, cross claims and all related counterclaims and/or third-party claims which may be asserted to arbitration ..." (Ex. CC). This panel has the sole authority, by agreement of the parties, to determine whether the class action settlement applies to the Kalacs' investments in the IDS Accounts.

**F. AEFA's Subsequent "Hide The Ball" Litigation Tactics**

AEFA attacks the candor of counsel for the Kalacs. However, it is AEFA that has been less than forthright with the counsel for the Kalacs and the Panel. When AEFA filed a Motion to Enforce Class Action Settlement, the Certificate of Service signed by AEFA's counsel states that counsel mailed a copy of the Motion and supporting

documents to counsel for the Kalacs on December 15, 2004. In reality, AEFA's counsel sent the documents to the Kalacs' counsel by overnight delivery via Federal Express on December 27, 2004. (Ex. DD).

In support of its Motion to Enforce Class Action Settlement in the U.S. District Court of Minnesota, AEFA's counsel failed to serve counsel for the Kalacs with a Notice of Motion, as required by Local Rule 7.1. (Whipple Aff. ¶ 2). The Kalacs' counsel called the clerk of that court, who advised him that the court would not hear the motion until AEFA's counsel served him with a Notice of Motion advising him of a hearing date. (Whipple Aff. ¶ 3). The hearing date triggers the date by which a response to the motion is due. (See Local Rule 7.1, Ex. EE). The Kalacs' counsel also called a local attorney who advised him of the same thing -- the motion would not be heard until after AEFA's counsel served a Notice of Motion. (Whipple Aff. ¶ 3).

On January 6, 2005, the Kalacs' counsel sent a letter to the NASD and asked the NASD to forward the letter to the Panel. The letter asked the Panel to discuss Respondents' Motion to Enforce the Class Action Settlement, filed with the U.S. District Court of Minnesota. (Ex. CC).

Without the benefit of a response brief or an appearance by counsel for the Kalacs, the U.S. District Court of Minnesota apparently issued an order barring the Kalacs from proceeding with a claim in the NASD arbitration for losses suffered as a result of their unsuitable investments in variable annuities and variable life insurance products that are based on or related to the claims and causes of action or the facts and circumstances

relating to the underlying case. (Ex. F). As discussed above, this order does not prohibit the Kalacs' claims because they are peculiar, after the class period and are not based on related to any of the claims or facts of the underlying case. Apparently, that order was entered January 19, 2006.

On January 26, 2005, counsel for the Kalacs and AEFA had a telephone conference with the Panel Chairperson. (Whipple Aff. ¶ 4). During that conference, counsel for the Kalacs raised the issue that AEFA had filed a Motion to Enforce Class Action Settlement with the U.S. District Court of Minnesota. (Whipple Aff. ¶ 5). AEFA's counsel chose not to disclose to the Panel or the Kalacs' counsel that an order had already been entered. Instead, AEFA decided to string the Kalacs' counsel and the Panel along by giving the impression that the motion would not be pursued in the U.S. District Court of Minnesota until after the Panel reviewed briefing on the motion and conducted a hearing.

The Panel Chairperson advised counsel that he would discuss the issue with the other panel members. On February 3, 2005, the Panel Chairperson ordered a further telephonic hearing to discuss various issues raised by AEFA's Motion to Enforce Class Action Settlement. (Ex. FF). That hearing was originally scheduled for March 1, 2005. (Ex. GG). However, the hearing was postponed until April 15, 2005 to accommodate the schedule of counsel for AEFA. Counsel for AEFA and Hogue chose not to advise either the Panel or the Kalacs' counsel of the existence of the order until filing the Motion to Dismiss.

for Information within seven days of the hearing.

The Kalacs further request that the Panel sanction AEFA for its lack of good faith and for its attempts to frustrate the Kalacs' entitlement to full discovery. AEFA's failure to produce documents and information is hindering the Kalacs' prosecution of their case. It is clear that AEFA is attempting to manage the litigation process through deception rather than allowing this case to proceed to a hearing with all the relevant information on the table. The Kalacs ask that the Panel apply the principals of Spoliation by drawing all inferences in favor of the Kalacs with regard to all missing documents.[1] The Kalacs further ask the Panel to assess a monetary sanction on AEFA to compensate the Kalacs for the additional attorneys' fees they have unnecessarily expended on discovery issues and also to punish AEFA for abusing the discovery process.

## IV. CONCLUSION

The class action settlement does not impact the Kalacs' claims. Greg Hogue should not be dismissed from this lawsuit because AEFA answered the Statement of Claim on his behalf and is inexcusably late in requesting relief from its own error in answering for Hogue. The Kalacs filed their Statement of Claim within all applicable limitations periods. For the foregoing reasons, the Panel should deny the Respondents' Motion to Dismiss. The Panel should also compel production of the remaining documents AEFA has failed to produce, despite the Panel's order to do so. The Panel should award the Kalacs' their attorneys' fees incurred as a result of AEFA's refusal to

//

[1] The most common sanction imposed for both negligent and intentional spoliation-of-evidence claims is an adverse inference against the spoliator. The jury is instructed that the evidence destroyed would have been disfavorable to the spoliator. To draw an adverse inference from the destruction of evidence, it should appear that "the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." Lundquist v. United States, 1997 U.S. App. LEXIS 16204 (9th Cir. Wash. 1997).

produce all documents and sanction AEFA for its abuse of the discovery process in this case.

Dated this 12th day of April, 2005.

SCHWABE, WILLIAMSON & WYATT, P.C.

By: [signature]

B. Scott Whipple, OSB #98375; WSB #29030
Michael D. Furlong, OSB #02308
Of Attorneys for Claimants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of April, 2005, I served the foregoing CLAIMANTS' MEMORANDUM IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS, on the following parties at the following addresses:

**Via Overnight Mail**
Ms. Audrey C. Philips
Hearing Administrator
NASD
Dispute Resolution - West Regional Office
One California Plaza
300 South Grand Avenue, Suite 900
Los Angeles, CA 90071-3135

**Via Overnight Mail**
Gary Irwin
Law Offices of Edgerton, Weaver & Irwin
Interlachen Corporate Center
5050 Lincoln Drive, Suite 480
Minneapolis, MN 55436

by sending a copy thereof via overnight courier in a sealed, prepaid envelope, addressed to each party's last-known address, as indicated above.

B. Scott Whipple