**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESON, ARNOLD MORK, ISABELLA MORK, RONDALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated.

Plaintiffs,

v.

**Civil No. 00-1980(DSD/JMM)**

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**REPLY TO RESPONSE TO MOTION TO ENFORCE CLASS ACTION SETTLEMENT AS TO CLAIMS OF PETER G. COVERT, IRA AND LINDA L. COVERT, IRA (THE "COVERTS") BEFORE THE NASD**

## I. Introduction

This is the reply brief of IDS Life Insurance Company[1] and American Express Financial Advisors, Inc. (hereinafter collectively "AEFA") in support of their motion to enforce this Court's Final Judgment Approving Class Action Settlement, dated May 21, 2001..

## II. Facts and Argument

[1] IDS Life and AEFA were defendants in Benacquisto. The products at issue are IDS Life products. Although IDS Life is not a party to the NASD arbitration at issue, it is, as a practical matter, impacted by the NASD Panel's Order with respect to the five IDS Life insurance policies and annuities at issue herein.

Because IDS Life and AEFA("AEFA") have briefed the key issues in detail in their initial brief, and the Coverts seem to have raised nothing but the standard excuses for why, with 20/20 hindsight, they would like to be excluded from the terms of a class action settlement, AEFA will keep this brief to the minimum. Here is a short response to claimants' arguments.

First, the service issues are addressed in detail in AEFA's original brief. Claimants say no more than the expected-that they did not receive the notices, even though such notices were mailed to the address of record they had and still have with AEFA and the numerous mailings they received were never returned as undeliverable. If their arguments were true, why didn't they complain about failure to receive account statements, checks and other forms of communications which went to them at this same address and period of time? Mere denial that they received the notices raises no issue worth addressing. At minimum, they received publication notice.

Second, regarding claimants' reliance on NASD Rules, such rules are intended to be binding on NASD panels, but are not binding on this Court. Moreover, the Rules claimants cite do not apply. The NASD Director of Arbitration never sent the parties notice to elect whether the NASD Panel or the Court should decide the class action bar issues. AEFA has admittedly sought to limit the motions on the Benaquisto settlement which this Court must address. The Court's May 21, 2001 Final Judgment seems to be, in fact, the election claimants refer to with respect to the NASD Rule which allows an election as to having a decision made by the NASD Panel or the Court. It regretfully has proven to be the case , in some rare situations, that claimants will ignore the Orders of

this Court, even where the Court has re-affirmed its May 21, 2001 Order, but the May 21, 2001 Order itself should be sufficient to address the issue of the Class Action bar. Only where a claimant ignores this Court's Orders, or an NASD Panel ignores this Court's Orders, does it seem necessary to burden the Court with the issue.

Here, AEFA gave the Arbitration Panel the opportunity to follow the law. The vast majority of NASD Panels do so, but some, such as this one do not.

Third, there is no merit in claimants' contentions that their claims may proceed so long as their alleged damages arose after the Class Period ended, but within the Release period of the Benacquisto settlement. This argument has succeeded before a couple of NASD Panels, withmost rejecting the argument, but one initial success breeds copycats-a way to avoid a class action bar covering the claims at issue.

The settlement of the Benacquisto class actions covered broad categories of claims, and the concept of res judicata further bars claims that could have been litigated in the class actions. (and, in fact, even beyond that, extending to other actions which could have been brought by the Final Settlement Date, as specified in this Court's May 21, 2001 Final Judgment.)

The gist of the Coverts' arguments seem to be two-fold. First, they argue that the relevant time period for the settlement of claims at issue in the Class Action begins when claimants argue, subjectively, that their *damages arose*, rather than when the *products were purchased*. IDS Life and AEFA contend that the appropriate standard is an objective one of when the covered products were ***purchased***.

Under claimants' theory, few if any of the claims settled in Benacquisto would actually be settled because claimants can simply argue that their damages arose after they purchased the products at issue. ( see discussion *infra* on how and why many types of future claims and damages are covered by the settlement, long past the end of the class period, or even the Final Settlement Date.)

The second key argument which the Coverts' counsel argued for in front of the panel was that the Benacquisto release only extends through the class period, ending on February 29, 2000.

The Release in Benacquisto provides, however, that the Release extends through the FINAL SETTLEMENT DATE.( which this Court's records show-according to Rust Consulting) was September 24, 2001-the date the appeal period on this Court's May 15, 2001 Order ran.)

> 1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, **as of the Final Settlement Date**, release, acquit and forever discharge the Releasees…
>
> "Claims and Causes of Action" (as used in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or

> equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), **that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state of local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement**.(emphasis added)

Moreover, the description of the Claims released by the Benacquisto settlement is very broad, and extends to many types of future claims and also to claims which ***could have been raised*** in the Benacquisto class action(which action was not settled until September 2001.) and to other actions which could have been filed through the Final Settlement Date. In addition the Release provisions cited above, and several other relevant sections of the Final Judgment of this Court, the Settlement contains the following broad description of what is being released by the settlement:

> 2. "Released Conduct" means any and all direct or indirect acts, **representations, omissions, suggestions, or communications that are related to or connected in any way with** the design, development, marketing, sale, **administration, servicing,** underwriting, **or performance** of the Policies or the Annuities, **including without limitation, acts, representations, omissions, suggestions or communications in connection with** (i) the explanation, description, marketing,

> sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) **the suitability of any purchases, sales or replacements of any Policy or Annuity;** (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) **the investment choices made with respect to assets held in any Policy or Annuity;** (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) **the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment;** (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) **the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity;** (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) **the administration or servicing of any Policy or Annuity after its purchase.**(emphasis added)

Plainly, the Release in Benacquisto covers the precise claims now made by the Coverts(see their NASD Statement of Claim, Exhibit 4) and covers claims relating to "maintenance" of investments, the "servicing" and "administration" of the policies, the "performance" of the policies, the "investment selections within the policies" and the "servicing " of any policy "***after its purchase.***" The standard as to what is covered by the class action settlement and release turns on the date of

purchase of the policies and annuities, and extends into the future regarding the servicing, administration , provision of investment advice and overall maintenance of those policies, not on whether the alleged damages arose after the class period closed, as the Coverts' counsel argued for and the Panel accepted. (

Finally, logic, common sense, and normal , well-accepted standard settlement practices support this Court's original Orders. The normal settlement of a lawsuit includes all claims which arose, or could have been asserted, through **the date the settlement agreement is signed**. Most court actions take years to conclude. Under the Coverts' theory, as adopted by the NASD Panel, a settlement would only extend to a time period which would typically be before the action was even filed. Such an approach is contrary to the terms of the Benacquisto settlement, contrary to normal practice, and contrary to logic. In short, the Court got it right the first time and here needs do no more than enforce its prior Orders as they were originally written.

## III. CONCLUSION

For all the reasons cited above, AEFA and IDS Life respectfully request that this Honorable Court Order the Coverts to comply with this Court's Final Judgment in Benacquisto by ordering that they dismiss all claims in the arbitration concerning life insurance products or annuities which were included in the Benacquisto class action.

May 24, 2005.

Edgerton, Weaver & Irwin, LLC

s/Gary Irwin
**Gary Irwin**
(License #0179991)
5050 Lincoln Drive, Ste. 480
Interlachen Corp. Center
Minneapolis, MN 55436
(952) 345-4444
girwin@neilaw.com

ATTORNEY FOR
AMERICAN EXPRESS
FINANCIAL ADVISORS, INC.,
AND IDS LIFE INSURANCE
COMPANY