UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.
In re UNION SQUARE ASSOCIATES SECURITIES LITIGATION.
**Civ.A. No. 11028.**

Submitted June 4, 1993.
Decided June 16, 1993.

Lawrence A. Hamermesh and Jon E. Abramczyk of Morris, Nichols, Arsht & Tunnell, Wilmington, for Shearson Lehman Bros. Inc.

Vernon R. Proctor of Bayard, Handelman & Murdoch, P.A., Wilmington (Joshua M. Rubins, of Satterlee Stephens Burke & Burke, New York City, of counsel), for the Ann & Erlo Van Wavern Foundation.

MEMORANDUM OPINION

CHANDLER, Vice Chancellor.

***1** Shearson Lehman Brothers Inc. ("Shearson") has filed a petition to enforce this Court's final judgment in the consolidated class action known as *In re Union Square,* Del. Ch., Consol. C.A. No. 11028, Chandler, V.C. (Dec. 20, 1990) (the "Final Judgment"). Shearson wishes to enforce the Final Judgment, which approves and confirms the parties' Stipulation and Agreement of Compromise and Settlement dated June 8, 1990 (the "settlement agreement"), in order to bar allegedly duplicative claims brought by respondents the Ann & Erlo Van Waveren Foundation (the "Foundation") and William and Lydia Demkin (the "Demkins") in pending arbitration proceedings before other tribunals. Shearson asserts that respondents' pending claims were previously and conclusively settled by the Final Judgment and are barred by *res judicata,* or alternatively by the class action settlement. Respondent Foundation, on the other hand, argues that its arbitration claims differ significantly from those previously litigated in both its terms and the parties involved. The Foundation thus asserts it may proceed with its arbitration proceedings notwithstanding my previous decision. As a result, the questions before me are whether either *res judicata* or the settlement agreement prohibits respondents' pending arbitration actions.

I. FACTS

*In re Union Square* consolidated two class actions brought on behalf of purchasers of Shearson Union Square Associates Limited Partnership ("Union Square") alleging violations of federal securities laws, common law fraud, negligent misrepresentation and breach of contract in connection with the offer and sale of Union Square limited partnership interests. Settlement agreement 1-8. Neither the Foundation nor the Demkins refute that they were members of the plaintiff class as defined in the settlement agreement. [FN1] As noted above, the consolidated class action was settled, and pursuant to the settlement agreement, Shearson agreed to provide substantial benefits to members of the class, including guaranteeing unitholders a minimum yield on their investment in Union Square for three years. The class members agreed to a full settlement of their dispute, including:

FN1. The class was certified as all purchasers of depositary units of Union Square exclusive of those who voluntarily opted out of the class. Potential class members were notified that unless they served and filed a written notice of intention to be excluded, they would be considered within the class. Neither the Foundation nor the Demkins made any attempt to be excluded from the class, and both respondents have since accepted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 5

financial and other benefits under the settlement agreement.

the Union Square Associates Actions, as well as any and all claims and causes of action of any nature or description, whether known or unknown, suspected or unsuspected, which now exist, may hereafter exist or heretofore existed in favor of the plaintiffs and the Class against any of the defendants in the Union Square Associates Actions, [and] their successors [and] employees ... arising in any way in connection with purchases of Units of partnership interest by plaintiffs or members of the Class, or arising out of, in connection with or relating to the subject matter of the Union Square Associates Actions, or any actual or potential claims of breach of fiduciary duty, negligence, breach of contract, or any other alleged claims arising out of or that could have been asserted as a result of the operations of the Hotel or the partnership (all of which are hereinafter referred to as the "Settled Claims").

***2** Settlement agreement at 8-9.

Class members were given an opportunity to object to the settlement at a fairness hearing, and neither the Foundation nor the Demkins attended. Thereafter I dismissed the consolidated class action with prejudice and permanently barred and enjoined all class members from "instituting or further prosecuting any action or proceeding in any court or tribunal of this or any other jurisdiction based upon any claim that is a Settled Claim." Final Judgment at 2.

Nonetheless, in separate actions the Foundation and the Demkins have filed claims for arbitration concerning, *inter alia,* Shearson's purchase of Union Square interests. The Foundation filed a claim with the New York Stock Exchange (the "NYSE claim") alleging that Shearson and its employee Margaret Neilly made unauthorized and unsuitable investments on behalf of the Foundation in three limited partnerships, one being Union Square. The claim alleges unauthorized purchases of securities for the Foundation's account, oral misrepresentations regarding the investment of the Foundation's funds, omissions of material facts, breach of the client agreement between Shearson and the foundation, and violations of the Securities Exchange Act and the New York Stock Exchange Rules. Shearson moved to dismiss the Foundation's claim in the arbitration forum, and the Stock Exchange denied the motion. Consequently, Shearson is now seeking a declaration enforcing the final judgment of this Court in an attempt to bar the Foundation's arbitration action.

