**H**

**Briefs and Other Related Documents**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
Arthur W. HARTLEY, Plaintiff,
and
Linda M. Greenblatt, Plaintiff-Appellant,
v.
STAMFORD TOWERS LIMITED PARTNERSHIP, Defendant,
and
Shearson Lehman Hutton Inc., Defendant-Appellee.
Armonce SULLIVAN, Plaintiff,
and
Linda M. Greenblatt, Plaintiff-Appellant,
v.
SHEARSON CALIFORNIA RADISSON PLAZA PARTNERS LIMITED PARTNERSHIP; Shearson Lehman Commercial Prop III Inc.; Shearson Lehman Hutton, Inc., Defendants-Appellees.
**Nos. 92-16802, 92-56528.**

Argued and Submitted Feb. 1, 1994.
Decided Aug. 26, 1994.

Appeal from the United States District Court for the Northern District of California, D.C. No. CV-90-02146-JFV; John P. Vukasin, Jr., District Judge Presiding.

N.D.Cal.

AFFIRMED.

**1 Appeal from the United States District Court, for the Central District of California, D.C. No. CV-89-05472-JMI; James M. Ideman, District Judge Presiding.

Before: TANG, PREGERSON, and NOONAN, Circuit Judges.

MEMORANDUM [FN*]

OVERVIEW

Appellant Linda Greenblatt appeals the orders of two District Courts granting the motions of Appellee Shearson Lehman Brothers, Inc. The District Courts' orders enforce the judgments and previous injunctions regarding two class action settlements involving Shearson. Specifically, the orders enjoin Greenblatt from relitigating in arbitration her claims concerning investment in two of Shearson's limited partnerships, Stamford Towers Limited Partnership ("Stamford Towers") and Shearson California Radisson Plaza Partners Limited Partnership ("Radisson Plaza"), which were the subject of the class action suits. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

BACKGROUND

1. The Radisson Class Action

A class action complaint was filed in the Central District of California against Shearson Lehman Brothers, Inc. on August 28, 1989 for claims arising from the purchase of units in the Shearson California Radisson Plaza Limited Partnership. The complaint alleged violations of §§ 11 and 12(2) of the Securities Act of 1933, violations of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, common law fraud, negligent misrepresentation, and breach of contract. The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 6

complaint was based in part on alleged misrepresentations in the written prospectus and advertisements regarding the Radisson Plaza investment. The class was certified on March 14, 1990.

On June 7, 1990 a notice of class certification and proposed settlement was sent to all class members. The notice provided a summary of the causes of action alleged in the suit and the settlement agreement. The notice further suggested that class members seek the advice of counsel if they desired, and stated that class members were free to examine or photocopy the actual pleadings and records in the suit at any time. In addition, the notice informed all potential class members that they had a right to exclude themselves from the class by notifying class counsel of their choice to opt out of the class, and stated the consequences of failing to opt out of the class. The notice also listed the time and place of the fairness hearing for approval of the final settlement, and informed class members that they had a right to attend the hearing or submit written objections to the settlement.

The District Court gave final approval of the settlement and entered judgment on July 16, 1990. The settlement bound all plaintiff class members and Shearson, and enjoined all class members from further prosecution of any action based on any claim that was or could have been asserted against Shearson or its employees relating to the Radisson Plaza investment. The District Court's order reserved jurisdiction over all parties to enforce the settlement.

2. The Stamford Towers Class Action

****2** A separate class action complaint was filed in the Northern District of California against Shearson on July 30, 1990, for claims arising out of the offer and sale of Stamford Towers Limited Partnership interests. The complaint alleged violations of § 12(2) of the Securities Act of 1922, §§ 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934, as well as common law fraud, negligent misrepresentation, negligence, and unfair business practices under Cal.Bus. & Prof. Code § 17200.

On June 3, 1991 a notice of class certification and proposed settlement was sent to all class members, which included a list of each cause of action alleged in the suit. Like the notice in the Radisson Plaza suit, the Stamford Towers notice suggested that class members seek the advice of counsel if they desired, and stated that class members were free to examine or photocopy the actual pleadings and records in the suit at any time. Further, the notice informed all class members that they had a right to opt out of the class, and stated the consequences of failing to opt out. The notice listed the time and place of the fairness hearing, and informed class members that they had a right to attend the hearing or submit written objections to the settlement.

The parties submitted the Settlement Agreement to the District Court, which approved and entered judgment on July 11, 1991. This settlement also bound all plaintiff class members and Shearson, and enjoined all class members from further prosecution of any action based on any claim that was or could have been asserted against Shearson or its employees relating to the Stamford Towers investments. The District Court's order also reserved jurisdiction over all parties to enforce the settlement.

