**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF RICHARD VEHRING, SURVIVING SON OF VIVIAN A. VEHRING AND TRUSTEE OF THE VIVIAN VEHRING DECEDENT TRUST PRESENTED TO THE NASD**

---

## INTRODUCTION

Richard Vehring, as heir to his mother’s estate and as trustee of the Vivian Vehring Decedent Trust (“Mr. Vehring”), seeks to arbitrate claims that have already been released under the class-action settlement in this case. Furthermore, Mr. Vehring has already received relief for these claims under the class-action settlement in this case. Because the Court has specifically barred the double recovery that Mr. Vehring now

seeks before the NASD, the Court should enjoin arbitration of these claims, which were previously resolved and released pursuant to the terms of the class-action settlement agreement approved and ordered by this Court.

## FACTS

### The Final Judgment and Order Included a Broad Release of Claims Relating to the Deferred Annuity.

Defendants IDS Life Insurance Company, Ameriprise Financial, Inc., formerly known as American Express Financial Corporation, and Ameriprise Financial Services, Inc., formerly known as American Express Financial Advisors, Inc. (collectively "Ameriprise"), [1] submit this Memorandum of Law to the Court in support of this Motion to Enforce Class-Action Settlement as to Claims of Richard Vehring, Surviving Son of Vivian A. Vehring and Trustee of the Vivian Vehring Decedent Trust Presented to the NASD and seek to enforce the terms of a class-action settlement that was approved by this Court in 2001 in a Final Order and Judgment Approving Class Action Settlement and Dismissing Complaint (the "Final Order and Judgment"). (Ex. 1.) Mrs. Vehring was a member of the class who settled their claims and Mr. Vehring, as representative of Mrs. Vehring's estate and trustee of the Trust, is subject to the Final Order and Judgment. Nonetheless, he has submitted a Statement of Claim to the NASD and seeks to arbitrate numerous claims against Ameriprise that are barred by the Final Order and Judgment. (Ex. 2.) The Court retained jurisdiction over the enforcement of the Final Order and

[1] The NASD Statement of Claim at issue in this Motion names these three defendants and an Ameriprise financial advisor, Jason Gerald Knight, as Respondents. (Ex. 2.)

Judgment. Because the Final Order and Judgment bars Mr. Vehring from raising the claims asserted in the Statement of Claim, Ameriprise respectfully requests that the Court enter an Order enforcing the class-action settlement and bar Mr. Vehring from proceeding in arbitration with any and all claims against Ameriprise that were previously released in accordance with the terms of the Final Order and Judgment.

On August 21, 2000, Plaintiffs filed the Complaint in this federal-court action, asserting numerous claims related to the marketing, sale, servicing and administration of certain cash-value insurance policies ("Policies") and deferred annuity contracts ("Annuities") sold and serviced by numerous Defendants, including Ameriprise.[2] (Docket # 1.) Less than a month later, the parties submitted a Stipulation of Settlement with exhibits ("Settlement Agreement") to the Court. (Ex. 3.) On October 2, 2000, the Court conditionally certified the proposed class, and ordered individual and publication notice to all class members. (Ex. 1.) On March 6, 2001, the Court held a Fairness Hearing on the proposed settlement. (*Id*.) On May 15, 2001, the Court entered the Final Order and Judgment, which certified the class, approved the settlement terms proposed by the parties in the Settlement Agreement, and dismissed with prejudice the claims of the class members. (*See id.*)

---

[2] Under the terms of the Settlement Agreement: "'Annuity' or 'Annuities' means one or more fixed or variable deferred annuity contracts, including individual contracts, group contracts and participation interests in group contracts issued by any Defendants in the United States, including its territories and commonwealths, that was In Force at any time during the Class Period." (Ex. 3 § II.8.)

The Final Order and Judgment ordered that "[a]ll Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity [be] permanently barred and enjoined" from commencing any other lawsuit, arbitration, or administrative, regulatory or other proceeding in any jurisdiction relating to any claims released pursuant to the terms of the Settlement Agreement. (*See id.* at ¶ 14.) Furthermore, under the terms of the Final Order and Judgment, the Court "expressly retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment . . . ." (*Id.* at ¶ 15.)

Pursuant to the Final Order and Judgment, all class members who failed to opt out of the class thereby agreed to a broad release wherein they released a wide variety of claims related to the Policies and Annuities that were the subject of the class action.[3] The certified class, the members of which are bound by the broad release in the Settlement Agreement, consists of:

> (A) All persons or entities who, as of the Eligibility Date, have or had . . .
> (ii) an ownership interest in an individual deferred annuity contract . . .

