represent them individually for any reason, including, but not limited to, counsel retained in connection with the Fairness Hearing or the Claim Review Process.

2. Release. Each Class Notice shall have, as an appendix, a copy of the Release in a form substantially similar to the Release included as part of the attached Exhibit B.

3. Statement of Eligibility. Each Class Notice Package shall include an individual Statement of Eligibility in a form substantially similar to the one included as part of the attached Exhibit B.

4. Benefit Voucher. Each Class Notice Package shall include a Benefit Voucher for each applicable Policy and Annuity. The Benefit Voucher will be in a form substantially similar to the one included as part of the attached Exhibit B, and will set forth the estimated amount of ADB that will be available, as well as the terms of the ADB.

5. Election Form. Each Class Notice Package shall include an Election Form for each applicable Policy and Annuity, except as otherwise provided in this paragraph. Where applicable, the Election Form shall state clearly that (i) the Internal Replacement Relief will be provided only if the Class Member electing Internal Replacement Relief is eligible as set forth herein, the consequences of electing this form of relief if the Class Member is ineligible for it, and that merely submitting an Election Form electing Internal Replacement Relief will not ensure that any relief will be provided; (ii) the Claim Review Process provides for relief only if the Class Member has a valid Claim, and that merely submitting an Election Form electing the Claim Review Process will not ensure that any relief will be provided; and (iii) Class Members who choose the Claim Review Process instead of General Relief or Internal Replacement Relief bear the risk that they may be awarded no relief at all. Persons or entities who hold or held a participation interest in a Group Qualified Annuity will not receive the Election Form with respect

to that participation interest. The Election Form, as agreed upon by the Parties, will be in a form substantially similar to the one included as part of the attached Exhibit B.

6. Designation Form. Each Class Notice Package shall include a Designation Form for each applicable Policy and Annuity. The Designation Form, as agreed upon by the Parties, will be in a form substantially similar to the one included as part of Exhibit B.

7. Fact Sheet For Qualified Plans. Class Notice Packages sent to Qualified Plan Representatives shall include a Fact Sheet for Qualified Plans in a form substantially similar to the one included as part of the attached Exhibit B.

8. Plan Participant Information Statement. Class Notice Packages sent to persons or entities who hold or held a participation interest in a Group Qualified Annuity shall include a Plan Participant Information Statement substantially similar to the one included in the attached Exhibit B.

9. Remailing and Additional Notice. Defendants shall, at their cost, (i) remail any Class Notice Package returned by the United States Postal Service with a forwarding address that is received by Defendants; (ii) attempt to find an address for any returned Class Notice Package that does not include a forwarding address, or retain an address research firm for this purpose; and (iii) if an address research firm is retained, provide a copy of any returned notice to the address research firm as soon as practicable following receipt; provided, however, that Defendants shall not be obligated to duplicate the efforts of an address research firm that undertakes a search for the Class Member's address prior to the initial mailing. The Hearing Order shall provide that, except as provided in the next sentence, (a) any retained address research firm shall provide to Defendants in connection with each returned notice, as soon as is practicable, either an updated address or a statement that, following due research, it has been

unable to obtain an updated address; and (b) Defendants shall remail the notice to any Class Member for whom the address research firm provides an updated address. Defendants shall not be required to remail the Class Notice Package to any Class Member whose name and address is reviewed for accuracy and correction by an address research firm prior to the original mailing of the Class Notice Package, except that they shall in any event comply with subparagraph (i), above.

C. Publication Notice

No later than 90 days before the Fairness Hearing, Defendants shall publish the Publication Notice, in a form substantially similar to the attached Exhibit C, once in the national editions of *The New York Times* and *The Wall Street Journal*, in *USA Today*, and the *Star-Tribune* (Minneapolis), and once, to the extent it is not duplicative of the above-listed publications, in the newspaper with the highest circulation in each of the 50 states and the District of Columbia. Defendants shall pay the costs associated with the Publication Notice. No later than 90 days before the Fairness Hearing, Defendants and Co-Class Counsel each shall, at their own expense, place the Publication Notice on their Internet websites: http://www.americanexpress.com, http://www.milberg.com, and http://www.locklaw.com.

D. Post-Settlement Mailing

Beginning on the Implementation Date (or earlier, at the Parties' discretion), Defendants shall, at their cost, send a Post-Settlement Mailing to each Class Member who timely elected the Claim Review Process.

1. The Post-Settlement Mailing shall instruct that a Class Member who wishes to submit a Claim must complete the enclosed Claim Form and return it to the specified address,

so that it is postmarked no later than 60 days after the date on which the Claim Form was mailed to the Class Member.

2. The Post-Settlement Mailing shall state that, for each Claim, the Claimant must submit (i) copies of all documents in the Claimant's possession or control related to the sale of the Policy or Annuity; (ii) copies of all documents in the Claimant's possession or control relating to his or her Policy, Annuity and Claim; (iii) the properly completed Claim Form; (iv) any other affidavits, documents or materials the Claimant wishes to submit; and (v) with respect to any Claims relating to the replacement of a Policy or Annuity, copies of all documents in the Claimant's possession or control relating to the life insurance policy or annuity contract that was replaced by the Policy or Annuity.

3. The Post-Settlement Mailing shall further state that a Claimant's failure, absent reasonable justification, to provide a completed, signed Claim Form and all relevant documents in his or her possession, custody or control may result in default or an adverse result in the Claim Review Process.

4. In addition, the Post-Settlement Mailing shall state that Class Members may choose not to submit a Claim Form and that, if they do not timely submit a Claim Form, they will automatically receive the General Relief for which they would have been eligible had they not elected the Claim Review Process on the Election Form, but they will no longer be eligible for the Claim Review Process.

E. <u>Post-Mailing Reminder</u>

Thirty days prior to the deadline to submit a completed Claim Form, Defendants shall, at their own expense, send a letter or postcard to each Class Member who timely elected the

Claim Review Process, reminding the Class Member of the deadline to submit completed Claim Forms.

F. Retention of Administrator

Upon consultation and approval of Co-Class Counsel, Defendants shall, at their cost, retain one or more Administrators to assist them in performing their obligations under this Agreement. The Parties anticipate that the Administrator will be Rust Consulting of Minneapolis and Faribault, Minnesota.

1. The Administrator(s) may assist Defendants with various administrative tasks, including, without limitation; (i) mailing or arranging for the mailing of the Class Notice to Class Members; (ii) arranging for publication of the Publication Notice; (iii) handling returned mail not delivered to Class Members; (iv) attempting to obtain, where necessary, updated address information for any Class Notices; (v) making any additional mailings required under the terms of this Agreement; (vi) arranging for and staffing a toll-free telephone number to provide pre-approved answers to questions from Class Members about the proposed settlement; (vii) answering written inquiries from Class Members and/or forwarding such inquiries to Co-Class Counsel or their designee; (viii) receiving and maintaining on behalf of the Courts any Class Member correspondence regarding requests for exclusion from the settlement; (ix) handling Election Forms and Designation Forms returned by Class Members in response to the Class Notice; (x) mailing or arranging for the mailing of the Post-Settlement Mailing and the Post-Mailing Reminder to Class Members who have timely elected the Claim Review Process; (xi) formulating and maintaining a database of all responses from Class Members; and (xii) otherwise assisting Defendants with administration of the settlement. Defendants shall pay the reasonable fees and expenses of the Administrator(s), as well as any other fees and expenses

incurred in performing all of the tasks described in this section. Co-Class Counsel and/or their designee shall be entitled to observe and monitor the performance of the Administrator.

2. The contract between Defendants and the Administrator shall obligate the Administrator to abide by the following performance standards:

a. The Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and neutrally describe, the provisions of this Agreement in communications with Class Members;

b. The Administrator shall provide prompt, accurate and neutral responses to inquiries from Co-Class Counsel or their designee, Defendants and/or Defendants' Counsel;

c. If, in the course of any communication with a Class Member, the Class Member requests that the Administrator and/or its agent or employee refer the communication to Defendants, or any of them, or Co-Class Counsel, then the Administrator and/or its agent or employee shall promptly fulfill such request; and

d. If, in the course of any communication with a Class Member, an agent or employee of the Administrator reasonably concludes that the Class Member is not satisfied with the information and/or assistance provided, then the agent or employee shall promptly refer the Class Member's communication to a supervisor on duty, a representative of Defendants, and Co-Class Counsel or their designee.

3. If the Administrator makes a material misrepresentation to, or fraudulently conceals requested material information from, Co-Class Counsel or Defendants' Counsel, then the Party to whom the misrepresentation is made (or, in the case of a concealment, the requestor of the information) shall have the right to demand that the Administrator immediately be replaced. If

the Administrator fails to perform adequately on behalf of Defendants or the Class, the Parties can agree to remove or replace the Administrator. All disputes regarding the retention or dismissal of the Administrator shall be resolved by the Courts.

G. Toll-Free Telephone Number for Settlement Information

Subject to the provisions of subsection F, above, the Administrator shall establish a telephone bank with a toll-free telephone number(s) for the sole purpose of responding to inquiries from Class Members about the Actions or the proposed settlement. The telephone bank will be staffed with live operators on weekdays, excluding holidays, during the hours of 7 a.m. to 7 p.m., Central Time, beginning the next business day after the Class Notice Package is first mailed to Class Members, as provided in section IX.B, above. The Administrator shall direct all callers with general product questions, product status requests, or complaints unrelated to the settlement or the Actions to call Defendants' toll-free number(s).

1. The Administrator, under the supervision of the Parties, shall be responsible for (i) staffing the telephone bank with telephone representatives; (ii) educating the telephone representatives about the background of the Actions, the product concepts relevant to the proposed settlement, and the terms and chronology of the proposed settlement; (iii) training the telephone representatives to answer inquiries; (iv) providing scripts and model questions and answers (prepared by Defendants and approved by Co-Class Counsel) for the telephone representatives to use in answering inquiries; (v) training the telephone representatives to refer Class Member inquiries to Co-Class Counsel or their designee if the Class Member so requests or where otherwise appropriate; (vi) training telephone representatives to refer callers with general product questions, product status requests, or complaints unrelated to the settlement or the Actions to call Defendants' toll-free customer service number; (vii) providing for a translation

service for use by non-English speaking Class Members to communicate with the Administrator when such Class Members call the toll-free number(s) for information regarding the settlement; (viii) providing callers access to a terminal for the hearing-impaired; and (ix) taking any other steps, in consultation with Defendants and Co-Class Counsel, to promote accurate and efficient communications with Class Members, Claimants and other policy and annuity owners.

2. Co-Class Counsel or their designees may monitor and participate in the education and training process for telephone representatives in the following manner:

a. All training and other communications between the Parties and telephone representatives and/or supervisors must be agreed upon by the Parties. Co-Class Counsel or their designee may observe any communications involving either the Administrator or Defendants (or their designee) and the telephone representatives and supervisors of telephone representatives, including any training and instruction. Co-Class Counsel or their designee may participate in all training sessions, speak with telephone representatives and supervisors, and provide additional comment and/or instruction to telephone representatives and/or supervisors as necessary. Defendants may observe any communications between Co-Class Counsel or their designee and the telephone representatives and supervisors. Either Party may request and obtain a pause in any training session or other communication with a telephone representative or supervisor to confer regarding the content of the communication or training.

b. Defendants and Co-Class Counsel or their designees shall agree on all telephone scripts to be used by the telephone representatives, and all training materials and presentations, whether written or oral, provided to telephone representatives. Defendants shall provide Co-Class Counsel with complete drafts of all telephone scripts, written materials or written presentations at least 10 days prior to their use in training. Co-Class Counsel shall

respond to Defendants with comments at least 2 business days prior to the intended use of such documents. Any proposed changes, modifications or additions to the telephone scripts or written training materials by either party must be provided to the other Party with sufficient time to permit meaningful comment prior to use. The Parties shall negotiate in good faith concerning any such changes, modifications or additions to facilitate providing clear, understandable and accurate information to Class Members.

c. In addition, Co-Class Counsel may provide an on-site presence at the telephone bank to monitor telephone representatives' handling of Class Members' telephone inquiries and also to speak directly with any Class Member who requests to speak to Co-Class Counsel. Each representative of Co-Class Counsel who provides such presence shall be fully informed about the terms of this settlement and all other pertinent matters, including the background of these Actions.

d. If, during a Class Member's telephone call to the toll-free number, the telephone representative deviates from the approved script and the monitoring Co-Class Counsel, or their designee, believes that such deviation was inaccurate, confusing or misleading, Co-Class Counsel or their designee may contact the Class Member to address the deviation.

H. <u>Right of Communication with Claimants and Defendants' Customers</u>

1. Subject only to the following conditions, the Parties agree that Defendants retain their right to communicate with and respond to inquiries from their present and former Company customers, including Class Members, orally and/or in writing, and they may do so through any appropriate Producers or others as described below.

2. Defendants' Producers retain the right to respond to inquiries from, and/or communicate with, their present or former customers, including Class Members. However,

Defendants shall (i) instruct their current Producers to refer Class Member inquiries about the settlement to the toll-free number established to respond to such inquiries and not to make recommendations with respect to the settlement; and (ii) instruct their current Producers that, during the period from the Execution Date through the conclusion of the Claim Review Process, they may not take previously existing original documents and/or records from Class Members. Co-Class Counsel may review and comment on advance copies of written communications with Producers about the proposed settlement, and may observe live, taped or broadcast presentations or special training programs directed at the Producers, if any, on the proposed settlement. Co-Class Counsel shall not be allowed to participate in such training or control the content thereof.

