# CLAIM FORM
# IDS LIFE CLASS ACTION SETTLEMENT

**PART I**

Please review, confirm and, where necessary, supply the following information. If changes are required to any pre-printed information, please make them in the space provided.

1. Name(s): VVV TRUST - DECEDENT'S TRUST
2. Policy or Annuity Number: 93006395001
3. Claim Number: 14094668
4. Address: C/O RICHARD D VEHRING POA
   15327 E REDROCK DR
   FOUNTAIN HILLS AZ 85268-5816
5. Telephone Number: 480.836.9773
6. Business Address (optional): ____________________
   ____________________
   ____________________
7. Business Telephone Number (optional): (____) ____ - ____
8. Social Security Number: 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
9. Name of the Person or Entity that Sold the Policy or Annuity (if known): JASON G. KNIGHT
   FINANCIAL ADVISOR
   AMERICAN EXPRESS
   931 E. SOUTHERN AVE. SUITE 112
   MESA, AZ 85204
   480.633.1799

MTM CF 00008239

RECEIVED NOV 2 9 2001

14094668 - 164

PLEASE NOTE: IF YOU DO NOT FILL OUT THIS SECTION, YOUR CLAIM WILL NOT BE CONSIDERED IN THE CLAIM REVIEW PROCESS, AND YOU WILL RECEIVE THE GENERAL RELIEF.

**SPECIFIC CLAIM:**

American Express Representative, Jason Knight, recommended and sold my mother a $ 450,000 Flexible Portfolio Annuity with the understanding that it would protect my mother's trust and provide the full payment of $ 450,000 if my mother passed away. He confirmed on several occasions that full payment would be provided upon her death, even if the market conditions had changed. She was eighty-five years old at the time it signed.

After my mother passed away, American Express would only pay ~~two-thirds~~ the $450,000 amount stating that they only pay the full amount for those under seventy-five years of age. Jason was not aware of the seventy-five year limitation, and it was not mentioned on the nine-page application form that we signed.

Our claim is for full restitution of $ 129,182.66 plus interest for the unpaid earnings. We also request compensation for misrepresentation, lack of full disclosure and unethical practices of American Express.

**PURCHASE OF THE ANNUITY:**

We purchased the Annuity with the understanding and confirmation that it would guarantee full payment of $ 450,000 upon my mother's death, even if market conditions had changed.

**DISCUSSIONS WITH THE FINANCIAL ADVISOR:**

We have met and talked with Jason Knight on a weekly basis. The Annuity policy was described to us on several occasions as an insurance vehicle that would provide protection for my parent's trust should my mother pass away. It was confirmed that no matter what occurred in the market, the annuity would provide full payment of the $ 450,000 Annuity.

**SUPPORT OF THE CLAIM:**

Both Jason Knight and MacAuley Beloney, representatives of American Express, have supported our claim and requested that we receive the full compensation that they committed. American Express Claim Department has denied both their and our requests stating that our claim falls under the Class Action Settlement. The following is the documentation that supports our claim.

1. The initial nine-page application signed June 24, 1999, noting my mother's birthday and that she was 85 years old when the annuity was signed. There was no reference to any payout change should an applicant be under or over seventy-five years of age.
2. A letter dated May 23, 2001 providing only $ 320,817.34 of the $ 450,000 Annuity.
3. A letter dated May 24, 2001 to Jason Knight demanding full restitution of the Annuity.
4. A letter dated June 12, 2001 from MacAuley Beloney supporting our claim.
5. A letter dated August 3, 2001 from William Ellis, Compliance Department referring our claim to the IDS Class Action Information Center and denying our claim.
6. A letter dated November 15, 2001 from Jason Knight confirming his understanding that the Annuity he sold us would provide full payment and that we should receive full restitution.

**OTHER INFORMATION:**

Both my parents and my family have been clients of American Express since 1980 and we began working with Jason Knight when my parents moved to Arizona in 1998. The denial of our claim by American Express Claim Department is equally upsetting to Jason Knight, since he is also an American Express Instructor and has been recommending the same Annuity to other American Express representatives with older clients.

14094668 - 164

**CLAIMANT DECLARATION**

I swear under penalty of perjury that (*i*) the foregoing is true and correct; (*ii*) I submit herewith copies of all documents in my possession or control relating to the life insurance policy or deferred annuity contract that is the subject of the claim; and (*iii*) all such copies (if any) are authentic and unaltered copies of the original documents. I understand that if I am found to have made a willfully false statement as to any material matter in this Claim Form, I can be criminally prosecuted for perjury and may be subjected to a fine or imprisonment, or both under applicable law.

By signing below, I hereby consent to the Company's disclosure to the Claim Evaluator of information necessary for the evaluation and administration of my claim. This information consists of this Claim Form and documents I submit, as well as the information that the Company will provide separately to the Claim Evaluator, which includes: my name, current address and Social Security Number; the issue age and gender of the policy's insured or the annuity's annuitant; the contract number and plan code (if any) of my policy or annuity; the date of issue and policy face amount on the date the policy was issued; the policy or annuity's termination date, if it is no longer an active policy or annuity; any surrender charge paid on the policy or annuity; the payment, loan and transaction history and current values of the policy or annuity as of August 31, 2000; the policy's scheduled premium, if applicable; the policy's or annuity's application file, to the extent available (excluding any medical underwriting); and summaries of complaints relating to the policy or annuity.

I understand that this information is being disclosed to the Claim Evaluator solely for purposes of evaluating and administering my claim, and that the Claim Evaluator shall keep this information confidential and not disclose it to any third parties.

Richard W. Welsing, POA (COPY ATTACHED)

Signature of VVV TRUST - DECEDENT'S TRUST

14094668 - 164

AFFIDAVIT AND INDEMNITY AGREEMENT
CONCERNING IDS LIFE CLASS ACTION SETTLEMENT

I/we: RICHARD D. VEHRING
(Please print your name(s))

hereby represent and affirm or swear the following under penalty of perjury:

1. That VVV TRUST - DECEDENT'S TRUST died on APRIL 9, 2001; AND
(Date)

2. At the time of his/her death, VVV TRUST - DECEDENT'S TRUST owned Policy/Annuity Number 93006395001; AND

3. I/~~we~~ act as Executor/~~Administrator or Personal Representative of the estate~~
[or]
~~There has been no estate opened or personal representative appointed for the decedent.~~

4. I/~~we~~ have no knowledge of any unpaid claims against decedent or his/her estate.

5. I/~~we~~ have sole entitlement to the class action settlement benefits derived from this policy/annuity.

6. I/~~we~~ understand that IDS Life Insurance Company, together with its affiliates, is relying upon this Affidavit as an inducement to recognize my/our interest in the class action settlement.

In consideration of recognizing my/our interest in the class action settlement, I/~~we~~ hereby agree to **indemnify and hold harmless** IDS Life Insurance Company, together with its affiliates, its officers and directors, agents and employees from any claims, losses, or damages arising out of this claim of authority, including, but not limited to, any liability for State or Federal taxes, fees, or penalties.

Richard D. Vehring (signature) RICHARD D. VEHRING Dated: 11-26-01
(Sign your name) (Print your name)

Dated:
(Sign your name) (Print your name)

Dated:
(Sign your name) (Print your name)

STATE OF Arizona )
) SS:
COUNTY OF Maricopa )

Before me, a Notary Public in and for said County and State, personally appeared RICHARD D VEHRING, individually, who, being first duly sworn and deposed, state(s) that the foregoing is true and accurate.

WITNESS MY NOTARIAL SEAL this 26 day of November, 2001.

(signature)
Notary Public

Printed: LAURA McKEOWN

My County of Residence: Maricopa
My Commission Expires: 4-7-04

LAUREL MCKEOWN
Notary Public - Arizona
Maricopa County
My Commission Expires
Apr. 7, 2004

14094668 - 11

**IDS Life Insurance Company**
IDS Tower 10
Minneapolis, MN 55440

Service Team: RMST sent 6/28/97

Account Number: 1039-5247-9-001

BENE-ACCT BA

004

**Section A — Client Profile**

**ANNUITANT** **Will the annuitant own this annuity? *(Must be "Yes" for IRA & TSA)*** ☐ Yes ☒ ***No (complete owner information below)***

☐ Mr. ☒ Mrs. ☐ Miss ☐ Ms. **Sex** ☐ Male ☒ Female **Marital Status** ☐ Single ☐ Divorced ☐ Married/domestic partner ☒ Widowed **Number of Dependents** 0

Client's Name as on Record with IRS (include first, middle and last name): VIVIAN A. VEHRING
Age: 85
Birthdate (M/D/Y): 05 26 1913

Residential Address: 15639 SOUTH 5th ST
**U.S. Social Security Number** 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

City: PHOENIX
Home Phone Number: 480-460-3533
Work Phone Number:

State: AZ Zip: 85048-1956
Citizenship: ☒ U.S. ☐ Other Country
If Other, is Client ☐ Resident Alien ☐ Non-resident Alien (attach W-8)

**Employee Information** Employer
Occupation: RETIRED

Employer Address
**Self-employed?** ☐ Yes ☒ No ☐ My employer is an investment firm, broker/dealer, bank, or other financial institution.

