36.1 To assign, transfer, and deliver all cash, bonds, stocks, securities, annuities, and other property of any kind, real or personal, owned by me to the Trustee or the Trustee's nominee.

36.2 To withdraw any funds standing to my credit or to my credit jointly with others in any bank, savings and loan association, or other financial institution and to pay the sums withdrawn to the Trustee.

36.3 To endorse and deliver to the Trustee any checks, drafts, certificates of deposit, notes, or other instruments for the payment of money owing to me.

36.4 To convey to the Trustee or as Trustee directs, any real estate, interest in real estate, or beneficial interest in a Trust holding real estate, which I may own or possess.

36.5 To designate the Trustee as beneficiary or owner of any life insurance policies, employee benefit plans, or individual retirement plans owned by me or in which I have an interest.

36.6 To execute and deliver any assignment, stock power, deed, or other instrument which the Attorney-in-Fact deems necessary or appropriate to carry out and effectuate this Power of Attorney, to sign my name to any instrument pertaining to or required in connection with the transfer of my property to the Trustee, and to give full receipts and discharges.

36.7 To create or amend Revocable Trusts in my name conforming to or incorporating by reference the provisions of my latest validly executed Will.

37. **Transact Business**. To lease, purchase, sell, exchange and acquire, and to agree, bargain, and contract for the lease, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any real or personal property whatsoever, tangible or intangible, or interest therein, that I now own or may hereafter acquire, on such terms and conditions, and under such covenants, as my Attorney-in-Fact shall deem proper.

# Miscellaneous Provisions

38. **Affidavit by Attorney-in-Fact**. Any party dealing with my Attorney-in-Fact may rely upon as conclusively correct an affidavit of Attorney-in-Fact that (a) the powers of my Attorney-in-Fact are then in effect, (b) the action the Attorney-in-Fact desires to take is within the scope of the authority of the Attorney-in-Fact granted under this instrument, (c) Principal was competent at the time this instrument was executed, (d) this instrument has not been revoked, and/or (e) the Attorney-in-Fact continues to serve as my Attorney-in-Fact.

*V.V.* 

VIVIAN VEHRING, Principal

No person who relies upon any affidavit that this instrument specifically authorizes the Attorney-in-Fact to execute and deliver to such person shall incur any liability to Principal, Principal's estate, Principal's heirs or assigns for permitting the Attorney-in-Fact to exercise this authority. Nor shall any person who deals with the Attorney-in-Fact be responsible to determine or insure the proper application of funds or property.

39. **Declaration of Validity at Any Place and Under Any Circumstances**. I declare this to be my Durable General Power of Attorney under the provisions of any state or country I may be in at the time of my incapacity and that this Durable General Power of Attorney shall not be affected or revoked by my disability.

40. **Interpretation as General Power of Attorney**. This instrument is to be construed and interpreted as a General Power of Attorney. The enumeration of specific rights, acts, or powers herein is not to be construed or interpreted as limiting or restricting the powers herein granted to my Attorney-in-Fact.

41. **Amendments**. I retain the right to revoke or amend this Power of Attorney and to substitute other Attorneys-in-Fact in place of my Attorney-in-Fact. Amendment to this Power of Attorney shall be made in writing by me (not by my Attorney-in-Fact) and shall be attached to the original of this Power of Attorney and recorded in the same county or counties as the original if the original is recorded.

42. **Reservation of Right to Terminate**. I reserve the right at any time while competent to terminate all rights, powers, and authority under this Power of Attorney by giving notice in writing to my Attorney-in-Fact that such power is terminated. Such rights, powers, and authority shall remain in full force and effect until I give notice that they are terminated.

43. **Revocation**. I hereby revoke all prior General Powers of Attorney that I may have executed. This General Power of Attorney may be revoked by giving actual written notice to anyone dealing with my Attorney-in-Fact or by recording a Revocation of Power of Attorney with the County Recorder in the county or counties in which this Power was originally recorded. If this General Power of Attorney is not revoked within six months from its effective date by recording a Revocation, it shall be considered to be renewed and effective for additional six-month periods until either revoked by recording a Revocation of Power of Attorney or expired pursuant to the expiration date. My failure to record this Revocation shall be construed as a renewal of the Power of Attorney.

44. **Exoneration of Attorney-in-Fact**. My Attorney-in-Fact shall be deemed to have acted within attorney-in-fact authority; to have exercised reasonable care, diligence, and prudence; and to have acted impartially as to all persons interested in the assets of my estate unless the contrary is proved by affirmative evidence.

45. **Determination of Incapacity**. For all purposes under this Power of Attorney, I shall be deemed "incapacitated" if I declare myself incapacitated; become subject to involuntary confinement; disappear for thirty or more days as determined by my Attorney-in-Fact; or

VIVIAN VEHRING, Principal

C:\Clients\DGPA1 (Vivian).wpd RLW

upon certification by three physicians (licensed to practice under the laws of the state where I am a resident at the time of the certification and one of whom shall be my attending physician) that I am unable to properly care for myself or my affairs. If I am away from my state of residence, then any three physicians selected by my attorney-in-fact may certify in writing that I am incapacitated.

46. **Capacity Regained**. After a determination of incapacity, I shall be deemed to have regained capacity upon certification by three physicians (licensed to practice under the laws of the state where I am resident at the time of incapacity) that I am then capable of properly caring for myself or my affairs.

47. **Reimbursement of Expenses**. Attorney-in-Fact shall be entitled to reimbursement for all reasonable costs and expenses actually incurred and paid by Attorney-in-Fact on my behalf under any provision of this instrument. Attorney-in-Fact shall not be entitled to compensation for services rendered hereunder.

48. **Waiver of Duty to Produce Income and Avoid Transactions with Attorney-in-Fact**. Attorney-in-Fact shall have no responsibility to make my property productive of income, to increase the value of my estate or to diversify my investments. Attorney-in-Fact shall have no liability for entering into transactions authorized by this instrument with Attorney-in-Fact in Attorney-in-Fact's individual capacity so long as Attorney-in-Fact believes in good faith that such transactions are in my best interests or the best interests of my estate and those persons interested in my estate. Attorney-in-Fact shall be eligible to serve in all other fiduciary capacities, for me or my benefit, including, but not limited to, serving as Trustee, Guardian, Conservator, Personal Representative, Executor, and/or Administrator.

49. **Limitations on Powers**. The Attorney-in-Fact (a) has no incident of ownership in and no authority over any life insurance policies where I am the owner and my Attorney-in-Fact is the life insured; (b) has no authority over any Irrevocable Trust where I am the Trustee and my Attorney-in-Fact is the Grantor; (c) shall not disburse funds or property of mine in any manner which discharges a legal obligation of my Attorney-in-Fact, nor shall my Attorney-in-Fact make any gifts to my Attorney-in-Fact in excess of $10,000.00 per calendar year unless the Attorney-in-Fact complies with the provisions of Paragraph 22 (*Make Gifts*); (d) may not write wills or other testamentary documents for me or may not revoke those documents; (e) shall be prohibited from disclaiming assets to which Principal would otherwise be entitled if the effect of this disclaimer is to cause these assets to pass in any one calendar year directly or indirectly to Attorney-in-Fact or the estate of Attorney-in-Fact; and (f) shall not exercise any fiduciary powers that the Principal now holds or may hereafter acquire.

50. **Photocopies**. Attorney-in-Fact is authorized to make photocopies of this instrument as frequently and in such quantity as Attorney-in-Fact shall deem appropriate. Each photocopy shall have the same force and effect as any original.

VV

VIVIAN VEHRING, Principal

51. **Third Party Reliance**. For the purpose of inducing any physician, hospital, bank, broker, custodian, insurer, lender, transfer agent, taxing authority, governmental agency, or other party to act in accordance with the powers granted in this Power of Attorney, I hereby represent, warrant, and agree that:

51.1 If this Power of Attorney is revoked or amended for any reason, I, my estate, heirs, successors, and assigns will hold such party or parties harmless from any loss suffered or liability incurred by such party or parties acting in accordance with this Power of Attorney prior to that party's receipt of written notice of any such termination or amendment.

51.2 The powers conferred on the Attorney-in-Fact by this Power of Attorney may be exercised by the Attorney-in-Fact alone and the Attorney-in-Fact's signature or act under the authority granted in this Power of Attorney may be accepted by third parties as fully authorized by me and with the same force and effect as if I were personally present, competent, and acting on my own behalf.

51.3 No person who acts in reliance upon any representation the Attorney-in-Fact makes as to the scope of the Attorney-in-Fact's authority granted under this Power of Attorney shall incur any liability to me, my estate, heirs, successors, or assigns for permitting my Attorney-in-Fact to exercise any such power. Nor shall any person who deals with my Attorney-in-Fact be responsible to determine or ensure the proper applications of funds or property.

