**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF EARL E. LINDSAY AND NANCY L. LINDSAY PRESENTED TO THE NASD**

---

## <u>INTRODUCTION</u>

Earl and Nancy Lindsay seek to arbitrate claims that they already released under the class-action settlement in this case. In their Statement of Claim to NASD Arbitration, the Lindsays acknowledge that they received notice of the class-action settlement, took steps to learn additional information about the settlement, and chose to participate in the settlement. Notwithstanding this concession that they are class members bound by the

settlement ordered by this Court, the Lindsays seek double recovery for released claims by presenting them to an arbitration panel. Simple logic and clear legal principles bar the Lindsays from such a course and the Court should enjoin arbitration of these claims.

## FACTS

### The Final Judgment and Order Included a Broad Release of Claims Relating to the Variable Annuities and Variable Insurance Products.

Defendant Ameriprise Financial Services, Inc., formerly known as American Express Financial Advisors, Inc. ("Ameriprise"), submits this Memorandum of Law to the Court in support of this Motion to Enforce Class-Action Settlement as to Claims of Earl and Nancy Lindsay Presented to the NASD and seek to enforce the terms of a class-action settlement that was approved by this Court in 2001 in a Final Order and Judgment Approving Class Action Settlement and Dismissing Complaint (the "Final Order and Judgment"). (Ex. 1.) The Lindsays are members of the class who settled their claims and are subject to the Final Order and Judgment. Nonetheless, they have submitted a Statement of Claim to the NASD and seek to arbitrate numerous claims against Ameriprise that are barred by the Final Order and Judgment. (Ex. 2.) The Court retained jurisdiction over the enforcement of the Final Order and Judgment. Because the Final Order and Judgment bars the Lindsays from raising the claims asserted in the Statement of Claim, Ameriprise respectfully requests that the Court enter an Order enforcing the class-action settlement and bar the Lindsays from proceeding in arbitration with any and all claims against Ameriprise that were previously released in accordance with the terms of the Final Order and Judgment.

On August 21, 2000, Plaintiffs filed the Complaint in this federal-court action, asserting numerous claims related to the marketing, sale, servicing and administration of certain cash-value insurance policies ("Policies") and deferred annuity contracts ("Annuities") sold and serviced by numerous Defendants, including Ameriprise.[1] (Docket # 1.) Less than a month later, the parties submitted a Stipulation of Settlement with exhibits ("Settlement Agreement") to the Court. (Ex. 3.) On October 2, 2000, the Court conditionally certified the proposed class, and ordered individual and publication notice to all class members. (Ex. 1.) On March 6, 2001, the Court held a Fairness Hearing on the proposed settlement. (*Id*.) On May 15, 2001, the Court entered the Final Order and Judgment, which certified the class, approved the settlement terms proposed by the parties in the Settlement Agreement, and dismissed with prejudice the claims of the class members. (*See id.*)

The Final Order and Judgment ordered that "[a]ll Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity [be] permanently barred and enjoined" from commencing any other lawsuit, arbitration, or administrative,

---

[1] Under the terms of the Settlement Agreement: "'Annuity' or 'Annuities' means one or more fixed or variable deferred annuity contracts, including individual contracts, group contracts and participation interests in group contracts issued by any Defendants in the United States, including its territories and commonwealths, that was In Force at any time during the Class Period." (Ex. 3 § II.8.)

Similarly, "'Policy' or 'Policies' means a cash value life insurance policy or policies issued by any of the Defendants pursuant to an individual sale in the United States, including its territories and commonwealths, during the Class Period. (*Id.* § II.60.)

regulatory or other proceeding in any jurisdiction relating to any claims released pursuant to the terms of the Settlement Agreement. (*See id.* ¶ 14.) Furthermore, under the terms of the Final Order and Judgment, the Court "expressly retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment . . . ." (*Id.* ¶ 15.)

Pursuant to the Final Order and Judgment, all class members who failed to opt out of the class thereby agreed to a broad release wherein they released a wide variety of claims related to the Policies and Annuities that were the subject of the class action. The certified class, the members of which are bound by the broad release in the Settlement Agreement, consists of:

> (A) All persons or entities who, as of the Eligibility Date, have or had . . . (ii) an ownership interest in an individual deferred annuity contract . . . issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the Class Period . . . .

(*Id.* ¶ 3.)

The Final Order and Judgment further provides that Plaintiffs and all other members of the certified class agree and acknowledge that they:

> shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part:
>
>> (a) the allegations, facts or subjects set forth or otherwise raised in <u>Benacquisto, et al. v. American Express Financial Corporation, et al.</u>, No. 96-18477, pending before the

> Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or
>
> (b) that relate in any way to the Released Conduct.

