**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF MARGARITA OGORZALEK PRESENTED TO THE NASD**

---

## INTRODUCTION

Margarita Ogorzalek, as beneficiary of the Wayne L. and Margarita P. Ogorzalek Irrevocable Trust ("Mrs. Ogorzalek"), seeks to arbitrate claims that have already been released under the class-action settlement in this case. Furthermore, Mrs. Ogorzalek has already received relief for these claims under the class-action settlement in this case. Because the Court has specifically barred the double recovery that Mrs. Ogorzalek now

seeks before the NASD, the Court should enjoin arbitration of these claims, which were previously resolved and released pursuant to the terms of the class-action settlement agreement approved and ordered by this Court.

## FACTS

### The Final Judgment and Order Included a Broad Release of Claims Relating to the Variable Life Insurance Policy.

Defendant Ameriprise Financial Services, Inc., formerly known as American Express Financial Advisors, Inc. ("Ameriprise"), submit this Memorandum of Law to the Court in support of this Motion to Enforce Class-Action Settlement as to Claims of Margarita Ogorzalek Presented to the NASD and seek to enforce the terms of a class-action settlement that were approved by this Court in 2001 in a Final Order and Judgment Approving Class Action Settlement and Dismissing Complaint (the "Final Order and Judgment"). (Ex. 1.) Mrs. Ogorzalek was a member of the class who settled their claims and is subject to the Final Order and Judgment. Nonetheless, she submitted a Statement of Claim to the NASD and seeks to arbitrate claims against Ameriprise that are barred by the Final Order and Judgment. (Ex. 2.) The Court retained jurisdiction over the enforcement of the Final Order and Judgment. Because the Final Order and Judgment bars Mrs. Ogorzalek from raising the claims asserted in the Statement of Claim, Ameriprise respectfully requests that the Court enter an Order enforcing the class-action settlement and barring Mrs. Ogorzalek from proceeding in arbitration with any and all claims against Ameriprise that were previously released in accordance with the terms of the Final Order and Judgment.

On August 21, 2000, Plaintiffs filed the Complaint in this federal-court action, asserting numerous claims related to the marketing, sale, servicing and administration of certain cash-value insurance policies ("Policies") and deferred annuity contracts ("Annuities") sold and serviced by numerous Defendants, including Ameriprise.[1] (Docket # 1.) Less than a month later, the parties submitted a Stipulation of Settlement with exhibits ("Settlement Agreement") to the Court. (Ex. 3.) On October 2, 2000, the Court conditionally certified the proposed class, and ordered individual and publication notice to all class members. (Ex. 1.) On March 6, 2001, the Court held a Fairness Hearing on the proposed settlement. (*Id*.) On May 15, 2001, the Court entered the Final Order and Judgment, which certified the class, approved the settlement terms proposed by the parties in the Settlement Agreement, and dismissed with prejudice the claims of the class members. (*Id.*)

The Final Order and Judgment ordered that "[a]ll Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity [be] permanently barred and enjoined" from commencing any other lawsuit, arbitration, or administrative, regulatory or other proceeding in any jurisdiction relating to any claims released pursuant to the terms of the Settlement Agreement. (*See id.* at ¶ 14.) Furthermore, under the terms of the Final Order and Judgment, the Court "expressly retain[ed] jurisdiction as to all

---

[1] Under the terms of the Settlement Agreement "'Policy' or 'Policies' means a cash value life insurance policy or policies issued by any of the Defendants pursuant to an individual sale in the United States, including its territories and commonwealths, during the Class Period."(Ex. 3 § II.60.)

matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment . . . ." (*Id.* at ¶ 15.)

Pursuant to the Final Order and Judgment, all class members who failed to opt out of the class thereby agreed to a broad release wherein they released a wide variety of claims related to the Policies and Annuities that were the subject of the class action.[2] The certified class, the members of which are bound by the broad release in the Settlement Agreement, consists of:

> (A) All persons or entities who, as of the Eligibility Date, have or had . . . (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, that was in force at any time during the Class Period . . . .

(*Id.* at ¶ 3.)

The Final Order and Judgment further provides that Plaintiffs and all other members of the certified class agree and acknowledge that they:

---

[2] The "Releasors," i.e., class members who released their claims pursuant to the Settlement Agreement, released claims

> on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries . . . and the Policies' and Annuities' nominal and beneficial owners.

