**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF DR. G. ALLEN AND BARBARA WEST PRESENTED TO THE NASD**

## INTRODUCTION

Dr. G. Allen and Barbara West ("Claimants") seek to arbitrate claims that they already released under the class-action settlement in this case. Indeed, under the settlement, Claimants already received relief for these claims. Because the Court has specifically barred the double recovery that Claimants now seek before the NASD, the Court should enjoin arbitration of their current claims, which were previously resolved

and released pursuant to the terms of the class-action settlement agreement approved and ordered by this Court.

## FACTS

### The Final Judgment and Order Included a Broad Release of Claims Relating to the Variable Universal Life Policy.

By way of its current motion, Defendant Ameriprise Financial Services, Inc., formerly known as American Express Financial Advisors, Inc. ("Ameriprise") seeks to enforce the terms of a class-action settlement that were approved by this Court in 2001 (Ex. 1 (hereinafter "Final Order and Judgment").) Claimants were members of the class who settled their claims and are subject to the Final Order and Judgment. Nonetheless, they have submitted a Statement of Claim to the NASD and seek to arbitrate claims against Ameriprise that are barred by the Court's Order. (Ex. 2.) Because the Final Order and Judgment bars Claimants from raising the claims asserted in the Statement of Claim, Ameriprise respectfully requests that the Court enter an order enforcing the class-action settlement and barring Claimants from proceeding in arbitration with any and all claims against Ameriprise that were previously released.

In 2000, Plaintiffs filed the Complaint in this federal-court action, asserting numerous claims related to the marketing, sale, servicing and administration of certain cash-value insurance policies sold and serviced by numerous Defendants, including Ameriprise.[1] (Docket # 1.) Less than a month later, the parties submitted a Stipulation of

---

[1] Under the terms of the Settlement Agreement "'Policy' or 'Policies' means a cash value life insurance policy or policies issued by any of the Defendants pursuant to an

(continued on next page)

Settlement with exhibits to the Court. (Ex. 3 (hereinafter "Settlement Agreement").) After notifying the class, the Court entered the Final Order and Judgment, which certified the class, approved the settlement terms proposed by the parties in the Settlement Agreement, and dismissed with prejudice the claims of the class members. (*Id.*)

The Final Order and Judgment permanently barred and enjoined Class Members like Claimants from commencing any other lawsuit, arbitration, or administrative, regulatory or other proceeding in any jurisdiction relating to any claims released pursuant to the terms of the Settlement Agreement. (*See id.* at ¶ 14.) The Court "expressly retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment . . . ." (*Id.* at ¶ 15.) Pursuant to the Final Order and Judgment, all class members who failed to opt out of the class thereby agreed to a broad release wherein they released a wide variety of claims related to the Policies that were at issue in the class action.[2]

---

(continued from previous page)

individual sale in the United States, including its territories and commonwealths, during the Class Period." (Ex. 3 § II.60.)

[2] The "Releasors," i.e., class members who released their claims pursuant to the Settlement Agreement, released claims

> on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds . . . and the Policies' and Annuities' nominal and beneficial owners.

(continued on next page)

The Final Order and Judgment provides that Plaintiffs and all other members of the certified class agree and acknowledge that they:

> shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part:
>
> > (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or
> >
> > (b) that relate in any way to the Released Conduct.

(*Id.* at ¶ 13(A)(2)(emphasis added).)

The "Released Conduct" includes:

> any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies . . . including, without

---

(continued from previous page)

(Ex. 3 at § XII.B.4 (emphasis added).)

This definition encompasses Dr. West who is the insured under the Variable Universal Life Policy at issue in the Statement of Claim.

limitation, acts, representations, omissions, suggestions or communications in connection with

(i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy . . .

(ii) the application for or purchase of any Policy . . .

(iii) the suitability of any purchases, sales, or replacements of any Policy . . .

(iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy . . .

* * * *

(vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy . . . ;

(vii) the investment choices made with respect to assets held in any Policy. . . ;

* * * *

(x) the costs, commission, terms, or benefits or disadvantages of any Policy . . . compared to any other life insurance policy, annuity contract, or investment;

(xi) the comparison or lack of comparison of any Policy . . . to any other product;

(xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy . . . and . . .

* * * *

(xiv) the administration or servicing of any Policy . . . after its purchase.

(*Id.* at ¶ 13(B)(2) (reformatted from original).)

