above, and as a regular part of their activity compared the return on investment of the Proprietary Funds with competing funds, they were knowledgeable that the impact of the programs they had created would be to place clients with whom they had a fiduciary relationship in historically underperforming funds. They knew or were reckless in not knowing that the public statements issued or disseminated in the name of American Express omitted material information; knew that such statements would be issued or disseminated to the investing public; and knowingly and substantially participated in or acquiesced in the issuance or dissemination of such statements as primary violators of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their knowledge or reckless disregard for the true facts regarding American Express's directed brokerage, revenue sharing, intimidation tactics and their control over, and/or receipt and/or modification of American Express's materially misleading omissions and/or their associations with American Express which made them privy to confidential proprietary information concerning American Express directed brokerage, revenue sharing and the other improper practices detailed above, culpably participated in the fraudulent scheme alleged herein.

83. Defendants were highly motivated to allow and facilitate the wrongful conduct alleged herein and participated in and/or had actual knowledge of the fraudulent conduct alleged herein. In exchange for allowing the unlawful practices alleged herein, American Express received at least hundreds of millions of dollars from the sale of bogus Financial Plans and the improper inducements received from the Shelf Space Funds, or the managers or affiliates of the Shelf Space Funds, for recommending the Shelf Space Funds to their unsuspecting clients.

84. Moreover, Defendants were highly motivated to conceal from Plaintiffs and other Class members, Defendants' receipt of directed brokerage; receipt of revenue sharing payments;

and their use of intimidation tactics to push the Proprietary and Shelf Space Funds over other funds - and the inherent, insurmountable conflicts of interest created by these practices - because Defendants knew that if American Express clients knew that American Express was being paid and/or its financial advisors used coercion to make recommendations to invest in the Proprietary and Shelf Space Funds, such recommendations would be completely undermined.

## CLASS ACTION ALLEGATIONS

85. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a the Class of all persons or entities, other than Defendants and persons barred from asserting further claims against AEFA under the *Benacquisto et al. v. American Express Financial Corp.* settlement agreement, who were American Express clients between March 10, 1999 and April 1, 2004 (the "Class Period"), inclusive, and who purchased Proprietary and/or Shelf Space Funds during the Class Period through American Express and/or Financial Plans with AEFA during the Class Period. The Class is divided into two Subclasses. The first Subclass (the "Mutual Fund Subclass") consists of all persons who purchased Proprietary and/or Shelf Funds during the Class Period through American Express. The second Subclass (the "Financial Plan Subclass") consists of all persons who purchased Financial Plans with AEFA during the Class Period.

86. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed class. Record owners and other members of the Class may be identified from records maintained by the Proprietary Funds and/or the Defendants and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

87. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal securities laws that is complained of herein.

88. Common questions of law and fact exist as to all members of the Class and/or the Subclasses and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- Whether the federal securities laws were violated by Defendants' acts as alleged herein;

- Whether Defendants failed to disclose to the investing public during the Class Period material facts about the business, sales practices and sources of compensation of American Express employees;

- Whether Defendants failed to disclose to the investing public during the Class Period material facts about the business, operations, and financial statements of the Proprietary and Shelf Space Funds;

- Whether Defendants failed to disclose the true nature and intent behind their Financial Plans and financial advice; and

- To what extent the members of the Class have sustained damages and the proper measure of such damages.

89. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SECURITIES ACT CLAIMS

## COUNT I

## ON BEHALF OF THE MUTUAL FUND SUBCLASS AGAINST DEFENDANT AMERICAN EXPRESS ADVISORS FOR VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT

90. Plaintiffs and the Mutual Fund Subclass repeat and reallege each and every allegation contained above as if fully set forth herein, except that, for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

91. This claim is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class against Defendant American Express Advisors for its failure to disclose sales practices that created an insurmountable conflict-of-interest.

92. American Express was the seller, or the successor-in-interest to the seller, within the meaning of the Securities Act, for one or more of the respective fund shares sold to members of the Class because it either: (a) transferred title of shares of the Proprietary and Shelf Space Funds to members of the Mutual Fund Subclass; (b) transferred title of shares of the Proprietary and Shelf Space Funds to the American Express distributors that in turn sold shares of the those Funds; and/or (c) solicited the purchase of shares of the Proprietary and Shelf Space Funds by members of the Mutual Fund Subclass.

93. During its sale of Proprietary and Shelf Space Funds to Plaintiffs and other members of the Mutual Fund Subclass, Defendant American Express Advisors failed to disclose that (a) it coerced its financial advisors to push the Proprietary and Shelf Space Funds through threats of demotion and termination and (b) received improper incentives from the Proprietary and Shelf Space Funds, *e.g.* revenue sharing and directed brokerage, in exchange for pushing American Express clients into the Proprietary and Shelf Space Funds. The practice of coercion

as well as improper incentives from the Proprietary and Shelf Space Funds created an insurmountable conflict-of-interest which was never disclosed to investors.

94. As alleged above, defendant American Express Advisors caused its financial advisors to utilize materially deceptive standardized marketing scripts, and disseminated materially deceptive brochures, in an effort to induce the Mutual Fund Subclass Members to invest in the Proprietary and Shelf Space Funds.

