A. Certifying this matter as a Class Action under Rule 23 of the Federal Rules of Civil Procedure and appointing Named Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel;

B. Awarding the Class rescission of their contracts with AEFA, including recovery of all fees which would otherwise apply, and recovery of all fees paid to AEFA;

C. Awarding such other and further relief as this Court may deem just and proper, including any extraordinary equitable and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict the Defendant's assets to assure that Plaintiffs and the Class have an effective remedy; and

D. Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: August 2, 2005

**ZIMMERMAN REED, P.L.L.P.**

Barry G. Reed, AZ Bar No. 020906
Hart L. Robinovitch, AZ Bar No. 020910
14646 N. Kierland Boulevard, Suite 145
Scottsdale, AZ 85254
Telephone: 480.348.6400
Facsimile: 480.348.6415
Email: bgr@zimmreed.com
Email: hlr@zimmreed.com

**ZIMMERMAN REED, P.L.L.P.**
Timothy J. Becker *(Pro Hac Vice)*
Carolyn G. Anderson *(Pro Hac Vice)*
Anne T. Regan *(Pro Hac Vice)*
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402
Telephone: 612.341.0400
Facsimile: 612.341.0844
Email: tjb@zimmreed.com
Email: cga@zimmreed.com
Email: atr@zimmreed.com

**LOCKRIDGE GRINDAL NAUEN, P.L.L.P.**
Richard A. Lockridge (*Pro Hac Vice*)
Gregg M. Fishbein (*Pro Hac Vice*)
Mary E. Briedé (*Pro Hac Vice*)
100 Washington Avenue South,
Suite 2200
Minneapolis, Minnesota 55401
Telephone: 612.339.6900
Email: ralockridge@locklaw.com
Email: gmfishbein@locklaw.com
Email: mebriede@locklaw.com

Attorneys for the Plaintiffs and the Class

STATE OF NEW HAMPSHIRE
DEPARTMENT OF STATE
BUREAU OF SECURITIES REGULATION

| | |
|---|---|
| In the Matter of:<br><br>AMERICAN EXPRESS FINANCIAL ADVISORS INC. | INV04-122 |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into by and between the State of New Hampshire, Department of State, Bureau of Securities Regulation (the "Bureau") and American Express Financial Advisors Inc. ("AEFA"), a company incorporated in the State of Delaware with its principal place of business in Minnesota (collectively, the "Parties"). For purposes of settling the above-referenced matter and in lieu of further administrative proceedings, AEFA has submitted an offer of settlement, which the Bureau has determined to accept. Accordingly, without admitting or denying the Statement of Facts, Statement of Law, or any other allegations herein, Respondent does hereby consent to the entry of this Consent Agreement as set forth below:

A. Statement of Facts.

1. AEFA is an Investment Adviser firm with offices throughout the state of New Hampshire. AEFA is a federally covered investment adviser and is subject to registration and general regulatory oversight by the Securities and Exchange Commission, as AEFA manages assets in excess of 25 million dollars.
2. AEFA is a broker-dealer licensed by the state of New Hampshire as a person engaged in the business of effecting transactions in securities for the account of others. Additionally AEFA provides proper notice filings and the required fee to the State of New Hampshire to be a federally covered adviser.
3. Certain employees and franchisees of AEFA are licensed with the New Hampshire Bureau of Securities Regulation as broker-dealer agents as they effect or attempt to effect the purchase or sale of securities in the accounts of others. In addition, the majority of AEFA broker-dealer agents in New Hampshire are also state-registered investment adviser agents. As investment adviser agents these employees and franchisees were bound under state law by a fiduciary duty to act

in the best interest of their clients when providing investment advice and when executing recommendations as an adviser.

