**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF EARL E. AND NANCY LINDSAY PRESENTED TO THE NASD**

---

## Introduction

The Lindsays admit that they are class members who did not opt out of the class settlement and they should therefore be precluded from arbitrating settlement-barred claims before the NASD. The Lindsays admit receiving the Class Notice and choosing to receive the general relief offered in the settlement of this action. Having made this choice, they cannot now raise released claims in an NASD arbitration.

## I. The Lindsays Call the Class-Action Administrator With Questions Regarding the Settlement.

The Lindsays admit receiving the Class Notice but argue that they were instructed by the independent court-appointed administrator ("Class-Action Administrator") to "stay put" and that they blindly followed this advice to their detriment. This argument is belied by the Lindsays' own contemporaneous notes, which indicate that the Class-Action Administrator advised them that they did not need to do anything if they chose the "Gen. Relief Route."[1] (Aff. of Earl and Nancy Lindsay at 7.) Moreover, the Lindsays' notes reflect the advice that "[i]f we have any questions at any time – call this same number." (*Id.*) The Class-Action Administrator's notes similarly contradict the Lindsays' argument, and the call log taken at the time shows that Mr. Lindsay "called to find out what he had to do if he chooses the general relief." (Decl. of Amy Lake dated June 12 2006 ("Supplemental Lake Decl." at ¶ 2.) Most telling of all, the Class-Action Administrator located the recording of Mr. Linday's call regarding the settlement. In that recording, Mr. Lindsay can be heard affirmatively requesting general relief and inquiring what he should do. (Supplemental Lake Decl. at ¶ 3; Ex. B.) On the recording, Mr. Lindsay does not equivocate, express any misunderstanding about the settlement, or seek

---

[1] The Lindsays complain that no one explained to them that if they stayed within the class they would be forfeiting their rights regarding their life-insurance policies and variable annuities. This contention is belied by the Class Notice, which sets forth the text of the Release in full, and which clearly sets forth the effects of remaining within the class. (*See* Ex. A at 1 ("If you do not exclude yourself from the class, the proposed settlement (if approved) may affect your right to start or continue any other lawsuit or proceeding involving your Policy or Annuity.").)

any guidance from the Class-Action Administrator about his legal rights. In accordance with the terms of the settlement, the Lindsays had the choice to take relief under the settlement or opt out. They fully exercised their choice and are bound by the terms of the settlement. *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993).

## II. Ameriprise is not Equitably Estopped from Enforcing the Class-Action Settlement.

Under the terms of the settlement, the Court directed class members who had questions about the settlement to contact the Class-Action Administrator, an entity neither owned nor operated by Ameriprise. The Lindsays argue that the administrator made "misrepresentations" regarding the settlement and Ameriprise is therefore equitably estopped from enforcing the settlement. "A party seeking to invoke the doctrine [of equitable estoppel] must prove that 'defendant made representations or inducements, upon which the plaintiff reasonably relied, and that plaintiff will be harmed if the claim of estoppel is not allowed.'" *Prod. Credit Ass'n of East Cent. Wis. v. Farm Credit Bank of St. Paul*, 781 F. Supp. 595, 604 (D. Minn. 1991) (quoting *N. Petrochemical Co. v. U.S. Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn. 1979) (emphasis added). The Lindsays' equitable-estoppel argument fails both as a matter of fact and law.

First, there is no factual support for a misrepresentation or harm. Indeed, the record establishes that the Lindsays affirmatively called the Class-Action Administrator seeking general relief under the class action settlement and received full disclosure of their legal rights in the class notice and received full and fair assistance from the Class-Action Administrator. (*See* Supplemental Lake Decl.at ¶¶ 2-3; Ex. B.) Simply put, the

representation at issue, i.e., that the Lindsays "do nothing if [they] choose 'Gen. Relief Route,'" is not false or misleading. Furthermore, such a statement cannot be fairly read as directing the Lindsays not to opt out of the settlement. Instead, they were informed, both by way of the class notice and their telephone call to the Class-Action Administrator that they need do nothing if they chose general relief under the settlement. This is confirmed by the records of the Class-Action Administrator, which confirm a true and accurate disclosure. As such, it cannot form the basis of an equitable-estoppel argument against Ameriprise. *TransAmerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn. 1978) (recognizing that misrepresentation is an essential element of an equitable estoppel claim).

Second, any alleged misrepresentations were made by the Class-Action Administrator, which is not affiliated with Ameriprise in any way. Such conduct cannot be attributed to Ameriprise for purposes of equitable estoppel. Ameriprise can therefore enforce the settlement against the Lindsays. *Guinness Import C. v. Mark VII Distribs.*, 971 F. Supp. 401, 412 (D. Minn. 1997) ("'Equitable estoppel is a doctrine designed to prevent a party from taking unconscionable advantage of his <u>own</u> actions.'") (quoting *Bethesda Lutheran Church v. Twin City Constr. Co.*, 356 N.W.2d 344, 349 (Minn. Ct. App. 1984)) (emphasis added).

Under the terms of the settlement, the Class-Action Administrator was not subject to control by Ameriprise and, indeed, was subject to oversight by Plaintiffs' counsel. (*See* Ex. 3 to Def.'s Mem. at § IX.F.1 ("Co-Class Counsel and/or their designee shall be entitled to observe and monitor the performance of the Administrator.").) Co-Class

Counsel had the right (1) to monitor and participate in the Class-Action Administrator's education and training process; (2) to object to the telephone scripts used by the Class-Action Administrator's telephone representatives; and (3) to monitor the Class-Action Administrator in order to ensure the accuracy of its representations. (*Id.* at §§ IX.F.2.a, G.2.a, .b, .c.) Furthermore, the administrator was commanded to "accurately and neutrally describe . . . the provisions of [the Settlement Agreement] in communications with Class Members." (*Id.* at § IX.F.2.a.) The Court and the parties implemented a class-notice process that ensured that class members, like the Lindsays, received fair, neutral, and accurate disclosures. Accordingly, the Lindsays are bound to the terms of the settlement. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) (rejecting equitable-estoppel claim and enforcing class-action bar notwithstanding claim from class member that defendant "told him that he did not have to do anything to opt out of the class action").

