# UNIFORM SUBMISSION AGREEMENT

**NASD Dispute Resolution**

In the Matter of the Arbitration Between

Name of Claimant(s)

Dr. G. Allen and Barbara West

06-00952

Name of Respondent(s)

Ameriprise Financial Services
IDS Life Insurance Company

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations and/or NASD Code of Arbitration Procedure of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission

Agreement.

Party(ies) Signature

________________________________

IDS Life Insurance Company

Date: ________________________

LC43A: SUBMISSION AGREEMENT
rc:06/02
CC:

James M. Gary, Esq., Dr. G. Allen and Barbara West
Weber & Rose, 2400 Aegon Center, 400 W. Market St., Louiseville, KY 40202

RECIPIENTS:

David Flower, Ameriprise Financial Services
Ameriprise Financial Services, Corporate Litigation, 50587 AXP Financial Center, Minneapolis, MN 55474

Nicole James, Assistant Manager, IDS Life Insurance Company
IDS Life Insurance Company, 50611 Ameriprise Financial Center, Minneapolis, MN 55474

## NASD ARBITRATION UNIFORM SUBMISSION AGREEMENT

Claimant(s)

**In the Matter of the Arbitration Between**

Name(s) of Claimant(s)
DR. G. ALLEN AND BARBARA WEST

**and**

Name(s) of Respondent(s)
AMERIPRISE FINANCIAL
IDS LIFE INSURANCE COMPANY

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.
2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.
3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.
4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.
5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

G. ALLEN WEST
Claimant Name (please print)

B. Allen West 2/17/06
Claimant's Signature Date

BARBARA WEST
Claimant Name (please print)

Barbara West 2/17/06
Claimant's Signature Date

**If needed, copy this page.**

**NASD DISPUTE RESOLUTION**
**MATTER NO. __________**
**IN THE MATTER OF THE ARBITRATION BETWEEN**

**DR. G. ALLEN AND BARBARA WEST** — **CLAIMANTS**

**V.** **STATEMENT OF CLAIM**

**AMERIPRISE FINANCIAL f/k/a AMERICAN EXPRESS FINANCIAL ADVISORS, INC.** — **RESPONDENT**

**IDS LIFE INSURANCE COMPANY** — **RESPONDENT**

*** *** ***

Dr. G. Allen and Barbara West ( "Wests"), by counsel, for their Statement of Claim against the Respondent, Ameriprise Financial f/k/a American Express Financial Advisors, Inc. ("American Express") and Respondent, IDS Life Insurance Company ( "IDS"), state as follows:

1. The Wests request an expedited hearing in this matter, given their advanced ages and questions concerning their health, as well as the basis of this claim which involves death benefit amounts in a life insurance policy. Dr. West is ninety years old (ninety-one in May 2006) and Mrs. West is eighty years old.

2. The Wests are now and were at all times referenced herein, residents of Louisville, Jefferson County, Kentucky.

3. American Express, is and was at all times referenced herein, a corporation duly organized and with headquarters in the state of Minnesota, and was authorized to conduct business in the Commonwealth of Kentucky. IDS is, and was at all time referenced herein, a corporation owned, controlled and operated by American Express. Steve Pippen was at all times

referenced herein an agent of American Express and IDS.

4. As a member of the NASD the Respondents and their agent Steve Pippen is bound to arbitrate this dispute. Additionally, the Respondents have also contractually bound themselves to arbitrate this dispute.

5. In September of 1998, Steve Pippen, an agent of American Express, met with the Wests and advised them to convert an insurance policy with Aegon Insurance Company, and invest its cash surrender value (and other cash) into a Variable Universal Life Insurance policy, with a represented death benefit of over $ 300,000.00.

6. During that same meeting, the Wests made it clear to Mr. Pippen that they could not afford any significant risks with their investment, in view of their advanced ages and the obvious importance and need of a life insurance policy.

7. During that same meeting, Steve Pippen did not disclose the relationship between American Express and IDS Life Insurance Company. In fact, at no time for any purpose did American Express or IDS disclose its relationship. He represented to the Wests that the life insurance would have a death benefit of well over $ 300,000.00.

