**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

Case No. 00-1980 DSD/JMM

---

## FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT AND DISMISSING COMPLAINT

WHEREAS plaintiffs and defendants entered into a Stipulation of Settlement, with exhibits (collectively, the "Settlement Agreement"), dated September 18, 2000, to settle this class action litigation; and

WHEREAS on October 2, 2000, this Court and the Minnesota State Court for the County of Hennepin jointly entered an Order (the "Hearing Order") preliminarily certifying the putative class in this Action for settlement purposes under Minn. R. Civ. P. 23.01, 23.02(c), and 23.03(b) and Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2), ordering individual and publication notice to potential class members, scheduling a Fairness Hearing for March 6, 2001, and providing those persons with an opportunity either to exclude themselves from the settlement class or object to the proposed settlement; and

FILED 5-15-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd 5-15-01
Deputy Clerk's Initials ______

WHEREAS this Court and the Minnesota State Court for the County of Hennepin jointly held a Fairness Hearing on March 6, 2001 to determine whether to give final approval to the proposed settlement; and

WHEREAS this Court has issued Findings of Fact and Conclusions of Law Concering Class Action Settlement, dated MAY 15, 2001, granting final certification of the settlement class, approving the proposed settlement, and dismissing the settlement class members' claims (among other things); now, therefore,

Based on the submissions of the Parties and Class Members, on the evidence adduced at the Fairness Hearing, and on this Court's Findings of Fact and Conclusions of Law dated MAY 15, 2001, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. **Incorporation of Other Documents.** This Order and Judgment Approving Class Action Settlement incorporates and makes a part hereof:

(a) the Stipulation of Settlement dated September 18, 2000, and filed with the Courts on September 18, 2000 (the "Stipulation of Settlement");

(b) the following exhibits to the Stipulation of Settlement: (i) Exhibit A (Guidelines for Determining, Scoring and Awarding Relief in the Claim Review Process); (ii) Exhibit B (Class Notice Package); (iii) Exhibit C (Publication Notice); (iv) Exhibit D (Proposed Hearing Order); (v) Exhibit E (Confidentiality Agreement); (vi) Exhibit G (Statement to Accompany Post-Execution Date Responses to Customer Complaints); (vii) Exhibit H (Post-Settlement Claim Form Mailing); (viii) Exhibit I

(Post-Mailing Reminder); and (ix) Exhibit J (Claim Review Administrative Forms and Letters); and

(c) the Affidavit of Jeffrey D. Dahl, sworn to February 23, 2001, Exhibit __ to this Order and Judgment (describing the Class Notice Package, its distribution to Class Members, and the Publication Notice).

2. **Jurisdiction.** This Court has personal jurisdiction over all Class Members (as defined below) and has subject matter jurisdiction over this Action and all claims and causes of action resolved by this settlement, including all the Claims and Causes of Action referred to in the Release. Accordingly, this Court has jurisdiction to approve the proposed settlement, grant final certification of the Class, release Claims and Causes of Action as set forth in the Release, and dismiss this Action on the merits and with prejudice.

3. **Final Class Certification.** The Class that was previously certified preliminarily is hereby finally certified for settlement purposes under Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2). The Class consists of (A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, issued at any time during the Class Period; or (ii) an ownership interest in an individual deferred annuity contract or a participation interest in a Group Qualified Annuity issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and

commonwealths, that was in force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity. The Class does not include (i) any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants; or (ii) any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under Section 1035 of the Internal Revenue Code. Notwithstanding the foregoing, the Class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any persons or entities who make a timely election to be excluded from the proposed Class with respect to a particular Policy or Annuity otherwise included within the Class; (ii) any persons or entities who have an ownership interest in (a) a Policy that was terminated prior to the Eligibility Date due to the death of the insured and on which death benefits were paid; (b) an Annuity that was terminated prior to the Eligibility Date by reason of the death of the annuitant; (c) a Policy or Annuity that was issued, but not accepted or funded, or was returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; (d) a Policy or Annuity that was rescinded as part of a reissue of a new life insurance policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; (e) a Policy or Annuity that is the subject of a release signed by any person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity; (f) a life insurance policy that was a term life

insurance policy or graded premium whole life insurance policy; (g) an annuity contract that was settled (*i.e.*, annuitized) prior to the inception of the Class Period; or (h) an annuity contract that was issued as an immediate annuity. A list of those persons who have validly excluded themselves from the Class, and who therefore are not bound by this Order and Judgment, is on file with this Court as Plaintiffs' and Defendants' Joint Submission of Exclusions From Class, dated March 21, 2001, and is incorporated herein and made a part hereof. A small number of requests for exclusion were deficient and subject to "cure" letters. The Parties will supplement their submission once those outstanding issues are resolved.

