**d) Financial Advisor Remuneration**

Your American Express financial advisor will receive compensation for the sale of the Service and the Mutual Funds and the compensation received for proprietary products may exceed that paid for non-proprietary products. Your American Express financial advisor may offer comprehensive financial planning services for additional fees. Comprehensive financial planning is not included in the Service.

If Client was introduced to the Service by a Sponsor's employee or an American Express financial advisor, a portion of the first year's fee and subsequent fees will be paid by Sponsor to such person and to the appropriate field manager. Such payments may be made as long as this Agreement remains in effect. The fees paid by such Client will not be higher than those paid by any other client with a similar sized account who was not introduced to the Service by Sponsor's employee or an American Express financial advisor. Your American Express financial advisor also may receive certain other fees on investments in proprietary products and for asset allocation services. Additionally, the amount received by your advisor may depend on production levels or other factors.

**8. Relationship With American Enterprise Investment Services Inc. (AEIS)**

Sponsor will effect all securities transactions as agent for customers. AEIS provides execution and clearing capabilities as clearing broker for Sponsor. When Sponsor acts as agent for you, a confirmation is sent to you after each transaction. This confirmation discloses that Sponsor acted as agent for you, and provides other information required by law. Sponsor and AEIS have an agreement in which Sponsor introduces customer accounts to AEIS on a fully disclosed basis. Sponsor opens, approves, and monitors accounts and accepts securities orders. AEIS provides execution, recordkeeping, and all other clearing functions for accounts. Sponsor, on behalf of the Service, also has an arrangement with AEIS whereby it may receive certain directed/reciprocal commissions that have been directed to Sponsor by nonproprietary fund families.

**9. Assignment**

No assignment, as defined by Section 202 of the Investment Advisers Act of 1940, of this Agreement by Sponsor shall be effective without the consent of Client.

**10. ERISA Accounts**

Client acknowledges sole responsibility for determining whether to and to what extent the Service is appropriate for Client's ERISA account. The service is not available for SIMPLE retirement accounts.

**11. Modifications**

From time to time, Sponsor may modify various aspects of the Service (including fees). Sponsor will notify Clients of those modifications as required by law. Such modifications shall become effective upon notification unless otherwise stated.

**12. Law Governing This Agreement**

Client agrees that this Agreement is to be governed by the State of Minnesota.

**13. Arbitration**

a) Client understands and agrees that:

i) **Arbitration is final and binding on the parties;**

ii) **The parties waive their right to seek remedies in court, including the right to jury trial;**

iii) **Pre-arbitration discovery is generally more limited than, and different from, court proceedings;**

iv) **The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited; and**

v) **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

b) **Any controversy arising out of, or relating to Client's Service account, to transactions with Sponsor or Sponsor's agents and/or employees, or to this Agreement or the breach thereof, shall be settled by arbitration and conducted pursuant to the Federal Arbitration Act before the National Association of Securities Dealers Inc., the Midwest Stock Exchange, the New York Stock Exchange, the American Stock Exchange, or the Municipal Securities Rulemaking Board as Client may elect. If Client does not make such election by registered mail addressed to Sponsor within 10 days after demand by Sponsor that Client make such election, Sponsor may make such election. Judgement upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.**

c) **No person shall bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.**

**14. Deposits and Distributions on Partial Withdrawal and Terminations**

All cash will be deposited to your Sweep account if received and approved by 3 p.m., Central time. Additional mutual fund investments can be made in the client's Service Account at any time in amounts of $500 or more, or $100 if a systematic investment arrangement is made. However,



EXHIBIT
tabbies
1