**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF JOHN GAVULA AND BEVERLY TANENHAUS PRESENTED TO THE NASD**

---

## INTRODUCTION

John Gavula and Beverly Tanenhaus ("Claimants") seek to arbitrate claims that they already released under the class-action settlement in this case. Indeed, under the settlement, Claimants already received relief for these claims. Because the Court has specifically barred the double recovery that Claimants now seek before the NASD, the Court should enjoin them from arbitrating these claims, which were previously resolved

and released pursuant to the terms of the class-action settlement agreement approved and ordered by this Court.

## FACTS

### The Final Judgment and Order Included a Broad Release of Claims Relating to the Annuities at Issue in this Litigation.

By way of its current motion, Defendant Ameriprise Financial Services, Inc., formerly known as American Express Financial Advisors, Inc. ("Ameriprise"), seeks to enforce the terms of a class-action settlement that were approved by this Court in 2001. (Ex. 1 hereinafter ("Final Order and Judgment").) Claimants were members of the class that settled their claims and are subject to the Final Order and Judgment. Nonetheless, they submitted a Statement of Claim to the NASD and seek to arbitrate claims against Ameriprise that are barred by the Final Order and Judgment. (Ex. 2.) Because the Final Order and Judgment bars Claimants from raising certain of these claims, Ameriprise respectfully requests that the Court enter an Order enforcing the class-action settlement and barring Claimants from proceeding in arbitration with any and all claims against Ameriprise that were previously released.

On August 21, 2000, Plaintiffs filed the Complaint in this federal-court action, asserting numerous claims related to the marketing, sale, servicing, and administration of certain cash-value insurance policies and deferred annuity contracts sold and serviced by numerous Defendants, including Ameriprise. (Docket # 1.) Less than a month later, the parties submitted a Stipulation of Settlement with exhibits to the Court. (Ex. 3 (hereinafter "Settlement Agreement").) After notifying the class, the Court entered the

Final Order and Judgment, which certified the class, approved the settlement terms proposed by the parties in the Settlement Agreement, and dismissed with prejudice the claims of the class members. (Ex.1.)

The Final Order and Judgment permanently barred and enjoined Class Members like Claimants from commencing any other lawsuit, arbitration, or administrative, regulatory or other proceeding in any jurisdiction relating to any claims released pursuant to the terms of the Settlement Agreement. (*See id.* at ¶ 14.) The Court "expressly retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment . . . ." (*Id.* at ¶ 15.) Pursuant to the Final Order and Judgment, all class members who failed to opt out of the class thereby agreed to a broad release wherein they released a wide variety of claims related to the Annuities that were at issue in the class action.

The Final Order and Judgment further provides that Plaintiffs and all other members of the certified class agree and acknowledge that they:

> shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part:
>
> > (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and

entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or

(b) that relate in any way to the Released Conduct.

(*Id.* at ¶ 13(A)(2).)

The "Released Conduct" includes:

any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the . . . Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with

(i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any . . . Annuity;

(ii) the application for or purchase of any . . . Annuity;

(iii) the suitability of any purchases, sales, or replacements of any . . . Annuity;

(iv) the taking of any loans, or the accumulation of any interest or cash values on any . . . Annuity;

*   *   *   *

(vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any . . . Annuity;

(vii) the investment choices made with respect to assets held in any . . . Annuity;

(viii) the surrender, lapse, or termination of any . . . Annuity;

(ix) the tax status, tax impact or tax consequences of any . . . Annuity or any actions or inactions taken with respect thereto;

(x) the costs, commission, terms, or benefits or disadvantages of any . . . Annuity compared to any other life insurance policy, annuity contract, or investment;

(xi) the comparison or lack of comparison of any . . . Annuity to any other product;

(xii) the . . . provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of . . . Annuity; . . . and

* * * *

(xiv) the administration or servicing of any . . . Annuity after its purchase.

(*Id.* at ¶ 13(B)(2) (reformatted from original).)

