13. "Claim Designation" means the scoring of a Claim by the Claim Evaluator pursuant to the attached Exhibit A.

14. "Claim Evaluator" means a person chosen by Co-Class Counsel who is responsible for Claim Review Administration, Claim Categorization, Claim Designation, and, where appropriate, awarding relief for Claims pursuant to the terms of this Agreement. The Claim Evaluator may retain assistants as are reasonably necessary to process Claims in an efficient and timely manner. Defendants may request that Co-Class Counsel remove the Claim Evaluator for financial or gross misconduct. Such request shall not be unreasonably denied. Co-Class Counsel may also remove the Claim Evaluator for any reason at any time. If the Claim Evaluator is removed, Co-Class Counsel shall choose another Claim Evaluator.

15. "Claim Evaluator Fees and Expenses" means the fees and expenses incurred by the Claim Evaluator in connection with carrying out his or her duties as provided in this Agreement.

16. "Claim File" means the file to be assembled for each Claim, as provided in this Agreement, for use in the Claim Review Process. The Claim File shall include (i) the Claim Form and all other materials submitted by the Claimant; (ii) the Customer File; (iii) any other information agreed to by the Parties; and (iv) any other information provided to the Claim Evaluator.

17. "Claim Form" means the form for Claimants to submit a Claim to the Claim Review Process, which shall be substantially in the form contained in the attached Exhibit H. Each Claim Form, in order to be included in the Claim Review Process, shall include a signed Claimant Oath.

18. "Claim Review Administration" means, with respect to each Claim submitted to the Claim Review Process, those administrative tasks to be completed after Defendants deliver the relevant Claim File to the Claim Evaluator, and includes, without limitation, the categorization, designation, and awarding of relief for that Claim.

19. The "Claim Review Process" means the procedures and process described in section VII to this Agreement and in the attached Exhibit A for the presentation, evaluation and resolution of Claims.

20. "Claim Review Relief Fund" means the total amount of $85 million, plus interest as described in this Agreement, available to provide relief to Claimants through the Claim Review Process.

21. "Claimant" means a Class Member, or the legal or authorized representative of a Class Member, who submits a Claim to the Claim Review Process. The legal or authorized representative of a Class Member who submits a Claim on a Class Member's behalf shall, in order for the Claim to be included in the Claim Review Process, include with the Claim Form any documentation supporting his or her authorization to act on the Class Member's behalf for this purpose.

22. "Claimant Oath" means the oath, signed by each Claimant, that appears at the conclusion of the Claim Form. Each oath shall state: "I swear under penalty of perjury that (i) the foregoing is true and correct; (ii) I submit herewith copies of all documents in my possession or control relating to the life insurance policy or deferred annuity contract that is the subject of my claim; and (iii) all such copies (if any) are authentic and unaltered copies of the original documents."

23. "Class" or "Class Member" means the persons or entities described in section III of this Agreement.

24. "Class Notice" means the legal notice of the terms of the proposed settlement included in the Class Notice Package.

25. "Class Notice Package" means the notice package, as approved in form and content by Co-Class Counsel and Defendants' Counsel and the Courts, and substantially in the form of the attached Exhibit B, to be provided to Class Members pursuant to section IX of this Agreement. Except as otherwise provided in section IX.B, below, the Class Notice Package shall include (i) a cover letter from Defendants; (ii) the Class Notice; (iii) one or more Election Forms (depending on the number of Policies or Annuities); (iv) one or more Designation Forms (depending on the number of Policies or Annuities); (v) one or more Statements of Eligibility (depending on the number of Policies or Annuities); (vi) a Benefit Voucher evidencing the relief to which the Class Member is entitled if the Class Member does not elect the Internal Replacement Relief or the Claim Review Process; (vii) a fact sheet for Qualified Plans (for Class Notice Packages sent to the Owners of Group Qualified Annuities); and (viii) a Plan Participant Information Sheet (for Class Notice Packages sent to persons or entities with participation interests in Group Qualified Annuities).

26. "Class Period" means that period beginning on January 1, 1985 and ending on February 29, 2000, inclusive.

27. "Co-Class Counsel" means the law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Lockridge Grindal Nauen, P.L.L.P.

28. "Company" means IDS Life Insurance Company, IDS Life Insurance Company of New York, the American Express Company, American Express Financial

Corporation, American Express Financial Advisors, American Express Service Corporation, American Express Trust Company, American Centurion Life Assurance Company, American Enterprise Life Insurance Company and American Partners Life Insurance Company, collectively.

29. "Company Liaison" means a person appointed by the Defendants to serve as a liaison between the Claim Evaluator and the Defendants, as more particularly described in section VII.A.2 below.

30. "Corporate Office" means the headquarters of Defendants at 52 AXP Financial Center, Minneapolis, Minnesota and its administrative offices that provide administrative support functions for the operations of Defendants.

31. "Cost of Insurance Rate Band" means the premium or cost of insurance rate table assigned to a Policy based on the Policy Face Amount.

32. "Courts" means the Minnesota State Court for the County of Hennepin and the United States District Court for the District of Minnesota, where the Actions are pending.

33. "Customer File" means a file of information for each Policy or Annuity about which a Claim is timely submitted that shall include to the extent available from Defendants' records as maintained at the Corporate Office at the time the Customer File is created: (i) the Policy or Annuity Owner's (or the participant's, in the case of a Group Qualified Annuity) name, current address and social security number or tax identification number; (ii) the Policy or Annuity number; (iii) the Policy or Annuity plan code; (iv) the Policy Face Amount as of the Issue Date; (v) the Policy's or Annuity's Issue Date; (vi) the type of Qualified Plan being funded by a Qualified Annuity; (vii) the issue age and gender of the Policy's insured or the Annuity's annuitant; (viii) the Policy's or Annuity's termination date, if applicable; (ix) any Policy or Annuity surrender charge paid; (x) the Policy's scheduled premium, if applicable; (xi) the payment, loan and transaction

history and current values of the Policy or Annuity as of the Eligibility Date; (xii) to the extent available, the Policy's or Annuity's application file (excluding any medical underwriting); and (xiii) any summaries of complaints relating to the Policy or Annuity as electronically maintained by the Company's Client Relations area.

34. "Default Measuring Life" means, with respect to the ADB provided for in this Agreement, the insured under the applicable Policy or the annuitant under the applicable Annuity, except that, in the case of a participation interest in a Group Qualified Annuity, "Default Measuring Life" means the participant or, where applicable, the beneficiary of a deceased participant.

35. "Default Payee" means, with respect to the ADB provided for in this Agreement, the Owner of the applicable Policy or Annuity, except that in the case of a participation interest in a Group Qualified Annuity, "Default Payee" means the participant.

36. "Defendants" means IDS Life Insurance Company, IDS Life Insurance Company of New York, American Express Financial Corporation, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company and American Express Financial Advisors, collectively.

37. "Defendants' Counsel" means the law firms of LeBoeuf, Lamb, Greene & MacRae, L.L.P. and Leonard, Street and Deinard, P.A.

38. "Designation Form" means the document substantially in the form attached as part of Exhibit B, one or more copies of which form (i) shall be included in the Class Notice Package; and (ii) may be used by Class Members to designate an Alternate Payee and/or an Alternate Measuring Life, pursuant to this Agreement.

39. "Election Form" means the document substantially in the form attached as part of Exhibit B, one or more copies of which will be included in the Class Notice Package and must be used by Class Members in electing Internal Replacement Relief or the Claim Review Process pursuant to sections VI and VII of this Agreement.

40. "Eligibility Date" means a date specified by the Company that is not more than 90 days before the date on which the Class Notice Package is first mailed, as provided in this Agreement.

41. "Execution Date" means the first date on which the Agreement has been executed by all of the undersigned.

