**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Case No. 00-1980 DSD/JMM

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

---

## FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT AND DISMISSING COMPLAINT

WHEREAS plaintiffs and defendants entered into a Stipulation of Settlement, with exhibits (collectively, the "Settlement Agreement"), dated September 18, 2000, to settle this class action litigation; and

WHEREAS on October 2, 2000, this Court and the Minnesota State Court for the County of Hennepin jointly entered an Order (the "Hearing Order") preliminarily certifying the putative class in this Action for settlement purposes under Minn. R. Civ. P. 23.01, 23.02(c), and 23.03(b) and Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2), ordering individual and publication notice to potential class members, scheduling a Fairness Hearing for March 6, 2001, and providing those persons with an opportunity either to exclude themselves from the settlement class or object to the proposed settlement; and

FILED 5-15-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd 5-15-01
Deputy Clerk's Initials ______

WHEREAS this Court and the Minnesota State Court for the County of Hennepin jointly held a Fairness Hearing on March 6, 2001 to determine whether to give final approval to the proposed settlement; and

WHEREAS this Court has issued Findings of Fact and Conclusions of Law Concering Class Action Settlement, dated MAY 15, 2001, granting final certification of the settlement class, approving the proposed settlement, and dismissing the settlement class members' claims (among other things); now, therefore,

Based on the submissions of the Parties and Class Members, on the evidence adduced at the Fairness Hearing, and on this Court's Findings of Fact and Conclusions of Law dated MAY 15, 2001, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. **Incorporation of Other Documents.** This Order and Judgment Approving Class Action Settlement incorporates and makes a part hereof:

(a) the Stipulation of Settlement dated September 18, 2000, and filed with the Courts on September 18, 2000 (the "Stipulation of Settlement");

(b) the following exhibits to the Stipulation of Settlement: (i) Exhibit A (Guidelines for Determining, Scoring and Awarding Relief in the Claim Review Process); (ii) Exhibit B (Class Notice Package); (iii) Exhibit C (Publication Notice); (iv) Exhibit D (Proposed Hearing Order); (v) Exhibit E (Confidentiality Agreement); (vi) Exhibit G (Statement to Accompany Post-Execution Date Responses to Customer Complaints); (vii) Exhibit H (Post-Settlement Claim Form Mailing); (viii) Exhibit I

(Post-Mailing Reminder); and (ix) Exhibit J (Claim Review Administrative Forms and Letters); and

(c) the Affidavit of Jeffrey D. Dahl, sworn to February 23, 2001, Exhibit __ to this Order and Judgment (describing the Class Notice Package, its distribution to Class Members, and the Publication Notice).

2. **Jurisdiction.** This Court has personal jurisdiction over all Class Members (as defined below) and has subject matter jurisdiction over this Action and all claims and causes of action resolved by this settlement, including all the Claims and Causes of Action referred to in the Release. Accordingly, this Court has jurisdiction to approve the proposed settlement, grant final certification of the Class, release Claims and Causes of Action as set forth in the Release, and dismiss this Action on the merits and with prejudice.

3. **Final Class Certification.** The Class that was previously certified preliminarily is hereby finally certified for settlement purposes under Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2). The Class consists of (A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, issued at any time during the Class Period; or (ii) an ownership interest in an individual deferred annuity contract or a participation interest in a Group Qualified Annuity issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and

commonwealths, that was in force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity. The Class does not include (i) any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants; or (ii) any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under Section 1035 of the Internal Revenue Code.

Notwithstanding the foregoing, the Class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any persons or entities who make a timely election to be excluded from the proposed Class with respect to a particular Policy or Annuity otherwise included within the Class; (ii) any persons or entities who have an ownership interest in (a) a Policy that was terminated prior to the Eligibility Date due to the death of the insured and on which death benefits were paid; (b) an Annuity that was terminated prior to the Eligibility Date by reason of the death of the annuitant; (c) a Policy or Annuity that was issued, but not accepted or funded, or was returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; (d) a Policy or Annuity that was rescinded as part of a reissue of a new life insurance policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; (e) a Policy or Annuity that is the subject of a release signed by any person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity; (f) a life insurance policy that was a term life

