**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESON, ARNOLD MORK, ISABELLA MORK, RONDALD MELCHERT and SUSAN MELCHERT, On behalf of themselves and all others Similarly situated,

Plaintiffs,

Civil Case No. 00-1980 (DSD/JMM)

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO ENFORCE CLASS ACTION SETTLEMENT**

---

**(ORAL ARGUMENT WAIVED)**

## PRELIMINARY STATEMENT

John Gavula and Beverly Tanenhaus ("Claimants"), the Claimants in an arbitration captioned *John Gavula and Beverly Tanenhaus v. American Express Financial Advisors et al.*, DR No. 06-02540 ("the arbitration") currently pending before the National Association of Securities Dealers ("NASD"), have pressed claims based on losses sustained in annuity and mutual fund accounts. Two of these accounts were annuities purchased in 1999. The remainder of the accounts, from which stemmed the

much larger part of the losses, consist of mutual funds and an annuity purchased in August of 2000. Claimants' Statement of Claim – a statement of the relevant facts and prayer for relief required under the NASD's Code of Arbitration Procedure – documents numerous instances of unsuitability, fraud and misrepresentation at the point-of-sale, both in 1999 and 2000. The Statement of Claim further documents repeated instances of negligence, breach of contract, failure to supervise, and fraud occurring throughout the latter half of 2001 through 2003.

On September 18, 2005, the parties to the class action entitled *Benacquisto et al. v. American Express Financial Corporation et al*., Civ. No. 00-1980 DSD/JMM agreed to settle and release the claims therein. The *Benacquisto* release applies only to annuities and related investment products purchased during the class period, which ended on February 29, 2000. The release does not apply to mutual funds. Nor does the release apply to annuities purchased after February 29, 2000. Furthermore, regardless of when an annuity was purchased, the release does not apply to claims based on acts and circumstances that arose for the first time after the end of the class period.

In the arbitration, Claimants seek to recover for losses that fall outside the scope of the *Benacquisto* release: (1) for losses in mutual funds; (2) for losses in an annuity purchased in August 2000; (3) for losses in annuities purchased in 1999 that occurred after the close of the class period in February 2000 and are based on facts and circumstances arising after the close of the class period. More specifically, Claimants seek recovery for losses arising out of Ameriprise's and its registered representatives' omissions and misrepresentations occurring after the close of the class period.

Nevertheless, Ameriprise now brings a motion that apparently seeks to bar Claimants' entire arbitration. At times in its motion papers, Ameriprise appears to limit its arguments only to those annuities purchased in 1999. Yet certain passages in the Memorandum of Law, Motion, and proposed form of Order all sweep more broadly. Upon Claimants' request to clarify the scope of the motion, Ameriprise would not concede that the motion was limited to the 1999 annuities without the opportunity to review the facts.

Accordingly, Claimants must respond to the motion as if it seeks to bar arbitration of every claim in the Statement of Claim. That relief, if granted, would necessarily broaden the scope of the *Benacquisto* release beyond any plausible interpretation of its terms. Nothing in the *Benacquisto* release even arguably bars the great bulk of the relief Claimants seek in the arbitration. The *Benacquisto* release, on its face, allows Claimants to bring claims for mutual funds and annuities purchased after February 2000.

Moreover, even with respect to the 1999 annuities, Ameriprise has wholly overlooked the fact that Claimants are relying upon circumstances arising for the first time after February 2000. Under the terms of the release, Claimants are entitled to arbitrate such claims, regardless of when they purchased these annuities. The motion should therefore be denied in its entirety.

Furthermore, because the question presented consists of a question of law – contractual interpretation of the *Benacquisto* release and the application of its terms to the underlying arbitration – the Court should reach this conclusion on the papers without the need for a further hearing.

## STATEMENT OF FACTS

The issues herein hinge on a comparison of the scope of the *Benacquisto* settlement with the underlying claims in the arbitration. In addition, the Court's ruling depends on clarification as to the scope of Ameriprise's motion.