## II. JURISDICTION

In the Final Judgment I retained jurisdiction for the purpose of resolving disputes with respect to the settlement. Final Judgment at 3. In addition, the New York Stock Exchange Rules provide that claims for arbitration filed by members of certified class actions are eligible only if "a claimant has demonstrated that it has elected not to participate in the putative or certified class action, or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court." Rule 600(d)(i). The Rule further provides that disputes concerning whether a particular claim is encompassed by a class action may be determined by the court with jurisdiction to resolve disputes over the class action. Rule 600(d)(ii). Because this Court had jurisdiction over the class action involved, under Rule 600(d)(ii), if the NYSE claims are sufficiently similar to those of the class action, this Court has jurisdiction to bar respondents from proceeding with the arbitration.

## III. RES JUDICATA

The first issue before me is whether the arbitration action is based on issues sufficiently similar to those settled by the Final Judgment to classify as *res judicata.* In a class action, it is clear that the effects of *res judicata* must be limited in some way by the claims that were alleged, or could have been alleged, in the former pleadings. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466 n. 6, *reh'g denied,* 458 U.S. 1133 (1982) ("Under *res judicata,* a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*3 The Foundation notes that some of the claims pending in the arbitration action were not alleged in the previous Chancery Court complaint. Absolute parity of allegations, however, is not necessary to invoke the doctrine of *res judicata.*

The Delaware Supreme Court has stated that "*res judicata* is available if the pleadings framing the issues in the first action would have permitted the raising of the issue sought to be raised in the second action, and if the facts were known, or could have been known to the plaintiff in the second action at the time of the first action." *Ezzes v. Ackerman,* Del.Supr., 234 A.2d 444, 445-46 n. 6 (1967). Under *Ezzes,* the inquiry becomes whether the issues in the pending actions *could* have been raised in the previous litigation.

Because the previous action was on behalf of a class, while the present one is individual in nature, the Foundation asserts that it could *not* have brought at least some of its pending claims in the previous litigation. However, owing in part to a 1989 Delaware Supreme Court decision, I believe the *Ezzes* inquiry has been modified in regard to class actions. In *Nottingham Partners v. Dana,* Del.Supr., 564 A.2d 1089 (1989), the Delaware Supreme Court states the rationale for allowing *res judicata* to apply regarding similar, though not identical claims. It observed:

> As long as the overall settlement is found to be fair and class members were given sufficient notice and opportunity to object to the fairness of the release, we see no reason why the judgment upon settlement cannot bar a claim that would have to be based on the identical factual predicate as that underlying the claims in the settled class action.... We therefore conclude that in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.

*Nottingham,* 564 A.2d at 1106, *quoting TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir.1982). The *Nottingham* Court affirmed a determination that *res judicata* applied to the dissenter's complaint because it was based on the "same operative facts" as the class action. Although the *Nottingham* case involved a party who attempted to opt out of the class action, I find this rationale equally applicable to subsequently asserted claims from class members who did not choose to opt out.

In the present case, the Foundation, and indeed all potential litigants in the class action, were granted the opportunity to opt out of the class and pursue any claims against Shearson independently, or to rely upon the class action to obtain an adequate remedy. The respondents opted to remain in the class, and they do not dispute any of the facts regarding the class action, including timely receipt of notice of settlement and the settlement hearing. Rather, they suggest that the pending claims arise from different facts.