3. The Arbitration

On May 20, 1991, Linda Greenblatt, a class member, filed an action before the National Association of Securities Dealers, Inc. ("NASD") pursuing the arbitration of numerous claims against Shearson and Kenneth Silva, Greenblatt's broker at Shearson. Greenblatt's statement of claims included claims arising from Greenblatt's purchase of interests in Radisson Plaza and Stamford Towers. The "Client Agreements" between Greenblatt and Shearson required that disputes between Shearson and their clients be arbitrated.

Shearson's answer filed with the NASD specifically asserted that Greenblatt was precluded from pursuing "any claims related to [the Stamford Towers and Radisson Plaza] partnerships in this lawsuit" because Greenblatt was a class member in both class action suits. Shearson's answer further

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

moved for dismissal of all remaining claims asserted in Greenblatt's statement of claims.

As a class member, Greenblatt did not file any objections, appear at either fairness hearing to challenge the settlements, or opt out of either suit pursuant to the notification which she received. Greenblatt cashed the settlement check for Radisson Plaza for $1,370.67, and the Stamford Tower settlement check for $23,168.64. Greenblatt cashed the Stamford Towers check with the endorsement: "without prejudice to my rights or claims asserted by me in my arbitration."

****3** Because of the substantive questions of fact and law involved in the dispute, on January 29, 1992 Shearson's motion to dismiss was referred to a hearing before a panel of arbitrators, scheduled for November 30, 1992. In the interim, Shearson and Silva executed form Submission Agreements, as required by the Code of Arbitration Procedure § 25(b), to proceed with the arbitration of Greenblatt's other claims. These agreements limited arbitration to "the present matter in controversy, as set forth in the attached statement of claim and answers...." In addition, Shearson participated in discovery as part of the arbitration process.

Before the November hearing, Shearson filed motions in the Northern District of California on August 10, 1992 and in the Central District of California on October 5, 1992 to enforce the judgments of the two class actions against Greenblatt. The District Courts granted Shearson's motions, finding that Greenblatt's arbitration claims relating to the two limited partnership investments were precluded and enjoined.

ANALYSIS

We review the District Court's enforcement of a settlement agreement for an abuse of discretion. *Wilkinson v. Federal Bureau of Investigation,* 922 F.2d 555, 558 (9th Cir.1991).

At the outset, we note that Greenblatt devoted an extensive portion of her briefs to the merits of arbitration as a method for dispute resolution. Further, Greenblatt frames the issue of whether Shearson agreed to arbitrate its class action settlement defense in terms of examination of the scope and validity of the arbitration clauses in Shearson's Client Agreements and the NASD Submission Agreements. While we certainly agree with Greenblatt's assertion that the law favors arbitration where the parties have agreed to arbitrate an issue, the arbitration clauses in the Shearson's Client Agreements and the NASD Submission Agreements have no effect on a District Court's ability to enforce its judgment to prevent relitigation of claims, even in arbitration. *See SEC v. G.C. George Securities, Inc.,* 637 F.2d 685, 687 (9th Cir.1981). Thus, we find Greenblatt's various arguments regarding the scope and validity of the arbitration clauses to be facially without merit.

As the Northern District Court noted in its order, judgment in a class action binds all class members from bringing subsequent claims grounded in the same factual basis. *Western Systems, Inc. v. Ulloa,* 958 F.2d 864, 871 (9th Cir.1992), *cert. denied,* 113 S.Ct. 970 (1993). Thus, we first examine whether the District Courts erred in finding that Greenblatt's claims against Shearson regarding the Stamford Towers and Radisson Plaza investments were precluded by the class action settlements because of a dissimilarity between the claims raised in court as compared to those raised in the arbitration.

Greenblatt contends that the settlement releases apply only to the "Settled Claims" raised in each class action, which she interprets as being limited to the specific claims in each class action complaint. Further, she contends that the settlement releases cannot "immunize" Silva from his alleged wrongful conduct in handling her accounts. [FN1] We reject both of these arguments. As the Northern District Court noted, the settlement agreements to which Greenblatt did not object clearly state that all class members are enjoined from pursuing claims, known or unknown, that could have been asserted against Shearson or its employees in the class action suit. This comports with the definition of "Settled Claims" [FN2] found within both settlement agreements.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

****4** Moreover, we find no substantive difference between the basis for the class action suits and Greenblatt's claims asserted in arbitration. Both of the class actions and the arbitration dispute sought damages for alleged violations of various securities laws and claims grounded in common law fraud and negligence. Although the class action suits focused on material omissions and misrepresentations in offering and sales materials, the class actions and arbitration claims stem from identical factual grounds. Additionally, the fact that Silva was not involved in the material misrepresentations at issue in the class actions has no impact on the settlement releases barring claims against Shearson employees. The releases apply to all Shearson employees who were in any way involved in the matters at issue.