---

[3] The "Releasors," i.e., class members who released their claims pursuant to the Settlement Agreement, released claims

> on behalf of themselves and their respective <u>heirs, executors, administrators,</u> successors, assigns, guardians, attorneys, <u>trustees,</u> qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

(Ex. 3 at § XII.B.4 (emphasis added).). This definition encompasses Mr. Vehring as heir of Mrs. Vehring's estate and trustee of the Vivian Vehring Decedent Trust.

> issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the Class Period . . . .

(*Id.* at ¶ 3.)

The Final Order and Judgment further provides that Plaintiffs and all other members of the certified class agree and acknowledge that they:

> shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part:
>
>> (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or
>>
>> (b) that relate in any way to the Released Conduct.

(*Id.* at ¶ 13(A)(2).)

The "Released Conduct" includes:

> any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with

(i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity;

(ii) the application for or purchase of any Policy or Annuity;

(iii) the suitability of any purchases, sales, or replacements of any Policy or Annuity . . .

* * * *

(vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity;

(vii) the investment choices made with respect to assets held in any Policy or Annuity . . .

* * * *

(x) the costs, commission, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract, or investment;

(xi) the comparison or lack of comparison of any Policy or Annuity to any other product;

(xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity . . . and . . .

* * * *

(xiv) the administration or servicing of any Policy or Annuity after its purchase.

(*Id.* at ¶ 13(B)(2) (reformatted from original).)

**Mr. Vehring Chooses to Receive Relief as a Class Member Under the Final Order and Judgment.**

In June 1999, during the Class Period,[4] Mrs. Vehring purchased a variable annuity from Ameriprise. (Ex. 4.) This deferred annuity contract issued by IDS Life Insurance Company (the "Deferred Annuity") is an Annuity that is subject to the terms of the Settlement Agreement and the Final Order and Judgment. (Ex. 3 at § II.8.) In October 2000, Ameriprise sent Notice of Class Action, Proposed Settlement and Fairness Hearing ("Class Notice") to Mrs. Vehring. (Lake Decl. ¶ 2 & Ex. 5.)

The Class Notice explained the settlement process and clarified that three types of relief were available under the proposed settlement, including the ability to participate in an individualized Claim Review Process in lieu of accepting General Relief under the settlement. (Ex. 5 at § E.) The Class Notice specifically identified certain types of claims that could be submitted to the Claim Review Process. Among the claims that could be submitted to the Claim Review Process were Performance Misrepresentation Claims. The Class Notice explained that Performance Misrepresentation Claims encompassed claims "that a Policy's surrender value would always exceed the amount of premiums paid . . . or . . . that a variable Annuity's account value would, at the time of death, always exceed the purchase payments." (Ex. 5 at § E.2.) In addition, the Class Notice provided that Annuity Age Misrepresentation Claims could be submitted to the Claim Review Process. The Class Notice explained that Annuity Age Misrepresentation

---

[4] "Class Period" is defined as "that period beginning on January 1, 1985 and ending on February 29, 2000, inclusive." (Ex. 3 at § II.26.)

Claims included "claim[s] that the Defendants or their sales representatives misrepresented to you at the time of purchase: . . . (2) the availability of the minimum death benefit guarantee of a variable Annuity, and you were at least 75 years old on the issue date of the Annuity . . . ." (Ex. 5 at § E.7.) Finally, the Class Notice informed class members that other Marketing, Sales, Administration and Servicing Claims could be submitted to the Claim Review Process, including, *inter alia*:

> Any claims that (i) the Defendants or their sales representative made misrepresentations or otherwise misled you in connection with the marketing, sale, administration or servicing of [the] Policy or Annuity; . . . (iii) the administration or servicing of your Policy or Annuity violated the contractual provisions of the Policy or Annuity . . . (v) wrongdoing other than those set forth above in this paragraph occurred and had adverse economic consequence for the Applicant or the Claimant, and such wrongdoing related to the marketing, sale, administration, or servicing of the Policy or Annuity, including the application for or purchase of any Policy or Annuity; the suitability of any Policy or Annuity; . . . the investment choices made with respect to assets held in any Policy or Annuity; the benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; and the provision of financial or investment advice or the preparation of a financial plan insofar as either resulted in the sale, modification or maintenance of any Policy or Annuity.

(Ex. 5 at § E.8.)

Mrs. Vehring did not opt out of the class by the January 29, 2001 deadline set by the Court in its October 2, 2000 Order conditionally certifying the settlement class. (Docket # 14; Lake Decl. ¶ 6.) Mrs. Vehring therefore became a member of the class.[5] (Ex. 1 at ¶ 3.)