3. During the period following the Execution Date and prior to the deadline for submitting Election Forms by individual Class Members, Defendants will continue to process and respond to customer complaints, notwithstanding the fact that certain complaints may originate with Class Members and may concern claims that otherwise could be eligible for relief under the Claim Review Process; provided, however, that, after the last date on which preliminary approval of this Agreement is granted by the Courts, an offer of relief by a Defendant in response to a Class Member's complaint shall be accompanied by a statement, substantially in the form of the attached Exhibit G, advising the Class Member of the proposed settlement and explaining to the Class Member that any relief received by a Class Member prior to election of settlement relief may be offset against any award of relief that may be granted under the Internal Replacement Relief or the Claim Review Process, if elected. Participation in any governmental, administrative or regulatory enforcement proceeding will not affect a person's eligibility to be a Class Member.

4. Mass and/or generalized communications specifically about the proposed settlement directed to all Class Members or a group thereof — whether made by Co-Class

Counsel, Defendants, the Administrator or the Claim Evaluator, and whether by mail, the establishment or encouragement of Internet websites or other Internet communications, telephone scripts, or any other means — shall be made jointly with, or with the approval of, the other Party.

I. Media Communications

The form and content of any initial joint written statement, press release or other media notice to be issued in connection with the proposed settlement on or after the Execution Date shall be mutually agreed upon by the Parties. Any subsequent formal written statements, written press releases or other written media notices to be issued in connection with the proposed settlement shall be exchanged by the Parties sufficiently in advance of public release to provide the other Party with adequate time to prepare its own statement. Co-Class Counsel and Defendants shall ensure that any comments about or descriptions of the proposed settlement or its value or cost in the media or in any other public forum are balanced, fair and accurate.

J. Defendants' Dealings with Producers

Defendants are committed to treating their Producers fairly and will not retaliate or otherwise take adverse action against any Producer solely because of the Producer's cooperation or participation in the Claim Review Process pursuant to this Agreement or the disposition of Claims submitted in the Claim Review Process. Notwithstanding the preceding sentence, however, Defendants have the right and regulatory obligation to train, monitor, supervise and, where necessary, discipline their Producers and to take any remedial or other steps they deem appropriate to protect past, present and future policy owners and annuity owners and Defendants. In taking such steps, Defendants may take account of all relevant facts and circumstances of an individual case, including any facts and circumstances discovered during the Claim Review

Process. This subsection does not create any rights enforceable by Class Members or third parties, including Producers, under this Agreement or otherwise.

K. Co-Class Counsels' Communication with Producers

1. Where necessary, Co-Class Counsel may contact a Producer who is currently employed by or under contract with Defendants, or any of them, and who sold or serviced a Policy or Annuity that is the subject of a Claim, and Defendants shall cooperate in providing the Producer's current address and telephone number; provided, however, that any contact by Co-Class Counsel, or their designee, with any such Producer shall be made jointly with the Defendants.

2. Where necessary, Co-Class Counsel may contact a Producer who is no longer employed by or under contract with Defendants, or any of them, but who sold or serviced a Policy or Annuity that is the subject of a Claim. Where available, Defendants will provide Co-Class Counsel with the Producer's last known address and telephone number; provided, however, that any contact by Co-Class Counsel, or their designee, with any such Producer shall be made jointly with the Defendants.

L. Co-Class Counsels' Administrative Responsibilities

1. Co-Class Counsel shall be responsible for (i) retention of the Claim Evaluator; and (ii) upon receipt of the Claim Files by the Claim Evaluator, the implementation and conduct of the administration of the Claim Review Process. If it becomes necessary to replace the Claim Evaluator because of death, disability or otherwise, Co-Class Counsel shall be responsible for the retention of the replacement Claim Evaluator.

2. In completing the administrative tasks associated with the Claim Review Administration, Co-Class Counsel may, but are not required to, use the services of the

Administrator; provided, however, that the fees and expenses incurred in connection with the use of such services shall be the responsibility of Co-Class Counsel.

3. Defendants and Co-Class Counsel shall have reasonable access to files and/or other materials gathered, generated or utilized by the Claim Evaluator in the Claim Review Process, excluding privileged files or attorney work product; provided, however, that any request for such access shall: (i) be fulfilled at the expense of the party requesting such access; and (ii) not unduly disrupt the Claim Evaluator's administration of the Claim Review Process.

4. Co-Class Counsel and the Claim Evaluator shall promptly inform Defendants of any written complaints made against the Claim Evaluator or any of his or her agents in connection with the Claim Review Administration. Defendants shall not be obligated to take any action with respect to such complaints.

5. The Parties agree that the Claim Review Process shall be used as a forum for the fair resolution of Claims and not for the defamation or disparagement of the character or reputation of Defendants, their present or former employees, Producers, or representatives, Co-Class Counsel, Defendants' Counsel, or the Parties herein.

6. The form and content of the letter notifying Claimants of the relief, if any, awarded in the Claim Review Process shall be substantially as appears as part of the attached Exhibit J.

7. At the conclusion of the Claim Review Process, when all Claim Review relief has been determined, Co-Class Counsel and/or the Claim Evaluator shall provide Defendants with information indicating the Claim Categorization, Claim Designation and the amount of relief, if any, to be awarded on each Claim by Policy or Annuity identification number. In addition, during the Claim Review Process, the Claim Evaluator shall upon request, but in no

event more frequently than every 60 days, provide Defendants and Co-Class Counsel with information concerning the status of the claims to be evaluated.

## X. REQUESTS FOR EXCLUSION

A. Consistent with section IV.C herein, any potential Class Member who wishes to be excluded from the Class with respect to a particular Policy or Annuity must mail a written request for exclusion to the Administrator specifying the applicable Policy or Annuity by its policy or annuity number (and in the case of a participation interest in a Group Qualified Annuity, providing sufficient information to identify the participation interest), to the address provided in the Class Notice, with a postmark no later than 30 days before the Fairness Hearing, or as the Courts otherwise may direct. A list reflecting all requests for exclusion shall be filed with the Courts by Defendants at or before the Fairness Hearing.

B. Any potential Class Member who is not excluded by the filing of a timely written request for exclusion with respect to a particular Policy or Annuity as provided in the preceding subsection and in section IV.C shall be bound with respect to that Policy or Annuity by all subsequent proceedings, orders and judgments in the Actions, even if he or she has pending, or subsequently initiates, litigation, arbitration or any other proceeding against Defendants, or any of them, relating to the claims released in these Actions.

## XI. OBJECTIONS TO SETTLEMENT

A. Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement, to the certification of the class, or to the award of Attorneys' Fees and Expenses, must deliver to Co-Class Counsel and Defendants' Counsel and file with the Courts, with a postmark no later than 30 days before the Fairness Hearing or as the Courts otherwise may

direct, a statement of his or her objection, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Courts' attention and any evidence the Class Member wishes to introduce in support of the objection. Class Members may so object either on their own or through an attorney hired at their own expense.

B. Class Members and their personal attorneys may obtain access, at their own expense, to review the documents the Defendants produced to Co-Class Counsel during the course of discovery in these Actions, and the deposition transcripts (and exhibits thereto) generated in these Actions; provided, however, that they first agree in writing to be bound by the Confidentiality Agreement attached as Exhibit E, as well as all orders, including protective orders, entered and to be entered in these Actions. These discovery documents shall be made available only by appointment during regular business hours at the offices of Lockridge Grindal Nauen, P.L.L.P. at 100 Washington Avenue South, Minneapolis, MN 55041. Co-Class Counsel shall inform Defendants' Counsel promptly of any requests by Class Members or their attorneys or other persons or entities for access to such documents.

C. If a Class Member hires an attorney to represent him or her, the attorney must (i) file a notice of appearance with the Clerks of the Courts no later than 30 days before the Fairness Hearing, or as the Courts otherwise may direct; and (ii) deliver to Co-Class Counsel and Defendants' Counsel with a postmark no later than 30 days before the Fairness Hearing a copy of the same.

D. Any Class Member who files and serves a written objection, as described in section XI.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's own expense, to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement, or to the award of Attorneys' Fees and Expenses. Class

Members or their attorneys intending to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to Co-Class Counsel and Defendants' Counsel and file it with the Courts, with a postmark no later than 30 days before the Fairness Hearing, or as the Courts otherwise may direct.

E. Any Class Member who fails to comply with the provisions of this section shall waive and forfeit any and all rights he or she may have to appear separately, object, and/or appeal, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in these Actions.

## XII. RELEASE AND WAIVER AND ORDER OF DISMISSAL

### A. Release and Waiver

1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releasees (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681), and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).

2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681), and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or

relate to any of the matters described in sections XII.B.2.(i)-(xiii) herein; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in this Agreement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable — notwithstanding that the parties have chosen Minnesota law to govern this Agreement — Plaintiffs and the Class Members hereby agree that these principles (including Cal. Civ. Code Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. Release and Waiver -- Definitions

1. "Claims and Causes of Action" (as used in this section XII) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any

allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held in any

Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

C. Order of Dismissal. The Parties shall seek and obtain from the Courts the Final Order and Judgment (for which, as a condition of settlement, unless waived, the time for appeal has expired without any modifications in the Final Order and Judgment) as further described below in section XIV. The Final Order and Judgment shall, among other things, (i) approve this Settlement Agreement as fair, reasonable and adequate; (ii) dismiss the Actions with prejudice and on the merits; and (iii) set forth the terms of the Release.

## XIII. ATTORNEYS' FEES AND EXPENSES

A. Co-Class Counsel agree to make, and Defendants agree not to oppose, an application for an award of Attorneys' Fees and Expenses in the Actions not to exceed $28 million, which shall be the sole aggregate compensation for all attorneys representing the Class.

B. Subject to the provisions of section XVI.D herein, Defendants shall pay the Court-awarded amount of Attorneys' Fees and Expenses — whatever it may be — from their own funds, and not from any monies set aside pursuant to this Agreement for compensation of Class Members. Lead Counsel, in its sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among all of the counsel who have acted on behalf of the Class herein.

C. If Defendants elect not to exercise a right to terminate the Agreement under section XVI below, Defendants shall pay to Lead Counsel the entire Attorneys' Fees and Expenses awarded by the Courts within 10 days after the last date of entry of the Final Order and Judgment. Lead Counsel shall hold that sum until the Final Settlement Date in a joint signatory fiduciary account, which in turn will be maintained at a major financial institution to be agreed upon between Defendants and Lead Counsel. If the Final Order and Judgment is reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any

manner other than one resulting in an affirmance of the Final Order and Judgment (other than on the issue of attorneys' fees), or if Defendants or Class Counsel properly and timely terminate the Settlement Agreement in accordance with section XVI of this Agreement, then Lead Counsel shall, within 10 days thereafter, return to Defendants the full amount of Attorneys' Fees and Expenses paid by Defendants in connection with the settlement plus the interest earned thereon. If the award of Attorneys' Fees and Expenses is reduced after payment is made, then Lead Counsel shall, within 10 days, return to Defendants the amount by which the Attorneys' Fees and Expenses have been reduced plus interest earned on the returned amount.

D. Defendants' past, present and future parents (including intermediate and ultimate parents), subsidiaries, affiliates, predecessors, successors and assigns, and any of their respective past, present and future officers, directors, employees, advisors, general agents, agents, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, shall not be responsible for paying any attorneys' fees, expenses, costs or disbursements in connection with this settlement, nor will they be liable for any such expense in connection with the Actions. Defendants shall only be liable or obligated to pay attorneys' fees, expenses, costs or disbursements provided for by the Courts, and shall not be obligated to pay or be liable for any other such expense on behalf of any person, either directly or indirectly, in connection with these Actions, this Settlement Agreement, or the proposed settlement.

## XIV. ORDER OF NOTICE, SETTLEMENT HEARING AND ADMINISTRATION

A. The Parties have negotiated, drafted and agreed to the content and form of the following documents: the Guidelines for Determining, Scoring and Awarding Relief in the Claim Review Process (Exhibit A); the Class Notice Package (including the accompanying cover letter,

Notice of Class Action, Proposed Settlement and Fairness Hearing, Release and Waiver, Benefit Voucher, Statement of Eligibility, Election Form, Designation Form, Fact Sheet for Qualified Plans, Plan Participant Information Sheet, Change of Address Form, and Foreign Language Statement) (Exhibit B); the Publication Notice (Exhibit C); the Proposed Hearing Order (Exhibit D); the Confidentiality Agreement (Exhibit E); the Proposed Final Order and Judgment (Exhibit F); the Statement to Accompany Post-Execution Date Responses to Customer Complaints (Exhibit G); the Post-Settlement Claim Form Mailing (Exhibit H); the Post-Mailing Reminder (Exhibit I); and Claim Review Administrative Forms and Letters (Exhibit J). These documents are incorporated into, are an integral part of, and are material terms of this Agreement.

B. No later than September 18, 2000, the Parties shall submit this Agreement, including all attached exhibits, to the Courts and seek preliminary approval thereof. If the Courts preliminarily approve the settlement, the Parties shall move the Courts to set a Fairness Hearing, and shall proffer the proposed Hearing Order (Exhibit D).

C. No named Plaintiff (including Lesa Benacquisto, Daniel Benacquisto, Arnold Mork, Isabella Mork, Ronald Melchert, Susan Melchert, Richard Thoresen or Elizabeth Thoresen) shall request exclusion from the Class, object to the proposed settlement, or file an appeal from or otherwise seek review of any order approving the proposed settlement.

## XV. FINAL APPROVAL AND FINAL ORDERS AND JUDGMENTS

The Parties shall petition the Courts for the Final Order and Judgment, substantially in the form attached hereto as Exhibit F.

## XVI. MODIFICATION OR TERMINATION OF THIS AGREEMENT

A. The terms and provisions of this Agreement may be amended, modified or expanded only by agreement of the Parties and approval of the Courts; provided, however, that

after entry of the Final Order and Judgment the Parties may, by written agreement, effect such amendments, modifications or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or notice to or approval by the Courts if such changes are consistent with the Courts' Final Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement.