**OWNER** ☐ Mr. ☐ Mrs. ☐ Miss ☐ Ms. **Sex** ☐ Male ☐ Female **Marital Status** ☐ Single ☐ Divorced ☐ Married/domestic partner ☐ Widowed **Number of Dependents**

Client's Name as on Record with IRS (include first, middle and last name)
Age
Birthdate (M/D/Y)

Residential Address
**U.S. Social Security Number**

City
Work Phone Number

State Zip

**Employee Informat**

Employer Address

**Self-employed?**

**Other Ownership Info**

**UGMA/UTMA (Ass**

Name of Custodian

Name of Minor

**Designation of Successor Custodian**
*(This designation is not valid ...)*

[redacted]

**VICTOR V. VEHRING**
**VIVIAN A VEHRING**
15639 S 5TH ST (602) 460-3533
PHOENIX, AZ 85048

1195

Date JUNE 24, 1999 91-170/1221

Pay to the Order of IDS $ 450,000 00/xx

FOUR HUNDRED FIFTY THOUSAND AND 00/100 TH Dollars

**Bank of America**
40th Street and Chandler Branch 02269
3848 E. Chandler Blvd.
Phoenix, AZ 85044
257-0001 In Phoenix, 1-800-284-8491 Nationwide

For

⑆122101706⑆ 1195 233⑈786229⑈

Successor Custodian Name
Date (M/D/Y)

Signature
X

Signature of Witness
X

**Trust/Custodial/Business Ownerships**

☒ Trust ☐ Sole Proprietorship ☐ Partnership ☐ Private Deferred Comp Plan
☐ Corporation (State of Incorporation) ☐ Other

Name of Corporation, Partnership or Trust: THE VVV TRUST — Decedents Trust
Business/Trust TIN: 86-6285336
Date of Trust (M/D/Y): 10 01 1998

Name of Trustee(s) (Trust), or Authorized Signer (Corporation/Partnership): VIVIAN A. VEHRING & RICHARD D. VEHRING

Street Address (For Business Only — Include City, State and Zip): 15639 SOUTH 5th ST., PHOENIX, AZ 85048-1956

30427 A



(2/99)

27-094718

**Investment objective and risk tolerance for this purchase (check one or more, as appropriate):**
☐ Capital Preservation ☐ Capital Appreciation ☐ Income ☐ Protection ☐ Tax Considerations

**Federal Tax Bracket** ☒ 15% ☐ 28% ☐ More than 28%

**Annual Income** ☐ Under $20,000 ☒ $20,000-$50,999 ☐ $51,000-$100,999 ☐ $101,000 or more

**Net Worth (excludes primary residence)** ☐ Under $20,000 ☐ $20,000-$50,999 ☐ $51,000-$100,999 ☐ $101,000-$249,999 ☒ $250,000 or more

**Liquid Net Worth** ☐ Under $20,000 ☐ $20,000-$50,999 ☐ $51,000-$100,999 ☐ $101,000-$249,999 ☒ $250,000 or more

**Overall Risk Tolerance** ☐ Conservative ☐ Conservative/moderate ☐ Moderate ☒ Moderate/aggressive ☐ Aggressive

**Spouse's Name** ______________________ **Social Security Number** ______________________

## Section C Purchase Basis (choose one only per application)

☒ **NON-QUALIFIED** ☐ **CHECK IF 1035 EXCHANGE**

☐ **IRA**

**Type of IRA Establishing:**

☐ **Regular (active) IRA**
☐ **Segregated (rollover) IRA**
☐ **Beneficial IRA** (for use with IRA transfers after death only) ☐ Traditional ☐ Roth
______________________ as beneficiary of the deceased ______________________ IRA
☐ **Roth Contributory IRA**
The year for which the first contribution or conversion dollars were applied to any Roth IRA ______________
☐ (Yr) ________ **Roth Conversion IRA**
☐ **SEP** ☐ **SRA** First Participation Date (M/D/Y) ____________ ☐ SEP or SRA Adoption Agreement with another company
☐ Employer ☐ Employee
Name of Company ______________________ Address ______________________

**Type of contribution and amount paid with this application:**

☐ Contribution: for current tax year $__________ and/or prior tax year $__________
☐ Employer contribution $__________ designated tax year __________
☐ Rollover contribution $__________ from (check source) ☐ IRA or SEP ☐ Employer retirement plan ☐ SRA ☐ TSA
☐ Transfer contribution (must submit "Request for Transfer" form along with application)
☐ Roth Conversion $__________

☐ **TAX-QUALIFIED RETIREMENT PLAN *(IRC SECTION 401)***

Is American Express Trust Company custodian? ☐ Yes ☐ No ☐ Trusteed ☐ Custodial

Plan Name ______________________ Trustee/Administrator ______________________

Address ______________________

Type ☐ Profit Sharing (05) ☐ Assumed/Target Benefit (04) ☐ 401(k) (02)
☐ Money Purchase (06) ☐ Defined Benefit Pension (01) ☐ Other (10) __________

Plan fiscal year-end (M/D) __|__ Plan starting date (M/Y) __|____

☐ **OTHER TAX-QUALIFIED PLAN** ☐ **CHECK IF TSA TRANSFER**

Type of Plan ☐ 403(b) TSA ☐ Texas optional retirement program (ORP)
Type of Group ☐ Public schools and universities
☐ 501(c)(3) Nonprofit

403(b) Participant Information

Current annual salary from employer $______________________ (required)

Employment date (M/D/Y) __|__|____ Has employment been continuous? ☐ Yes ☐ No

Is owner/annuitant covered by employer's pension plan? ☐ Yes ☐ No

If yes, give name of plan ______________________

**Generally the annual contribution amount cannot exceed $10,000, 25% of includable compensation or the maximum exclusion allowance. Attach a copy of the TSA/TSCA calculation if these amounts are exceeded. Complete and initial the TSA Disclosure on page 6.**

**Deferred Annuities**

Single Payment $ ________ (Note: Minimum $5,000 except for I500)

- ☐ **Fixed Retirement Annuity — Value Plus (FRA-VP)**
- ☐ **Fixed Retirement Annuity — Extra Rate (FRA-XR)**
- ☐ **Guaranteed Term Annuity (GTA)** ________ Year Guarantee (1-10 whole years)
- ☐ **Index 500 Annuity (I500)** (Minimum $2,000)
- ☐ **Portfolio Guaranteed Term Annuity (PGTA)** ________ Year Guarantee (1-10 whole years)
- ☐ **Other** (Per home office approval) ________

☒ **Flexible Portfolio Annuity (FPA)**

**Initial Payment** 450,000
(minimum $1,000 TQ, $2,000 NQ, if not installment)

**Installment Payments** ________ **per year**
(min $600/year BA, group billing only)

| | FPA Payment Allocation: Initial Payment | FPA Payment Allocation: Installment Payments | Dollar-Cost Averaging Transfer*: From | Dollar-Cost Averaging Transfer*: To | Frequency |
|---|---|---|---|---|---|
| (FA) IDS Life Fixed Account | ____% | ____% | $____ | $____ | ____Monthly (12/yr) |
| (CR) IDS Life Capital Resource Fund | ____% | ____% | $____ | $____ | ____Quarterly (4/yr) |
| (SI) IDS Life Special Income Fund | ____% | ____% | $____ | $____ | ____Biweekly (26/yr) |
| (MS) IDS Life Moneyshare Fund | 100 % | ____% | $____ | $____ | ____Weekly (52/yr) |
| (MF) IDS Life Managed Fund | ____% | ____% | $____ | $____ | ____Semimonthly (24/yr) |
| (IE) IDS Life International Equity Fund | ____% | ____% | $____ | $____ | ____Bimonthly (6/yr) |
| (AG) IDS Life Aggressive Growth Fund | ____% | ____% | $____ | $____ | ____Every 4 months (3/yr) |
| (GY) IDS Life Global Yield Fund | ____% | ____% | $____ | $____ | ____Bifortnightly (13/yr) |
| (IA) IDS Life Income Advantage Fund | ____% | ____% | $____ | $____ | |
| (GD) IDS Life Growth Dimensions Fund | ____% | ____% | $____ | $____ | |
| (GI) AIM Variable Ins. Growth & Income Fund | ____% | ____% | $____ | $____ | |
| (NO) Putnam VT New Opportunities Fund | ____% | ____% | $____ | $____ | |
| (SC) Warburg Pincus Trust Small Co. Growth Portfolio | ____% | ____% | $____ | $____ | |
| (DM) Templeton Developing Markets Fund | ____% | ____% | $____ | $____ | |
| (TV) American Century VP Value | ____% | ____% | $____ | $____ | |

Start Date ________ End Date ________

*Note: DCA ($50.00 min. from each of the accounts listed above. Amounts requested to be transferred from the fixed account are restricted. The maximum monthly (FA) transfer amount = current fixed value divided by 12. DCA disclosure section must be initialed. Total "From" and total "To" dollar amounts must be equal.