51.4 The Attorney-in-Fact shall have the right to seek appropriate court orders mandating acts which Attorney-in-Fact deem appropriate if a third party refuses to comply with actions taken by Attorney-in-Fact which are authorized by this Power of Attorney, or enjoining acts by third parties which Attorney-in-Fact has not authorized. In addition, Attorney-in-Fact may bring legal action against any third party who fails to comply with actions I have authorized my Attorney-in-Fact to take and demand damages, including punitive damages, on my behalf for such noncompliance.

52. **Severability**. If any provision of this Power of Attorney is found to be invalid for any reason, such invalidity shall not affect any of the other provisions of this Power of Attorney, and all invalid provisions shall be wholly disregarded.

53. **Governing Law**. All questions pertaining to validity, interpretation, and administration of this power shall be determined in accordance with the laws of the state set forth in the caption of this instrument. To the extent permitted by law, this instrument shall be applicable to all property of mine, real, personal, intangible and mixed, wherever and in whatever state of the United States or foreign country the situs of such property is at any time located and whether such property is now owned by me or hereafter acquired by me or for me by Attorney-in-Fact.

VIVIAN VEHRING, Principal

C:\Clients\DGPA1 (Vivian).wpd RLW

## WARNING TO PERSONS EXECUTING THIS DURABLE GENERAL POWER OF ATTORNEY

This is an important legal document. It creates a durable power of attorney. Before executing this document, you should know these important facts:

- This document may provide the person you designate as your attorney-in-fact with broad powers to dispose, sell, convey, and encumber your real and personal property.
- These powers will exist for an indefinite period of time unless you limit their duration in this document. These powers will continue to exist notwithstanding your subsequent disability or incapacity.
- If there is anything in this document which you do not understand, you should ask a lawyer to explain it to you.
- You have the right to revoke or terminate this durable general power of attorney at any time by (a) recording a revocation in the public office designated for that purpose on this Durable General Power of Attorney and (b) directly notifying your attorney-in-fact and anyone who may be dealing with your attorney-in-fact with respect to your property or other matters.

**IN WITNESS WHEREOF**, I, the Principal, execute this document, intending it to be effective on the date hereinabove first stated. I understand (a) this document gives my Attorney-in-Fact serious powers over me and my assets; (b) the powers continue even after I am disabled; and (c) I can revoke and cancel this document at any time.

2.07.98 — Vivian Vehring
Date Signed — VIVIAN VEHRING, Principal

VV
VIVIAN VEHRING, Principal

C:\Clients\DGPA1 (Vivian).wpd RLW

The foregoing instrument, consisting of 17 pages, including this page and the following page(s), was at the date thereof by the Principal signed, sealed, published, and declared to be Principal's Durable General Power of Attorney in the presence of us who, at Principal's request and in Principal's presence and in the presence of each other, have signed the same as witnesses thereto. THE WITNESSES ALSO AFFIRM THAT THEY ARE NOT RELATED TO THE PRINCIPAL BY BLOOD, MARRIAGE, OR ADOPTION AND ARE NOT PERSONS INVOLVED WITH THE MEDICAL CARE OF THE PRINCIPAL, AND ALSO AFFIRM THAT THEY ARE NOT A HEALTH CARE PROVIDER FOR PRINCIPAL OR AN AGENT OF, EMPLOYEE OF, OR IN ANY WAY CONNECTED WITH A HEALTH CARE PRACTITIONER OR PROVIDER FOR PRINCIPAL.

| | |
|---|---|
| Florence Henningsen | Mesa, AZ. |
| Signature of Witness | Address of Witness |
| Emily Franco | Mesa, AZ |
| Signature of Witness | Address of Witness |
| Pamela M. Wo[illegible] | Mesa, AZ. |
| Signature of Witness | Address of Witness |

STATE OF ARIZONA }
} ss.
County of Maricopa }

ACKNOWLEDGMENT AND VERIFICATION OF PRINCIPAL AND WITNESSES

On this date, 02/07/98, before me, the undersigned Notary Public, personally appeared VIVIAN VEHRING, the above-subscribed Principal and Florence Henningsen, Emily Franco, Pam Woz, the above-subscribed witnesses, respectively, known to me or satisfactorily proven to be the persons whose names are subscribed to the foregoing instrument. These persons, being first duly sworn, did hereby declare to the undersigned Notary Public that Principal signed and executed this instrument in the presence of the witnesses; Principal signed willingly or directed another to sign for Principal; Principal executed it as Principal's free and voluntary act for the purposes therein expressed; each of the witnesses, in the presence of the Principal, signed this document as witnesses; and, to the best of their knowledge, Principal was at the time 18 or more years of age, of sound mind, and under no constraint or undue influence. The witnesses have declared under penalty of perjury that the Principal was in that condition at the time of signing this instrument and that this instrument was subscribed, sworn to, and acknowledged before me.

| | |
|---|---|
| Aug 14th 2001 | Katrina M. Zehring |
| Notary Expiration Date | Notary Public |

Vivian [illegible] [illegible]

OFFICIAL SEAL
KATRINA M. ZEHRING

The foregoing instrument, consisting of 17 pages, including this page and the following page(s), was at the date thereof by the Principal signed, sealed, published, and declared to be Principal's Durable General Power of Attorney in the presence of us who, at Principal's request and in Principal's presence and in the presence of each other, have signed the same as witnesses thereto. THE WITNESSES ALSO AFFIRM THAT THEY ARE NOT RELATED TO THE PRINCIPAL BY BLOOD, MARRIAGE, OR ADOPTION AND ARE NOT PERSONS INVOLVED WITH THE MEDICAL CARE OF THE PRINCIPAL, AND ALSO AFFIRM THAT THEY ARE NOT A HEALTH CARE PROVIDER FOR PRINCIPAL OR AN AGENT OF, EMPLOYEE OF, OR IN ANY WAY CONNECTED WITH A HEALTH CARE PRACTITIONER OR PROVIDER FOR PRINCIPAL.

Florence Henningsen — Mesa, AZ.
Signature of Witness — Address of Witness

Emily Franco — Mesa, AZ
Signature of Witness — Address of Witness

Pamela M Wetz — Mesa, AZ.
Signature of Witness — Address of Witness

STATE OF ARIZONA )
) ss.
County of Maricopa )

ACKNOWLEDGMENT AND VERIFICATION OF PRINCIPAL AND WITNESSES

On this date, 02/07/98, before me, the undersigned Notary Public, personally appeared VIVIAN VEHRING, the above-subscribed Principal and Florence Henningsen, Emily Franco, Pam Wetz, the above-subscribed witnesses, respectively, known to me or satisfactorily proven to be the persons whose names are subscribed to the foregoing instrument. These persons, being first duly sworn, did hereby declare to the undersigned Notary Public that Principal signed and executed this instrument in the presence of the witnesses; Principal signed willingly or directed another to sign for Principal; Principal executed it as Principal's free and voluntary act for the purposes therein expressed; each of the witnesses, in the presence of the Principal, signed this document as witnesses; and, to the best of their knowledge, Principal was at the time 18 or more years of age, of sound mind, and under no constraint or undue influence. The witnesses have declared under penalty of perjury that the Principal was in that condition at the time of signing this instrument and that this instrument was subscribed, sworn to, and acknowledged before me.

Aug 14th 2001
Notary Expiration Date

Katrina M. Zehring
Notary Public

OFFICIAL SEAL
KATRINA M. ZEHRING
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Aug. 14, 2001

Vivian A. Vehring
VIVIAN VEHRING, Principal

C:\Clients\DGPA1 (Vivian).wpd RLW

# ATTORNEY'S CERTIFICATE

I certify that I am a lawyer licensed in the State of Arizona of the United States and practicing with the law firm of Jaburg & Wilk, P.C., in Phoenix, Arizona, telephone (602) 248-1000. I (or another attorney of our law firm) have written and supervised the execution of this legal document. It is our opinion that this document complies with existing laws and is legally binding. Anyone having any questions about this document, needing any background information concerning this document, or desiring any interpretation of this document may contact our law firm. This document consists of 17 pages, including this one.

JABURG & WILK, P.C.

DATED: 02-07-98

By Rory L Whipple

VIVIAN VEHRING, Principal

C:\Clients\DGPA1 (Vivian).wpd RLW

American Express Financial Advisors

IDS Life Insurance Company
IDS Tower 10
Minneapolis, Minnesota 55440

# DEFERRED ANNUITY CONTRACT

- Flexible purchase payments.
- Optional fixed dollar or variable accumulation values and annuity payments.
- Annuity payments to begin on the retirement date.
- This contract is nonparticipating. Dividends are not payable.

| | | | |
|---|---|---|---|
| Annuitant: | Vivian A Vehring | Contract Date: | June 24, 1999 |
| Contract Number: | 9300-06395001 | Retirement Date: | June 24, 2009 |

This is a deferred annuity contract. It is a legal contract between you, as the owner, and us, IDS Life Insurance Company, a Stock Company, Minneapolis, Minnesota. **PLEASE READ YOUR CONTRACT CAREFULLY.**

If the annuitant is living on the Retirement Date, upon your request, we will begin to pay you monthly annuity payments. Any payments made by us are subject to the terms of this contract.