(*Id.* ¶ 13(A)(2).)

The "Released Conduct" includes:

> any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with
>
> (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity;
>
> (ii) the application for or purchase of any Policy or Annuity;
>
> (iii) the suitability of any purchases, sales, or replacements of any Policy or Annuity;
>
> (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity;
>
> (v) the setting, reduction, adjustment, payment or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity;
>
> (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity;

(vii) the investment choices made with respect to assets held in any Policy or Annuity;

(viii) the surrender, lapse, or termination of any Policy or Annuity;

* * * *

(x) the costs, commission, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract, or investment;

(xi) the comparison or lack of comparison of any Policy or Annuity to any other product;

(xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity . . . and . . .

* * * *

(xiv) the administration or servicing of any Policy or Annuity after its purchase.

(*Id.* ¶ 13(B)(2) (reformatted from original).)

**The Lindsays Choose to Receive Relief as a Class Member Under the Final Order and Judgment.**

During the Class Period,[2] the Lindsays purchased certain variable annuity and variable life insurance products from Ameriprise. These annuities and insurance products are Annuities and Policies that are subject to the terms of the Settlement Agreement and the Final Order and Judgment. (Ex. 3 § II.8, .60.) In 2000, Ameriprise sent Notice of Class Action, Proposed Settlement and Fairness Hearing ("Class Notice") to the Lindsays. (Ex. 2 at 9; Aff. of Amy Lake (hereinafter "Lake Aff.") ¶¶ 2& 3.) The

Lindsays admit that they received the Class Notice. (Ex. 2 at 9.) Having questions about the settlement, the Lindsays contacted Plaintiff's counsel to ask about the settlement. (*Id.*) The Lindsays did not opt out of the class action. (*Id.*; Lake Aff. ¶ 10.) The Lindsays therefore became members of the class. (Ex. 1 ¶ 3.) The Lindsays received the general relief provided under the settlement. (Lake Aff. ¶¶ 7-9.) By failing to opt out of the class and by choosing to participate in the settlement provided for by the Settlement Agreement, the Lindsays released all of their Annuity and Policy-based claims against Ameriprise in accordance with the terms set forth in the Final Judgment and Order.[3]

**Even Though the Claims Are Barred,**
**The Lindsays File Suit on Some Claims**

Even though they previously released their Annuity and Policy-based claims, on July 6, 2005, the Lindsays filed suit against Ameriprise in the Circuit Court of the County of Henrico, Virginia. (Ex. 2 at 1.) The Lindsays later voluntarily dismissed this state-court suit, but then proceeded to file a Statement of Claim with NASD Arbitration. (Ex. 2.) In the Statement of Claim, the Lindsays seek to arbitrate claims relating to Annuities and Policies despite candidly admitting that "[they] received [the Class Notice] which referenced variable annuities and variable universal life insurance policies of the type

---

(continued from previous page)

[2] "Class Period" is defined as "that period beginning on January 1, 1985 and ending on February 29, 2000, inclusive." (Ex. 3 § II.26.)

[3] The Settlement Agreement bars class members "from seeking review or in any other way challenging in any forum whatsoever, including in a judicial proceeding or an arbitration, a decision or award of relief [under the Claim Review Process]." (Ex. 3 § VII.C.4.)

sold to the Lindsays" and that they "failed to opt out of the class action." (*Id.* at 9.) Nevertheless, the Lindsays now insist on proceeding with the arbitration of settlement-barred claims. Ameriprise has not yet submitted any response to the Statement of Claim to NASD Arbitration.

## ARGUMENT

### I. The Court Should Enjoin the Arbitration of the Claims Raised in the Statement of Claim Because They Have Already Been Released Under the Final Order and Judgment.

#### A. The Claims in the Statement of Claim Were Released Under the Final Order and Judgment.

The claims set forth in the Statement of Claims are claims that are clearly barred by the class-action settlement. For example, the Lindsays claim that their Ameriprise financial advisor prepared a financial plan that induced them to purchase variable annuities and life-insurance policies from Ameriprise. (*See* Ex. 2 at 3 ("[T]hese 'Financial Plans' were nothing more than computer generated, highly scripted, 'cookie cutter' marketing presentations geared to little more than convincing the Lindsays (and others who received them) to invest all of their money in inappropriate, overpriced and substandard proprietary insurance and investment products issued and/or underwritten by [Ameriprise] or one of its affiliates, including IDS Insurance, without any regard to the suitability of those investments for the Lindsays' ages, investment objectives and circumstances.") The Lindsays further claim that their Ameriprise advisor failed to disclose the compensation and commission system applicable to the sale of variable annuity and insurance products. (*Id.* at 3-4.) They also claim that certain insurance

policies that they purchased were unsuitable investments. (*Id.* at 5.) The factual predicate for these claims constitute Released Conduct under the class-action settlement. Hence, the arbitration of these claims is barred under the Release accepted by class members in this action.