(Ex. 3 at § XII.B.4 (emphasis added).)

This definition encompasses Mrs. Ogorzalek as beneficiary and trustee of the Wayne L. and Margarita P. Ogorzalek Irrevocable Trust.

shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part:

(a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or

(b) that relate in any way to the Released Conduct.

(*Id.* at ¶ 13(A)(2).)

The "Released Conduct" includes:

any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies . . . including, without limitation, acts, representations, omissions, suggestions or communications in connection with

(i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy . . .

(ii) the application for or purchase of any Policy . . .

(iii) the suitability of any purchases, sales, or replacements of any Policy . . .

(iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy . . .

* * * *

(vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy . . .

* * * *

(viii) the surrender, lapse, or termination of any Policy or Annuity;

* * * *

(x) the costs, commission, terms, or benefits or disadvantages of any Policy . . . compared to any other life insurance policy, annuity contract, or investment;

(xi) the comparison or lack of comparison of any Policy . . . to any other product;

(xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy . . . and . . .

* * * *

(xiv) the administration or servicing of any Policy . . . after its purchase.

(*Id.* at ¶ 13(B)(2) (reformatted from original).)

**Mrs. Ogorzalek Chooses to Receive Relief as a Class Member Under the Final Order and Judgment.**

In February 2000, during the Class Period,[3] Mrs. Ogorzalek on behalf of the Wayne L. and Margarita P. Ogorzalek Irrevocable Trust (the "Trust") purchased a flexible premium variable universal life insurance policy from Ameriprise. This variable

[3] "Class Period" is defined as "that period beginning on January 1, 1985 and ending on February 29, 2000, inclusive." (Ex. 3 at § II.26.)

life insurance policy issued by IDS Life Insurance Company (the "Policy") is a policy that is subject to the terms of the Settlement Agreement and the Final Order and Judgment. (*See* Ex. 3 at § II.60.) In October 2000, Ameriprise sent Notice of Class Action, Proposed Settlement and Fairness Hearing ("Class Notice") to Mrs. Ogorzalek. (Affidavit of Matthew Porter dated April 11, 2006 (hereinafter "Porter Aff.") ¶ 2 & Ex. 4.) Mrs. Ogorzalek did not opt out of the class by the January 29, 2001 deadline set by the Court in its October 2, 2000 Order conditionally certifying the settlement class. (Docket # 14; Porter Aff. ¶ 8.) Mrs. Ogorzalek therefore became a member of the class. (Ex. 1 at ¶ 3.) Accordingly, Mrs. Ogorzalek was awarded general relief in accordance with the terms of the Settlement Agreement. (*See* Ex.3 at § V.) In November 2001, notice of this grant of relief was mailed to Mrs. Ogorzalek. (Porter Aff. ¶ 6.) Ameriprise never received any indication that Mrs. Ogorzalek did not receive the Class Notice or the Notice of General Relief. (Porter Aff. ¶¶ 4 & 7.)

Nearly two years later, Mrs. Ogorzalek's attorney wrote a letter to Ameriprise complaining of alleged improper sales practices relating to the sale of the Policy to Mrs. Ogorzalek. Ameriprise responded by way of a letter informing counsel that the allegedly wrongful actions fell within the terms of the settlement in this class action. (Ex. 5.) Nonetheless, Mrs. Ogorzalek continues to seek relief for settlement-barred claims from Ameriprise. By failing to opt out of the class, Mrs. Ogorzalek and the Trust released all

of their claims against Ameriprise related to the Policy in accordance with the terms set forth in the Final Judgment and Order.[4]

**Even Though the Claims Are Barred,**
**Mrs. Ogorzalek Seeks to Arbitrate These Claims.**

Even though she previously released her current claims against Ameriprise, on December 22, 2005, Mrs. Ogorzalek filed a Statement of Claim against Ameriprise with NASD Arbitration alleging a variety of claims related to the Trust's purchase of the Policy. The claims alleged in Mrs. Ogorzalek's Statement of Claim are barred by the Settlement Agreement and the Court's Final Order and Judgment. The gravamen of all of Mrs. Ogorzalek's current claims is that her Ameriprise advisor made certain material misrepresentations and omissions in the sale of the Policy and that the Policy was unsuitable for her. (*See* Ex. 2 at 15-19.) This is precisely the type of conduct that was at issue in the class action and released under the terms of the Final Order and Judgment. (Ex. 1 at ¶ 13.B.2.) Ameriprise has not yet submitted any response to the Statement of Claim to NASD Arbitration.