**Claimants Choose to Receive Relief as Class Members Under the Final Order and Judgment.**

In January 1999, Mrs. Barbara West purchased a Variable Universal Life Insurance policy from Ameriprise (the "VUL Policy"). On November 24, 2000, Ameriprise sent Notice of Class Action, Proposed Settlement and Fairness Hearing ("Class Notice") to Mrs. West. (Declaration of Amy L. Lake dated May 24, 2006 (hereinafter "Lake Decl.") ¶ 2, 3 & Ex. 4.) Mrs. West did not opt out of the class by the January 29, 2001 deadline set by the Court. (Lake Decl. ¶ 6.) Mrs. West therefore became a member of the class and received general relief in accordance with the terms of the Settlement Agreement. (*See* Ex. 3 at § V.) On November 10, 2001, notice of this grant of relief was mailed to Mrs. West. (Lake Decl. ¶ 7) Ameriprise never received any indication that Mrs. West did not receive the Class Notice or the Notice of General Relief. (Lake Decl. ¶¶ 4 & 8.) By failing to opt out of the class, Claimants released all of their claims against Ameriprise related to the Policy in accordance with the terms set forth in the Final Judgment and Order.

**Claimants Seek to Arbitrate Barred Claims.**

Even though they previously released their current claims against Ameriprise, on April 24, 2006, they filed a Statement of Claim against Ameriprise with NASD Arbitration alleging a variety of claims related to their purchase of the VUL Policy. The claims alleged in the Statement of Claim are barred by the Settlement Agreement and the Court's Final Order and Judgment. The gravamen of Claimants' current claims is that their Ameriprise advisor made certain material misrepresentations and omissions in the

sale of the VUL Policy and that the VUL Policy was unsuitable for them. (*See* Ex. 2 at ¶¶ 12-20.) This is precisely the type of conduct that was at issue in the class action and released under the terms of the Final Order and Judgment. (Ex. 1 at ¶ 13.B.2.) Ameriprise has not yet submitted any response to the Statement of Claim to NASD Arbitration but intends to move to stay any further proceedings before the NASD.

## ARGUMENT

### I. The Court Should Enjoin the Arbitration of the Claims Raised in the Statement of Claim Because They Have Already Been Released Under the Final Order and Judgment.

#### A. Claimants Released Their Claims.

The gravamen of Claimants' claims is that their financial advisor made misrepresentations that induced them to purchase and hold the VUL Policy, and that the VUL Policy was not a suitable insurance policy for their needs. (*See, e.g.,* Ex. 2.) The express terms of the Release in the Final Order and Judgment and the Settlement Agreement bar Claimants from arbitrating any claims predicated upon an advisor's alleged misrepresentations or omissions related to the Policy. Under the Release, class members have agreed not to assert "any Claims or Causes of Actions . . . that are based upon, related to, or connected with, directly or indirectly, in whole or in part: . . . (b) that relate <u>in any way</u> to the Released Conduct." (Ex. 1 at ¶ 13.A, .B (emphasis added).) Claimants' current misrepresentation and suitability claims are related to the Released Conduct under the Settlement Agreement, which encompasses

> any and all . . . <u>representations, omissions, suggestions, or communications</u> that are related to or connected in any way with the . . . marketing, sale . . . or performance of the Policies . . . including, without limitation . . .

> representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration . . . of any Policy . . .; (ii) the application for or purchase of any Policy . . .; (iii) the suitability of any . . . sales . . . of any Policy . . .; . . . (x) the . . . terms, or benefits or disadvantages of any Policy . . . compared to any other life insurance policy, annuity contract or investment; . . . (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy . . . .

(Ex. 1 at ¶ 13.B.2 (emphasis added).) Claimants' suitability and misrepresentation claims fall squarely within the scope of the Released Conduct as defined by the Final Order and Judgment. Accordingly, Claimants are precluded from arbitrating these claims before the NASD.

**B. Claimants Received Notice of the Class Action, Chose Not to Opt Out, and Received Relief Under the Settlement Agreement.**

By receiving notice of the pendency of the class action, failing to opt out of the class, and receiving relief pursuant to the terms of the Settlement Agreement and the Final Judgment and Order, Mrs. West became a class member, and she is bound by all of the provisions of the Settlement Agreement and the Final Order and Judgment.[3] *See, e.g.*, *Berardinelli v. Gen. Am. Life Ins. Co. (In re Gen. Am. Life Ins. Co. Sales Practices Litig.*), 357 F.3d 800, 804-05 (8th Cir. 2004); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993).