95. American Express Advisors also caused to be issued to Plaintiffs and other members of the Mutual Fund Subclass, the Proprietary and Shelf Space Fund Prospectuses that failed to disclose that fees and commissions from the Proprietary and Shelf Space Funds would be used to pay brokers for directing investors into the Proprietary and Shelf Space Funds and the existence of the American Express financial advisor's conflicts of interest described herein.

96. As set forth herein, when they became effective, the Proprietary and Shelf Space Funds' Prospectuses were misleading as they omitted the following material facts:

(a) that the Funds' investment advisers authorized the payment from Shelf Space investors assets through directed brokerage and revenue sharing payments to American Express in exchange for American Express pushing its clients into the Proprietary and Shelf Space Funds; and

(b) that by paying American Express to push their Funds, the Proprietary and Shelf Space Funds created for American Express Advisors a conflict of interest material to investors.

97. Members of the Mutual Fund Subclass have sustained damages due to American Express's violations. Among other things, the impact of Defendants' deception was to cause the Mutual Fund Subclass Members to place a higher value on the securities they purchased than

would have been the case had they known that the future rates of return on such investments would be reduced by revenue-sharing and directed brokerage payments. Subsequent to purchase, the impact of those costs reduced the net asset value of the Funds on a per-share basis below the value a reasonable investor would have placed on them at the time of purchase.

98. By virtue of the material deception alleged above, Plaintiffs and the Mutual Fund Subclass Members are entitled to a declaration that they may, at the option of each Mutual Fund Subclass Member, rescind his or her purchases of the securities at issue, and obtain reimbursement of the amounts paid.

99. At the time they purchased the Proprietary and Shelf Space Funds shares traceable to the defective Prospectuses or oral communications, members of the Mutual Fund Subclass were without knowledge of the facts concerning the material omissions alleged herein and could not reasonably have possessed such knowledge.

100. This claim was brought within the applicable statute of limitations.

## COUNT II

## ON BEHALF OF THE MUTUAL FUND SUBCLASS CLASS AGAINST THE CONTROL PERSON DEFENDANTS FOR VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT

101. Members of the Mutual Fund Subclass repeat and re-allege each and every allegation contained above, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

102. This claim is brought pursuant to Section 15 of the Securities Act against the Control Person Defendants as control persons of defendant American Express Advisors.

103. Defendant American Express Advisors is liable under Section 12(a)(2) of the Securities Act as set forth herein.

104. Each of the Control Person Defendants was a "control person" of defendant American Express Advisors within the meaning of Section 15 of the Securities Act, by virtue of its position of operational control and/or ownership. At the time that members of the Class purchased shares of one or more of the Proprietary and Shelf Space Funds from defendant American Express Advisors – by virtue of their positions of control and authority over defendant American Express Advisors – the Control Person Defendants directly and indirectly had the power and authority, and exercised the same, to cause defendant American Express Advisors to engage in the wrongful conduct complained of herein.

105. Pursuant to Section 15 of the Securities Act, by reason of the foregoing, the Control Person Defendants are liable to members of the Mutual Fund Subclass to the same extent as defendant American Express Advisors is for its primary violations of Section 12(a)(2) of the Securities Act.

106. By virtue of the foregoing, members of the Mutual Fund Subclass are entitled to damages against the Control Person Defendants.

## VIOLATIONS OF THE EXCHANGE ACT

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE MARKET DOCTRINE

107. At all relevant times, the market for Proprietary and Shelf Space Funds was efficient for the following reasons, among others:

(a) The Proprietary and Shelf Space Funds met the requirements for listing, and were listed and actively bought and sold through a highly efficient and automated market;

(b) As regulated entities, periodic public reports concerning the Proprietary and Shelf Space Funds were regularly filed with the SEC;

(c) Persons associated with the Proprietary and Shelf Space Funds regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) The Proprietary and Shelf Space Funds were followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

108. As a result of the foregoing, the market for the Proprietary and Shelf Space Funds promptly digested current information regarding the Proprietary and Shelf Space Funds from all publicly available sources and reflected such information in the respective value attributed to the Proprietary and Shelf Space Funds. Investors who purchased or otherwise acquired shares or interests in the Proprietary and Shelf Space Funds relied on the integrity of the market for such securities as well as the integrity and honesty of American Express. Under these circumstances, all purchasers of the Proprietary and Shelf Space Funds during the Class Period suffered similar injury through their purchase or acquisition of Proprietary and Shelf Space Funds.

## COUNT III

## ON BEHALF OF THE MUTUAL FUND SUBCLASS AGAINST ALL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5(b) PROMULGATED THEREUNDER

109. Plaintiffs and the members of the Mutual Fund Subclass repeat and reallege each and every allegation contained above as if fully set forth herein except for claims brought pursuant to the Securities Act.

110. During the Class Period, Defendants employed manipulative and deceptive devices and contrivances in that it omitted to state material facts, *i.e.* disclose the improper incentives regarding the Proprietary and Shelf Space Funds that created an insurmountable conflict of interest and that such incentives were intended to and did deceive members of the Class, and caused members of the Mutual Fund Subclass to purchase Proprietary and Shelf Space Funds and suffer damages. Part and parcel of the manipulative and deceptive devices and contrivances used by Defendants were the standardized prospectuses and/or other financial advice used by Defendants to steer Plaintiffs and other members of the Mutual Fund Subclass into the Proprietary and Shelf Space Funds.

111. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal the adverse material information about the improper inducements alleged herein. All Defendants are sued as primary participants in the wrongful and illegal conduct and scheme charged herein.

112. Defendants omitted to state material facts in order to profit from millions of dollars of incentive payments described above made to them by the Proprietary and Shelf Space Funds from the assets of unwitting investors, and from the many millions of additional dollars Defendants obtained from the sale of Proprietary and Shelf Space Fund shares, and the management, distribution and other fees they charged the Funds and their investors on an ongoing basis. Defendants thereby engaged in transactions, practices and a course of business which operated as a fraud and deceit upon Plaintiffs and members of the Mutual Fund Subclass.

113. Defendants had actual knowledge of the omissions of material facts set forth herein, or acted with reckless disregard for the truth in that it failed to ascertain and to disclose

such facts, even though such facts were available to them. American Express's material omissions were done knowingly or recklessly and for the purpose and effect of concealing the truth.

114. As a result of the failure to disclose material facts, as set forth above, perceived fund values and market trends of the Proprietary and Shelf Space Funds were distorted during the Class Period such that they did not reflect the risks and costs of the continuing course of conduct alleged herein. In ignorance of the facts that the advice they were receiving was tainted by undisclosed conflicts of interest, and relying directly or indirectly on the false and misleading statements made by Defendants and the purported honesty of Defendants' business practices, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, members of the Mutual Fund Subclass paid advisory fees and commissions, and other Proprietary and Shelf Space mutual fund fees that members of the Mutual Fund Subclass would have refused to paid had they known of the practices alleged herein.

115. As a result of Defendants' material omissions, members of the Class acquired the shares or interests in the Proprietary and Shelf Space Funds during the Class Period and were damaged thereby. Damages were caused in a variety of ways. First, Defendants deceived the Mutual Fund Subclass Members into acquiring Proprietary and Shelf Space Funds for Defendants' own benefit, rather than in a good-faith effort to provide appropriate investment advice. In consequence, the Mutual Fund Subclass Members are entitled to recover the commissions they have paid from the improper transactions. Second, the Mutual Fund Subclass Members have been injured because they were induced to acquire securities that substantially

underperformed their peers subsequent to purchase. Third, the unlawful revenue-sharing and directed brokerage payments that were not disclosed to the Mutual Fund Subclass Members, and that were paid to Defendant broker dealer, caused injury to the Class Members by reducing the rate of return they would have earned on their investments had those payments not been made. Finally, damages were caused to Mutual Fund Subclass Members who acquired historically under-performing funds whose net asset values dropped subsequent to the Mutual Fund Subclass Members' purchase, in light of Defendants' failure to alert the Mutual Fund Subclass Member to the fact that the funds involved were high-risk purchases because they had a history of deficient performance.

116. At the time of said omissions, members of the Class were ignorant of the truth. Had members of the Class known the truth concerning American Express's operations, which were not disclosed by Defendants, members of the Mutual Fund Subclass would not have purchased or otherwise acquired their shares of the Proprietary and Shelf Space Funds, would not have paid the commissions or fees paid as a result of their acquisition of the Proprietary and Shelf Space Funds, would not have paid for the Financial Plans and other financial "advice" provided by American Express financial advisors, and would not have paid the fees and costs associated with ownership of the Proprietary and Shelf Space Funds, or if they had acquired such shares or other interests during the Mutual Fund Subclass Period.

117. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

118. As a direct and proximate result of Defendants' wrongful conduct, members of the Mutual Fund Subclass suffered damages in connection with their purchases and acquisitions of the Proprietary and Shelf Space Funds during the Class Period.

119. This claim was brought within the applicable statute of limitations.

## COUNT IV

## ON BEHALF OF THE MUTUAL FUND SUBCLASS AGAINST ALL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5(a) AND (c) PROMULGATED THEREUNDER

120. Members of the Mutual Fund Subclass repeat and reallege each and every allegation contained above as if fully set forth herein except for claims brought pursuant to the Securities Act.

121. During the Class Period, each of the Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did deceive the investing public, including members of the Mutual Fund Subclass, as alleged herein and caused members of the Mutual Fund Subclass to purchase shares of the Proprietary and Shelf Space Funds and to otherwise suffer damages. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

122. Defendants (i) employed devices, schemes, and artifices to defraud; and (ii) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon the purchasers of the Proprietary and Shelf Space Funds, including members of the Mutual Fund Subclass, in an effort to enrich themselves through undisclosed manipulative tactics by which they wrongfully distorted the pricing and market trends of the American Express Funds in violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c). All Defendants are sued as primary participants in the wrongful and illegal conduct and scheme charged herein.

123. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about American Express and the Shelf Space Funds' operations, as specified herein.

124. Defendants employed devices and artifices to defraud and engaged in a course of conduct and scheme as alleged herein to unlawfully manipulate and profit from excessive fees and commissions as a result of the undisclosed sales practices to peddle the Shelf Space Funds alleged above and thereby engaged in transactions, practices and a course of conduct which operated as a fraud and deceit upon members of the Class.

125. The members of the Mutual Fund Subclass reasonably relied upon the integrity of the market in which the Proprietary and Shelf Space Funds traded.