4. As a federally covered investment adviser, AEFA files annually the standard form ADV, Parts 1A and 1B, along with pertinent attachments, with the Securities and Exchange Commission as mandated by federal law. This is done through the CRD/IARD System administered by the NASD.
5. On February 17, 2005, the Bureau commenced an action against AEFA by filing a Staff Petition for Relief (the "Petition") with the Secretary of State ("Secretary"), alleging that AEFA violated several provisions of the New Hampshire Uniform Securities Act (the "Securities Act"). The Secretary responded to the Bureau's Petition by issuing an order to Show Cause ordering, *inter alia*, that AEFA Cease and Desist certain practices set forth therein. On April 14, 2005, the Secretary amended the Petition, and on May 19, 2005, AEFA filed an answer denying all material claims of the Petition.
6. The Bureau's Petition alleges, *inter alia*, that AEFA failed to disclose to fee-paying New Hampshire financial planning clients the conflicts of interests that permeated the investment advisor relationship, including revenue sharing and directed brokerage arrangements with certain Select and Preferred non-proprietary mutual funds and enhanced compensation for the sale of American Express proprietary mutual funds (defined as mutual funds that American Express Financial Advisors, Inc. and its affiliates establish, market and manage on behalf of their clients). The Bureau also alleges AEFA's relationship with New Hampshire financial planning clients was conflicted in that AEFA agents, acting as both investment adviser representative and broker-dealer agents, operated in a system in which they were pressured to sell and were rewarded when they sold American Express proprietary mutual funds. The Bureau alleges that this conduct constituted a scheme to defraud fee-paying New Hampshire advisory clients in that investment advice rendered was in many instances not in the best interest of the client but instead was tailored toward what would make the most profit for AEFA.
7. In the course of the Bureau's further investigations, the Bureau discovered that AEFA agents in New Hampshire were using model portfolios developed by an employee-agent located at AEFA's Bedford office. The model portfolios, which were developed in May 2002 and in use until the filing of the Petition, consisted only of American Express proprietary mutual funds. The models were created and implemented without adequate oversight or supervision, without due diligence, and without adequate testing and tracking. These models were used by AEFA agents to populate American Express financial plans with American Express mutual funds without due regard to the best interests of the client.
8. On March 18, 2005, AEFA filed a Notice to Remove the Petition, pursuant to 28 U.S.C. § 1441, to the United States District Court for the District of New Hampshire on the basis that the Petition raised issues governed exclusively by federal law, and in particular that federal securities laws govern the scope of the fiduciary duties owed by federal investment advisers to customers, including the form and content of any disclosures made to such customers.

9. On April 14, 2005, the Bureau filed a Motion to Remand the Petition with the Court. On April 28, 2005, AEFA opposed the Motion to Remand. On June 9, 2005, the Bureau and AEFA filed a Joint Motion to Stay a decision on the Motion to Remand.

B. Statement of Law.

1. Respondent and its advisors are persons within the meaning of RSA 421-B:2, XVI.
2. Respondent is a broker-dealer within the meaning of RSA 421-B:2, III.
3. Respondent is a federally covered investment adviser pursuant to RSA 421-B:7, I-b.
4. The mutual funds that were recommended and sold by AEFA and that are the subject of the Bureau's investigation are securities as defined by RSA 421-B:2.
5. Pursuant to RSA 421-B:3, it is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly: I. To employ any device, scheme, or artifice to defraud; II. To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person; or III. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading. Respondent violated this section by failing to disclose material conflicts of interest to the thousands of New Hampshire residents who purchased financial plans as well as the proprietary, Select and Preferred mutual fund products offered for sale by the Respondent. The Respondent failed to disclose that its New Hampshire advisors were trained and pressured to recommend predominantly American Express products and that they were operating in a sales culture which measured their performance based on the sale of proprietary products over nonproprietary products. These acts, practices, and course of business comprised a device, scheme, or artifice to defraud New Hampshire investors.
6. Pursuant to RSA 421-B:4, I, it is unlawful for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale whether through the issuance of analyses or reports or otherwise: (a) To employ any device, scheme, or artifice to defraud another person; or (b) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person. The Respondent violated this section by engaging in acts, practices, or course of business of its investment advisory business whereby the Respondent trained and pressured its New Hampshire advisors to predominantly recommend American Express mutual fund proprietary products over other non-proprietary mutual fund products, and that the advisors were operating in a sales culture which measured and rewarded their performance based on the sale of American Express mutual funds. The Respondent thereby employed a device, scheme, or artifice to defraud, and or these acts practices, or course of business operated and would operate as a fraud or deceit upon New Hampshire investors who purchased the AEFA financial plans during the relevant time period with the expectation that

they were written with untainted and objective investment advice, but which were completely or predominantly populated with American Express proprietary mutual fund product purchase recommendations.