**III. Ameriprise Does Not Seek to Bar the Lindsays from Arbitrating Claims Unrelated to the Settlement-Barred Products.**

The Lindsays have proceeded with a "kitchen-sink" pleading and Ameriprise simply seeks to enjoin them from arbitrating or introducing evidence relating to the Claims previously released in this action. Ameriprise does not seek to bar the Lindsays from arbitrating any claims relating to other investment products not at issue in this case. Because the Lindsays have failed to show that claims based on their annuity- and

insurance-based products have not been fully released under the settlement,[2] the Court should enjoin them from using the arbitration to circumvent the terms of the Settlement Agreement and violate the Court's Final Order and Judgment. The Lindsays cannot hide behind the liberal pleading standards available under the NASD Code of Arbitration Procedure to avoid the force and effect of this Court's Order. Accordingly, Ameriprise is entitled to an order barring the Lindsays from arbitrating any claims relating to the insurance policies and annuity investments that were at issue in this class action.[3]

## IV. The Lindsays' State Securities Law Claims Are Barred.

The Lindsays have already released any Virginia Securities Act claims relating to the annuity and insurance products at issue in this case. The Release in the Final Order and Judgment bars the Lindsays from pursuing "any and all past or present Claims and Causes of Action . . . that are based upon, related to, or connected with, directly or indirectly, in whole or in part (a) the allegations, facts or subjects set forth or otherwise raised [in the consolidated class actions]; or (b) the Released Conduct." (Ex. 1 at ¶ 13.A.2.) For purposes of the Settlement Agreement, "Claims or Causes of Action"

---

[2] In light of the liberal pleading standards under the NASD Code of Arbitration Procedure, Ameriprise cannot be tasked with determining the full contours of claims that are pleaded in the most general of terms. Under the Final Order and Judgment, the Court retained jurisdiction to determine whether claims or causes of action averred by class members are barred by the Settlement. (Ex. 1, at ¶ 19(a).) To the extent that the Court is unable to make such a determination on the current state of the record, Ameriprise respectfully requests that the Court conduct an evidentiary hearing or require the parties to engage in appropriate discovery.

[3] Indeed, the Lindsays apparently concede that such an order would be a valid exercise of the Court's authority under the Settlement Agreement. (Pls.' Mem. at 14.)

> means any and all claims for relief (including federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity, any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including claims for rescission, reformation, restitution or all damages of any kind . . . ), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body, . . . tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

(Ex. 1 at ¶ 13.B.1 (emphasis added).)

Pursuant to the Final Order and Judgment, the Lindsays released all claims and causes of action that relate in any way to their purchase of the covered annuities and insurance products. (*Id.* at ¶ 13.B.2.) Hence, the Lindsays released any Virginia-Securities-Act claims that relate to their purchase of annuities and insurance products covered by this settlement.

## V. The Settlement Agreement Expressly Bars the Lindsays From Offering Evidence Regarding Settlement-Barred Claims in the NASD Arbitration.

In their Opposition Memorandum, the Lindsays threaten to introduce evidence of the settlement to the NASD and declare that the Court "has no authority to dictate what evidence the arbitrators are allowed to consider." (Pls.' Mem. at 10.) Leaving aside the question of what the Court can and cannot require of the NASD, there is no doubt that the Court can require class members to abide by its orders. A fundamental part of this Court's Order is to prohibit the Lindsays from improperly introducing evidence of settlement at the NASD arbitration. The Stipulation of Settlement, which was adopted

and incorporated within the Court's Final Order and Judgment expressly prohibits the Lindsays from offering such evidence:

> In no event shall the Agreement, any of its provision or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in these Actions, any other action, or any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Agreement. Without limiting the foregoing, neither this Agreement, nor any related negotiations, statements, or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity . . . ."

(Exhibit 3 at § XVII.P.)

Considering the Lindsays' threat to violate this provision of the Court's Order, the Court should bar the Lindsays from offering into evidence at the arbitration proceeding provisions, negotiations, statements, or court proceedings relating to the Settlement Agreement as evidence, admission, or concession of any liability or wrongdoing whatsoever. The Lindsays may not flout this Court's orders in an attempt to "poison the well" at the arbitration by offering evidence of claims that they voluntarily released.

As the Lindsays themselves concede, the class-action settlement released all claims associated with their purchase of various Ameriprise annuity and insurance products. As Class Members, the Lindsays received the General Relief. By accepting the settlement, the Lindsays promised Ameriprise and the Court that they would not—indeed, they acknowledged that they could not—seek additional relief for released claims. By pursuing such claims before the NASD, the Lindsays are breaking this promise.

## Conclusion

For the reasons set forth above and in its opening Memorandum of Law, Ameriprise respectfully requests that the Court enjoin the Lindsays from proceeding with any arbitration of claims that are barred by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: June 12, 2006

FAEGRE & BENSON LLP

s/ Fiona B. Ruthven

Michael F. Cockson, # 280549
Fiona B. Ruthven, #333761
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

**Attorneys for Defendants IDS Life Insurance Company, American Express Financial Corporation n/k/a Ameriprise Financial Inc., and American Express Financial Advisors, Inc. n/k/a Ameriprise Financial Advisors, Inc.**

M2:20803095.05