8. Based upon Mr. Pippen's representations, the Wests agreed to follow his advice and entrusted their investment future to American Express. An agreement was reached and the Wests began to closely monitor their death benefit under the new variable life insurance policy. For some time, the death benefit remained steady at $ 235,000.00

9. On or about July 26, 2003, the West received an IDS statement showing their death benefit had plummeted to $ 93,000.00. Immediately, on or about July 28, 2003, the Wests contacted Mr. Pippen to confront him on the alarming plummet of their death benefit. Mr.

Pippen admitted he had told them they would receive at least $ 300,000.00 in their death benefit and blamed the plummet on the stock market.

10. On or about October 3, 2003, the Wests met with Mr. Pippen, wherein he promised to increase the death benefit but not to the previous mark of $ 235,000.00 or the amount of $ 300,000.00. From that point, the Wests' death benefit never increased again.

11. From October of 2003 to October of 2004, the Wests attempted to work with American Express to recover some of their original cash value, but American Express refused to assist them. American Express dismissed their claims and advised them, on October 12, 2004, that they were closing their handling of the matter.

12. American Express, through its agent, Steve Pippen, had a duty to the Wests to properly manage and/or invest the Wests' account, specifically that of their death benefit, and breached that duty. American Express, through its agent, Steve Pippen was negligent and grossly negligent in its management and investment of the Wests' account, specifically that of their death benefit. As a direct and proximate result of this mismanagement and negligence, the Wests sustained monetary loss and permanent emotional and mental pain and suffering.

13. American Express, through its agents, had a fiducial duty to the Wests to properly manage and invest the Wests' account, specifically that of their death benefit, and breached that duty of finest loyalty. At no point did Steve Pippen or any other American Express or IDS representative disclose the relationship between American Express and IDS.

14. At no point did American Express or IDS, by and through its agents disclose the conflict of interest that arose as a direct result of their relationship in the Wests' investment strategies.

15. American Express and IDS, through its Agent Steve Pippen and other representatives, committed fraud upon the Wests by not informing them of the relationship between American Express and IDS.

16. The Wests were unfortunate victims of American Express agents, such Steve Pippen, used as sales agents to push high-risk and inappropriate American Express products, such as variable life insurance policies through its sister company, IDS. These sale agents, including Steve Pippen, used boilerplate investment strategy consultations to induce their sales to unsuspecting victims.

17. American Express knew or should have known that the IDS life insurance policy was high-risk to people such as the Wests. Even so, American Express, through its agents, including Steve Pippen, did not inform the Wests of the variable life insurance policy's high-risk, even though the Wests voiced such concerns to its Agent, Mr. Pippen. The Wests made it crystal-clear they were in no position to take risks with their life insurance given their advanced age and health concerns.

18. American Express, through its agents, caused extreme emotional stress on the Wests by refusing to correct their plummeting death benefits amount. Its response to the Wests' concerns was to conduct a quick survey of their claims and then close the matter. Such conduct was heartless, flagrant and outrageous.

19. American Express, through its agent, Steve Pippen, knew or should have known of the West's particular frailties concerning management of their investments, given their age and need for low-risk investment strategy. If it could not tell from their advanced age and appearance, the Wests specifically stated to Mr. Pippen that they could not afford any high-risk

investment strategies.

20. American Express, through its agents, including Steve Pippen misrepresented numerous facts to the Wests including, but not limited to: its relationship with IDS; the high-risk aspect of the variable life insurance it convinced the Wests to purchase; the value of the Wests' death benefit; and its ability to fix the Wests' death benefit once it became obvious the same would continue to plummet. These misrepresentations caused the Wests obvious monetary and mental injuries.

21. American Express, through its agents, violated several Kentucky laws, including the Kentucky Consumer Protection Act. Its acts were unfair, unconscionable, false, misleading and deceptive, all to the detriment of the Wests.

22. American Express, through its agents, breached their contractual agreement with the Wests.

23. As a result American Express' conduct, it is estimated that within five (5) years the Wests' death benefit will plummet to $0.00, after being promised it would exceed $ 300,00.00.