4. **Appointment of Co-Class Counsel and Lead Counsel and Adequacy of Representation.** The law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Lockridge Grindal Nauen, P.L.L.P. are hereby appointed Co-Class Counsel; the law firm of Milberg Weiss Bershad Hynes & Lerach LLP is hereby appointed Lead Counsel; and the Class representatives have fully and adequately represented the Class for purposes of entering into and implementing the settlement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

5. **Class Notice.** Notice was provided to the Class in accordance with the Hearing Order. Individual notice was sent by first-class mail, postage prepaid, to the last known address of the Policy and Annuity Owners and, in the case of a Group Qualified Annuity, to persons or entities who hold or held a participation interest in the Group Qualified Annuity, all as reflected by Defendants' records as maintained at the Corporate Office or by the results of any searches performed by a vendor hired by Defendants to update addresses of such persons or entities. In cases of pending litigation against the Defendants, notice was also mailed to any legal

counsel known to represent the Class Member. Also in accordance with the Hearing Order, publication notice was published and notice was posted on the internet at the web sites for Defendants and Co-Class Counsel. This Court finds that the notice outlined above:

(a) constituted the best practicable notice to Class Members under the circumstances of this Action;

(b) was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this class action; (ii) their right to exclude themselves from the Class and the proposed settlement; (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class' representation by Plaintiffs or Plaintiffs' counsel, and/or the award of attorneys' fees); (iv) their right to appear at the Fairness Hearing -- either on their own or through counsel hired at their own expense — if they did not exclude themselves from the Class; and (v) the binding effect of the Order and Judgment in this Action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

(c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and

(d) fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

6 **Final Settlement Approval.** The terms and provisions of the Settlement Agreement, including all exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the Parties and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. **Early Implementation.** The Defendants are hereby authorized, in their sole discretion but in consultation with Co-Class Counsel, and without requiring further approval of this Court, to implement the settlement before the Final Settlement Date (as defined in the Settlement Agreement), in which case all provisions in the Settlement Agreement specifying actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date the Defendants elect to implement the settlement.

8. **Appeal After Early Implementation.** If the Defendants choose to exercise their discretion to implement the settlement before the Final Settlement Date, anyone seeking to appeal from this Court's rulings must first (i) request to intervene upon a representation of inadequacy of counsel; (ii) request a stay of implementation of the settlement; and (iii) post an appropriate bond. Unless a would-be appellant satisfies all three of these requirements, the Defendants are authorized to implement the settlement before the Final Settlement Date even if such implementation would moot any appeal.

9. **Post-Settlement Mailing**. The Parties are hereby directed to mail the Post-Settlement Mailing materials substantially in the form attached as Exhibit H to the Settlement Agreement, as provided by the Stipulation of Settlement.

10. **Securities Registration Not Required.** This Court hereby confirms that, to the extent that any rights provided under this settlement (including but not limited to the right to designate another person as eligible to receive the ADB under the Settlement Agreement) might be deemed to be a security under section 3(a)(10) of the Securities Act of 1933, as amended, registration of any such right would not be required by virtue of this Court's approval of the settlement.

11. **No Tax Advice Being Given.** This Court hereby confirms that the Parties and their counsel are not making any representations or providing any opinions or advice concerning the tax consequences of the proposed settlement or the election of any remedies under the settlement to individual Class Members, and the Parties and their counsel shall not be held liable for any tax consequences or elections.

12. **Binding Effect.** The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors, assigns, guardians, attorneys, trustees, and representatives, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Release.

13. **Release.** The following Release, which is also set forth in Section XII of the Stipulation of Settlement, is expressly incorporated herein in all respects, is effective as of the Final Settlement Date, and forever discharges the Releasees from any Claims or Causes of Action that arise from or relate to the Released Conduct:

A. Release and Waiver

1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releasees (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).

2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or relate to any of the matters described in sections XII.B.2.(i)-(xiii) of the Stipulation of Settlement; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in the Stipulation of Settlement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable — notwithstanding that the parties have chosen Minnesota law to govern the Stipulation of Settlement — Plaintiffs and the Class Members hereby agree that these principles (including Cal. Civ. Code Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such

matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. Release and Waiver -- Definitions

1. "Claims and Causes of Action" (as used in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or

Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held in any Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company[1] and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

1 "Company" means IDS Life Insurance Company, IDS Life Insurance Company of New York, the American Express Company, American Express Financial Corporation, American Express Financial Advisors, American Express Service Corporation, American Express Trust Company, American Centurion Life Assurance Company, American Enterprise Life Insurance Company and American Partners Life Insurance Company, collectively.