**Claimants Choose to Receive Relief as Class Members Under the Final Order and Judgment.**

In February 1999, during the Class Period, Claimants purchased two annuities issued by IDS Life Insurance Company (the "Annuities") that are subject to the terms of the Settlement Agreement and the Final Order and Judgment. (*See* Ex. 3 at § II.60.) In November and December 2000, Ameriprise sent Notice of Class Action, Proposed Settlement and Fairness Hearing ("Class Notice") to Claimants. (Declaration of Amy Lake dated September 14, 2006 (hereinafter "Lake Decl.") ¶¶ 2-5 & Ex. 4.) Claimants did not opt out of the class by the January 29, 2001 deadline set by the Court. (Docket # 14; Lake Decl. ¶ 7.) Claimants therefore became members of the class and received general relief in accordance with the terms of the Settlement Agreement. (*See* Ex. 3 at § V.) After the final approval of the settlement by this Court, notice of this grant of relief was mailed to Claimants. (Lake Decl. ¶¶ 8-9.) There was no indication that Claimants

failed to receive the Class Notice or the Notice of General Relief. (Lake Decl. ¶¶ 5 & 10.) By failing to opt out of the class, Claimants released all of their claims against Ameriprise related to the Annuities in accordance with the terms set forth in the Final Judgment and Order.

**Even Though the Claims Are Barred,**
**Claimants Seek Additional Relief in Arbitration.**

Even though they previously released their Annuity-based claims against Ameriprise, in May 2006, Claimants filed a Statement of Claim against Ameriprise with NASD Arbitration alleging a variety of claims against Ameriprise, many of which related to their purchase of the Annuities. Among the allegations in the Statement of Claim are claims that the Annuities were unsuitable investments for Claimants because the Annuities had high surrender charges, which limited Claimants' access to the funds held within the Annuities, and held unsuitable sub-account investments. (Ex. 2 at 3 ("Variable annuities are simply not suitable investments for any family in Claimants' position. Annuities carry a surrender charge and an IRS early withdrawal penalty, making them wholly inappropriate for a family who needs access to its money."); at 6 ("Respondents then compounded these problems by instructing Claimants to select unsuitable sub-accounts.") Claimants further allege that their Ameriprise advisor made fraudulent omissions by failing to provide adequate information to them in recommending the purchase of the Annuities and failed to explain the tax effects of the purchase. (Ex. 2 at 5-6 ("They did not explain the nature of the surrender charges in variable annuities, nor that the IRS assess a 10% tax penalty for withdrawals from variable annuities before the

age of 59 1/2. They did not explain how the assets in a variable annuity are allocated across sub-accounts that usually consist of mutual funds, nor the additional risk that this structure can entail when sub-accounts are not properly monitored."); at 12 ("They had a duty to explain the relevant features of variable annuities and surrender charges and tax penalties. Respondents failed to fulfill their duties."); at 14 ("These misrepresentations and omissions include . . . (2) . . . concealment of annuity surrender charges during the initial purchases in late 1998; (3) . . . concealment of IRS early withdrawal penalties during the initial purchases in late 1998 . . . .").) In addition, Claimants allege that the Annuities were inappropriately recommended to them by Ameriprise advisors seeking increased commissions. (Ex. 2 at 3-4 ("These investments were very suitable for Respondents – guaranteeing substantial up-front commissions – but they were not at all suitable for Claimants.").) The Annuity-based claims alleged in the Statement of Claim are barred by the Settlement Agreement and the Court's Final Order and Judgment. The gravamen of these claims is that Claimants' Ameriprise advisor made certain material misrepresentations and omissions in the sale of the Annuities and that these variable investment products were unsuitable for them. This is precisely the type of conduct that was at issue in the class action and released under the terms of the Final Order and Judgment. (Ex. 1 at ¶ 13.B.2.)

In August 2006, Ameriprise submitted a Statement of Answer in response to the Statement of Claim in the NASD, but it did not sign a Uniform Submission Agreement with Claimants. Instead, Ameriprise submitted a modified Submission Agreement to the NASD wherein it expressly reserved the right to seek a determination from this Court of the

scope of the class-action settlement's bar on the Claimants' claims. (Ex. 5.) Ameriprise specifically did not agree to arbitrate any issues relating to the scope of the class-action settlement and its preclusive effect on Claimants' claims before the NASD. (*Id.*)

## ARGUMENT

### I. The Court Should Enjoin the Arbitration of the Claims Raised in the Statement of Claim Because They Have Already Been Released Under the Final Order and Judgment.