42. "Fairness Hearing" means the hearing at or after which the Courts will make final decisions whether to approve this Agreement as fair, reasonable and adequate.

43. "Favorable Underwriting" means the underwriting requirements and guidelines ordinarily applied by Defendants, except that if the applicant is table rated for excess mortality risk, he or she will be charged cost of insurance charges at a rate two tables (or if rated at Table A, one table) less than his or her actual rating.

44. "Final Order and Judgment" means the order finally certifying the Class for settlement purposes only and approving the settlement and this Agreement, and the judgment entered pursuant to that order, as contemplated in section XV of this Agreement and substantially in the form attached as Exhibit F.

45. "Final Settlement Date" means the last date on which the Final Order and Judgment approving this Agreement becomes final. For purposes of this definition, the Final Order and Judgment shall become final: (i) if no appeal is taken therefrom, on the date on which the time to appeal therefrom has expired; (ii) if any appeal is taken therefrom, on the date on

which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner resulting in affirmance of the Final Order and Judgment; or (iii) on a date after entry of the Final Order and Judgment, which date counsel for the Parties agree to in writing.

46. "General Relief" means the benefits available to Class Members as more particularly described in section V.A of this Agreement.

47. "Group Qualified Annuity" means, for purposes of this Agreement only, a group Annuity that was purchased to fund or constitute all or part of a Qualified Plan, including all participation interests in such group deferred annuity contract.

48. "Hearing Order" means the order to be entered by the Courts concerning notice, administration and the Fairness Hearing, as contemplated in section XIV of this Agreement, and substantially in the form attached as Exhibit D.

49. "Implementation Date" means (i) for purposes of General Relief and Internal Replacement Relief, a date selected by Defendants, and communicated in writing to Co-Class Counsel, that is no more than 30 days after the Final Settlement Date; and (ii) for purposes of the Claim Review Process, the date Defendants first commence the Post-Settlement Mailing. Defendants shall use their best efforts to begin mailing the Post-Settlement Mailing no later than 30 days after the Final Settlement Date.

50. "In Force" means, for purposes of this Agreement only, that a Policy or Annuity has not lapsed, been surrendered, or otherwise terminated, and has not ceased to provide coverage due to the death of the insured or the annuitant. The term "In Force," for purposes of this Agreement only, does not include (i) a Policy providing coverage under a reduced paid-up

insurance non-forfeiture option or an extended term non-forfeiture option; or (ii) an Annuity that has been settled (*i.e.*, annuitized).

51. "Interest Rate" means interest, compounded quarterly, at the rate equal to ten basis points plus the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of 52-week United States Treasury bills, or if more recent, the longest term United States Treasury bill of not less than 300 days in maturity at the auction settled immediately before the Fairness Hearing or, if the auction immediately preceding the Fairness Hearing does not include such bills, then at the most recent auction prior to the Fairness Hearing that includes United States Treasury bills of not less than 300 days in maturity.

52. "Internal Replacement," for purposes of the Internal Replacement Relief, means the use of the full cash or account value of one or more cash value life insurance policies (excluding graded premium whole life policies) that were issued by one of the Defendants, by means of a surrender or withdrawal of values from one or more such policies, in order to purchase within twelve months of such surrender or withdrawal a Policy or Policies issued by one of the Defendants. The term "Internal Replacement" shall not apply to transactions involving (i) such replacements where the policy owner is exercising a contractual change or conversion privilege; (ii) group term life insurance; (iii) term insurance; or (iv) such replacements where the policy owner is exercising an option under a binding or conditional receipt.

53. "Issue Date" means the "issue date" set forth on the Policy or Annuity.

54. "Lead Counsel" means the law firm of Milberg Weiss Bershad Hynes & Lerach LLP.

55. "Measuring Life" means the person upon whose qualifying death the ADB provided for in this Agreement will be paid, which person shall be the Default Measuring Life unless an Alternate Measuring Life is designated as provided herein.

56. "Owner" means the person or entity whose Social Security number or taxpayer identification number appears in Defendants' records as maintained at the Corporate Office as the identifying owner of the Policy or Annuity as of the Eligibility Date or, if earlier, the date of termination of the Policy or Annuity.

57. "Parties" or "Party" means Plaintiffs (in their individual and representative capacities) and/or Defendants, and, where applicable, their respective counsel.

58. "Payee" means the person to whom the ADB under this Agreement shall be paid. That person shall be the Default Payee unless an Alternate Payee is designated as provided herein; provided, however, that if the Default Payee and the Alternate Payee are deceased or cannot be paid for any reason, the Defendants may pay the ADB to any person named as the beneficiary of the Policy or Annuity, or if that person is deceased or cannot be paid for any reason, to any relative of the Class Member or Measuring Life by blood or marriage appearing to Defendants to be equitably entitled to such payment.

59. "Plaintiffs" means Lesa Benacquisto, Daniel Benacquisto, Arnold Mork, Isabella Mork, Ronald Melchert, Susan Melchert, Richard W. Thoresen and Elizabeth J. Thoresen, and any other Class Members who may subsequently be added as named plaintiffs, in their individual and representative capacities.

60. "Policy" or "Policies" means a cash value life insurance policy or policies issued by any of the Defendants pursuant to an individual sale in the United States, including its territories and commonwealths, during the Class Period.

61. "Policy Face Amount" means, for traditional policies, the face amount of the base policy, excluding any riders sold at issue. For variable or non-variable universal life policies, "Policy Face Amount" means the specified face amount of the policy, excluding any riders sold at issue.

62. "Post-Settlement Mailing" means the letter and Claim Form to be mailed to all Class Members who have timely elected the Claim Review Process.

63. "Proceeding" means any formal action or hearing commenced by written claim or process, whether conducted by a court or administrative agency, where there is an opportunity for appeal.

64. "Producer" means any of the Company's current or former advisors, producers, account representatives, sales representatives, sales agents, general agents, branch managers, brokers or solicitors, and any other person who engages or has engaged in the sale or distribution of the Defendants' cash value life insurance or deferred annuity products.

65. "Publication Notice" means the published summary of the Class Notice, including notice of the proposed settlement, the Fairness Hearing and the Class Members' exclusion and objection rights, as approved in form and content by the Courts, as described in section IX.C and substantially in the form of the attached Exhibit C.

66. "Qualified Annuity" means, for purposes of this Agreement only, an Annuity that was purchased to fund or constitute all or part of a Qualified Plan.

67. "Qualified Plan" means, for purposes of this Agreement only, a tax qualified retirement plan or arrangement pursuant to Sections 401(a), 401(k), 403(a), 403(b), 408(a), 408(b), 408(k), 408(p), 408A, or 457 of the Internal Revenue Code.

68. "Qualified Plan Representatives" means, for purposes of this Agreement only, all persons or entities who act or acted on behalf of the Qualified Plan and its participants and beneficiaries (with respect to the Qualified Plan), including but not limited to trustees, plan administrators and plan sponsors. Qualified Plan Representatives does not mean the Plaintiffs or the attorneys for Plaintiffs.

69. "Release" means the release and waiver set forth in section XII of this Agreement.

70. "Relief Tables" means the accompanying tables and schedules for use in connection with the General Relief and the Claim Review Process.

71. "Replaced Policy," for purposes of the Internal Replacement Relief, means a cash value life insurance policy, the values of which were used in order to purchase a Policy as described in the definition of "Internal Replacement" above.

72. "Statement of Eligibility" means a statement prepared by Defendants, and provided as part of the Class Notice Package, that includes: (i) the Class Member's name and address as reflected from Defendants' records as maintained at the Corporate Office; (ii) the identification number of each Policy or Annuity making the Class Member eligible for relief; (iii) the status of each Policy or Annuity as of the Eligibility Date; (iv) a statement of the form(s) of relief for which the Class Member may be eligible; (v) the Default Payee and Default Measuring Life, if any, for purposes of the ADB provided for in this Agreement; and (vi) the identity of any co-owner of record of each Policy or Annuity. The Statement of Eligibility will be substantially in the form included in the attached Exhibit B.