insurance policy or graded premium whole life insurance policy; (g) an annuity contract that was settled (*i.e.*, annuitized) prior to the inception of the Class Period; or (h) an annuity contract that was issued as an immediate annuity. A list of those persons who have validly excluded themselves from the Class, and who therefore are not bound by this Order and Judgment, is on file with this Court as Plaintiffs' and Defendants' Joint Submission of Exclusions From Class, dated March 21, 2001, and is incorporated herein and made a part hereof. A small number of requests for exclusion were deficient and subject to "cure" letters. The Parties will supplement their submission once those outstanding issues are resolved.

4. **Appointment of Co-Class Counsel and Lead Counsel and Adequacy of Representation.** The law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Lockridge Grindal Nauen, P.L.L.P. are hereby appointed Co-Class Counsel; the law firm of Milberg Weiss Bershad Hynes & Lerach LLP is hereby appointed Lead Counsel; and the Class representatives have fully and adequately represented the Class for purposes of entering into and implementing the settlement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

5. **Class Notice.** Notice was provided to the Class in accordance with the Hearing Order. Individual notice was sent by first-class mail, postage prepaid, to the last known address of the Policy and Annuity Owners and, in the case of a Group Qualified Annuity, to persons or entities who hold or held a participation interest in the Group Qualified Annuity, all as reflected by Defendants' records as maintained at the Corporate Office or by the results of any searches performed by a vendor hired by Defendants to update addresses of such persons or entities. In cases of pending litigation against the Defendants, notice was also mailed to any legal

counsel known to represent the Class Member. Also in accordance with the Hearing Order, publication notice was published and notice was posted on the internet at the web sites for Defendants and Co-Class Counsel. This Court finds that the notice outlined above:

(a) constituted the best practicable notice to Class Members under the circumstances of this Action;

(b) was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this class action; (ii) their right to exclude themselves from the Class and the proposed settlement; (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class' representation by Plaintiffs or Plaintiffs' counsel, and/or the award of attorneys' fees); (iv) their right to appear at the Fairness Hearing -- either on their own or through counsel hired at their own expense — if they did not exclude themselves from the Class; and (v) the binding effect of the Order and Judgment in this Action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

(c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and

(d) fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

6 **Final Settlement Approval.** The terms and provisions of the Settlement Agreement, including all exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the Parties and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. **Early Implementation.** The Defendants are hereby authorized, in their sole discretion but in consultation with Co-Class Counsel, and without requiring further approval of this Court, to implement the settlement before the Final Settlement Date (as defined in the Settlement Agreement), in which case all provisions in the Settlement Agreement specifying actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date the Defendants elect to implement the settlement.

8. **Appeal After Early Implementation.** If the Defendants choose to exercise their discretion to implement the settlement before the Final Settlement Date, anyone seeking to appeal from this Court's rulings must first (i) request to intervene upon a representation of inadequacy of counsel; (ii) request a stay of implementation of the settlement; and (iii) post an appropriate bond. Unless a would-be appellant satisfies all three of these requirements, the Defendants are authorized to implement the settlement before the Final Settlement Date even if such implementation would moot any appeal.

9. **Post-Settlement Mailing**. The Parties are hereby directed to mail the Post-Settlement Mailing materials substantially in the form attached as Exhibit H to the Settlement Agreement, as provided by the Stipulation of Settlement.

10. **Securities Registration Not Required.** This Court hereby confirms that, to the extent that any rights provided under this settlement (including but not limited to the right to designate another person as eligible to receive the ADB under the Settlement Agreement) might be deemed to be a security under section 3(a)(10) of the Securities Act of 1933, as amended, registration of any such right would not be required by virtue of this Court's approval of the settlement.

11. **No Tax Advice Being Given.** This Court hereby confirms that the Parties and their counsel are not making any representations or providing any opinions or advice concerning the tax consequences of the proposed settlement or the election of any remedies under the settlement to individual Class Members, and the Parties and their counsel shall not be held liable for any tax consequences or elections.

12. **Binding Effect.** The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors, assigns, guardians, attorneys, trustees, and representatives, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Release.