### A. The Written Terms of the *Benacquisto* Release Extend Only to Annuities Purchased During the Class Period, and Do Not Extend to Facts and Circumstances Arising For the First Time After the Close of the Class Period

The *Benacquisto* settlement released claims against Ameriprise relating to the sale of "Annuities" and "Policies" to the public. (Ameriprise Ex. 3 at 53-58.) The release defines "Annuities" to mean a "fixed or variable deferred annuity contract..." and does not define annuity to include a mutual fund account. (Ameriprise Ex. 3 at 6.) The release defines "Policies" to include a "cash value life insurance policy or policy..." and does not define policy to include a mutual fund account. (Ameriprise Ex. 3 at 15.)

The release defines the class members to include members of the public who had ownership interests in annuities and related life insurance products during the "class period." (Ameriprise Ex. 3 at 18-20.) The release defines the class "period" as the period running from January 1, 1985 through February 29, 2000, inclusive. (Ameriprise Ex. 3 at 9.) The release provides three forms of relief to class members and, in exchange, releases Ameriprise from various claims asserted in the *Benacquisto* action or claims arising out of "released conduct." (Ameriprise Ex. 3 at 53-58.) Sections XII.B.2.(i)-(xiii) define the released conduct to include various actions or omissions at the point of sale, including misrepresentation, suitability, initial allocation of investment funds, marketing, existence of surrender charges and commissions, etc. (Ameriprise Ex. 3 at 57-58.) The

released conduct, Section XII.B.2.(xiv) also includes the administration of or servicing of any Policy or Annuity after purchase. (Ameriprise Ex. 3 at 58.)

However, Section XII.A.3, i.e. pages 54 through 55 of the *Benacquisto* release, include a critical modification of its scope. Specifically, the release states that:

> Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or relate to any of the matters described in sections XII.B.2.(i)-(xiii) herein...
>
> (Ameriprise Ex. 3 at 54-55.)

**B. The Underlying Claims in the Arbitration Include Claims to Recover Losses Sustained in Mutual Funds and an Annuity Purchased After the Class Period, As Well As Losses Arising from Facts and Circumstances Arising After the Close of the Class Period.**

Claimants brought this arbitration in May 2006, seeking recovery for losses in their accounts and investments with Ameriprise sustained over the course of several years. To initiate the arbitration, Claimants filed a Statement of Claim with the NASD. (Ameriprise Ex. 2.)

*1. Identity of the Account at Issue in the Arbitration*

The Statement of Claim documents losses in several accounts. (Ameriprise Ex. 2 at 4-10.) Many of these are mutual funds, including, for example, the Riversource New Dimensions Fund, Account no. 010-6802-3619-2, the Riversource Diversified Equity

Income Fund, Account no. 014-3802-3619-1, and the Strategic Portfolio Service Advantage IRA Account no. 000-1650-0852-21, as well as previous holdings that were liquidated and moved into these accounts. (Van Riper Declaration Ex. B at 4-7.) As such, these accounts are outside the scope of the *Benacquisto* release as written.

Three of the accounts are annuities, one of which, the Retirement Advisor Variable Annuity, Account no. 931-0662-9092-4, was purchased on August 4, 2000. (Van Riper Declaration Ex. A at 3); (Van Riper Declaration Ex. B at 8-11.) As such this annuity is outside the Class Period, and thus outside the scope of the *Benacquisto* release as written. Moreover, when the Claimants attempted to resolve this dispute through Ameriprise's internal grievance procedures, personnel in Ameriprise's Compliance Department denied recovery for any losses in this annuity based in part on their inaccurate and indefensible conclusion that the release barred claims based on this August 2000 annuity. (Van Riper Declaration Ex. F at 1-2.) As Exhibit F demonstrates, Ameriprise wrongly concluded that "no additional relief" could be had for any of Claimants' annuities, even "if the case is found to be justified" because all of the annuities were class-barred. (Van Riper Declaration Ex. F at 1.)