*4 The Foundation's present claim arises (at least partially) out of the same transaction, the purchase of the Union Square partnership units. The allegations in the *former* action focused upon the prospectus and whether it adequately disclosed necessary information to the class. The allegations in the Foundation's *present* action focus on whether Shearson adequately invested the Foundation's funds regarding Union Square and two other limited partnerships. However, these claims are very similar. In the consolidated class actions, plaintiffs alleged that Shearson violated the securities laws and the common law of fraud and negligent misrepresentation by providing materially false and misleading information to the investing public concerning the business, finances, profits and future business prospects of Union Square. It also specifically alleged that Union Square limited partnership units were not appropriate investments for endowment funds, foundations, and individual retirement accounts, and sought to recover damages for allegedly having been wrongfully induced to purchase Union Square limited partnership units. Class Action Complaint ¶ 49(c). The Foundation's pending arbitration claim alleges unauthorized purchases of securities for the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Foundation's account (¶¶ 19, 21- 23), oral misrepresentations regarding the investment of the Foundation's funds (¶¶ 39-49), omissions of material facts (¶¶ 26, 27), breach of the client agreement between Shearson and the Foundation (¶ ¶ 33, 57, 62), and violations of the Securities Exchange Act (¶ 27). As to the allegations concerning the Union Square investments, it is hard for me to imagine how these allegations could arise from different operative facts. Both complaints concern Shearson's allegedly wrongful investment of the Foundation's funds in the Union Square interests. For this reason, extending the holding of the *Nottingham* case to subsequent actions by class members, I believe that *res judicata* bars the respondents from asserting any claim as to the Union Square Investment.

## IV. THE SETTLEMENT AGREEMENT

Even assuming *arguendo* that the *Nottingham* rationale cannot be extended to this case through the doctrine of *res judicata* alone, it will apply through the specific provisions of the settlement agreement. The settlement agreement specifically bars certain of the respondents' pending claims.

The settlement agreement releases Shearson from claims "arising in any way in connection with purchases of Units of partnership interest by plaintiffs or members of the Class ..." Settlement agreement at 8-9. The Foundation asserts that the pending claims are not affected by the settlement agreement, however, because they could not have been brought in it. As I determined above, however, such a finding does not preclude the barring of subsequent claims. *National Super Spuds, Inc. v. N.Y. Mercantile Exchange*, 660 F.2d 9, 18 (2d Cir.1981). *See also, Nottingham*, 564 A.2d at 1106; *TBK Partners Ltd.*, 675 F.2d at 460. The *Super Spuds* Court recognized that a settlement agreement could affect the ability of class members to assert further claims:

> *5 We assume that a settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts.

*National Super Spuds*, 660 F.2d at 18 n. 7.

Consequently, the correct inquiry is whether the issues arise from the same factual predicate, for this issue as well as *res judicata*. The rationale behind this mandate is that, where the released individual claims are based on the same factual predicate as the class action claims, there is no concern that a class representative would sacrifice individual claims that she does not share in order to achieve a more favorable settlement for herself. *TBK Partners Ltd.*, 675 at 462. Thus to allow plaintiffs to bring subsequent claims after accepting the findings of a class action would severely inhibit a defendant's incentive to settle. As one federal appellate Court has recently stated:

> In this case, appellant had the opportunity to opt out of the class action in the Arkansas action in order to preserve any individual claims she may have had in addition to those in common with the class. Appellant did not opt out of the class, she did not voice any objection to the terms of the settlement, and she did not seek relief from the Final Judgment of Dismissal and Order under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure.

*Harris v. Edward K. Jones & Co.*, No. 92-3055, 1993 U.S.App. LEXIS 10054, * 14-* 15 (8th Cir. May 3, 1993). In *Harris*, the Court prohibited Harris from bringing a subsequent suit in a different court regarding fraud and negligence in a broker's representations to her client.

As I determined above, the claims regarding Union Square do arise from the same factual predicate. *See TBK Partners Ltd.*, 675 F.2d at 461 (1982); *Sullivan v. Shearson California Radisson Plaza Partners Ltd. Partnership*, No. 89-5462-JMI, Order (C.D.Cal. Oct 2, 1992); *Hartley v. Stamford Towers Ltd. Partnership*, No. C-90-2146-JPV, Order (N.D.Cal. Oct 2, 1992). Therefore respondents' claims regarding Union Square are barred under the settlement agreement.

## V. CONCLUSION

For the reasons stated above, I grant Shearson's motion to enforce the Final Judgment. As a result, all claims in the Foundation and the Demkins' [FN2] arbitration proceedings regarding Union Square are deemed duplicative and respondents are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

consequently barred from pursuing them. Respondents' claims regarding other limited partnership investments, however, are not affected by this petition or Order.

FN2. The Demkins have failed to make an appearance in this action. Under 10 *Del.C.* § 367, I may proceed to hear and determine Shearson's claim as if they had appeared. Therefore, because they have provided the Court with no defense as to Shearson's claims, I must assume all well-pleaded allegations concerning the claims are true. Moreover, a default judgment may be entered under Chancery Court Rule 55(b) upon petitioner's request.

IT IS SO ORDERED.

Not Reported in A.2d, 1993 WL 220528 (Del.Ch.), Fed. Sec. L. Rep. P 97,685

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.