Further, Greenblatt's failure to exercise her right as an individual to pursue the Stamford Towers claim against Shearson by opting out of the class action could not be cured by her notation on the settlement check. The Northern District Court properly found that Greenblatt's endorsement on the cashed check was an invalid attempt to permit her to further pursue the Stamford Towers claim in arbitration.

Greenblatt also contends that the District Courts are precluded from enforcing the class action settlements against her because Shearson participated in the arbitration process. We disagree for several reasons.

First, as noted above, federal district courts have broad injunctive powers to protect their own judgments. 28 U.S.C. § 1651. This grant of authority includes jurisdiction to enforce a class action judgment. *See SEC v. G.C. George Securities, Inc.*, 637 F.2d at 687. Here, the District Courts expressly reserved this right: the orders permanently enjoin class members from instituting or further prosecuting any action or proceeding in any court or tribunal of this or any other jurisdiction based upon any claim that is a Settled Claim. Thus, Shearson's participation in the arbitration process cannot affect the District Court's authority to enforce its judgments.

Second, Shearson's participation in the arbitration of Greenblatt's claims, absent Shearson's express or implied waiver, cannot waive the releases granted by the District Courts in the class action judgments. "A party's efforts to alert an arbitration panel to its lack of jurisdiction over some of the claims before it is not a waiver of that party's substantive right to have a federal court determine the scope of the arbitrator's jurisdiction." *Edward D. Jones & Co. v. Daniel Sorrels,* 957 F.2d 509, 514 n. 7 (7th Cir.1992). Nor do we find law to support Greenblatt's contention that Shearson's participation in general discovery in the arbitration process waived its substantive right to seek dismissal. Although Greenblatt is correct that an agreement to arbitrate may be implied from the conduct of a party who has participated in the arbitration process, *Fortune, Alsweet, & Eldridge, Inc.*, 724 F.2d 1355, 1356 (9th Cir.1983), Shearson objected to the arbitrability of Greenblatt's Stamford Towers and Radisson claims from the beginning of the arbitration process. As this Court has noted, a party may preserve the question of arbitrability of certain issues while proceeding with the arbitration process so long as the party expressly made the objection before the arbitrator. *Van Waters & Rogers Inc. v. Local Union 70,* 913 F.2d 736, 740-41 (9th Cir.1990).

****5** Although Shearson could have waited for the ruling from the arbitration panel on the question of arbitrability before returning to district court to enforce the injunctions, Shearson chose not to do so. [FN3] The arbitration panel never ruled on Shearson's motion to dismiss or exclude the Stamford Towers and Radisson Plaza matters from arbitration. Following the Director of Arbitration's decision to refer the case to a panel of arbitrators, Shearson withdrew its motion and put the matter before the District Courts that had jurisdiction over the class action settlements. There was nothing improper, nor was any right waived, by Shearson first seeking dismissal of the settled claims in arbitration before seeking relief in the District Court. Thus, we find that Shearson properly preserved its objection to arbitration of the Stamford Towers and Radisson Plaza claims while

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proceeding with the remainder of Greenblatt's claims.

Third, we find Greenblatt's attempts to find support in *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220 (1987) and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614 (1985) to be futile. These cases, which uphold the arbitrability of statutory claims, are inapposite to the case before us.

Fourth, Greenblatt contends that Shearson should be precluded from seeking enforcement of the settlement releases based on the doctrines of estoppel, laches, and waiver. To establish laches Greenblatt must show unreasonable delay by Shearson in pursuing its rights in court and, either acquiescence in the act about which Shearson complains or prejudice to Greenblatt resulting from the delay. *Transworld Airlines, Inc. v. American Coupon Exchange, Inc.,* 913 F.2d 676, 696 (9th Cir.1990).

We find that Shearson did not acquiesce to arbitration of the Stamford Towers or Radisson Plaza claims or waive its right to pursue the issue in court by proceeding in the arbitration process. As we noted above, the arbitration focused on the great bulk of Greenblatt's other claims. Shearson has consistently asserted that the two class action claims are barred by the settlement agreements.