---

[5] Mr. Vehring does not dispute Mrs. Vehring's status a Class Member. (Ex. 2 at ¶ 21.)

Sadly, Mrs. Vehring passed away in April 2001. (Ex. 2 at ¶ 4.) In November 2001, Mr. Vehring made a late election on behalf of the Trust to participate in the Claim Review Process under the Settlement Agreement.[6] (Ex. 6.) The claims he submitted to the Claims Review Process are virtually the same claims that he now seeks to submit to the NASD for arbitration. The Specific Claim submitted to the Claim Review Process is as follows:

> [Mrs. Vehring's financial advisor] recommended and sold [Mrs. Vehring] a $450,000 Flexible Portfolio Annuity with the understanding that it would protect my mother's trust and provide the full payment of $450,000 if my mother passed away. He confirmed on several occasions that full payment would be provided upon her death, even if the market conditions had changed. She was eighty-five years old at the time it [was] signed.
>
> After [Mrs. Vehring] passed away, [Ameriprise] would only pay two thirds the $450,000 amount stating that they only pay the full amount for those under seventy-five years of age. Jason was not aware of the seventy-five year limitation, and it was not mentioned on the nine-page application form that [Mrs. and Mr. Vehring] signed.
>
> [Mr. Vehring's] claim is for full restitution of $129,182.66 plus interest for the unpaid earnings. We also request compensation for misrepresentation, lack of full disclosure and unethical practices of American Express.

(*Id.* at 3.) After the Claim Evaluator's review of the claims submitted by Mr. Vehring, the Evaluator awarded relief to the Trust. (Ex. 2 at ¶ 23; Lake Decl. at ¶ 8.) On December 10, 2002, a check in the amount of $6,497.10 was issued to the Vivian Vehring Decedent Trust. (Lake Decl. at ¶ 9.) On December 13, 2002, Mr. Vehring called the Class Administrator regarding the relief received. (Lake Decl. at ¶ 10.) In

---

[6] The Settlement Agreement provides that, for good cause, Class Members can seek to file untimely Election Forms and elect to participate in the Claim Review Process. (Ex. 3

(continued on next page)

March 2003, Mr. Vehring's current counsel, who filed the Statement of Claim with the NASD on his behalf, also called the Class Administrator. (Lake Decl. at ¶ 11.) In April 2003, the Class Administrator sent a reminder to Mr. Vehring that he had not yet cashed the check, and that he had 180 days from the date of its issuance to cash this check. (Lake Decl. at ¶ 12.) Apparently satisfied with the relief he received as part of the class settlement, Mr. Vehring cashed the check on June 5, 2003. (Lake Decl. at ¶ 13.) By failing to opt out of the class and by choosing to actively participate in the Claim Review Process provided for by the Settlement Agreement, Mrs. Vehring, the Trust, and her estate, released all of her Deferred-Annuity-based claims against Ameriprise in accordance with the terms set forth in the Final Judgment and Order.[7]

**Even Though the Claims Are Barred,
Mr. Vehring Files Suit on Some Claims**

Even though the Trust and estate previously released Mrs. Vehring's Deferred Annuity-based claims, on December 7, 2004, Mr. Vehring filed a Complaint in the Superior Court of Arizona in Maricopa County alleging claims that he maintains are not barred by the Final Order and Settlement Agreement. After learning from Ameriprise's counsel that any valid claims he might have would have to be brought in arbitration, Mr. Vehring agreed to dismiss the state-court case. (Ex. 2 at ¶¶ 24-25.) On September 21,

---

(continued from previous page)

at § IV.D.)

[7] The Settlement Agreement bars class members "from seeking review or in any other way challenging in any forum whatsoever, including in a judicial proceeding or an

(continued on next page)

2005, Mr. Vehring filed his instant Statement of Claim before the NASD seeking to arbitrate claims that he asserted were not barred by the Settlement Agreement and the Final Order. (Ex. 2.)[8] In the state-court Complaint and Statement of Claim, Mr. Vehring sought first to litigate and then arbitrate these claims despite candidly admitting that he had previously "filed a claim with the class action representative, alleging, among other things, the substance of the [allegations alleged in the Statement of Claim]" and that the Trust had received an award from the Claim Review Process. (Ex. 2 at ¶ 23.)

The claims alleged in the Statement of Claim are barred by the Settlement Agreement and the Court's Final Order and Judgment. The gravamen of all of Mr. Vehring's claims is that Mrs. Vehring relied on the representations made by her Ameriprise advisor when purchasing the Annuity. (Ex. 2 at ¶¶ 27, 30 & 37.) This is precisely the conduct that was at issue in the claim submitted to the Claims Evaluator and released under the terms of the Final Order and Judgment. (Ex. 1 at ¶ 13.B.2; Ex. 6 at 3.)