B. Defendants, in consultation with Co-Class Counsel and without approval of the Courts, may implement the terms of the settlement after the last date on which the Final Order and Judgment is entered but before the Final Settlement Date, in which case all provisions in this Agreement that specify actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date on which Defendants elect to implement the settlement.

C. This Agreement shall terminate at the sole option and discretion of Defendants or Plaintiffs if (i) the Courts, or either of them, or any appellate court(s), rejects, modifies or denies approval of any portion of this Agreement or the proposed settlement that the terminating Party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings of the Courts, the provisions relating to notice, the definition of the Class and/or the terms of the Release; or (ii) the Courts, or either of them, or any appellate court(s), do not enter or completely affirm, or alter or expand, any portion of the Final Order and Judgment, or any of the Courts' findings of fact or conclusions of law as proposed by Defendants' Counsel and Co-Class Counsel, that the terminating Party in its (or their) sole judgment and discretion believe(s) is material. The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this subsection, no later than 20 days after receiving notice of the event prompting the termination.

D. Notwithstanding the preceding subsection, Plaintiffs may not terminate this Agreement solely because of the amount or distribution of Attorneys' Fees and Expenses awarded by the Courts or any appellate court(s). Defendants, however, may elect to terminate this Agreement if the amount of Attorneys' Fees and Expenses awarded by the Courts exceeds the maximum amount agreed upon by the Parties.

E. Defendants also may unilaterally withdraw from and terminate this Agreement within 20 days of receiving notice of either of the following two triggering events:

1. The number of persons who have elected to exclude themselves from the Class together own or owned more than 1% of the number of Policies or, alternatively, 1% of the number of Annuities (counting each participation interest in a Group Qualified Annuity separately); or

2. Any state attorney general or regulatory or administrative authority institutes a Proceeding against Defendants, or any of them, arising out of or otherwise related to the Released Conduct.

F. If Class Members timely elect the Claim Review Process on the Election Form for more than 7.5% of the number of Policies or, alternatively, 7.5% of the number of Annuities (counting each participation interest in a Group Qualified Annuity separately), then either Defendants or Plaintiffs may argue to the Courts that the settlement is unreasonable or unfair.

G. If an option to withdraw from and terminate this Agreement arises under any of the subsections to this section XVI, (i) neither Defendants nor Plaintiffs will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith.

H. If this Agreement is terminated pursuant to any of the subsections above, then:

1. This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of section XIII.C and this section XVI, which include the obligation of Lead Counsel to return any funds paid by the Defendants for Attorneys' Fees and Expenses,

2. This Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of Defendants, Plaintiffs or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

3. Defendants and their current and former directors, officers, producers, employees, advisors, agents, attorneys and representatives expressly and affirmatively reserve all defenses, arguments and motions as to all claims that have been or might later be asserted in the Actions, including, without limitation, any applicable statutes of limitation, statutes of repose, or other prescription period and the argument that the Actions may not be litigated as class actions;

4. Plaintiffs and their current and former predecessors, successors, heirs, agents or assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Actions, including (without limitation) any argument concerning class certification and/or punitive damages;

5. Neither this Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever; and

6. Any order or judgment entered after the Execution Date shall be deemed vacated and will be without any force or effect.

## XVII. GENERAL MATTERS AND RESERVATIONS

A. The obligation of the Parties to conclude the proposed settlement is contingent upon each of the following:

1. Acceptance of this Agreement by the Company's Board of Directors;

2. The absence of any other Policy or Annuity owner demands or actions that arise out of or relate to the matters described in the Release and that would materially impair the benefits to the Releasees, or any of them, otherwise provided for by the Release but that would not be terminated or otherwise resolved by this Agreement;

3. The resolution of any Proceedings arising out of, or relating to the relief to be provided under, the proposed settlement, as described above in subsection XVI.E.2; and

4. Entry by the Courts of the Final Order and Judgment approving the settlement, as to which the time to appeal has expired or which has remained unmodified after any appeal(s).

B. The Parties and their counsel agree to keep the contents of this Agreement and all related negotiations confidential until the date of the first public announcement by Defendants; provided, however, that this subsection shall not prevent earlier disclosure of such information to regulators, rating agencies, financial analysts, Producers, or any other person or entity (such as experts, courts, and/or Administrators) to whom disclosure must be made to effectuate the terms and conditions of this Agreement.

C. One year after scoring has been completed as part of the Claim Review Process (unless the time is extended by agreement of the Parties), Plaintiffs and their counsel shall return to Defendants' Counsel all documents (and all copies of such documents in whatever form made or maintained) produced by Defendants in these Actions, as well as all transcripts of and exhibits

to any deposition testimony provided by Defendants or their current or former officers, employees or Producers (and all copies of such documents in whatever form made or maintained); provided, however, that this subsection shall not apply to any documents made part of the record in connection with a Claim made in the Claim Review Process, or to any documents made part of a Court filing, or to Co-Class Counsels' work product. Defendants agree to store and preserve all materials returned by Plaintiffs and their counsel pursuant to this subsection for at least one year after the awarding of relief in the Claim Review Process is finally concluded.

D. The Defendants' execution of this Agreement shall not be construed to release — and the Defendants expressly do not intend to release — any claim the Defendants may make against any insurer for any cost or expense incurred in connection with this settlement, including attorneys' fees and costs.

E. Melvyn I. Weiss, Brad N. Friedman, Janine L. Pollack, and Richard A. Lockridge represent that (i) they are authorized by each of the Plaintiffs to enter into this Agreement on behalf of Plaintiffs and any other attorneys who have represented or who now represent Plaintiffs in the Actions with respect to the claims in the Actions; and (ii) they are seeking to protect the interests of the entire Class.

F. Plaintiffs represent and certify that (i) they have agreed to serve as representatives of the Class proposed to be certified herein; (ii) they are willing, able and ready to perform all of the duties and obligations of a representative of the Class, including, but not limited to, being available for, and involved in, discovery and fact finding; (iii) they have read the pleadings in the Actions or have had the contents of such pleadings described to them; (iv) they are familiar with the results of the fact-finding undertaken by Co-Class Counsel; (v) they have been kept appraised of settlement negotiations among the Parties, and have either read this Agreement, including the

exhibits annexed hereto, or have received a detailed description of it from Co-Class Counsel, and they have agreed to its terms; (vi) they have consulted with Co-Class Counsel and/or other plaintiffs' counsel of record about the Actions, this Agreement and the obligations imposed on a representative of the Class, (vii) they have authorized Co-Class Counsel to execute this Agreement on their behalf; and (viii) they shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Courts at any time determine that said Plaintiffs cannot represent the Class.

G. Teresa Rasmussen represents that she is authorized, upon approval of the Board of the Company, to enter into this Agreement on behalf of Defendants.

H. This Agreement, complete with the exhibits attached hereto, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and may not be altered, amended, or modified except by written instrument executed by Co-Class Counsel and Defendants' Counsel. This Agreement, including its exhibits, supersedes any prior agreement, understanding, or undertaking (written or oral) by and between the Parties regarding the subject matter of this Agreement.

I This Agreement and any ancillary agreements shall be governed by and interpreted according to the law of the State of Minnesota, excluding its conflict of laws provisions.

J Any action to enforce this Agreement shall be commenced and maintained only in the Courts. The Courts shall retain jurisdiction over the implementation, administration and conduct of the settlement and the interpretation, construction and enforcement of this Agreement.

K. Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by facsimile and/or next business day express delivery service as follows:

If to Defendants, then to:

Charles C. Platt, Esq.
Randall M. Fox, Esq.
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, New York 10019
Telephone: (212) 428-8000
Facsimile: (212) 424-8500

and

George F. McGunnigle, Esq.
Leonard, Street and Deinard, P.A.
150 South Fifth Street
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657

If to Plaintiffs, then to:

Melvyn I. Weiss, Esq.
Brad N. Friedman, Esq.
Janine L. Pollack, Esq.
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

and

Richard A. Lockridge, Esq.
Lockridge Grindal Nauen, P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

L. All time periods set forth in this Agreement shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Agreement or by order of court, the day of the act, event, or default from which the

designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the offices of the Clerks of the Courts inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this subsection, "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by the President or the Congress of the United States, or by the State of Minnesota, where the Courts are located.

M. Where any deadlines provided for in this Agreement are measured by postmarks, the timeliness of submissions governed by such deadlines will be measured by the postmark on the envelope containing such submission or, if there is no postmark or the postmark is illegible, by receipt of such submission within seven days after the postmark deadline.

N. The Parties reserve the right, subject to the Courts' approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

O. All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence shall be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed.

P. In no event shall the Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in these Actions, any other action, or

any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Agreement. Without limiting the foregoing, neither this Agreement, nor any related negotiations, statements or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to Defendants, or as a waiver by Defendants of any applicable defense, including without limitation any applicable statute of limitations or statute of frauds, or as a waiver by Plaintiffs or the Class of any claims, causes of action or remedies, including punitive damages.

Q. Defendants expressly deny any wrongdoing alleged in the pleadings and do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Actions, but consider it desirable for the Actions to be settled and dismissed because this settlement will (i) provide substantial benefits to Defendants' present and former Policy and Annuity owners; and (ii) avoid the substantial expense and the further disruption of the management and operation of Defendants' business due to the pendency and defense of the Actions.

R. Plaintiffs expressly affirm that the allegations asserted in the Actions were made in good faith and have a basis in fact, but consider it desirable for the Actions to be settled and dismissed because of the substantial benefits that the proposed settlement will provide to Class Members and the risk inherent in complex litigation such as the Actions.

S. Except as expressly provided in this Agreement, neither this Agreement nor any of the relief to be offered under the proposed settlement shall be interpreted to alter in any way the contractual terms of any Policy or Annuity, or to constitute a novation of any Policy or Annuity.

T. No opinion concerning the tax consequences of the proposed settlement to individual Class Members is being given or will be given by Defendants, Defendants' Counsel or Co-Class Counsel, nor is any representation or warranty made by virtue of this Agreement with respect to the tax consequences of any election or award of remedies under this settlement. The Class Notice shall direct Class Members to consult their own tax advisors regarding the tax consequences of the proposed settlement, including any payments, contributions or credits provided hereunder, and any tax reporting obligations they may have with respect thereto. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

U. The Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

V. The Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking court approval of this Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed settlement.

W. This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.

Agreed to this 18th day of September, 2000.

APPROVED AND AGREED TO BY AND ON BEHALF OF LESA BENACQUISTO, DANIEL BENACQUISTO, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT, SUSAN MELCHERT, RICHARD THORESEN, AND ELIZABETH THORESEN, IN THEIR INDIVIDUAL AND REPRESENTATIVE CAPACITIES.

By: ______________________
MELVYN I. WEISS
BRAD N. FRIEDMAN
JANINE L. POLLACK

______________________
RICHARD A. LOCKRIDGE

COUNSEL FOR PLAINTIFFS

APPROVED AND AGREED TO BY AND ON BEHALF OF IDS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY OF NEW YORK, AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY AND AMERICAN EXPRESS FINANCIAL ADVISORS.

By: ______________________
TERESA J. RASMUSSEN

VICE PRESIDENT & MANAGING COUNSEL
AMERICAN EXPRESS FINANCIAL CORPORATION
FOR DEFENDANTS

# EXHIBITS TO STIPULATION OF SETTLEMENT

Exhibit A: Guidelines for Determining, Scoring and Awarding Relief in Claim Review

Exhibit B: Class Notice Package

Cover Letter
Notice of Class Action, Proposed Settlement and Fairness Hearing
Release and Waiver (Appendix A to Notice)
Benefit Voucher
Statement of Eligibility
Designation Form
Election Form
Fact Sheet for Qualified Plans
Plan Participant Information Sheet
Change of Address Form
Foreign Language Statement

Exhibit C: Publication Notice

Exhibit D: Proposed Hearing Orders

Exhibit E: Confidentiality Agreement

Exhibit F: Proposed Final Orders and Judgments

Exhibit G: Statement to Accompany Post-Execution Date Responses to Customer Complaints

Exhibit H: Post-Settlement Claim Form Mailing

Exhibit I: Post-Mailing Reminder

Exhibit J: Claim Review Administrative Forms and Letters

350825.1

Financial Advisors

IDS Life Insurance Company
IDS Tower 10
Minneapolis, Minnesota 55440

# DEFERRED ANNUITY CONTRACT

- Flexible purchase payments.
- Optional fixed dollar or variable accumulation values and annuity payments.
- Annuity payments to begin on the retirement date.
- This contract is nonparticipating. Dividends are not payable.

| | | | |
|---|---|---|---|
| Annuitant: | Vivian A Vehring | Contract Date: | June 24, 1999 |
| Contract Number: | 9300-08395001 | Retirement Date: | June 24, 2009 |

This is a deferred annuity contract. It is a legal contract between you, as the owner, and us, IDS Life Insurance Company, a Stock Company, Minneapolis, Minnesota. **PLEASE READ YOUR CONTRACT CAREFULLY.**

If the annuitant is living on the Retirement Date, upon your request, we will begin to pay you monthly annuity payments. Any payments made by us are subject to the terms of this contract.

We issue this contract in consideration of your application and the payment of the purchase payments.

Signed for and issued by IDS Life Insurance Company in Minneapolis, Minnesota, as of the contract date shown above.