**Installment payments (FPA only)** Start Date* (M/D/Y) ________
*Must be at least 30 days from date received in home office (if omitted, the home office will establish start date)

Method of payment

- ☐ Add to existing BA with account no. ________
- ☐ Add to existing PDS/Employer Billing no. ________
- ☐ New Bank Authorization (Page 7)
- ☐ New PDS/Employer Billing Form 3188
- ☐ Other allowed method ________ (Direct Billing Not Available)

☐ **Fixed Immediate Annuity**

Single premium ______ (Note: $5,000 minimum)

Payout amount quoted ______

Payout checks to start (M/D/Y) ______

*Note: Must be at least 30 days from date received in home office.*

☐ Monthly ☐ Quarterly ☐ Semiannual ☐ Annual

Payout Option:

☐ Individual annuitant ☐ Joint and full to survivor

☐ Joint and ⅔ to survivor ☐ Joint and ½ to survivor

Payout Mode: (complete Joint Annuitant Info if Joint Option is selected)

☐ Nonrefund

☐ Life income with period certain. Circle one: 5 10 15 20 years

☐ Installment refund (not available with Joint and ⅔ or ½ option)

☐ Term certain only (Mode E) ______ years (5 to 30 years)

Withholding to apply? ☐ Yes ☐ No If yes, indicate $ ______

☐ Transfer to AEFA account number ______ - ______ - ______

**Required Proof of Age**

Proof of age submitted:

☐ Copy of birth certificate enclosed or:

Submit copies of two (2) of the following when birth certificate is not available:

☐ Baptism certificate

☐ Family record of birth

☐ Confirmation record showing age at time of confirmation

☐ Marriage certificate

☐ Naturalization record

☐ Passport (at least five years old)

☐ Military discharge papers

**If Joint Payout option selected**

**JOINT ANNUITANT** ☐ Mr. ☐ Mrs. ☐ Miss ☐ Ms. **Sex** ☐ Male ☐ Female **Marital Status** ☐ Single ☐ Divorced ☐ Married/domestic partner ☐ Widowed **Number of Dependents** ______

Joint Annuitant's Name as on Record with IRS (include first, middle and last name) ______ Age ______ Birthdate (M/D/Y) ______

Residential Address ______ **U.S. Social Security Number** ______

City ______ Home Phone Number ______ Work Phone Number ______

State ______ Zip ______ Citizenship: ☐ U.S. ☐ Other Country ______

If Other, is Client ☐ Resident Alien ☐ Non-resident Alien (attach W-8)

**Employee Information** Employer ______ Occupation ______

Employer Address ______

## Section E — Agreements and Signatures

**All Annuities**

☒ **Investment Objectives:** You understand the investment objectives and risks of the contract for which you are applying. There can be no assurance that such objectives will be achieved.

☒ **Earnings:** The method for crediting fixed and/or variable earnings for your particular contract has been explained to you. Any interest crediting rates are annual effective rates.

☒ **Changes:** Only officers of IDS Life Insurance Company have the authority to accept any representation or information not contained in this application or to modify any annuity contract or waive any requirement in the application. They must do so in writing. Our sales representatives do not have the authority to make any changes.

☒ **Cancellation:** You understand the contract provides you with certain cancellation privileges for a period of time from receipt (usually 10 days) under which no surrender charges or fees will be charged by the company.

Please note the Guaranteed Term Annuity (GTA) and the Portfolio Guaranteed Annuity (PGTA) do not have these same cancellation privileges. Generally, the GTA and the PGTA allow for cancellation of an Individual Retirement Annuity (usually 7 days) and certain other arrangements based on individual state requirements.

**Automated Dollar-Cost Averaging Authorization and Acknowledgements:**

- If an automated transfer, as scheduled, falls on a date that is not a normal business day, the transfer will be made on the last normal business day preceding such date.
- Automated transfers and any random transfers are subject to the provisions of my contract, the current prospectus and such other rules as IDS Life shall establish.
- No written confirmation of the initial set-up of this request will be sent out, but transactions will appear on the quarterly consolidated statement. I agree to notify IDS Life within 90 days if the requested transaction does not appear.
- If this request is received by the IDS Life Insurance Company home office after the requested start date, transfers will begin the following month.

**Client's initials** [handwritten initials] RAU

**Deferred Annuity (Please read all items)**

- [x] You understand that the basic purpose of an annuity is to provide lifetime income at retirement and it should be purchased for this purpose. You understand the benefits and consequences of tax deferral, and are confident that it can work to your advantage. The contract value may be surrendered in full or in part before annuity payments begin, but not after. Surrender of a contract may result in a loss to you because of fees and charges that may apply. They are explained in detail in the contract.
- [ ] The Guaranteed Term Annuity and the Portfolio Guaranteed Term Annuity contain a market value adjustment which may result in either or both upward and downward adjustments in cash surrender benefits.
- [ ] You understand that your participation under the Portfolio Guaranteed Term Annuity contract terminates upon termination or cancellation of your Client Service Agreement. You may, at that time, exchange your Portfolio Guaranteed Term Annuity for another IDS Life Insurance Company annuity product then available. That product may contain higher costs, surrender charges, or other different features.
- [x] **You have received the current prospectus(es) for the variable annuity or security applied for. Investment earnings, values and monthly income benefits based on the performance of a Variable Fund or Variable Account are not guaranteed and may both increase and decrease.**
- [x] IDS Life Insurance Company reserves the right to terminate certain installment payment contracts for full value, if in any 24-month period no purchase payments have been received and the amount paid is less than $600.
- [ ] The FRA-XR annuity includes a first-year bonus interest rate, which is no longer credited after one (1) year.
- [ ] The Index 500 Annuity's performance is linked to changes in the Standard & Poor's 500 Composite Stock Price Index. Regardless of the Index's performance, you are guaranteed at least 110% of the amount of your original payment at the end of the initial 7-year term, assuming no surrenders have been made.

**Immediate Annuity**

- [ ] You cannot surrender or take loans from an Immediate Annuity. Also, there is no death benefit under the nonrefund payout mode.
- [ ] You understand that this transaction is not reversible.

**IRA Applications**

- [ ] You have received a copy of *Your Guide to IRAs* and understand the terms contained in it.
- [ ] You assume all responsibility for any tax consequences and penalties that may result from making contributions to, transactions with, and distributions from this IRA, **including Roth IRAs and Roth IRA conversions.**

- [ ] **For Arkansas residents only**
  Any person who knowingly presents a false or fraudulent claim for payment for a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.
- [ ] **For Colorado residents only**
  Any person who, with intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.
- [ ] **For Florida residents only**
  Any person who knowingly and with intent to injury, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.
- [ ] **For Kentucky residents only**
  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.
- [ ] **For New Jersey residents only**
  Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.
- [ ] **For New Mexico residents only**
  Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.
- [ ] **For Ohio residents only**
  Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.
- [ ] **For Pennsylvania residents only**
  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Client's initials** HJV RAD



27-094718

☒ **Consolidated Statement**
American Express Financial Advisors periodically sends our clients a statement covering all accounts owned by members of the same household. You understand that by applying as spouses or domestic partners, you will receive consolidated statements for all accounts, whether individually or jointly owned.

☐ **Replacement**
Is this annuity intended to replace existing annuities or life insurance? ☐ Yes ☒ No

| Company Name | Address | Policy Number |
| --- | --- | --- |
| | | |
| | | |
| | | |

**Backup Withholding**
☐ Check here if the IRS has notified that you are subject to backup withholding because of a failure to report all interest and dividends.
☐ Check here if you are a tax-exempt payee.

**Serial Annuity — Disclosure and Acknowledgement**
Instructions: Complete **Part 1** when applying for any nonqualified deferred annuity; and/or **Part 2** when more than one Fixed Retirement Annuity-Extra Rate (FRA-XR), Fixed Retirement Annuity-Value Plus (FRA-VP), Guaranteed Term Annuity (GTA), Index 500 Annuity (I500) or Portfolio Guaranteed Term Annuity (PGTA) is being purchased whether nonqualified or tax-qualified.

**Part 1**
This section discusses current federal tax laws as IDS Life understands them. Federal tax laws and their interpretations may change. The client must initial below indicating that he/she has read and understands the following: **Multiple Contracts (Serial Annuities)** Tax law requires that all nonqualified deferred annuity contracts issued by the same company, to the same policyholder (owner), during a calendar year are to be treated as a single, unified contract. The amount of income included and taxed in a distribution (or a transaction deemed a distribution under tax law) taken from any one of such contracts is determined by summing all such contracts together.

**Client's initials** KV Dix

**Part 2**
If more than one FRA-XR, FRA-VP, GTA, I500 or PGTA product is being purchased, the client must initial below and provide the requested information below. **Benefits of Larger Contracts** For *single premium FRA-XR or FRA-VP*: Interest is credited at a higher rate at certain premium sizes. You may be able to receive a higher interest crediting rate by purchasing one larger contract rather than two or more smaller ones. **Multiple Beneficiaries** *For any nonqualified or tax-qualified deferred annuity*: More than one beneficiary may be named under a single contract. Each beneficiary has a choice to receive any death benefit as either a lump sum or in the form of annuity payments as provided by the contract.

**Reasons:** Your reason(s) for purchasing more than one contract is (are): ____________

**Client's initials** ____________

**Tax-Sheltered Annuity (TSA) Disclosure and Acknowledgment**
Effective January 1, 1989, a distribution from a Tax-Sheltered Annuity (TSA) purchased under §403(b) of the Internal Revenue Code may be made only if the employee/participant has:

1. attained age 59½; or
2. separated from the service of the employer that purchased the TSA; or
3. died; or
4. become disabled, as defined in Section 72(m)(7) of the Code; or
5. encountered financial hardship within the meaning of Section 403(b) of the Code.

The restriction applies to contributions of deferred salary made after December 31, 1988, and all earnings credited to the contract after that date. The "hardship" exception above is limited to the amount of contributions made and does not apply to any earnings credited to the contract.

The restriction does not apply to any values in the TSA as of December 31, 1988, nor to transfers or exchanges of contract values within the annuity or to another registered variable annuity contract or investment vehicle available through the employer.