We issue this contract in consideration of your application and the payment of the purchase payments.

Signed for and issued by IDS Life Insurance Company in Minneapolis, Minnesota, as of the contract date shown above.

**ACCUMULATION VALUES AND ANNUITY PAYMENTS, WHEN BASED ON THE INVESTMENT RESULTS OF THE VARIABLE SUBACCOUNTS, ARE VARIABLE AND NOT GUARANTEED AS TO FIXED DOLLAR AMOUNT. SEE PAGE 9 FOR VARIABLE PROVISIONS.**

## NOTICE OF YOUR RIGHT TO EXAMINE THIS CONTRACT FOR 10 DAYS

If for any reason you are not satisfied with this contract, return it to us or our representative within 10 days after you receive it. We will then cancel this contract and refund all premiums which you have paid. This contract will then be considered void from its start.

**President**

Richard W Kling

**Secretary**

William A Stoizmann

# GUIDE TO CONTRACT PROVISIONS

| | |
|---|---|
| **Definitions** | **Important words and meanings/Page 3** |
| **General Provisions** | **Entire contract; Incontestability; Benefits based upon incorrect data; State Laws; Federal Laws; Reports to owner; Evidence of survival; Protection of proceeds; Payments by us; Voting rights/Page 4** |
| **Ownership and Beneficiary** | **Owner rights; Change of ownership; Beneficiary; Change of Beneficiary; Assignment/Page 5** |
| **Payments to Beneficiary** | **Describes options and amounts payable upon death/Page 6** |
| **Purchase Payments** | **Purchase payments amounts and intervals; Payment limits; Allocation of purchase payments/Page 7** |
| **Contract Value** | **Describes the fixed and variable account contract values; Interest to be credited; Contract administrative charge; Premium taxes; Transfers of Contract Values/Page 8** |
| **Fixed and Variable Accounts** | **Describes the variable subaccounts, accumulation units and values; Net investment factor; Mortality and expense risk charge; Annuity unit value/Page 9** |
| **Surrender Provisions** | **Surrender of the contract for its surrender value; Surrender Charges; Waiver of Surrender Charges; Rules for surrender/Page 11** |
| **Annuity Provisions** | **When annuity payments begin; Different ways to receive annuity payments; Determination of payment amounts/Page 13** |
| **Table of Settlement Rates** | **Tables showing amount of first variable annuity payment and the guaranteed fixed annuity payments for the various payment plans/Page 15** |

# CONTRACT DATA

| | | | |
|---|---|---|---|
| Annuitant: | Vivian A Vehring | Contract Date: | June 24, 1999 |
| Contract Number: | 9300-06395001 | Retirement Date: | June 24, 2009 |
| Contract Owner: | Vivian A Vehring | | |

## Deferred Annuity Contract ("Flexible Portfolio Annuity")

Upon issuance of this contract your purchase payments have been scheduled to be paid and applied to the fixed and variable subaccounts as shown below. You may change the amount, frequency and allocations as provided in this contract. Refer to the purchase payments provision on Page 7.

Lump Sum Single Purchase Payment Only: $450,000.00
Scheduled Purchase Payment:
Annual Amount: None

| Variable Subaccounts | Mutual Fund | Purchase Payments Allocation Percentage |
|---|---|---|
| HC | AXP VP Capital Resource Fund | 0.000% |
| HS | AXP VP Bond Fund | 0.000% |
| HM | AXP VP Cash Management Fund | 100.000% |
| HD | AXP VP Managed Fund | 0.000% |
| HI | AXP VP International Fund | 0.000% |
| HA | AXP VP Strategy Aggressive Fund | 0.000% |
| HV | AXP VP Extra Income Fund | 0.000% |
| HG | AXP VP New Dimensions Fund | 0.000% |
| HY | AXP VP Global Bond Fund | 0.000% |
| HW | AIM Variable Ins. Growth & Income Fund | 0.000% |
| HN | Putnam Variable Trust New Opportunities Fund | 0.000% |
| HT | Warburg Pincus Trust Small Company Portfolio | 0.000% |
| HK | Templeton Developing Markets Fund | 0.000% |
| HP | American Century VP Value | 0.000% |
| Fixed Account | | 0.000% |

### Schedule of Surrender Charges

| Contract Year | Surrender Charge Applied to Purchase Payments Surrendered |
|---|---|
| 1 Through 3 | 7% |
| 4 | 6% |
| 5 | 5% |
| 6 | 4% |
| 7 | 3% |
| 8 | 2% |
| Thereafter | 0% |

Contract Administrative Charge: $30 annually. Charge is waived if contract value, or purchase payments less purchase payments surrendered, equals or exceeds $25,000. See Page 8.

Maximum Purchase Payments Permitted:

1st contract year: $ 500,000

Each contract year thereafter: $ 100,000

Fixed Account Guaranteed Interest Rate: 3% Annual Effective Rate

As of the date this contract was issued, any amounts allocated to the fixed account will earn interest, for the first year, at the annual effective rate of 5.00%. New rates may be declared from time to time.

# DEFINITIONS

The following words are used often in this contract. When we use these words, this is what we mean:

**annuitant**

The person or persons on whose life monthly annuity payments depend.

**you, your**

The owner of this contract. The owner may be someone other than the annuitant. The owner may be changed as provided in this contract.

**we, our, us**

IDS Life Insurance Company

**accumulation unit**

An accumulation unit is an accounting unit of measure. It is used to calculate the contract value prior to settlement.

**annuity unit**

An annuity unit is an accounting unit of measure. It is used to calculate the value of annuity payments from the variable subaccounts on and after the retirement date.

**contract date**

It is the date from which contract anniversaries, contract years, and contract months are determined. Your contract date is shown under Contract Data.

**contract anniversary**

The same day and month as the contract date each year that the contract remains in force.

**contract value**

The sum of the Fixed Account Contract Value (which receives a declared interest rate) and the Variable Account Contract Value (which varies with the investment performance of the elected subaccounts) for this contract.

**retirement date**

The date shown under Contract Data on which annuity payments are to begin. This date may be changed as provided in this contract. You will be notified prior to the retirement date in order to select an appropriate annuity payment plan.

**settlement**

The application of the contract value of this contract to an Annuity Payment Plan to provide annuity payments.

**valuation date**

A valuation date is each day the New York Stock Exchange is open for trading.

**valuation period**

A valuation period is the interval of time commencing at the close of business on each valuation date and ending at the close of business on the next valuation date.

**fixed account**

The fixed account is made up of all our assets other than those in any separate account.

**variable subaccounts**

The portfolios of the Variable Account. The subaccounts available on the contract date are named under Contract Data.

**fixed annuity**

A fixed annuity is an annuity with payments which are guaranteed by us as to dollar amount during the annuity payment period.

**variable annuity**

A variable annuity is an annuity with payments which (1) are not predetermined or guaranteed as to dollar amount; and (2) vary in amount with the investment experience of one or more of the variable subaccounts.

**written request**

A request in writing signed by you and delivered to us at our home office.

# GENERAL PROVISIONS

**Entire Contract**

This contract form is the entire contract between you and us.

No one except one of our corporate officers (President, Vice President, Secretary or Assistant Secretary) can change or waive any of our rights or requirements under this contract. That person must do so in writing. None of our representatives or other persons has the authority to change or waive any of our rights or requirements under this contract.

**Incontestable**

This contract is incontestable from its date of issue.

**Benefits Based on Incorrect Data**

If the amount of benefits is determined by data as to a person's age or sex that is incorrect, benefits will be recalculated on the basis of the correct data. Any underpayments made by us will be made up immediately. Any overpayments made by us will be subtracted from the future payments.

**State Laws**

This contract is governed by the law of the state in which it is delivered. The values and benefits of this contract are at least equal to those required by such state.

**Federal Laws**

This contract is intended to qualify as an annuity contract for Federal income tax purposes. To that end, the provisions of this contract are to be interpreted to ensure or maintain such tax qualification, despite any other provisions to the contrary. We reserve the right to amend this contract to reflect any clarifications that may be needed or are appropriate to maintain such qualification or to conform the contract to any applicable changes in the tax qualification requirements. We will send you a copy of any such amendments.

**Reports to Owner**

At least once a year we will send you a statement showing the contract value and the cash surrender value of this contract. This statement will be based on any laws or regulations that apply to contracts of this type.

**Evidence of Survival**

Where any payments under this contract depend on the recipient or annuitant being alive on a given date, proof that such condition has been met may be required by us. Such proof may be required prior to making the payments.