The express terms of the Release in the Final Order and Judgment and the Settlement Agreement bar the Lindsays from arbitrating any claims predicated upon Released Conduct. Under the Release, class members have agreed not to assert "any Claims or Causes of Actions . . . that are based upon, related to, or connected with, directly or indirectly, in whole or in part: . . . (b) that relate <u>in any way</u> to the Released Conduct." (Ex. 1 ¶ 13.A & B (emphasis added).) The Lindsays' claims are related to the Released Conduct under the Settlement Agreement, which encompassed

> any and all . . . <u>representations, omissions, suggestions, or communications</u> that are <u>related to or connected in any way with the . . . marketing, sale . . . or performance of the Policies or the Annuities</u> including, without limitation . . . representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration . . . of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales, or replacements of any Policy or Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to the assets held in any Policy or Annuity; (viii) the surrender, lapse or termination of any Policy or Annuity; . . . (x) the costs, commissions, terms or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the Comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any

> financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity . . . .

(Ex. 1 ¶ 13.B.2 (emphasis added).) The claims that relate to the Lindsays' variable annuities and variable universal life insurance policies raised in the Statement of Claim fall squarely within the scope of the Released Conduct as defined by the Final Order and Judgment. The broad language of the Final Order and Judgment's Release preclude the Lindsays, as class members, from arbitrating these claims before the NASD.

**B. The Lindsays Received Notice of the Class Action, Chose Not to Opt Out, and Received Relief Under the Settlement Agreement.**

By receiving notice of the pendency of the class action, failing to opt out of the class, and receiving relief pursuant to the terms of the Settlement Agreement and the Final Judgment and Order, the Lindsays became class members, and they are bound by all of the provisions of the Settlement Agreement and the Final Order and Judgment. *See, e.g., Berardinelli v. Gen. Am. Life Ins. Co. (In re Gen. Am. Life Ins. Co. Sales Practices Litig.*), 357 F.3d 800, 804-05 (8th Cir. 2004) (holding that a class member who receives proper notice of a proposed class-action settlement and fails to opt out of such a settlement is bound by the terms thereof); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993) ("As a class member who chose not to opt out after notice of the terms of the settlement, appellant is bound by the Order and Final Judgment . . . and must abide by its express terms.").

The Lindsays freely admit that they received proper notice of the *Benacquisto* class-action settlement, but that they chose not to opt out of the class. (Ex. 2 at 9; *see*

*also* Lake Aff. ¶¶ 2-6, 10.) The Class Notice advised them that they could contact a toll-free hotline in order to receive further information about the class settlement. (Ex. 2 at 9.) The Lindsays were free to educate themselves about the class action and to explore any questions that they had about it. Indeed, the Lindsays did seek additional information about the settlement from the hotline. (*Id.*) After they received this additional information, they chose not to opt out of the class. Hence, they became class members bound by the class-settlement terms. (Ex. 1 ¶ 12 ("The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members. . . .").)[4]

Furthermore, it is not inequitable or unjust to bind the Lindsays to the Release and bar them from proceeding with the arbitration of claims that have already been released. It is undisputed that the Lindsays received notice and relief under this class-action settlement. (Ex.2 at 9; Lake Aff. ¶¶ 2-9.) In light of this participation in the class

---

[4] This Court has already held that class members who claim that they were somehow improperly induced not to opt out of the class may nonetheless be bound by the settlement. In an April 26, 2004 Order, the Court barred two other class members, Gene and Willowdean Chandler, from proceeding with the arbitration of settlement-barred claims and rejected arguments that they were not bound by the settlement because they were improperly induced to remain within the class. (Ex. 4.) Like the Chandlers, the Lindsays acknowledge receipt of the Class Notice. (Ex. 2 at 9.) However, the Lindsays also allege that they were instructed to "stay put" and "do nothing." (*Id.*) The Court already rejected similar claims raised by the Chandlers. Like the Chandlers, if the Lindsays truly "had no idea of the meaning or import of the class action notice," (*Id.*), they were free to consult an attorney. (Ex. 4 at 5 (quoting *VMS Ltd. P'ship Secs. Litig.*, 26 F.3d 50, 52 (7th Cir. 1994) ("When perplexed by the terms in a legal document, a prudent investor does not ring up another layman. He calls a lawyer.").) Accordingly,

(continued on next page)

settlement, it is disingenuous for the Lindsays to seek further relief <u>for the same injuries</u> before the NASD. This Court's Final Order and Judgment expressly bars such an attempt to take a second bite of the apple. (Ex. 1 ¶ 14 (permanently barring and enjoining Class Members from "filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration . . . based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct . . . as to that Policy or Annuity").)