## ARGUMENT

### I. The Court Should Enjoin the Arbitration of the Claims Raised in the Statement of Claim Because They Have Already Been Released Under the Final Order and Judgment.

#### A. Mrs. Ogorzalek Released Her Claims.

---

[4] The Settlement Agreement bars class members "from seeking review or in any other way challenging in any forum whatsoever, including in a judicial proceeding or an arbitration, a decision or award of relief [under the Claim Review Process]." (Ex. 3 at § VII.C.4.)

Although not formally delineated in such terms, the claims raised in Mrs. Ogorzalek's Statement of Claim relate to alleged fraudulent omissions and misrepresentations made by her Ameriprise financial advisor at the time of the sale and purchase of the Policy and to the alleged unsuitability of the Policy. The relitigation of these claims before the NASD is expressly barred by the terms of the Release set forth in the Settlement Agreement and the Final Order and Judgment. (Ex.1 at ¶ 13.) Because these claims have already been released under the Settlement Agreement and the Final Order and Judgment, Mrs. Ogorzalek may not seek to re-litigate them now before an arbitration panel.

The gravamen of Mrs. Ogorzalek's claims is that her financial advisor made misrepresentations that induced her to purchase and hold the Policy and that the Policy was not a suitable insurance policy for her needs.[5] (*See, e.g.,* Ex. 2 at 2 "I believe that I was talked into [the Policy] and that it was totally inappropriate for our situation"); at 4 ("[The advisor's] statement . . . is materially misleading and indicates that he probably never understood, much less properly explained, how the policy worked. In that same letter, he describes the 'guaranteed minimum death benefit' without either mentioning its age limitation or the need to make the requisite payments. Again, this is both misleading and evidence that the original sale was not made with the appropriate disclosures or

[5] In essence, Mrs. Ogorzalek's Statement of Claim contains pages of boilerplate language alleging wrongdoing against Ameriprise in the most general of terms. Accordingly, it is difficult to discern the full scope of Mrs. Ogorzalek's claims, but it is clear that they all seemingly relate to the purchase of the Policy.

concern for suitability."); at 5 ("The use of a variable life insurance policy in an irrevocable trust raises a particular suitability issue . . . .") & at 18 ("[Mrs. Ogorzalek's Ameriprise advisor] wholly failed to apprise [Mrs.] Ogorzalek of any of the effective hidden cost features of the variable policy, which she was sold and as a result of her income, Ogorzalek was wholly unable to make an informed investment decision regarding the recommendation of the variable universal policy.") The factual predicate for Mrs. Ogorzalek's claims are alleged misrepresentations and omissions relating to the Policy. Hence, the arbitration of these claims is barred under the Release accepted by class members in this action.

The express terms of the Release in the Final Order and Judgment and the Settlement Agreement bar Mrs. Ogorzalek from arbitrating any claims predicated upon an advisor's alleged misrepresentations or omissions related to the Policy. Under the Release, class members have agreed not to assert "any Claims or Causes of Actions . . . that are based upon, related to, or connected with, directly or indirectly, in whole or in part: . . . (b) that relate <u>in any way</u> to the Released Conduct." (Ex. 1 at ¶ 13.A, .B (emphasis added).) Mrs. Ogorzalek's misrepresentation and suitability claims are related to the Released Conduct under the Settlement Agreement, which encompasses

> any and all . . . <u>representations, omissions, suggestions, or communications</u> that are related to or connected in any way with the . . . marketing, sale . . . or performance of the Policies . . . including, without limitation . . . <u>representations, omissions, suggestions or communications</u> in connection with (i) the explanation, description, marketing, sale, solicitation, illustration . . . of any . . . Annuity; (ii) the application for or <u>purchase of</u> any . . . Annuity; (iii) the suitability of any . . . <u>sales</u> . . . of any . . . Annuity; . . . (x) the . . . terms, or benefits or disadvantages of any . . . Annuity compared to any other life insurance policy, annuity contract or investment;

> . . . (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any . . . Annuity . . . .