Defendants issued both published and individual notice to Mrs. West regarding the settlement, yet she chose not to opt out of the class. (Lake Decl. at ¶¶ 2-5, 8.) She did

---

[3] As noted earlier, Dr. West is similarly bound as a "Releasor" under the Settlement Agreement.

not opt out of the class; hence, she is bound by the class-settlement terms. (Ex. 1 at ¶ 12 ("The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members. . . .").)

It is not inequitable or unjust to bind Claimants to the Release and bar them from proceeding with the arbitration of claims that they have already released. It is undisputed that Mrs. West received relief in accordance with the Settlement Agreement. (Lake Decl. at ¶ 7.) Claimants cannot now seek further relief for the same injuries before the NASD. This Court's Final Order and Judgment expressly bars such an attempt to take a second bite of the apple. (Ex. 1 at ¶ 14 (permanently barring and enjoining Class Members from "filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration . . . based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct . . . as to that Policy or Annuity").); *see also Mosberg v. Nat'l Prop. Analyst, Inc.*, 630 N.Y.S.2d 50, 52 (recognizing that permitting a class member to proceed with claims for which they already received relief allows them to "eat [their] cake and have it too"). As a matter of law, Claimants may not proceed with the arbitration of these claims.

**C. Claimants Are Bound by the Contractual Terms of the Settlement Agreement Adopted by the Final Judgment and Order.**

Claimants, who received value for releasing their claims "contractually agree[d] and acknowledge[d] that . . . [she would] not . . . initiate, participate in, maintain, maintain a right to or assert against [Ameriprise] . . . any Claim[] or Cause[] of Action . .

. that [was] based upon, related to, or connected with, directly or indirectly, in whole or in part . . . (b) that relate[s] in any way to the Released Conduct." (Ex. 1 at ¶ 13.A.2 (emphasis added).) Claimants may not now avoid these contractual obligations under the Settlement Agreement by seeking to arbitrate claims based upon alleged misrepresentations or omissions related to the sale of the VUL Policy or upon the alleged unsuitability of the VUL Policy. Preclusion of these claims was an "integral part of the settlement bargain" entered into by the parties to the class action, and "this Court cannot now modify the terms of that bargain at the insistence of one class member." *Thompson*, 992 F.2d at 191 n.5.

Claimants accepted the benefits of class membership and have agreed to any concomitant obligations imposed by class-member status, including releasing the right to arbitrate VUL-Policy claims against Ameriprise. *See In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51 (7th Cir. 1994). Claimants received both the benefits and the detriments of the settlement. Any injury that they suffered has already been remedied by the benefit that was received by virtue of their participation in the class-action settlement. Permitting Claimants to proceed with the arbitration of their Statement of Claim would allow them to seek double recovery for the same injury. *See Mosberg*, 630 N.Y.S.2d at 52. Under the circumstances of this case, Claimants cannot now be heard to raise claims that have already been released.

## II. The Final Order and Judgment Authorizes this Court to Enjoin The NASD Proceeding.

### A. This Court has Continuing Jurisdiction in this Matter.

The Final Order and Judgment makes clear that this Court has retained continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

> (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);
>
> (b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and
>
> (c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

(Ex. 1 at ¶ 19(a)-(c).) Thus, the terms of the Final Order and Judgment specifically authorize this Court to enter an order enjoining Claimants from pursuing released claims before the NASD. Entering such an order is a proper method whereby the Court can ensure continued adherence to the terms of its final orders, including orders incorporating the terms of class-action settlement agreements. *See Thompson*, 992 F.2d at 189 (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

The Eighth Circuit Court of Appeals has repeatedly recognized the propriety of a District Court issuing an injunction in order to enforce a final judgment dismissing claims settled pursuant to a class-action settlement agreement. A District Court has the authority to issue an injunction barring a class member from raising released claims in subsequent litigation. *Thompson*, 992 F.2d at 190; *see also Berardinelli*, 357 F.3d at 803. Furthermore, this power to enjoin subsequent claims is not limited to attempts to raise released claims in litigation. If a release, such as that contained in the Final Order and Judgment, releases all claims, including those that could be raised in arbitration, it should be enforced pursuant to its terms: "[E]ven when arbitration is involved, federal 'courts should not have to stand by while parties re-assert claims that have already been resolved.'" *Ewart v. Y & A Group (In re Y & A Group Sec. Litig.)*, 38 F.3d 380, 382 (8th Cir. 1994) (quoting *Kelly v. Merrill Lynch, Pierce, Fenner & Smith*, 985 F.2d 1067, 1069 (11th Cir. 1993)). District Courts "have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *Ewart*, 38 F.3d at 382; *see also In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d at 51-52 (affirming District Court's order enjoining class member from arbitrating claims that were previously released pursuant to terms of a class-action settlement agreement). Because Claimants seek to relitigate claims for which they have already received relief and that have already been released pursuant to the terms of the Settlement Agreement and the Final Order and Judgment, the Court should enjoin them from proceeding with the arbitration of their current claims.