126. Members of the Mutual Fund Subclass were ignorant of Defendants' fraudulent scheme. Had members of the Mutual Fund Subclass known of Defendants' unlawful scheme, they would not have purchased or otherwise acquired their shares of the Proprietary and Shelf Space Funds, would not have paid any commissions or fees paid as a result of their acquisition of the Funds, would not have paid the fees for the Financial Plans and/or other financial advice provided by American Express financial advisors, and would not have paid the fees and costs associated with ownership of the Funds, or if they had acquired such shares or other interests during the Class Period, they would not have done so due to the purportedly fair and impartial advice for which they had paid.

127. By virtue of the foregoing, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder.

128. As a direct and proximate result of Defendants' wrongful conduct, members of the Mutual Fund Subclass suffered damages in connection with their purchases and acquisitions of American Express Funds during the Class Period.

129. This claim was brought within the applicable statute of limitations.

## COUNT V

## ON BEHALF OF THE MUTUAL FUND SUBCLASS AGAINST DEFENDANT AMERICAN EXPRESS ADVISORS FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-10 PROMULGATED THEREUNDER

130. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein except for claims brought pursuant to the Securities Act.

131. During the Mutual Fund Subclass Period, American Express Advisors, a registered broker-dealer, effected transactions in the Shelf Space Funds for or with the accounts of Mutual Fund Subclass members, and/or induced Mutual Fund Subclass members to purchase the Shelf Space Funds.

132. At or before completion of Mutual Fund Subclass members' purchases of the Shelf Space Funds, American Express Advisors failed to disclose the source and amount of remuneration American Express Advisors received from the Shelf Space Funds in connection with Class members' purchases of the Shelf Space Funds, as required by Rule 10b-10, promulgated under Exchange Act Section 10(b) as well as failed to disclose the nature and extent of the coercive programs used at American Express to push the Shelf Space Funds.

133. The Shelf Space Funds' payment of such remuneration created insurmountable and undisclosed conflicts of interest. Mutual Fund Subclass members were thus ignorant of the source and amount of remuneration American Express Advisors received from the Shelf Space Funds and of the resulting conflicts of interest. Had Mutual Fund Subclass members known of the source and amount of such remuneration and the resulting conflicts of interest, they would not have purchased or otherwise acquired shares of the Shelf Space Funds, would not have paid any commissions or fees paid as a result of their acquisitions of the Shelf Space Funds, and would not have paid the fees or costs associated with ownership of the Shelf Space Funds, or if

they had, they would not have purchased or otherwise acquired them at the artificial prices they paid for such securities.

134. Mutual Fund Subclass members have sustained damages due to American Express Advisors' violation of Rule 10b-10.

135. At the time they purchased the Shelf Space Funds shares traceable to the defective disclosures, Mutual Fund Subclass members were without knowledge of the facts concerning the material omissions alleged herein and could not reasonably have possessed such knowledge.

136. This claim was brought within the applicable statute of limitations.

## COUNT VI

### AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER FOR DECEPTION ON BEHALF OF THE FINANIAL PLANS SUBCLASS

137. The members of the Financial Plan Subclass repeat and reallege each and every allegation contained above as if fully set forth herein except for Claims brought pursuant to the Securities Act.

138. Plaintiffs do not allege that the Financial Plan Subclass Members' purchases of the Financial Plans as alleged above were purchases of securities. However, Defendants have contended that Plaintiffs' claims with respect to the Financial Plans are Claims of deception in connection with the purchase or sale of a security. Should the Court rule that Defendants are correct in this regard, Plaintiffs allege that Defendants sale of the Financial Plans to the Class Members constitute a violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

139. As alleged above, the process through which the Financial Plans were marketed, including the standardized representations made by Defendants and by their Financial Advisors, concerning the experience and objectivity of the Financial Advisors the purportedly

individualized nature of the recommendations, the Financial Advisors ability to recommend those investments that were appropriate for the Financial Plan Subclass Member regardless of whether they were proprietary to American Express, and the failure to disclose the Proprietary Funds' history of underperforming their peers, was materially deceptive to the Financial Plan Subclass Members and induced them to purchase the Financial Plans.

140. As a result of the aforesaid deception, the Financial Plan Subclass Members were injured by being induced to pay an average of $500 per Financial Plan, without receiving the service they had been promised in connection with that plan. Furthermore, as a result of that deception, the Financial Plan Subclass Members subsequently purchased the Financial Products as alleged above, and were injured and suffered damages in that regard as alleged above.

141. At the time they purchased the Financial Plans the Financial Plan Subclass Members were without knowledge of the facts constituting the material omissions alleged herein and could not reasonably have possessed such knowledge.

142. This claim was brought with the applicable statute and limitations.

**COUNT VII**

**ON BEHALF OF THE MUTUAL FUND SUBCLASS AGAINST THE CONTROL PERSON DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT**

143. Plaintiffs and the members of the Mutual Fund Subclass repeat and reallege each and every allegation contained above as if fully set forth herein except for Claims brought pursuant to the Securities Act.

144. This Claim is brought pursuant to Section 20(a) of the Exchange Act against each of the Control Person Defendants, as a control person of American Express Financial Advisor.