7. RSA 421-B:10, I(a) and (b)(2) authorizes the secretary of state to deny, suspend, or revoke any license or application if he finds that it is in the public interest and that the broker-dealer or investment adviser has willfully violated or failed to comply with any provision of RSA 421-B, or the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Adviser Act of 1940 or any rule under any of such statutes. The Respondent is subject to this provision.
8. RSA 421-B:10, I(a) and (b)(7) allows the secretary of state to deny, suspend, or revoke any license or application if he finds that it is in the public interest and that the broker-dealer or investment adviser has engaged in dishonest or unethical practices in the securities business. The Respondent is subject to this provision.
9. RSA 421-B:10, I(a) and (b)(14) allows the secretary of state to deny, suspend, or revoke any license or application of a broker-dealer or investment adviser if he finds that it is in the public interest and that there is other good cause shown. The Respondent is subject to this provision.
10. RSA 421-B:10, III, provides that the secretary of state may issue an order requiring the persons to whom any license has been granted to show cause why the license should not be revoked. The Respondent is subject to this provision.
11. RSA 421-B:10, VI provides that the secretary of state, may upon hearing, assess an administrative fine of not more than $2,500 per violation, in lieu of or in addition to, an order to revoke or suspend any license or application. The Respondent is subject to an administrative fine under this section for each mutual fund recommendation and transaction which was made without full, fair, and accurate disclosure.
12. Pursuant to RSA 421-B:23, whenever it appears to the secretary of state that any person has engaged or is about to engage in any act or practice constituting a violation of this chapter or any rule under this chapter, he shall have the power to issue and cause to be served upon such person an order requiring the person to cease and desist from violations of this chapter. The Respondent is subject to this section.
13. Pursuant to RSA 421-B:26, III, any person who, either knowingly or negligently, violates any provisions of this chapter may, upon hearing, and in addition to any other penalty provided for by law, be subject to such suspension, revocation or denial of any registration or license, or an administrative fine not to exceed $2,500, or both. Each of the acts specified shall constitute a separate violation. The Respondent is subject to a suspension, revocation, or denial, and a fine.
14. Pursuant to RSA 421-B:26, III-a, every person who directly or indirectly controls a person liable under paragraph III, every principal executive officer, or director of such person, every person occupying a similar status or performing a similar function, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the acts or transactions constituting the violation either knowingly or negligently, may, upon hearing, and in addition to any other penalty provided by law, be subject to such suspension, revocation, or denial of any

registration or license, or administrative fine not to exceed $2,500, or both. Each of the acts specified shall constitute a separate violation, and such administrative action or fine may be imposed in addition to any criminal penalties imposed pursuant to RSA 421-B:24 or civil liabilities imposed pursuant to RSA 421-B:25. The Respondent is subject to this section.

15. Pursuant to RSA 421-B:26,V, after notice and hearing, the Secretary of State may enter an order of rescission, restitution, or disgorgement directed to a person who has violated RSA 421-B. The Respondent is subject to this section.