GIVEN THE ABOVE, the Wests request the following damages:

1. Compensation in the amount of $ 300,000.00 for the agreed upon death benefit level;

2. Restoration of the agreed-upon death benefit amount;

3. Punitive damages in an undetermined amount;

4. Costs and expenses incurred in this action;

5. Applicable interest and attorney's fees;

6. For any and all other relief to which the Wests may appear entitled.

Respectfully submitted,

James M. Gary
Justin S. Gilfert
WEBER & ROSE P.S.C.
2700 Aegon Center
400 West Market Street
Louisville, Kentucky 40202
(502) 589-2200
*Counsel for Claimants*

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.**
**ARBITRATION**

| | | |
|---|---|---|
| In the Matter of the Arbitration Between:<br><br>Dr. G. Allen and Barbara West<br><br>Claimants,<br><br>v.<br><br>Ameriprise Financial Services, Inc. and IDS Life Insurance Co.<br><br>Respondents | ) | **NASD Case No. 06-00952** |

**MOTION TO STAY ARBITRATION PURSUANT TO**
**NASD CODE OF ARBITRATION PROCEDURE RULE 10301(D)(2)**

Respondents Ameriprise Financial Services, Inc. and IDS Life Insurance Co. (collectively "Ameriprise"), submit this motion to stay all proceedings in this arbitration until the United States District Court for the District of Minnesota (the "Court") issues a ruling on Ameriprise's pending motion to enforce a class-action settlement to bar Claimants from arbitrating all of their current claims. (*See* Ex. A.)

Because Claimants are class members in a previously certified class action, Rule 10301(d)(2) of the NASD Code of Arbitration Procedure ("Code") bars them from proceeding with this arbitration. Rule 10301(d)(2) provides in relevant part: "Any claim filed by a member . . . of a . . . certified class action is . . . ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court . . . ." The Rule further provides that parties may elect to petition the court with jurisdiction over a certified class action to resolve disputes relating to whether a particular claim is encompassed by the class action. (*Id.*) On May 30, 2006, Ameriprise made such an election and moved the Court to

enforce the class-action settlement against Claimants. Hence, Ameriprise respectfully requests a stay of all proceedings in this arbitration pending the issuance of an order from the Court determining whether the instant arbitration raises claims that are barred by a class-action settlement.

Ameriprise believes that the claims raised in the Statement of Claim are encompassed within the scope of previously settled class actions in the United States District Court for the District of Minnesota and the Minnesota District Court for the County of Hennepin. *Benacquisto v. Am. Express Fin. Corp.*, No. 00-1980 (D. Minn.); *Benacquisto v. Am. Express Fin. Corp.*, No. 96-18477 (Hennepin Cty Dist. Ct.); *Mork v. IDS Life Ins. Co.*, No. 97-04742 (Hennepin Cty Dist. Ct.); *Thoresen v. Am. Express Fin. Corp.*, No. 98-015681 (Hennepin Cty Dist. Ct.). The Court issued a Final Order and Judgment on May 15, 2001 and permanently barred class members, like Claimant, from arbitrating settled claims and prevented them

> from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct (as that term is defined in the Settlement Agreement) as to that Policy or Annuity.

(Ex. A at Ex. 1 ¶ 14 (emphasis added).)

The Court further retained jurisdiction

> as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,
>
> > (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);

> (b) entering such additional Order as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and
>
> (c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction.

(Id. at ¶ 19.)

Ameriprise has already moved the Court to enforce this class-action settlement. (See Ex. A.) The Court will hear arguments on this motion on July 14, 2006. (Id.) In light of this pending motion, and pursuant to Rule 10301(d)(2) of the Code, Ameriprise respectfully requests that the NASD stay any proceedings on this arbitration pending the Court's entry of an Order on Ameriprise's motion to enforce the class-action settlement.

Respectfully submitted,

David A. Calhoun
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, Kentucky 40202-2898
502.589.5235

Counsel for Respondents Ameriprise Financial Services, Inc. and IDS Life Insurance Company

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served upon the following, by U.S. Mail with exhibit, postage prepaid, and also by facsimile without exhibit, on this the 12th day of June, 2006:

James M. Gary
Justin S. Gilfert
WEBER & ROSE, P.S.C.
2700 Aegon Cernter
400 West Market Street
Louisville, KY 40202

One of Counsel for Respondents

20266629.1