14. **Permanent Injunction**. All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct (as that term is defined in the Settlement Agreement) as to that Policy or Annuity, and (ii) organizing or soliciting the participation of any Class Members in a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit or other proceeding based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct as to that Policy or Annuity. This Court finds that issuance of this permanent injunction is necessary and appropriate in aid of this Court's jurisdiction over the Action and to protect and effectuate this Order and Judgment.

15. **Enforcement of Settlement.** Nothing in this Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement; nor shall anything in this Order and Judgment preclude Plaintiffs or Class Members from participating in the Claim Review Process described in the Settlement Agreement if they are entitled to do so under the terms of the Settlement Agreement.

16. **Attorneys' Fees and Expenses.** The Court hereby grants Co-Class Counsels' application for an award of attorneys' fees and reimbursement of their disbursements and expenses for their past and future work on the Actions in the amount of $28 million, to be paid by Defendants to Lead Counsel. The $28 million consists of approximately $27, 380, 000 in fees and $620,000 in reimbursement of expenses. Such fees and expenses are to be paid by Defendants within 10 days after the last date of entry of the Order and Judgment in the Actions, subject to the conditions set forth in the Stipulation of Settlement. Plaintiffs' counsel shall set aside in a Qualified Settlement Fund ten percent, or $2,738,000, of the fee award pending substantial completion of the administration of the Claim Review Process. Plaintiffs' counsel shall advise this Court when payments are made to Class Members in the Claim Review Process, and may draw down this final ten percent (plus any accumulated interest) at that time without further order of this Court. Lead Counsel, in its sole discretion, shall allocate and distribute this award of attorneys' fees and expenses among counsel for the Class.

17. **No Other Payments.** The preceding paragraph of this Order and Judgment covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Co-Class Counsel or any other counsel representing Plaintiffs or Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to the Actions, the settlement of the Actions, the administration of such settlement, and/or the Released Conduct except to the extent otherwise specified in this Order and Judgment and the Stipulation of Settlement.

18. **Modification of Settlement Agreement.** The Parties are hereby authorized, without needing further approval from this Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement -- including without limitation, the Post-Settlement Mailing materials and the forms to be used in the Claim Review Process -- as are consistent with this Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement.

19. **Retention of Jurisdiction.** This Court has jurisdiction to enter this Order and Judgment. Without in any way affecting the finality of this Order and Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,

(a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);

(b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining

Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

(c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

*provided, however,* that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under paragraphs 7 and 18 above.

20. **No Admissions.** This Order and Judgment, and the Settlement Agreement (and any other document referred to here, or any action taken to carry out this Order and Judgment) shall not be used or construed as an admission or concession by the Defendants of any actual or potential fault, wrongdoing, liability or damages whatsoever, and shall not be used as any evidence or inference of any fault, wrongdoing, liability or damage against the Defendants. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by Defendants as to any actual or potential fault, wrongdoing, liability or damages and shall not be offered or received in evidence or used for impeachment in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Order and Judgment and the Settlement Agreement; *provided, however,* that this Order and Judgment and the Settlement Agreement may be filed in any action against or by the Defendants or Releasees (as defined in the Stipulation of Settlement) to support a defense of *res judicata*, collateral estoppel, release,

waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

21. **Dismissal of Action.** The Action, including all individual and Class claims resolved in them, are hereby dismissed on the merits and with prejudice against Plaintiffs and all other Class Members, without fees or costs to any party except as otherwise provided in this Order and Judgment.

22. **Bond Requirement.** Any appeal of the orders and judgment of this Court in this action shall be conditioned upon the posting of a bond by the proposed appellant of $500,000.

SO ORDERED this 15th day of May, 2001. LET THE JUDGMENT BE ENTERED ACCORDINGLY.

The Honorable David S. Doty
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

FORMS\APPEAL.NO CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

Leo J. Herzing :IN THE COURT OF COMMON PLEAS OF
Plaintiff :MCKEAN COUNTY, PENNSYLVANIA

vs. :No.
Ameriprise Financial IDS Life Insurance
Company and
Jeffrey L. Davis
Defendants

COMPLAINT

AND NOW, comes the Plaintiff, through his attorney, Harold B. Fink, Jr., Esquire to complain against the Defendants jointly and or severely as follows:

1. The Plaintiff is an adult person residing at 768 Upper Portage Road, Port Allegany, McKean County, Pennsylvania.
2. The Defendant Ameriprise Financial IDS Life Insurance Company, hereinafter called insurance company, is believed to be a dually licensed life insurance company in the business of selling life insurance to individuals the main office of which is 70100 Ameriprise Financial Center, Minneapolis, Minnesota.