#### A. Claimants Released Their Claims.

The gravamen of many claims in Claimants' Statement of Claim is that their Ameriprise financial advisor improperly induced them to purchase the Annuities and that these were not suitable investment vehicles for their needs. (*See, e.g.*, Ex. 2 at 3-6, 12 & 14.) The express terms of the Release in the Final Order and Judgment and the Settlement Agreement bar Claimants from arbitrating any claims predicated upon an advisor's alleged misrepresentations or omissions related to the purchase of the Annuities or their suitability. Under the Release, class members have agreed not to assert "any Claims or Causes of Actions . . . that are based upon, related to, or connected with, directly or indirectly, in whole or in part: . . . (b) that relate in any way to the Released Conduct." (Ex. 1 at ¶ 13.A, .B (emphasis added).) Claimants' current misrepresentation and suitability claims are related to the Released Conduct under the Settlement Agreement, which encompasses

> any and all . . . representations, omissions, suggestions, or communications that are related to or connected in any way with the . . . marketing, sale . . . or performance of the . . . the Annuities including, without limitation . . . representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation,

> illustration . . . of any . . . Annuity; (ii) the application for or purchase of any . . . Annuity; (iii) the suitability of any purchases [or] sales . . . of any . . . Annuity; . . .(vi) the setting, charging or reducing of any . . . commissions . . . on any . . . Annuity; (vii) the investment choices made with respect to assets held in any . . . Annuity; . . . (ix) the tax status, tax impact or tax consequences of any . . . Annuity . . .; (x) the costs, commissions, terms, or benefits or disadvantages of any . . . Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any . . . Annuity to any other product; (xii) . . . the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any . . . Annuity . . . .

(Ex. 1 at ¶ 13.B.2 (emphasis added).) Claimants' current claims of misrepresentation and unsuitability relating to their purchase of the Annuities fall squarely within the scope of the Released Conduct as defined by the Final Order and Judgment. Accordingly, Claimants are precluded from arbitrating theses claims before the NASD.

**B. Claimants Received Notice of the Class Action, Chose Not to Opt Out, and Received Relief Under the Settlement Agreement.**

By receiving the Class Notice, failing to opt out of the class, and receiving relief pursuant to the terms of the Settlement Agreement and the Final Judgment and Order, Claimants became class members, and they are bound by all of the provisions of the Settlement Agreement and the Final Order and Judgment. *See, e.g., Berardinelli v. Gen. Am. Life Ins. Co. (In re Gen. Am. Life Ins. Co. Sales Practices Litig.*), 357 F.3d 800, 804-05 (8th Cir. 2004); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993).

Defendants issued both published and individual notice to Claimants regarding the settlement, yet they chose not to opt out of the class. (Lake Decl. at ¶¶ 2-7.) The Class Notice advised them, among other things, that they could contact a toll-free hotline in

order to receive further information about the class settlement. (Ex. 4 at § N.) Claimants were free to educate themselves about the class action and to explore any questions that they had about it. (*See id.*) They did not opt out of the class action; hence, they are bound by its terms. (Ex. 1 at ¶ 12 ("The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members . . . .").)

It is not inequitable or unjust to bind Claimants to the Release and bar them from proceeding with the arbitration of claims that have already been released. Claimants received relief in accordance with the Settlement Agreement. (Lake Decl. at ¶¶ 8-10.) Claimants cannot now seek further relief for the same injuries before the NASD. This Court's Final Order and Judgment expressly bars such an attempt to take a second bite of the apple. (Ex. 1 at ¶ 14 (permanently barring and enjoining Class Members from "filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration . . . based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct . . . as to that . . . Annuity")); *see also Mosberg v. Nat'l Prop. Analyst, Inc.*, 630 N.Y.S.2d 50, 52 (N.Y. App. Div. 1995) (recognizing that permitting a class member to proceed with claims for which he already received relief allows them to "eat his cake and have it too"). As a matter of law, Claimants may not relitigate settled claims relating to the Annuities.