73. "Surrender Charge" means the charge provided for in certain life insurance policies or annuity contracts that is payable, unless waived, upon termination or partial surrender of such policy or annuity as set forth therein.

74. "Target Premium" is the amount of annual premium payment equal to the guideline level premium as defined in the Internal Revenue Code.

75. "Terminated" means, for purposes of this Agreement only, that a Policy or Annuity has lapsed, been surrendered or otherwise terminated, and has not been reinstated, including any Policy providing coverage under an extended term non-forfeiture option or a reduced paid-up insurance non-forfeiture option or any Annuity that has been settled (*i.e.*, annuitized).

76. "Underwriting Rate Class" means the class assigned to an individual insured person based on that person's use of tobacco, height, weight, medical history, occupation and avocations.

## III. CERTIFICATION OF THE CLASS

Promptly after execution of this Agreement, Co-Class Counsel shall apply to the Courts for, among other things, certification of the Class for purposes of satisfying the provisions of this Agreement. The Class shall consist of the following Class Members:

(A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, issued at any time during the Class Period; or (ii) an ownership interest in an individual deferred annuity contract or a participation or beneficial interest in a Group Qualified Annuity

issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was In Force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity. The Class does not include (i) any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants; or (ii) any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under Section 1035 of the Internal Revenue Code. Notwithstanding the foregoing, the Class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any persons or entities who make a timely election to be excluded from the proposed Class with respect to a particular Policy or Annuity otherwise included within the Class; (ii) any persons or entities who have an ownership interest in (a) a Policy that was terminated prior to the Eligibility Date due to the death of the insured and on which death benefits were paid; (b) an Annuity that was terminated prior to the Eligibility Date by reason of the death of the annuitant; (c) a Policy or Annuity that was issued, but not accepted or funded, or was returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; (d) a Policy or Annuity that was rescinded as part of a reissue of a new life insurance policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; (e) a Policy or Annuity that is the subject of a release signed by any

person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity; (f) a life insurance policy that was a term life insurance policy or graded premium whole life insurance policy; (g) an annuity contract that was settled (*i.e.*, annuitized) prior to the inception of the Class Period; or (h) an annuity contract that was issued as an immediate annuity.

IV. **SETTLEMENT RELIEF**

A. Pursuant to this Agreement, three alternative types of relief are being made available with respect to a Policy or Annuity (consistent with subsection C herein): General Relief, Internal Replacement Relief or the Claim Review Process. With respect to each applicable Policy or Annuity, a Class Member may either accept General Relief or elect one of the other available forms of relief, but in no case shall more than one form of relief be provided with respect to a particular Policy or Annuity. After making an election, except as provided for in sections VI.B.3 and VII.A.1.b.(1), a Class Member may not change that election at some later time.

B. A Class Member who wishes to elect the Internal Replacement Relief, if eligible, or the Claim Review Process with respect to a particular Policy or Annuity must submit an Election Form indicating the election for the particular form of relief no later than 30 days before the Fairness Hearing.

C. Except as provided otherwise in this paragraph and notwithstanding any other provision of this Agreement, where more than one person or entity has or had a current or prior ownership interest in a Policy or Annuity, all such persons and entities, including persons or entities who have or had a participation interest in a Group Qualified Annuity, shall be presumed to be acting jointly with the Policy's or Annuity's Owner in exercising any right and receiving any benefit created under this Agreement (including all exhibits hereto) with respect to that Policy or

Annuity, including the completion of any Election Form and/or Claim Form. Except with respect to Group Qualified Annuities, if any one person or entity excludes himself or herself from the Class with respect to a Policy or Annuity in which more than one person or entity has a current or prior ownership interest, then all persons and entities having a current or prior ownership interest in that Policy or Annuity will be deemed to be excluded with respect to that Policy or Annuity. The Owner of a Group Qualified Annuity may exclude all persons or entities with participation or ownership interests in a Group Qualified Annuity from the Class with respect to such participation or ownership interests, but may not exclude such persons or entities on an individual basis. A person or entity who has a current or prior participation interest in a Group Qualified Annuity may exclude himself or herself from the Class with respect to that participation interest. There shall be only one award of relief with respect to each Policy or Annuity, regardless of the number of Class Members with current or prior ownership interests therein. In the case of a Group Qualified Annuity, any election of remedies shall be made only by the Owner of such Annuity, and any award of relief will be made only to persons or entities holding the participation interests in the Group Qualified Annuity.

D. A Class Member who, for good cause shown, is unable to return an Election Form electing the Claim Review Process in a timely manner may, along with the Election Form, present the reason for the delay. The Claim Evaluator shall determine if an extension should be granted, whether based on hardship or other good cause shown. If the request for such extension is made within 30 days before the anticipated conclusion of the scoring process for all Claims, no extension shall be granted without the written consent of Defendants. Defendants or the Administrator will promptly provide such untimely Election Forms to the Claim Evaluator. Untimely Election Forms that are granted an extension as provided in this paragraph shall not be

counted as electing the Claim Review Process for purposes of determining the percentage set forth in section XVI.F, below, regardless of the election actually evidenced by such Election Form.

E. If Defendants determine that any particular form of relief provided under this Agreement could cause adverse consequences to the Class Member or to his or her Policy or Annuity, or if the provision of enhancements to the cash value of a Policy or Annuity in connection with the Internal Replacement Relief or the Claim Review Process will be unduly administratively burdensome for Defendants, Defendants may, in their sole discretion, provide the cash equivalent of any such relief. Nothing in this paragraph shall require Defendants to review or analyze the potential or actual consequences of any form of relief provided under this Agreement upon any Class Member, nor shall Defendants be liable for any such consequences.

F. If, under the terms of this Agreement, a Class Member is entitled to relief with respect to a Policy or Annuity that is In Force on the Implementation Date, but such Policy or Annuity becomes Terminated prior to the award of such relief, Defendants will provide the relief in the form that would have been available if the Policy or Annuity had been Terminated on the Implementation Date.

G. Defendants and Co-Class Counsel agree and warrant that they will act in good faith in overseeing and implementing this Settlement Agreement. Defendants agree and warrant that they will not utilize any extraordinary or exceptional accounting or actuarial principles to recapture from Policy and Annuity owners the costs of, or deprive Class Members of, the benefits provided in this Settlement Agreement. This provision shall not be construed to interfere with Defendants' conduct of their business in the ordinary course.

## V. GENERAL RELIEF

### A. Accidental Death Benefit

1. General Relief will automatically be provided for each Policy or Annuity for which Internal Replacement Relief or the Claim Review Process is not elected. The General Relief consists of the ADB. The ADB will commence on the Implementation Date.

2. The specific terms of the ADB are set forth in the Benefit Voucher. Among other things, those terms provide that the Payee shall receive upon Defendants' receipt of timely and due proof of the accidental death of the Measuring Life during the period beginning on the Implementation Date and continuing for up to three years thereafter, an amount provided in the Relief Tables. The estimated amount and duration of the ADB with respect to each Policy or Annuity will be set forth in the Benefit Voucher.

3. If the Default Measuring Life is deceased as of the Implementation Date, then prior to the Implementation Date (or within 30 days of the death of the Measuring Life, whichever is later), the Class Member (which, in the case of a participation interest in a Group Qualified Annuity, means the participant) or his or her estate must use the Designation Form to designate a member of the Class Member's Affinity Group as an Alternate Measuring Life for purposes of the ADB and provide written proof of the date of death of the Default Measuring Life.

4. At any time prior to payment of a claim under the ADB, the Class Member (which, in the case of a participation interest in a Group Qualified Annuity, means the participant) may designate an Alternate Payee by fully completing and submitting the Designation Form to be provided as part of the Class Notice Package.