13. **Release.** The following Release, which is also set forth in Section XII of the Stipulation of Settlement, is expressly incorporated herein in all respects, is effective as of the Final Settlement Date, and forever discharges the Releasees from any Claims or Causes of Action that arise from or relate to the Released Conduct:

A. Release and Waiver

1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releasees (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).

2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or relate to any of the matters described in sections XII.B.2.(i)-(xiii) of the Stipulation of Settlement; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in the Stipulation of Settlement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable — notwithstanding that the parties have chosen Minnesota law to govern the Stipulation of Settlement — Plaintiffs and the Class Members hereby agree that these principles (including Cal. Civ. Code Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such

matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. <u>Release and Waiver -- Definitions</u>

1. "Claims and Causes of Action" (as used in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or

Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held in any Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company[1] and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

---

[1] "Company" means IDS Life Insurance Company, IDS Life Insurance Company of New York, the American Express Company, American Express Financial Corporation, American Express Financial Advisors, American Express Service Corporation, American Express Trust Company, American Centurion Life Assurance Company, American Enterprise Life Insurance Company and American Partners Life Insurance Company, collectively.

14. **Permanent Injunction**. All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct (as that term is defined in the Settlement Agreement) as to that Policy or Annuity, and (ii) organizing or soliciting the participation of any Class Members in a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit or other proceeding based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct as to that Policy or Annuity. This Court finds that issuance of this permanent injunction is necessary and appropriate in aid of this Court's jurisdiction over the Action and to protect and effectuate this Order and Judgment.

15. **Enforcement of Settlement.** Nothing in this Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement; nor shall anything in this Order and Judgment preclude Plaintiffs or Class Members from participating in the Claim Review Process described in the Settlement Agreement if they are entitled to do so under the terms of the Settlement Agreement.

16. **<u>Attorneys' Fees and Expenses</u>.** The Court hereby grants Co-Class Counsels' application for an award of attorneys' fees and reimbursement of their disbursements and expenses for their past and future work on the Actions in the amount of $28 million, to be paid by Defendants to Lead Counsel. The $28 million consists of approximately $27, 380, 000 in fees and $620,000 in reimbursement of expenses. Such fees and expenses are to be paid by Defendants within 10 days after the last date of entry of the Order and Judgment in the Actions, subject to the conditions set forth in the Stipulation of Settlement. Plaintiffs' counsel shall set aside in a Qualified Settlement Fund ten percent, or $2,738,000, of the fee award pending substantial completion of the administration of the Claim Review Process. Plaintiffs' counsel shall advise this Court when payments are made to Class Members in the Claim Review Process, and may draw down this final ten percent (plus any accumulated interest) at that time without further order of this Court. Lead Counsel, in its sole discretion, shall allocate and distribute this award of attorneys' fees and expenses among counsel for the Class.

17. **<u>No Other Payments</u>.** The preceding paragraph of this Order and Judgment covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Co-Class Counsel or any other counsel representing Plaintiffs or Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to the Actions, the settlement of the Actions, the administration of such settlement, and/or the Released Conduct except to the extent otherwise specified in this Order and Judgment and the Stipulation of Settlement.

18. **Modification of Settlement Agreement.** The Parties are hereby authorized, without needing further approval from this Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement -- including without limitation, the Post-Settlement Mailing materials and the forms to be used in the Claim Review Process -- as are consistent with this Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement.

19. **Retention of Jurisdiction.** This Court has jurisdiction to enter this Order and Judgment. Without in any way affecting the finality of this Order and Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,

(a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);

(b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining

Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

(c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

*provided, however,* that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under paragraphs 7 and 18 above.