Two of the annuities, both Flexible Portfolio Annuities, Account no. 0931-0632-1267-4 and Account no. 0931-0632-1235-7, were purchased in February 1999. (Van Riper Declaration Ex. A at 1-2.) However, as this Opposition will demonstrate, the Statement of Claim seeks losses in these accounts that are attributable to the type of conduct carved out of the release in Section XII.A.3.

The bulk of the monetary losses at issue in the arbitration were to the mutual funds and to the annuity purchased outside the class period. (Ameriprise Exhibit 3 at 3); (Van Riper Declaration Ex. A); (Van Riper Declaration Ex. B.) The two annuities purchased within the class period were purchased with an initial combined investment of approximately $26,000, as shown at the bottom of Claimants' Exhibit A. (Van Riper Declaration A at 1-2.) In contrast, the August 2000 variable annuity was purchased for $30,000. (Van Riper Declaration A at 3.) Moreover, the Claimants invested even more heavily in mutual funds. (Van Riper Declaration Ex. B at 4-7.)

### *2. Factual Allegations in the Statement of Claim*

The Statement of Claim charts the entire course of the relationship between Claimants and Ameriprise, from their initial contacts in late 1998 through the inception of the underlying arbitration. (Ameriprise Exhibit 3 at 2-10.) Throughout the Statement of Claim, Claimants allege and (where possible at the time of filing) document many omissions, misrepresentations, and instances of failure to supervise against Ameriprise and its registered representatives. (Id.) These allegations can be arranged in three non-exclusive factual categories: (1) misrepresentations and omissions at the initial consultations and at the point-of-sale in 1999; (2) misrepresentations and omissions at subsequent consultations when John Gavula rolled-over his retirement fund in August 2000; (3) misrepresentations and omissions following the August 2000 roll-over.

The latter category includes the registered representatives' failure to monitor the accounts at issue, allowing them to waste away unchecked during the latter half of 2000 through March 2003, a failure to contact the Claimants in any meaningful sense while the

accounts declined throughout that same period, and Ameriprise's failure to supervise its registered representatives during this period. (Ameriprise Exhibit 3 at 8-10.) The Statement of Claim also documents how, even after assuring Claimants in March 2003 that they would take action to staunch the losses in the accounts, the registered representatives essentially let the accounts languish. (Ameriprise Exhibit 3 at 9.) In addition, Ameriprise's Compliance Department's gross misapplication of the *Benacquisto* release to bar claimants internal grievance for the August 2000 annuity constitutes additional misconduct, including failure to adequately supervise. (Van Riper Declaration Ex. F at 1.)

### C. The Scope of Ameriprise's Motion is Unclear and Potentially Bars Arbitration of Claims for Mutual Funds and Annuities Purchased After the Class Period, and Not Merely Point-of-Sale Claims for Annuities Purchased in 1999.

As explained in the immediately preceding section, the vast majority of the Claimants' funds were invested in either mutual funds or an annuity purchased after the class period. The Statement of Claim focuses on these accounts. Yet Ameriprise has selectively quoted from the Statement of Claim to focus the Court's attention on the first category of allegations in the Statement of Claim: misconduct relating to the point-of-sale of the 1999 annuity purchases. (Ameriprise Memorandum of Law in Supp. at 7.) Ameriprise presumably does so to support the heart of its argument: that, notwithstanding the documentation of numerous incidents of misconduct not barred by the *Benacquisto* release, the "gravamen" of the Statement of Claim is the purchase of two annuities in 1999. (Id.) Suffice it to say, this attempt at mind reading completely misses the point: Claimants seek to recover on the basis of conduct not released by the settlement.