Nor do we find that Shearson unreasonably delayed in pursuing this matter in District Court. Shearson brought this matter to the court's attention several months before beginning the arbitration process and before the arbitration panel made a finding on this issue.

Moreover, we find disingenuous Greenblatt's assertion that she has been prejudiced because she "structured her case and planned her discovery" in reliance on the inclusion of the Stamford Towers and Radisson Plaza claims. We fail to see how Greenblatt would have to "change her arbitration strategy" if she is enjoined from pursuing these claims when these claims relate to only two of seven limited partnership investments, eighty-nine municipal bond transactions, and ninety-three stock trades at issue. Even Greenblatt described the class actions claims as "a relatively small aspect of the overall case...." As the Northern District Court pointed out, "Shearson raised this issue in arbitration in September, 1991, thus putting Greenblatt on notice." Therefore, we find any prejudice to be of Greenblatt's own making.

****6** Finally, Greenblatt argues that, even if Shearson is not precluded from seeking enforcement of the settlement releases in District Court, we should reject Shearson's defense because the settlement notices failed to adequately inform Greenblatt of the consequences of not opting out of the class actions and were thus constitutionally defective. We reject this argument as well.

Notice for the approval of a class settlement by class members must only fairly apprise them of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1177 (9th Cir.1977). Thus, notice may contain only a "very vague description" of the proposed settlement. *Mendoza v. United States,* 623 F.2d 1338, 1351 (9th Cir.1980), *cert. denied,* 450 U.S. 912 (1981).

We find that the notices were constitutionally adequate and thus satisfied due process. Both District Courts approved the notices, which listed the causes of action for each suit. The notices also stated that all claims against Shearson and its employees relating to the two partnership investments would be released. Further, the notice informed the class members of their right to opt out, seek further advice from counsel, or further review the terms of the settlement agreements or any other pleadings. Finally, the notices provided the date and time of the settlement hearings for each case.

Greenblatt argues that she did not fully understand the import of the notices because she is an unsophisticated investor. We must reject this contention as well. The record indicates that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Greenblatt has an extensive history of investment involvement and the financial resources to obtain professional advice on these matters. In addition, Greenblatt was aware of her claims against Shearson at least by the time she received the Stamford Towers notice because she had already retained counsel and filed her arbitration dispute against Shearson one month earlier. Yet Greenblatt did not opt out of the Stamford suit, examine the class action pleadings or object to the settlement; rather, she cashed her settlement checks.

In sum, on the facts before us we find that neither District Court erred in permanently enjoining and barring Greenblatt from further arbitrating any claims against Shearson or its employees which are based on or related to investments in either the Stamford Towers Limited Partnership or the California Radisson Plaza Partners Limited Partnership. When an individual is properly noticed as a class member, chooses not to opt out of the class, and accepts the settlement payment, she must abide by the complete terms and spirit of the release of claims contained in the judgment.

We AFFIRM.

FN* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3.

FN1. Greenblatt's claimed damages in arbitration of over $17 million resulted from almost 200 different investments, including the two limited partnerships at issue here. Damages from her investment in Stamford Towers "are only a relatively small aspect of the overall case against Shearson presented in Arbitration." (SER at 17.)

FN2. "Settled Claims" are defined in the Stamford Towers class action judgment as:
any and all existing causes of action or claims, known or unknown, that have been or could have been asserted by Plaintiffs against Defendants, based upon or related to investments in the Units of limited partnership interest in Stamford Towers Limited Partnership ... including claims for breach of fiduciary duty, negligence, breach of contract, or any other alleged claim arising in connection with the development, construction and operation of the Partnership and its assets or as a result of, among other things, defendant Shearson Lehman Hutton, Inc.'s services as a selling agent in connection with the offer and sale of the Units of limited partnership interest in Stamford Towers Limited Partnership as set forth in the Prospectuses.
The Radisson Plaza class action judgment defines Settled Claims in a substantially similar manner.

FN3. We also disagree with Greenblatt's characterization of Shearson's return to the District Court for enforcement of the settlement as "forum shopping." Shearson returned to District Court before receiving any ruling in arbitration. Shearson was not trying to avoid a loss in arbitration by seeking enforcement of the settlement releases.

36 F.3d 1102 (Table), 1994 WL 463497 (9th Cir.(Cal.)), Unpublished Disposition

**Briefs and Other Related Documents (Back to top)**

• 1993 WL 13129194 (Appellate Brief) Appellant's Reply Brief (May. 11, 1993)Original Image of this Document (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.