After determining that Mrs. Vehring had been a class member and that Mr. Vehring had submitted a claim to the Claim Review Process and released claims in this class action, Ameriprise's counsel informed Mr. Vehring's counsel that the claims he sought to raise in the Statement of Claim were barred by the Final Order and Judgment. Nevertheless, Mr. Vehring insisted on proceeding with the arbitration. Pursuant to an

---

(continued from previous page)

arbitration, a decision or award of relief [under the Claim Review Process]." (Ex. 3 at § VII.C.4.)

agreement between counsel, Ameriprise's response to the Statement of Claim is due on December 21, 2005. Accordingly, pursuant to NASD Code of Arbitration Procedure Rule 10301(d)(2), Ameriprise is contemporaneously filing with the NASD a motion to stay the arbitration proceedings pending resolution of this Motion.

## ARGUMENT

### I. The Court Should Enjoin the Arbitration of the Claims Raised in the Statement of Claim Because They Have Already Been Released Under the Final Order and Judgment.

#### A. The Claims in the Statement of Claim Were Released Under the Final Order and Judgment.

Although not formally delineated in such terms, the claims raised in the Statement of Claim relate to alleged oral misrepresentations made by Mrs. Vehring's Ameriprise financial advisor at the time of the sale and purchase of the Deferred Annuity. The relitigation of these misrepresentation-based claims before the NASD is expressly barred by the terms of the Release set forth in the Settlement Agreement and the Final Order and Judgment. (Ex.1 at ¶ 13.) Because these claims were already released under the Settlement Agreement and the Final Order and Judgment, Mr. Vehring may not seek to re-litigate them now.

The gravamen of Mr. Vehring's claims is that Mrs. Vehring's Ameriprise financial advisor made misrepresentations to her that induced her to purchase the Deferred Annuity. (*See* Ex. 2 at ¶ 14 (claiming that the advisor "told [Mrs. Vehring and Mr.

---

(continued from previous page)

[8] The Statement of Claim seeks, *inter alia*, compensatory damages, punitive damages,

(continued on next page)

Vehring] that, upon [Mrs. Vehring's] death, her estate would receive no less than the purchase price" of the Deferred Annuity); ¶ 16 ("[Mrs. Vehring] signed the contract for her annuity relying on the truthfulness of [the advisor's] representation and upon the prior actions of [Ameriprise]."); ¶ 27 ("[Mrs. Vehring] relied upon the assurance by [the advisor] . . . that the death benefit would provide a full reimbursement if she died before the 10 year term of the contract was completed."); ¶ 33 ("[Ameriprise] used, and intended that [Mrs. Vehring] rely upon misleading and false information and concealed and omitted material facts in connection with the sale of annuity contracts, resulting in loss of property or assets."); ¶ 38(e) ("[Ameriprise's] financial 'advisors' fail to disclose the inherent and actual conflicts of interest in [the provision of financial plans], as well as the biased nature of the 'advice' for which clients are paying . . . .") & ¶ 38(h) ("[Ameriprise] used existing customers' long standing relationship improperly 'mining' information about these customers and employing past customer confidence and trust to sell policies whose value was either intentionally or recklessly misrepresented.").) The factual predicate for each of Mr. Vehring's claims are these alleged misrepresentations relating to the Deferred Annuity. Hence, the arbitration of these claims is barred under the Release accepted by class members in this action.

The express terms of the Release in the Final Order and Judgment and the Settlement Agreement bar Mr. Vehring from raising any claims predicated upon an

---

(continued from previous page)

treble damages, attorneys' fees, costs and interest. (Ex. 2 at ¶¶ 29, 36 & 38.)

advisor's alleged misrepresentations related to the Deferred Annuity in any arbitration before the NASD. Under the Release, class members have agreed not to assert "any Claims or Causes of Actions . . . that are based upon, related to, or connected with, directly or indirectly, in whole or in part: . . . (b) that relate <u>in any way</u> to the Released Conduct." (Ex. 1 at ¶ 13.A & B (emphasis added).) Mr. Vehring's misrepresentation-based claims are related to the Released Conduct under the Settlement Agreement, which encompasses

> any and all . . . <u>representations, omissions, suggestions, or communications</u> that are related to or connected in any way with the . . . marketing, sale . . . or performance of the Policies . . . including, without limitation . . . <u>representations, omissions, suggestions or communications</u> in connection with (i) the explanation, description, marketing, sale, solicitation, illustration . . . of any . . . Annuity; (ii) the application for or <u>purchase of</u> any . . . Annuity; (iii) the suitability of any . . . <u>sales</u> . . . of any . . . Annuity; . . . (x) the . . . terms, or benefits or disadvantages of any . . . Annuity compared to any other life insurance policy, annuity contract or investment; . . . (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any . . . Annuity . . . .