**ACCUMULATION VALUES AND ANNUITY PAYMENTS, WHEN BASED ON THE INVESTMENT RESULTS OF THE VARIABLE SUBACCOUNTS, ARE VARIABLE AND NOT GUARANTEED AS TO FIXED DOLLAR AMOUNT. SEE PAGE 9 FOR VARIABLE PROVISIONS.**

**NOTICE OF YOUR RIGHT TO EXAMINE THIS CONTRACT FOR 10 DAYS**

If for any reason you are not satisfied with this contract, return it to us or our representative within 10 days after you receive it. We will then cancel this contract and refund all premiums which you have paid. This contract will then be considered void from its start.

President

Richard W Kling

Secretary

William A Stoffgramm

# GUIDE TO CONTRACT PROVISIONS


| | |
|---|---|
| **Definitions** | **Important words and meanings/Page 3** |
| **General Provisions** | **Entire contract; Incontestability; Benefits based upon incorrect data; State Laws; Federal Laws; Reports to owner; Evidence of survival; Protection of proceeds; Payments by us; Voting rights/Page 4** |
| **Ownership and Beneficiary** | **Owner rights; Change of ownership; Beneficiary; Change of Beneficiary; Assignment/Page 5** |
| **Payments to Beneficiary** | **Describes options and amounts payable upon death/Page 6** |
| **Purchase Payments** | **Purchase payments amounts and intervals; Payment limits; Allocation of purchase payments/Page 7** |
| **Contract Value** | **Describes the fixed and variable account contract values; Interest to be credited; Contract administrative charge; Premium taxes; Transfers of Contract Values/Page 8** |
| **Fixed and Variable Accounts** | **Describes the variable subaccounts, accumulation units and values; Net investment factor; Mortality and expense risk charge; Annuity unit value/Page 9** |
| **Surrender Provisions** | **Surrender of the contract for its surrender value; Surrender Charges; Waiver of Surrender Charges; Rules for surrender/Page 11** |
| **Annuity Provisions** | **When annuity payments begin; Different ways to receive annuity payments; Determination of payment amounts/Page 13** |
| **Table of Settlement Rates** | **Tables showing amount of first variable annuity payment and the guaranteed fixed annuity payments for the various payment plans/Page 15** |

# CONTRACT DATA

| | | | |
|---|---|---|---|
| Annuitant: | Vivian A Vehring | Contract Date: | June 24, 1999 |
| Contract Number: | 9300-06395001 | Retirement Date: | June 24, 2009 |
| Contract Owner: | Vivian A Vehring | | |

## Deferred Annuity Contract ("Flexible Portfolio Annuity")

Upon issuance of this contract your purchase payments have been scheduled to be paid and applied to the fixed and variable subaccounts as shown below. You may change the amount, frequency and allocations as provided in this contract. Refer to the purchase payments provision on Page 7.

Lump Sum Single Purchase Payment Only: $450,000.00
Scheduled Purchase Payment:
Annual Amount: None

| Variable Subaccounts | Mutual Fund | Purchase Payments Allocation Percentage |
|---|---|---|
| HC | AXP VP Capital Resource Fund | 0.000% |
| HS | AXP VP Bond Fund | 0.000% |
| HM | AXP VP Cash Management Fund | 100.000% |
| HD | AXP VP Managed Fund | 0.000% |
| HI | AXP VP International Fund | 0.000% |
| HA | AXP VP Strategy Aggressive Fund | 0.000% |
| HV | AXP VP Extra Income Fund | 0.000% |
| HG | AXP VP New Dimensions Fund | 0.000% |
| HY | AXP VP Global Bond Fund | 0.000% |
| HW | AIM Variable Ins. Growth & Income Fund | 0.000% |
| HN | Putnam Variable Trust New Opportunities Fund | 0.000% |
| HT | Warburg Pincus Trust Small Company Portfolio | 0.000% |
| HK | Templeton Developing Markets Fund | 0.000% |
| HP | American Century VP Value | 0.000% |
| Fixed Account | | 0.000% |

### Schedule of Surrender Charges

| Contract Year | Surrender Charge Applied to Purchase Payments Surrendered |
|---|---|
| 1 Through 3 | 7% |
| 4 | 6% |
| 5 | 5% |
| 6 | 4% |
| 7 | 3% |
| 8 | 2% |
| Thereafter | 0% |

Contract Administrative Charge: $30 annually. Charge is waived if contract value, or purchase payments less purchase payments surrendered, equals or exceeds $25,000. See Page 6.

Maximum Purchase Payments Permitted:

1st contract year: $ 500,000

Each contract year thereafter: $ 100,000

Fixed Account Guaranteed Interest Rate: 3% Annual Effective Rate

As of the date this contract was issued, any amounts allocated to the fixed account will earn interest, for the first year, at the annual effective rate of 5.00%. New rates may be declared from time to time.

# DEFINITIONS

The following words are used often in this contract. When we use these words, this is what we mean:

**annuitant**

The person or persons on whose life monthly annuity payments depend.

**you, your**

The owner of this contract. The owner may be someone other than the annuitant. The owner may be changed as provided in this contract.

**we, our, us**

IDS Life Insurance Company

**accumulation unit**

An accumulation unit is an accounting unit of measure. It is used to calculate the contract value prior to settlement.

**annuity unit**

An annuity unit is an accounting unit of measure. It is used to calculate the value of annuity payments from the variable subaccounts on and after the retirement date.

**contract date**

It is the date from which contract anniversaries, contract years, and contract months are determined. Your contract date is shown under Contract Data.

**contract anniversary**

The same day and month as the contract date each year that the contract remains in force.

**contract value**

The sum of the Fixed Account Contract Value (which receives a declared interest rate) and the Variable Account Contract Value (which varies with the investment performance of the elected subaccounts) for this contract.

**retirement date**

The date shown under Contract Data on which annuity payments are to begin. This date may be changed as provided in this contract. You will be notified prior to the retirement date in order to select an appropriate annuity payment plan.

**settlement**

The application of the contract value of this contract to an Annuity Payment Plan to provide annuity payments.

**valuation date**

A valuation date is each day the New York Stock Exchange is open for trading.

**valuation period**

A valuation period is the interval of time commencing at the close of business on each valuation date and ending at the close of business on the next valuation date.

**fixed account**

The fixed account is made up of all our assets other than those in any separate account.

**variable subaccounts**

The portfolios of the Variable Account. The subaccounts available on the contract date are named under Contract Data.

**fixed annuity**

A fixed annuity is an annuity with payments which are guaranteed by us as to dollar amount during the annuity payment period.

**variable annuity**

A variable annuity is an annuity with payments which (1) are not predetermined or guaranteed as to dollar amount; and (2) vary in amount with the investment experience of one or more of the variable subaccounts.

**written request**

A request in writing signed by you and delivered to us at our home office.

# GENERAL PROVISIONS

**Entire Contract**

This contract form is the entire contract between you and us.

No one except one of our corporate officers (President, Vice President, Secretary or Assistant Secretary) can change or waive any of our rights or requirements under this contract. That person must do so in writing. None of our representatives or other persons has the authority to change or waive any of our rights or requirements under this contract.

**Incontestable**

This contract is incontestable from its date of issue.

**Benefits Based on Incorrect Data**

If the amount of benefits is determined by data as to a person's age or sex that is incorrect, benefits will be recalculated on the basis of the correct data. Any underpayments made by us will be made up immediately. Any overpayments made by us will be subtracted from the future payments.

**State Laws**

This contract is governed by the law of the state in which it is delivered. The values and benefits of this contract are at least equal to those required by such state.

**Federal Laws**

This contract is intended to qualify as an annuity contract for Federal income tax purposes. To that end, the provisions of this contract are to be interpreted to ensure or maintain such tax qualification, despite any other provisions to the contrary. We reserve the right to amend this contract to reflect any clarifications that may be needed or are appropriate to maintain such qualification or to conform the contract to any applicable changes in the tax qualification requirements. We will send you a copy of any such amendments.

**Reports to Owner**

At least once a year we will send you a statement showing the contract value and the cash surrender value of this contract. This statement will be based on any laws or regulations that apply to contracts of this type.

**Evidence of Survival**

Where any payments under this contract depend on the recipient or annuitant being alive on a given date, proof that such condition has been met may be required by us. Such proof may be required prior to making the payments.

**Protection of Proceeds**

Payments under this contract are not assignable by any beneficiary prior to the time they are due. To the extent allowed by law, payments are not subject to the claims of creditors or to legal process.

**Payments By Us**

All sums payable by us are payable from our home office. Any payment of a variable annuity or surrender based on the variable contract value shall be payable only from the variable subaccounts.

**Voting Rights**

So long as federal law requires, we will give certain voting rights to contract owners. As contract owner, if you have voting rights we will send a notice to you telling you the time and place of a shareholder meeting. The notice will also explain matters to be voted upon and how many votes you get.

# OWNERSHIP AND BENEFICIARY

### Owner's Rights

As long as the annuitant is living and unless otherwise provided in this contract, you may exercise all rights and privileges provided in this contract or allowed by us.

### Change of Ownership

You can change the ownership of this contract by written request on a form approved by us. The change must be made while the annuitant is living. Once the change is recorded by us, it will take effect as of the date of your request, subject to any action taken or payment made by us before the recording.

### Beneficiary

Beneficiaries are those you name, in a form satisfactory to us, to receive benefits of this contract if you or the annuitant die while this contract is in force.

Only those beneficiaries who are living when death benefits become payable may share in the benefits, if any. If no beneficiary is then living, we will pay the benefits to you, if living, otherwise to your estate.

### Change of Beneficiary

You may change the beneficiary anytime while the annuitant is living by satisfactory written request to us. Once the change is recorded by us, it will take effect as of the date of your request, subject to any action taken or payment made by us before the recording.

### Assignment

While the annuitant is living, you can assign this contract or any interest in it. Your interest and the interest of any beneficiary is subject to the interest of the assignee. An assignment is not a change of ownership and an assignee is not an owner as these terms are used in this contract. Any amounts payable to the assignee will be paid in a single sum.

A copy of any assignment must be submitted to us at our home office. Any assignment is subject to any action taken or payment made by us before the assignment was recorded at our home office. We are not responsible for the validity of any assignment.

# PAYMENTS TO BENEFICIARY

**Death Benefit Before the Retirement Date**

If the annuitant or owner dies before the retirement date and the annuitant's age 75, while this contract is in force we will pay to the beneficiary the greater of:

1. the contract value; or
2. the contract value as of the most recent sixth contract anniversary less any amounts surrendered; or
3. the purchase payments paid less any amounts surrendered.

If the annuitant or owner dies before the retirement date and on or after the annuitant's 75th birthday, while this contract is in force, we will pay to the beneficiary the greater of:

1. the contract value; or
2. the contract value as of the most recent sixth contract anniversary, less any amounts surrendered.

The above amount will be payable in a lump sum upon the receipt of due proof of death of the annuitant or owner whichever first occurs. The beneficiary may elect to receive payment anytime within 5 years after the date of death.

In lieu of a lump sum, payment may be made under an Annuity Payment Plan, provided:

1. the beneficiary elects the plan within 60 days after we receive due proof of death; and
2. payments begin no later than one year after the date of death; and
3. the plan provides payments over a period which does not exceed the life of the beneficiary, or the life expectancy of the beneficiary.

In this event, the reference to "annuitant" in the Annuity Provisions shall apply to the beneficiary.

Any amounts payable or applied by us as described in this section will be based on the contract value as of the valuation date on or next following the date on which due proof of death is received at our Home Office.

**Spouse Option to Continue Contract Upon Owner's Death**

If the owner's death occurs prior to the retirement date, the owner's spouse, if designated as sole beneficiary, may elect in writing to forego receipt of the death benefit and instead continue this contract in force as owner. The election by the spouse must be made within 60 days after we receive due proof of death.

**Death Benefit After the Retirement Date**

If the annuitant or owner dies after the retirement date, the amount payable, if any, will be as provided in the Annuity Payment Plan then in effect.

# PURCHASE PAYMENTS

**Purchase Payments**

Purchase payments are the payments you make for this contract and the benefits it provides. Purchase payments must be paid or mailed to us at our home office or to an authorized agent. If requested, we'll give you a receipt for your purchase payments. Upon payment to us, purchase payments become our property.

Net purchase payments are that part of your purchase payments applied to the contract value. A net purchase payment is equal to the purchase payment less any applicable premium tax charge.

**Amount and Intervals**

Purchase payments may be paid in a single sum or in installments until the earlier of: (1) the date this contract terminates by surrender or otherwise; or (2) the date on which annuity payments begin.

Subject to the Payment Limits Provision you may: (1) stop and/or restart purchase payments; or (2) increase or decrease the amount of your purchase payments; or (3) change the interval of your purchase payments.

**Payment Limits Provision**

Maximum Purchase Payments - The maximum purchase payments in the first or later contract years may not exceed the amounts shown under Contract Data. We reserve the right to increase the maximums.

Minimum Purchase Payments - Upon issue of this contract, a purchase payment intended as a Single Purchase Payment must be at least $2,000. Additional payments must be at least $50. If you intend to make installment purchase payments such payments, on an annualized basis, must be at least equal to $600.

We also reserve the right to cancel this contract if both of the following conditions exist at the same time: (1) no purchase payments have been paid for a continuous period of 24 months; and (2) less than $600 in purchase payments have been paid under this contract. In this event we will give you 30 days written notice of our intent to cancel this contract. Upon such cancellation we will pay you the contract value in one sum. This contract will then terminate.

**Allocation of Purchase Payments**

You instruct us on how you want your purchase payments allocated among the fixed account and variable subaccounts. Your choice for each account may be made in any whole percent from 0% to 100% as long as the total adds up to 100%. Your allocation instructions as of the contract date are shown under Contract Data. By written request, or by another method agreed to by us, you may change your choice of accounts or percentages. The first net purchase payment will be allocated as of the end of the valuation period during which we make an affirmative decision to issue this contract. Net purchase payments after the first will be allocated as of the end of the valuation period during which we receive the payment at our home office.