**We are required to withhold 20% on most distributions with the following two exceptions:**

Periodic Distributions: Periodic payments over life, life expectancy, or for a period of 10 years or more. Periodic payments are <u>only subject to optional 10% withholding.</u>

Required Minimum Distribution for clients over 70½ and retired: Please consult your tax advisor to determine if you are satisfying the RMD Requirements. RMD is <u>only subject to optional 10% withholding</u>.

**Client's initials** ____________

Client acknowledges that the representative has reviewed and explained the above information. Client should consult a tax advisor if he/she has questions about the taxation of his/her annuity contract.



27-094718

(2/99)

30427 A

☐ I agree to these uses of information.
☒ I object to one or both uses of this information. If only one, please specify which one: __________

☒ **Declaration Agreement**

**You declare that each of the statements and answers given in this application is true and complete to the best of your knowledge and belief and will be the basis of any annuity issued from this application.**

**Under penalties of perjury, I certify that:**

1. **The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and**
2. **I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.**

**Certification Instructions — You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, the acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN.**

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

By signing this application and checking each statement that pertains to your annuity, you understand and acknowledge the above:

**Signatures of All Annuitants**

X [signature]

X __________

Other Applicant's Signature (if Required)

X __________

**Owner/Trustee/Heir/Administrator Signature (if other)**

X [signature] TRUSTEE

X [signature] TRUSTEE

| Signed at (City) | (State) | on (Date) |
|---|---|---|
| Mesa | AZ | 06 23 1999 |

## Section F — Representative's Report

**Declaration and signature** — You certify that you personally solicited this application and witnessed its signing. The application and this report are complete and accurate to the best of your knowledge and belief.

☐ **Check here if Relative Protection applies. Relationship** __________

You certify that, to the best of your knowledge and belief, the information provided on Page 6 of this application regarding replacement of existing insurance and annuities is true and accurate. This application ☐ **does** ☒ **does not** involve replacement of existing insurance or annuities.

Send Contract to ☒ Owner ☐ Representative

**Advisor Information**

| Team ID (If applicable) | Servicing Advisor Signature | Advisor ID Number | Comp % | Area Office | Phone |
|---|---|---|---|---|---|
| 8105 | X [signature] | 96468-4 | | 004 | (480)833-18[illegible] |
| | Print Advisor Name: JASON G. KNIGHT | Florida License Number: | | | |

| Team ID (If applicable) | Second Advisor Signature | Advisor ID Number | Comp % | Area Office | Phone |
|---|---|---|---|---|---|
| | X | | | | |
| | Print Advisor Name: | Florida License Number: | | | |

| [illegible] | Acceptance Approval | $ Amount | Purchase Date |
|---|---|---|---|
| | | | |

30427 A



27-094718

**Annuitant's Name** Vivian A. Vehrling Birthdate

The undersigned hereby states that the named beneficiary for the new annuity contract to be issued from the application bearing the same date and serial number as this form is to be as follows:

(Check applicable box)

☐ A Beneficiary is: Annuitant's designated spouse, if living, if not, the beneficiaries are the living, lawful children of the annuitant and they will receive equal shares of the proceeds.

☐ B Beneficiary is: Annuitant's designated spouse, if living, if not, the beneficiaries are the living, lawful children of the annuitant and they will receive equal shares of the proceeds. If a child of the annuitant has died before the annuitant, that child's share of the proceeds will be paid to his or her living lawful children in equal shares.

**If A and B checked above**

Spouse's Name

☐ C Beneficiaries are: The living lawful children of the annuitant and they will receive equal shares of the proceeds.

☐ D Children Per Stirpes. Beneficiary is: the living lawful children of the owner equally, the survivors equally, or the survivor; provided, however, that if a child of the owner has died before the owner, the share which the child would have received if he or she survived the owner will be paid to his or her living lawful children or their direct descendants in equal shares.

☐ E Equally with Rights of Survivorship. Beneficiary is: the beneficiaries are as listed below and they will receive equal shares of the proceeds; provided, however, that if a beneficiary dies before the owner, the share which the beneficiary would have received if he or she survived the owner will be equally divided among the surviving beneficiaries. (Attach **and sign** a separate page for additional beneficiaries.)

☐ F Equally. Beneficiary is: the beneficiaries are as listed below and they will receive equal shares of the proceeds; provided, however, that if a beneficiary dies before the Annuitant, the share which the beneficiary would have received if he/she survived the owner will be paid to the owner's estate. (Attach **and sign** a separate page for additional beneficiaries.)

☐ G With Rights of Survivorship. Beneficiary is: the beneficiaries are as listed below and they will receive the percentage of the share of the proceeds as indicated; provided, however, that if a beneficiary dies before the annuitant, the share which the beneficiary would have received if he/she survived the owner, will be proportionately divided among the surviving beneficiaries. (Attach **and sign** a separate page for additional beneficiaries.)

☒ H Other. Use this option only if none of the above options apply. This designation is subject to the approval of the home office.
The VVV Trust - Decedent's Trust (Dated 10-01-1998) TIN - 86-62853

**If E, F, G or H checked above: list name(s) and relationship(s)**

☐ I Must be completed for Custodial (Keogh) Plans only. American Express Trust Company, Custodian of the plan.

(Plan Name)

☐ J Must be completed for Trusteed Pension/Profit Sharing/401(k) Plan only ________ (Name of Trustee(s)), trustee(s) of the ________ plan.

☐ K Must be completed for Section 457 Deferred Compensation Plans only: ________ (Name of Plan), as Owner.

If any Beneficiary is a minor, I hereby request that proceeds be paid to ________ as custodian under the ________ (Name of State) UTMA (not available in MI, VT, SC).

**Residents of Community Property States Must Read and Sign if Applicable**

Check appropriate box to indicate Marital Status ☐ Single ☐ Married (See "Consent of Spouse") ☒ Widowed or Divorced

**Consent of Spouse**

This consent of spouse must be signed if all of the following conditions are present (a) the spouse of the owner is living, (b) is not the primary beneficiary named and (c) the owner and spouse are residents of a community property state (Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin). I have reviewed the above beneficiary designation and, as the spouse of the owner, I consent to the beneficiary designation and all contributions of money or property to be used for the purchase of such accounts to be issued in my spouse's name, whether heretofore, now or hereafter and I relinquish all my statutory or other rights thereto.

Date ________ Spouse's Signature X ________

**Signatures Required**

Executed this 23rd day of June, 1999.

Signature X [signature] Trustee [signature] Trustee Witness X [signature]

Owner/Trustee/Plan Administrator

Note: If a custodial plan, the Employer/Plan Administrator must sign as owner.

(2/99)

30427 A

9

27-094718

CERTIFICATION OF VITAL RECORD

# STATE OF ARIZONA

ORIGINAL STATE COPY

STATE OF ARIZONA
DEPARTMENT OF HEALTH SERVICES - OFFICE OF VITAL RECORDS
CERTIFICATE OF DEATH

DEATH NO. D 102-

| Field | Entry |
|---|---|
| 1. Name of Deceased (A. First, B. Middle, C. Last) | VIVIAN DAVIS VEHRING |
| 2. Sex | FEMALE |
| 3. Date of Death (Month, Day, Year) | APRIL 9 2001 |
| 4. Race | WHITE |
| 5. Was decedent of Hispanic origin? | NO |
| If yes, indicate Mexican, Spanish, Puerto Rican, Cuban, etc. | |
| 6. Was decedent ever in U.S. Armed Forces? | NO |
| 7. Place of Death: A. County | MARICOPA |
| B. Town or City | SCOTTSDALE |
| C. Hospital or Institution | BEVERLY HEALTH CARE |
| D. DOA / OP EMER / IN PATIENT | IN PATIENT |
| Date of Birth (Month, Day, Year) | MAY 26 1913 |
| 8A. Age (years last birthday) | 87 |
| Married, never married, widowed, divorced | WIDOWED |
| 10. Surviving Spouse | |
| 11. State and City of Birth | PORTLAND, OREGON |
| 12. Citizen of what country | U.S.A. |
| 13. Social Security No. | 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 |
| 14A. Usual Occupation | SEAMSTRESS |
| B. Kind of Business or Industry | CLOTHING |
| 15. Usual Residence: A. State | ARIZONA |
| B. County | MARICOPA |
| C. Town or City | FOUNTAIN HILLS |
| D. Zip Code | 85268 |
| 16. How long in Arizona? | 3.5 YEARS |
| 15E. Street Address or R.F.D. | 15327 E. REDROCK DR. |
| 15F. Inside City Limits? | YES |
| 15G. On Reservation | NO |
| 18. Previous State of Residence | OREGON |
| 17. Education: Elementary/Secondary (0-12) | |
| College (1-4 or 5+) | 1 |
| 19. Father's Name | LINDSAY CLINTON DAVIS |
| 20. Mother's Maiden Name | HAZEL BLANCHE SHEEK |
| 21. Informant's Signature | RICHARD VEHRING [signature] |
| 22. Relationship to Deceased | SON |
| 23. Address | 15327 E. REDROCK DR. FOUNTAIN HILLS, AZ 85268 |
| 24. Burial, Cremation, Removal | BURIAL |
| 25. Date | 4/12/2001 |
| 26. Cemetery or Crematory – Name/Location | PORTLAND MEMORIAL CEMETERY PORTLAND, OREGON |
| 27A. Embalmer's Signature | [signature] |
| 27B. Cert. No. | 1172 |
| 28. Funeral Home | CARR-TENNEY MORTUARY 2621 S. RURAL RD. TEMPE, ARIZONA |
| 29A. Funeral Director | [signature] |
| 29B. Cert. No. | 993 |