**Protection of Proceeds**

Payments under this contract are not assignable by any beneficiary prior to the time they are due. To the extent allowed by law, payments are not subject to the claims of creditors or to legal process.

**Payments By Us**

All sums payable by us are payable from our home office. Any payment of a variable annuity or surrender based on the variable contract value shall be payable only from the variable subaccounts.

**Voting Rights**

So long as federal law requires, we will give certain voting rights to contract owners. As contract owner, if you have voting rights we will send a notice to you telling you the time and place of a shareholder meeting. The notice will also explain matters to be voted upon and how many votes you get.

# OWNERSHIP AND BENEFICIARY

**Owner's Rights**

As long as the annuitant is living and unless otherwise provided in this contract, you may exercise all rights and privileges provided in this contract or allowed by us.

**Change of Ownership**

You can change the ownership of this contract by written request on a form approved by us. The change must be made while the annuitant is living. Once the change is recorded by us, it will take effect as of the date of your request, subject to any action taken or payment made by us before the recording.

**Beneficiary**

Beneficiaries are those you name, in a form satisfactory to us, to receive benefits of this contract if you or the annuitant die while this contract is in force.

Only those beneficiaries who are living when death benefits become payable may share in the benefits, if any. If no beneficiary is then living, we will pay the benefits to you, if living, otherwise to your estate.

**Change of Beneficiary**

You may change the beneficiary anytime while the annuitant is living by satisfactory written request to us. Once the change is recorded by us, it will take effect as of the date of your request, subject to any action taken or payment made by us before the recording.

**Assignment**

While the annuitant is living, you can assign this contract or any interest in it. Your interest and the interest of any beneficiary is subject to the interest of the assignee. An assignment is not a change of ownership and an assignee is not an owner as these terms are used in this contract. Any amounts payable to the assignee will be paid in a single sum.

A copy of any assignment must be submitted to us at our home office. Any assignment is subject to any action taken or payment made by us before the assignment was recorded at our home office. We are not responsible for the validity of any assignment.

# PAYMENTS TO BENEFICIARY

### Death Benefit Before the Retirement Date

If the annuitant or owner dies before the retirement date and the annuitant's age 75, while this contract is in force we will pay to the beneficiary the greater of:

1. the contract value; or
2. the contract value as of the most recent sixth contract anniversary less any amounts surrendered; or
3. the purchase payments paid less any amounts surrendered.

If the annuitant or owner dies before the retirement date and on or after the annuitant's 75th birthday, while this contract is in force, we will pay to the beneficiary the greater of:

1. the contract value; or
2. the contract value as of the most recent sixth contract anniversary, less any amounts surrendered.

The above amount will be payable in a lump sum upon the receipt of due proof of death of the annuitant or owner whichever first occurs. The beneficiary may elect to receive payment anytime within 5 years after the date of death.

In lieu of a lump sum, payment may be made under an Annuity Payment Plan, provided:

1. the beneficiary elects the plan within 60 days after we receive due proof of death; and
2. payments begin no later than one year after the date of death; and
3. the plan provides payments over a period which does not exceed the life of the beneficiary, or the life expectancy of the beneficiary.

In this event, the reference to "annuitant" in the Annuity Provisions shall apply to the beneficiary.

Any amounts payable or applied by us as described in this section will be based on the contract value as of the valuation date on or next following the date on which due proof of death is received at our Home Office.

### Spouse Option to Continue Contract Upon Owner's Death

If the owner's death occurs prior to the retirement date, the owner's spouse, if designated as sole beneficiary, may elect in writing to forego receipt of the death benefit and instead continue this contract in force as owner. The election by the spouse must be made within 60 days after we receive due proof of death.

### Death Benefit After the Retirement Date

If the annuitant or owner dies after the retirement date, the amount payable, if any, will be as provided in the Annuity Payment Plan then in effect.

# PURCHASE PAYMENTS

**Purchase Payments**

Purchase payments are the payments you make for this contract and the benefits it provides. Purchase payments must be paid or mailed to us at our home office or to an authorized agent. If requested, we'll give you a receipt for your purchase payments. Upon payment to us, purchase payments become our property.

Net purchase payments are that part of your purchase payments applied to the contract value. A net purchase payment is equal to the purchase payment less any applicable premium tax charge.

**Amount and Intervals**

Purchase payments may be paid in a single sum or in installments until the earlier of: (1) the date this contract terminates by surrender or otherwise; or (2) the date on which annuity payments begin.

Subject to the Payment Limits Provision you may: (1) stop and/or restart purchase payments; or (2) increase or decrease the amount of your purchase payments; or (3) change the interval of your purchase payments.

**Payment Limits Provision**

Maximum Purchase Payments - The maximum purchase payments in the first or later contract years may not exceed the amounts shown under Contract Data. We reserve the right to increase the maximums.

Minimum Purchase Payments - Upon issue of this contract, a purchase payment intended as a Single Purchase Payment must be at least $2,000. Additional payments must be at least $50. If you intend to make installment purchase payments such payments, on an annualized basis, must be at least equal to $600.

We also reserve the right to cancel this contract if both of the following conditions exist at the same time: (1) no purchase payments have been paid for a continuous period of 24 months; and (2) less than $600 in purchase payments have been paid under this contract. In this event we will give you 30 days written notice of our intent to cancel this contract. Upon such cancellation we will pay you the contract value in one sum. This contract will then terminate.

**Allocation of Purchase Payments**

You instruct us on how you want your purchase payments allocated among the fixed account and variable subaccounts. Your choice for each account may be made in any whole percent from 0% to 100% as long as the total adds up to 100%. Your allocation instructions as of the contract date are shown under Contract Data. By written request, or by another method agreed to by us, you may change your choice of accounts or percentages. The first net purchase payment will be allocated as of the end of the valuation period during which we make an affirmative decision to issue this contract. Net purchase payments after the first will be allocated as of the end of the valuation period during which we receive the payment at our home office.

# CONTRACT VALUE

## Contract Value

The contract value at any time is the sum of: (1) the Fixed Account Contract Value; and (2) the Variable Account Contract Value.

If: (1) part or all of the contract value is surrendered; or (2) charges described herein are made against the contract value; then a number of accumulation units from the variable subaccounts and an amount from the fixed account will be deducted to equal such amount. For surrenders, deductions will be made from the fixed or variable subaccounts that you specify. Otherwise, the number of units from the variable subaccounts and the amount from the fixed account will be deducted in the same proportion that your interest in each bears to the total contract value.

## Fixed Account Contract Value

The fixed account contract value at any time will be: (1) the sum of all amounts credited to the fixed account under this contract; less (2) any amounts deducted for charges or surrenders.

## Interest to be Credited

We will credit interest to the fixed account contract value. Interest will begin to accrue on the date the purchase payments which are received in our home office become available to us for use. Such interest will be credited at rates that we determine from time to time. However, we guarantee that the rate will not be less than the Guaranteed Interest Rate shown under Contract Data.

## Variable Account Contract Value

The variable account contract value at any time will be: (1) the sum of the value of all variable subaccount accumulation units under this contract resulting from purchase payments so allocated, or transfers among the variable and fixed accounts; less (2) any units deducted for charges or surrenders.

## Contract Administrative Charge

We charge a fee for establishing and maintaining our records for this contract. The charge is $30 per year and is deducted from the contract value at the end of each contract year or, if earlier, when the contract is fully surrendered. We waive this charge if your contract value, or your total purchase payments less any purchase payments surrendered, equals or exceeds $25,000. The charge does not apply after settlement of this contract under an annuity payment plan.

## Premium Tax Charges

A charge will be made by us against the contract value of this contract at the time that any premium taxes not previously deducted are payable.

## Transfers of Contract Values

While this contract is in force prior to the settlement date, transfer of contract values may be made as outlined below:

1. You may transfer all or a part of the values held in one or more of the variable subaccounts to another one or more of the variable subaccounts. Subject to item 2, you may also transfer values held in one or more of the variable subaccounts to the fixed account.

2. On or within the 30 days after a contract anniversary you may transfer values from the fixed account to one or more of the variable subaccounts. Only one such transfer is allowed during this period each year. If such a transfer is made, no transfers from a variable subaccount to the fixed account may be made until the next contract anniversary.

You may make a transfer by written request. Transfer requests may also be made according to telephone procedures or automated transfer procedures that are then currently in effect, if any. There is no fee or charge for these transfers. However, the minimum transfer amount is $250, or if less, the entire value in the account from which the transfer is being made. Smaller minimums may apply to automated transfer procedures. This transfer privilege may be suspended or modified by us at any time.

# FIXED AND VARIABLE ACCOUNTS

**The Fixed Account**

The fixed account is our general account. It is made up of all of our assets other than: (1) those in the variable subaccounts; and (2) those in any other segregated asset account.

**The Variable Account**

The variable account is a separate investment account of ours. It consists of several subaccounts which are named under Contract Data. We have allocated a part of our assets for this contract to the variable accounts. Such assets remain our property. However, they may not be charged with the liabilities from any other business in which we may take part.