### C. As Class Members, The Lindsays Are Bound by the Contractual Terms of the Settlement Agreement Adopted by the Final Judgment and Order.

As class members who received value for releasing their claims, the Lindsays "contractually agree[d] and acknowledge[d] that . . . [they would] not . . . initiate, participate in, maintain, maintain a right to or assert against [Ameriprise] . . . any Claim[] or Cause[] of Action . . . that [was] <u>based upon, related to, or connected with, directly or indirectly, in whole or in part</u> . . . (b) that relate[s] <u>in any way</u> to the Released Conduct." (Ex. 1 ¶ 13.A.2 (emphasis added).) The Lindsays may not avoid these contractual obligations under the Settlement Agreement by seeking to arbitrate claims based upon Released Conduct. Preclusion of these claims was an "integral part of the settlement bargain" entered into by the parties to the class action, and "this Court cannot now

---

(continued from previous page)

the Lindsays, like the Chandlers before them, should be barred from proceeding with the arbitration of their settlement-barred claims.

modify the terms of that bargain at the insistence of one class member." *Thompson*, 992 F.2d at 191 n.5. The Lindsays accepted the benefits of class membership and have also agreed to any concomitant obligations imposed by class-member status, including releasing the right to arbitrate variable-annuity and variable-insurance-based claims against Ameriprise. *See In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51 (7th Cir. 1994) ("By electing not to opt out of the class, [claimant] received the benefits and accepted the detriments of the settlement."); *Mosberg v. Nat'l Prop. Analyst, Inc.*, 630 N.Y.S.2d 50, 52 (N.Y. App. Div. 1995) (recognizing that by not opting out of a class-action settlement and by "receiving the fruits of the settlement" a class member "is bound by its broad terms" including the release of certain additional claims). As class members, the Lindsays received both the benefits and the detriments of the settlement. Any injuries that they have suffered relating to their purchase of variable-annuity and variable-insurance products covered by the settlement have already been remedied by the benefits that they received by virtue of their status as class members. Permitting the Lindsays to proceed with the arbitration of settlement-barred claims would allow them to seek double recovery for the same injury. *See Mosberg*, 630 N.Y.S.2d at 52. Under the circumstances of this case, the Lindsays cannot now be heard to raise claims that have already been released.

## II. The Final Order and Judgment Authorizes this Court to Enjoin The Lindsays' NASD Proceeding.

### A. This Court has Continuing Jurisdiction in this Matter.

The Final Order and Judgment makes clear that this Court has retained continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

> (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);
>
> (b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and
>
> (c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

(Ex. 1 ¶ 19(a)-(c).) Thus, the terms of the Final Order and Judgment specifically authorize this Court to enter an Order enjoining the Lindsays from pursuing released claims before the NASD. Entering such an Order is a proper method whereby the Court can ensure continued adherence to the terms of its final orders, including orders incorporating the terms of class-action settlement agreements. *See Thompson*, 992 F.2d at 189 ("It is clear that the district court has the authority to issue an injunction enforcing the Final Judgment of Dismissal and Order which embody the terms of the settlement

agreement.") (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992) ("District courts have an inherent authority to enforce their injunctions.")); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

The Eighth Circuit Court of Appeals has repeatedly recognized the propriety of a District Court issuing an injunction in order to enforce a final judgment dismissing claims settled pursuant to a class-action settlement agreement. A District Court has the authority to issue an injunction enforcing a final judgment and order that embodies the terms of a class-action settlement agreement and bar a class member from raising released claims in subsequent litigation. *Thompson*, 992 F.2d at 190 ("[U]pon determining that the second proceeding was barred by the terms of the Final Judgment . . . the district court acted within its authority to enjoin appellant pursuant to those terms."); *see also Berardinelli*, 357 F.3d at 803 (upholding District Court's decision to enjoin subsequent state-court proceeding brought by a class member who had released a broad range of claims under a class-action settlement agreement). Furthermore, this power to enjoin subsequent claims is not limited to attempts to raise released claims in litigation. If a release, such as that contained in the Final Order and Judgment, releases all claims, including those that could be raised in arbitration, it should be enforced pursuant to its terms: "[E]ven when arbitration is involved, federal 'courts should not have to stand by while parties re-assert claims that have already been resolved.'" *Ewart v. Y & A Group (In re Y & A Group Sec. Litig.)*, 38 F.3d 380, 382 (8th Cir. 1994) (quoting *Kelly v. Merrill Lynch, Pierce, Fenner*