(Ex. 1 at ¶ 13.B.2 (emphasis added).) The claims raised in the Statement of Claim fall squarely within the scope of the Released Conduct as defined by the Final Order and Judgment. The broad language of the Final Order and Judgment's Release precludes Mrs. Ogorzalek, who was a class member, from arbitrating these misrepresentation-based claims before the NASD.

**B. Mrs. Ogorzalek Received Notice of the Class Action, Chose Not to Opt Out, and Received Relief Under the Settlement Agreement.**

By receiving notice of the pendency of the class action, failing to opt out of the class, and receiving relief pursuant to the terms of the Settlement Agreement and the Final Judgment and Order, Mrs. Ogorzalek became a class member, and she is bound by all of the provisions of the Settlement Agreement and the Final Order and Judgment. *See, e.g., Berardinelli v. Gen. Am. Life Ins. Co. (In re Gen. Am. Life Ins. Co. Sales Practices Litig.*), 357 F.3d 800, 804-05 (8th Cir. 2004) (holding that a class member who receives proper notice of a proposed class-action settlement and fails to opt out of such a settlement is bound by the terms thereof); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993) ("As a class member who chose not to opt out after notice of the terms of the settlement, appellant is bound by the Order and Final Judgment . . . and must abide by its express terms.").

Defendants issued both published and individual notice to Mrs. Ogorzalek regarding the *Benacquisto* class-action settlement, but she chose not to opt out of the

class. (Porter Aff. at ¶¶ 2-5, 8.) The Class Notice advised her, among other things, that she could contact a toll-free hotline in order to receive further information about the class settlement. (Ex. 4 at § N.) Mrs. Ogorzalek was free to educate herself about the class action and to explore any questions that she had about it. (*See id.*) She did not opt out of the class; hence, she is bound by the class-settlement terms. (Ex. 1 at ¶ 12 ("The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, and representatives . . . .").)

Furthermore, it is not inequitable or unjust to bind Mrs. Ogorzalek to the Release and bar her from proceeding with the arbitration of claims that have already been released. It is undisputed that Mrs. Ogorzalek received relief in accordance with the Settlement Agreement. (Porter Aff. at ¶¶ 6 & 7.) Mrs. Ogorzalek cannot now seek further relief for the same injuries before the NASD. This Court's Final Order and Judgment expressly bars such an attempt to take a second bite of the apple. (Ex. 1 at ¶ 14 (permanently barring and enjoining Class Members from "filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration . . . based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct . . . as to that Policy or Annuity").) As a matter of law, Mrs. Ogorzalek may not proceed with the arbitration of these claims. *See Mosberg v. Nat'l Prop. Analyst, Inc.*, 630 N.Y.S.2d 50, 52 (N.Y. App. Div. 1995) (holding that active participation in class-action settlement by submitting a proof of claim

and agreeing to release barred later litigation by class member seeking to enforce released rights). Mrs. Ogorzalek cannot seek to relitigate these released claims in arbitration: allowing her to do so would let her "'eat [her] cake and have it too.'" *Id.*

### C. As a Class Member, Mrs. Ogorzalek Is Bound by the Contractual Terms of the Settlement Agreement Adopted by the Final Judgment and Order.

As a class member who received value for releasing her claims, Mrs. Ogorzalek "contractually agree[d] and acknowledge[d] that . . . [she would] not . . . initiate, participate in, maintain, maintain a right to or assert against [Ameriprise] . . . any Claim[] or Cause[] of Action . . . that [was] <u>based upon, related to, or connected with, directly or indirectly, in whole or in part</u> . . . (b) that relate[s] <u>in any way</u> to the Released Conduct." (Ex. 1 at ¶ 13.A.2 (emphasis added).) Mrs. Ogorzalek may not avoid these contractual obligations under the Settlement Agreement by seeking to arbitrate claims based upon alleged misrepresentations or omissions related to the sale of the Policy or upon the alleged unsuitability of the Policy. Preclusion of these claims was an "integral part of the settlement bargain" entered into by the parties to the class action, and "this Court cannot now modify the terms of that bargain at the insistence of one class member." *Thompson*, 992 F.2d at 191 n.5.