**B. Proceeding with the Arbitration of Released Claims Violates a Prior Order of this Court.**

The bar precluding Claimants from arbitrating released claims goes beyond a simple contractual agreement between the parties to this litigation; this Court has already decreed that they cannot proceed with these claims in arbitration. The Court, in the Final Order and Judgment, enjoined class members from proceeding in such a fashion:

> All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in . . . or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Released Conduct . . . as to that Policy or Annuity.

(Ex. 1 at ¶ 14 (emphasis added).) Proceeding with the arbitration directly violates the Court's Final Order and Judgment. *Cf. Ewart*, 38 F.3d at 384-85 (Richard S. Arnold concurring) (recognizing that institution of arbitration after entry of order that approved class-action settlement and barred future claims encompassed therein violated the District Court's injunction, and noting that "[a]mong other things, violation of an injunction is . . . contempt of court, and the Federal Arbitration Act should not be construed to divest courts of their traditional powers to punish for contempt").

The terms of the Final Order and Judgment are clear: by not opting out of the class and by receiving relief in accordance with the Settlement Agreement, Claimants have released all of their claims related to the purchase and suitability of the VUL Policy and agreed to forego the right to arbitrate these claims. (Ex. 1 at ¶ 13.) Indeed, the Court has ordered that they forego those claims. (*Id.* at ¶ 14.) Therefore, the Court should enjoin

Claimants from proceeding with any arbitration of claims relating in any way to any representations allegedly made to them that relate to the VUL Policy. (*See id.* at ¶ 13.B.2 ("'Released Conduct' means any and all . . . representations, omissions, suggestions, or communications that are related to or connected in any way with the . . . marketing, sale, administration, . . . or performance of . . . Annuities, including without limitation, acts, representations, omissions, suggestions or communications in connection within (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy. . . .") (emphasis added).) Claimants is similarly barred from proceeding with the arbitration of any claims relating to the suitability of the Policy. (*See id.* at ¶ 13.B.2 (releasing all claims related to "the suitability of any purchases, sales or replacements of any Policy . . . " and claims related to "the costs, commissions, terms, or benefits or disadvantages of any Policy . . . compared to any other life insurance policy . . . .") Arbitration of the claims set forth in the Statement of Claim, that are predicated upon claimed misrepresentations and the alleged unsuitability of the Policy, would be in direct contravention to this Court's prior orders.

### C. Permitting Claimants to Proceed with the Arbitration Undermines the Finality of Class-Action Settlements.

Permitting Claimants to pursue claims that have already been settled and released more than five years after this Court's entry of the Final Order and Judgment undermines the finality of class-action settlements. This would eviscerate the binding Settlement Agreement into which Claimants voluntarily entered and under which they received relief. Accordingly, authorizing the continued arbitration of any claims related to the

VUL Policy would be contrary to the strong public policy that supports class-action settlements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3d Cir. 2002) (quoting *In re Prudential Ins. Co. Sales Practices Litig.: Lowe*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actions "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large, multi district class action")). As recognized by the Eighth Circuit,

> [W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.

*Thompson*, 992 F.2d at 191 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)). By enjoining Claimants from proceeding with the arbitration of claims related to the VUL Policy, the Court ensures not only that its Final Orders are respected, but that the "paramount policy" supporting settlement is upheld.

## CONCLUSION

For all of the reasons set forth above, Ameriprise respectfully requests that the Court enjoin Claimants from proceeding with any arbitration of claims that are barred by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: May 30, 2006

FAEGRE & BENSON LLP

s/Fiona B. Ruthven

Michael F. Cockson (#280549)
Fiona B. Ruthven (#333761)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone No. (612) 766-7000
Facsimile No. (612) 766-1600

**ATTORNEYS FOR DEFENDANTS**

M2:20798735.03