145. Each of the Control Person Defendants acted as a controlling person of American Express Advisors within the meaning of Section 20(a) of the Exchange Act for the reasons

alleged herein. By virtue of their operational and management control of American Express Advisors' business and systematic involvement in the fraudulent scheme alleged herein, the Control Person Defendants each had the power to influence and control and did influence and control, directly or indirectly, the decision-making and actions of American Express Advisors, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The Control Person Defendants had the ability to prevent the issuance of statements alleged to have failed to disclose the material information described herein.

146. In particular, each of the Control Person Defendants had direct and supervisory involvement in the operations of American Express Advisors and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

147. As set forth above, the American Express Advisors violated Section 10(b) and Rules 10b-5 and 10b-10 promulgated thereunder by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Control Person Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Mutual Fund Subclass suffered damages in connection with their purchases of the Shelf Space Funds' securities during the Class Period.

148. This claim was brought within the applicable statute of limitations.

## COUNT VIII

## FOR VIOLATIONS OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT MINN. STAT. §§ 325D.43 et seq., ON BEHALF OF THE FINANCIAL PLAN SUBCLASS AGAINST ALL DEFENDANTS

149. Plaintiffs and the members of the Financial Plan Subclass hereby reallege and incorporate by reference all paragraphs previously alleged herein. Members of the Financial

Plan Subclass assert this cause of action against each and every Defendant on behalf of themselves and the Financial Plan Subclass for violations of Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 et seq.

150. Defendants have violated the Uniform Deceptive Trade Practices Act by engaging in and continuing to engage in acts and practices, including misrepresentation, deception, and concealment, which create a likelihood of confusion and/or misunderstanding.

151. As set forth herein, Defendants' acts, practices, representations, statements, omissions, and courses of conduct with respect to the sale of financial plans violate Minnesota's Deceptive Trade Practices Act in that, among other things:

(a) Defendants represented, and continue to represent, that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, in violation of Minn. Stat. § 325D.44(1)(5);

(b) Defendants represented, and continue to represent, that goods or services are of a particular standard, quality, or grade, in violation of Minn. Stat. § 325D.44(1)(7);

(c) Defendants advertise, and continue to advertise, goods or services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and

(d) Defendants have engaged, and continue to engage, in conduct which creates a likelihood of confusion or of misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

152. As set forth herein, Defendants' acts, practices, representations, statements, omissions, and courses of conduct with respect to the advertising, marketing, and sale of financial plans violate Minnesota's Deceptive Trade Practices Act in that, among other things:

(a) Defendants misrepresented, and continue to misrepresent, that they provide personalized, objective financial advice and recommendations;

(b) Defendants misrepresented, and continue to misrepresent, that their financial advice and recommendations are intended exclusively to promote clients' best interests;

(c) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal, conflicts of interest, including that their financial advice and recommendations are designed to generate fees and sales commissions and increase assets under Defendants' management;

(d) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal that their financial advice and recommendations are intended to induce clients to purchase Proprietary and Shelf Space Funds;

(e) Defendants' advertisements and marketing practices fail to disclose, inadequately disclose, and/or conceal material information; and

(f) Defendants' advertising and marketing practices were and are likely to mislead, deceive, and/or damage consumers.

153. As a direct and proximate result of Defendants' misrepresentations, misleading statements, and/or deceptive practices, in violation of Minnesota's Deceptive Trade Practices Act, Plaintiffs and the Financial Plan Subclass have been injured and suffered harm in that, among other things, Plaintiffs and the Financial Plan Subclass have purchased Defendants' financial plans when they otherwise would not have and/or Plaintiffs and the Financial Plan Subclass have paid more for the Financial Plans than they otherwise would have.

154. Pursuant to Minn. Stat. § 325D.45, Plaintiffs and the members of the Financial Plan Subclass are entitled to an order permanently enjoining Defendants from engaging in the

unlawful practices described herein, as well as recovery of attorneys' fees and costs of the litigation.

## COUNT IX

## FOR VIOLATIONS OF THE MINNESOTA CONSUMER FRAUD ACT MINN. STAT. §§ 325F.68 et seq., ON BEHALF OF THE FINANCIAL PLAN SUBCLASS AGAINST ALL DEFENDANTS

155. Members of the Financial Plan Subclass hereby reallege and incorporate by reference all paragraphs previously alleged herein. Pursuant to Minnesota's Private Attorney General Act, Minn. Stat. § 8.31, Members of the Financial Plan Subclass assert this cause of action against each and every Defendant on behalf of themselves and the Financial Plan Subclass for violations of Minnesota's Consumer Fraud Act, Minn. Stat. §§ 325F.68 et seq.

156. The financial plans advertised, marketed, and sold by Defendants are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

157. Each and every Defendant is a "person" within the meaning of Minn. Stat. § 325F.68(3).

158. Defendants advertised, marketed, and offered for "sale" their financial plans within the meaning of Minn. Stat. § 325F.68(4).

159. Defendants have violated Minn. Stat. § 325F.69(1) by using and employing misrepresentation, misleading statements, and/or deceptive practices in connection with the sale of their financial plans.