C. Terms of Settlement.

AEFA and the Bureau agree as follows:

1. Respondent agrees that it has voluntarily consented to the entry of this Agreement and represents and avers that no employee or representative of the Bureau has made any promise, representation or threat to induce its execution;
2. Respondent agrees to waive its right to any administrative or court hearing and any appeal therein under this chapter or otherwise;
3. AEFA shall pay to the Bureau the sum of five million dollars ($5,000,000) in fines and penalties. This payment shall be due within sixty days of the final execution of this Agreement and shall be paid by United States postal money order, certified check, bank cashier's check, or bank money order or wire transfer to the State of New Hampshire and, if in paper form, hand-delivered or mailed to the Bureau of Securities Regulation, Department of State, State House, Room 204, Concord, New Hampshire, 03301;
4. AEFA shall retain at its own expense and with the approval of the Bureau. which shall not be unreasonably withheld, within sixty (60) days from the date of the execution of this agreement, an Independent Assessment and Distribution Consultant ("the Consultant"). The Consultant shall undertake a review of the practices and procedures of all AEFA offices located in New Hampshire. In particular, the Consultant shall review practices related to the recommendation and sale of proprietary mutual funds, the use and oversight of model portfolios, and the training requirements referenced in Section C, paragraph 10 of this Agreement to insure their reasonable compliance with federal and state securities laws, NASD rules, AEFA's compliance, supervisory and procedures requirements, and the terms of this Agreement. In addition, the Consultant shall determine the amount of restitution to be paid by the Respondent for the investment plan fees paid by customers serviced by New Hampshire advisors between January 1, 1999 and March 31, 2003, who purchased an initial financial plan during this time period, and who were advised in their financial plans to purchase more than 50% American Express proprietary mutual funds. The Consultant shall make written findings and recommendations to the Bureau as to the practices and procedures of AEFA's New Hampshire offices and the amount of restitution within one hundred eighty (180) days from the date of retention. Also, within one hundred eighty (180) days from the date of retention, the Consultant shall make written recommendations as to a plan for distribution of said restitution to New Hampshire customers. Distributions to clients who cannot

be located shall be addressed in the Consultant's plan. The Consultant shall contemporaneously provide a copy of all written reports to the Bureau and AEFA;

5. With regard to the use of AEFA's proprietary mutual fund model portfolios, the Consultant shall determine the amount of restitution to be paid by the Respondent for the investment plan fees paid by customers serviced by New Hampshire advisors between April 1, 2003 and February 17, 2005, who purchased an initial financial plan during this time period, and who were advised in their financial plans to purchase more than 50% American Express proprietary mutual funds. The Consultant shall make written findings and recommendations to the Bureau as to the amount of restitution within one hundred eighty (180) days from the date of retention. Also, within one hundred eighty (180) days from the date of retention, the Consultant shall make written recommendations as to a plan for distribution of said restitution to New Hampshire customers. Distributions to clients who cannot be located shall be addressed in the Consultant's plan. The Consultant shall contemporaneously provide a copy of all written reports to the Bureau and AEFA;
6. Within thirty (30) days of the Bureau's written approval of the Consultant's plan, which shall not be unreasonably withheld, AEFA shall distribute the restitution payments described in paragraphs four and five of this section to such clients. Any communication to AEFA clients related to the restitution shall be subject to review and approval by the Bureau. In the event that the Bureau disagrees with either the amount of restitution or with the proposed plan of distribution, AEFA shall make modifications to address the Bureau's concerns;
7. The restitution obligations set forth in paragraph 6 shall not exceed $2 million. If the $2 million is exceeded, the clients so identified shall receive a pro rata portion of their financial planning fees as restitution.
8. Within one hundred twenty (120) days of the Bureau's written approval of the Consultant's report of findings and recommendations regarding the Consultant's review of practices and procedures of all AEFA offices located in New Hampshire, which approval shall not be unreasonably withheld, AEFA shall implement the recommendations of the Consultant's report. In the event that the Bureau disagrees with the findings or recommendations of the Consultant's report, AEFA shall make reasonable modifications to address the Bureau's concerns;
9. AEFA shall pay to the Bureau the total sum of $375,000 for all costs associated with the Bureau's Investigation. Payment shall be made within thirty days of the final execution of this Agreement by United States postal money order, certified check, bank cashier's check, or bank money order or wire transfer to the State of New Hampshire and if in paper form, hand-delivered or mailed to the Bureau of Securities Regulation, Department of State, State House, Room 204, Concord, New Hampshire, 03301;
10. Respondent agrees that it will require all advisors in the New Hampshire market group to certify completion of AEFA's Mutual Fund Selection training module ("Training Module") within 60 days of this Settlement Agreement and that any such training shall explicitly emphasize and reinforce that client suitability and individual investment objectives must be the priority in mutual fund selection.