3. The Defendant, Jeffrey L. Davis, who is an adult individual and resides in Erie, Pennsylvania but conducts business at 941 Federal Court in Meadville, Pennsylvania.

4. On or about September 17, 1992 the Plaintiff purchased from the Defendant Insurance Company, through Defendant Jeffrey L. Davis, a flexible premium whole life insurance policy, a copy of which is attached hereto and made part hereof and marked Plaintiff's exhibit one.

5. As set forth in Plaintiff's exhibit one the initial specified amount of the policy was $150,000.

6. The Plaintiff purchased exhibit one through Defendant Jeffrey L. Davis who was at that time an independent agent for and on behalf of the insurance company. The Plaintiff was informed at the time of the purchase that the premium on the policy would be $200 per month, $140 of which would go for the payment of the premium and the remaining $60 would be placed in an equity fund from which the Plaintiff could draw at any time if he so desired. Further he could add to the equity fund if he desired which would

give him the opportunity to draw more at a later time if he needed it.

7. The Defendant Davis, who is a financial planner, advised the Plaintiff to roll over his pension from his employment and his IRA after his retirement therefrom in 2001 into the insurance company equity fund.

8. The Plaintiff followed the advice of Davis as above referenced upon his retirement in 2001.

9. Pursuant to the advice of Davis as above set forth the Plaintiff rolled over approximately $105,000 into the equity fund.

10. The Defendant Davis recommended to the Plaintiff that he withdraw $900 per month out of the equity fund from Ameriprise each month $200 of which would pay the monthly premium and $700 payable directly to the Plaintiff to which the Plaintiff agreed.

11. On or about September 28, 2005 the Plaintiff contacted the Defendant Davis at the Meadville Office to make inquiry concerning the statements that he received from the insurance company which

was deducting $339 for the monthly insurance premium which was to be only $200 per month.

12. The additional premium payment above referenced was contrary to what the Plaintiff had been told by Davis as agent for the insurance company and contrary to the policy.

13. At the meeting between the Plaintiff and the Defendant as above stated, he, Davis, told the Plaintiff that he would "take care of it", but he not only did not "take care of it" but he failed to contact the Plaintiff thereafter.

14. In view of the allegations above set forth, the Plaintiff refused to make further payments which has in fact resulted in the lapse of the policy and the Plaintiff has lost the premium that he had paid in an amount of $40,000.

15.By letter dated February 20, 2006 the Plaintiff was informed by the insurance company with a copy to Defendant Davis, that the policy would lapse as of March 22, 2006 if no further payments were made.

16. As a result of the breech of contract by the insurance company and by Defendant Davis as to its representation by Davis has resulted in a loss of $40,000.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and or severely in the amount of $40,000.

Harold B. Fink, Jr.,
Attorney for the Plaintiff
May 24, 2006

| | |
|---|---|
| Leo J. Herzing<br>Plaintiff | :IN THE COURT OF COMMON PLEAS OF<br>:MCKEAN COUNTY, PENNSYLVANIA |
| vs.<br>Ameriprise Financial and<br>Jeffrey L. Davis<br>Defendants | :No. |

LEO HERZING, being duly sworn according to law, deposes and says that the facts set forth in the foregoing complaint are true and correct to the best of his information, knowledge and belief.

LEO HERZING

Sworn to and subscribed before me

this 31 of May, 2006.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JENNIFER WEICHMAN, Notary Public
Port Allegany Boro., McKean County
My Commission Expires June 7, 2009

**STATE OF MINNESOTA** **DISTRICT COURT**
**COUNTY OF HENNEPIN** **FOURTH JUDICIAL DISTRICT**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated, : Case No. 96-018477

Plaintiffs, :

v. (Consolidated Cases: 96-018477, 97-004742, 98-105681)

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants. :

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated, : Civ Case No. 00-1980 DSD/JMM

Plaintiffs, :

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants. :

---

# STIPULATION OF SETTLEMENT

---

# TABLE OF CONTENTS

Page

I. INTRODUCTION . . . 1

II. DEFINITIONS . . . 4

III. CERTIFICATION OF THE CLASS . . . 18

IV. SETTLEMENT RELIEF . . . 20

V. GENERAL RELIEF . . . 23
- A. Accidental Death Benefit . . . 23
- B. Research Initiative Regarding Terminated Policies and Annuities . . . 24

VI. INTERNAL REPLACEMENT RELIEF . . . 24
- A. Procedures . . . 24
- B. Available Relief . . . 25

VII. THE CLAIM REVIEW PROCESS . . . 28
- A. Procedures . . . 28
- B. Claim Categorization . . . 32
- C. Review of the Claim . . . 32
- D. Distribution of Relief Awarded in the Claim Review Process . . . 33
- E. Payment of the Claim Evaluator Fees and Expenses . . . 34