At the time they submitted their Statement of Claim, Claimants had clear knowledge that the Court had entered a class-action settlement in this case. Indeed,

Claimants cited this action in its Statement of Claim. (Ex. 2 at 2 n.3.) Claimants may not seek to avoid the effect of the settlement in this action and relitigate claims that they previously released.

**C. As Class Members, Claimants Are Bound by the Contractual Terms of the Settlement Agreement Adopted by the Final Judgment and Order.**

As class members who received value for releasing their claims, Claimants "contractually agree[d] and acknowledge[d] that . . . [they would] not . . . initiate, participate in, maintain, maintain a right to or assert against [Ameriprise] . . . any Claim[] or Cause[] of Action . . . that [was] based upon, related to, or connected with, directly or indirectly, in whole or in part . . . (b) that relate[s] in any way to the Released Conduct." (Ex. 1 at ¶ 13.A.2 (emphasis added).) Claimants may not avoid these contractual obligations under the Settlement Agreement by seeking to arbitrate claims based upon alleged misrepresentations or omissions related to their purchase of the Annuities or upon their alleged unsuitability. Preclusion of these claims was an "integral part of the settlement bargain" entered into by the parties to the class action, and "this Court cannot now modify the terms of that bargain at the insistence of one class member." *Thompson*, 992 F.2d at 191 n.5.

Claimants accepted the benefits of class membership and agreed to any concomitant obligations imposed by class-member status, including releasing the right to arbitrate claims against Ameriprise that relate to the Annuities. *See In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51 (7th Cir. 1994) ("By electing not to opt out of the class, [claimant] received the benefits and accepted the detriments of the settlement."). As

class members, Claimants received both the benefits and the detriments of the settlement. Any injury that they suffered has already been remedied by the benefit that was received by virtue of their participation in the class-action settlement. Permitting Claimants to proceed with the arbitration of their settlement-barred claims would allow them to seek double recovery for the same injury. *See Mosberg*, 630 N.Y.S.2d at 52. Under the circumstances of this case, Claimants cannot now be heard to raise claims that have already been released.

## II. The Final Order and Judgment Authorizes this Court to Enjoin Claimants from Arbitrating Released Claims.

### A. This Court has Continuing Jurisdiction in this Matter.

The Final Order and Judgment makes clear that this Court has retained continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

> (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);
>
> (b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and
>
> (c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

(Ex. 1 at ¶ 19(a)-(c).) Thus, the terms of the Final Order and Judgment specifically authorize this Court to enter an Order enjoining Claimants from pursuing released claims before the NASD. Entering such an Order is a proper method whereby the Court can ensure continued adherence to the terms of its final orders, including orders incorporating the terms of class-action settlement agreements. *See Thompson*, 992 F.2d at 189 (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992)); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

The Eighth Circuit Court of Appeals has repeatedly recognized the propriety of a District Court issuing an injunction in order to enforce a final judgment dismissing claims settled pursuant to a class-action settlement agreement. A District Court has the authority to issue an injunction barring a class member from raising released claims in subsequent litigation. *Thompson*, 992 F.2d at 190; *see also Berardinelli*, 357 F.3d at 803. Furthermore, this power to enjoin subsequent claims is not limited to attempts to raise released claims in litigation. If a release, such as that contained in the Final Order and Judgment, releases all claims, including those that could be raised in arbitration, it should be enforced pursuant to its terms: "[E]ven when arbitration is involved, federal 'courts should not have to stand by while parties re-assert claims that have already been resolved.'" *Ewart v. Y & A Group (In re Y & A Group Sec. Litig.)*, 38 F.3d 380, 382 (8th Cir. 1994) (quoting *Kelly v. Merrill Lynch, Pierce, Fenner & Smith*, 985 F.2d 1067, 1069 (11th Cir. 1993)). District Courts "have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *Ewart*, 38 F.3d at 382; *see also In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51-52 (7th Cir. 1994)

(affirming District Court's order enjoining class member from arbitrating claims that were previously released pursuant to terms of a class-action settlement agreement). Because Claimants seeks to relitigate claims for which they have already received relief and that have already been released pursuant to the terms of the Settlement Agreement and the Final Order and Judgment, the Court should enjoin them from arbitrating any released claims.