5. The amount of the ADB will be adjusted after all Claims in the Claim

Review Process and all elections for the Internal Replacement Relief have been fully processed. The applicable ADB amounts will be adjusted proportionally, accounting for all Class Members receiving ADBs as part of the settlement, except as provided in section IV.A.10 of Exhibit A to this Agreement, such that the total actuarially determined value to Class Members of the ADB is equal to $100 million, based on comparable insurance rates in the open market.

B. Research Initiative Regarding Terminated Policies and Annuities

One year following the Implementation Date and then annually thereafter until the ADB provided for in this Agreement is no longer in effect, Defendants shall determine or cause to be determined, based on the Social Security numbers of the Measuring Lives with respect to all Terminated Policies and Annuities receiving General Relief, whether any Measuring Life has died since the Implementation Date. If the foregoing research reveals that any such person has died, Defendants will provide notice to the Payee at his or her last known address, as reflected in Defendants' records as maintained at the Corporate Office or as updated through the research initiative described in this paragraph, of the potential availability of the benefits provided for herein, regardless of whether the death of the Measuring Life was accidental.

## VI. INTERNAL REPLACEMENT RELIEF

A. Procedures

1. Class Members who were issued Policies as a result of an Internal Replacement may, under the circumstances set forth below, be eligible for (subject to confirmation by Defendants) and receive one of the forms of relief set forth below, whichever reasonably appears to have the highest value. To receive Internal Replacement Relief, a Class Member must have selected Internal Replacement Relief on the Election Form included in the Class Notice Package and timely returned the Election Form.

2. A Class Member who satisfies the eligibility criteria for the Internal Replacement Relief set forth in subsection B, below, shall nevertheless not be eligible for this form of relief if the applicable Internal Replacement was reversed without cost prior to the Eligibility Date.

B. Available Relief

1. A Class Member whose Policy was issued as the result of an Internal Replacement may, subject to confirmation by the Defendants, be eligible to elect Internal Replacement Relief and receive one form of relief as follows:

a. A Class Member who owns a Policy that is In Force on the Implementation Date and who paid a Surrender Charge(s) as the result of an Internal Replacement shall receive a contribution to the Policy's cash value, within 90 days of the Implementation Date, of 50% of the Surrender Charge(s) actually paid.

b. A Class Member who owned a Policy that is Terminated on the Implementation Date and who paid a Surrender Charge(s) as the result of an Internal Replacement shall receive a payment, to be sent within 90 days of the Implementation Date, of 50% of the Surrender Charge(s) actually paid.

c. A Class Member who owns a Policy that is In Force on the Implementation Date and who, as the result of an Internal Replacement, received a Policy with an Underwriting Rate Class that was higher than the Underwriting Rate Class of the Replaced Policy shall receive, effective for cost of insurance deductions beginning within 120 days after the Implementation Date, reinstatement of the original Underwriting Rate Class applicable to the Replaced Policy on that portion (up to 100%) of the Policy equal to the original face amount of the Replaced Policy.

d. A Class Member who owns a Policy that is In Force on the Implementation Date and who, as the result of an Internal Replacement, received a Policy with a lower face amount than the Replaced Policy such that the Policy is in a lower Cost of Insurance Rate Band (resulting in a higher cost of insurance deduction per $1000 of coverage) than the Replaced Policy shall receive, effective for the cost of insurance deductions beginning within 120 days after the Implementation Date, reinstatement of the original Cost of Insurance Rate Band applicable to the Replaced Policy.

e. A Class Member who owns a Policy that is In Force on the Implementation Date and who, as the result of an Internal Replacement, received the same product as the Replaced Policy in the same face amount and with the same Underwriting Rate Class as the Replaced Policy shall receive, within 90 days after the Implementation Date, a one-time 75 basis point bonus applicable to the Policy's cash value at the time of the replacement, which bonus will be credited to the Policy.

f. A Class Member who owns or owned a Policy that is Terminated on the Implementation Date and who, as the result of an Internal Replacement, (i) received a Policy with an Underwriting Rate Class that was higher than the Underwriting Rate Class of the Replaced Policy; (ii) received a Policy with a lower face amount than the Replaced Policy such that the Policy is in a lower Cost of Insurance Rate Band (resulting in a higher cost of insurance deduction per $1000 of coverage) than the Replaced Policy; and/or (iii) received the same product as the Replaced Policy in the same face amount and with the same Underwriting Rate Class as the Replaced Policy, shall be eligible, for a period starting on the Implementation Date and concluding 120 days thereafter, to apply for a new individual universal life or individual variable universal life insurance policy to be issued by one of the Defendants on the life of the Terminated Policy's

insured, with either a smoker or non-smoker classification, as applicable, with no less than the minimum policy issue amount, and with a face amount equal to or less than the face amount of the Policy, and to receive as a policy credit on such new policy a one-time bonus of 100 basis points on the premium payments (up to the amount of the Target Premium) received during the first year of that new policy, which policy credit is payable within 90 days after the end of the first year of such policy. The application for such new policy will be subject to Favorable Underwriting. If the insured under the Policy does not satisfy Favorable Underwriting and is therefore declined (or if he or she is deceased before the end of 90 days after the Implementation Date), the Class Member (or his or her estate) may, within 90 days of receiving notice that the application was declined, designate another person in his or her Affinity Group who may be named as the insured, subject to the same policy limits and Favorable Underwriting. If the designee described in the previous sentence does not satisfy Favorable Underwriting and is therefore declined, the Class Member may, within 90 days of receiving notice that the application was declined, designate another person in his or her Affinity Group who may be named as the insured, subject to the same policy limits and Favorable Underwriting.

2. Any relief to be awarded under the Internal Replacement Relief shall be reduced by any relief previously granted in favor of a Class Member as a result of a customer or insurance department complaint or inquiry or other claim or litigation involving an Internal Replacement and the applicable Policy.

3. In the event a Class Member who elects the Internal Replacement Relief is not eligible for such relief for the applicable Policy as set forth above, Defendants shall notify such Class Member of his or her ineligibility and provide that Class Member with the opportunity to elect the Claim Review Process or, if no such election is made within 45 days of such notice,

provide the Class Member with the General Relief. If a Class Member elects the Claim Review Process as set forth in this paragraph, that election shall not count as an election of the Claim Review Process for purposes of determining the percentage set forth in section XVI.F, below.

## VII. THE CLAIM REVIEW PROCESS

### A. Procedures

1. Claim Submission. Class Members who elect to forgo General Relief and Internal Replacement Relief with respect to a Policy or Annuity may submit a Claim based on that Policy or Annuity to the Claim Review Process. Claims submitted to the Claim Review Process shall be evaluated in accordance with this section and the attached Exhibit A; relief for such Claims, if any, shall be awarded in accordance with Exhibit A. Except as provided in this paragraph or Exhibit A, Class Members who submit an Election Form selecting the Claim Review Process with respect to a Policy or Annuity shall not be entitled to any form of General Relief or Internal Replacement Relief with respect to that Policy or Annuity.

a. To submit a Claim to the Claim Review Process, a Class Member must elect Claim Review on the Election Form included in the Class Notice Package and timely return the Election Form as provided herein.

b. Beginning on the Implementation Date, Defendants shall mail a Post-Settlement Mailing, including a Claim Form, to each Class Member who elected the Claim Review Process on a timely returned Election Form.

(1) The Claim Form sent to each such Class Member shall advise the Class Member that he or she shall have 60 days from Defendants' mailing of the Claim Form to submit a Claim by completing and returning the Claim Form. The Claim Form shall also advise the Class Member that he or she may choose not to submit a Claim Form, and that if he or

she does not timely submit a Claim Form, he or she will no longer be eligible for the Claim Review Process, but instead will receive the General Relief for which he or she would have been eligible had he or she not elected the Claim Review Process on the Election Form.