20. **No Admissions.** This Order and Judgment, and the Settlement Agreement (and any other document referred to here, or any action taken to carry out this Order and Judgment) shall not be used or construed as an admission or concession by the Defendants of any actual or potential fault, wrongdoing, liability or damages whatsoever, and shall not be used as any evidence or inference of any fault, wrongdoing, liability or damage against the Defendants. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by Defendants as to any actual or potential fault, wrongdoing, liability or damages and shall not be offered or received in evidence or used for impeachment in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Order and Judgment and the Settlement Agreement; *provided, however,* that this Order and Judgment and the Settlement Agreement may be filed in any action against or by the Defendants or Releasees (as defined in the Stipulation of Settlement) to support a defense of *res judicata*, collateral estoppel, release,

waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

21. **Dismissal of Action.** The Action, including all individual and Class claims resolved in them, are hereby dismissed on the merits and with prejudice against Plaintiffs and all other Class Members, without fees or costs to any party except as otherwise provided in this Order and Judgment.

22. **Bond Requirement.** Any appeal of the orders and judgment of this Court in this action shall be conditioned upon the posting of a bond by the proposed appellant of $500,000.

SO ORDERED this 15th day of May, 2001. LET THE JUDGMENT BE ENTERED ACCORDINGLY.

The Honorable David S. Doty
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

FORMS\APPEAL.NO CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

**MADDOX HARGETT & CARUSO, P.C.**
Representing Investors

Mark E. Maddox[2]
Thomas A. Hargett[3]
Steven B. Caruso[3]
Thomas K. Caldwell[5]
Keith L. Griffin[1]
Barbara Crane Smith[4]

10100 Lantern Road
Suite 150
Fishers, IN 46037
317.598.2040
317.598.2050 fax

www.investorprotection.com

**New York**
80 Broad Street
Fifth Floor
New York, NY 10004
[illegible]
[illegible]

**Cleveland**
6685 Beta Drive
Cleveland, OH 44143
[illegible]
[illegible]

June 30, 2006

George H. Friedman, Esq.
Director of Arbitration
NASD Office of Dispute Resolution
One Liberty Plaza, 27th Floor
New York, NY 10006

**Via UPS 2nd Day Air**

RE: **Initial Statement of Claim for James Sheets, Individually and as Trustee of His IRAs ("Claimant") v. American Express Financial Advisors, Inc. ("Respondent")**

Dear Mr. Friedman:

This firm has been retained by James Sheets to recover the substantial losses that he has sustained in his investment accounts as a result of the actions, misrepresentations, frauds, omissions, mismanagement, negligence and negligent supervision of American Express Financial Advisors, Inc.[1] ("AEFA").

Accordingly, we have prepared this Initial Statement of Claim, as required by Rule 10314(a) of the Arbitration Code of the NASD, so that you may promptly commence this proceeding in accordance with the provisions of the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq..

## Address of Claimant

Claimant's mailing address is, and was at all times material to this action, 8491 E. 900 S., Fairmount, Indiana 46928.

## Designation of Venue

The Claimant requests that the venue for the hearing of this proceeding be set for Indianapolis, Indiana before a panel of three (3) arbitrators.

[1] N/K/A Ameriprise Financial Services, Inc. CRD Number 6363.

**<u>Claimant's Accounts at Issue</u>**

The Claimant is bringing this arbitration action on behalf of the following brokerage account numbers at AEFA, and all other related accounts, if any:

James Sheets IRA Account # 91 4426
James Sheets Rollover IRA Account # 18 8652
James Sheets Rollover IRA Account # 38 4689

**<u>Background of Claimant</u>**

James Sheets is 66 years old and married to Thelma Sheets. Mr. and Mrs. Sheets are both high school graduates. Neither attended college. Mr. Sheets worked for 41 years at RCA/Thomson Consumer Electronics in Marion, Indiana. He retired on April 1, 1999 from his supervisory position. Mrs. Sheets is also retired. The couple lives on a fixed income.

Prior to opening his account with Respondent, Mr. Sheets had very limited investing experience. What experience he did have was limited to his participation in his employer's 401k plan. Like many investors, Mr. Sheets' participation in this plan consisted primarily of choosing from a list of different investment products. The plan was largely administered by his employer. As such, Mr. Sheets was at all times material to this matter, and remains, an unsophisticated and inexperienced investor who relied on the experience and knowledge of Respondent to protect his investments and achieve his investment objectives.

**<u>Description of Respondent and Eugene Kostrewa</u>**

At all times material to the issues herein, Respondent AEFA was a broker-dealer registered with the United States Securities & Exchange Commission ("SEC"), National Association of Securities Dealers, Inc. ("NASD") and various other state regulatory authorities including, but not limited to, Indiana.