In addition, the proposed form of Order and the Motion itself seek to broadly enjoin the arbitration. Most disturbingly, the form of Order states that the Court enjoins arbitration of claims arising from accounts "including but not limited to" the 1999 annuities, despite the clear fact that only the two 1999 annuities are even arguably within the terms of the release. The Motion itself is broader and the Introduction to the Memorandum of Law contains no limiting language whatsoever. When Claimants sought to clarify that Ameriprise only sought, at most, an Order barring arbitration of losses in the 1999 annuities, Ameriprise would not do so without an opportunity to further review the matter. (Van Riper Declaration at 11.) However, the deadline for filing opposition has arrived and, accordingly, Claimants must respond to the motion as if it seeks to bar arbitration of every claim in the Statement of Claim. Regardless of its scope, however, the Court should deny the motion in its entirety.

## ARGUMENT

The Statement of Claim is a document required for the initiation of an arbitration before the NASD. Rule 10314 of NASD's Code of Arbitration Procedure provides that:

> The Claimant shall file with the Director of Arbitration an executed Submission Agreement, a Statement of Claim the controversy in dispute, together with the documents in support of the Claim, and the required deposit.

Here, the Statement of Claim starts at the beginning of Claimants' relationship with Ameriprise and its registered representatives, starting with their initial meetings in 1999 and finishing before the filing of the arbitration. Ameriprise somehow infers from this that the "gravamen" of the arbitration settles on point-of-sale claims relating to annuities purchased in 1999, and then urges this Court to enjoin the entire arbitration because such

claims are barred by the *Benacquisto* release. In fact, the arbitration seeks recovery for losses to mutual funds, losses to an annuity purchased after the class period, and losses to annuities purchased during the class period that arise from subsequent facts and circumstances occurring for the first time after the close of the class period. The Release bars none of these claims.

**I. The Bulk of Claimants' Arbitration Claims, Seeking Recovery for Losses in Mutual Funds and Annuities Purchased After the Class Period, Are Unarguably Beyond the Scope of the *Benacquisto* Release**

The *Benacquisto* release simply does not extend to the sale of mutual funds. The release applies only to "Annuities" and "Policies" – neither of which are defined to include mutual funds. As such, Ameriprise cannot argue in good faith that the release bars Claimants' claims for losses sustained in their mutual fund accounts. These accounts include:

(1) Riversource New Dimensions Fund,
Account no. 010-6802-3619-2
(2) Riversource Diversified Equity Income Fund,
Account no. 014-3802-3619-1
(3) Strategic Portfolio Service Advantage, IRA
Account no. 000-1650-0852-21[1]

The Statement of Claim documents Respondent's misrepresentations and unsuitable recommendations in connection with these mutual fund accounts; the fact that such misconduct coincided with the sale of annuities is no bar to recovery.

Similarly, the *Benacquisto* release does not extend to the sale of annuities after February 29, 2000, the end of the class period. This Court has expressly held that

---

[1] The accounts at issue in the underlying arbitration also include previous holdings that were liquidated and transferred into these accounts.

annuities sold after the class period are not barred, rejecting Ameriprise's attempt to extend the scope of the release up through the date of the settlement itself. *Benacquisto et al. v. Ameriprise et al.*, Case No. 00-1980 (DSD/JMM) (D. Minn. Jan. 5, 2006) (Van Riper Declaration Ex. E, at 5 n. 3.). John Gavula's Retirement Advisor Variable Annuity, Account no. 931-0662-9092-4, was purchased in August 2000, and Ameriprise's own internal documents confirm this. The Statement of Claim documents at length that annuities were unsuitable recommendations for the Claimants. The Statement of Claim further documents misrepresentations and omissions made in the sale of the 1999 annuities that persisted with the sale of the 2000 annuity, including failure to clearly explain the features of annuities in full (although the registered representatives did eventually cure some of their earlier failures to explain certain features of annuities).

In a similar matter settled in the District of New Jersey, *In Re The Prudential Insurance Company of America Sales Practices Litigation*, Case No, 95-4704 (DRD) (D.N.J. May 5, 2006), the Court held that a release of claims relating to the sale of life insurance products by Prudential Insurance Company was not broad enough to completely bar a lawsuit when the lawsuit included non-released claims. (Van Riper Declaration Ex. C at 9.) Instead, the Court expressly held that its injunction would not bar any claims for products purchased after the class period or types of investments not included in the release.