(Ex. 1 at ¶ 13.B.2 (emphasis added).) The Deferred-Annuity claims raised in the Statement of Claim fall squarely within the scope of the Released Conduct as defined by the Final Order and Judgment. The broad language of the Final Order and Judgment's Release precludes Mr. Vehring as representative of Mrs. Vehring, who was a class member, from arbitrating these misrepresentation-based claims before the NASD.

### B. The Claims Are Not Preserved Under the Release.

Mr. Vehring asserts that the claims raised in the Statement of Claim were not released pursuant to the Release. It is true that the Release contains a "savings" clause that provides that

> Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or an In Force Annuity issued by any of the Defendants; . . . (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity.

(Ex.1 at ¶ 13A.3.). Although Mr. Vehring alleges that his claims fall within the scope of this savings clause, they do not. In fact, the claims raised in the Statement of Claim have not been preserved under the Release.

#### 1. Mr. Vehring's Breach-of-Contract Claim Does Not Arise Under the Express Written Terms of the Deferred Annuity.

Mr. Vehring's breach of contract claim is barred. The savings clause simply preserves "claims for contractual benefits that will become payable in the future pursuant to the express <u>written</u> terms of an . . . In Force Annuity." (Ex. 1 at ¶ 13.A.3(i) (emphasis added).) Under the express written terms of the Deferred Annuity, Mrs. Vehring was not entitled to the return of the full purchase price upon her death. Because Mrs. Vehring was over 75 when she died, the Death Benefit payable under the Deferred Annuity was the contract value at the time of her death and not the sum of the purchase payments. (Ex. 4 at 6.) Mr. Vehring does not dispute these <u>written</u> terms of the Deferred Annuity and has made no allegation that Ameriprise failed to pay the Death Benefit in accordance with the express written terms of the contract. Instead, Mr. Vehring alleges that Mrs.

Vehring relied on assurances from her financial advisor that the Death Benefit would provide a full reimbursement of the purchase payments if she died during the term of the Annuity. (Ex. 2 at ¶ 27.) These assurances are directly contrary to the written terms of the Deferred Annuity. (Ex. 4 at 6.) Breach-of-contract claims such as those presented in the Statement of Claim, which are based upon alleged oral contract provisions, are therefore barred. Indeed, claims based on oral representations allegedly made at the time of sale have already been released under the Settlement Agreement and Final Order and Judgment. Here, the parties could have excepted oral-contract claims from the scope of the Release, but they expressly chose to limit the scope of the savings clause to claims based upon breaches of the express written terms of the Annuities or Policies subject to the class action. Hence, Mr. Vehring's breach-of-contract claim is barred.

Furthermore, Mr. Vehring's breach-of-contract claim, predicated as it is upon the claim that Mrs. Vehring relied upon the assurance of her financial advisor that the death benefit would provide a full reimbursement of purchase payments, is simply an oral-misrepresentation claim. This misrepresentation claim has been affirmatively released under the Release. (Ex. 1 at ¶¶ 13.A.1-.2 & B.2.)

Mr. Vehring's breach-of-contract claim does not fit within the scope of the Release's savings clause but, rather, falls squarely within the scope of the Release. Accordingly, Mr. Vehring has released this claim and may not seek to arbitrate it under the terms of the Settlement Agreement and the Final Order and Judgment.

**2. Mr. Vehring's Theft-by-Conversion Claim is Based Upon Alleged Oral Misrepresentations and Has Been Released Under the Settlement Agreement and the Final Order and Judgment.**

Mr. Vehring also asserts oral-misrepresentation claims (that have been released), which he denominates as "theft-by-conversion" claims.[9] As in the breach-of-contract claim, the factual predicate for the "theft-by-conversion" claims are alleged representations made to Mrs. Vehring prior to the purchase of the Deferred Annuity. (Ex. 2 at ¶¶ 30 & 33 ("[Ameriprise] used, and intended [Mrs. Vehring] rely upon misleading and false information and concealed and omitted material facts in connection with the sale of annuity contract, resulting in loss of property or assets.").) These theft-by-conversion claims are "based upon, related to, or connected with" the Released Conduct as defined in the Release; hence, they are barred. (Ex. 1 ¶ 13.A.1-.2 & .B.2.) Mr. Vehring is not permitted to proceed with the arbitration of claims that have been released and should be enjoined therefrom.