# CONTRACT VALUE

### Contract Value

The contract value at any time is the sum of: (1) the Fixed Account Contract Value; and (2) the Variable Account Contract Value.

If: (1) part or all of the contract value is surrendered; or (2) charges described herein are made against the contract value; then a number of accumulation units from the variable subaccounts and an amount from the fixed account will be deducted to equal such amount. For surrenders, deductions will be made from the fixed or variable subaccounts that you specify. Otherwise, the number of units from the variable subaccounts and the amount from the fixed account will be deducted in the same proportion that your interest in each bears to the total contract value.

### Fixed Account Contract Value

The fixed account contract value at any time will be: (1) the sum of all amounts credited to the fixed account under this contract; less (2) any amounts deducted for charges or surrenders.

### Interest to be Credited

We will credit interest to the fixed account contract value. Interest will begin to accrue on the date the purchase payments which are received in our home office become available to us for use. Such interest will be credited at rates that we determine from time to time. However, we guarantee that the rate will not be less than the Guaranteed Interest Rate shown under Contract Data.

### Variable Account Contract Value

The variable account contract value at any time will be: (1) the sum of the value of all variable subaccount accumulation units under this contract resulting from purchase payments so allocated, or transfers among the variable and fixed accounts; less (2) any units deducted for charges or surrenders.

### Contract Administrative Charge

We charge a fee for establishing and maintaining our records for this contract. The charge is $30 per year and is deducted from the contract value at the end of each contract year or, if earlier, when the contract is fully surrendered. We waive this charge if your contract value, or your total purchase payments less any purchase payments surrendered, equals or exceeds $25,000. The charge does not apply after settlement of this contract under an annuity payment plan.

### Premium Tax Charges

A charge will be made by us against the contract value of this contract at the time that any premium taxes not previously deducted are payable.

### Transfers of Contract Values

While this contract is in force prior to the settlement date, transfer of contract values may be made as outlined below:

1. You may transfer all or a part of the values held in one or more of the variable subaccounts to another one or more of the variable subaccounts. Subject to item 2, you may also transfer values held in one or more of the variable subaccounts to the fixed account.

2. On or within the 30 days after a contract anniversary you may transfer values from the fixed account to one or more of the variable subaccounts. Only one such transfer is allowed during this period each year. If such a transfer is made, no transfers from a variable subaccount to the fixed account may be made until the next contract anniversary.

You may make a transfer by written request. Transfer requests may also be made according to telephone procedures or automated transfer procedures that are then currently in effect, if any. There is no fee or charge for these transfers. However, the minimum transfer amount is $250, or if less, the entire value in the account from which the transfer is being made. Smaller minimums may apply to automated transfer procedures. This transfer privilege may be suspended or modified by us at any time.

# FIXED AND VARIABLE ACCOUNTS

**The Fixed Account**

The fixed account is our general account. It is made up of all of our assets other than: (1) those in the variable subaccounts; and (2) those in any other segregated asset account.

**The Variable Account**

The variable account is a separate investment account of ours. It consists of several subaccounts which are named under Contract Data. We have allocated a part of our assets for this contract to the variable accounts. Such assets remain our property. However, they may not be charged with the liabilities from any other business in which we may take part.

**Investments of the Variable Account**

Purchase payments applied to the variable subaccounts will be allocated as specified by the owner. Each variable subaccount will buy, at net asset value, shares of the fund shown for that subaccount under Contract Data or as later added or changed.

We may change the mutual funds from which the variable subaccounts buy shares if laws or regulations change, the existing funds become unavailable or in our judgment, the funds are no longer suitable for the subaccounts. If any of these situations occur, we would have the right to substitute funds other than those shown under Contract Data. We may also add additional subaccounts investing in other funds.

When required, we would first seek approval of the Securities and Exchange Commission and, the insurance regulator of the state where this contract is delivered.

**Valuation of Assets**

Mutual fund shares in the variable subaccounts will be valued at their net asset value.

**Variable Account Accumulation Units**

The company will credit net purchase payments and amounts of variable subaccount transfers in the form of accumulation units. The number of units to be credited to each subaccount will be determined by dividing the net amount allocated to that subaccount by the unit value of the subaccount. In the case of the initial net purchase payment, units will be credited on the date we make an affirmative decision to issue this contract. For additional payments, units will be credited as of the valuation period during which the purchase payment is received.

The amount of any Contract Administrative Charge, or other applicable charges or partial surrenders from the variable account contract value will reduce the number of units credited to the contract in the variable subaccounts. A transfer out of a subaccount will reduce the number of units credited to the contract in that subaccount while a transfer into a subaccount will increase the number of units.

**Variable Account Accumulation Unit Value**

The value of an accumulation unit for each of the variable subaccounts was arbitrarily set at $1 when the first mutual fund shares were bought. The value for any later valuation period is found as follows:

> The accumulation unit value for each variable subaccount for the last prior valuation period is multiplied by the net investment factor for the same account for the next following valuation period. The result is the accumulation unit value. The value of an accumulation unit may increase or decrease from one valuation period to the next.

**Net Investment Factor**

The net investment factor is an index applied to measure the investment performance of a variable subaccount from one valuation period to the next. The net investment factor may be greater or less than one; therefore, the value of an accumulation unit may increase or decrease.

The net investment factor for any such subaccount for any valuation period is determined by: dividing (1) by (2) and subtracting (3) from the result. This is done where:

(1) is the sum of

- a. the net asset value per share of the mutual fund held in the variable subaccount determined at the end of the current valuation period; plus
- b. the per share amount of any dividend or capital gain distributions made by the mutual fund held in the variable subaccount, if the "ex-dividend" date occurs during the current valuation period.

(2) is the net asset value per share of the mutual fund held in the variable subaccount, determined at the end of the last prior valuation period.

(3) is a factor representing the mortality and expense risk charge.

## Mortality and Expense Risk Charge

In calculating accumulation unit values we will deduct a mortality and expense risk charge from the variable subaccounts equal, on an annual basis, to 1.25% of the daily net asset value. This deduction is made to compensate us for assuming the mortality and expense risks under contracts of this type. We estimate that approximately 2/3 of this charge is for assumption of mortality risk and 1/3 is for assumption of expense risk. The deduction will be: (1) made from each variable subaccount; and (2) computed on a daily basis.

## Annuity Unit Value

The value of an Annuity Unit for each variable subaccount was arbitrarily set at $1 when the first mutual funds were bought. The value for any later valuation period is found as follows:

1. The annuity unit value for each variable subaccount for the last prior valuation period is multiplied by the net investment factor for the subaccount for the valuation period for which the annuity unit value is being calculated.

2. The result is multiplied by an interest factor. This is done to neutralize the assumed investment rate which is built into the annuity tables on page 15.

# SURRENDER PROVISIONS

**Surrender**

By written request and subject to the rules below you may:

1. surrender this contract for the total surrender value; or
2. partially surrender this contract for a part of the surrender value.

**Surrender Value**

The surrender value at any time will be:

1. the contract value;
2. minus the contract administrative charge;
3. minus any surrender charge.

**Surrender Charge**

A surrender charge may apply during the first eight contract years. To determine the charge during this period for a partial or total surrender we first divide the contract value into two parts.

1. Contract earnings - This is the contract value minus the sum of all purchase payments we have received that have not been previously surrendered.
2. Purchase payments - These are the total purchase payments we received that have not been previously surrendered.

We will then surrender your contract value in the following order so that the amount surrendered, less any surrender charge that applies, equals your requested surrender amount:

1. Contract Earnings, if any, are surrendered first. There is no surrender charge on contract earnings.
2. Next, if necessary, we surrender purchase payments not previously surrendered.

The surrender charge shown under Contract Data applies to purchase payments surrendered.

**Determining Contract Earnings**

Contract earnings are determined by looking at the entire contract value, not just the earnings of a certain variable subaccount or the fixed account.

For example, the gains you may have in a certain variable subaccount or interest earned in the fixed account may be offset by losses in another variable subaccount. This may result in not having any contract earnings available at the time of surrender.

At the time of a surrender, we will surrender any amounts representing contract earnings first in order to minimize any applicable surrender charge.

**Waiver of Surrender Charges**

There are no surrender charges for:

1. Death benefit payments; or
2. Contracts settled under an Annuity Payment Plan; or
3. Amounts surrendered to meet applicable minimum distribution requirements under the Internal Revenue Code of 1986, as amended, its regulations and/or promulgations of the Internal Revenue Service. Amounts surrendered under this waiver provision are limited to one time per year unless we agree otherwise.

**Rules For Surrender**

All surrenders will have the following conditions:

1. You must apply by written request or other method agreed to by us: (a) while this contract is in force; and (b) prior to the earlier of the retirement date or the death of the annuitant.
2. Unless we agree otherwise, you must surrender an amount equal to at least $250 or the entire contract value, if less. The contract value after a partial surrender must be at least $600.
3. The amount surrendered, less any charges, will normally be paid to you within seven days of our receipt of your written surrender request and the return of this contract, if required. For surrenders from the fixed account, we have the right to defer payment to you for up to 6 months from the date we receive your request.
4. For partial surrenders, if you do not specify from which accounts the surrender is to be made, the surrender will be made from the variable subaccounts and fixed account in the same proportion as your interest in each bears to the contract value.
5. Any amounts surrendered and charges which may apply can not be repaid.

Upon surrender for the full surrender value this contract will terminate. We may require that you return the contract to us before we pay the full surrender value.

**Suspension or Delay in Payment of Surrender**

We have the right to suspend or delay the date of any surrender payment from the variable subaccounts for any period:

1. When the New York Stock Exchange is closed; or
2. When trading on the New York Stock Exchange is restricted; or
3. When an emergency exists as a result of which: (a) disposal of securities held in the variable subaccounts is not reasonably practicable; or (b) it is not reasonably practicable to fairly determine the value of the net assets of the variable account; or
4. During any other period when the Securities and Exchange Commission, by order, so permits for the protection of security holders.

Rules and regulations of the Securities and Exchange Commission will govern as to whether the conditions set forth in 2 and 3 exist.

# ANNUITY PROVISIONS

**Settlement**

When settlement occurs, the contract value will be applied to make annuity payments. The first payment will be made as of the retirement date. This date is shown under Contract Data. Before payments begin we will require satisfactory proof that the annuitant is alive. We may also require that you exchange this contract for a supplemental contract which provides for the annuity payments.

**Change of Retirement Date**

You may change the retirement date shown for this contract. Tell us the new date by written request. However the retirement date may not be later than the later of: (1) the annuitant's 85th birthday; or (2) the tenth contract anniversary. Also, if you select a new date, it must be at least 30 days after we receive your written request at our home office.

**Annuity Payment Plans**

Subject to the terms of this contract, annuity payments may be made on a fixed dollar basis, a variable basis, or a combination of both. You can schedule receipt of annuity payments according to one of the Plans A through E below or another plan agreed to by us.

**Plan A** - This provides monthly annuity payments during the lifetime of the annuitant. No payments will be made after the annuitant dies.

**Plan B** - This provides monthly annuity payments during the lifetime of the annuitant with a guarantee by us that payments will be made for a period of at least five, ten or fifteen years. You must select the guaranteed period.

**Plan C** - This provides monthly annuity payments during the lifetime of the annuitant with a guarantee by us that payments will be made for a certain number of months. We determine the number of months by dividing the amount applied under this Plan by the amount of the first monthly annuity payment.

**Plan D** - Monthly payments will be paid during the lifetime of the annuitant and a joint annuitant. When either the annuitant or the joint annuitant dies we will continue to make monthly payments during the lifetime of the survivor. No payments will be paid after the death of both the annuitant and joint annuitant.

**Plan E** - (Installments for a specified period) This provides monthly annuity payments for a period of years. The period of years may be no less than 10 nor more than 30.

By written request to us at least 30 days before the Retirement Date, you may select the Plan. If at least 30 days before the Retirement Date we have not received at our home office your written request to select a Plan, we will make fixed-dollar payments according to Plan B with payments guaranteed for ten years.

If the amount to be applied to a Plan would not provide an initial monthly payment of at least $20, we have the right to make a lump sum payment of the contract value.

**Allocation of Contract Values at Settlement**

At the time of settlement under an Annuity Payment Plan you may reallocate your contract value to the Fixed Account to provide fixed dollar payments and/or among the variable subaccounts to provide variable annuity payments. Unless we agree otherwise, you may use a maximum of five variable subaccounts at any one time during settlement.

**Fixed Annuity**

A fixed annuity is an annuity with payments that are guaranteed by us as to dollar amount. Fixed annuity payments after the first will never be less than the amount of the first payment. At settlement, the fixed account contract value will be applied to the applicable Annuity Table. This will be done in accordance with the Payment Plan chosen. The amount payable for each $1,000 so applied is shown in Table B on page 16.

**Variable Annuity**

A variable annuity is an annuity with payments which: (1) are not predetermined or guaranteed as to dollar amount; and (2) vary in amount with the investment experience of the variable subaccounts.

**Determination of First Variable Annuity Payment**

At settlement, the variable account contract value will be applied to the applicable Annuity Table. This will be done: (1) on the valuation date on or next preceding the 7th calendar day before the retirement date; and (2) in accordance with the Payment Plan chosen. The amount payable for the first payment for each $1,000 so applied is shown in Table A on page 15.

**Variable Annuity Payments After the First Payment**

Variable annuity payments after the first vary in amount. The amount changes with the investment performance of the variable subaccounts. The dollar amount of variable annuity payments after the first is not fixed. It may change from month to month. The dollar amount of such payments is determined as follows:

1. The dollar amount of the first annuity payment is divided by the value of an annuity unit as of the valuation date on or next preceding the 7th calendar day before the retirement date. This result establishes the fixed number of annuity units for each monthly annuity payment after the first. This number of annuity units remains fixed during the annuity payment period.