To be completed by certifying physician only: To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) stated.

| Field | Entry |
|---|---|
| 30. Signature and Title | [signature] DO |
| 31. Date Signed | 4/10/2001 |
| 32. Hour of Death | 2145 |
| 33. Name of attending physician if other than certifier | |

To be completed by medical examiner or tribal law enforcement authority only: On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place due to the cause(s) and manner stated.

| Field | Entry |
|---|---|
| 34. Signature and Title | |
| 35. Date Signed | |
| 36. Hour of Death | |
| 37. Pronounced Dead (Mo., Day, Year) | |
| 38. Pronounced Dead (Hour) | |

| Field | Entry |
|---|---|
| 39. Name and Address of Certifier | RICHARD SETTLES DO, 10752 N. 89TH PL. SCOTTSDALE, |
| 40. Authorized for Cremation | No |
| 41. Medical Examiner's Signature | |
| 42. Date Registered | APR 11 2001 |
| 43. Reg. Fil. No. | 7637 |
| 44. Registrar's Signature | [signature] |
| 45. Reg. District | 0705 |
| 46. Date Rec'd in State Office | |

47. Part I

| Cause | Approximate interval between onset and death |
|---|---|
| A. Immediate cause: Pneumonia | Days |
| B. Due to or as a consequence of: | |
| C. Due to or as a consequence of: | |

48. Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I:

| Field | Entry |
|---|---|
| 49. Autopsy | NO |
| 50. Was case referred to medical examiner | NO |
| 51. Manner of Death (Natural causes, Homicide, Accident, Pending investigation, Suicide, Undetermined) | |
| 52. Date of Injury | |
| 53. Hour | |
| 54. Injury at Work | |
| 55. Describe how injury occurred | |
| 56. Place of Injury | |
| 57. Where located | |
| 58. Supplementary Entries | |

CERTIFIED COPY OF VITAL RECORDS

STATE OF ARIZONA }
COUNTY OF MARICOPA } SS

DATE ISSUED April 16, 2001

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, DEPARTMENT OF HEALTH SERVICES, PHOENIX, ARIZONA issued under the authority of A.R.S. 36-341, and by direction of

[signature]
Jonathan B. Weisbuch, M.D.
County Registrar
Director, Maricopa County Department of Public Health Services

3583293

MARICOPA COUNTY

IDS Life Insurance Company
70100 AXP Financial Center
Minneapolis MN 55474
An American Express company

May 23, 2001

Claim Number : 226461
Policy Number: 9300-6395001
VIVIAN A VEHRING

VIVIAN VEHRING DECEDENT TRUST
C/O RICHARD VEHRING TRUSTEE
15327 E REDROCK DR
FOUNTAIN HLS AZ 85268-5816

Dear Recipient:

The attached check for $320,817.34 represents the death benefits due you under this contract. These benefits are made payable to VIVIAN VEHRING DECEDENT TRUST .

If you have questions, please contact our office at the telephone number below.

Sincerely,

IDS Annuity Claims
(800) 862-7919

Detach And Retain For Your Records

300HS A (3/02) Payee must endorse this check in full exactly as drawn. Payment is received in full as final settlement, release, and accord and satisfaction of any and all claims against IDS Life Insurance Company.

Code

IDS Life Insurance Company
200 AXP Financial Center
Minneapolis, Minnesota 55474

75-16
919

835680б 8356806

Contract Number
9300-6395001

Date
05-23-01

Pay To The Order Of

Amount of check
$320,817.34
Void after 6 months

VIVIAN VEHRING DECEDENT TRUST
C/O RICHARD VEHRING TRUSTEE
15327 E REDROCK DR
FOUNTAIN HLS AZ 85268-5816

Norwest Bank Red Wing, N.A.
Red Wing, Minnesota 55066

*Richard and Janet Vehring*
*15327 E. Redrock Drive*
*Fountain Hills, AZ 85268*
*TEL: ( 480 ) 836-9772*
*rvehring@msn.com*

May 24, 2001

Jason Knight
O'Dell, Knight, Nall and Associates
931 E. Southern Avenue., Suite 112
Mesa, AZ 85204

**Policy: 9300-6395001 VIVIAN VEHRING**

Dear Jason:

We cannot express how upset we are by your recent notice that we are only receiving $ 320,817.34 of the $ 450,000 promised as death benefits for my mother, Vivian Vehring. When we signed our agreement with you June 24, 1999, it was with the understanding that the annuity we were paying for was to protect my mother's assets should the stock market have a downturn.

My mother was 86 years old at the time we signed the agreement, and as a representative of American Express you confirmed our understanding on several occasions. Nothing in the initial agreement that we signed or any discussion we have ever had has indicated that it is not applicable for anyone over 75 years of age. When we received the sixteen page legal document a month later, we did not hire a lawyer to review the agreement because we trusted you and the integrity and honesty of American Express.

We are incensed to think that one month after my mother has passed away, we are being advised that the understanding and the commitment we signed is not applicable. We have worked with and recommended American Express both professionally and personally for years, and believe such action is fraudulent and unethical.

Unless we receive the remaining $ 129,182.66 plus interest, we will take legal action and advise as many agencies as possible that American Express does not honor it's agreements and is involved in unethical and illegal practices.

Cordially,

Richard and Janet Vehring

**Beloney & Associates**

A financial advisory branch

**MacAuley Beloney**
Financial Advisor
Branch Manager

**American Express**
**Financial Advisors Inc.**
Suite [illegible]
Bank of America Financial Plaza
1201 S. Alma School Rd.
Mesa, AZ 85210
Bus: 480.385.5155
Toll Free: 877.862.1809
Fax: 480.844.1669
macauley.x.beloney@aexp.com

June 12, 2001

Richard & Janet Vehring
15327 E Redrock Drive
Fountain Hills, AZ 85268

Dear Richard & Janet Vehring:

Enclosed you will find the letter I received via email, regarding your claim for the death benefit guarantee for your mother's annuity. Our corporate office is requesting that they receive a signed letter instead of an email. I have enclosed it for you two to sign and return.

- I have already initiated the process to get this issue resolved, and our corporate office not having a signed letter should not delay the process too much longer
- I am requesting that American Expresses' Errors and Omissions policy settle this, and compensate the beneficiary for the difference as you were told, and led to believe would be the case

In the meantime, I will keep you updated on any events and decisions from our home office in Minneapolis. Feel free to call Jason Knight or me if you have any further questions, or would like an update if the process is not resolved quickly.

Cordially,

MacAuley Beloney
Financial Advisor
OSJ Branch Manager

MB:lb

Enclosures: FPA Death Benefit claim letter, a return envelope and a business card

American Express Financial
Advisors Inc. Member NASD
An AEFA associated financial
advisor franchise
American Express Company is
separate from American Express
Financial Advisors Inc. and is

Financial Advisors

August 3, 2001

IDS Life Insurance Company
50031 AXP Financial Center
Minneapolis, MN 55474

Richard & Janet Vehring
15327 E. Redrock Drive
Fountain Hills, AZ 85268

Dear Mr. and Mrs. Vehring:

We are writing in response to your letter of May 24, 2001 sent to Jason Knight expressing concerns that you have about the Flexible Portfolio Annuity Non-qualified policy of Vivian Vehring (*deceased*).

Our review of the matter disclosed that the actions you complained of fall within the terms of a class action settlement into which IDS Life Insurance Company has entered with court approval (the "Settlement".) The Settlement resolved an action brought on your behalf by Class Counsel. Since the actions of which you complained fall within the Settlement, you are entitled to the relief specified in the Settlement. You may wish to refer to the Class Notice Package that you should have received for additional information.

As the Class Notice Package states, IDS Life Insurance Company agreed to a proposed settlement of a class action lawsuit brought on behalf of you and other members of a class. In addition to describing the benefits of the Settlement, the notice also states that one of the consequences of remaining in the class, is that you are bound by the proceedings, orders and judgments in the pending class action. This means that you will receive the relief provided for in the Settlement and no other relief can be provided. If you have questions regarding the class action or Settlement, please call the IDS Life Class Action Information Center at ~~1-800-435-5314~~. (The IDS Life Class Action Information Center is operated by an independent service provider chosen jointly by IDS Life Insurance Company and Class Counsel to answer questions class members such as yourself may have.)

Thank you for bringing this matter to our attention for additional review.

Sincerely,

William Ellis
Compliance Department

AMERICAN EXPRESS

## O'Dell, Knight, Nall & Associates

A financial advisory branch

Advanced Advisor Group

**Charles C. O'Dell, MBA**
Senior Financial Advisor

**Jason G. Knight**
Financial Advisor
Branch Manager

**Marty Nall**
Financial Advisor

**American Express Financial Advisors Inc.**
**IDS Life Insurance Company**
Suite 112
Southern Executive Center
931 E. Southern Ave.
Mesa, AZ 85204
Bus: 480.633.1799
Fax: 480.633.5687
Email: charles.c.odell@aexp.co
Email: jason.g.knight@aexp.cor
Email: martin.e.nall@aexp.com

November 15, 2001

Mr. and Mrs. Richard Vehring
15327 E. Redrock Drive
Fountain Hills, AZ 85268

RE: Policies 9300 615 6864 6 004 and 9300 639 5001 6 004

Dear Mr. and Mrs. Vehring:

I would like to follow up on the numerous discussions we have had regarding the Flexible Portfolio Annuities that I recommended and that were signed for your father and mother.