**Investments of the Variable Account**

Purchase payments applied to the variable subaccounts will be allocated as specified by the owner. Each variable subaccount will buy, at net asset value, shares of the fund shown for that subaccount under Contract Data or as later added or changed.

We may change the mutual funds from which the variable subaccounts buy shares if laws or regulations change, the existing funds become unavailable or in our judgment, the funds are no longer suitable for the subaccounts. If any of these situations occur, we would have the right to substitute funds other than those shown under Contract Data. We may also add additional subaccounts investing in other funds.

When required, we would first seek approval of the Securities and Exchange Commission and, the insurance regulator of the state where this contract is delivered.

**Valuation of Assets**

Mutual fund shares in the variable subaccounts will be valued at their net asset value.

**Variable Account Accumulation Units**

The company will credit net purchase payments and amounts of variable subaccount transfers in the form of accumulation units. The number of units to be credited to each subaccount will be determined by dividing the net amount allocated to that subaccount by the unit value of the subaccount. In the case of the initial net purchase payment, units will be credited on the date we make an affirmative decision to issue this contract. For additional payments, units will be credited as of the valuation period during which the purchase payment is received.

The amount of any Contract Administrative Charge, or other applicable charges or partial surrenders from the variable account contract value will reduce the number of units credited to the contract in the variable subaccounts. A transfer out of a subaccount will reduce the number of units credited to the contract in that subaccount while a transfer into a subaccount will increase the number of units.

**Variable Account Accumulation Unit Value**

The value of an accumulation unit for each of the variable subaccounts was arbitrarily set at $1 when the first mutual fund shares were bought. The value for any later valuation period is found as follows:

> The accumulation unit value for each variable subaccount for the last prior valuation period is multiplied by the net investment factor for the same account for the next following valuation period. The result is the accumulation unit value. The value of an accumulation unit may increase or decrease from one valuation period to the next.

**Net Investment Factor**

The net investment factor is an index applied to measure the investment performance of a variable subaccount from one valuation period to the next. The net investment factor may be greater or less than one; therefore, the value of an accumulation unit may increase or decrease.

The net investment factor for any such subaccount for any valuation period is determined by: dividing (1) by (2) and subtracting (3) from the result. This is done where:

(1) is the sum of

- a. the net asset value per share of the mutual fund held in the variable subaccount determined at the end of the current valuation period; plus
- b. the per share amount of any dividend or capital gain distributions made by the mutual fund held in the variable subaccount, if the "ex-dividend" date occurs during the current valuation period.

(2) is the net asset value per share of the mutual fund held in the variable subaccount, determined at the end of the last prior valuation period.

(3) is a factor representing the mortality and expense risk charge.

**Mortality and Expense Risk Charge**

In calculating accumulation unit values we will deduct a mortality and expense risk charge from the variable subaccounts equal, on an annual basis, to 1.25% of the daily net asset value. This deduction is made to compensate us for assuming the mortality and expense risks under contracts of this type. We estimate that approximately 2/3 of this charge is for assumption of mortality risk and 1/3 is for assumption of expense risk. The deduction will be: (1) made from each variable subaccount; and (2) computed on a daily basis.

**Annuity Unit Value**

The value of an Annuity Unit for each variable subaccount was arbitrarily set at $1 when the first mutual funds were bought. The value for any later valuation period is found as follows:

1. The annuity unit value for each variable subaccount for the last prior valuation period is multiplied by the net investment factor for the subaccount for the valuation period for which the annuity unit value is being calculated.

2. The result is multiplied by an interest factor. This is done to neutralize the assumed investment rate which is built into the annuity tables on page 15.

# SURRENDER PROVISIONS

**Surrender**

By written request and subject to the rules below you may:

1. surrender this contract for the total surrender value; or

2. partially surrender this contract for a part of the surrender value.

**Surrender Value**

The surrender value at any time will be:

1. the contract value;

2. minus the contract administrative charge;

3. minus any surrender charge.

**Surrender Charge**

A surrender charge may apply during the first eight contract years. To determine the charge during this period for a partial or total surrender we first divide the contract value into two parts.

1. Contract earnings - This is the contract value minus the sum of all purchase payments we have received that have not been previously surrendered.

2. Purchase payments - These are the total purchase payments we received that have not been previously surrendered.

We will then surrender your contract value in the following order so that the amount surrendered, less any surrender charge that applies, equals your requested surrender amount:

1. Contract Earnings, if any, are surrendered first. There is no surrender charge on contract earnings.

2. Next, if necessary, we surrender purchase payments not previously surrendered.

The surrender charge shown under Contract Data applies to purchase payments surrendered.

**Determining Contract Earnings**

Contract earnings are determined by looking at the entire contract value, not just the earnings of a certain variable subaccount or the fixed account.

For example, the gains you may have in a certain variable subaccount or interest earned in the fixed account may be offset by losses in another variable subaccount. This may result in not having any contract earnings available at the time of surrender.

At the time of a surrender, we will surrender any amounts representing contract earnings first in order to minimize any applicable surrender charge.

**Waiver of Surrender Charges**

There are no surrender charges for:

1. Death benefit payments; or

2. Contracts settled under an Annuity Payment Plan; or

3. Amounts surrendered to meet applicable minimum distribution requirements under the Internal Revenue Code of 1986, as amended, its regulations and/or promulgations of the Internal Revenue Service. Amounts surrendered under this waiver provision are limited to one time per year unless we agree otherwise.

**Rules For Surrender**

All surrenders will have the following conditions:

1. You must apply by written request or other method agreed to by us: (a) while this contract is in force; and (b) prior to the earlier of the retirement date or the death of the annuitant.

2. Unless we agree otherwise, you must surrender an amount equal to at least $250 or the entire contract value, if less. The contract value after a partial surrender must be at least $600.

3. The amount surrendered, less any charges, will normally be paid to you within seven days of our receipt of your written surrender request and the return of this contract, if required. For surrenders from the fixed account, we have the right to defer payment to you for up to 6 months from the date we receive your request.

4. For partial surrenders, if you do not specify from which accounts the surrender is to be made, the surrender will be made from the variable subaccounts and fixed account in the same proportion as your interest in each bears to the contract value.

5. Any amounts surrendered and charges which may apply can not be repaid.

Upon surrender for the full surrender value this contract will terminate. We may require that you return the contract to us before we pay the full surrender value.

**Suspension or Delay in Payment of Surrender**

We have the right to suspend or delay the date of any surrender payment from the variable subaccounts for any period:

1. When the New York Stock Exchange is closed; or
2. When trading on the New York Stock Exchange is restricted; or
3. When an emergency exists as a result of which: (a) disposal of securities held in the variable subaccounts is not reasonably practicable; or (b) it is not reasonably practicable to fairly determine the value of the net assets of the variable account; or
4. During any other period when the Securities and Exchange Commission, by order, so permits for the protection of security holders.

Rules and regulations of the Securities and Exchange Commission will govern as to whether the conditions set forth in 2 and 3 exist.

# ANNUITY PROVISIONS

**Settlement**

When settlement occurs, the contract value will be applied to make annuity payments. The first payment will be made as of the retirement date. This date is shown under Contract Data. Before payments begin we will require satisfactory proof that the annuitant is alive. We may also require that you exchange this contract for a supplemental contract which provides for the annuity payments.

**Change of Retirement Date**

You may change the retirement date shown for this contract. Tell us the new date by written request. However the retirement date may not be later than the later of: (1) the annuitant's 85th birthday; or (2) the tenth contract anniversary. Also, if you select a new date, it must be at least 30 days after we receive your written request at our home office.

**Annuity Payment Plans**

Subject to the terms of this contract, annuity payments may be made on a fixed dollar basis, a variable basis, or a combination of both. You can schedule receipt of annuity payments according to one of the Plans A through E below or another plan agreed to by us.

**Plan A** - This provides monthly annuity payments during the lifetime of the annuitant. No payments will be made after the annuitant dies.

**Plan B** - This provides monthly annuity payments during the lifetime of the annuitant with a guarantee by us that payments will be made for a period of at least five, ten or fifteen years. You must select the guaranteed period.

**Plan C** - This provides monthly annuity payments during the lifetime of the annuitant with a guarantee by us that payments will be made for a certain number of months. We determine the number of months by dividing the amount applied under this Plan by the amount of the first monthly annuity payment.

**Plan D** - Monthly payments will be paid during the lifetime of the annuitant and a joint annuitant. When either the annuitant or the joint annuitant dies we will continue to make monthly payments during the lifetime of the survivor. No payments will be paid after the death of both the annuitant and joint annuitant.

**Plan E** - (Installments for a specified period) This provides monthly annuity payments for a period of years. The period of years may be no less than 10 nor more than 30.