*& Smith*, 985 F.2d 1067, 1069 (11th Cir. 1993)).[5] District Courts "have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *Ewart*, 38 F.3d at 382; *see also In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51-52 (7th Cir. 1994) (affirming District Court's order enjoining class member from arbitrating claims that were previously released pursuant to terms of a class-action settlement agreement). Because the Lindsays seeks to relitigate claims for which they received relief and released pursuant to the terms of the Settlement Agreement and the Final Order and Judgment, the Court should enjoin them from proceeding with the arbitration of settlement-barred claims.

### B. Proceeding with the Arbitration of Released Claims Violates a Prior Order of this Court.

The bar precluding the Lindsays from arbitrating released claims goes beyond a simple contractual agreement between the parties to this litigation; this Court has already decreed that, as class members, the Lindsays cannot proceed with released claims in arbitration. The Court, in the Final Order and Judgment, enjoined class members from proceeding in such a fashion:

> All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in . . . or receiving any benefits or other relief from, any other

---

[5] In *Ewart*, the Eighth Circuit, upheld a District Court's decision to enjoin a pending NASD arbitration, even after the Respondent had appeared in the arbitration, and moved, before the arbitration panel, to dismiss the claims the Claimant sought to arbitrate. *See Ewart*, 38 F.3d 380, 381 (8th Cir. 1994). Here, Ameriprise submits this Motion prior to submitting any papers in the arbitration that the Lindsays seek to begin.

> lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Released Conduct . . . as to that Policy or Annuity.

(Ex. 1 ¶ 14 (emphasis added).) Proceeding with the arbitration directly violates the Court's Final Order and Judgment. *Cf. Ewart*, 38 F.3d at 384-85 (Richard S. Arnold concurring) (recognizing that institution of arbitration after entry of order that approved class-action settlement and barred future claims encompassed therein violated the District Court's injunction, and noting that "[a]mong other things, violation of an injunction is . . . contempt of court, and the Federal Arbitration Act should not be construed to divest courts of their traditional powers to punish for contempt").

The terms of the Final Order and Judgment are clear: by not opting out of the class and by receiving relief under the class-action settlement, the Lindsays have released all variable-annuity and variable-insurance-based claims that relate in any way to the Released Conduct and agreed to forego the right to arbitrate these claims. (Ex. 1 ¶ 13.) Indeed, the Court has ordered that they forego those claims. (*Id.* ¶ 14.) Therefore, the Court should enjoin the Lindsays from proceeding with any arbitration of claims relating in any way to the Released Conduct. (*Id.* ¶ 13.A.2.) Arbitration of any claims set forth in the Statement of Claim that relate in any way to the Released Conduct, would be in direct contravention to this Court's prior orders.

### C. Permitting The Lindsays to Proceed with the Arbitration Undermines the Finality of Class-Action Settlements.

Permitting the Lindsays to pursue claims that have already been settled and released more than five years after this Court's entry of the Final Order and Judgment

undermines the finality of class-action settlements. This would eviscerate the binding Settlement Agreement into which the Lindsays voluntarily entered and under which they received relief. Accordingly, authorizing the continued arbitration of any variable-annuity and variable-insurance-based claims would be contrary to the strong public policy that supports class-action settlements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3d Cir. 2002) (quoting *In re Prudential Ins. Co. Sales Practices Litig.: Lowe*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actions "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large, multi district class action")). As recognized by the Eighth Circuit,

> [W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.

*Thompson*, 992 F.2d at 191 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)). By enjoining the Lindsays from proceeding with the arbitration of claims related to their Annuities and Policies and alleged misrepresentations and unsuitability made with respect to these investments, the Court ensures not only that its Final Orders are respected, but that the "paramount policy" supporting settlement is upheld.

**CONCLUSION**

For all of the reasons set forth above, Ameriprise respectfully requests that the Court enjoin Earl and Nancy Lindsay from proceeding with any arbitration of claims that are barred by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: April 28, 2006

FAEGRE & BENSON LLP

s/Fiona B. Ruthven
Michael F. Cockson (#280549)
Fiona B. Ruthven (#333761)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone No. (612) 766-7000
Facsimile No. (612) 766-1600

**ATTORNEYS FOR DEFENDANT AMERICAN EXPRESS FINANCIAL ADVISORS, INC. N/K/A AMERIPRISE FINANCIAL SERVICES, INC.**

M2:20793201.03