Mrs. Ogorzalek accepted the benefits of class membership on the Trust's behalf and has also agreed to any concomitant obligations imposed by class-member status, including releasing the right to arbitrate variable-annuity based claims against Ameriprise. *See In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51 (7th Cir. 1994) ("By electing not to opt out of the class, [claimant] received the benefits and accepted the

detriments of the settlement."); *Mosberg*, 630 N.Y.S.2d at 52 (recognizing that by not opting out of a class-action settlement and by "receiving the fruits of the settlement" a class member "is bound by its broad terms" including the release of certain additional claims). As a class member, Mrs. Ogorzalek received both the benefits and the detriments of the settlement. Any injury that she suffered has already been remedied by the benefit that was received by virtue of her status a class member (i.e., the General Relief). Permitting Mrs. Ogorzalek to proceed with the arbitration of her Statement of Claim would allow her to seek double recovery for the same injury. *See Mosberg*, 630 N.Y.S.2d at 52. Under the circumstances of this case, Mrs. Ogorzalek cannot now be heard to raise claims that have already been released.

## II. The Final Order and Judgment Authorizes this Court to Enjoin Mrs. Ogorzalek's NASD Proceeding.

### A. This Court has Continuing Jurisdiction in this Matter.

The Final Order and Judgment makes clear that this Court has retained continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

> (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);
>
> (b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the

Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

(c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

(Ex. 1 at ¶ 19(a)-(c).) Thus, the terms of the Final Order and Judgment specifically authorize this Court to enter an Order enjoining Mrs. Ogorzalek from pursuing released claims before the NASD. Entering such an Order is a proper method whereby the Court can ensure continued adherence to the terms of its final orders, including orders incorporating the terms of class-action settlement agreements. *See Thompson*, 992 F.2d at 189 ("It is clear that the district court has the authority to issue an injunction enforcing the Final Judgment of Dismissal and Order which embody the terms of the settlement agreement.") (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992) ("District courts have an inherent authority to enforce their injunctions.")); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

The Eighth Circuit Court of Appeals has repeatedly recognized the propriety of a District Court issuing an injunction in order to enforce a final judgment dismissing claims settled pursuant to a class-action settlement agreement. A District Court has the authority to issue an injunction enforcing a final judgment and order that embodies the terms of a class-action settlement agreement and bar a class member from raising released claims in subsequent litigation. *Thompson*, 992 F.2d at 190 ("[U]pon determining that the second proceeding was barred by the terms of the Final Judgment . . . the district court acted within its authority to enjoin appellant pursuant to those terms."); *see also Berardinelli*,

357 F.3d at 803 (upholding District Court's decision to enjoin subsequent state-court proceeding brought by a class member who had released a broad range of claims under a class-action settlement agreement). Furthermore, this power to enjoin subsequent claims is not limited to attempts to raise released claims in litigation. If a release, such as that contained in the Final Order and Judgment, releases all claims, including those that could be raised in arbitration, it should be enforced pursuant to its terms: "[E]ven when arbitration is involved, federal 'courts should not have to stand by while parties re-assert claims that have already been resolved.'" *Ewart v. Y & A Group (In re Y & A Group Sec. Litig.)*, 38 F.3d 380, 382 (8th Cir. 1994) (quoting *Kelly v. Merrill Lynch, Pierce, Fenner & Smith*, 985 F.2d 1067, 1069 (11th Cir. 1993)).[6] District Courts "have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *Ewart*, 38 F.3d at 382; *see also In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51-52 (7th Cir. 1994) (affirming District Court's order enjoining class member from arbitrating claims that were previously released pursuant to terms of a class-action settlement agreement). Because Mrs. Ogorzalek seeks to relitigate claims for which she has already received relief and that have already been released pursuant to the terms of

---

[6] In *Ewart*, the Eighth Circuit, upheld a District Court's decision to enjoin a pending NASD arbitration, even after the Respondent had appeared in the arbitration, and moved, before the arbitration panel, to dismiss the claims the Claimant sought to arbitrate. *See Ewart*, 38 F.3d 380, 381 (8th Cir. 1994). Here, Ameriprise submits this Motion prior to submitting to in the arbitration that Mrs. Ogorzalek seeks to begin. As noted above, Ameriprise has not submitted to arbitration and shall instead move to stay the arbitration under Rule 10301(d)(2) of the NASD Code of Arbitration Procedure pending the Court's determination on the instant Motion.

the Settlement Agreement and the Final Order and Judgment, the Court should enjoin her from proceeding with this arbitration.