160. As set forth herein, Defendants' acts, practices, representations, statements, omissions, and courses of conduct with respect to the sale of financial plans violate Minnesota's Consumer Fraud Act in that, among other things:

(a) Defendants misrepresented, and continue to misrepresent, that they provide personalized, objective financial advice and recommendations;

(b) Defendants misrepresented, and continue to misrepresent, that their financial advice and recommendations are intended exclusively to promote clients' best interests;

(c) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal, conflicts of interest, including that their financial advice and recommendations are designed to generate fees and sales commissions and increase assets under Defendants' management;

(d) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal that their financial advice and recommendations are intended to induce clients to purchase the Proprietary and Shelf Space Funds;

(e) Defendants' advertisements and marketing practices fail to disclose, inadequately disclose, and/or conceal material information; and

(f) Defendants' advertising and marketing practices were and are likely to mislead, deceive, and/or damage consumers.

161. As a direct and proximate result of Defendants' misrepresentations, misleading statements, and/or deceptive practices, in violation of Minnesota's Consumer Fraud Act, Plaintiffs and the Financial Plan Subclass have been injured and suffered harm in that, among other things, Plaintiffs and the Financial Plan Subclass have purchased Defendants' financial plans when they otherwise would not have and/or Plaintiffs and the Financial Plan Subclass have paid more for the financial plans than they otherwise would have.

162. Pursuant to Minn. Stat. § 8.31, Plaintiffs and the Financial Plan Subclass are entitled to damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, and equitable relief.

## COUNT X

## FOR VIOLATIONS OF THE MINNESOTA FALSE ADVERTISEMENT ACT MINN. STAT. § 325F.67, ON BEHALF OF THE FINANCIAL PLAN SUBCLASS AGAINST ALL DEFENDANTS

163. Members of the Financial Plan Subclass hereby reallege and incorporate by reference all paragraphs previously alleged herein. Pursuant to Minnesota's Private Attorney General Act, Minn. Stat. § 8.31, Members of the Financial Plan Subclass assert this cause of action against each and every Defendant on behalf of themselves and the Financial Plan Subclass for violations of Minnesota's False Advertisement Act, Minn. Stat. § 325F.67.

164. Defendants have violated Minn. Stat. § 325F.67 by making, publishing, disseminating, circulating, and/or placing before the public, including in Minnesota, advertisements regarding their financial plans, which contain material assertions, representations, and/or statements of fact, which are untrue, deceptive, and/or misleading.

165. As set forth herein, Defendants' acts, practices, representations, statements, omissions, and courses of conduct with respect to the sale of financial plans violate Minnesota's False Advertising Act in that, among other things:

(a) Defendants misrepresented, and continue to misrepresent, that they provide personalized, objective financial advice and recommendations;

(b) Defendants misrepresented, and continue to misrepresent, that their financial advice and recommendations are intended exclusively to promote clients' best interests;

(c) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal, conflicts of interest, including that their financial advice and recommendations are designed to generate fees and sales commissions and increase assets under Defendants' management;

(d) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal that their financial advice and recommendations are intended to induce clients to purchase Defendants' financial products (*i.e.* Proprietary and Shelf Space Funds);

(e) Defendants' advertisements and marketing practices fail to disclose, inadequately disclose, and/or conceal material information; and

(f) Defendants' advertising and marketing practices were and are likely to mislead, deceive, and/or damage consumers.

166. As a direct and proximate result of Defendants' misrepresentations, misleading statements, and/or deceptive practices, in violation of Minnesota's False Advertising Act, Plaintiffs and the Financial Plan Subclass have been injured and suffered harm in that, among other things, Plaintiffs and the Financial Plan Subclass have purchased Defendants' financial plans when they otherwise would not have and/or Plaintiffs and the Financial Plan Subclass have paid more for the financial plans than they otherwise would have.

167. Pursuant to Minn. Stat. § 8.31, Plaintiffs and the Financial Plan Subclass are entitled to damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, and equitable relief.

## COUNT XI

## FOR VIOLATIONS OF THE MINNESOTA UNLAWFUL TRADE PRACTICES ACT MINN. STAT. §§ 325D.09 et seq., ON BEHALF OF THE FINANCIAL PLAN SUBCLASS AGAINST ALL DEFENDANTS

168. Members of the Financial Plan Subclass hereby reallege and incorporate by reference all paragraphs previously alleged herein. Members of the Financial Plan Subclass assert this cause of action against each and every Defendant on behalf of themselves and the

Financial Plan Subclass for violations of Minnesota's Unlawful Trade Practices Act, Minn. Stat. §§ 325D.09 et seq.

169. Each and every Defendant is a "person" within the meaning of Minn. Stat. § 325D.10(a).

170. Defendants advertised and offered for "sale" their financial plans within the meaning of Minn. Stat. § 325D.10(c).

171. Defendants have violated, and continue to violate, Minn. Stat. § 325D.13 by knowingly misrepresenting the true quality of their financial plans in connection with the sale of the financial plans.

172. As set forth herein, Defendants' acts, practices, representations, statements, omissions, and courses of conduct with respect to the sale of financial plans violate Minnesota's Unlawful Trade Practices Act in that, among other things:

(a) Defendants misrepresented, and continue to misrepresent, that they provide personalized, objective financial advice and recommendations;

(b) Defendants misrepresented, and continue to misrepresent, that their financial advice and recommendations are intended exclusively to promote clients' best interests;

(c) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal, conflicts of interest, including that their financial advice and recommendations are designed to generate fees and sales commissions and increase assets under Defendants' management;

(d) Defendants inadequately disclosed and/or concealed, and continue to inadequately disclose and/or conceal that their financial advice and recommendations are

intended to induce clients to purchase Defendants' financial products (*i.e.* Proprietary and Shelf Space Funds);

(e) Defendants' advertisements and marketing practices fail to disclose, inadequately disclose, and/or conceal material information; and

(f) Defendants' advertising and marketing practices were and are likely to mislead, deceive, and/or damage consumers.