The Training Module shall be subject to review and approval by the Bureau prior to implementation of any such training;

11. Respondent agrees that within 30 days of the execution of the Settlement Agreement it will insure that compliance and supervisory procedures materials are distributed to all New Hampshire advisors, supervisors, and field leaders which explicitly state that individual suitability factors must be the priority when recommending mutual funds and whenever model portfolios are presented or used by advisors;
12. Respondent agrees that within 30 days of settlement it will insure that compliance and supervisory procedure materials are distributed to all New Hampshire advisors, supervisors, and field leaders that explicitly state all non-cash compensation, whether direct or indirect, shall be equally weighted between proprietary and non-proprietary mutual funds in accordance with NASD rules. In any instance in which additional cash and/or non-cash compensation, whether direct or indirect, is made available for the sale of proprietary mutual funds in accordance with NASD rules, Respondent agrees that such compensation shall be prominently disclosed;
13. Respondent agrees that its Marketing Group 222 shall be subject to special supervision by AEFA supervisory and Compliance Department personnel. Such special supervision shall not be conducted by the Marketing Group's Group Vice President or persons reporting to him. AEFA shall maintain a system of such special supervision for a period of one year with particular focus on any training, e-mail and other correspondence, and sales contests originating from the Group Vice President of Marketing Group 222. Within 90 days of the end of the period of special supervision, AEFA shall provide a written report to the Bureau detailing the special supervisory procedures implemented during the period of special supervision and any issues which arose and/or were addressed during this period;
14. AEFA shall cease and desist from further violations of the New Hampshire Uniform Securities Law of which AEFA neither admits nor denies;
15. The scope of the Bureau's allegations is from January 1, 1999 through March 31, 2003 for the allegations relating to the facts in paragraph six Section A and from April 1, 2003 through February 17, 2005 for the allegations relating to the facts in paragraph seven of Section A. AEFA acknowledges that this Settlement Agreement is entered into only with respect to the timeframe running from January 1, 1999-February 17, 2005 and only with respect to the actions of which the Bureau has actual knowledge, and the Bureau agrees that no action. investigation or proceeding will be taken or initiated by the Bureau against AEFA or its parent corporations, subsidiaries, or affiliates, or any of its employees or independent contractors or advisers with respect to the matters contained herein. Notwithstanding the preceding, this agreement shall not be construed to restrict the Bureau's right to initiate any action, investigation or proceeding relative to conduct by AEFA, or any other party, with respect to matters unrelated to those set forth herein or about which the Bureau does not have actual knowledge;
16. Nothing in this agreement shall preclude any former or current AEFA financial planning client from taking any other action, civil or otherwise, against AEFA;

and

17. The Respondent may not take any action or make or permit to be made any public statement, including in regulatory filings or otherwise, denying, directly or indirectly, any allegation in this consent agreement or creating the impression that the consent agreement is without factual basis. However, nothing in this provision affects the Respondent's testimonial obligations or right to take contrary legal or factual positions in litigation or other legal or regulatory proceedings in which the State of New Hampshire is not a party.

D. Conditions of the Agreement.

In consideration of the mutual terms, covenants and conditions of this Agreement, the Parties hereto agree to settle all disputes and claims between them relating to the Investigation and the Petition on the following terms and conditions:

1. Upon execution by the Parties, the Bureau and AEFA shall file a Joint Motion to Remand with the United States District Court for the District of New Hampshire to remand the Petition to the Secretary of State;
2. The Parties agree that the settlement of this matter upon the terms and conditions set forth herein shall be in full, final, and complete satisfaction of all claims asserted by the Bureau in the Petition;
3. AEFA agrees not to initiate any action, civil or otherwise, against the Bureau based on the administrative action initiated by the Staff Petition for Relief in the Matter of American Express Financial Advisors, Inc., INV04-122 or any issues arising thereunder;
4. AEFA shall bear their own fees, including, but not limited to attorney's fees, costs, and expenses incurred in connection with any of the proceedings pertaining directly or indirectly to this administrative action, except as otherwise expressly provided herein, with respect to the Investigation;
5. AEFA acknowledges that it is, and has been, represented by competent counsel in connection with the negotiation, preparation and execution of this Agreement and that the provisions of this Agreement and the legal effects thereof have been explained to it and that it is entering into this Agreement freely and voluntarily, without coercion, duress, or undue influence;
6. Each Party acknowledges that neither any other party, nor any agent or attorney for any other party, has made any promise, representation or warranty whatsoever not contained herein concerning the subject matter hereof to induce such party to execute this Agreement;
7. This Agreement shall be final and binding;
8. Signatories to this Agreement on behalf of AEFA represent that they have the full power and authority to enter into this Agreement and to perform the obligations set forth herein; and
9. This Agreement shall be binding upon AEFA, its parent corporations, subsidiaries, affiliates, successors, and assigns.

Executed this 12 day of July, 2005.

FOR THE NEW HAMPSHIRE BUREAU OF SECURITIES REGULATION

MARK CONNOLLY

JEFFREY SPILL

BARRY GLENNON

JONAS CUTLER

KEVIN MOQUIN

FOR AMERICAN EXPRESS FINANCIAL ADVISORS INC.

John C. Junek
General Counsel
American Express Financial Advisors, Inc.

STANFORD LAW SCHOOL
SECURITIES CLASS ACTION CLEARINGHOUSE
IN COOPERATION WITH CORNERSTONE RESEARCH

**Company and Case Information**

**IMPORTANT INFORMATION | INDEX OF FILINGS | SEARCH**



**Copyright (c) 2001 Stanford Law School**

## American Express Financial Advisors, Inc. : American Express family of mutual funds

SEARCH CASE COURT FILINGS

**Summary:** According to a press release dated October 24, 2005, Ameriprise Financial has reached a comprehensive settlement regarding the consolidated securities class action lawsuit filed against the company, its former parent and affiliates in October 2004 called, "In re American Express Financial Advisors Securities Litigation." The settlement, under which the company denies any liability, includes a one-time payment of $100 million to the class members. The settlement is subject to court approval. The class members include individuals who purchased mutual funds in the company's Preferred Provider Program, Select Group Program, or any similar revenue sharing program; purchased mutual funds sold under the American Express(R) or AXP(R) brand; or purchased for a fee financial plans or advice from the company between March 10, 1999 and through the date on which a formal stipulation of settlement is signed.

The company's litigation reserve is sufficient to cover the contingent liability for the settlement. The reserve for this litigation was increased by $70 million pretax, $46 million after-tax, at September 30, 2005 from the reserve at June 30, 2005. The impact of this reserve increase is reflected as an expense on the company's statement of operations for the quarter ended September 30, 2005.

The original complaint alleges that defendant violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, and all amendments thereto, by issuing a series of material misrepresentations to American Express Financial Advisors, Inc. (AEFA) clients during the Class Period. Specifically, the complaint alleges that AEFA, through its financial advisors, purported to provide objective investment and financial planning advice based on each client's particular circumstances in life but, in fact, had an undisclosed interest in pushing AEC Funds and certain other preferred funds, which were among the poorest performing mutual funds on the market. The Complaint further alleges that class members were harmed by defendants' fraudulent conduct because they paid AEFA a substantial fee and believed they were receiving objective advice when, in fact, AEFA financial advisors were strongly motivated to and did advise their clients to purchase AEC Funds and certain other preferred funds. The Complaint further alleges that because of such deception and manipulation, AEFA clients were prevented from making fully informed investment decisions and that their trust reposed in their AEFA advisors was violated.