VIII. DEFENDANTS' FUNDING OBLIGATIONS . . . 35
- A. Establishing the Claim Review Relief Fund . . . 35
- B. Funding Reverts upon Termination . . . 35

IX. NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS . . . 35
- A. Introduction . . . 35
- B. Class Notice Package . . . 36
- C. Publication Notice . . . 40
- D. Post-Settlement Mailing . . . 40
- E. Post-Mailing Reminder . . . 41
- F. Retention of Administrator . . . 42
- G. Toll-Free Telephone Number for Settlement Information . . . 44
- H. Right of Communication with Claimants and Defendants' Customers . . . 46
- I. Media Communications . . . 48
- J. Defendants' Dealings with Producers . . . 48
- K. Co-Class Counsels' Communication with Producers . . . 49
- L. Co-Class Counsels' Administrative Responsibilities . . . 49

X. REQUESTS FOR EXCLUSION . . . . . 51

XI. OBJECTIONS TO SETTLEMENT . . . . . 51

XII. RELEASE AND WAIVER AND ORDER OF DISMISSAL . . . . . 53
- A. Release and Waiver . . . . . 53
- B. Release and Waiver -- Definitions . . . . . 56
- C. Order of Dismissal . . . . . 59

XIII. ATTORNEYS' FEES AND EXPENSES . . . . . 59

XIV. ORDER OF NOTICE, SETTLEMENT HEARING AND ADMINISTRATION . . . . . 61

XV. FINAL APPROVAL AND FINAL ORDERS AND JUDGMENTS . . . . . 62

XVI. MODIFICATION OR TERMINATION OF THIS AGREEMENT . . . . . 62

XVII. GENERAL MATTERS AND RESERVATIONS . . . . . 65

IT IS HEREBY STIPULATED AND AGREED, by, between and among Lesa Benacquisto, Daniel Benacquisto, Arnold Mork, Isabella Mork, Ronald Melchert, Susan Melchert, Richard W. Thoresen and Elizabeth J. Thoresen (collectively, the "Plaintiffs"), on behalf of themselves and the Class defined below and through their duly authorized counsel, and IDS Life Insurance Company, IDS Life Insurance Company of New York, American Express Financial Corporation, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company and American Express Financial Advisors (collectively, "Defendants"), through their duly authorized representatives, that the class action lawsuits entitled: Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681), and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota (collectively, the "Actions"), are settled, compromised and dismissed on the merits and with prejudice, and the claims are released, on the terms and conditions set forth in this Stipulation of Settlement (the "Settlement Agreement" or "Agreement") and the Release set forth herein, subject to the approval of the Courts.

## I. INTRODUCTION

A. On or about December 13, 1996, plaintiffs in the action originally entitled Benacquisto, et al. v. IDS Life Insurance Company, et al., No. 96-18477, filed their complaint in the Minnesota State Court for the County of Hennepin. In that action, they asserted causes of

action for common law fraud, breach of fiduciary duty, negligent misrepresentation, fraudulent inducement, negligence, and violation of consumer fraud statutes in connection with defendants' replacement of cash value life insurance policies, on behalf of themselves and a class of consumers.

B. On or about March 21, 1997, plaintiffs in the action entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, filed their complaint in the Minnesota State Court for the County of Hennepin. In that action, they asserted causes of action for common law fraud, breach of fiduciary duty, negligent misrepresentation, fraudulent inducement, negligence and violation of consumer fraud statutes in connection with defendants' replacement of cash value life insurance policies and deferred annuity contracts, on behalf of themselves and a class of consumers. This action was consolidated with the Benacquisto action by court order.

C. On or about October 13, 1998, plaintiffs in the action entitled Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681, filed their complaint in the Minnesota State Court for the County of Hennepin. In that action, they asserted causes of action for violation of the Minnesota Deceptive Trade Practices Act, false or misleading advertising, violation of the Minnesota Consumer Fraud Act, fraud, fraudulent concealment and deceit, breach of fiduciary duty/constructive fraud, negligent misrepresentation, negligence, negligence per se, unjust enrichment and imposition of constructive trust, declaratory and injunctive relief, and reformation in connection with defendants' sale of deferred annuities purchased to fund or constitute tax qualified retirement plans or arrangements established pursuant to Sections 401(a), 401(k), 403(a), 403(b), 408(a), 408(b), 408(k), 408(p), 408A or 457 of the Internal Revenue Code, on behalf of themselves and a class of consumers. On or about July 2, 1999, plaintiffs in that action filed an Amended Complaint asserting similar causes of action.