**B. Proceeding with the Arbitration of Released Claims Violates a Prior Order of this Court.**

The bar precluding Claimants from arbitrating released claims goes beyond a simple contractual agreement between the parties to this litigation; this Court has already decreed that they cannot proceed with these claims in arbitration. The Court, in the Final Order and Judgment, enjoined class members from proceeding in such a fashion:

> All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in . . . or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Released Conduct . . . as to that Policy or Annuity.

(Ex. 1 at ¶ 14 (emphasis added).) Proceeding with the arbitration of released claims directly violates the Court's Final Order and Judgment. *Cf. Ewart*, 38 F.3d at 384-85 (Richard S. Arnold concurring) (recognizing that institution of arbitration after entry of order that approved class-action settlement and barred future claims encompassed therein violated the District Court's injunction, and noting that "[a]mong other things, violation

of an injunction is . . . contempt of court, and the Federal Arbitration Act should not be construed to divest courts of their traditional powers to punish for contempt").

The terms of the Final Order and Judgment are clear: by not opting out of the class and by receiving relief in accordance with the Settlement Agreement, Claimants have released all of their claims related to the purchase and suitability of the Annuities and agreed to forego the right to arbitrate these claims. (Ex. 1 at ¶ 13.) Indeed, the Court has ordered that they forego those claims. (*Id.* at ¶ 14.) Therefore, the Court should enjoin Claimants from proceeding with any arbitration of claims relating in any way to any representations allegedly made to them that relate to the Annuities. (*See id.* at ¶ 13.B.2 ("'Released Conduct' means any and all . . . representations, omissions, suggestions, or communications that are related to or connected in any way with the . . . marketing, sale, administration, . . . or performance of . . . the Annuities, including without limitation, acts, representations, omissions, suggestions or communications in connection within (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any . . . Annuity") (emphasis added).) Claimants are similarly barred from proceeding with the arbitration of any claims relating to the suitability of the Annuities. (*See id.* at ¶ 13.B.2 (releasing all claims related to "the suitability of any purchases, sales or replacements of any . . . Annuity" and claims related to "the costs, commissions, terms, or benefits or disadvantages of any . . . Annuity compared to any other . . . annuity contract . . . .").) Arbitration of the claims set forth in the Statement of Claim that are predicated upon claimed misrepresentations or omissions and the alleged unsuitability of the Annuities would be in direct contravention of this Court's prior orders.

### C. Permitting Claimants to Proceed with the Arbitration of Released Claims Undermines the Finality of Class-Action Settlements.

Permitting Claimants to pursue claims that have already been settled and released more than five years after this Court's entry of the Final Order and Judgment undermines the finality of class-action settlements. This would eviscerate the binding Settlement Agreement into which Claimants voluntarily entered and under which they received relief. Accordingly, authorizing the continued arbitration of any claims related to the Annuities would be contrary to the strong public policy that supports class-action settlements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3d Cir. 2002) (quoting *In re Prudential Ins. Co. Sales Practices Litig.: Lowe*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actions "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large, multi district class action")). As recognized by the Eighth Circuit,

> [W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.

*Thompson*, 992 F.2d at 191 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)). By enjoining Claimants from proceeding with the

arbitration of claims related to the Annuities, the Court ensures not only that its Final Orders are respected, but that the "paramount policy" supporting settlement is upheld.

## CONCLUSION

For all of the reasons set forth above, Ameriprise respectfully requests that the Court enjoin Claimants from proceeding with the arbitration of any and claims that were released by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: October 2, 2006

FAEGRE & BENSON LLP

s/Fiona B. Ruthven
Michael F. Cockson (#280549)
Fiona B. Ruthven (#333761)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone No. (612) 766-7000
Facsimile No. (612) 766-1600

**ATTORNEYS FOR DEFENDANT AMERIPRISE FINANCIAL SERVICES, INC. F/K/A AMERICAN EXPRESS FINANCIAL ADVISORS, INC.**

fb.us.61145400.02