(2) Claimants shall retain the right to supplement their Claim Forms at any time prior to the scoring of their Claims. Any such supplementation shall not impose any unreasonable administrative burden on the Defendants. Each Claim submitted to the Claim Review Process must be made by means of a Claim Form executed with the Claimant Oath, that is completed to the best of the Claimant's ability, and shall include copies of all documents in the Claimant's possession or control relating to the Policy or Annuity that is the subject of the Claim, and any affidavits or other materials the Claimant wishes to submit.

(3) A Claimant's failure, without reasonable justification, to provide a completed Claim Form and all relevant documents in his or her possession or control may result in a default or adverse relief determination under the Claim Review Process.

c. A Class Member who, for good cause, is unable to return his or her Claim Form in a timely manner may present the reason for the delay and request additional time to file the Claim Form. If a Class Member seeks an extension of time to file a Claim Form, the Claim Evaluator shall determine if an extension shall be granted, whether based on hardship or other good cause shown. If the request for such extension is made within 30 days before the anticipated conclusion of the scoring process for all Claims, no extension shall be granted without the written consent of Defendants. Untimely Claim Forms that are granted an extension as provided in this paragraph shall not be counted as Claim Forms for purposes of determining the percentages set forth in section VII.E, below.

2. Defendants' Gathering of Certain Information

a. Upon receipt of a Claim Form from a Class Member, the Administrator shall provide Defendants with a copy of the Claim Form and copies of all documents submitted by the Class Member.

b. For each timely filed Claim Form, Defendants shall use their best efforts to assemble the Customer File and, at Defendants' expense, provide a Claim File to the Claim Evaluator as follows: (i) within 60 days after the date on which Claim Forms are due from Claimants for 30,000 timely filed Claim Forms received by Defendants; and (ii) within an additional 30 days thereafter for each additional 15,000 timely filed Claim Forms received by Defendants. For each Claim Form for which an extension has been granted pursuant to paragraph 1.c. of this subsection, Defendants shall use their best efforts to assemble the Customer File and, at Defendants' expense, provide a Claim File to the Claim Evaluator within 30 days of the date on which Defendants receive written notice from the Claim Evaluator that such Claim Form has been granted an extension, for the first 1,000 such Claim Forms, and within 30 additional days for each additional 1,000 such Claim Forms. The Claim Evaluator shall keep all information received from Defendants confidential.

c. Defendants shall designate a Company Liaison to serve at the Defendants' expense as a customer resource liaison to reasonably and promptly respond to (i) general requests from the Claim Evaluator for information that is reasonably necessary and appropriate with respect to the evaluation, designation and resolution of Claims submitted to the Claim Review Process and which can be easily obtained electronically from the Defendants' current computer systems; and (ii) individualized requests by the Claim Evaluator for information and other assistance with respect to particular Policies or Annuities about which Claims have been

made that are reasonably necessary and appropriate with respect to the evaluation, designation and resolution of Claims submitted to the Claim Review Process, including, but not limited to, specific complaint files relating to a Claimant's Claim. This provision shall not permit the Claim Evaluator to shift any of his or her obligations to the Company or the Company Liaison.

d. In addition to providing the Claim File for each Claim, as provided above, Defendants shall provide the Claim Evaluator with the following information: (i) the product trade names that correspond to the Policy and Annuity plan codes referenced in the Customer Files; (ii) insofar as it is electronically maintained at the Corporate Office, the disciplinary histories of the advisors who sold Policies and Annuities that are the subject of Claims in the Claim Review Process to the extent such histories relate to the sale of Policies and Annuities; and (iii) for each advisor who sold Policies and Annuities that are the subject of Claims in the Claim Review Process, the number of replacements resulting in the issuance of Policies or Annuities performed by such advisor, insofar as such data is electronically maintained at the Corporate Office.

e. Nothing contained in this Agreement or in Exhibit A hereto shall be construed to require the Claim Evaluator to obtain any information that is not contained in the Claim File, or to undertake any analysis or perform any services beyond those which the Claim Evaluator deems necessary, in his or her discretion, to implement the provisions of Exhibit A.

f. Nothing contained in this Agreement or in the attached Exhibit A shall be construed to require Defendants to provide any information to the Claim Evaluator other than the Claim File and the materials specified in subparagraph c and d, above.

g. All such information, and all other information provided to Plaintiffs, to Co-Class Counsel, to any individual Class Member or counsel for any Class Member,

or to the Claim Evaluator regarding Policy and Annuity owners, Class Members, and present or former advisors, employees or representatives, as well as any procedures of Defendants disclosed to any of the foregoing in connection with implementing the terms of this Agreement, constitute trade secrets and highly confidential and proprietary business information which shall be deemed "Confidential" pursuant to the stipulated Protective Order Regarding Use and Disclosure of Confidential Information, entered on March 1, 2000 in the State Court Action, and the Stipulated Protective Order Regarding Use and Disclosure of Confidential Information entered in the Federal Court Action, and shall be subject to all of the provisions thereof.

3. Nothing herein shall make the Defendants liable or otherwise responsible for any acts or omissions by the Claim Evaluator or his or her agents, including, without limitation, the Claim Evaluator's categorization and designation of Claims.

B. <u>Claim Categorization</u>

1. Based solely upon his or her review of the Claim File and in accordance with the attached Exhibit A, the Claim Evaluator shall determine the Claim category or categories applicable to the Claim.

2. Any decision by the Claim Evaluator regarding the categorization of a Claim shall be final and binding.

3. In no event shall more than one form of relief be awarded for a single Policy or Annuity, nor shall there be duplicative relief for a single Policy or Annuity.

C. <u>Review of the Claim</u>

1. For each Claim that the Claim Evaluator has categorized, the Claim Evaluator shall determine, based upon his or her review of the Claim File and in accordance with the attached Exhibit A, (i) the Claim Designation or Designations applicable to the Claim in each

applicable Claim category; and (ii) the relief for the Claim, if any, that takes into account, among other things, the nature and strength of the Claim and the damages incurred because of the alleged misrepresentation(s) or other alleged wrongdoing.

2. The Claim Evaluator shall use his or her reasonable best efforts (i) to complete review of each Claim within 150 days of his or her receipt of the Claim File; and (ii) to complete the Claim Review Process within 180 days of his or her receipt of the last Claim File delivered with respect to a timely filed Claim Form.

3. The Claim Evaluator shall not contact any Producer except with Co-Class Counsel and Defendants' counsel, as provided in section IX.K herein.

4. Any final scoring of Claims and/or award of relief in the Claim Review Process by the Claim Evaluator shall be final and binding, subject to the provisions of the attached Exhibit A. Defendants, the Claimant, Class Members, Co-Class Counsel, Defendants' Counsel, the successors or assigns of any of the foregoing, and any other party in interest, are prohibited from seeking review or in any other way challenging in any forum whatsoever, including in a judicial proceeding or an arbitration, a decision or award of relief, if any, pursuant to the foregoing provisions and the attached Exhibit A.

D. <u>Distribution of Relief Awarded in the Claim Review Process</u>

1. The relief provided as a result of the Claim Review Process shall be paid for from the Claim Review Relief Fund, which will have an aggregate cash value of $85 million. Defendants shall have no obligation to provide any money in excess of $85 million, plus any interest as provided in section VIII.A, to the Claim Review Relief Fund for any reason.

2. After the Claim Evaluator has scored all Claims received in the Claim Review Process, he or she shall make a preliminary determination of the appropriate relief for

those Claims pursuant to the procedures described in the attached Exhibit A. If, based on the Claim Evaluator's determinations, the aggregate preliminary awards in the Claim Review Process would exceed the Claim Review Relief Fund, together with any available interest accrued thereon in accordance with section VIII.A, then the Claim Evaluator shall reduce all final awards from the Claim Review Relief Fund pursuant to the formula described in the attached Exhibit A.