At all times material to this matter, Eugene Kostrewa ("Agent Kostrewa") was employed as a financial advisor by Respondent. During this time, Agent Kostrewa was a registered representative in the State of Indiana. Agent Kostrewa remains employed by AEFA. Agent Kostrewa's CRD number is 1360766.

**Dealings Between Claimant and Respondent**

In 1994, in anticipation of his upcoming retirement, Mr. Sheets began asking friends and co-workers for recommendations on financial planners and advisors. As a result of these inquiries, Mr. Sheets was subsequently referred to Agent Kostrewa and AEFA.

In August of 1994, Agent Kostrewa met personally with Mr. and Mrs. Sheets in their home to discuss retirement planning. During that meeting, Agent Kostrewa suggested rolling over Claimant's RCA retirement funds to AEFA.[2] Following Agent Kostrewa's advice, Mr. Sheets agreed to rollover his RCA retirement funds to AEFA in the Fall of 1994. In fact, Agent Kostrewa personally picked up the rollover check at the Sheets' residence.

At the time Agent Kostrewa took possession of the rollover check, he told both Mr. and Mrs. Sheets that he would invest the funds for the "safest security" while receiving a good return. Mr. Sheets, having almost no investing experience, was not sure what Agent Kostrewa meant by his statement. However Claimant did not question Agent Kostrewa because he felt Agent Kostrewa was the expert and he trusted that his advisor was acting in Mr. Sheet's best interests.

Between 1995 and early 1999, Claimant had several meetings with Agent Kostrewa in the Kokomo AEFA branch office. At one of these meetings, Agent Kostrewa asked Claimant to bring all his financial information so that Agent Kostrewa could set up a "retirement plan" for him. Mr. Sheets agreed and brought all the requested information.

Agent Kostrewa contacted Mr. Sheets soon after this meeting and stated that the Sheets' were in sound financial condition and that, as such, Mr. Sheets could afford to retire at age 59 ½. Additionally, Agent Kostrewa told Claimant that he and his wife would not have to worry about money and that they were in such a good position that they could use their social security as "play money" once they began to receive it.

Following Agent Kostrewa's recommendation, Mr. Sheets retired on April 1, 1999 from Thomson Consumer Electronics. In May and June of that year, Mr. Sheets rolled over his 401k and Thomson retirement to AEFA.

---

[2] Claimant would turn 55 a month later and would be able to transfer his RCA retirement at that time.

Following the advice and recommendations of Agent Kostrewa, Mr. Sheets invested a large percentage of his account in variable annuities. Mr. Sheets knew very little about variable annuities. He relied on the representations of Agent Kostrewa regarding their features and suitability. Unfortunately Agent Kostrewa misrepresented the product he sold the Claimant and never discussed the risks of annuities and/or the numerous regulator pronouncements concerning the products suitability. From December 2000 through December 2003, Claimant lost $67,486 from the annuities sold to him by Respondent and Agent Kostrewa. [See Exhibit 1].

In addition to the annuities, Respondent and its agent also sold Claimant a significant number of mutual funds. Many of these mutual funds contained large positions in technology firms. The funds purchased in Mr. Sheets' account were mostly growth funds that did not meet his objective, as a retired individual, of safety. Mr. Sheets lost $67,594 from the overly aggressive and unsuitable mutual funds recommended and sold by the Respondent and Agent Kostrewa. [See Exhibit 2]. All told, Claimant's accounts lost $125,037 from the actions, omissions, misrepresentations and negligence of AEFA and its agent. [See Exhibit 3].

## Breach of Contract

Based upon information and belief, the Claimant entered into written contracts with Respondent at the time his accounts were opened. These contracts are believed to state that Respondent would supply brokerage services in a legal, ethical and professional manner and in accordance with applicable industry rules and regulations. The Respondent breached these contracts to the detriment of the Claimant by violating various NASD conduct rules and the Indiana Securities Act.