Here, in its January 5, 2006 Order, the Court implied that similar reasoning should apply to the *Benacquisto* settlement and that an arbitration stating claims for products purchased outside the class period should proceed with those claims. (Van Riper

Declaration Ex. E, at 5 n. 3.). The Court did not squarely hold this way because it rejected Ameriprise's motion entirely. Here, should the Court decide not to deny the motion outright, the Court should nevertheless expressly hold that the release does not under any circumstances bar the arbitration of claims based on mutual funds or on the August 2000 annuity. As the next section demonstrates, however, the Court should deny the motion outright.

### II. The Remainder of Claimants' Claims Seek Recovery of Losses in the 1999 Annuities Caused and Exacerbated by Facts and Circumstances First Arising After the Class Period

The *Benacquisto* release does not extend to conduct arising for the first time after the end of the class period. Citing the plain language of Section XII.A.3 of the release, this court has specifically noted that the release does not extend to conduct after the class period. (Van Riper Declaration Ex. E at 5-6.) On that basis, this Court has denied a previous motion to enforce the release because of Ameriprise's failure to address the nature of the claims at issue and to demonstrate that the claims do not arise from independent facts and circumstances arising after the class period. (Id.) Once again, Ameriprise has ducked the issue, completely failing to address the scope of Section XII.A.3 and its application to the facts alleged in the Statement of Claim.

In fact, the Statement of Claim alleges that, with respect to all the accounts, including the 1999 annuities, Ameriprise and its registered representatives failed to monitor the accounts as they declined precipitously in value throughout late 2000 and into 2003. In addition, Ameriprise and its registered representatives failed to make meaningful contact with the Claimants during this time period, only leaving a single

phone message over the course of these years and not contacting the Claimants in writing at all. Furthermore, in March 2003, the registered representatives assured Claimants that they would take action to minimize further losses in the accounts. The registered representatives then failed to do so. In addition, when Claimants filed an internal grievance, the Ameriprise Compliance Department dismissed their claims for the 2000 annuity out of hand on the baseless assumption that the release applies to the August 2000 annuity. (Van Riper Declaration, Ex. E at 1-3.) Thus Ameriprise further breached its supervisory and fiduciary duties when handling the grievance. The Statement of Claim applies various legal theories of recovery to these facts, all of which arise after the class period, including breach of contract, negligence, breach of fiduciary duty and, on Ameriprise's part, failure to supervise its registered representatives.

In other words, for every one of Claimant's accounts, the Statement of Claim presses claims that arise for the first time after the end of the class period within the meaning of Section XII.A.3. In addition, the claims relate to the performance and servicing of the account after the close of the class period within the meaning of Section XII.A.3, and, further, do not relate to the point-of-sale released conduct enumerated in Section XII.B.2(i)-(xiii). Because this misconduct, carved out of the scope of the release, caused losses to the two Flexible Portfolio Annuities purchased in 1999 (Account no. 0931-0632-1267-4 and Account no. 0931-0632-1235-7), Ameriprise's effort to block Claimant's right to recover for these losses must fail.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Ameriprise's motion to enforce class action settlement in all respects. Further, because the issue presents a purely legal question of contractual interpretation, the court should decide the issue on the papers submitted without the need for further hearing or argument. Claimants further request such other relief as the Court deems equitable and just.

Dated: October 17, 2006

s/Peter D. Gray
Peter Gray, Esq., (#25809X)
Rider Bennett, LLP
33 South Sixth Street, Suite 4900
Minneapolis, MN 55402
Phone: 612-340-8968
Fax: 612-337-7668
pdgray@riderlaw.com

Michael J. Van Riper, Esq.
Tressler, Soderstrom, Maloney
& Priess, LLP
744 Broad Street, Ste. 1510
Newark, New Jersey 07144
Phone: 973-848-2912
Fax: 973-623-0405
MVanRiper@tsmp.com