---

[9] To the extent that Mr. Vehring seeks pecuniary relief under intentional-tort theories for what is essentially a breach-of-contract claim, such relief is barred by the economic loss doctrine. "Under the economic loss rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort and is limited to recovery under contract law." *Wojtunik v. Kealy*, 394 F. Supp.2d 1149, 1171 (D. Ariz. 2005); *see also Apollo Group v. Avnet, Inc.*, 58 F.3d 481 (9th Cir. 1995) (interpreting Arizona law and holding that claims for negligent misrepresentation may be barred by the economic loss doctrine).

### 3. Mr. Vehring's Racketeering Claim Is Predicated on Misrepresentations That Are Encompassed by the Settlement Agreement and the Final Order and Judgment.

Mr. Vehring's "racketeering" claims are predicated upon the alleged theft-by-conversion claims, suffer from the same defects outlined above, and are therefore barred by the Release. (Ex. 2 at ¶ 38(i).) Furthermore, to the extent that these "racketeering" claims are based upon purchases of Annuities and Policies as recommended by the financial plans prepared by Ameriprise advisors, these claims are expressly barred by the Release. (Ex. 1 at ¶ 13.B.2(xii); Ex. 2 at ¶¶ 38(e), (f) & (h).) Because these claims are expressly released, Mr. Vehring may not proceed with the arbitration of these claims before the NASD and should be enjoined therefrom.

### C. Mrs. Vehring Received Notice of the Class Action, Chose Not to Opt Out, and Affirmatively Sought Relief Under the Settlement Agreement.

By receiving notice of the pendency of the class action, failing to opt out of the class, and affirmatively seeking relief from the Claim Evaluator pursuant to the terms of the Settlement Agreement and the Final Judgment and Order, Mrs. Vehring became a class member, and her estate is bound by all of the provisions of the Settlement Agreement and the Final Order and Judgment. *See, e.g., Berardinelli v. Gen. Am. Life Ins. Co. (In re Gen. Am. Life Ins. Co. Sales Practices Litig.*), 357 F.3d 800, 804-05 (8th Cir. 2004) (holding that a class member who receives proper notice of a proposed class-action settlement and fails to opt out of such a settlement is bound by the terms thereof); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993) ("As a class

member who chose not to opt out after notice of the terms of the settlement, appellant is bound by the Order and Final Judgment . . . and must abide by its express terms.”).

Mrs. Vehring received proper notice of the *Benacquisto* class-action settlement, but she chose not to opt out of the class. (Lake Decl. at ¶¶ 2-6.) The Class Notice advised her, among other things, that she could contact a toll-free hotline in order to receive further information about the class settlement. (Ex. 5 at § N.) Mrs. Vehring was free to educate herself about the class action and to explore any questions that she had about it. (*See id.*) She did not opt out of the class; hence, she is bound by the class-settlement terms. (Ex. 1 at ¶ 12 (“The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, and representatives . . . .”).)

Furthermore, it is not inequitable or unjust to bind Mr. Vehring to the Release and bar him from proceeding with the arbitration of claims that have already been released. It is undisputed that Mr. Vehring, as heir to his mother’s estate and trustee of the Trust, raised these same claims and affirmatively sought and received relief pursuant to the Claim Review Process under the Settlement Agreement. (Ex. 6 at 3.) In light of this active participation in the Claim Review Process, it is disingenuous for Mr. Vehring to seek further relief <u>for the same injuries</u> before the NASD. (Ex. 2 at ¶ 23 (acknowledging that the claim submitted to the class action representative involved “the substance of [the allegations set forth in the Statement of Claim]”); Ex. 6 at 3 (delineating claims submitted to Claim Review Process).) This Court’s Final Order and Judgment expressly bars such

an attempt to take a second bite of the apple. (Ex. 1 at ¶ 14 (permanently barring and enjoining Class Members from "filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration . . . based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct . . . as to that Policy or Annuity").) As a matter of law, Mr. Vehring may not proceed with the arbitration of these claims. *See Mosberg v. Nat'l Prop. Analyst, Inc.*, 630 N.Y.S.2d 50, 52 (N.Y. App. Div. 1995) (holding that active participation in class-action settlement by submitting a proof of claim and agreeing to release barred later litigation by class member seeking to enforce released rights). Mr. Vehring cannot seek to relitigate these released claims in arbitration: allowing him to do so would let him "'eat his cake and have it too.'" *Id.*

### D. As a Class Member, Mr. Vehring Is Bound by the Contractual Terms of the Settlement Agreement Adopted by the Final Judgment and Order.