2. The fixed number of annuity units is multiplied by the annuity unit value as of the valuation date on or next preceding the 7th calendar day before the date the payment is due. This result establishes the dollar amount of the payment.

We guarantee that the dollar amount of each payment after the first will not be affected by variations in expenses or mortality experience.

**Exchange of Annuity Units**

After annuity paments begin, annuity units of any variable subaccount may be exchanged for units of any of the other variable subaccounts. This may be done no more than once a year. Unless we agree otherwise you may use a maximum of five variable subaccounts at any one time. Once annuity payments start no exchanges may be made to or from any fixed annuity.

# TABLE OF SETTLEMENT RATES

Table A below shows the amount of the first monthly variable annuity payment, based on a 5% assumed investment return, for each $1,000 of value applied under any Payment Plan. The amount of the first and all subsequent monthly fixed dollar annuity payments for each $1,000 of value applied under any Payment Plan will be based on our fixed dollar Table of Settlement Rates in effect on the settlement date. Such rates are guaranteed to be not less than those shown in Table B. The amount of such annuity payments under Plans A, B, and C will depend upon the sex and the adjusted age of the annuitant on the date of settlement. The amount of such annuity payments under Plan D will depend upon the sex and the adjusted age of the annuitant and joint annuitant on the date of settlement. Adjusted age shall be equal to the age nearest birthday minus an "adjustment" depending on the calendar year of birth of the annuitant as follows:

| Calendar Year of Annuitant's Birth | Adjustment | Calendar Year of Annuitant's Birth | Adjustment |
|---|---|---|---|
| Prior to 1920 | 0 | 1945 through 1949 | 6 |
| 1920 through 1924 | 1 | 1950 through 1959 | 7 |
| 1925 through 1929 | 2 | 1960 through 1969 | 8 |
| 1930 through 1934 | 3 | 1970 through 1979 | 9 |
| 1935 through 1939 | 4 | 1980 through 1989 | 10 |
| 1940 through 1944 | 5 | After 1989 | 11 |

**TABLE A Dollar Amount of First Monthly Variable Annuity Payment Per $1000 Applied**

| | PLAN A | | | | PLAN B | | | | PLAN C | | PLAN D-Joint and Survivor Adjusted Age of Female Joint Annuitant | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Life Income | | 5 Years Certain | | 10 Years Certain | | 15 Years Certain | | With Refund | | Adj. Male | 10 Years | 5 Years | Same | 5 Years | 10 Years |
| Adj. Age* | M | F | M | F | M | F | M | F | M | F | Age* | Younger | Younger | Age | Older | Older |
| 55 | 5.89 | 5.44 | 5.86 | 5.43 | 5.79 | 5.40 | 5.67 | 5.34 | 5.68 | 5.33 | 55 | 4.73 | 4.88 | 5.04 | 5.21 | 5.38 |
| 60 | 6.46 | 5.89 | 6.42 | 5.87 | 6.28 | 5.80 | 6.07 | 5.69 | 6.13 | 5.70 | 60 | 4.94 | 5.15 | 5.37 | 5.61 | 5.83 |
| 65 | 7.27 | 6.51 | 7.18 | 6.47 | 6.91 | 6.34 | 6.52 | 6.14 | 6.74 | 6.21 | 65 | 5.23 | 5.52 | 5.85 | 6.17 | 6.49 |
| 66 | 7.47 | 6.66 | 7.38 | 6.61 | 7.06 | 6.47 | 6.62 | 6.24 | 6.88 | 6.33 | 66 | 5.30 | 5.61 | 5.95 | 6.30 | 6.66 |
| 67 | 7.68 | 6.82 | 7.66 | 6.77 | 7.21 | 6.60 | 6.71 | 6.34 | 7.04 | 6.46 | 67 | 5.38 | 5.70 | 6.07 | 6.45 | 6.82 |
| 68 | 7.91 | 7.00 | 7.76 | 6.93 | 7.36 | 6.74 | 6.81 | 6.44 | 7.19 | 6.60 | 68 | 5.46 | 5.80 | 6.20 | 6.61 | 7.01 |
| 69 | 8.15 | 7.19 | 7.98 | 7.11 | 7.52 | 6.89 | 6.90 | 6.54 | 7.36 | 6.74 | 69 | 5.54 | 5.92 | 6.34 | 6.79 | 7.21 |
| 70 | 8.41 | 7.39 | 8.21 | 7.31 | 7.68 | 7.04 | 6.98 | 6.65 | 7.54 | 6.90 | 70 | 5.63 | 6.03 | 6.49 | 6.97 | 7.42 |
| 71 | 8.69 | 7.62 | 8.46 | 7.51 | 7.84 | 7.21 | 7.07 | 6.75 | 7.73 | 7.06 | 71 | 5.73 | 6.16 | 6.65 | 7.17 | 7.66 |
| 72 | 8.99 | 7.86 | 8.71 | 7.74 | 8.01 | 7.38 | 7.15 | 6.86 | 7.92 | 7.24 | 72 | 5.84 | 6.30 | 6.83 | 7.39 | 7.90 |
| 73 | 9.31 | 8.12 | 8.98 | 7.98 | 8.18 | 7.56 | 7.23 | 6.96 | 8.13 | 7.42 | 73 | 5.95 | 6.44 | 7.02 | 7.62 | 8.17 |
| 74 | 9.65 | 8.41 | 9.27 | 8.23 | 8.35 | 7.74 | 7.30 | 7.06 | 8.35 | 7.63 | 74 | 6.07 | 6.60 | 7.22 | 7.87 | 8.46 |
| 75 | 10.02 | 8.72 | 9.57 | 8.51 | 8.52 | 7.93 | 7.37 | 7.16 | 8.58 | 7.84 | 75 | 6.19 | 6.77 | 7.44 | 8.14 | 8.77 |
| 76 | 10.41 | 9.05 | 9.88 | 8.80 | 8.68 | 8.12 | 7.43 | 7.24 | 8.83 | 8.06 | 76 | 6.33 | 6.96 | 7.68 | 8.43 | 9.10 |
| 77 | 10.84 | 9.42 | 10.21 | 9.11 | 8.85 | 8.31 | 7.49 | 7.32 | 9.08 | 8.31 | 77 | 6.48 | 7.15 | 7.94 | 8.75 | 9.45 |
| 78 | 11.29 | 9.81 | 10.55 | 9.44 | 9.00 | 8.51 | 7.54 | 7.40 | 9.36 | 8.56 | 78 | 6.64 | 7.37 | 8.22 | 9.08 | 9.83 |
| 79 | 11.78 | 10.24 | 10.90 | 9.80 | 9.16 | 8.70 | 7.59 | 7.46 | 9.64 | 8.83 | 79 | 6.81 | 7.60 | 8.52 | 9.45 | 10.24 |
| 80 | 12.29 | 10.71 | 11.27 | 10.17 | 9.30 | 8.88 | 7.63 | 7.52 | 9.93 | 9.13 | 80 | 6.99 | 7.85 | 8.84 | 9.83 | 10.67 |
| 81 | 12.85 | 11.22 | 11.64 | 10.56 | 9.44 | 9.06 | 7.66 | 7.58 | 10.25 | 9.43 | 81 | 7.19 | 8.12 | 9.19 | 10.25 | 11.12 |
| 82 | 13.44 | 11.76 | 12.01 | 10.96 | 9.57 | 9.23 | 7.69 | 7.62 | 10.58 | 9.76 | 82 | 7.41 | 8.42 | 9.56 | 10.69 | 11.61 |
| 83 | 14.06 | 12.35 | 12.40 | 11.38 | 9.69 | 9.40 | 7.72 | 7.66 | 10.92 | 10.10 | 83 | 7.64 | 8.73 | 9.97 | 11.17 | 12.12 |
| 84 | 14.73 | 13.00 | 12.78 | 11.81 | 9.80 | 9.55 | 7.74 | 7.69 | 11.27 | 10.47 | 84 | 7.89 | 9.07 | 10.40 | 11.67 | 12.66 |
| 85 | 15.42 | 13.70 | 13.16 | 12.25 | 9.90 | 9.68 | 7.76 | 7.72 | 11.66 | 10.85 | 85 | 8.17 | 9.44 | 10.86 | 12.20 | 13.24 |

* Adjusted age of annuitant. M = Male F = Female

Table A above is based on the "1983 Individual Annuitant Mortality Table A." Settlement rates for any age, or any combination of age and sex not shown above, will be calculated on the same basis as those rates shown in the table above. Such rates will be furnished by us upon request.

**PLAN E Dollar Amount of First Monthly Variable Annuity Payment Per $1,000 Applied (based on 5% AIR)**

| Years Payable | Monthly Payment | Years Payable | Monthly Payment | Years Payable | Monthly Payment |
|---|---|---|---|---|---|
| 10 | $ 10.51 | 17 | $ 7.20 | 24 | $ 5.88 |
| 11 | 9.77 | 18 | 6.94 | 25 | 5.76 |
| 12 | 9.16 | 19 | 6.71 | 26 | 5.66 |
| 13 | 8.64 | 20 | 6.51 | 27 | 5.54 |
| 14 | 8.20 | 21 | 6.33 | 28 | 5.45 |
| 15 | 7.82 | 22 | 6.17 | 29 | 5.36 |
| 16 | 7.49 | 23 | 6.02 | 30 | 5.28 |

**Table B Dollar Amount of Each Monthly Fixed Dollar Annuity Payment Per $1,000 Applied**

| | PLAN A | | | | PLAN B | | | | PLAN C | | PLAN D-Joint and Survivor Adjusted Age of Female Joint Annuitant | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Life Income | | 5 Years Certain | | 10 Years Certain | | 15 Years Certain | | With Refund | | | | | | | |
| Adj. Age* | M | F | M | F | M | F | M | F | M | F | Adj Male Age* | 10 Years Younger | 5 Years Younger | Same Age | 5 Years Older | 10 Years Older |
| 55 | 4.79 | 4.25 | 4.68 | 4.25 | 4.62 | 4.22 | 4.53 | 4.18 | 4.42 | 4.10 | 55 | 3.51 | 3.69 | 3.88 | 4.06 | 4.23 |
| 60 | 5.29 | 4.72 | 5.25 | 4.70 | 5.14 | 4.66 | 4.90 | 4.57 | 4.86 | 4.48 | 60 | 3.78 | 3.99 | 4.24 | 4.49 | 4.72 |
| 65 | 6.10 | 5.35 | 6.03 | 5.32 | 5.81 | 5.22 | 5.48 | 5.05 | 5.43 | 4.97 | 65 | 4.07 | 4.38 | 4.72 | 5.07 | 5.39 |
| 66 | 6.29 | 5.51 | 6.21 | 5.47 | 5.96 | 5.36 | 5.56 | 5.16 | 5.58 | 5.08 | 66 | 4.15 | 4.48 | 4.84 | 5.21 | 5.56 |
| 67 | 6.50 | 5.67 | 6.41 | 5.63 | 6.11 | 5.50 | 5.66 | 5.26 | 5.70 | 5.20 | 67 | 4.22 | 4.58 | 4.97 | 5.36 | 5.73 |
| 68 | 6.73 | 5.85 | 6.62 | 5.80 | 6.28 | 5.66 | 5.76 | 5.37 | 5.85 | 5.33 | 68 | 4.31 | 4.69 | 5.10 | 5.53 | 5.92 |
| 69 | 6.97 | 6.04 | 6.84 | 5.98 | 6.44 | 5.80 | 5.86 | 5.49 | 6.00 | 5.47 | 69 | 4.40 | 4.80 | 5.25 | 5.70 | 6.12 |
| 70 | 7.23 | 6.25 | 7.07 | 6.18 | 6.61 | 5.96 | 5.96 | 5.60 | 6.16 | 5.61 | 70 | 4.50 | 4.93 | 5.40 | 5.89 | 6.34 |
| 71 | 7.51 | 6.47 | 7.32 | 6.39 | 6.78 | 6.14 | 6.05 | 5.71 | 6.33 | 5.76 | 71 | 4.60 | 5.06 | 5.57 | 6.10 | 6.57 |
| 72 | 7.80 | 6.71 | 7.58 | 6.62 | 6.96 | 6.31 | 6.14 | 5.83 | 6.51 | 5.93 | 72 | 4.71 | 5.20 | 5.75 | 6.31 | 6.82 |
| 73 | 8.12 | 6.97 | 7.85 | 6.86 | 7.14 | 6.50 | 6.23 | 5.94 | 6.70 | 6.10 | 73 | 4.83 | 5.35 | 5.94 | 6.55 | 7.09 |
| 74 | 8.45 | 7.26 | 8.14 | 7.12 | 7.32 | 6.69 | 6.31 | 6.04 | 6.90 | 6.28 | 74 | 4.95 | 5.51 | 6.15 | 6.80 | 7.37 |
| 75 | 8.82 | 7.56 | 8.44 | 7.39 | 7.49 | 6.89 | 6.38 | 6.14 | 7.11 | 6.48 | 75 | 5.08 | 5.68 | 6.37 | 7.07 | 7.68 |
| 76 | 9.21 | 7.90 | 8.76 | 7.69 | 7.67 | 7.09 | 6.45 | 6.24 | 7.33 | 6.68 | 76 | 5.22 | 5.87 | 6.61 | 7.36 | 8.01 |
| 77 | 9.62 | 8.26 | 9.09 | 8.01 | 7.84 | 7.29 | 6.51 | 6.33 | 7.56 | 6.90 | 77 | 5.37 | 6.07 | 6.87 | 7.67 | 8.36 |
| 78 | 10.07 | 8.65 | 9.44 | 8.34 | 8.01 | 7.49 | 6.57 | 6.41 | 7.80 | 7.13 | 78 | 5.54 | 6.29 | 7.15 | 8.01 | 8.74 |
| 79 | 10.56 | 9.07 | 9.80 | 8.69 | 8.17 | 7.69 | 6.62 | 6.48 | 8.06 | 7.38 | 79 | 5.71 | 6.52 | 7.45 | 8.37 | 9.14 |
| 80 | 11.06 | 9.53 | 10.17 | 9.07 | 8.33 | 7.89 | 6.66 | 6.55 | 8.32 | 7.04 | 80 | 5.90 | 6.78 | 7.77 | 8.75 | 9.57 |
| 81 | 11.61 | 10.03 | 10.55 | 9.46 | 8.48 | 8.08 | 6.70 | 6.61 | 8.60 | 7.91 | 81 | 6.10 | 7.05 | 8.12 | 9.17 | 10.02 |
| 82 | 12.19 | 10.57 | 10.94 | 9.87 | 8.61 | 8.26 | 6.73 | 6.66 | 8.89 | 8.21 | 82 | 6.32 | 7.34 | 8.49 | 9.61 | 10.51 |
| 83 | 12.81 | 11.16 | 11.33 | 10.30 | 8.74 | 8.43 | 6.76 | 6.70 | 9.20 | 8.51 | 83 | 6.55 | 7.65 | 8.90 | 10.08 | 11.02 |
| 84 | 13.46 | 11.79 | 11.72 | 10.74 | 8.86 | 8.59 | 6.79 | 6.74 | 9.52 | 8.83 | 84 | 6.80 | 7.99 | 9.33 | 10.58 | 11.56 |
| 85 | 14.16 | 12.48 | 12.12 | 11.19 | 8.97 | 8.74 | 6.81 | 6.77 | 9.85 | 9.18 | 85 | 7.07 | 8.36 | 9.78 | 11.11 | 12.13 |