As an American Express advisor, neither I, nor numerous colleagues that I have spoken with, were trained that the death benefit of the annuities were only applicable to those who were under 75 years of age (despite having to pay the applicable charge). As an instructor at the American Express University, I also provided training to other American Express representatives and recommended the same annuity for many of their older clients.

When we signed each agreement, I was under the impression that the annuity provided the death benefit in the amount of the contribution should market conditions change – which is the reason it was so appropriate for your parents. Both policies were sold on this premise and I confirmed your understanding on several occasions.

MacAuley Beloney, our Office of Supervisory Jurisdiction (OSJ), and myself are deeply sorry that the American Express Claims Department had denied all our requests to provide you with full and appropriate restitution as was promised. I am also sincerely sorry that we were unsuccessful in reversing their decision.

As is painfully apparent, I have advised you in error and apologize for the inconvenience.

Sincerely,

Jason Gerald Knight
Financial Advisor
Branch Manager
O'Dell, Knight, Nall & Associates

STATE OF ARIZONA
COUNTY OF Arizona } ss

This instrument was acknowledged and executed before me this 26 day of November 20 01 by RICHARD VEHRING
My Commission Expires: 4-7-04

NOTARY PUBLIC

True and exact copy of

American Express Financial Advisors Inc. *Member NASD*
An AEFA associated financial advisor franchise.
Insurance and annuities are issu by IDS Life Insurance Company, an American Express Company.
American Express Company is separate from American Express Financial Advisors Inc. and is not a broker-dealer.

| This instrument was recorded at the request of: | |
|---|---|
| Jaburg & Wilk, P.C.<br>Attn: Rory L. Whipple<br>3200 N. Central, Suite 2000<br>Phoenix, AZ 85012 | |
| The recording official is directed to return this instrument or a copy to the above person. | Space Reserved for Recording Information. |

# DURABLE GENERAL POWER OF ATTORNEY (1)

| **Effective Date:** | **County and State Where Located:** |
|---|---|
| February 1, 1998 | Maricopa County, Arizona |
| **Expiration Date:** | |
| Unlimited | |

| **Principal (Name, Address, Zip Code):** | **Attorney-in-Fact (Name, Address, Zip Code):** |
|---|---|
| VIVIAN VEHRING<br>7255 E. Broadway Road<br>Bldg 1, Room 203<br>Mesa, AZ 85201 | RICHARD D. VEHRING<br>15639 S. 5th Street<br>Phoenix, AZ 85048 |

1. <u>Objective, Purpose, Intent, and Executive Summary</u>. My intent and objective in executing this Durable General Power of Attorney is to vest my Attorney-in-Fact with all powers necessary to deal with my property that may not be in Trust, to sign contracts for me, and to handle my personal affairs and medical needs while I am incapacitated, when I am geographically not present to handle my affairs, or if I am missing and cannot be located. I intend that this document be effective in every place in the world. This provision supplements and is not intended to conflict with any Living Will or Durable Power of Attorney for Health Care that I may execute or have executed.

2. <u>Appointment of Attorney-in-Fact</u>. I appoint the above named person as my Attorney-in-Fact to act as the true and lawful attorney for me and in my name, place, and stead as hereafter set forth.

3. <u>Resignation or Removal of Attorney-in-Fact</u>. My Attorney-in-Fact may resign by the execution of a written resignation delivered to me or, if I am mentally incapacitated, by delivery to the Trustee of my Revocable Living Trust, if I have such a Trust, and absent such person then to any person with whom I am residing or who has the care and custody of me. In addition to communicating resignations as set forth above, the Attorney-in-Fact

Vivian Vehring
VIVIAN VEHRING, Principal

shall record the resignation with the County Recorder where this Durable General Power of Attorney was first recorded.

3.1 If my spouse has been appointed my Attorney-in-Fact hereunder, and subsequent to the execution of this Power of Attorney an action is filed to dissolve our marriage, then the filing of such action shall automatically remove my spouse as Attorney-in-Fact.

3.2 In addition, the incapacity of my Attorney-in-Fact shall be deemed a resignation by such individual as Attorney-in-Fact. For purposes of this paragraph, a person's incapacity shall be deemed to exist when the person's incapacity has been declared by a court of competent jurisdiction, or when a conservator for such person has been appointed, or upon presentation of a certificate executed by two physicians licensed to practice in the state of such person's residence which states that, in the physicians' opinions, the person is incapable of caring for himself and is physically or mentally incapable of managing his personal or financial affairs. The effective date of such incapacity shall be the date of the decree adjudicating the incapacity, the date of the decree appointing the conservator, or the date of the physicians' certificate, as the case may be.

4. **General Statement of Powers**. To draw and deposit monies from bank accounts belonging to and in my name; to enter and use the contents of those accounts and any safety deposit box for my use and benefit; to ask, demand, sue for, recover, collect, and receive all such sums of money, debts, dues, accounts, legacies, bequests, interests, dividends, annuities, and demands whatsoever, as are now or shall hereafter become due, owing, payable, or belonging to me, and to have, use, and take all lawful ways or means, in my name or otherwise, for the recovery thereof by legal process; and to compromise and agree for, and grant acquittance or other sufficient discharges for me and in my name.

4.1 To make, seal, and deliver; bargain, contract, agree, purchase, receive, and take lands, tenements, hereditaments, and accept the seizing and possessing of all lands, and all deeds and other assurances in the law thereof; to lease, let, demise, bargain, sell, remise, release, convey, mortgage, and hypothecate lands, tenements, hereditaments, upon such terms and conditions and under such covenants as my Attorney-in-Fact shall think fit; and to bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with goods, wares and merchandise, choses in action, and other property in possession or in action.

4.2 To make, receive, endorse, exercise, acknowledge, deliver, possess, do, and transact all and every kind of business of whatever nature and kind for and in Attorney-in-Fact's name and as Attorney-in-Fact's act and deed; and to sign, seal, execute, deliver, and acknowledge such applications, contracts, agreements, options, covenants, conveyances, deeds, trust deeds, security agreements, bills of sale, indentures, hypothecations, leases, mortgages, assignments, insurance policies, bills of lading, warehouse receipts, documents of title, bills, bonds, debentures, checks, drafts, bills of exchange, letters of credit, notes, bonds, stock certificates, proxies, warrants, conversion

VIVIAN VEHRING, Principal

rights, commercial paper, receipts, releases and judgments, securities, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of, banks, savings and loan, or other institutions or associations, proofs of loss, evidences of debt, releases, and satisfactions of mortgages, liens, judgments, security agreements, and other debts and obligations, and such other instruments in writing, of whatever kind and nature, as may be necessary or proper in the exercise of the rights and powers herein granted.

# Specific Statement of Powers

5. <u>**Access Safety Deposit Boxes**</u>. To have access to any safe deposit box rented by me or by me with others (including authority to have it drilled), to remove the contents therefrom, and to terminate the lease of the box.

6. <u>**Appoint Ancillary Attorney-in-Fact**</u>. To appoint one or more agents to act in another jurisdiction under this Power of Attorney (such agent or agents being hereinafter referred to in the aggregate as my *Ancillary Attorney-in-Fact*). Attorney-in-Fact from time to time and at any time may appoint one or more Ancillary Attorneys-in-Fact if at any time Attorney-in-Fact deems it necessary or desirable in his discretion. In making such appointment, Attorney-in-Fact may sign, execute, deliver, acknowledge, and make declarations in any documents (including living wills, declarations desired for natural death, health care declarations, or powers of attorney) as may be necessary, desirable, convenient, or proper to effectuate any such ancillary appointment. Attorney-in-Fact may grant to any Ancillary Attorney-in-Fact some or all the powers, duties, and authorities granted hereunder but may not grant to any such Ancillary Attorney-in-Fact powers which are inconsistent with or different from those powers granted to Attorney-in-Fact hereunder.

7. <u>**Bank Accounts**</u>. To establish accounts for me of all kinds, including checking and savings, with financial institutions of any kind, including but not limited to banks and thrift institutions; to modify, terminate, make deposits to and write checks on or make withdrawals from and grant security interests in all accounts in my name or with respect to which I am an authorized signatory (except accounts held by me in a fiduciary capacity), whether or not any such account was established by me or for me by Attorney-in-Fact; to negotiate, endorse or transfer any checks or other instruments with respect to any such accounts; to contract for any services rendered by any bank or financial institution.

8. <u>**Borrow on Credit**</u>. To borrow money for any purpose which Attorney-in-Fact deems advisable, to pledge my credit, to incur debts on my account in favor of any creditor and to pay reasonable interests on such borrowings or indebtedness.

9. <u>**Buy**</u>. To buy every kind of property — real, personal, intangible, and/or mixed — upon such terms and conditions as Attorney-in-Fact shall deem appropriate; to obtain options with respect to such purchases; to arrange for appropriate disposition, use, safekeeping, and/or insuring of any such property; to buy United States Government bonds redeemable at par in payment of the federal estate tax imposed at my death; to borrow

VIVIAN VEHRING, Principal

money for the purposes described herein and to secure such borrowings in such manner as Attorney-in-Fact shall deem appropriate; to use any credit card held in my name to make such purchases and to sign such charge slips as may be necessary to use such credit cards; to repay from any funds belonging to me any money borrowed and to pay for any purchases made or cash advanced using credit cards issued to me.