By written request to us at least 30 days before the Retirement Date, you may select the Plan. If at least 30 days before the Retirement Date we have not received at our home office your written request to select a Plan, we will make fixed-dollar payments according to Plan B with payments guaranteed for ten years.

If the amount to be applied to a Plan would not provide an initial monthly payment of at least $20, we have the right to make a lump sum payment of the contract value.

**Allocation of Contract Values at Settlement**

At the time of settlement under an Annuity Payment Plan you may reallocate your contract value to the Fixed Account to provide fixed dollar payments and/or among the variable subaccounts to provide variable annuity payments. Unless we agree otherwise, you may use a maximum of five variable subaccounts at any one time during settlement.

**Fixed Annuity**

A fixed annuity is an annuity with payments that are guaranteed by us as to dollar amount. Fixed annuity payments after the first will never be less than the amount of the first payment. At settlement, the fixed account contract value will be applied to the applicable Annuity Table. This will be done in accordance with the Payment Plan chosen. The amount payable for each $1,000 so applied is shown in Table B on page 16.

**Variable Annuity**

A variable annuity is an annuity with payments which: (1) are not predetermined or guaranteed as to dollar amount; and (2) vary in amount with the investment experience of the variable subaccounts.

**Determination of First Variable Annuity Payment**

At settlement, the variable account contract value will be applied to the applicable Annuity Table. This will be done: (1) on the valuation date on or next preceding the 7th calendar day before the retirement date; and (2) in accordance with the Payment Plan chosen. The amount payable for the first payment for each $1,000 so applied is shown in Table A on page 15.

**Variable Annuity Payments After the First Payment**

Variable annuity payments after the first vary in amount. The amount changes with the investment performance of the variable subaccounts. The dollar amount of variable annuity payments after the first is not fixed. It may change from month to month. The dollar amount of such payments is determined as follows:

1. The dollar amount of the first annuity payment is divided by the value of an annuity unit as of the valuation date on or next preceding the 7th calendar day before the retirement date. This result establishes the fixed number of annuity units for each monthly annuity payment after the first. This number of annuity units remains fixed during the annuity payment period.

2. The fixed number of annuity units is multiplied by the annuity unit value as of the valuation date on or next preceding the 7th calendar day before the date the payment is due. This result establishes the dollar amount of the payment.

We guarantee that the dollar amount of each payment after the first will not be affected by variations in expenses or mortality experience.

**Exchange of Annuity Units**

After annuity paments begin, annuity units of any variable subaccount may be exchanged for units of any of the other variable subaccounts. This may be done no more than once a year. Unless we agree otherwise you may use a maximum of five variable subaccounts at any one time. Once annuity payments start no exchanges may be made to or from any fixed annuity.

# TABLE OF SETTLEMENT RATES

Table A below shows the amount of the first monthly variable annuity payment, based on a 5% assumed investment return, for each $1,000 of value applied under any Payment Plan. The amount of the first and all subsequent monthly fixed dollar annuity payments for each $1,000 of value applied under any Payment Plan will be based on our fixed dollar Table of Settlement Rates in effect on the settlement date. Such rates are guaranteed to be not less than those shown in Table B. The amount of such annuity payments under Plans A, B, and C will depend upon the sex and the adjusted age of the annuitant on the date of settlement. The amount of such annuity payments under Plan D will depend upon the sex and the adjusted age of the annuitant and joint annuitant on the date of settlement. Adjusted age shall be equal to the age nearest birthday minus an "adjustment" depending on the calendar year of birth of the annuitant as follows:

| Calendar Year of Annuitant's Birth | Adjustment | Calendar Year of Annuitant's Birth | Adjustment |
|---|---|---|---|
| Prior to 1920 | 0 | 1945 through 1949 | 6 |
| 1920 through 1924 | 1 | 1950 through 1959 | 7 |
| 1925 through 1929 | 2 | 1960 through 1969 | 8 |
| 1930 through 1934 | 3 | 1970 through 1979 | 9 |
| 1935 through 1939 | 4 | 1980 through 1989 | 10 |
| 1940 through 1944 | 5 | After 1989 | 11 |

**TABLE A Dollar Amount of First Monthly Variable Annuity Payment Per $1000 Applied**

| | PLAN A | | | | PLAN B | | | | PLAN C | | PLAN D-Joint and Survivor: Adjusted Age of Female Joint Annuitant | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adj. Age* | Life Income M | Life Income F | 5 Years Certain M | 5 Years Certain F | 10 Years Certain M | 10 Years Certain F | 15 Years Certain M | 15 Years Certain F | With Refund M | With Refund F | Adj. Male Age* | 10 Years Younger | 5 Years Younger | Same Age | 5 Years Older | 10 Years Older |
| 55 | 5.89 | 5.44 | 5.86 | 5.43 | 5.79 | 5.40 | 5.67 | 5.34 | 5.68 | 5.33 | 55 | 4.78 | 4.88 | 5.04 | 5.21 | 5.38 |
| 60 | 6.46 | 5.89 | 6.42 | 5.87 | 6.28 | 5.80 | 6.07 | 5.69 | 6.13 | 5.70 | 60 | 4.94 | 5.16 | 5.37 | 5.61 | 5.83 |
| 65 | 7.27 | 6.61 | 7.18 | 6.47 | 6.91 | 6.34 | 6.62 | 6.14 | 6.74 | 6.21 | 65 | 5.23 | 5.52 | 5.83 | 6.17 | 6.49 |
| 66 | 7.47 | 6.66 | 7.36 | 6.61 | 7.06 | 6.47 | 6.62 | 6.24 | 6.88 | 6.33 | 66 | 5.30 | 5.61 | 5.95 | 6.30 | 6.68 |
| 67 | 7.68 | 6.82 | 7.56 | 6.77 | 7.21 | 6.60 | 6.71 | 6.54 | 7.04 | 6.46 | 67 | 5.38 | 5.70 | 6.07 | 6.45 | 6.82 |
| 68 | 7.91 | 7.00 | 7.76 | 6.93 | 7.36 | 6.74 | 6.81 | 6.40 | 7.19 | 6.60 | 68 | 5.46 | 5.80 | 6.20 | 6.63 | 7.01 |
| 69 | 8.15 | 7.19 | 7.98 | 7.11 | 7.52 | 6.89 | 6.90 | 6.64 | 7.36 | 6.74 | 69 | 5.64 | 5.92 | 6.34 | 6.79 | 7.21 |
| 70 | 8.41 | 7.39 | 8.21 | 7.31 | 7.68 | 7.04 | 6.98 | 6.65 | 7.54 | 6.90 | 70 | 5.63 | 6.08 | 6.49 | 6.97 | 7.42 |
| 71 | 8.69 | 7.62 | 8.46 | 7.51 | 7.84 | 7.21 | 7.07 | 6.75 | 7.73 | 7.06 | 71 | 5.73 | 6.16 | 6.65 | 7.17 | 7.66 |
| 72 | 8.99 | 7.86 | 8.71 | 7.74 | 8.01 | 7.36 | 7.15 | 6.86 | 7.92 | 7.24 | 72 | 5.84 | 6.30 | 6.83 | 7.39 | 7.90 |
| 73 | 9.31 | 8.12 | 8.98 | 7.98 | 8.18 | 7.50 | 7.23 | 6.96 | 8.13 | 7.42 | 73 | 5.95 | 6.44 | 7.02 | 7.62 | 8.17 |
| 74 | 9.65 | 8.41 | 9.27 | 8.23 | 8.35 | 7.74 | 7.30 | 7.06 | 8.35 | 7.63 | 74 | 6.07 | 6.60 | 7.22 | 7.87 | 8.46 |
| 75 | 10.02 | 8.72 | 9.57 | 8.51 | 8.52 | 7.93 | 7.37 | 7.16 | 8.58 | 7.84 | 75 | 6.19 | 6.77 | 7.44 | 8.14 | 8.77 |
| 76 | 10.41 | 9.05 | 9.88 | 8.80 | 8.68 | 8.12 | 7.43 | 7.24 | 8.83 | 8.06 | 76 | 6.33 | 6.96 | 7.68 | 8.48 | 9.10 |
| 77 | 10.84 | 9.42 | 10.21 | 9.11 | 8.85 | 8.31 | 7.49 | 7.32 | 9.08 | 8.31 | 77 | 6.48 | 7.15 | 7.94 | 8.78 | 9.45 |
| 78 | 11.29 | 9.81 | 10.56 | 9.44 | 9.00 | 8.51 | 7.54 | 7.40 | 9.36 | 8.55 | 78 | 6.64 | 7.37 | 8.22 | 9.08 | 9.83 |
| 79 | 11.78 | 10.24 | 10.90 | 9.80 | 9.16 | 8.70 | 7.59 | 7.46 | 9.64 | 8.83 | 79 | 6.81 | 7.60 | 8.52 | 9.46 | 10.24 |
| 80 | 12.29 | 10.71 | 11.27 | 10.17 | 9.30 | 8.88 | 7.63 | 7.52 | 9.93 | 9.13 | 80 | 6.99 | 7.85 | 8.84 | 9.88 | 10.67 |
| 81 | 12.85 | 11.22 | 11.64 | 10.55 | 9.44 | 9.06 | 7.66 | 7.58 | 10.25 | 9.43 | 81 | 7.19 | 8.12 | 9.19 | 10.25 | 11.12 |
| 82 | 13.44 | 11.78 | 12.01 | 10.96 | 9.57 | 9.23 | 7.69 | 7.62 | 10.58 | 9.76 | 82 | 7.41 | 8.42 | 9.56 | 10.68 | 11.61 |
| 83 | 14.06 | 12.36 | 12.40 | 11.38 | 9.69 | 9.40 | 7.72 | 7.66 | 10.92 | 10.10 | 83 | 7.64 | 8.73 | 9.97 | 11.17 | 12.12 |
| 84 | 14.73 | 13.00 | 12.78 | 11.81 | 9.80 | 9.56 | 7.74 | 7.69 | 11.27 | 10.47 | 84 | 7.89 | 9.07 | 10.40 | 11.67 | 12.66 |
| 85 | 15.42 | 13.70 | 13.16 | 12.25 | 9.90 | 9.68 | 7.76 | 7.72 | 11.65 | 10.85 | 85 | 8.17 | 9.44 | 10.86 | 12.26 | 13.24 |