**B. Proceeding with the Arbitration of Released Claims Violates a Prior Order of this Court.**

The bar precluding Mrs. Ogorzalek from arbitrating released claims goes beyond a simple contractual agreement between the parties to this litigation; this Court has already decreed that she cannot proceed with these claims in arbitration. The Court, in the Final Order and Judgment, enjoined class members from proceeding in such a fashion:

> All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in . . . or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Released Conduct . . . as to that Policy or Annuity.

(Ex. 1 at ¶ 14 (emphasis added).) Proceeding with the arbitration directly violates the Court's Final Order and Judgment. *Cf. Ewart*, 38 F.3d at 384-85 (Richard S. Arnold concurring) (recognizing that institution of arbitration after entry of order that approved class-action settlement and barred future claims encompassed therein violated the District Court's injunction, and noting that "[a]mong other things, violation of an injunction is . . . contempt of court, and the Federal Arbitration Act should not be construed to divest courts of their traditional powers to punish for contempt").

The terms of the Final Order and Judgment are clear: by not opting out of the class and by receiving relief in accordance with the Settlement Agreement, Mrs. Ogorzalek has released all of her claims related to the purchase and suitability of the Policy and agreed

to forego the right to arbitrate these claims. (Ex. 1 at ¶ 13.) Indeed, the Court has ordered that she forego those claims. (*Id.* at ¶ 14.) Therefore, the Court should enjoin Mrs. Ogorzalek from proceeding with any arbitration of claims relating in any way to any representations allegedly made to her that relate to the Policy. (*See id.* at ¶ 13.B.2 ("'Released Conduct' means any and all . . . representations, omissions, suggestions, or communications that are related to or connected in any way with the . . . marketing, sale, administration, . . . or performance of . . . Annuities, including <u>without limitation</u>, acts, <u>representations, omissions, suggestions or communications in connection within (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy. . . ."</u>) (emphasis added).) Mrs. Ogorzalek is similarly barred from proceeding with the arbitration of any claims relating to the suitability of the Policy. (*See id*. at ¶ 13.B.2 (releasing all claims related to "the suitability of any purchases, sales or replacements of any Policy . . . " and claims related to "the costs, commissions, terms, or benefits or disadvantages of any Policy . . . compared to any other life insurance policy . . . .") Arbitration of the claims set forth in the Statement of Claim, which are all predicated upon claimed misrepresentations and the alleged unsuitability of the Policy, would be in direct contravention to this Court's prior orders.

### C. Permitting Mrs. Ogorzalek to Proceed with the Arbitration Undermines the Finality of Class-Action Settlements.

Permitting Mrs. Ogorzalek to pursue claims that have already been settled and released more than five years after this Court's entry of the Final Order and Judgment undermines the finality of class-action settlements. This would eviscerate the binding

Settlement Agreement into which Mrs. Ogorzalek voluntarily entered and under which she received relief. Accordingly, authorizing the continued arbitration of any claims related to the Policy would be contrary to the strong public policy that supports class-action settlements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3d Cir. 2002) (quoting *In re Prudential Ins. Co. Sales Practices Litig.: Lowe*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actions "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large, multi district class action")). As recognized by the Eighth Circuit,

> [W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.

*Thompson*, 992 F.2d at 191 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)). By enjoining Mrs. Ogorzalek from proceeding with the arbitration of claims related to the Policy, the Court ensures not only that its Final Orders are respected, but that the "paramount policy" supporting settlement is upheld.

**CONCLUSION**

For all of the reasons set forth above, Ameriprise respectfully requests that the Court enjoin Mrs. Ogorzalek from proceeding with any arbitration of claims that are barred by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: May 9, 2006

FAEGRE & BENSON LLP

s/Fiona B. Ruthven

Michael F. Cockson (#280549)
Fiona B. Ruthven (#333761)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone No. (612) 766-7000
Facsimile No. (612) 766-1600

**ATTORNEYS FOR DEFENDANTS**

M2:20790605.03