173. As a direct and proximate result of Defendants' misrepresentations, misleading statements, and/or deceptive practices, in violation of Minnesota's Unlawful Trade Practices Act, Plaintiffs and the Financial Plan Subclass have been injured and suffered harm in that, among other things, Plaintiffs and the Financial Plan Subclass have purchased Defendants' financial plans when they otherwise would not have and/or Plaintiffs and the Financial Plan Subclass have paid more for the financial plans than they otherwise would have.

174. Pursuant to Minn. Stat. § 325D.15, Plaintiffs and the Financial Plan Subclass are entitled to injunctive relief and actual damages.

## COUNT XII

## FOR BREACH OF FIDUCIARY DUTY ON BEHALF OF THE FINANCIAL PLAN SUBCLASS AGAINST ALL DEFENDANTS

175. Members of the Financial Plan Subclass hereby reallege and incorporate by reference all paragraphs previously alleged herein. Members of the Financial Plan Subclass assert this cause of action against each and every Defendant on behalf of themselves and the Financial Plan Subclass for breach of fiduciary duty.

176. As financial advisers, the Defendants were fiduciaries to the members of the Financial Plan Subclass and were required to act with the highest obligations of good faith, loyalty, fair dealing, due care, and candor.

177. As set forth above, the Defendants breached their fiduciary duties to members of the Financial Plan Subclass.

178. Members of the Financial Plan Subclass have been injured as a direct, proximate, and foreseeable result of such breach on the part of the Defendants and have suffered substantial damages.

179. Because the Defendants acted with reckless and willful disregard for the rights of members of the Financial Plan Subclass, the Defendants are liable for punitive damages in an amount to be determined by the jury.

**VIOLATIONS OF THE INVESTMENT ADVISERS ACT**

**COUNT XIII**

**AGAINST AMERICAN EXPRESS ADVISORS ON BEHALF OF THE FINANCIAL PLAN SUBCLASS**

**15 U.S.C. § 80b-6**

180. The members of the Financial Plan Subclass repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein except for claims brought pursuant to the Securities Act.

181. Section 206 of the Investment Advisers Act (15 U.S.C. § 80b-6) (the "IAA") provides in relevant part:

> It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality or interstate commerce, directly or indirectly:
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;

* * *

(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.

182. The IAA reflects a Congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser – consciously or subconsciously – to render advice which was disinterested. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963). As a registered financial advisor, American Express Advisors (and its agents) is bound by a fiduciary duty to each financial client who purchased financial services from the company. Plaintiffs allege that American Express Advisors was *bound* by that fiduciary duty on a class-wide basis and *breached* that duty on a class-wide basis.

183. Pursuant to the Advisers Act, American Express Advisors and its agents were bound by a legally imposed fiduciary duty to act in the best interest of their clients. American Express Advisors owed Plaintiffs and the members of the Financial Plan Subclass a duty to act with reasonable care in training and supervising its agents, and to ensure that full, honest, and adequate disclosure was made to each client.

184. Instead, American Express Advisors breached its duty to failing to disclose material information to its fee-payment clients and operated sales programs that contaminated the entire financial advice process. By this conduct, American Express Advisors affirmatively breached its duties and conducted its business in a manner that operated as a fraud and deceit upon its investment advisor customers.

185. As a result of Defendant's breaches, Plaintiffs and the members of the Financial Plan Subclass, who were the subject to this scheme, were damaged and are entitled to rescission of their investment advisory contracts and entitled to recover all fees paid in connection with their purchases pursuant to such contracts.

## COUNT XIV

## AGAINST AEFA UNDER § 215 OF THE INVESTMENT ADVISERS ACT FOR VIOLATIONS OF § 206 OF THE INVESTMENT ADVISERS ACT ON BEHALF OF THE MUTUAL FUND SUBCLASS

186. Plaintiffs and the Mutual Fund Subclass repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein, except for claims brought pursuant to the Investment Advisers Act.

187. This Count is based upon § 215 of the IAA, 15 U.S.C. § 80b-5.

188. American Express Advisors served as an "investment adviser" to Plaintiffs and the other members of the Mutual Fund Subclass pursuant to the Investment Advisers Act.

189. As fiduciaries pursuant to the Investment Advisers Act, American Express Advisors was required to serve Plaintiffs and the other members of the Mutual Fund Subclass in a manner in accordance with the federal fiduciary standards set forth in § 206 of the IAA, 15 U.S.C. § 80b-6, governing the conduct of investment advisers.