The Funds, and the symbols for the respective Funds, that may be subject to the lawsuit are as follows:

AXACX AXP Blue Chip Advantage Fund IBLUX AXP Blue Chip Advantage Fund IDBCX AXP Blue Chip Advantage Fund IDBYX AXP Bond Fund Inc INBNX AXP Bond Fund Inc ININX AXP Bond Fund Inc ACABX AXP California Tax Exempt Fund ICALX AXP California Tax Exempt Fund IDIBX AXP Discovery Fund Inc IDVYX AXP Discovery Fund Inc INDYX AXP Discovery Fund Inc ADECX AXP DIV EQTY C ACUIX AXP DIVDND OPP C IDEBX AXP Diversified Equity Income Fund IDQYX AXP Diversified Equity Income Fund INDZX AXP Diversified Equity Income Fund AXBCX AXP DIVSFD BD C IDEAX AXP Emerging Markets Fund IEMBX AXP Emerging Markets Fund AESCX AXP Equity Select Fund IDQBX AXP Equity Select Fund IESYX AXP Equity Select Fund INVPX AXP Equity Select Fund IEVAX AXP Equity Value Fund INEGX AXP Equity Value Fund (NASDAQ: AEEBX) AXP European Equity Fund Inc AXEAX AXP European Equity Fund Inc (NASDAQ: APECX) AXP Extra Income Fund Inc IEIBX AXP Extra Income Fund Inc INEAX AXP Extra Income Fund Inc IDFYX AXP Federal Income Fund Inc IFINX AXP Federal Income Fund Inc ISHOX AXP Federal Income Fund Inc AUGAX AXP Federal Income Fund Inc US