D. On or about August 29, 2000, the Minnesota State Court for the County of Hennepin entered an order consolidating the actions described in subsections B through C, above, into the action described in subsection A, above. These consolidated actions are referred to herein as the "State Court Action."

E. On or about September 1, 2000, plaintiffs in the State Court Action filed a Consolidated Complaint under the caption Benacquisto, et al. v. American Express Financial Corporation, No. 96-18477. In that Consolidated Complaint, plaintiffs assert claims relating to the marketing, sale, servicing, and administration of cash value life insurance policies and deferred annuity contracts issued and sold by Defendants.

F. On or about August 21, 2000, plaintiffs filed a complaint in the United States District Court for the District of Minnesota in an action entitled Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM (the "Federal Court Action"). In that action, they assert claims relating to the marketing, sale, servicing and administration of cash value life insurance policies and deferred annuity contracts issued and sold by Defendants.

G. Before commencing the Actions and throughout the pendency of the Actions, and during settlement negotiations, Plaintiffs' counsel and their professional consultants conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of Plaintiffs' claims and potential claims and to determine how best to serve the interests of Plaintiffs and the Class, as defined below. In the course of their examination, Plaintiffs' counsel reviewed approximately 350,000 pages of documents produced by Defendants, deposed or interviewed 12 officers, employees and sales representatives of Defendants, and conducted other informal discovery of Defendants. In addition, Plaintiffs' counsel retained and consulted with experts

concerning the discovery conducted in this matter, the merits of Plaintiffs' claims and potential claims, alleged damages and the defenses raised by Defendants.

H. Based upon their discovery, investigation and evaluation of the facts and law relating to the matters alleged in the pleadings, and after reviewing this Agreement with their various consultants and experts, Plaintiffs and their counsel have agreed to settle the Actions pursuant to the provisions of this Agreement after considering, among other things: (i) the substantial benefits available to Plaintiffs and the Class under the terms of this Agreement, which are fair, reasonable and adequate, in the best interests of the Class, and fairly resolve the claims at issue; (ii) the attendant risks and uncertainty of litigation, especially in complex actions such as these, as well as the difficulties and delays inherent in such litigation; and (iii) the desirability of consummating this Agreement promptly to provide effective relief to Plaintiffs and the Class.

I. Defendants expressly deny any wrongdoing alleged in the Actions, and do not admit or concede that any facts or claims that have been or could have been alleged against them in the Actions have merit, would overcome their defenses, or would result in any determination of liability or damages. Without conceding any liability, wrongdoing or fault, and without admitting that any damages are recoverable or the amount of any damages that may have been incurred, Defendants consider it desirable for the Actions to be settled and dismissed because this settlement will (i) provide significant benefits to Defendants' present and former policy and annuity owners; and (ii) avoid the substantial expense, burdens and uncertainties associated with continued litigation of those claims.

## II. DEFINITIONS

As used in this Agreement and the annexed exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the

following meanings, unless a section or subsection of this Agreement or its exhibits provides otherwise:

1. "Accidental Death Benefit" or "ADB" means the form of General Relief to be provided to Class Members as described in section V below.

2. "Actions" means the class action lawsuits entitled: Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681), and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota.

3. "Administrator" means Rust Consulting of Minneapolis and Faribault, Minnesota or any other third-party administrator(s) whom Defendants shall retain to help implement the terms of this Agreement, upon consultation with Co-Class Counsel.

4. "Affinity Group" means (i) the Class Member, his or her spouse, parent or child (including a stepchild residing with the Class Member); and (ii) any person in whom the Class Member has an insurable interest.

5. "Agreement" or "Settlement Agreement" means this Stipulation of Settlement and the attached exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

6. "Alternate Measuring Life" means, for purposes of any Accidental Death Benefit provided for in this settlement, a person designated on the Designation Form, as provided

herein, who is a member of the Class Member's (which, in the case of a participation interest in a Group Qualified Annuity, means the participant's) Affinity Group and is not the insured under the Policy or the annuitant under the Annuity making the Class Member eligible for relief.

7. "Alternate Payee" means such person as the Class Member (which, in the case of a participation interest in a Group Qualified Annuity, means the participant) may designate on the Designation Form, as provided herein, to receive the Accidental Death Benefit pursuant to the terms and conditions set forth below.

8. "Annuity" or "Annuities" means one or more fixed or variable deferred annuity contracts, including individual contracts, group contracts and participation interests in group contracts issued by any of the Defendants in the United States, including its territories and commonwealths, that was In Force at any time during the Class Period.

9. "Attorneys' Fees and Expenses" means such funds as may be awarded to Co-Class Counsel to compensate them and all other attorneys for Plaintiffs or Class Members in the Actions for their fees and expenses in connection with the Actions.