3. If, based on the Claim Evaluator's determination, the value of the aggregate preliminary awards in the Claim Review Process is less than the Claim Review Relief Fund, together with any available interest accrued thereon in accordance with section VIII.A, then the relief available to Class Members will be increased as provided in the attached Exhibit A.

E. Payment of the Claim Evaluator Fees and Expenses

Within 10 days after the last date of entry of the Final Order and Judgment, the Defendants shall make a payment of $2 million to Lead Counsel which shall be applied by Lead Counsel to pay the Claim Evaluator Fees and Expenses. If Claim Forms are timely submitted with respect to Policies and Annuities amounting to more than two percent (2%) of the total number of all Policies and Annuities (counting each participation interest in a Group Qualified Annuity separately), then the Defendants shall pay to Lead Counsel an additional amount up to a total of $1 million, which shall be applied by Lead Counsel to pay the Claim Evaluator Fees and Expenses. This additional amount will be paid in increments as follows: $100,000 for each full tenth of one percent (0.1%) of the total number of Policies and Annuities by which the number of Policies and Annuities for which Claim Forms are timely submitted exceeds two percent (2%) of the total number of Policies and Annuities; provided, however, that the additional amount to be paid by Defendants to be applied toward the Claim Evaluator Fees and Expenses shall in no event exceed $1 million, and the total amount paid by Defendants for the Claim Evaluator Fees and

Expenses shall not exceed $3 million. The additional amount, if any, provided for in the previous sentence shall be paid by Defendants within 45 days after the date on which Claim Forms are due to be submitted by Claimants. Any remaining Claim Evaluator Fees and Expenses shall be payable from the interest accrued on the Claim Review Relief Fund. Any portion of the payments to be made by Defendants pursuant to this paragraph that is not applied by Lead Counsel to pay the Claim Evaluator Fees and Expenses shall be applied by Lead Counsel to increase the Claim Review Relief Fund.

## VIII. DEFENDANTS' FUNDING OBLIGATIONS

### A. Establishing the Claim Review Relief Fund

Beginning 10 days after the last date of entry of the Final Order and Judgment, interest shall accrue on the Claim Review Relief Fund at the Interest Rate. The interest that accrues on the Claim Review Relief Fund shall first be applied to the Claim Evaluator Fees and Expenses, if any, over and above the amounts to be paid by Defendants as provided in Section VII.E, above. Any additional accrued interest shall be added to the Claim Review Relief Fund.

### B. Funding Reverts upon Termination

If this Agreement is terminated for any reason, the right to all remaining funds reserved by Defendants for the benefit of the Class, as well as all funds applicable to the Claim Evaluator Fees and Expenses that have not been expended for purposes of the Claim Review Process, shall revert to Defendants.

## IX. NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS

### A. Introduction

As set forth below, Defendants will provide notice of the proposed settlement by mail and publication. After the Final Settlement Date, Defendants will send a Post-Settlement

Mailing to all Class Members who have timely elected the Claim Review Process or who elected the Claim Review Process after an extension has been granted pursuant to section IV.D, above.

B. Class Notice Package

Subject to the requirements of the Hearing Order, Defendants shall send a Class Notice Package by first-class mail, postage prepaid, to the last known address of the Policy and Annuity Owners and, in the case of a Group Qualified Annuity, also to persons or entities who hold or held a participation interest in the Group Qualified Annuity, all as reflected by Defendants' records as maintained at the Corporate Office or by the results of any searches performed by a vendor hired by Defendants to update addresses of such persons or entities. The Class Notice Package will be sent over the course of 60 days, beginning within 10 days after the last date on which the Hearing Order is entered, and ending no later than 75 days before the Fairness Hearing, or as the Courts may otherwise direct. Where the Defendants are aware that the Class Member has pending litigation against Defendants, or any of them, relating to any matter proposed to be released by this Agreement, the Class Notice Package also shall be sent to any legal counsel known to currently represent the Class Member. Defendants shall pay for the costs associated with producing and mailing the Class Notice Package.

1. Class Notice. Each Class Notice Package shall contain a Court-approved Class Notice. The proposed Class Notice, agreed upon by the Parties, will be substantially in the form included in the attached Exhibit B. The Class Notice shall conform to all applicable requirements of the Minnesota Rules of Civil Procedure, the Minnesota Constitution, the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of Court and any other applicable law, and shall otherwise be in the manner and form

agreed upon by the Parties and approved by the Courts. It shall include the following three topics:

a. General Terms. The Class Notice shall contain a plain and concise description of the Actions, the conditional Class certification and the proposed settlement, including information on who are Class Members and how the proposed settlement would operate to provide relief to individual Class Members. The Class Notice Package also shall have a foreign-language statement on the envelope substantially in the form included in Exhibit B.

b. Notice of Exclusion and Objection Rights. The Class Notice shall provide information about the deadlines and procedures for Class Members to exclude themselves from the Class, object to the proposed settlement, or remain in the Class, as well as the legal effects of exercising each of these options.

c. Notice of Fees and Expenses. The Class Notice shall provide information about the amounts being sought by Co-Class Counsel as Attorneys' Fees and Expenses. It also shall explain that Defendants will pay the fees and expenses awarded by the Courts to Co-Class Counsel and any Court-approved costs arising from notifying the Class and that such fees and expenses will not be paid out of funds designated for relief to Class Members under this settlement. The Notice shall state that the Defendants will pay $2 million toward the Claim Evaluator Fees and Expenses, and may pay up to an additional $1 million (for a total of up to $3 million), depending on the number of Claim Forms timely submitted, with any remaining Claim Evaluator Fees and Expenses to be paid from accrued interest on the Claim Review Relief Fund. The Class Notice also shall explain that, under the settlement, individual Class Members are responsible for any fees and expenses of any counsel they may retain or have retained to

represent them individually for any reason, including, but not limited to, counsel retained in connection with the Fairness Hearing or the Claim Review Process.

2. Release. Each Class Notice shall have, as an appendix, a copy of the Release in a form substantially similar to the Release included as part of the attached Exhibit B.

3. Statement of Eligibility. Each Class Notice Package shall include an individual Statement of Eligibility in a form substantially similar to the one included as part of the attached Exhibit B.

4. Benefit Voucher. Each Class Notice Package shall include a Benefit Voucher for each applicable Policy and Annuity. The Benefit Voucher will be in a form substantially similar to the one included as part of the attached Exhibit B, and will set forth the estimated amount of ADB that will be available, as well as the terms of the ADB.

5. Election Form. Each Class Notice Package shall include an Election Form for each applicable Policy and Annuity, except as otherwise provided in this paragraph. Where applicable, the Election Form shall state clearly that (i) the Internal Replacement Relief will be provided only if the Class Member electing Internal Replacement Relief is eligible as set forth herein, the consequences of electing this form of relief if the Class Member is ineligible for it, and that merely submitting an Election Form electing Internal Replacement Relief will not ensure that any relief will be provided; (ii) the Claim Review Process provides for relief only if the Class Member has a valid Claim, and that merely submitting an Election Form electing the Claim Review Process will not ensure that any relief will be provided; and (iii) Class Members who choose the Claim Review Process instead of General Relief or Internal Replacement Relief bear the risk that they may be awarded no relief at all. Persons or entities who hold or held a participation interest in a Group Qualified Annuity will not receive the Election Form with respect

to that participation interest. The Election Form, as agreed upon by the Parties, will be in a form substantially similar to the one included as part of the attached Exhibit B.

6. Designation Form. Each Class Notice Package shall include a Designation Form for each applicable Policy and Annuity. The Designation Form, as agreed upon by the Parties, will be in a form substantially similar to the one included as part of Exhibit B.