## Breach of Fiduciary Duty and Constructive Fraud

It is clearly established in Indiana that a broker-dealer is a fiduciary that owes its customers a high degree of care in transacting their business. Holtz v. J.J.B. Hilliard W.L. Lyons, Inc., 185 F.3d 732 (7th Cir. 1999), Schwartz v. Oberweis, 826 F.Supp. 280, 287 (N.D. Ind. 1993). A fiduciary must disclose all material information which it learns concerning the subject matter of that fiduciary relationship. Here, it is clear Respondent invited Claimant to enter into a relationship of trust, confidence and dependence with representative and that trust, confidence and dependence was abused.

The Claimant placed complete trust and confidence in the Respondent's honesty and integrity to handle his investments with care and expertise. The Claimant exclusively

relied upon the Respondent's superior experience and knowledge in the securities industry to satisfy these duties. The Respondent, however, breached the relationship of trust and confidence by handling the Claimant's accounts in a manner that was not in his best interests. Respondent failed to give the Claimant material information about his accounts, and Mr. Sheets was not able to make informed and independent decisions about his investments.

In addition, having entrusted his investments to Respondent, the Claimant was entitled to rely on Respondent's fiduciary obligation to manage the investments in accordance with his investment objectives. AEFA breached their fiduciary duty by failing to properly supervise Agent Kostrewa and failing to inform the Claimant of the inappropriateness of his, and their, misconduct.

These breaches of a fiduciary duty form the basis of a claim for constructive fraud in Indiana. Constructive fraud exists where the parties to a contract have a special confidential or fiduciary relation that affords the power and means for one to take undue advantage of or exercise due influence over another. Clearly, Mr. Sheets was taken advantage of by the Respondent in this case.

## Respondeat Superior

It is well established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. For an intentional act committed by an employee to be within the scope of employment, the act must be calculated to facilitate or promote the business for which the servant was employed. Here, it is evident that Agent Kostrewa was employed by Respondent AEFA. Agent Kostrewa's conduct in question was performed to further AEFA's business interests. Therefore, AEFA is liable for Agent Kostrewa's misconduct and breaches of duty to the Claimant under the common law theory of respondeat superior.

## Negligence and Negligent Supervision

Respondent owed the Claimant a duty to use reasonable care in the handling of his account and in the supervision of Agent Kostrewa. AEFA failed to exercise reasonable care in the handling of Claimant's accounts and in the supervision of Agent Kostrewa. The injury the Claimant suffered, the dissipation of capital assets entrusted to AEFA could and should have been prevented.

George H. Friedman
**RE: Initial Statement of Claim for James Sheets v. American Express Financial Advisors, Inc.**
June 30, 2006
Page 6

## Violations Under the Indiana Securities Act

The conduct of Respondent directly violated the Indiana Securities Act at IC 23-2-1-12 and IC 23-2-1-19 in that AEFA and Agent Kostrewa made material misrepresentations and omissions regarding the securities that they sold the Claimant and never discussed the significant risks of placing Claimant in an unsuitable annuity and unsuitable annuity sub-accounts. Furthermore, Respondent violated numerous regulations under the Indiana Securities Act by making unsuitable investments, failing to properly supervise Agent Kostrewa and failing to inform Claimant of the inappropriateness of the implemented investment strategy.

## Violations of NASD Conduct Rules

Respondent's conduct constituted willful violations of Section 2110 of the NASD Conduct Rules in that, in connection with the purchase or sale of securities, the Respondents have responsibility to observe high standards of commercial honor and just and equitable principles of trade; and engaged in acts, practices and course of business which operated as a breach of such responsibility.

Respondent's conduct constituted willful violations of Section 2120 of the NASD Conduct Rules in that they had the responsibility not to effect any transaction in, or induce the purchase of, any security by means of any manipulative, deceptive or other fraudulent device or contrivance; and engaged in acts, practices and course of business which operated as a breach of such responsibility.

Respondent's conduct violated NASD Conduct Rule 2310, which prohibits a broker-dealer from recommending a security to a customer unless it has a reasonable belief that the security is suitable for that customer. It imposes a duty on the broker-dealer to take financial situation, risk threshold, investment sophistication, investment objectives, and other securities holdings of its customers into account when recommending a security to them.