As a class member who received value for releasing her claims, Mrs. Vehring "contractually agree[d] and acknowledge[d] that . . . [she would] not . . . initiate, participate in, maintain, maintain a right to or assert against [Ameriprise] . . . any Claim[] or Cause[] of Action . . . that [was] <u>based upon, related to, or connected with, directly or indirectly, in whole or in part</u> . . . (b) that relate[s] <u>in any way</u> to the Released Conduct." (Ex. 1 at ¶ 13.A.2 (emphasis added).) Mr. Vehring may not avoid these contractual obligations under the Settlement Agreement by seeking to arbitrate claims based upon alleged oral misrepresentations. Preclusion of these claims was an "integral part of the

settlement bargain" entered into by the parties to the class action, and "this Court cannot now modify the terms of that bargain at the insistence of one class member." *Thompson*, 992 F.2d at 191 n.5.

Mrs. Vehring's status as a class member entitled her to the benefits of class membership, and, indeed, Mr. Vehring, as her representative, actively participated in the Claim Review Process and ultimately received relief from that process in the form of a payment of $6,497.10. (Ex. 2 at ¶ 23.) Mr. Vehring accepted the benefits of class membership on Mrs. Vehring's behalf and has also agreed to any concomitant obligations imposed by class-member status, including releasing the right to arbitrate variable-annuity based claims against Ameriprise. *See In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51 (7th Cir. 1994) ("By electing not to opt out of the class, [claimant] received the benefits and accepted the detriments of the settlement."); *Mosberg*, 630 N.Y.S.2d at 52 (recognizing that by not opting out of a class-action settlement and by "receiving the fruits of the settlement" a class member "is bound by its broad terms" including the release of certain additional claims). As a class member, Mrs. Vehring, and her estate, received both the benefits and the detriments of the settlement. Any injury that she suffered has already been remedied by the benefit that was received by virtue of her status a class member (i.e., the payment received pursuant Claim Review Process). Permitting Mr. Vehring to proceed with the arbitration of his Statement of Claim would allow him to seek double recovery for the same injury. *See Mosberg*, 630 N.Y.S.2d at 52. Under the circumstances of this case, Mr. Vehring cannot now be heard to raise claims that have already been released.

## II. The Final Order and Judgment Authorizes this Court to Enjoin Mr. Vehring's NASD Proceeding.

### A. This Court has Continuing Jurisdiction in this Matter.

The Final Order and Judgment makes clear that this Court has retained continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

> (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);
>
> (b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and
>
> (c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

(Ex. 1 at ¶ 19(a)-(c).) Thus, the terms of the Final Order and Judgment specifically authorize this Court to enter an Order enjoining Mr. Vehring from pursuing released misrepresentation-based claims before the NASD. Entering such an Order is a proper method whereby the Court can ensure continued adherence to the terms of its final orders, including orders incorporating the terms of class-action settlement agreements. *See Thompson*, 992 F.2d at 189 ("It is clear that the district court has the authority to issue an injunction enforcing the Final Judgment of Dismissal and Order which embody

the terms of the settlement agreement.") (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992) ("District courts have an inherent authority to enforce their injunctions.")); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

The Eighth Circuit Court of Appeals has repeatedly recognized the propriety of a District Court issuing an injunction in order to enforce a final judgment dismissing claims settled pursuant to a class-action settlement agreement. A District Court has the authority to issue an injunction enforcing a final judgment and order that embodies the terms of a class-action settlement agreement and bar a class member from raising released claims in subsequent litigation. *Thompson*, 992 F.2d at 190 ("[U]pon determining that the second proceeding was barred by the terms of the Final Judgment . . . the district court acted within its authority to enjoin appellant pursuant to those terms."); *see also Berardinelli*, 357 F.3d at 803 (upholding District Court's decision to enjoin subsequent state-court proceeding brought by a class member who had released a broad range of claims under a class-action settlement agreement). Furthermore, this power to enjoin subsequent claims is not limited to attempts to raise released claims in litigation. If a release, such as that contained in the Final Order and Judgment, releases all claims, including those that could be raised in arbitration, it should be enforced pursuant to its terms: "[E]ven when arbitration is involved, federal 'courts should not have to stand by while parties re-assert claims that have already been resolved.'" *Ewart v. Y & A Group (In re Y & A Group Sec. Litig.)*, 38 F.3d 380, 382 (8th Cir. 1994) (quoting *Kelly v. Merrill Lynch, Pierce, Fenner*

*& Smith*, 985 F.2d 1067, 1069 (11th Cir. 1993)).[10] District Courts "have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *Ewart*, 38 F.3d at 382; *see also In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51-52 (7th Cir. 1994) (affirming District Court's order enjoining class member from arbitrating claims that were previously released pursuant to terms of a class-action settlement agreement). Because Mr. Vehring seeks to relitigate claims for which he received relief under the Claim Review Process and that have already been released pursuant to the terms of the Settlement Agreement and the Final Order and Judgment, the Court should enjoin him from proceeding with his arbitration.