*Adjusted age of annuitant. M=Male F=Female

Table B above is based on the "1983 Individual Annuitant Mortality Table A" assuming a 3% annual effective interest rate. Settlement rates for any age, or any combination of age and sex not shown above, will be calculated on the same basis as those rates shown in the table above. Such rates will be furnished by us upon request. Amounts shown in the Table below are based on assuming a 3% annual effective interest rate.

**PLAN E Dollar Amount of Each Monthly Fixed Dollar Annuity Payment Per $1,000 Applied**

| Years Payable | Monthly Payment | Years Payable | Monthly Payment | Years Payable | Monthly Payment |
|---|---|---|---|---|---|
| 10 | $ 9.61 | 17 | $ 6.23 | 24 | $ 4.84 |
| 11 | 8.86 | 18 | 5.96 | 25 | 4.71 |
| 12 | 8.24 | 19 | 5.73 | 26 | 4.59 |
| 13 | 7.71 | 20 | 5.51 | 27 | 4.47 |
| 14 | 7.26 | 21 | 5.32 | 28 | 4.37 |
| 15 | 6.87 | 22 | 5.15 | 29 | 4.27 |
| 16 | 6.53 | 23 | 4.99 | 30 | 4.18 |

STATE OF MINNESOTA
DISTRICT COURT, FOURTH DISTRICT

BENACQUISTO, ET AL. : Nos. 96-18477, 97-4742, 98-15681
v.
AMERICAN EXPRESS FINANCIAL CORP., ET AL.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BENACQUISTO, ET AL. No. 00-1980 DSD
v.
AMERICAN EXPRESS FINANCIAL CORP., ET AL.

# NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT, AND FAIRNESS HEARING

**THIS NOTICE HAS BEEN SENT TO YOU BY ORDER OF THE COURT. PLEASE READ THIS ENTIRE NOTICE CAREFULLY.** It discusses the proposed settlement of class action lawsuits involving certain life insurance policies and deferred annuity contracts. **You have not been sued.** Nevertheless, the proposed settlement may affect your rights as a member of the class.

**YOU MUST MAKE CERTAIN DECISIONS NOW:**

**First**, you must decide whether you want to be part of the proposed settlement as to each applicable life insurance policy or deferred annuity contract you own or owned. If you do, you must make other decisions before January 29, 2001, about (1) certain settlement benefits that are described below and (2) whether you want to object to the proposed settlement or appear at the fairness hearing, following the procedures set forth in Part I of this Notice. The Courts will hold a hearing on March 6, 2001, to evaluate the fairness of the proposed settlement.

**Second**, if you do not want to be part of the settlement with respect to a life insurance policy or deferred annuity contract, you must request exclusion from the settlement for that policy or annuity by January 29, 2001, following the procedures set forth in Part H of this Notice. Otherwise, for each policy or annuity you do not exclude from the class, you will be bound by all of the terms of the proposed settlement if the Courts approve it.

If you do not exclude yourself from the class, the proposed settlement (if approved) may affect your right to start or continue any other lawsuit or proceeding involving your Policy or Annuity. In addition, you will give up any claims arising from the marketing, sale, servicing or administration of your Policy or Annuity. The Release of Claims, which addresses this issue, is reprinted in full as an appendix to this notice.

# TABLE OF CONTENTS FOR THIS NOTICE


PAGE NO.

PART A: WHY YOU HAVE RECEIVED THIS NOTICE . . . . . . . . . . 3

PART B: DESCRIPTION OF THE CLASS . . . . . . . . . . 4

PART C: DECISIONS YOU MUST MAKE NOW . . . . . . . . . . 5

1. IF YOU DECIDE TO REMAIN IN THE CLASS . . . . . . . . . . 6
2. IF YOU DECIDE TO EXCLUDE YOURSELF FROM THE CLASS . . . . . . . . . . 7

PART D: DESCRIPTION OF THE LAWSUITS AND THE SETTLEMENT NEGOTIATIONS . . . . . . . . . . 7

PART E: THE BENEFITS OF THE PROPOSED SETTLEMENT . . . . . . . . . . 8

1. GENERAL RELIEF . . . . . . . . . . 9
2. INTERNAL REPLACEMENT RELIEF . . . . . . . . . . 10
3. THE CLAIM REVIEW PROCESS . . . . . . . . . . 11

PART F: INCOME TAX CONSEQUENCES . . . . . . . . . . 14

PART G: RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUITS . . . . . . . . . . 15

PART H: INSTRUCTIONS FOR EXCLUDING YOURSELF FROM THE CLASS . . . . . . . . . . 15

PART I: FAIRNESS HEARING, RIGHT TO OBJECT TO PROPOSED SETTLEMENT, AND THE RIGHT TO APPEAR . . . . . . . . . . 17

1. THE FAIRNESS HEARING . . . . . . . . . . 17
2. YOUR RIGHT TO OBJECT, AND INSTRUCTIONS FOR OBJECTING . . . . . . . . . . 17
3. YOUR RIGHT TO APPEAR . . . . . . . . . . 18

PART J: ATTORNEYS REPRESENTING THE SETTLEMENT CLASS . . . . . . . . . . 19

PART K: ATTORNEYS' FEES AND EXPENSES . . . . . . . . . . 19

PART L: RIGHT TO TERMINATE THE PROPOSED SETTLEMENT . . . . . . . . . . 19

PART M: PRELIMINARY AND PERMANENT INJUNCTION, AND EFFECT ON PENDING AND FUTURE LAWSUITS, ARBITRATIONS AND OTHER PROCEEDINGS . . . . . . . . . . 19

PART N: HOW TO GET ADDITIONAL INFORMATION . . . . . . . . . . 20

APPENDIX: RELEASE AND WAIVER . . . . . . . . . . 21




## PART A: WHY YOU HAVE RECEIVED THIS NOTICE

You received this Notice because records indicate that you:

(1) have or had ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") as a result of an individual sale in the United States, including its territories and commonwealths, issued at any time during the period of January 1. 1985 through and including February 29, 2000 (this Notice refers to such life insurance policies as "Policies");

(2) have or had an ownership interest in an individual deferred annuity contract or a participation or beneficial interest in a group deferred annuity contract, issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the period of January 1, 1985 through and including February 29, 2000 (this Notice refers to those companies, along with their related companies, American Express Financial Corporation and American Express Financial Advisors, collectively, as the "Defendants"); or

(3) are a tax-qualified retirement plan, or a person acting on behalf of such plan or its participants and beneficiaries (with respect to the plan), and the plan purchased, owned, held or had any interest with respect to a group deferred annuity contract issued in the United States, including its territories and commonwealths, by one of the Defendants and that was in force at any time during the period of January 1, 1985 through and including February 29, 2000 (this Notice refers to such group contracts as "Group Qualified Annuities," and it refers to the deferred annuity contracts and participation and beneficial interests described in this paragraph and the previous paragraph as "Annuities.").

You may be eligible for certain benefits through the proposed settlement of these class action lawsuits, which were brought on behalf of a class of such Policy and Annuity owners against the Defendants. Although the Courts have not yet approved the proposed settlement, they have directed that this Notice be sent to you as a potential class member.

**You should read this Notice carefully, because it explains decisions you must make and actions you must take *now*. Those decisions and actions will affect your legal rights and any relief you may be eligible to receive under the proposed settlement.**

In return for resolving all claims involving the Policies and Annuities in the class, the proposed settlement offers class members a choice of relief: General Relief, Internal Replacement Relief (where eligibility criteria are met), and the Claim Review Process.

1. **General Relief**. General Relief is automatic and is available to all class members without requiring any showing that they were harmed in any way or that the Defendants did anything wrong. Class members who do not elect to participate in another form of relief will automatically receive free accidental death benefit coverage for a period of up to three years

as described below. **You need not do anything now if you want the General Relief.**

The General Relief is discussed at pages 9-10 below.

2. <u>**Internal Replacement Relief**</u>. Class members who purchased Policies from Defendants in order to replace earlier-purchased life insurance policies may be eligible, in certain circumstances described at pages 10-11 of this Notice, to receive relief directed to the costs or other consequences of that transaction. The enclosed Statement of Eligibility shows whether you may be eligible to participate in the Internal Replacement Relief. **If you are eligible and wish to participate in the Internal Replacement Relief, you must properly fill out the enclosed Election Form by electing the Internal Replacement Relief, and return it so that it is postmarked no later than January 29, 2001.** Your Election Form will only refer to the Internal Replacement Relief if, according to the Defendants' records, you may be eligible for this form of relief.

   The Internal Replacement Relief is discussed at pages 10-11 below.

3. <u>**The Claim Review Process**</u>. In contrast with General Relief and the Internal Replacement Relief, the Claim Review Process requires participants to support a claim that they were misled, or that wrongdoing with economic consequences otherwise occurred, with respect to the marketing, sale, administration or servicing of their Policies or Annuities. If you believe you were misled, or that wrongdoing with economic consequences otherwise occurred with respect to your Policy or Annuity, you may elect to participate in the Claim Review Process. A claim evaluator will review the strength or weakness of your claim, and the relief awarded, if any, will be based upon that review. **To participate in the Claim Review Process you must properly fill out the enclosed Election Form by electing the Claim Review Process, and return it so that it is postmarked no later than January 29, 2001.**

   The Claim Review Process is discussed at pages 11-14 below.

The total value of the settlement relief is estimated to be $215 million.

## PART B: DESCRIPTION OF THE CLASS

In Orders dated October 2, 2000, the Courts preliminarily certified a Class for purposes of a settlement.

The Class includes (a) all persons or entities who have or had an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company or IDS Life Insurance Company of New York as a result of an individual sale in the United States, including its territories and commonwealths, issued at any time during the period of January 1, 1985 through February 29, 2000; (b) all persons or entities who have or had an ownership interest in an individual deferred annuity contract or a participation or beneficial interest in a tax-qualified group deferred annuity contract issued by any of the Defendants in the United States, including its territories and commonwealths, that was in force at any time during the period of January 1, 1985 through February 29, 2000; and (c) all tax-



qualified retirement plans and persons or entities acting on behalf of such a plan and its participants and beneficiaries (with respect to the plan), including but not limited to trustees, plan administrators and plan sponsors, that purchased, owned, held or had any interest with respect to a group deferred annuity contract issued in the United States, including its territories and commonwealths, by one of the Defendants and that was in force at any time during the period of January 1, 1985 through February 29, 2000. You can be a member of this Class even if your Policy or Annuity is no longer in force.

Notwithstanding the description above, the following persons and entities are not included in the proposed Class:

- any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants;
- any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under section 1035 of the Internal Revenue Code.

In addition, the proposed Class does not include persons or entities (unless such persons or entities are Class members by virtue of their ownership interest in another Policy or Annuity) who have or had an ownership interest in Policies or Annuities that:

- were timely excluded from the Class in accordance with the steps described in Part H (pp. 15-17) of this Notice; or
- were terminated by reason of death, and, in the case of a Policy, death benefits were paid; or
- were not accepted or funded, or were returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; or
- were rescinded as part of a reissue of a new policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; or
- were the subject of a release signed by any person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity; or
- were term life insurance policies, graded premium whole life insurance policies, immediate annuities, or deferred annuities that were settled (that is, annuitized) prior to January 1, 1985.

If you satisfy the criteria described in this Part B, you are a Class Member.

## PART C: DECISIONS YOU MUST MAKE NOW

**You must decide *now* whether you want to remain in the Class or to exclude yourself from the Class.**

If you remain in the Class, you have two additional choices to make now, as described below in Parts E and I (pp. 8-9 and 17-19).

If you want to be excluded from the Class, you must notify the Courts as described below in Part H (pp. 15-17).

If you have or had an ownership interest in more than one Policy or Annuity covered by the definition of the Class, you must make a separate decision for each Policy or Annuity.