10. **Conduct Business**. To make application for licenses or any other matter or thing on my account and to pay any fee for the same out of my funds, to vote any shares of stock and to issue proxies and consents with respect thereto, to continue or to permit the continuation of any business in which I have any interest, for whatever period of time my Attorney-in-Fact deems advisable. This power includes the power (a) to invest additional sums in any such business; (b) to act as or to select other persons to act as directors, officers, or other employees of any such business; and (c) to make other arrangements with respect to the business as my Attorney-in-Fact deems advisable.

Attorney-in-Fact will also have the power to continue the operation of any business (including a ranch or farm) belonging to me or in which I have a substantial interest, for such time and in such manner as Attorney-in-Fact shall deem appropriate, including but not limited to hiring and discharging my employees, paying my employees' salaries, and providing for employee benefits; employing legal, accounting, financial, and other consultants; continuing, modifying, terminating, renegotiating, and extending any contractual arrangements with any person, firm, association, or corporation whatsoever made by me or on my behalf; executing business tax returns and other government forms required to be filed by my business; paying all business related expenses; transacting all kinds of business for me in my name and on my behalf; contributing additional capital to the business; changing the name and/or the form of the business; incorporating the business; entering into such partnership agreement with other person as Attorney-in-Fact shall deem appropriate; joining in any plan of reorganization, consolidation, or merger of such business; selling, liquidating, or closing out such business at such time and upon such terms as Attorney-in-Fact shall deem appropriate and representing me in establishing the value of any business under "Buy-Out' or "Buy-Sell" agreements to which I may be a party; to create, continue, or terminate retirement plans with respect to such business and to make contributions which may be required by such plans; to borrow and pledge business assets; to exercise any right, power, privilege, or option I may have or may claim under any contract of partnership whether as a general, special, or limited partner; to modify or terminate my interest upon such terms and conditions as Attorney-in-Fact may deem appropriate; to enforce the terms of any such partnership agreement for my protection, whether by action, proceeding or otherwise as Attorney-in-Fact shall deem appropriate; to defend, submit or arbitrate, settle or compromise any action or other legal proceeding to which I am a party because of my membership in such partnership.

11. **Construction and Ratification**. To do, take, and perform all and every act and thing whatsoever requisite, proper, or necessary to be done in the exercise of any power herein granted, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my Attorney-in-Fact, or my Attorney-in-Fact's substitute or substitutes, shall lawfully do or

VV
VIVIAN VEHRING, Principal

cause to be done by virtue of this Power of Attorney and the rights and powers herein granted. I ratify and confirm all that my Attorney-in-Fact shall lawfully do or cause to be done by virtue of this General Power of Attorney.

12. **Continue Charge Accounts**. To continue whatever charge accounts have been operated by me prior to the creation of this Power of Attorney or thereafter, to open such new accounts as my Attorney-in-Fact shall deem to be desirable for the accomplishment of any of the purposes under this Power of Attorney, and to pay the items charged on such accounts by any person authorized or permitted by me to make such charges prior to the creation of this Power of Attorney or thereafter.

13. **Deal with Property**. To maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens, mortgages or deeds of trust, and hypothecate, and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I now own or may hereafter acquire, on such terms and conditions and under such covenants as my Attorney-in-Fact shall deem proper.

13.1 With respect to real property (including but not limited to my personal residence and any real property I may hereafter acquire or receive) to lease, sublease, release; to eject, remove, and relieve tenants or other persons from, and recover possession by all lawful means; to accept real property as a gift or as security for a loan; to collect, sue for, receive and receipt for rents and profits and to conserve, invest, or utilize any and all of such rents, profits, and receipts for the purposes described in this paragraph; to do any act of management and conservation; to pay, compromise, or contest tax assessments and to apply for refunds in connection therewith; to employ laborers; to subdivide, develop, dedicate to public use without consideration, and/or dedicate easements over; to maintain, protect, repair, preserve, insure, build upon, demolish, alter, or improve all or any part thereof; to obtain or vacate plats and adjust boundaries; to adjust differences in valuation on exchange or partition by giving or receiving consideration; to release or partially release real property from a lien; to sell and to buy real property; to mortgage and/or convey by deed of trust or otherwise encumber any real property now or hereafter owned by me, whether acquired by me or for me by Attorney-in-Fact.

13.2 With respect to personal property, to lease, sublease, and release; to recover possession by all lawful means; to collect, sue for, receive and receipt for rents and profits therefrom; to maintain, protect, repair, preserve, insure, alter, or improve all or any part thereof; to sell and to buy the same or other personal property; to mortgage, pledge, and/or grant other security interests in any personal property or intangibles now or hereafter owned by me, whether acquired by me or for me by Attorney-in-Fact.

14. **Discharge Services**. To continue the discharge of any services or duties assumed by me, prior to the creation of this Power of Attorney or thereafter, to any of my relatives or friends.

15. **Do Acts Necessary for Living**. To do all acts necessary for maintaining my customary standard of living, including, by way of illustration and not by way of restriction,

VIVIAN VEHRING, Principal

the power to provide living quarters by purchase, lease, or by other contract, or by payment of the operating and maintenance costs, including interest, amortization payments, repairs, and taxes, of premises owned by me, provide domestic help for the operation of the household, provide usual vacations and usual travel expenses, provide usual educational facilities, and to provide funds for all my current living costs, including, among other things, shelter, clothing, food, and incidentals.

16. **Exercise Powers**. To exercise or perform any act, power, duty, right, or obligation whatsoever that I now have, or may hereafter acquire, including the legal right, power, or capacity to exercise or perform, in connection with, arising from, or relating to any person, item, transaction, thing, business, property, real or personal, tangible or intangible, or matter whatsoever.

17. **File Governmental Papers**. To prepare, execute, and file all tax, social security, unemployment insurance, and information returns required by the laws of the United States or of any state or subdivision thereof, or of any foreign government; to prepare, execute, and file all other papers and instruments which the Attorney-in-Fact shall deem to be desirable or necessary to safeguard me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation, and to pay, compromise, contest, or apply for refunds in connection with any taxes or assessments for which I may be liable.

18. **Handle Transportation**. To continue whatever provision has been made by me, prior to the creation of this Power of Attorney or thereafter, for my transportation, including by way of illustration but not by way of restriction, the power to license, insure, and replace any automobiles owned and customarily used by me.

19. **Health Care Decisions**. To make any medical, surgical, dental, or other body care decisions regarding my health and well-being. This General Power of Attorney gives the Attorney-in-Fact the power to instruct any physician, paramedic, medical personnel, health care facility, or other person dealing with my health to perform or give me medical care or treatment or refrain from doing so as requested by the Attorney-in-Fact.

I hereby authorize all physicians who have treated me, and all other providers of health care, including hospitals, to release to my Attorney-in-Fact all information or photocopies of any records which my Attorney-in-Fact may request. If I am incompetent at the time my Attorney-in-Fact requests such information, all persons are authorized to treat any such request for information by my Attorney-in-Fact as the request of my legal representative and to honor such requests on that basis. I hereby waive all privileges which may be applicable to such information and records and to any communication pertaining to me and made in the course of any confidential relationship recognized by law. My Attorney-in-Fact may also disclose such information to such persons as my Attorney-in-Fact shall deem appropriate.

20. **Hire Persons**. To hire, discharge, or compensate any attorney, accountant, expert witness, or other assistant or assistants when the Attorney-in-Fact thinks such action to be

VV

VIVIAN VEHRING, Principal

desirable for the proper execution by the Attorney-in-Fact of any power described in this Power of Attorney, and for the keeping of needed records thereof, and to confer both ministerial and discretionary powers and duties, and to pay reasonable compensation for these services.

21. **Maintain Affiliations**. To continue payments incidental to my membership or affiliation in any church, club, society, order, or other organization and to continue contributions thereto.

22. **Make Gifts**. To make such gifts to my spouse, descendants, and spouses of my descendants (including my Attorney-in-Fact) as in the circumstances the Attorney-in-Fact considers advisable; but total gifts (including any gifts made by or for me) to any donee in any calendar year shall not exceed the largest amount which then qualifies for the annual per donee exclusion allowed for federal gift tax purposes under Internal Revenue Code ("I.R.C.") § 503, considering the split gift election, and shall be made only if my financial needs can reasonably be met and to make gifts to qualified 501(C)(3) tax-exempt charitable organizations on my behalf and to honor my charitable pledges; and to make gifts in addition to the gifts qualifying for the annual exclusions, whether outright or in trust, to those persons who are named in the Principal's Last Will and Testament and trusts where the Principal is Grantor as beneficiaries thereunder or are named beneficiaries of other assets of Principal such as life insurance, pension benefits, joint accounts, and the like in accordance and consistent with the testamentary plan of the Principal as set forth in Principal's Last Will and Testament or trusts where the Principal is Grantor (including the last-dated list disposing of personal property that is referenced in the Principal's Last Will and Testament) and pursuant to beneficiary designations or payable-on-death designations with respect to the Principal's assets in effect at the time so long as these gifts would be in the best interests of the Principal and those interested in the estate of the Principal. Notwithstanding the foregoing, the Attorney-in-Fact shall not be authorized to make gifts to their own self. The first named successor Attorney-in-Fact who is able and willing to serve is hereby appointed special Attorney-in-Fact with authority to make gifts to the then acting Attorney-in-Fact if the acting Attorney-in-Fact is eligible to receive such a gift under the terms of this paragraph, if status as acting Attorney-in-Fact is disregarded, and if the acting Attorney-in-Fact has determined that gifts to persons with the same degree of kinship to the Principal as the acting Attorney-in-Fact would be in the best interests of the Principal.