* Adjusted age of annuitant. M = Male F = Female

Table A above is based on the "1983 Individual Annuitant Mortality Table A." Settlement rates for any age, or any combination of age and sex not shown above, will be calculated on the same basis as those rates shown in the table above. Such rates will be furnished by us upon request.

PLAN E Dollar Amount of First Monthly Variable Annuity Payment Per $1,000 Applied (based on 5% AIR)

| Years Payable | Monthly Payment | Years Payable | Monthly Payment | Years Payable | Monthly Payment |
|---|---|---|---|---|---|
| 10 | $ 10.51 | 17 | $ 7.20 | 24 | $ 5.88 |
| 11 | 9.77 | 18 | 6.94 | 25 | 5.76 |
| 12 | 9.16 | 19 | 6.71 | 26 | 5.65 |
| 13 | 8.64 | 20 | 6.51 | 27 | 5.54 |
| 14 | 8.20 | 21 | 6.33 | 28 | 5.45 |
| 15 | 7.82 | 22 | 6.17 | 29 | [illegible] |
| 16 | 7.49 | 23 | 6.02 | 30 | 5.26 |

## Table B Dollar Amount of Each Monthly Fixed Dollar Annuity Payment Per $1,000 Applied

| | PLAN A | | PLAN B | | | | | | PLAN C | | PLAN D-Joint and Survivor | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | Adjusted Age of Female Joint Annuitant | | | | |
| Adj. Age* | Life Income M | Life Income F | 5 Years Certain M | 5 Years Certain F | 10 Years Certain M | 10 Years Certain F | 15 Years Certain M | 15 Years Certain F | With Refund M | With Refund F | Adj Male Age* | 10 Years Younger | 5 Years Younger | Same Age | 5 Years Older | 10 Years Older |
| 55 | 4.70 | 4.25 | 4.68 | 4.25 | 4.62 | 4.22 | 4.59 | 4.18 | 4.42 | 4.10 | 55 | 3.51 | 3.69 | 3.88 | 4.06 | 4.23 |
| 60 | 5.28 | 4.72 | 5.25 | 4.70 | 5.14 | 4.66 | 4.96 | 4.57 | 4.86 | 4.48 | 60 | 3.76 | 3.98 | 4.24 | 4.49 | 4.72 |
| 65 | 6.10 | 5.36 | 6.08 | 5.32 | 5.81 | 5.22 | 5.46 | 5.05 | 5.43 | 4.97 | 65 | 4.07 | 4.33 | 4.72 | 5.07 | 5.30 |
| 66 | 6.29 | 5.51 | 6.21 | 5.47 | 5.96 | 5.36 | 5.56 | 5.16 | 5.56 | 5.08 | 66 | 4.15 | 4.48 | 4.84 | 5.21 | 5.55 |
| 67 | 6.50 | 5.67 | 6.41 | 5.63 | 6.11 | 5.50 | 5.66 | 5.26 | 5.70 | 5.20 | 67 | 4.23 | 4.58 | 4.97 | 5.36 | 5.73 |
| 68 | 6.73 | 5.85 | 6.62 | 5.80 | 6.28 | 5.65 | 5.76 | 5.37 | 5.85 | 5.33 | 68 | 4.31 | 4.69 | 5.10 | 5.53 | 5.92 |
| 69 | 6.97 | 6.04 | 6.84 | 5.98 | 6.44 | 5.80 | 5.86 | 5.49 | 6.00 | 5.47 | 69 | 4.40 | 4.80 | 5.25 | 5.70 | 6.12 |
| 70 | 7.23 | 6.25 | 7.07 | 6.15 | 6.61 | 5.96 | 5.96 | 5.60 | 6.16 | 5.61 | 70 | 4.50 | 4.93 | 5.40 | 5.89 | 6.34 |
| 71 | 7.51 | 6.47 | 7.32 | 6.39 | 6.78 | 6.14 | 6.05 | 5.71 | 6.33 | 5.75 | 71 | 4.60 | 5.06 | 5.57 | 6.10 | 6.57 |
| 72 | 7.80 | 6.71 | 7.58 | 6.62 | 6.96 | 6.31 | 6.14 | 5.83 | 6.51 | 5.93 | 72 | 4.71 | 5.20 | 5.75 | 6.31 | 6.82 |
| 73 | 8.12 | 6.97 | 7.85 | 6.86 | 7.14 | 6.50 | 6.23 | 5.94 | 6.70 | 6.10 | 73 | 4.83 | 5.35 | 5.94 | 6.55 | 7.09 |
| 74 | 8.45 | 7.26 | 8.14 | 7.12 | 7.32 | 6.69 | 6.31 | 6.04 | 6.90 | 6.28 | 74 | 4.95 | 5.51 | 6.15 | 6.80 | 7.37 |
| 75 | 8.82 | 7.56 | 8.44 | 7.39 | 7.49 | 6.89 | 6.38 | 6.14 | 7.11 | 6.48 | 75 | 5.08 | 5.68 | 6.37 | 7.07 | 7.68 |
| 76 | 9.21 | 7.80 | 8.76 | 7.65 | 7.67 | 7.09 | 6.48 | 6.24 | 7.33 | 6.68 | 76 | 5.22 | 5.87 | 6.61 | 7.36 | 8.01 |
| 77 | 9.62 | 8.26 | 9.09 | 8.01 | 7.84 | 7.29 | 6.51 | 6.33 | 7.55 | 6.90 | 77 | 5.37 | 6.07 | 6.87 | 7.67 | 8.36 |
| 78 | 10.07 | 8.65 | 9.44 | 8.34 | 8.01 | 7.49 | 6.57 | 6.41 | 7.80 | 7.18 | 78 | 5.54 | 6.29 | 7.15 | 8.01 | 8.74 |
| 79 | 10.55 | 9.07 | 9.80 | 8.68 | 8.17 | 7.69 | 6.62 | 6.48 | 8.05 | 7.38 | 79 | 5.71 | 6.52 | 7.45 | 8.37 | 9.14 |
| 80 | 11.06 | 9.53 | 10.17 | 9.07 | 8.33 | 7.89 | 6.66 | 6.55 | 8.32 | 7.64 | 80 | 5.90 | 6.78 | 7.77 | 8.76 | 9.57 |
| 81 | 11.62 | 10.03 | 10.55 | 9.46 | 8.48 | 8.08 | 6.70 | 6.61 | 8.60 | 7.91 | 81 | 6.10 | 7.06 | 8.12 | 9.17 | 10.02 |
| 82 | 12.18 | 10.57 | 10.94 | 9.87 | 8.61 | 8.26 | 6.73 | 6.66 | 8.88 | 8.21 | 82 | 6.32 | 7.34 | 8.49 | 9.61 | 10.51 |
| 83 | 12.81 | 11.16 | 11.38 | 10.30 | 8.74 | 8.43 | 6.76 | 6.70 | 9.20 | 8.51 | 83 | 6.55 | 7.65 | 8.90 | 10.08 | 11.02 |
| 84 | 13.46 | 11.70 | 11.72 | 10.74 | 8.86 | 8.59 | 6.79 | 6.74 | 9.52 | 8.83 | 84 | 6.80 | 7.99 | 9.33 | 10.58 | 11.56 |
| 85 | 14.16 | 12.48 | 12.12 | 11.19 | 8.97 | 8.74 | 6.81 | 6.77 | 9.86 | 9.18 | 85 | 7.07 | 8.36 | 9.78 | 11.11 | 12.13 |

*Adjusted age of annuitant M=Male F=Female

Table B above is based on the "1983 Individual Annuitant Mortality Table A" assuming a 3% annual effective interest rate. Settlement rates for any age, or any combination of age and sex not shown above, will be calculated on the same basis as those rates shown in the table above. Such rates will be furnished by us upon request. Amounts shown in the Table below are based on assuming a 3% annual effective interest rate.