190. During the Class Period, American Express Advisors, through its agents, breached its fiduciary duties to Plaintiffs and the other members of the Mutual Fund Subclass by engaging in a deceptive contrivance, scheme, practice and course of conduct pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices and courses of business which operated ass a fraud upon Plaintiff and other members of the Mutual Fund Subclass. As detailed above, American Express Advisors advisors failed to disclose that they were motivated to steer client to Proprietary and Shelf Space products and that, therefore their advise was not unbiased and objective as claimed. The purpose and effect of said scheme, practice and course of conduct was to enrich defendants at the expense of Plaintiffs and other members of the Mutual Fund Subclass. American Express Advisors, through its agents, breached its fiduciary duties owed to Plaintiffs and the other members of the Mutual Fund Subclass by engaging in the

aforesaid transactions, practices and courses of business knowingly or recklessly so as to constitute a deceit and fraud upon Plaintiffs and other members of the Mutual Fund Subclass.

191. American Express Advisors is liable as a direct participant in the wrong complained of herein. American Express Advisors, because of its position of authority and control over American Express Advisors, was able to and did control the conduct of American Express Advisors.

192. American Express Advisors had a duty to (1) disseminate accurate and truthful information with respect to the services provided by the American Express Advisors; and (2) truthfully and uniformly act in accordance with their stated policies and fiduciary responsibilities to Plaintiffs and the other members of the Mutual Fund Subclass. American Express Advisors participated in the wrongdoing complained of herein in order to prevent Plaintiffs and other members of the Mutual Fund Subclass from knowing of American Express Advisors' breaches of fiduciary duties including the charging of fees for supposedly unbiased financial advise that was not in fact unbiased but rather, designed to steer clients to Proprietary and Shelf Space products.

193. As a result of American Express Advisors' multiple breaches of their fiduciary duties owned to Plaintiffs and other members of the Mutual Fund Subclass, Plaintiff and other members of the Mutual Fund Subclass were damaged.

194. Plaintiff and other members of the Mutual Fund Subclass are entitled to rescind their investment advisory contracts with the Investment Adviser Defendants and recover all fees paid in connection with such contracts.

## COUNT XV

## RESTITUTION, DISGORGEMENT AND CONSTRUCTIVE TRUST RESULTING FROM DEFENDANTS' UNJUST ENRICHMENT AGAINST ALL DEFENDANTS ON BEHALF OF THE CLASS

195. Plaintiffs and the Class repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein, except for claims brought pursuant to the Securities Act.

196. Defendants have encouraged Plaintiffs and the Class to purchase shares in the Proprietary and Shelf Space Funds based on Defendants' own bad faith, conflicts of interest and personal interests, rather than in furtherance of their fiduciary duties owed to Plaintiffs and the Class. By receiving and retaining the retention kickbacks, Defendants have unjustly profited from their conflicts of interest and breach of fiduciary duties to Plaintiffs and the Class. Defendants may not in good conscience and equity retain the benefits from their wrongful conduct. Those profits rightfully belong to Plaintiffs and the Class.

197. The economic benefit of the retention kickback are the direct and proximate result of Defendants' unlawful practices.

198. Plaintiffs and the Class have conferred upon Defendants an economic benefit derived by Defendants rightfully belong to Plaintiffs and the Class.

199. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable monies received by them.

200. A constructive trust should be imposed upon all unlawful or inequitable monies received by Defendants traceable to their wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A. Determining that this action is a proper class action and appointing Plaintiffs as lead plaintiff and their counsel as lead counsel for the Class and certifying them as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiffs and the other members of the Class, at their option, rescission of their contracts with American Express, including recovery of all fees which would otherwise apply, and recovery of all fees paid to American Express;

D. Ordering, at the Class Members' option, restitution of all unlawfully or discriminatorily obtained fees and charges;

E. Awarding such other and further relief as this Court may deem just and proper, including any extraordinary equitable and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict the defendants' assets to assure that Plaintiffs and the Class have an effective remedy;

F. Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G. Such other and further relief as the Court may deem just and proper.

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
(410) 986-0036

***Additional Counsel for Plaintiffs***

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: September 29, 2005

Respectfully submitted,

**MILBERG WEISS BERSHAD & SCHULMAN LLP**

By: Kim E. Miller
Steven G. Schulman (SS-2561)
Jerome M. Congress (JC-2060)
Janine L. Pollack (JP-0178)
Kim E. Miller (KM-6996)
Michael R. Reese (MR-3183)
One Pennsylvania Plaza
New York, New York 10119-0165
(212) 594-5300

***Plaintiffs' Coordinating and Co-Lead Counsel***

**GIRARD GIBBS & De BARTOLOMEO LLP**
Daniel C. Girard
Jonathan K. Levine (JL-8390)
Aaron M. Sheanin
601 California Street, Suite 1400
San Francisco, California 94108
(415) 981-4800

***Plaintiffs' Co-Lead Counsel***

**STULL, STULL & BRODY**
Jules Brody
Mark Levine
6 East 45th Street
New York , New York 10017
(212) 687-7230

***Plaintiffs' Co-Lead Counsel***

# EXHIBIT A

**Exhibit A**

**AMERICAN EXPRESS SHELF SPACE FUND FAMILIES**

American Express
Putnam Investments
Oppenheimer Funds
Strong Funds
Columbia Funds
AIM Investments
MFS Investment Management
Van Kampen Investments
Evergreen Investments
American Century
Fidelity Investments
Wells Fargo Funds
INVESCO Funds (merged distributors with AIM Investments)