Government Mortgage Fund AUGBX AXP Federal Income Fund Inc US Government Mortgage Fund AUGCX AXP Federal Income Fund Inc US Government Mortgage Fund AFAFX AXP Focus Growth Fund AFTBX AXP Focus Growth Fund ACBAX AXP Funds Core Bond Fund INUTX AXP Funds Dividend Opportunity Fund IUTBX AXP Funds Dividend Opportunity Fund AIOAX AXP Funds Income Opportunities Fund AIOBX AXP Funds Income Opportunities Fund ALDAX AXP Funds Limited Duration Bond Fund ALDBX AXP Funds Limited Duration Bond Fund AGBYX AXP Global Balanced Fund IDGAX AXP Global Balanced Fund IGBBX AXP Global Balanced Fund AGBCX AXP Global Bond Fund IGBFX AXP Global Bond Fund IGLOX AXP Global Bond Fund IDGBX AXP Global Equity Fund IDGYX AXP Global Equity Fund IGLGX AXP Global Equity Fund AXIAX AXP Global Technology Fund AXICX AXP Global Technology Fund INVBX AXP Global Technology Fund ABGDX AXP Growth Dimension Fund Inc AXDAX AXP Growth Dimension Fund Inc IGRBX AXP Growth Fund Inc IGRYX AXP Growth Fund Inc INIDX AXP Growth Fund Inc ALVAX AXP Growth Series Inc Large Cap Value Fund ALVBX AXP Growth Series Inc Large Cap Value Fund AXGCX AXP GRTH C AHECX AXP High Yield Tax Exempt Fund IBCYX AXP High Yield Tax Exempt Fund IHYBX AXP High Yield Tax Exempt Fund INHYX AXP High Yield Tax Exempt Fund IINBX AXP Insured Tax Exempt Fund IINSX AXP Insured Tax Exempt Fund INFAX AXP Intermediate Tax Exempt Fund INFBX AXP Intermediate Tax Exempt Fund IDIYX AXP International Fund Inc INIFX AXP International Fund Inc IWWGX AXP International Fund Inc APIBX AXP International Series Inc International Aggressive Growth Fund AMVAX AXP Investment Series Inc Mid Cap Value Fund AMVBX AXP Investment Series Inc Mid Cap Value Fund ALEAX AXP Large Cap Equity Fund ALEBX AXP Large Cap Equity Fund ARQCX AXP Large Cap Equity Fund IDRYX AXP Managed Allocation Fund Inc IMRBX AXP Managed Allocation Fund Inc IMRFX AXP Managed Allocation Fund Inc AMIDX AXP Market Advantage Series Inc Mid Cap Index Fund IDMAX AXP Massachusetts Tax Exempt Fund INMIX AXP Michigan Tax Exempt Fund IDSMX AXP Minnesota Tax Exempt Fund IMNTX AXP Minnesota Tax Exempt Fund IDMBX AXP Mutual Fund Inc IDMYX AXP Mutual Fund Inc INMUX AXP Mutual Fund Inc ANDCX AXP New Dimension Fund Inc AXGDX AXP New Dimension Fund Inc IDNYX AXP New Dimension Fund Inc INDBX AXP New Dimension Fund Inc INNDX AXP New Dimension Fund Inc INYKX AXP New York Tax Exempt Fund IOHIX AXP Ohio Tax Exempt Fund ASGBX AXP PART SMLCP B APIAX AXP PARTNERS A AISCX AXP Partners Funds International Small Cap Fund APNBX AXP Partners Funds International Small Cap Fund AAICX AXP Partners International Series Inc International Core Fund APCBX AXP Partners International Series Inc International Core Fund APICX AXP Partners International Series Inc International Select Value Fund AXGAX AXP Partners International Series Inc International Select Value Fund AXIBX AXP Partners International Series Inc International Select Value Fund AFVCX AXP Partners Series Inc Fundamental Value Fund ACSVX AXP Partners Series Inc Select Value Fund AXVAX AXP Partners Series Inc Select Value Fund AXVBX AXP Partners Series Inc Select Value Fund AXSAX AXP Partners Series Inc Small Cap Core Fund AXSBX AXP Partners Series Inc Small Cap Core Fund AFVBX AXP Partners Series Inc Value Fund AVFBX AXP Partners Series Inc Value Fund AVUCX AXP Partners Series Inc Value Fund APVCX AXP Partners Series Small Cap Value Fund APRCX AXP Partners Small Cap Growth Fund AXSCX AXP Partners Small Cap Growth Fund INPBX AXP Precious Metals Fund Inc INPMX AXP Precious Metals Fund Inc INPRX AXP Progressive Fund Inc IPRBX AXP Progressive Fund Inc AFVAX AXP PRTNRS VL A AVLAX AXP PRTRS VAL A IRDAX AXP Research Opportunities Fund IROBX AXP Research Opportunities Fund ADIDX AXP S&P 500 Index Fund ADIEX AXP S&P 500 Index Fund (NASDAQ: ASLCX) AXP Selective Fund Inc IDEYX AXP Selective Fund Inc INSEX AXP Selective Fund Inc ISEBX AXP Selective Fund Inc ASVAX AXP SM CAP VAL A ASVBX AXP SM CAP VAL B ISCYX AXP Small Companies Index Fund ISIAX AXP Small Companies Index Fund ISIBX AXP Small Companies Index Fund AXFCX AXP ST US GOV C AXMBX AXP State Tax Exempt Massachusetts Fund IDSBX AXP Stock Fund Inc IDSYX AXP Stock Fund Inc INSTX AXP Stock Fund Inc ADVCX AXP Strategy Series Inc Small Cap Advantage Fund (NASDAQ: ASACX) AXP Strategy Service Inc Strategy Aggressive Fund ASAYX AXP Strategy Service Inc Strategy Aggressive Fund INAGX AXP Strategy Service Inc Strategy Aggressive Fund ISAAX AXP Strategy Service Inc Strategy Aggressive Fund INTAX AXP Tax Exempt Bond Fund Inc ITEBX AXP Tax Exempt Bond Fund Inc ASAAX IDS Strategy Fund Inc AXP Small Cap Advantage Fund ASABX IDS Strategy Fund Inc AXP Small Cap Advantage Fund

Note: The action is brought on behalf of AEFA clients who purchased units of AEC mutual funds during the Class Period.

---

INDUSTRY CLASSIFICATION:

**SIC Code:** 6199

**Sector:** Financial