10. "Benefit Voucher" means the voucher to be included in the Class Notice Package, substantially in the form contained in the attached Exhibit B, entitling the Class Member to payment of the ADB upon Defendants' receipt of due proof of the qualifying death of the Measuring Life within the applicable period, as provided in this Agreement.

11. "Claim" means a claim by a Class Member or his or her representative timely submitted on the Claim Form (with any necessary attachments) for consideration pursuant to the Claim Review Process, as provided in this Agreement.

12. "Claim Categorization" means the assignment of a Claim to one or more Claim categories, as described in the attached Exhibit A.

13. "Claim Designation" means the scoring of a Claim by the Claim Evaluator pursuant to the attached Exhibit A.

14. "Claim Evaluator" means a person chosen by Co-Class Counsel who is responsible for Claim Review Administration, Claim Categorization, Claim Designation, and, where appropriate, awarding relief for Claims pursuant to the terms of this Agreement. The Claim Evaluator may retain assistants as are reasonably necessary to process Claims in an efficient and timely manner. Defendants may request that Co-Class Counsel remove the Claim Evaluator for financial or gross misconduct. Such request shall not be unreasonably denied. Co-Class Counsel may also remove the Claim Evaluator for any reason at any time. If the Claim Evaluator is removed, Co-Class Counsel shall choose another Claim Evaluator.

15. "Claim Evaluator Fees and Expenses" means the fees and expenses incurred by the Claim Evaluator in connection with carrying out his or her duties as provided in this Agreement.

16. "Claim File" means the file to be assembled for each Claim, as provided in this Agreement, for use in the Claim Review Process. The Claim File shall include (i) the Claim Form and all other materials submitted by the Claimant; (ii) the Customer File; (iii) any other information agreed to by the Parties; and (iv) any other information provided to the Claim Evaluator.

17. "Claim Form" means the form for Claimants to submit a Claim to the Claim Review Process, which shall be substantially in the form contained in the attached Exhibit H. Each Claim Form, in order to be included in the Claim Review Process, shall include a signed Claimant Oath.

18. "Claim Review Administration" means, with respect to each Claim submitted to the Claim Review Process, those administrative tasks to be completed after Defendants deliver the relevant Claim File to the Claim Evaluator, and includes, without limitation, the categorization, designation, and awarding of relief for that Claim.

19. The "Claim Review Process" means the procedures and process described in section VII to this Agreement and in the attached Exhibit A for the presentation, evaluation and resolution of Claims.

20. "Claim Review Relief Fund" means the total amount of $85 million, plus interest as described in this Agreement, available to provide relief to Claimants through the Claim Review Process.

21. "Claimant" means a Class Member, or the legal or authorized representative of a Class Member, who submits a Claim to the Claim Review Process. The legal or authorized representative of a Class Member who submits a Claim on a Class Member's behalf shall, in order for the Claim to be included in the Claim Review Process, include with the Claim Form any documentation supporting his or her authorization to act on the Class Member's behalf for this purpose.

22. "Claimant Oath" means the oath, signed by each Claimant, that appears at the conclusion of the Claim Form. Each oath shall state: "I swear under penalty of perjury that (i) the foregoing is true and correct; (ii) I submit herewith copies of all documents in my possession or control relating to the life insurance policy or deferred annuity contract that is the subject of my claim; and (iii) all such copies (if any) are authentic and unaltered copies of the original documents."

23. "Class" or "Class Member" means the persons or entities described in section III of this Agreement.

24. "Class Notice" means the legal notice of the terms of the proposed settlement included in the Class Notice Package.

25. "Class Notice Package" means the notice package, as approved in form and content by Co-Class Counsel and Defendants' Counsel and the Courts, and substantially in the form of the attached Exhibit B, to be provided to Class Members pursuant to section IX of this Agreement. Except as otherwise provided in section IX.B, below, the Class Notice Package shall include (i) a cover letter from Defendants; (ii) the Class Notice; (iii) one or more Election Forms (depending on the number of Policies or Annuities); (iv) one or more Designation Forms (depending on the number of Policies or Annuities); (v) one or more Statements of Eligibility (depending on the number of Policies or Annuities); (vi) a Benefit Voucher evidencing the relief to which the Class Member is entitled if the Class Member does not elect the Internal Replacement Relief or the Claim Review Process; (vii) a fact sheet for Qualified Plans (for Class Notice Packages sent to the Owners of Group Qualified Annuities); and (viii) a Plan Participant Information Sheet (for Class Notice Packages sent to persons or entities with participation interests in Group Qualified Annuities).

26. "Class Period" means that period beginning on January 1, 1985 and ending on February 29, 2000, inclusive.