7. Fact Sheet For Qualified Plans. Class Notice Packages sent to Qualified Plan Representatives shall include a Fact Sheet for Qualified Plans in a form substantially similar to the one included as part of the attached Exhibit B.

8. Plan Participant Information Statement. Class Notice Packages sent to persons or entities who hold or held a participation interest in a Group Qualified Annuity shall include a Plan Participant Information Statement substantially similar to the one included in the attached Exhibit B.

9. . Remailing and Additional Notice. Defendants shall, at their cost, (i) remail any Class Notice Package returned by the United States Postal Service with a forwarding address that is received by Defendants; (ii) attempt to find an address for any returned Class Notice Package that does not include a forwarding address, or retain an address research firm for this purpose; and (iii) if an address research firm is retained, provide a copy of any returned notice to the address research firm as soon as practicable following receipt; provided, however, that Defendants shall not be obligated to duplicate the efforts of an address research firm that undertakes a search for the Class Member's address prior to the initial mailing. The Hearing Order shall provide that, except as provided in the next sentence, (a) any retained address research firm shall provide to Defendants in connection with each returned notice, as soon as is practicable, either an updated address or a statement that, following due research, it has been

unable to obtain an updated address; and (b) Defendants shall remail the notice to any Class Member for whom the address research firm provides an updated address. Defendants shall not be required to remail the Class Notice Package to any Class Member whose name and address is reviewed for accuracy and correction by an address research firm prior to the original mailing of the Class Notice Package, except that they shall in any event comply with subparagraph (i), above.

C. <u>Publication Notice</u>

No later than 90 days before the Fairness Hearing, Defendants shall publish the Publication Notice, in a form substantially similar to the attached Exhibit C, once in the national editions of *The New York Times* and *The Wall Street Journal*, in *USA Today*, and the *Star-Tribune* (Minneapolis), and once, to the extent it is not duplicative of the above-listed publications, in the newspaper with the highest circulation in each of the 50 states and the District of Columbia. Defendants shall pay the costs associated with the Publication Notice. No later than 90 days before the Fairness Hearing, Defendants and Co-Class Counsel each shall, at their own expense, place the Publication Notice on their Internet websites: http://www.americanexpress.com, http://www.milberg.com, and http://www.locklaw.com.

D. <u>Post-Settlement Mailing</u>

Beginning on the Implementation Date (or earlier, at the Parties' discretion), Defendants shall, at their cost, send a Post-Settlement Mailing to each Class Member who timely elected the Claim Review Process.

1. The Post-Settlement Mailing shall instruct that a Class Member who wishes to submit a Claim must complete the enclosed Claim Form and return it to the specified address,

so that it is postmarked no later than 60 days after the date on which the Claim Form was mailed to the Class Member.

2. The Post-Settlement Mailing shall state that, for each Claim, the Claimant must submit (i) copies of all documents in the Claimant's possession or control related to the sale of the Policy or Annuity; (ii) copies of all documents in the Claimant's possession or control relating to his or her Policy, Annuity and Claim; (iii) the properly completed Claim Form; (iv) any other affidavits, documents or materials the Claimant wishes to submit; and (v) with respect to any Claims relating to the replacement of a Policy or Annuity, copies of all documents in the Claimant's possession or control relating to the life insurance policy or annuity contract that was replaced by the Policy or Annuity.

3. The Post-Settlement Mailing shall further state that a Claimant's failure, absent reasonable justification, to provide a completed, signed Claim Form and all relevant documents in his or her possession, custody or control may result in default or an adverse result in the Claim Review Process.

4. In addition, the Post-Settlement Mailing shall state that Class Members may choose not to submit a Claim Form and that, if they do not timely submit a Claim Form, they will automatically receive the General Relief for which they would have been eligible had they not elected the Claim Review Process on the Election Form, but they will no longer be eligible for the Claim Review Process.

E. Post-Mailing Reminder

Thirty days prior to the deadline to submit a completed Claim Form, Defendants shall, at their own expense, send a letter or postcard to each Class Member who timely elected the

Claim Review Process, reminding the Class Member of the deadline to submit completed Claim Forms.

F. Retention of Administrator

Upon consultation and approval of Co-Class Counsel, Defendants shall, at their cost, retain one or more Administrators to assist them in performing their obligations under this Agreement. The Parties anticipate that the Administrator will be Rust Consulting of Minneapolis and Faribault, Minnesota.

1. The Administrator(s) may assist Defendants with various administrative tasks, including, without limitation; (i) mailing or arranging for the mailing of the Class Notice to Class Members; (ii) arranging for publication of the Publication Notice; (iii) handling returned mail not delivered to Class Members; (iv) attempting to obtain, where necessary, updated address information for any Class Notices; (v) making any additional mailings required under the terms of this Agreement; (vi) arranging for and staffing a toll-free telephone number to provide pre-approved answers to questions from Class Members about the proposed settlement; (vii) answering written inquiries from Class Members and/or forwarding such inquiries to Co-Class Counsel or their designee; (viii) receiving and maintaining on behalf of the Courts any Class Member correspondence regarding requests for exclusion from the settlement; (ix) handling Election Forms and Designation Forms returned by Class Members in response to the Class Notice; (x) mailing or arranging for the mailing of the Post-Settlement Mailing and the Post-Mailing Reminder to Class Members who have timely elected the Claim Review Process; (xi) formulating and maintaining a database of all responses from Class Members; and (xii) otherwise assisting Defendants with administration of the settlement. Defendants shall pay the reasonable fees and expenses of the Administrator(s), as well as any other fees and expenses

incurred in performing all of the tasks described in this section. Co-Class Counsel and/or their designee shall be entitled to observe and monitor the performance of the Administrator.

2. The contract between Defendants and the Administrator shall obligate the Administrator to abide by the following performance standards:

a. The Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and neutrally describe, the provisions of this Agreement in communications with Class Members;

b. The Administrator shall provide prompt, accurate and neutral responses to inquiries from Co-Class Counsel or their designee, Defendants and/or Defendants' Counsel;

c. If, in the course of any communication with a Class Member, the Class Member requests that the Administrator and/or its agent or employee refer the communication to Defendants, or any of them, or Co-Class Counsel, then the Administrator and/or its agent or employee shall promptly fulfill such request; and

d. If, in the course of any communication with a Class Member, an agent or employee of the Administrator reasonably concludes that the Class Member is not satisfied with the information and/or assistance provided, then the agent or employee shall promptly refer the Class Member's communication to a supervisor on duty, a representative of Defendants, and Co-Class Counsel or their designee.

3. If the Administrator makes a material misrepresentation to, or fraudulently conceals requested material information from, Co-Class Counsel or Defendants' Counsel, then the Party to whom the misrepresentation is made (or, in the case of a concealment, the requestor of the information) shall have the right to demand that the Administrator immediately be replaced. If

the Administrator fails to perform adequately on behalf of Defendants or the Class, the Parties can agree to remove or replace the Administrator. All disputes regarding the retention or dismissal of the Administrator shall be resolved by the Courts.

G. Toll-Free Telephone Number for Settlement Information

Subject to the provisions of subsection F, above, the Administrator shall establish a telephone bank with a toll-free telephone number(s) for the sole purpose of responding to inquiries from Class Members about the Actions or the proposed settlement. The telephone bank will be staffed with live operators on weekdays, excluding holidays, during the hours of 7 a.m. to 7 p.m., Central Time, beginning the next business day after the Class Notice Package is first mailed to Class Members, as provided in section IX.B, above. The Administrator shall direct all callers with general product questions, product status requests, or complaints unrelated to the settlement or the Actions to call Defendants' toll-free number(s).