Furthermore, Respondent violated NASD Conduct Rule 3010 by failing to provide reasonable supervision over Agent Kostrewa. It is apparent by the continued and uninterrupted conduct of Agent Kostrewa that he improperly recommended unsuitable investments in the Claimant's accounts as he had no meaningful supervision from his broker-dealers or supervisors.

## Regulator Comments on Variable Annuities

On June 19, 2002, the SEC issued a report informing investors about variable annuities. [See Exhibit 4]. The report states that the two main advantages of variable annuities are its tax-deferred status and the death benefit. However, investors are cautioned that most IRAs and 401(k) plans offer the same tax advantages as variable annuities. Therefore, for someone like the Claimant with a 401(k), the only reason for a variable annuity is because they want the death benefit for a beneficiary. However, Mr. Sheets was not interested in the death benefit. He wanted an investment that would provide him income during his retirement. Had Agent Kostrewa properly explained the investment, Mr. Sheets would have told him that the death benefit of the variable annuity did not interest him.

In addition to the SEC report, on May 27, 2003, the NASD issued an Investor Alert regarding the aggressive marketing of variable annuities. [See Exhibit 5]. The NASD cautioned investors to beware of aggressive marketing efforts of brokers pushing variable annuities. Unfortunately, Mr. Sheets was unaware of these alerts and cautions prior to his investment with Respondent and subsequently experienced significant losses of his retirement funds.

## Other Comments on Variable Annuities

In addition to the SEC and NASD, many news outlets and investor publications have recently warned investors to beware of variable annuities. For example, Liz Pulliam Weston wrote recently in an article published on MSN.com, that "[h]igh fees, low flexibility and 'horrendous' tax treatment make variable annuities less attractive than ever, except for the people who sell them." [See Exhibit 6]. Furthermore, Jonathan Clements' January 21, 2004 Wall Street Journal article questions the tax benefits that are often cited by brokers when selling variable annuities. [See Exhibit 7]. These are just two in a growing number of reports criticizing variable annuities and questioning their suitability for many investors.[1]

## Conclusion

Because of the Respondent's actions, omissions, misrepresentations, negligence and failure to properly supervise, it has become liable to the Claimant on a number of legal grounds, including the following:

[1] A more complete library of similar information will be presented to the panel at the hearing of this matter.

1. Unsuitable investments;

2. Failure to reasonably supervise;

3. Misrepresentations and omissions:

4. Breach of Contract;

5. Constructive fraud/breach of fiduciary duty;

6. Respondeat superior;

7. Negligence and negligent supervision;

8. Violations of the Indiana Securities Act; and

9. Violations of NASD Conduct Rules.

The losses suffered by the Claimant are straightforward. As a result of the aforementioned acts, omissions and violations by the Respondent, the Claimant, James Sheets, requests that the members of the Arbitration Panel render an award in his favor and against Respondent for:

1. the sum of $125,037, or such other and greater amount as may be determined at the hearing of this matter, representing the actual losses that he has sustained from the unsuitable purchases in the accounts in question;

2. the sum to be determined, at the hearing of this matter, representing the imposition of both pre-judgment and post-judgment 8% interest thereon pursuant to the Indiana Securities Act;

3. the sum to be determined, at hearing of this matter, representing the imposition of the statutory remedies and the reimbursement of all reasonable attorneys' fees and costs of arbitration that Claimant has sustained as a result of the misconduct set forth in this Statement of Claim pursuant to the Indiana Securities Act;

4. the sum to be determined, at the hearing of this matter, representing the imposition of punitive damages against Respondent as a result of the misconduct set forth in this Statement of Claim;

5. the sum to be determined, at the hearing of this matter, representing the imposition of all forum fees solely against Respondent as a result of the misconduct set forth in this Statement of Claim pursuant to the Indiana Securities Act; and

6. such other and further relief as may be deemed just, proper and equitable under the circumstances presented.

We appreciate your attention to commencement of this arbitration. If you should have any questions, please do not hesitate to contact me.

Very truly yours,

Keith L. Griffin

Keith L. Griffin

cc: James Sheets