**B. Proceeding with the Arbitration of Released Claims Violates a Prior Order of this Court.**

The bar precluding Mr. Vehring from arbitrating released claims goes beyond a simple contractual agreement between the parties to this litigation; this Court has already decreed that Mrs. Vehring's estate cannot proceed with these claims in arbitration. The Court, in the Final Order and Judgment, enjoined class members from proceeding in such a fashion:

> All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined

---

[10] In *Ewart*, the Eighth Circuit, upheld a District Court's decision to enjoin a pending NASD arbitration, even after the Respondent had appeared in the arbitration, and moved, before the arbitration panel, to dismiss the claims the Claimant sought to arbitrate. *See Ewart*, 38 F.3d 380, 381 (8th Cir. 1994). Here, Ameriprise submits this Motion prior to submitting to in the arbitration that Mr. Vehring seeks to begin. As noted above, Ameriprise has moved to stay the arbitration under Rule 10301(d)(2) of the NASD Code of Arbitration Procedure pending the Court's determination on the instant Motion.

> from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in . . . or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Released Conduct . . . as to that Policy or Annuity.

(Ex. 1 at ¶ 14 (emphasis added).) Proceeding with the arbitration directly violates the Court's Final Order and Judgment. *Cf. Ewart*, 38 F.3d at 384-85 (Richard S. Arnold concurring) (recognizing that institution of arbitration after entry of order that approved class-action settlement and barred future claims encompassed therein violated the District Court's injunction, and noting that "[a]mong other things, violation of an injunction is . . . contempt of court, and the Federal Arbitration Act should not be construed to divest courts of their traditional powers to punish for contempt").

The terms of the Final Order and Judgment are clear: by not opting out of the class and by affirmatively seeking relief through the Claim Review Process, Mrs. Vehring's estate has released all of her claims related to alleged oral representations related to the Deferred Annuity and agreed to forego the right to arbitrate these claims. (Ex. 1 at ¶ 13.) Indeed, the Court has ordered that she forego those claims. (*Id.* at ¶ 14.) Therefore, the Court should enjoin Mr. Vehring from proceeding with any arbitration of claims relating in any way to any representations allegedly made to Mrs. Vehring prior to the sale of the Deferred Annuity because these claims are expressly barred by the Release. (*See id.* at ¶ 13.B.2 (" 'Released Conduct' means any and all . . . representations, omissions, suggestions, or communications that are related to or connected in any way with the . . . marketing, sale, administration, . . . or performance of . . . Annuities, including without limitation, acts, representations, omissions, suggestions or communications in connection

within (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any . . . Annuity . . . .") (emphasis added).) Arbitration of the claims set forth in the Statement of Claim, which are all directly predicated upon claimed misrepresentations, would be in direct contravention to this Court's prior orders.

### C. Permitting Mr. Vehring to Proceed with the Arbitration Undermines the Finality of Class-Action Settlements.

Permitting Mr. Vehring to pursue claims that have already been settled and released more than four years after this Court's entry of the Final Order and Judgment undermines the finality of class-action settlements. This would eviscerate the binding Settlement Agreement into which Mrs. Vehring voluntarily entered and under which Mr. Vehring actively sought, and received, relief. Accordingly, authorizing the continued arbitration of any Deferred-Annuity-based claims would be contrary to the strong public policy that supports class-action settlements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3d Cir. 2002) (quoting *In re Prudential Ins. Co. Sales Practices Litig.: Lowe*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actions "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large, multi district class action")). As recognized by the Eighth Circuit,

> [W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been

> asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.

*Thompson*, 992 F.2d at 191 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)). By enjoining Mr. Vehring from proceeding with the arbitration of claims related to his mother's Deferred Annuity and the alleged misrepresentations made with respect to that annuity, the Court ensures not only that its Final Orders are respected, but that the "paramount policy" supporting settlement is upheld.

## CONCLUSION

For all of the reasons set forth above, Ameriprise respectfully requests that the Court enjoin Mr. Vehring from proceeding with any arbitration of claims that are barred by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: December 21, 2005

FAEGRE & BENSON LLP

s/Fiona B. Ruthven

Michael F. Cockson (#280549)
Fiona B. Ruthven (#333761)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone No. (612) 766-7000
Facsimile No. (612) 766-1600

**ATTORNEYS FOR DEFENDANTS**

M2:20761782.09