Where more than one person has or had an ownership interest in a Policy or Annuity, all owners will be presumed to be acting jointly with the person or entity whose Social Security number or taxpayer identification number appears in Defendants' records as the identifying owner of the Policy or Annuity. If one owner excludes a particular Policy or Annuity from the Class, then all co-owners will be presumed to be acting jointly, and all persons with an ownership interest in that Policy or Annuity are bound by that decision. Separate rules may apply if you have or had an interest in a Group Qualified Annuity — consult the Plan Participant Information Sheet, which should be enclosed with this Notice if you have a participation interest in a Group Qualified Annuity, or the Fact Sheet for Qualified Plans, which should be enclosed with this Notice if you are acting on behalf of a tax-qualified retirement plan and its participants and beneficiaries (with respect to the plan), which plan purchased, owned, held or had any interest in a Group Qualified Annuity. If you did not receive the Plan Participant Information Sheet or the Fact Sheet for Qualified Plans, and you believe you should have, call the IDS Life Class Action Information Center at 1-800-433-5314.

**1. IF YOU DECIDE TO REMAIN IN THE CLASS:**

- You may receive one of three types of settlement relief available if the proposed settlement is approved. Unless you choose otherwise, you will automatically receive the General Relief. Alternatively, you may be eligible for and elect the Internal Replacement Relief, or you may apply for relief through the Claim Review Process. You must decide now which settlement benefit you want to receive. These three options are described in greater detail in Part E below.
- You also may object to any aspect of the proposed settlement by filing a written objection. Your written objection must be mailed to the Courts and separately to the parties postmarked no later than January 29, 2001. If you want to speak at the Fairness Hearing, you also must file and serve a Notice of Intention to Appear at the Fairness Hearing by that same date. The procedures for objecting and speaking at the Fairness Hearing are described in Part I (pp. 17-18) below.
- You will be bound by the Courts' rulings. If you remain in the Class, you will be bound by all orders and judgments in these cases, whether favorable or unfavorable. As set forth in the Release annexed as the Appendix to this Notice, you will not be able to start, continue or otherwise participate in certain other claims, lawsuits or other proceedings relating to any Policy or Annuity for which you choose to remain in the Class.



**2. IF YOU DECIDE TO EXCLUDE YOURSELF FROM THE CLASS:**

- You must submit a written request to exclude yourself from the Class with respect to a particular Policy or Annuity, which must be postmarked no later than January 29, 2001. The procedure for doing so is described at pages 15-17 below.
- If you exclude yourself from the Class with respect to a particular Policy or Annuity: (1) you will not be eligible for General Relief, the Internal Replacement Relief or the Claim Review Process for that Policy or Annuity; (2) you will not be able to object to the proposed settlement; and (3) you will not be bound, for the purposes of the Policy or Annuity you exclude from the proposed settlement, by any orders or judgments entered in these cases if the proposed settlement is approved.

## PART D: DESCRIPTION OF THE LAWSUITS AND THE SETTLEMENT NEGOTIATIONS

This litigation involves four lawsuits against the Defendants. Three cases were filed in the Minnesota State Court for the County of Hennepin and were later consolidated. A fourth case was filed in the United States District Court for the District of Minnesota. The cases are referred to collectively in this Notice as the "Actions."

All of the Plaintiffs styled their cases as class actions, seeking relief not only for themselves, but for all similarly-situated persons.

In the Actions, Plaintiffs allege that the Defendants made certain misrepresentations, failed to disclose certain facts and engaged in other wrongdoing in connection with the marketing, sale, administration, and servicing of their life insurance and deferred annuity products. The Defendants vigorously dispute these allegations.

The parties negotiated the proposed settlement with an understanding of the factual and legal issues that would affect the outcome of these Actions. During the course of the lawsuits, Plaintiffs, through their attorneys, thoroughly examined and investigated the facts and law relating to the issues in these cases. Plaintiffs' factual investigation included review of approximately 350,000 pages of documents from the Defendants' files, interviews and sworn depositions of Defendants' officers, employees and sales representatives, and consultations with various experts.

The Plaintiffs and the Defendants believe the final outcome of the lawsuit, if it were to proceed through trial and appeals, is uncertain. Based on their evaluation of the facts and law, the Plaintiffs, the Defendants and their attorneys have determined that this proposed settlement is fair, reasonable and adequate. They have reached this conclusion based on the substantial benefits the proposed settlement provides Class Members, the risks, uncertainties and costs inherent in this litigation, and the desirability of providing benefits to Class Members promptly, rather than continuing this protracted litigation.

The Courts have not determined the merits of the claims or defenses in these Actions, and they will not do so if they approve the proposed settlement. The proposed settlement does not suggest that the Defendants have or have not done anything wrong, or that Plaintiffs and the Class would or would not win their cases if they were to go to trial.

## PART E: THE BENEFITS OF THE PROPOSED SETTLEMENT

If you decide to remain in the Class, and if the Courts approve the proposed settlement, you may receive one form of settlement benefits for each of your Policies or Annuities. The specific benefits for which you are eligible depend on several factors, which are explained further below. You do not have to give up your Policy or Annuity to receive benefits under the proposed settlement.

**Enclosed with this Notice is a Statement of Eligibility for each of your Policies and Annuities, which identifies the benefits you are eligible to receive. Please consult your Statement of Eligibility as you review the benefits described below. If you have any questions about your Statement of Eligibility, please call 1-800-433-5314.**

There are three categories of benefits available under the proposed settlement: General Relief, the Internal Replacement Relief, and the Claim Review Process. Each of these categories is described below. **If you decide to remain in the Class, you must, for each Policy or Annuity you decide to keep in the Class, choose now among General Relief, Internal Replacement Relief (if you are eligible), and the Claim Review Process. You may only choose one form of settlement benefits for each Policy or Annuity.**

If you choose General Relief, you do not need to do anything now. You will receive the General Relief automatically if the Courts approve the proposed settlement.

If you are eligible to participate in the Internal Replacement Relief and you wish to receive this benefit instead of General Relief or the Claim Review Process, you must make this choice now, and submit an Election Form electing the Internal Replacement Relief so that it is postmarked no later than January 29, 2001.

If, instead of General Relief or the Internal Replacement Relief, you want to participate in the Claim Review Process, you must make this choice now, and submit an Election Form electing the Claim Review Process so that it is postmarked no later than January 29, 2001.

There will be only one award of relief per Policy or Annuity.

Benefits will become available under the proposed settlement only if and when two things happen. First, the Courts must approve the proposed settlement. The Courts will grant approval if they find that the proposed settlement is fair, reasonable and adequate and that these Actions meet all of the legal requirements of a class action. Second, the Courts' approval of the settlement must become final and no longer be subject to appeal. No one can say with certainty if or when these events will occur.



Please note: You will not be eligible for any relief under this settlement, nor will you release any claims, if the Courts do not approve the proposed settlement, or if one of the parties terminates the settlement.

### 1. GENERAL RELIEF

If you do not elect the Internal Replacement Relief (if you are eligible) or the Claim Review Process and do not exclude yourself from the Class with respect to a Policy or Annuity, you automatically will receive the General Relief. The General Relief consists of the Accidental Death Benefit (referred to in this Notice as the "ADB"), described below. The value of the General Relief will be $100 million, based on comparable insurance rates in the open market.

The ADB provides death benefit coverage as described below. This benefit will be provided free of charge to all Class Members who are to receive General Relief.

- *Payment of Benefit*. The ADB provides for payment of the death benefit when the Defendants receive due and timely proof of the accidental death of the "Measuring Life" (defined below) within the time period described below. The payment of the benefit will be made to the "Payee" (defined below).
- *Amount of Benefit*. The amount of the death benefit available under the ADB will be based on whether it relates to a Policy, Annuity, or tax-qualified Annuity, and the account value of or premiums paid on the Annuity, or the face amount of the Policy, as set forth in the Stipulation of Settlement. Please see the Benefit Voucher for the estimated amount. The estimated amount may be adjusted upward, depending upon the elections made by all Class Members.
- *Duration of the Benefit*. The duration of the benefit available under the ADB will depend on the attained age of the Measuring Life. The ADB will have the duration indicated on the Benefit Voucher.
- *"Measuring Life" and "Payee"*. The "Measuring Life," for purposes of the ADB, is the person upon whose accidental death the ADB will be paid, subject to the terms set forth in the enclosed Benefit Voucher. The person who will be paid the ADB is the "Payee." Unless changed, the Measuring Life and the Payee will be the persons listed on the Benefit Voucher.
- *Changing the Measuring Life or Payee*. If the person shown on your Benefit Voucher as your Default Measuring Life is deceased as of the date the settlement is implemented, before the date the settlement is implemented (or, if that is impossible due to the date of death of your Default Measuring Life, within 30 days of the death of the Default Measuring Life), you must choose an Alternate Measuring Life from among your spouse, parent, child or any other person in whom you have an insurable interest. You also may change the Payee at any time before the payment of a claim for the accidental death benefit. You should change the Payee if the person designated as Payee dies before the date the settlement is implemented or during the coverage period. To change the Measuring Life or the Payee, you must fill out the enclosed

Designation Form following its instructions and return it to:

IDS Life Class Action Information Center
P.O. Box 1595
Faribault, Minnesota 55021-1595
Re: Designation Form

## 2. INTERNAL REPLACEMENT RELIEF

You may be eligible for the Internal Replacement Relief if you owned a Policy issued by one of the Defendants, and you replaced it with another Policy issued by one of the Defendants, and if you meet the other criteria (described below) for this Relief.

The enclosed Statement of Eligibility indicates whether you may have a Policy that makes you eligible for the Internal Replacement Relief. Even if the Statement of Eligibility indicates that you may be eligible for the Internal Replacement Relief, the Defendants may, based on their records, determine that you are not eligible for the Internal Replacement Relief. If you are found to be ineligible, you will be given notice of your ineligibility and an opportunity to receive either the General Relief or the Claim Review Process.

If you believe you are entitled to the Internal Replacement Relief and the Statement of Eligibility does not indicate that you may be eligible for that form of relief, you may call 1-800-433-5314 to determine whether you are eligible for the Internal Replacement Relief.

The following describes the criteria for and the remedies available (if the Internal Replacement Relief is properly elected) through the Internal Replacement Relief:

- if you paid a surrender charge on a policy issued by one of the Defendants because you used the value of that policy to purchase the new Policy, you will receive an addition to the Policy's cash value equal to 50% of the surrender charge you actually paid (if the new Policy is still in force) or a cash payment of the same amount (if the new Policy is terminated).
- if you used the value of a policy issued by one of the Defendants to purchase a new Policy and the Underwriting Rate Class on the new Policy is higher than the one on the policy you replaced, then the original Underwriting Rate Class will be reinstated going forward, beginning within 120 days after the settlement is implemented, on the portion of your Policy equal to the original face amount of your original policy (if the new Policy is still in force), or you will have the opportunity to apply for an enhanced policy as provided below (if your Policy is terminated).
- if you used the value of a policy issued by one of the Defendants to purchase a new Policy and the new Policy was in a lower Cost of Insurance Rate Band (as a result of having a lower face amount than the original policy), meaning that the new Policy's cost of insurance deduction was higher per $1000 of coverage, then the original Cost of Insurance Rate Band will be reinstated going forward, beginning within 120 days after the settlement is implemented (if the new Policy is still in force), or you will have the opportunity to apply for an enhanced policy as provided below (if your Policy is terminated).
- if you used the value of a policy issued by one of the Defendants to purchase a new Policy that was identical to the original policy, then you will receive (within 90 days after the settlement is implemented) a one time 75 basis point bonus applicable to the new Policy's cash value at the time of the replacement, which will be credited to the Policy (if the new Policy is still in force) or you will have the opportunity to apply for an enhanced policy as provided below (if your Policy is terminated).

If you are entitled to apply for an enhanced policy as provided above, you will be given the opportunity for 120 days after the settlement is implemented to apply for a new individual universal life or variable universal life insurance policy on the life of the person designated as the insured under the now terminated Policy that was purchased using the value of an earlier policy issued by one of the Defendants. The enhanced policy must have a face amount that is no less than the minimum policy issue amount and that is equal to (or less than) the face amount of the now terminated Policy. Defendants will (after the first year) apply a policy credit of 100 basis points on premium payments received during the first year of the enhanced policy (up to the amount of premiums equal to the target premium for the enhanced policy). Favorable underwriting terms will apply and, if they are not met, you may choose an alternative insured for the enhanced policy from among your spouse, parents, children or others in whom you have an insurable interest.

If there is more than $2 million in unused funds in the Claim Review Process (described below), those unused funds will be distributed to all Class Members who will receive relief. If you are to receive the Internal Replacement Relief and there are such unused funds, you will receive that distribution in the form of accidental death benefits. Accordingly, you may need to change the Measuring Life or want to change the Payee listed on the enclosed Statement of Eligibility. You may use the enclosed Designation Form to make such changes.

**To elect the Internal Replacement Relief, you must properly fill out and return the enclosed Election Form electing the Internal Replacement Relief so that it is postmarked no later than January 29, 2001. Otherwise, you cannot participate in the Internal Replacement Relief.**

## 3. THE CLAIM REVIEW PROCESS

If you believe that you were misled, or that wrongdoing with economic consequences otherwise occurred, with respect to the marketing, sale, administration or servicing of your Policy or Annuity, you may elect to submit your claim to the Claim Review Process under the proposed settlement instead of receiving General Relief or the Internal Replacement Relief (if eligible). The Claim Review Process is provided at no cost to you.

In the Claim Review Process, the relief awarded can range from none at all to relief designed to redress any loss that may have resulted from the alleged wrongdoing, based on the particular facts of your claim as evidenced by your written description of your claim and any other documents or other materials