23. **Make Investments**. To invest my funds in such properties as Attorney-in-Fact deems advisable, investments in preferred and common stocks of any kind or class of any corporation, investment trusts, and share of a common trust fund, bonds, promissory notes, debentures, or other obligations (secured or unsecured); leases, mortgages, or other interests in real estate; in any limited or general partnership, sole proprietorship, or other business enterprise, however organized and for whatever purpose (whether or not productive at the time of investment); commodities contracts of all kinds; interest in trusts, investments trusts, whether of the open and/or closed fund types, and participation in common or collective or pooled trust funds or annuity contracts without being limited by any statute or rule of law concerning investments by fiduciaries; to sell [including short sales]

VV

VIVIAN VEHRING, Principal

and terminate any investments whether made by me or by Attorney-in-Fact; to establish, utilize, and terminate savings and money market accounts with financial institutions of all kinds; to establish, utilize, and terminate accounts [including margin accounts] with securities brokers; to establish, utilize, and terminate managing agency accounts with corporate fiduciaries; to employ, compensate, and terminate the services of financial and investment advisors and consultants.

24. **Miscellaneous**. To open, read, respond to, and redirect my mail; to represent me before the U.S. Postal Service in all matters relating to mail service; to establish, cancel, continue, or initiate my membership in organizations and associations of all kinds; to take and give or deny custody of all of my important documents, including but not limited to my will, codicils, trust agreements, deeds, leases, life insurance policies, contracts, and securities and to disclose or refuse to disclose such documents; to obtain and release or deny information or records of all kinds relating to me, any interest of mine, or to any person for whom I am responsible; to house or provide for housing, support, and maintenance of any animals or other living creatures that I may own and to contract for and pay the expenses of their proper veterinary care and treatment; and if the care and maintenance of such animals or other living creatures shall become unreasonably expensive or burdensome, in Attorney-in-Fact's opinion, to irrevocably transfer such animals to some person or persons willing to care for and maintain them.

25. **Nominate Guardian/Conservator**. To nominate in a probate court petition a guardian or conservator of my person, including my Attorney-in-Fact, it being my intent that the holder of this power shall retain full power over all my financial affairs; and to nominate as guardians the persons who have been named as Attorney-in-Fact under my existing Medical Power of Attorney in the priority order set forth in that document and to nominate as conservators the persons who have been given Durable General Powers of Attorney.

26. **Payments for Support**. To disburse funds to pay for my support, maintenance, and medical care and to pay for the support, maintenance, education, and medical care of my spouse and any minor or disabled child of mine or any person to whom I owe an obligation of support or whom I have undertaken to support, in the same manner and in accordance with the same standard of living as I may have provided in the past (adjusted if necessary by circumstances and inflation), including but not limited to the payment of real property taxes, payments on loans secured by my residence, maintenance of my residence, food, clothing and shelter, medical, dental and psychiatric care, normal vacations and travel expenses, education (including education at vocational and trade schools, training in music, stage, arts and sports, special training provided at institutions for the mentally or physically handicapped, undergraduate and graduate study in any field at public or private universities, colleges or other institutions of higher learning) and in providing for such education to pay for tuition, books, and incidental charges made by the education institutions, travel costs to and from such institutions, room and board, and a reasonable amount of spending money.

27. **Payments for Taxes**. To pay any and all taxes, of any nature whatsoever, required by the laws of the United States, of any state or subdivision thereof, or of any foreign

VV

VIVIAN VEHRING, Principal

government, and to borrow funds from time to time with which to pay any such taxes from any person or corporation for such periods of time and upon such terms and conditions as my Attorney-in-Fact may deem proper, and to secure such loans by the pledge, hypothecation or mortgage of any property owned by me.

Attorney-in-Fact may also represent me in all tax matters; prepare, sign, and file federal, state and/or local income, gift and other tax returns of all kinds, including, where appropriate, joint returns, FICA returns, payroll tax returns, claims for refunds, requests for extensions of time to file returns and/or pay taxes, extensions and waivers of applicable periods of limitation, protests and petitions to administrative agencies or courts, including the tax court, regarding tax matters, and any and all other tax related documents, including but not limited to consents and agreements under I.R.C. § 2032A or any successor section thereto, and consents to split gifts, closing agreements, and any power of attorney form required by the Internal Revenue Service and/or any state and/or local taxing authority with respect to any tax years; to pay taxes due; collect and make such disposition of refunds as Attorney-in-Fact shall deem appropriate; post bonds; receive confidential information and contest deficiencies determined by the Internal Revenue Service and/or any state and/or local taxing authority; to exercise any elections I may have under federal, state or local tax law; to allocate any generation-skipping tax exemption to which I am entitled; and generally to represent me or obtain professional representation for me in all tax matters and proceedings of all kinds and for all periods before all officers of the Internal Revenue Service and state and local authorities and in any and all courts; to engage, compensate and discharge attorneys, accountants and other tax and financial advisors and consultants to represent and/or assist me in connection with any and all tax matters involving or in any way related to me or any property in which I have or may have in interest or responsibility.

28. <u>Process Claims</u>. To appear, answer, and defend in all actions and suits whatsoever which shall be commenced against me and also, for and in my name, to compromise, settle, and adjust with each and every person or persons, all actions, accounts, dues, and demands, subsisting or to subsist between me and them or any of them, in such manner as my Attorney-in-Fact shall deem proper.

29. <u>Process Employment Benefits</u>. To create and contribute to an I.R.A. or employee benefit plan (including plans for self-employed individuals) for my benefit; to select any payment option under any I.R.A. or employee benefit plan in which I am a participant (including plans for self-employed individuals) or to change options I have selected; to make and change beneficiary designations; to make voluntary contributions to such plans; to make "roll-overs" of plan benefits into other retirement plans; and to borrow money and purchase assets therefrom and sell assets thereto, if authorized by any such plans.

30. <u>Process Transactions</u>. To request, ask, demand, sue for, recover, collect, receive, hold and possess all such sums of money, debts, dues, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devises, notes, interests, stock certificates, bonds, dividends, certificates of deposit, annuities, pension and retirement benefits, insurance benefits and proceeds, any and all documents of title, choses in action, personal and real property, intangible and tangible property and property rights, and demands whatsoever,

VV

VIVIAN VEHRING, Principal

liquidated or unliquidated, as now are, or shall hereafter become, owned by, or due, owing, payable, or belonging to me or in which I have or may hereafter acquire any interest; to have, use, and take all lawful means and equitable and legal remedies, procedures, and writs in my name for the collection and recovery thereof; and to adjust, sell, compromise, and agree for the same, and in my name, all endorsements, acquittance, releases, receipts, or other sufficient discharges for the same, whether under seal or otherwise.

31. **Purchase Flower Bonds**. To purchase in my name United States treasury bonds eligible for redemption at par in payment of my federal estate tax liability and to do all acts necessary to qualify these bonds for redemption at par.

32. **Purchase and Deal with Insurance.** To make application for insurance policies, to pay any fee or premium for the same out of my funds and, in regard to any life insurance policies, to exercise any and all rights or incidents of ownership in such policies.

33. **Sell**. To sell any and every kind of property that I may own now or in the future — real, personal, intangible, and/or mixed — including, without being limited to, contingent and expectant interests, marital rights, and any rights of survivorship incident to joint tenancy or tenancy by the entirety, upon such terms and conditions and security as Attorney-in-Fact shall deem appropriate and to grant options with respect to sales thereof; and to make such disposition of the proceeds of such sale or sales (including expending such proceeds for my benefit) as Attorney-in-Fact shall deem appropriate.

34. **Sign Documents and Incur Costs**. To sign, execute, endorse, sell, acknowledge, deliver, and file or record instruments and documents, including but not limited to contracts, agreements, and conveyances of real and personal property, instruments granting and perfecting security instruments and obligations, orders for the payment of money, receipts, releases, waivers, elections, vouchers, consents, satisfactions, and certificates. In addition, any agent of mine who has the authority to incur costs on my behalf may render the bills for such costs to Attorney-in-Fact as agent who has been granted the authority to pay such costs or to any trustee of any revocable living trust of mine, or guardian or conservator who has authority to pay such costs and the recipient thereof (i.e., Attorney-in-Fact as my agent with authority to pay or my trustee) shall promptly pay such costs. Either is authorized to sign such document individually, and the signature of one on such document is sufficient for either or both to act hereunder.

35. **Sign Disclaimers**. To make such qualified disclaimers which meet the requirements of I.R.C. § 2518, as amended from time to time, or of any subsequently enacted Code which corresponds to existing I.R.C. § 2518, as to all or any portion of any gift or devise I would otherwise receive, as in the circumstances the Attorney-in-Fact considers advisable.

36. **Transfer Assets to Trust**. To transfer assets to the Trustee of any Revocable Trust established by me, as now or subsequently amended, under which I or my spouse are Grantors. To facilitate any such transfer or transfers, the Attorney-in-Fact shall have the following powers:

VV

VIVIAN VEHRING, Principal

C:\Clients\DCPA1 (Vivian).wpd RLW