PLAN E Dollar Amount of Each Monthly Fixed Dollar Annuity Payment Per $1,000 Applied

| Years Payable | Monthly Payment | Years Payable | Monthly Payment | Years Payable | Monthly Payment |
|---|---|---|---|---|---|
| 10 | $ 9.61 | 17 | $ 6.23 | 24 | $ 4.84 |
| 11 | 8.86 | 18 | 5.96 | 25 | 4.71 |
| 12 | 8.24 | 19 | 5.73 | 26 | 4.59 |
| 13 | 7.71 | 20 | 5.51 | 27 | 4.47 |
| 14 | 7.26 | 21 | 5.32 | 28 | 4.37 |
| 15 | 6.87 | 22 | 5.15 | 29 | 4.27 |
| 16 | 6.53 | 23 | 4.99 | 30 | 4.18 |

**IDS Life Class Action Information Center**
**PO Box 1606**
**Faribault, MN 55021-1606**
**1-877-657-8736**

December 19, 2001

VVV TRUST - DECEDENT'S TRUST
C/O RICHARD D VEHRING POA
15327 E REDROCK DR
FOUNTAIN HILLS, AZ 85268-5816

Re: Claim #-14094668
Policy or Annuity No.-93006395001 SEQ-30

Dear VVV TRUST - DECEDENT'S TRUST:

We have received the Claim Form that you recently submitted to the Claim Review Process. Your Claim Form cannot be processed because the Claim Form was not properly signed.

According to our records VVV TRUST - DECEDENT'S TRUST is the owner of this policy or annuity. The signed Claim Form does not include a statement confirming that the person signing is a trustee or is otherwise legally authorized to act for VVV TRUST - DECEDENT'S TRUST with respect to the policy or annuity.

A trustee or a person legally authorized to act for VVV TRUST - DECEDENT'S TRUST must sign and return the enclosed Claimant Declaration in order for the Claim Form to be considered. Please sign and return the enclosed Claimant Declaration to:

IDS Life Class Action Information Center
P.O. Box 1606
Faribault, MN 55021-1606

Your signed Claimant Declaration must be postmarked by January 9, 2002 and it will be made a part of the Claim Form you have already submitted.

If you have any questions, please call the IDS Life Class Action Information Center at 1-877-657-8736 (or, if you use TDD/TYY, 1-877-657-8808). Please be sure to refer to your Claim Number in any communications. Attorneys for the Class are available to answer questions free of charge

Sincerely yours,

IDS Life Class Action Information Center

Enclosure – Claimant Declaration

CF 8239//Claim 14094668/Status 26/Seq 30

**IDS Life Class Action Information Center**
**PO Box 1606**
**Faribault, MN 55021-1606**
**1-877-657-8736**

**CLAIMANT DECLARATION**

I swear under penalty of perjury that (*i*) the foregoing is true and correct; (*ii*) I submit herewith copies of all documents in my possession or control relating to the life insurance policy or deferred annuity contract that is the subject of the claim; and (*iii*) all such copies (if any) are authentic and unaltered copies of the original documents. I understand that if I am found to have made a willfully false statement as to any material matter in this Claim Form, I can be criminally prosecuted for perjury and may be subjected to a fine or imprisonment, or both under applicable law.

By signing below, I hereby consent to the Company's disclosure to the Claim Evaluator of information necessary for the evaluation and administration of my claim. This information consists of this Claim Form and documents I submit, as well as the information that the Company will provide separately to the Claim Evaluator, which includes: my name, current address and Social Security Number; the issue age and gender of the policy's insured or the annuity's annuitant; the contract number and plan code (if any) of my policy or annuity; the date of issue and policy face amount on the date the policy was issued; the policy or annuity's termination date, if it is no longer an active policy or annuity; any surrender charge paid on the policy or annuity; the payment, loan and transaction history and current values of the policy or annuity as of August 31, 2000; the policy's scheduled premium, if applicable; the policy's or annuity's application file, to the extent available (excluding any medical underwriting); and summaries of complaints relating to the policy or annuity.

I understand that this information is being disclosed to the Claim Evaluator solely for purposes of evaluating and administering my claim, and that the Claim Evaluator shall keep this information confidential and not disclose it to any third parties.

Signature of VVV TRUST - DECEDENT'S TRUST Title (Trustee)

14094668

CF 8239//Claim 14094668/Status 26/Seq 30

**IDS Life Class Action Information Center**
**PO Box 1606**
**Faribault, MN 55021-1606**
**1-877-657-8736**

December 19, 2001

VVV TRUST - DECEDENT'S TRUST
C/O RICHARD D VEHRING POA
15327 E REDROCK DR
FOUNTAIN HILLS, AZ 85268-5816

Re: Claim #-14094668
Policy or Annuity No.-93006395001 SEQ-30 SEE ATTACHED

Dear VVV TRUST - DECEDENT'S TRUST:

We have received the Claim Form that you recently submitted to the Claim Review Process. Your Claim Form cannot be processed because the Claim Form was not properly signed.

According to our records VVV TRUST - DECEDENT'S TRUST is the owner of this policy or annuity. The signed Claim Form does not include a statement confirming that the person signing is a trustee or is otherwise legally authorized to act for VVV TRUST - DECEDENT'S TRUST with respect to the policy or annuity.

A trustee or a person legally authorized to act for VVV TRUST - DECEDENT'S TRUST must sign and return the enclosed Claimant Declaration in order for the Claim Form to be considered. Please sign and return the enclosed Claimant Declaration to:

IDS Life Class Action Information Center
P.O. Box 1606
Faribault, MN 55021-1606

Your signed Claimant Declaration must be postmarked by January 9, 2002 and it will be made a part of the Claim Form you have already submitted.

If you have any questions, please call the IDS Life Class Action Information Center at 1-877-657-8736 (or, if you use TDD/TYY, 1-877-657-8808). Please be sure to refer to your Claim Number in any communications. Attorneys for the Class are available to answer questions free of charge

Sincerely yours,

IDS Life Class Action Information Center

Enclosure – Claimant Declaration

MTM CFCURE 00000660

CF 8239//Claim 14094668/Status 26/Seq 30

RECEIVED JAN 07 2002

**IDS Life Class Action Information Center**
**PO Box 1606**
**Faribault, MN 55021-1606**
**1-877-657-8736**

**CLAIMANT DECLARATION**

I swear under penalty of perjury that (*i*) the foregoing is true and correct; (*ii*) I submit herewith copies of all documents in my possession or control relating to the life insurance policy or deferred annuity contract that is the subject of the claim; and (*iii*) all such copies (if any) are authentic and unaltered copies of the original documents. I understand that if I am found to have made a willfully false statement as to any material matter in this Claim Form, I can be criminally prosecuted for perjury and may be subjected to a fine or imprisonment, or both under applicable law.

By signing below, I hereby consent to the Company's disclosure to the Claim Evaluator of information necessary for the evaluation and administration of my claim. This information consists of this Claim Form and documents I submit, as well as the information that the Company will provide separately to the Claim Evaluator, which includes: my name, current address and Social Security Number; the issue age and gender of the policy's insured or the annuity's annuitant; the contract number and plan code (if any) of my policy or annuity; the date of issue and policy face amount on the date the policy was issued; the policy or annuity's termination date, if it is no longer an active policy or annuity; any surrender charge paid on the policy or annuity; the payment, loan and transaction history and current values of the policy or annuity as of August 31, 2000; the policy's scheduled premium, if applicable; the policy's or annuity's application file, to the extent available (excluding any medical underwriting); and summaries of complaints relating to the policy or annuity.

I understand that this information is being disclosed to the Claim Evaluator solely for purposes of evaluating and administering my claim, and that the Claim Evaluator shall keep this information confidential and not disclose it to any third parties.

[signature] P.O.A.

Signature of VVV TRUST - DECEDENT'S TRUST — Title (Trustee)

14094668

CF 8239//Claim 14094668/Status 26/Seq 30

15527 E. Redrock Dr.
Fountain Hills, AZ 85268

CERTIFIED MAIL

7000 0520 0023 8729 6463

UNITED STATES POSTAL SERVICE

9264

55021

U.S. POSTAGE
PAID
FOUNTAIN HILLS, AZ
85268
JAN 02, 02
AMOUNT
$4.17
00041988-01

RETURN RECEIPT
REQUESTED

IDS Life Class Action Information Center
PO Box 1606
Faribault MN 55021-1606