27. "Co-Class Counsel" means the law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Lockridge Grindal Nauen, P.L.L.P.

28. "Company" means IDS Life Insurance Company, IDS Life Insurance Company of New York, the American Express Company, American Express Financial

Corporation, American Express Financial Advisors, American Express Service Corporation, American Express Trust Company, American Centurion Life Assurance Company, American Enterprise Life Insurance Company and American Partners Life Insurance Company, collectively.

29. "Company Liaison" means a person appointed by the Defendants to serve as a liaison between the Claim Evaluator and the Defendants, as more particularly described in section VII.A.2 below.

30. "Corporate Office" means the headquarters of Defendants at 52 AXP Financial Center, Minneapolis, Minnesota and its administrative offices that provide administrative support functions for the operations of Defendants.

31. "Cost of Insurance Rate Band" means the premium or cost of insurance rate table assigned to a Policy based on the Policy Face Amount.

32. "Courts" means the Minnesota State Court for the County of Hennepin and the United States District Court for the District of Minnesota, where the Actions are pending.

33. "Customer File" means a file of information for each Policy or Annuity about which a Claim is timely submitted that shall include to the extent available from Defendants' records as maintained at the Corporate Office at the time the Customer File is created: (i) the Policy or Annuity Owner's (or the participant's, in the case of a Group Qualified Annuity) name, current address and social security number or tax identification number; (ii) the Policy or Annuity number; (iii) the Policy or Annuity plan code; (iv) the Policy Face Amount as of the Issue Date; (v) the Policy's or Annuity's Issue Date; (vi) the type of Qualified Plan being funded by a Qualified Annuity; (vii) the issue age and gender of the Policy's insured or the Annuity's annuitant; (viii) the Policy's or Annuity's termination date, if applicable; (ix) any Policy or Annuity surrender charge paid; (x) the Policy's scheduled premium, if applicable; (xi) the payment, loan and transaction

history and current values of the Policy or Annuity as of the Eligibility Date; (xii) to the extent available, the Policy's or Annuity's application file (excluding any medical underwriting); and (xiii) any summaries of complaints relating to the Policy or Annuity as electronically maintained by the Company's Client Relations area.

34. "Default Measuring Life" means, with respect to the ADB provided for in this Agreement, the insured under the applicable Policy or the annuitant under the applicable Annuity, except that, in the case of a participation interest in a Group Qualified Annuity, "Default Measuring Life" means the participant or, where applicable, the beneficiary of a deceased participant.

35. "Default Payee" means, with respect to the ADB provided for in this Agreement, the Owner of the applicable Policy or Annuity, except that in the case of a participation interest in a Group Qualified Annuity, "Default Payee" means the participant.

36. "Defendants" means IDS Life Insurance Company, IDS Life Insurance Company of New York, American Express Financial Corporation, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company and American Express Financial Advisors, collectively.

37. "Defendants' Counsel" means the law firms of LeBoeuf, Lamb, Greene & MacRae, L.L.P. and Leonard, Street and Deinard, P.A.

38. "Designation Form" means the document substantially in the form attached as part of Exhibit B, one or more copies of which form (i) shall be included in the Class Notice Package; and (ii) may be used by Class Members to designate an Alternate Payee and/or an Alternate Measuring Life, pursuant to this Agreement.

39. "Election Form" means the document substantially in the form attached as part of Exhibit B, one or more copies of which will be included in the Class Notice Package and must be used by Class Members in electing Internal Replacement Relief or the Claim Review Process pursuant to sections VI and VII of this Agreement.

40. "Eligibility Date" means a date specified by the Company that is not more than 90 days before the date on which the Class Notice Package is first mailed, as provided in this Agreement.

41. "Execution Date" means the first date on which the Agreement has been executed by all of the undersigned.

42. "Fairness Hearing" means the hearing at or after which the Courts will make final decisions whether to approve this Agreement as fair, reasonable and adequate.

43. "Favorable Underwriting" means the underwriting requirements and guidelines ordinarily applied by Defendants, except that if the applicant is table rated for excess mortality risk, he or she will be charged cost of insurance charges at a rate two tables (or if rated at Table A, one table) less than his or her actual rating.

44. "Final Order and Judgment" means the order finally certifying the Class for settlement purposes only and approving the settlement and this Agreement, and the judgment entered pursuant to that order, as contemplated in section XV of this Agreement and substantially in the form attached as Exhibit F.

45. "Final Settlement Date" means the last date on which the Final Order and Judgment approving this Agreement becomes final. For purposes of this definition, the Final Order and Judgment shall become final: (i) if no appeal is taken therefrom, on the date on which the time to appeal therefrom has expired; (ii) if any appeal is taken therefrom, on the date on