1. The Administrator, under the supervision of the Parties, shall be responsible for (i) staffing the telephone bank with telephone representatives; (ii) educating the telephone representatives about the background of the Actions, the product concepts relevant to the proposed settlement, and the terms and chronology of the proposed settlement; (iii) training the telephone representatives to answer inquiries; (iv) providing scripts and model questions and answers (prepared by Defendants and approved by Co-Class Counsel) for the telephone representatives to use in answering inquiries; (v) training the telephone representatives to refer Class Member inquiries to Co-Class Counsel or their designee if the Class Member so requests or where otherwise appropriate; (vi) training telephone representatives to refer callers with general product questions, product status requests, or complaints unrelated to the settlement or the Actions to call Defendants' toll-free customer service number; (vii) providing for a translation

service for use by non-English speaking Class Members to communicate with the Administrator when such Class Members call the toll-free number(s) for information regarding the settlement; (viii) providing callers access to a terminal for the hearing-impaired; and (ix) taking any other steps, in consultation with Defendants and Co-Class Counsel, to promote accurate and efficient communications with Class Members, Claimants and other policy and annuity owners.

2. Co-Class Counsel or their designees may monitor and participate in the education and training process for telephone representatives in the following manner:

a. All training and other communications between the Parties and telephone representatives and/or supervisors must be agreed upon by the Parties. Co-Class Counsel or their designee may observe any communications involving either the Administrator or Defendants (or their designee) and the telephone representatives and supervisors of telephone representatives, including any training and instruction. Co-Class Counsel or their designee may participate in all training sessions, speak with telephone representatives and supervisors, and provide additional comment and/or instruction to telephone representatives and/or supervisors as necessary. Defendants may observe any communications between Co-Class Counsel or their designee and the telephone representatives and supervisors. Either Party may request and obtain a pause in any training session or other communication with a telephone representative or supervisor to confer regarding the content of the communication or training.

b. Defendants and Co-Class Counsel or their designees shall agree on all telephone scripts to be used by the telephone representatives, and all training materials and presentations, whether written or oral, provided to telephone representatives. Defendants shall provide Co-Class Counsel with complete drafts of all telephone scripts, written materials or written presentations at least 10 days prior to their use in training. Co-Class Counsel shall

respond to Defendants with comments at least 2 business days prior to the intended use of such documents. Any proposed changes, modifications or additions to the telephone scripts or written training materials by either party must be provided to the other Party with sufficient time to permit meaningful comment prior to use. The Parties shall negotiate in good faith concerning any such changes, modifications or additions to facilitate providing clear, understandable and accurate information to Class Members.

c. In addition, Co-Class Counsel may provide an on-site presence at the telephone bank to monitor telephone representatives' handling of Class Members' telephone inquiries and also to speak directly with any Class Member who requests to speak to Co-Class Counsel. Each representative of Co-Class Counsel who provides such presence shall be fully informed about the terms of this settlement and all other pertinent matters, including the background of these Actions.

d. If, during a Class Member's telephone call to the toll-free number, the telephone representative deviates from the approved script and the monitoring Co-Class Counsel, or their designee, believes that such deviation was inaccurate, confusing or misleading, Co-Class Counsel or their designee may contact the Class Member to address the deviation.

H. Right of Communication with Claimants and Defendants' Customers

1. Subject only to the following conditions, the Parties agree that Defendants retain their right to communicate with and respond to inquiries from their present and former Company customers, including Class Members, orally and/or in writing, and they may do so through any appropriate Producers or others as described below.

2. Defendants' Producers retain the right to respond to inquiries from, and/or communicate with, their present or former customers, including Class Members. However,

Defendants shall (i) instruct their current Producers to refer Class Member inquiries about the settlement to the toll-free number established to respond to such inquiries and not to make recommendations with respect to the settlement; and (ii) instruct their current Producers that, during the period from the Execution Date through the conclusion of the Claim Review Process, they may not take previously existing original documents and/or records from Class Members. Co-Class Counsel may review and comment on advance copies of written communications with Producers about the proposed settlement, and may observe live, taped or broadcast presentations or special training programs directed at the Producers, if any, on the proposed settlement. Co-Class Counsel shall not be allowed to participate in such training or control the content thereof.

3. During the period following the Execution Date and prior to the deadline for submitting Election Forms by individual Class Members, Defendants will continue to process and respond to customer complaints, notwithstanding the fact that certain complaints may originate with Class Members and may concern claims that otherwise could be eligible for relief under the Claim Review Process; provided, however, that, after the last date on which preliminary approval of this Agreement is granted by the Courts, an offer of relief by a Defendant in response to a Class Member's complaint shall be accompanied by a statement, substantially in the form of the attached Exhibit G, advising the Class Member of the proposed settlement and explaining to the Class Member that any relief received by a Class Member prior to election of settlement relief may be offset against any award of relief that may be granted under the Internal Replacement Relief or the Claim Review Process, if elected. Participation in any governmental, administrative or regulatory enforcement proceeding will not affect a person's eligibility to be a Class Member.

4. Mass and/or generalized communications specifically about the proposed settlement directed to all Class Members or a group thereof — whether made by Co-Class

Counsel, Defendants, the Administrator or the Claim Evaluator, and whether by mail, the establishment or encouragement of Internet websites or other Internet communications, telephone scripts, or any other means — shall be made jointly with, or with the approval of, the other Party.

I. Media Communications

The form and content of any initial joint written statement, press release or other media notice to be issued in connection with the proposed settlement on or after the Execution Date shall be mutually agreed upon by the Parties. Any subsequent formal written statements, written press releases or other written media notices to be issued in connection with the proposed settlement shall be exchanged by the Parties sufficiently in advance of public release to provide the other Party with adequate time to prepare its own statement. Co-Class Counsel and Defendants shall ensure that any comments about or descriptions of the proposed settlement or its value or cost in the media or in any other public forum are balanced, fair and accurate.

J. Defendants' Dealings with Producers

Defendants are committed to treating their Producers fairly and will not retaliate or otherwise take adverse action against any Producer solely because of the Producer's cooperation or participation in the Claim Review Process pursuant to this Agreement or the disposition of Claims submitted in the Claim Review Process. Notwithstanding the preceding sentence, however, Defendants have the right and regulatory obligation to train, monitor, supervise and, where necessary, discipline their Producers and to take any remedial or other steps they deem appropriate to protect past, present and future policy owners and annuity owners and Defendants. In taking such steps, Defendants may take account of all relevant facts and circumstances of an individual case, including any facts and circumstances discovered during the Claim Review

Process. This subsection does not create any rights enforceable by Class Members or third parties, including Producers, under this Agreement or otherwise.

K. Co-Class Counsels' Communication with Producers

1. Where necessary, Co-Class Counsel may contact a Producer who is currently employed by or under contract with Defendants, or any of them, and who sold or serviced a Policy or Annuity that is the subject of a Claim, and Defendants shall cooperate in providing the Producer's current address and telephone number; provided, however, that any contact by Co-Class Counsel, or their designee, with any such Producer shall be made jointly with the Defendants.

2. Where necessary, Co-Class Counsel may contact a Producer who is no longer employed by or under contract with Defendants, or any of them, but who sold or serviced a Policy or Annuity that is the subject of a Claim. Where available, Defendants will provide Co-Class Counsel with the Producer's last known address and telephone number; provided, however, that any contact by Co-Class Counsel, or their designee, with any such Producer shall be made jointly with the Defendants.

L. Co-Class Counsels' Administrative Responsibilities

1. Co-Class Counsel shall be responsible for (i) retention of the Claim Evaluator; and (ii) upon receipt of the Claim Files by the Claim Evaluator, the implementation and conduct of the administration of the Claim Review Process. If it becomes necessary to replace the Claim Evaluator because of death, disability or otherwise, Co-Class Counsel shall be responsible for the retention of the replacement Claim Evaluator.

2. In completing the administrative tasks associated with the Claim Review Administration, Co-Class Counsel may, but are not required to, use the services of the