# EXHIBIT A

Ameriprise Financial

## ONLINE SERVICE & TRANSACTIONS

### Activity - FLEXIBLE PORTFOLIO ANNUITY

Close Window

| Ownership Information | |
|---|---|
| Account #: | 0000 0931 0632 1267 0 004 |
| Ownership: | JOHN J GAVULA |
| Plan Type: | IRA - INDIVIDUAL- ACTIVE |

| Pending Transaction |
|---|
| There are no pending transactions... |

**Transaction History**

| Accounting Date | Description | Amount |
|---|---|---|
| 12/31/2005 | YEAR-END VALUE | $13,936.98 |
| 02/15/2005 | CONTRACT CHARGE | $30.00 |
| 12/31/2004 | YEAR-END VALUE | $13,600.43 |
| 02/13/2004 | CONTRACT CHARGE | $30.00 |
| 12/31/2003 | YEAR-END VALUE | $12,690.75 |
| 04/02/2003 | INVESTMENT CHANGE | $1,771.26 |
| 04/02/2003 | INVESTMENT CHANGE | $1,906.49 |
| 02/14/2003 | CONTRACT CHARGE | $30.00 |
| 12/31/2002 | YEAR-END VALUE | $10,143.34 |
| 02/15/2002 | CONTRACT CHARGE | $30.00 |
| 12/31/2001 | YEAR-END VALUE | $12,948.14 |
| 07/13/2001 | INVESTMENT CHANGE | $2,490.01 |
| 02/15/2001 | CONTRACT CHARGE | $30.00 |
| 12/31/2000 | YEAR-END VALUE | $16,795.32 |
| 02/15/2000 | CONTRACT CHARGE | $30.00 |
| 12/31/1999 | YEAR-END VALUE | $21,048.98 |
| 05/19/1999 | ASSET ALLOCATION | $16,306.19 |
| 02/16/1999 | INITIAL PAYMENT | $16,288.66 |

View Corporate Entities and Important Disclosures, Web Site Rules and Regulations, Privacy Statement and About E-mail Fraud.
Copyright © 2005 Ameriprise Financial. All Rights Reserved. Users of this site agree to be bound by the terms of the Ameriprise Web Site Rules and Regulations.

Ameriprise Financial

ONLINE SERVICE & TRANSACTIONS

## Activity - FLEXIBLE PORTFOLIO ANNUITY

Close Window

| Ownership Information | |
|---|---|
| Account #: | 0000 0931 0632 1235 7 004 |
| Ownership: | BEVERLY R TANENHAUS |
| Plan Type: | IRA - INDIVIDUAL- ROLLOVER |

**Pending Transaction**

There are no pending transactions...

**Transaction History**

| Accounting Date | Description | Amount |
|---|---|---|
| 12/31/2005 | YEAR-END VALUE | $8,997.15 |
| 02/10/2005 | CONTRACT CHARGE | $30.00 |
| 12/31/2004 | YEAR-END VALUE | $8,791.03 |
| 02/10/2004 | CONTRACT CHARGE | $30.00 |
| 12/31/2003 | YEAR-END VALUE | $8,214.91 |
| 04/02/2003 | INVESTMENT CHANGE | $1,146.74 |
| 04/02/2003 | INVESTMENT CHANGE | $1,234.27 |
| 02/10/2003 | CONTRACT CHARGE | $30.00 |
| 12/31/2002 | YEAR-END VALUE | $6,577.88 |
| 02/08/2002 | CONTRACT CHARGE | $30.00 |
| 12/31/2001 | YEAR-END VALUE | $8,408.13 |
| 07/13/2001 | INVESTMENT CHANGE | $1,616.94 |
| 02/09/2001 | CONTRACT CHARGE | $30.00 |
| 12/31/2000 | YEAR-END VALUE | $10,917.47 |
| 02/10/2000 | CONTRACT CHARGE | $30.00 |
| 12/31/1999 | YEAR-END VALUE | $13,692.35 |
| 05/19/1999 | ASSET ALLOCATION | $10,607.17 |
| 02/11/1999 | INITIAL PAYMENT | $10,623.54 |

View Corporate Entities and Important Disclosures, Web Site Rules and Regulations, Privacy Statement and About E-mail Fraud.
Copyright © 2005 Ameriprise Financial. All Rights Reserved. Users of this site agree to be bound by the terms of the Ameriprise Web Site Rules and Regulations.

Ameriprise Financial

## ONLINE SERVICE & TRANSACTIONS

### Activity - RET ADV V ANN Q

Close Window

| Ownership Information | |
|---|---|
| Account #: | 0000 0931 0662 9092 1 004 |
| Ownership: | JOHN J GAVULA |
| Plan Type: | IRA - INDIVIDUAL- ROLLOVER |

| Pending Transaction |
|---|
| There are no pending transactions... |

**Transaction History**

| Accounting Date | Description | Amount |
|---|---|---|
| 08/04/2005 | CONTRACT CHARGE | $30.00 |
| 08/04/2004 | CONTRACT CHARGE | $30.00 |
| 08/04/2003 | CONTRACT CHARGE | $30.00 |
| 04/02/2003 | FUND TRANSFER (MANUAL) | $16,686.53 |
| 08/04/2002 | CONTRACT CHARGE | $30.00 |
| 08/04/2001 | CONTRACT CHARGE | $30.00 |
| 08/04/2000 | REGULAR PAYMENT | $30,000.00 |
| 08/04/2000 | PAYMENT CREDIT | $300.00 |

View Corporate Entities and Important Disclosures, Web Site Rules and Regulations, Privacy Statement and About E-mail Fraud.
Copyright © 2005 Ameriprise Financial. All Rights Reserved. Users of this site agree to be bound by the terms of the Ameriprise Web Site Rules and Regulations.

# EXHIBIT B

077962

# Statement of Financial Accounts

**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Client Number** 1793 5496 4 001
MR JOHN J GAVULA

**Client Number** 1793 5499 8 001
MRS BEVERLY R TANENHAUS

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
www.americanexpress.com/finaccts

**Direct your service and investment questions to**
HEMA JOSHI CFP
MEHTA AND JOSHI
A financial advisory branch
19 Mc Pherson Dr
Flemington NJ 08822-2643
908-237-5199
908-237-5199 FAX

## Statement Mailed to

MR JOHN J GAVULA
MRS BEVERLY R TANENHAUS
498 SAYRE DRIVE
PRINCETON NJ 08540-5855

## Value of Accounts

**as of December 31, 2004**

**$68,036.03**

## American Express Portfolio Summary

**Where your assets are invested by product**



| Percent of all current products | Product type | Value one year ago | Value last statement | Current value |
|---|---|---|---|---|
| 0% | Money Market Funds and Cash | $285.60 | $148.03 | $135.59 |
| 43% | Mutual Funds | $25,425.30 | $28,036.16 | $28,921.22 |
| 0% | Securities | $0.00 | $0.00 | Not applicable |
| 57% | Annuities | $37,526.10 | $38,337.67 | $38,979.22 |
| 0% | Certificates | Not applicable | Not applicable | Not applicable |
| 0% | Insurance | Not applicable | Not applicable | Not applicable |
| 0% | Limited Partnerships and REITs | Not applicable | Not applicable | Not applicable |
| 0% | Additional Products | Not applicable | Not applicable | Not applicable |
| **100%** | **Total value of all accounts** | **$63,237.00** | **$66,521.86** | **$68,036.03** |

## It's your financial future. It's time to feel good about it.

Financial planning is a deeply personal journey. Your American Express financial advisor can help you feel more confident about that journey -- with a roadmap tailored to your unique situation. Contact your advisor today for a portfolio check-up and make sure you're on the right path to a better financial future.

# Statement of Financial Accounts

**January 1, 2004 - December 31, 2004**

**Account Service Information**

For more complete information on any product or service, including associated fees and expenses, contact us for a prospectus. Please read it carefully before you invest your money.

Direct inquiries to:
American Express Financial Advisors
Client Service and Clearing Organization
70100 AXP Financial Center
Minneapolis MN 55474
800-862-7919

***Please review the detail pages of this statement carefully. If you think your statement is wrong, is missing account information, or if you need more information about a transaction, transfer, or other activity on the statement, telephone or write us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement with an error or missing information. If you do not notify us within 60 days, we will understand that you agree with the statement. If you have other concerns or complaints regarding your accounts, please contact us at the address above.***

When contacting us, please provide the following information:

- Your name and account or group number.
- The issue, error or transfer about which you are unsure. Explain as clearly as you can why you believe there is a concern or why you need more information.
- The dollar amount of the suspected error.

If you believe there are errors or discrepancies in the detail sections of your statement related to American Express Bank, FSB, we will investigate your complaint and correct any error promptly. If your request takes more than 10 business days, we will credit your account for the amount you believe to be in error, until the time that we can complete our investigation.

To determine whether preauthorized transfers have been made to your account, call us at 800-297-7378.

An investor brochure describing the Public Disclosure Program is available on the NASD Web Site (NASDR.com) or by calling 800-289-9999.

**Other Account Information**

For more complete information on any product or service, including associated fees and expenses, contact your financial advisor for a prospectus. Please read it carefully before you invest or send money.

American Express Financial Advisors Inc., IDS Life Insurance Company, IDS Life Insurance Company of New York, and AXP Certificate Company are not banks, and the securities they offer are not backed or guaranteed by any bank, nor are they insured by the FDIC.

IDS Life Insurance Company is not, and is not required to be a member of the Securities Investor Protection Corporation (SIPC).

American Express Company is separate from American Express Financial Advisors Inc., *member NASD and SIPC*, and is not a broker-dealer.

American Express Financial Advisors uses and combines information concerning investment, insurance and annuity accounts that members of a primary household group have with American Express Financial Advisors and its affiliates to provide a consolidated statement of accounts and, for certain products and services, advantageous pricing or fees. A primary household group consists of an individual client, his or her spouse or domestic partner, and/or their unmarried children under age 21 who reside at the same address. If you prefer to have a statement covering only accounts that you own and not to participate in householding, call the service number on your statement or your financial advisor.

Values for accounts summarized in this statement may vary because of market fluctuations, account activity or outstanding loans. Some values may be subject to surrender charges, market value adjustments or other fees.

The prices used to provide values, yields and income are "estimates" obtained from outside services believed to be reliable. The values do not necessarily represent prices at which the securities could have been purchased or sold. Because they are estimates, we cannot guarantee these values. Those securities that do not have prices available at the time of the statement are not included in the total account value.

Brokerage, investment, and financial advisory services are made available through American Express Financial Advisors Inc. (AEFA), *Member NASD and SIPC*. American Express Bank, FSB (AEFSB), member FDIC, provides certain banking features to AEFA. AEFSB deposit products are FDIC-Insured up to $100,000 per customer. The American Express Insured Money Market Account is an FDIC-insured product provided by Reserve Management Corporation with an omnibus account with AEFSB. Charge Cards are made available through American Express Bank, FSB. Only AEFA is a broker-dealer.

**Investment products are not insured by the FDIC, are not deposits or obligations of or guaranteed by a financial institution, involve investment risks including possible loss of principal, and may fluctuate in value.**

**Securities Protection**

Securities are protected by Securities Investor Protection Corporation (SIPC) up to a maximum of $500,000 per customer which includes a $100,000 limit on claims for cash held in the account. We have obtained excess coverage on total brokerage account assets up to $24.5 million. Assets with IDS Life Insurance Company, assets with other affiliated insurance companies and mutual fund assets held outside of your brokerage account are not covered by SIPC.

**DPP and REIT Securities Disclosure**

Positions held in direct participation program securities (e.g., partnerships, limited liability companies, and real estate investment trusts which are not listed on the national exchange or the Nasdaq) are generally illiquid; no formal trading market exists for these securities; and their values will be different than the purchase price. Unless otherwise indicated, the values of units owned that are shown herein for such securities have been provided by and represent estimates of the investor's interest in the net assets of the program. Unless otherwise indicated, the number of units owned shown herein have been previously provided by the management of each program and might not necessarily reflect subsequent activity. Therefore, the estimated values shown herein may not necessarily be realized upon the sale of securities and the number of units shown may not necessarily reflect your current holdings.

077962

AMERICAN EXPRESS

**Statement of Financial Accounts**
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919
**Online**
www.americanexpress.com/finaccts

# Summary of Accounts by Product

| | Symbol | Account number | Value one year ago | Value last statement | Current value |
|---|---|---|---|---|---|
| **Money Market Funds and Cash** | | | **$285.60** | **$148.03** | **$135.59** |
| **JOHN J GAVULA IRA** | | **OWNERSHIP TOTAL** | **$285.60** | **$148.03** | **$135.59** |
| STRATEGIC PORTFOLIO SERVICE ADVANTAGE, IRA | | 0000 1650 0852 5 021* | $285.60 | $148.03 | $135.59 |
| **Mutual Funds** | | | **$25,425.30** | **$28,036.16** | **$28,921.22** |
| **JOHN J GAVULA and BEVERLY R TANENHAUS** | | **OWNERSHIP TOTAL** | **$10,769.07** | **$11,624.36** | **$11,990.68** |
| AXP NEW DIMENSIONS FUND CLASS A | **INNDX** | 0010 6802 3619 6 002 | $4,898.50 | $4,966.03 | $5,049.78 |
| AXP DIVERSIFIED EQUITY INCOME FUND CLASS A | **INDZX** | 0014 3802 3619 1 002 | $5,870.57 | $6,658.33 | $6,940.90 |
| **JOHN J GAVULA IRA** | | **OWNERSHIP TOTAL** | **$14,656.23** | **$16,411.80** | **$16,930.54** |
| STRATEGIC PORTFOLIO SERVICE ADVANTAGE, IRA | | 0000 1650 0852 5 021* | $14,656.23 | $16,411.80 | $16,930.54 |
| **Annuities** | | | **$37,526.10** | **$38,337.67** | **$38,979.22** |
| **JOHN J GAVULA IRA** | | **OWNERSHIP TOTAL** | **$12,690.75** | **$13,216.96** | **$13,600.43** |
| FLEXIBLE PORTFOLIO ANNUITY, IRA | | 0931 0632 1267 0 004 | $12,690.75 | $13,216.96 | $13,600.43 |
| **JOHN J GAVULA Rollover IRA** | | **OWNERSHIP TOTAL** | **$16,620.44** | **$16,577.33** | **$16,587.76** |
| AXP RETIREMENT ADVISOR VARIABLE ANNUITY, ROLL IRA | | 0931 0662 9092 1 004 | $16,620.44 | $16,577.33 | $16,587.76 |
| **BEVERLY R TANENHAUS Rollover IRA** | | **OWNERSHIP TOTAL** | **$8,214.91** | **$8,543.38** | **$8,791.03** |
| FLEXIBLE PORTFOLIO ANNUITY, ROLL IRA | | 0931 0632 1235 7 004 | $8,214.91 | $8,543.38 | $8,791.03 |

* Current value as of 12/31/2004

# IRA/CESA Plan Contributions

| | | |
|---|---|---|
| **Plan Owner** | **JOHN J GAVULA**<br>**IRA Plan** | |
| **Plan Contributions** | Made for 2004<br>Rollover 2004 | $0.00<br>$0.00 |
| **Plan Owner** | **BEVERLY R TANENHAUS**<br>**Rollover IRA Plan** | |
| **Plan Contributions** | Made for 2004<br>Rollover 2004 | $0.00<br>$0.00 |
| **Plan Owner** | **JOHN J GAVULA**<br>**Rollover IRA Plan** | |
| **Plan Contributions** | Made for 2004<br>Rollover 2004 | $0.00<br>$0.00 |

AMERICAN EXPRESS

Statement of Financial Accounts
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919
**Online**
www.americanexpress.com/finaccts

# Mutual Funds

## AXP New Dimensions Fund

**Account number** 0010 6802 3619 6 002

**Account owner(s)**
JOHN J GAVULA AND
BEVERLY R TANENHAUS JT

**Date account opened** 01/07/1999

**Current account value on 12/31/2004** $5,049.78

| | |
|---|---|
| Class A shares owned | 209.274 |
| Current price per share | $24.130 |
| Estimated average cost per share* | $30.82 |
| Cash invested to date* | $5,350.00 |
| Reinvested dividends | $1,100.80 |
| Cash dividends | $0.00 |
| Accrued dividends | $0.00 |
| Market gain (loss)** | ($1,401.02) |
| Cash withdrawn*** | $0.00 |
| Account Value | $5,049.78 |

* This number is an estimate and should not be used in your tax calculations. Consult a professional tax advisor when calculating taxes.

** Includes realized gain (loss), unrealized market appreciation (depreciation), and sales charges.

*** Includes redemptions, exchanges, cash dividends, taxes withheld, custodial fees and conversions to class A.

**** Information regarding transaction execution time and capacity will be furnished upon written request.

### Your account performance

**Average annual return as of 12/16/2004**

| 1 Year | 5 Year | 10 Year | Since Acct Open |
|---|---|---|---|
| 6.24% | ( 3.91%) | N/A | ( 1.02%) |

The performance information shown represents past performance and is not a guarantee of future results. The value of your investment and returns will fluctuate so that your shares, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance information shown. You may obtain performance information current to the most recent month-end by visiting www.americanexpress.com/funds. You should consider the investment objectives, risks, and charges and expenses of the fund carefully before investing.

### Account activity****

| Date | Activity | Class of shares | Number of shares | X Price per share | = | Dollar amount |
|---|---|---|---|---|---|---|
| 06/24/2004 | Reinvested dividend at $0.0272 per share | A | 0.237 | $23.690 | | $5.61 |
| 12/20/2004 | Reinvested dividend with capital gains<br>Long-term capital gains at $0.1795 per share<br>Dividend income at $0.1618 per share | A | 2.958 | $23.810 | | $70.42 |

077962

Statement of Financial Accounts
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919
**Online**
www.americanexpress.com/finaccts

## AXP Diversified Equity Income Fund

**Account number 0014 3802 3619 1 002**

**Account owner(s)**
JOHN J GAVULA AND
BEVERLY R TANENHAUS JT

**Date account opened** 01/07/1999

**Current account value on 12/31/2004** **$6,940.90**

| | |
|---|---|
| Class A shares owned | 623.621 |
| Current price per share | $11.130 |
| Estimated average cost per share* | $9.83 |
| Cash invested to date* | $5,000.00 |
| Reinvested dividends | $1,131.22 |
| Cash dividends | $0.00 |
| Accrued dividends | $0.00 |
| Market gain (loss)** | $809.68 |
| Cash withdrawn*** | $0.00 |
| Account Value | $6,940.90 |

* This number is an estimate and should not be used in your tax calculations. Consult a professional tax advisor when calculating taxes.

** Includes realized gain (loss), unrealized market appreciation (depreciation), and sales charges.

*** Includes redemptions, exchanges, cash dividends, taxes withheld, custodial fees and conversions to class A.

**** Information regarding transaction execution time and capacity will be furnished upon written request

### Your account performance

**Average annual return as of 12/16/2004**

| 1 Year | 5 Year | 10 Year | Since Acct Open |
|---|---|---|---|
| 21.74% | 7.12% | N/A | 5.38% |

The performance information shown represents past performance and is not a guarantee of future results. The value of your investment and returns will fluctuate so that your shares, when redeemed, may be worth more or less than their original cost. Current performance may be lower or higher than the performance information shown. You may obtain performance information current to the most recent month-end by visiting www.americanexpress.com/funds. You should consider the investment objectives, risks, and charges and expenses of the fund carefully before investing.

### Account activity****

| Date | Activity | Class of shares | Number of shares | X Price per share | = | Dollar amount |
|---|---|---|---|---|---|---|
| 03/23/2004 | Reinvested dividend at $0.0354 per share | A | 2.293 | $9.470 | | $21.71 |
| 06/23/2004 | Reinvested dividend at $0.0352 per share | A | 2.199 | $9.870 | | $21.70 |
| 09/23/2004 | Reinvested dividend at $0.0400 per share | A | 2.545 | $9.730 | | $24.76 |
| 12/22/2004 | Reinvested dividend at $0.0448 per share | A | 2.508 | $11.090 | | $27.81 |

AMERICAN EXPRESS

Statement of Financial Accounts
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919
**Online**
www.americanexpress.com/finaccts

**Strategic Portfolio Service Advantage, IRA**
**For the period November 27, 2004 - December 31, 2004**

**Account number** 0000 1650 0852 5 021

**Account owner(s)**
AMERICAN EXPRESS TRUST COMPANY
C/O JOHN J GAVULA
AS CUSTD FOR THE JOHN J GAVULA IRA

Date account opened 08/04/2000

**Account Highlights**

| | |
|---|---|
| **Total Portfolio Value** | **$17,066.13** |
| **Money Market and Cash Balance** | **$135.59** |

**Cash flow summary from November 27, 2004 to December 31, 2004**

| | |
|---|---|
| Opening money market and cash balance | $148.03 |
| Cash deposits | $0.00 |
| Cash withdrawals | ($12.58) |
| Net total income | $136.54 |
| Asset activity debit | ($136.40) |
| Asset activity credit | $0.00 |
| **Closing money market and cash balance** | **$135.59** |

**Review of account on December 31, 2004**

| | |
|---|---|
| Value last statement | $16,559.83 |
| Money market and cash | $135.59 |
| Mutual funds | $16,930.54 |
| **Total portfolio value** | **$17,066.13** |
| Value change from last statement | $506.30 |

**Dividends and interest summary**

| | Current | Year-to-date |
|---|---|---|
| Dividends | $136.54 | $193.28 |
| Interest | $0.00 | $0.00 |
| **Net total income** | **$136.54** | **$193.28** |

**Portfolio Holdings**

| | Estimated market value | Estimated % yield | Estimated annual income |
|---|---|---|---|
| **Money Market and Cash**<br>The Reserve Funds - Primary Fund, Class R | $135.59 | 1.108% | $2 |
| **Value of Money Market and Cash** | **$135.59** | | **$2** |

077962

AMERICAN EXPRESS

# Statement of Financial Accounts

**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919
**Online**
www.americanexpress.com/finaccts

| | Symbol | Quantity | Price | Estimated market value | Estimated Cost Basis* | Estimated Unrealized Gain/(Loss)* | Estimated % yield | Estimated annual income |
|---|---|---|---|---|---|---|---|---|
| **Mutual Funds** | | | | | | | | |
| AIM TECHNOLOGY INV<br>AIM FAMILY OF FUNDS | FTCHX | 67.036 | $25.440 | $1,705.39 | $8,617.18 | ($6,911.79) | N/A | N/A |
| BRAMWELL GROWTH<br>BRAMWELL FUNDS | BRGRX | 156.385 | $19.860 | $3,105.80 | $2,556.18 | $549.62 | N/A | N/A |
| STRONG ADV M/CAP GRW - Z<br>STRONG FUNDS | SMDCX | 252.534 | $13.830 | $3,492.54 | $6,737.47 | ($3,244.93) | N/A | N/A |
| 1ST EAGLE OVERSEAS - A<br>FIRST EAGLE FUNDS | SGOVX | 396.271 | $21.770 | $8,626.81 | $5,369.84 | $3,256.97 | 1.1% | $95 |
| **Value of Mutual Funds** | | | | **$16,930.54** | | | | **$95** |
| **Total Portfolio Value** | | | | **$17,066.13** | | | | **$97** |

* This number is an estimate and should not be used in your tax calculations. Consult a professional tax advisor when calculating taxes. Estimated cost basis is not available for all positions

## Activity

### Cash Deposits

| Date | Description | Amount credited | Date | Description | Amount credited |
|---|---|---|---|---|---|
| | | | | **Total Cash Deposits** | **$0.00** |

### Cash Withdrawals

| Date | Description | Amount debited | Date | Description | Amount debited |
|---|---|---|---|---|---|
| 12/20/2004 | /AF WRAP FEE | ($12.58) | | **Total Cash Withdrawals** | **($12.58)** |

### Dividends and Interest

| Date | Activity | Description | Amount debited | Amount credited |
|---|---|---|---|---|
| 12/10/2004 | Cash div | 1ST EAGLE OVERSEAS - A | | $93.53 |
| 12/10/2004 | STC Gain | 1ST EAGLE OVERSEAS - A | | $1.95 |

*05080779621231* #077962 S#50F8 #I



## (continued)
## Activity

### Dividends and Interest

| Date | Activity | Description | Amount debited | Amount credited |
|---|---|---|---|---|
| 12/10/2004 | LTC Gain | 1ST EAGLE OVERSEAS - A | | $40.92 |
| 12/31/2004 | Dividend | 1.108% PRIMARY MNY MKT-R | | $0.14 |
| | | **Total Dividends and Interest** | | **$136.54** |

### Asset Activity

| Date | Activity | Description | Quantity | Price | Estimated cost basis* | Estimated realized gain(loss)* | Amount debited | Amount credited |
|---|---|---|---|---|---|---|---|---|
| 12/10/2004 | Reinvest | 1ST EAGLE OVERSEAS - A FIRST EAGLE FUNDS | 4.494 | $20.810 | | | ($93.53) | |
| 12/10/2004 | Reinvest | 1ST EAGLE OVERSEAS - A FIRST EAGLE FUNDS | 0.094 | $20.810 | | | ($1.95) | |
| 12/10/2004 | Reinvest | 1ST EAGLE OVERSEAS - A FIRST EAGLE FUNDS | 1.966 | $20.810 | | | ($40.92) | |
| | | | | | **Total Asset Activity** | | **($136.40)** | **$0.00** |

Amount debited and Amount credited includes applicable commissions and fees. For bonds and CD's, Amount debited and Amount credited may include accrued interest. Please see your trade confirmation for details.

* This number is an estimate and is provided to give you a general overview of the performance of your investments only. The estimated cost basis and gain/loss information reported on the statement may be incomplete or inaccurate. It does not impact the current tax liability of IRAs and it does not include wash sales or other adjustments to cost basis or holding period due to events such as gifts, death or divorce. Fixed income cost basis may not be adjusted to reflect all original issue discount or premium amortization situations. Gains or losses are calculated by liquidating the oldest positions first unless shares were specified at the time of sale (closing transaction). You are responsible for keeping accurate records of the cost and sales prices of your investments in order to properly report your taxes. Please do not rely on this statement when doing this record-keeping. Consult a professional tax advisor when making tax-related decisions. LT = Long Term, ST = Short term.

077962

AMERICAN EXPRESS

Statement of Financial Accounts
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
www.americanexpress.com/finaccts

# Annuities

## IDS Life
## Flexible Portfolio Annuity, Rollover IRA

**Contract number 0931 0632 1235 7 004**

**Account owner(s)**
BEVERLY R TANENHAUS

**Annuitant**
BEVERLY R TANENHAUS

**Contract date** 02/11/1999

| | |
|---|---|
| **Current account value on 12/31/2004** | **$8,791.03** |
| Value if surrendered | $8,336.09 |
| Fixed account interest rate New payments | 3.00% |
| Payments to date | $10,623.54 |
| Surrenders to date | $0.00 |

**Investment allocation last statement 11/30/2004**

| | Current payment allocation | Number of units owned | x | Current unit value | = | Investment value |
|---|---|---|---|---|---|---|
| AXP VP Bond Fund | 40.00% | | | $1.387957 | | $0.00 |
| AXP Global Bond | 30.00% | | | $1.532597 | | $0.00 |
| AXP VP Extra Income | 30.00% | | | $1.343822 | | $0.00 |
| AXP VP New Dimensions | | 1,682.354 | | $1.584523 | | $2,665.73 |
| AIM VI Core Equity | | 1,990.318 | | $1.597726 | | $3,179.98 |
| Am Century VP Value | | 1,236.271 | | $2.182104 | | $2,697.67 |
| **Total** | **100.00%** | | | | | **$8,543.38** |

**Current investment allocation 12/31/2004**

| | Current payment allocation | Number of units owned | x | Current unit value | = | Investment value |
|---|---|---|---|---|---|---|
| AXP VP Bond Fund | 40.00% | | | $1.398700 | | $0.00 |
| AXP Global Bond | 30.00% | | | $1.554301 | | $0.00 |
| AXP VP Extra Income | 30.00% | | | $1.355871 | | $0.00 |
| AXP VP New Dimensions | | 1,682.354 | | $1.609522 | | $2,707.79 |
| AIM VI Core Equity | | 1,990.318 | | $1.649385 | | $3,282.80 |
| Am Century VP Value | | 1,236.271 | | $2.265231 | | $2,800.44 |
| **Total** | **100.00%** | | | | | **$8,791.03** |

AMERICAN EXPRESS

Statement of Financial Accounts
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919
**Online**
www.americanexpress.com/finaccts

**(continued)**
**IDS Life**
**Flexible Portfolio Annuity, Rollover IRA**

**Contract number** 0931 0632 1235 7 004

**Account Activity:**

| Date | Activity | Number of units | x | Unit value | = | Dollar amount |
|---|---|---|---|---|---|---|
| 02/10/2004 | Contract charge | | | | | ($30.00) |
| | AXP VP New Dimensions | (6.042) | | $1.595528 | | ($9.64) |
| | AIM VI Core Equity | (7.147) | | $1.565607 | | ($11.19) |
| | Am Century VP Value | (4.441) | | $2.065057 | | ($9.17) |

**IDS Life**
**Flexible Portfolio Annuity, IRA**

**Contract number** 0931 0632 1267 0 004

**Account owner(s)**
JOHN J GAVULA

**Annuitant**
JOHN J GAVULA

**Contract date** 02/16/1999

| | |
|---|---|
| **Current account value on 12/31/2004** | **$13,600.43** |
| Value if surrendered | $12,918.88 |
| Fixed account interest rate New payments | 3.00% |
| Payments to date | $16,288.66 |
| Surrenders to date | $0.00 |

**Investment allocation last statement 11/30/2004**

| | Current payment allocation | Number of units owned | x | Current unit value | = | Investment value |
|---|---|---|---|---|---|---|
| AXP VP Bond Fund | 40.00% | | | $1.387957 | | $0.00 |
| AXP Global Bond | 30.00% | | | $1.532597 | | $0.00 |
| AXP VP Extra Income | 30.00% | | | $1.343822 | | $0.00 |
| AXP VP New Dimensions | | 2,597.196 | | $1.584523 | | $4,115.32 |
| AIM VI Core Equity | | 3,060.658 | | $1.597726 | | $4,890.09 |
| Am Century VP Value | | 1,930.040 | | $2.182104 | | $4,211.55 |
| **Total** | **100.00%** | | | | | **$13,216.96** |

077962

AMERICAN EXPRESS

**Statement of Financial Accounts**
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
www.americanexpress.com/finaccts

**(continued)**
**IDS Life**
**Flexible Portfolio Annuity, IRA**

**Contract number 0931 0632 1267 0 004**

**Current investment allocation 12/31/2004**

| | Current payment allocation | Number of units owned | x | Current unit value | = | Investment value |
|---|---|---|---|---|---|---|
| AXP VP Bond Fund | 40.00% | | | $1.398700 | | $0.00 |
| AXP Global Bond | 30.00% | | | $1.554301 | | $0.00 |
| AXP VP Extra Income | 30.00% | | | $1.355871 | | $0.00 |
| AXP VP New Dimensions | | 2,597.196 | | $1.609522 | | $4,180.24 |
| AIM VI Core Equity | | 3,060.658 | | $1.649385 | | $5,048.20 |
| Am Century VP Value | | 1,930.040 | | $2.265231 | | $4,371.99 |
| **Total** | **100.00%** | | | | | **$13,600.43** |

**Account Activity:**

| Date | Activity | Number of units | x | Unit value | = | Dollar amount |
|---|---|---|---|---|---|---|
| 02/13/2004 | Contract charge | | | | | ($30.00) |
| | AXP VP New Dimensions | (6.011) | | $1.597109 | | ($9.60) |
| | AIM VI Core Equity | (7.080) | | $1.573487 | | ($11.14) |
| | Am Century VP Value | (4.462) | | $2.075132 | | ($9.26) |

**IDS Life**
**AXP Retirement Advisor Variable Annuity, Rollover IRA**

**Contract number 0931 0662 9092 1 004**

**Account owner(s)**
JOHN J GAVULA

**Contract date** 08/04/2000

**Annuitant**
JOHN J GAVULA
Minimum Guaranteed Death Benefit $30,000.00

| | |
|---|---|
| **Current account value on 12/31/2004** | **$16,587.76** |
| Value if surrendered | $14,582.10 |
| Fixed account interest rate | |
| New payments | 3.00% |
| Payments to date | $30,000.00 |
| Surrenders to date | $0.00 |

AMERICAN EXPRESS

Statement of Financial Accounts
**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
www.americanexpress.com/finaccts

**(continued)**
**IDS Life**
**AXP Retirement Advisor Variable Annuity, Rollover IRA**

**Contract number 0931 0662 9092 1 004**

**Current investment allocation 12/31/2004**

| | Current payment allocation | Number of units owned | x | Current unit value | = | Investment value |
|---|---|---|---|---|---|---|
| AXP VP Cash Mgmt | | 15,139.690 | | $1.095647 | | $16,587.76 |
| AXP VP New Dimensions | 20.00% | | | | | $0.00 |
| AIM VI Cap Apprection | 20.00% | | | | | $0.00 |
| Fidelity VIP III MCap | 20.00% | | | | | $0.00 |
| Putnam VT Vista | 20.00% | | | | | $0.00 |
| Putnam VT Intl New Op | 20.00% | | | | | $0.00 |
| **Total** | **100.00%** | | | | | **$16,587.76** |

The interest rate for each new payment to the fixed account is guaranteed for 12 months. After that, rates for each payment are reviewed, declared and guaranteed for six months at a time. Your statement shows a weighted average of rates for all prior payments made to this fixed account.

Detailed interest rate and guarantee expiration date information for payments to the fixed account is available on request and is free of charge

**Account Activity:**

| Date | Activity | Number of units | x | Unit value | = | Dollar amount |
|---|---|---|---|---|---|---|
| 08/04/2004 | Contract charge | | | | | ($30.00) |
| | AXP VP Cash Mgmt | 27.423 | | $1.093981 | | ($30.00) |

077962

AMERICAN EXPRESS

Statement of Financial Accounts

**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
www.americanexpress.com/finaccts

# Important Messages

**Be An Informed Mutual Fund Investor**

**Fund Information:** Detailed information on a mutual fund's investment objective, risks, fees, expenses and other important information is available in the mutual fund's prospectus, Statement of Additional Information and annual report. Your financial advisor can provide you with copies of these documents and additional information to help you to better understand your investment. To view the firm's Investor's Guide, go to www.americanexpress.com/funds, then click on the link "An Investor's Guide to Purchasing Mutual Funds".

**Sales Load Discounts:** Many mutual fund companies offer sales load discounts to customers that have invested over a certain dollar amount. These discounts may be calculated based on your current purchase or on your aggregate holdings, and may also include the holdings of your family or household members. To ensure that you are obtaining all available discounts, you should talk with your broker or financial advisor, or check the fund's prospectus or website.

When you make a new mutual fund purchase or add $25,000 or more to an existing mutual fund account, you must sign a Mutual Fund Disclosure Form. This form provides useful reminders at the point of purchase about the differences among share classes and sales charge discounts.

**Other important information relating to purchases through American Express Financial Advisors Inc. (AEFA) and factors that may influence which mutual funds your advisor recommends**

**Revenue Sharing Arrangements**

AEFA has agreements with more than 200 fund families representing more than 3,000 funds. Certain fund families participate in the Select Group Program for mutual funds. Fund families participating in this program include American Express Funds, AIM, American Century, Columbia, Evergreen, Fidelity, MFS, Oppenheimer, Putnam, Strong, VanKampen and Wells Fargo, collectively offering more than 700 funds. Fund families are selected to participate based on several criteria including brand recognition, product breadth, investment performance and sales support. In exchange for certain benefits, such as broader access to American Express financial advisors, fund families in the Select Group Program are required to pay AEFA for participation in the program by sharing with AEFA a portion of the revenue generated from the sales of fund shares. Other fund families outside of the Select Group may also make such payments. Such firms include Franklin Templeton, Calvert, Goldman Sachs, PIMCO, AllianceBernstein, Eaton Vance, Dreyfus, Pioneer, Credit Suisse, Davis, Selected, Salomon Brothers, Federated, Phoenix and Nuveen.

Specific arrangements vary from company to company and may be subject to renegotiation at any time. AEFA receives a maximum payment of up to 0.25 percent (25 basis points) of the participating fund family's gross sales through AEFA and up to 0.50 percent (50 basis points) per year on assets managed by the participating fund family for AEFA clients. Firms may also pay recordkeeping charges of up to 0.25 percent (25 basis points) per year on assets managed by the participating fund family for AEFA clients. AEFA receives fees approximating 0.14 percent (14 basis points) on average assets managed by American Express Funds for AEFA clients, in payment for access to the broker-dealer's distribution services. For mutual funds that AEFA sells through the Charles Schwab & Co., Inc. ("Schwab") Mutual Fund One Source service, Schwab may receive payments from these mutual fund companies and generally passes those payments through to AEFA.

The fund families in the Select Group Program provide education, training, product and sales support. Other fund families' access to AEFA is more limited. In addition, as described under "Other Financial Incentives - Transaction Charges," transaction costs borne by AEFA can be less for doing business with Select Group fund families than with non-Select Group fund families.

**Other Financial Incentives - Transaction Charges**

AEFA financial advisors pay charges on some mutual fund and securities sales, purchases and exchanges (Transaction Charges). The rate charged varies and generally ranges from $0/transaction to $90/transaction. Transaction Charges are determined by a variety of factors such as the type of security transacted, mutual fund family, size of purchase, type of transaction and processing methodology (online/phone/systematic). Advisors do not pay Transaction Charges on certain transactions associated with mutual funds participating in Select Group Program, including American Express Funds. As noted above, the Transaction Charges incurred by your advisor will vary.

**Financial Interest in Products**

AEFA has a financial interest in the sales of proprietary products that are manufactured by its affiliates. AEFA and its affiliates receive more revenue from the sale of some financial products and services, particularly those products and services sold under the American Express brand, than for the sale of other products and services. AEFA generally also receives more revenue for securities or products sold in a fee-based account than for those sold with only a sales charge or commission.

Higher revenue generally results in greater profitability for the firm. Employee compensation (including management and field leader compensation) and operating goals at all levels of the company are tied to the company's success. Management, sales leaders and other employees generally spend more of their time and resources promoting American Express products and services.

As it pertains to mutual funds, both AEFA and your individual financial advisor are compensated when you buy the fund through AEFA. Generally, your financial advisor receives a substantial portion of the sales charge and distribution and shareholder service (12b-1) fees paid to the firm in connection with your purchase for as long as you own your fund shares. Sales charges and 12b-1 fees vary from fund to fund and from class to class. AEFA and the advisor receive more compensation on fund or share classes that pay higher fees. AEFA and the advisor generally receive less compensation when the sales charge is reduced or waived completely.

**Financial Planning Tools**

AEFA has developed a variety of tools and resources to help its advisors make recommendations and serve you better. Some, but not all, of the financial planning software tools used by your financial advisor were developed by AEFA. Some of the AEFA-developed tools contain menus that list only products manufactured by American Express affiliates. However, your financial advisor can input to the program products not manufactured by American Express affiliates for selection and viewing. If you are a financial planning client, the disclosure that you receive with your plan will specifically state whether the tool used to create your plan has that feature.

All of the above factors may influence an advisor's recommendations.

**Disclosure for Persons Without a Financial Advisor**

Mutual funds can be purchased through AEFA without the aid of an advisor through the company's online brokerage site or other channels. If you do not work with a financial advisor, some of the statements above may not apply to you. If you do not work with an advisor, AEFA keeps the full amount of any sales charges and 12b-1 fees paid to AEFA in connection with your transaction.

Business practices are subject to change. For the most current information about any of the issues discussed above, contact your advisor or call your service office. To learn more about costs involved in purchasing and owning mutual funds, as well as the factors that may influence the mutual funds that your advisor recommends to you, visit our website. An Investor's Guide to Purchasing Mutual Funds Through American Express Financial Advisors is now available.

## IMPORTANT FEDERAL INCOME TAX WITHHOLDING INFORMATION ABOUT DISTRIBUTIONS FROM YOUR IDS LIFE ANNUITY OR LIFE INSURANCE CONTRACTS WITH IDS LIFE INSURANCE COMPANY OR IDS LIFE INSURANCE COMPANY OF NEW YORK.

If you have a taxable distribution from your annuity or life insurance contract(s), we are required by the Internal Revenue Service (IRS) to withhold a portion of the taxable amount for federal taxes, unless you tell us not to.

When you request a distribution or choose a settlement option, you should indicate in your request whether you want us to withhold these taxes. This election will apply to future distributions until you tell us otherwise.

For distributions, other than settlement options, we will withhold 10% of the taxable amount.

For annuity payments being received under a settlement option, the amount withheld will be based on your marital status and number of allowances, unless you specify a percentage or dollar amount. If you do not know how much withholding you should have, you can ask us to send you a W-4P form.

If you ask us not to withhold, you will be responsible for paying any taxes owed on the distribution. If you do not adjust your other withholding or estimated tax payments, you could be subject to penalties for underpayment of tax.

Some states require us to withhold state income taxes when federal income taxes are withheld from annuity distributions. If you live in one of those states and we withhold federal income taxes, we will also withhold the required amount for state taxes.

If you are not requesting a distribution, you do not need to take any action at this time. Please keep this notice with your contract(s) to remind you of your options regarding federal withholding.

We are required by the IRS to send you this periodic notice.

## REQUIRED MINIMUM DISTRIBUTIONS - IMPORTANT TAX INFORMATION FOR CLIENTS WHO REACH AGE 70-1/2

**Individual Retirement Account (IRA) or Annuity (IRA)**
Once you reach age 70-1/2, the Internal Revenue Service (IRS) requires that you begin taking a minimum distribution amount each year from your individual Retirement Account or Annuity (IRA). You do not have to take minimum distributions from a Roth IRA.

**Tax Sheltered Annuity (TSA) or Tax Sheltered Custodial Account (TSCA)**
Once you reach age 70-1/2 or retire, whichever is later, the IRS requires that you begin taking a minimum distribution amount each year from your TSCA or TSA. If you are a 5% owner you may not delay your distribution on the basis of your retirement date.

**General information regarding required minimum distributions:** IRS rules state that the Required Minimum Distribution (RMD) amount be provided each January in an annual Notice mailed to all traditional, SEP and SIMPLE IRA owners who have (or will this year) attain age 70 1/2. Tax Sheltered Annuity or Tax Sheltered Custodial Account holders also received a Notice even though the IRS does not require it to be sent.

It is important that we receive your distribution request in our Minneapolis corporate office **prior to December 31 each year.** Requests received after December 31 will be processed on the date the request is received by our corporate office. These late requests may not meet the IRS requirements.

If you fail to remove your required minimum distribution by the deadline, you will have to pay an IRS penalty tax equal to 50% of the amount that should have been distributed.

## IMPORTANT NOTICE REGARDING YOUR CUSTODIAL IRA/TSCA

Custodial fees are waived for households with $100,000 or more in assets with American Express at the month end prior to our fee collection. Some restrictions do apply.

Reminder of American Express Financial Advisors fee policy:

- $19 for Traditional and Roth IRAs and TSCAs that do not hold an American Express Brokerage account
- $30 for SEP and SIMPLE IRAs that do not hold an American Express Brokerage account.
- $40 if your IRA, SEP or SIMPLE holds an American Express Brokerage account.

The fees and charges explained here do not apply to Individual Retirement Annuities. If you close your IRA plan before the scheduled custodial fee collection for your plan, you will be charged a custodial fee and a termination fee.

If you wish to pay the annual IRA or TSCA custodial fee by check, your check must be received between January 1 and February 28 of each year. If you do not pay for your fee by check, it will be removed from your IRA at the time of your scheduled fee collection.

Make the check payable to American Express Trust Company, write "custodian fee and your client ID#" on the memo line of the check, and mail it to.

American Express Financial Advisors,
IRA/TSCA Custodial Fee
70200 AXP Financial Center
Minneapolis, MN 55474

Contact your advisor for further details.

077962

AMERICAN EXPRESS

# Statement of Financial Accounts

**January 1, 2004 - December 31, 2004**

**Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
www.americanexpress.com/finaccts

**American Express Brokerage Account Information**

Accounts carried by:

American Enterprise Investment Services
70400 AXP Financial Center
Minneapolis MN 55474

American Enterprise Investment Service Inc. will receive remuneration for directing orders to a particular broker or dealer, through which your transaction is executed. Such remuneration is considered to be compensation to us and the source and amount of any compensation will be disclosed upon request.

Details about commissions and other charges related to options transactions in your account have been provided in confirmations previously sent to you. This information will be made available to you promptly upon request. Please advise us immediately of any material change in your investment objectives or financial situation.

**Activity For This Period**

A transaction may not appear on this statement if the settlement date is after the date of your statement. These transactions will appear on your next statement.

**Free Credit Balance**

In general, a free credit balance represents funds payable upon demand which, although properly accounted for on our books, are not segregated and may be used in the conduct of the firm's business. We will pay you interest on available free credit balances, and as part of compensation in servicing your account, we may earn income from the balances.

**American Express Wealth Management Services**

American Express Financial Advisors is the broker dealer of record and effects all trades for your Wealth Management Services account as agent. Trades settle through American Express Enterprise Investment Services, Inc. an affiliate of American Express Financial Advisors.

**Order Routing Executions**

American Express Brokerage will now provide, upon request, additional information related to order executions including details on where and when orders were executed. American Express Brokerage will also make available a quarterly report providing information regarding order routing destinations. To request these reports please contact an American Express Brokerage representative at 1-800-AXP-SERV.

**Margin Account Customers Using American Express Credit**

This statement is a combined statement of your margin sub-account and special memorandum sub-account maintained for you under Section 4(f)(6) of Regulation T issued by the Board of Governors of the Federal Reserve System. The permanent record of the separate sub-account, as required by Regulation T, is available for your inspection upon request.

Securities purchased on margin are the firm's collateral for the loan to you. If the securities in your account decline in value, so does the value of the collateral supporting your loan, and, as a result, the firm can take action, such as issue a margin call and/or sell securities or other assets in any of your accounts held with the member, in order to maintain the required equity in the account. It is important that you fully understand the risks involved in trading securities on margin. These risks include the following.

- You can lose more funds than you deposit in the margin account.
- The firm can force the sale of securities or other assets in your account(s).
- The firm can sell your securities or other assets without contacting you.
- You are not entitled to choose which securities or other assets in your account(s) are liquidated or sold to meet a margin call.
- The firm can increase its "house" maintenance margin requirements at any time and is not required to provide you advance written notice.
- You are not entitled to an extension of time on a margin call.

**Dividend and Interest Summary -**
**Important Information for IRA Clients**

If you are an IRA client, the interest and dividends described on this statement may not be taxable to you. You will not have a taxable event unless you request a distribution from your IRA.

**Glossary**

**Buying Power** - Amount that can be used to purchase securities on margin without making additional deposits as collateral. Buying power usually equals double the amount of Free Cash.

**Delivery** - Movement of assets out of a brokerage account without liquidation.

**Free Cash** - Amount that can be borrowed on margin without increasing collateral. The amount can be withdrawn or used to purchase non-marginable securities.

**Journal** - Movement of assets within a brokerage account or to a different brokerage account.

**Margin** - Ability to borrow from a broker using the value of securities owned as collateral based on an approved margin agreement agreement.

**Margin Balance Outstanding** - Loan (debit) amount for securities purchased using margin.

**Mutual Fund Cost Basis** - The average basis, single category method is used to calculate cost basis for mutual funds.

**Receipt** - Movement of assets or cash into a brokerage account.

**Prior Year Dividend** - A dividend declared by a mutual fund or REIT in October, November or December is considered received by the shareholder for tax purposes by December 31, even if the dividend is actually paid in January of the following year. The dividend is taxable in the year it is declared.

AMERICAN EXPRESS

# Statement of Financial Accounts

**January 1, 2004 - December 31, 2004** **Group Number** 0802 3619 3 001

**Check Your Accounts**
**Automated Telephone Service**
800-862-7919

**Online**
www.americanexpress.com/finaccts

## Automated Telephone Service

To reach our automated telephone system, call 800-862-7919, option 1.

Enter your social security number.
Enter your four-digit PIN.

Choose the option for the information that you'd like to hear.
For account values, press 1.
For account activity, press 2.
For American Express product prices, rates, and performance, press 3.
For PIN Maintenance, press 4.
For document requests, press 5.
For assistance, press 0.

## Service Information

For Variable Annuities and Variable Universal Life products effective October 15, 2004 the U.S. variable funds bearing the INVESCO name became AIM branded funds as Series I Shares as follows.

INVESCO VIF - Dynamics Fund changed to AIM V.I. Dynamics Fund, Series I Shares

INVESCO VIF - Financial Services Fund changed to AIM V.I. Financial Services Fund, Series I Shares

INVESCO VIF - Technology Fund changed to AIM V.I. Technology Fund, Series I Shares

INVESCO VIF - Core Equity Fund changed to AIM V.I. Core Stock Fund, Series I Shares

MR JOHN J GAVULA
MRS BEVERLY R TANENHAUS
498 SAYRE DRIVE
PRINCETON NJ 08540-5855

077962

# EXHIBIT C

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE THE PRUDENTIAL INSURANCE COMPANY OF AMERICA<br><br>SALES PRACTICES LITIGATION | Civ. No. 95-4704 (DRD)<br><br>**OPINION** |
| THIS DOCUMENT RELATES TO:<br><br>ALFRED W. DEYTER and MARY M. DEYTER, Individually and STEVEN M. BROWNELL, as Trustee on behalf of the DEYTER FAMILY IRREVOCABLE LIFE INSURANCE TRUST, dated November 8, 2000 | |

Reid L. Ashinoff, Esq.
Edward J. Reich, Esq.
Rachel G. Balaban, Esq.
SONNENSCHEIN NATH & ROSENTHAL, LLP
1221 Avenue of the Americas
New York, New York 10020
*Attorneys for Defendant The Prudential Insurance Company of America*

Jack B. Nichols, Esq.
81 North Magnolia Avenue, Suite 414
Orlando, Florida 32803
*Attorney for Plaintiffs*

**OPINION**

**DEBEVOISE, Senior District Judge**

Defendant, The Prudential Insurance Company of America ("Prudential"), moves to enforce the Final Order and Judgment in In re The Prudential Ins. Co. of Am. Sales Practices

Litig., 962 F. Supp. 450 (D.N.J. 1997), aff'd, 148 F.2d 283 (3d Cir. 1998), cert. denied, 525 U.S. 1114 (1999), and enjoin Plaintiffs, Alfred and Mary Deyter, and Steven Bromwell, as Trustee on behalf of the Deyter family irrevocable life insurance trust (collectively referred to as "Plaintiffs") from proceeding with the amended complaint in an action captioned Alfred W. Deyter, et al. v. Barry Freedman, et al., Case No. 02-CA-001544(OC), and currently pending in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County Florida ("the Florida Court") (the "Deyter Action"). This is the latest in a long series of motions by Prudential and/ or its agents seeking permanent injunctions to enforce the Final Order and Judgment. For the reasons set forth below, Prudential's motion will be granted.

***FACTS AS ALLEGED IN THE COMPLAINT***

Plaintiffs filed the amended complaint in this matter in the Florida Court on July 29, 2005. The amended complaint asserts claims against Prudential, several of its subsidiaries (all referred to as "Prudential"), and Prudential agents Barry Freedman ("Freedman") and Thomas Alexander ("Alexander") for fraud and deceit, fraudulent misrepresentation, and negligence. These claims arise in connection with Plaintiffs' $400,000 Prudential life insurance policy purchased in 1992, which listed their daughter as the beneficiary ("the 1992 Policy"), and a $350,000 life insurance policy purchased in 2000 ("the 2000 Policy").

Plaintiffs allege that in 1992 they were informed by the Prudential agent who sold them the policy that they would only be required to make premium payments on the policy for a period of ten years. The Prudential agent informed them that after the ten year period ended, the surplus on the value of the policy would cover the remaining premium payments. This practice is

commonly referred to as "vanishing premiums." Plaintiffs allege that after signing the 1992 policy they were not informed of the pending class action lawsuit against Prudential, which encompassed claims stemming from all Prudential life insurance policies entered into between January 1, 1982 through December 31, 1995 ("the class period").

From 1992 through 2000 Plaintiffs continued the timely payment of their premiums, and to their knowledge this time period was uneventful. The next time Plaintiffs were contacted regarding the 1992 policy was in 2000, when Freedman and Alexander (collectively referred to as "the agents") contacted Plaintiffs, wishing to discuss the 1992 policy. The agents advised Plaintiffs that they should place this policy in an irrevocable trust. The agents advised Plaintiffs that the transfer of ownership would protect the policy from losing value in the event problems arose with their daughter's creditors. During these discussions the agents confirmed that Plaintiffs had only one more premium payment to make on their 1992 policy.

On November 8, 2000, Plaintiffs accepted the agents' advice and transferred ownership of the 1992 policy from their daughter to an irrevocable trust owned by a Prudential subsidiary. At the urging of the agents, Plaintiffs also entered into a new $350,000 life insurance policy ("the 2000 policy"). The agents advised that the 2000 policy would not require the payment of premiums because these could be paid by the $128,000 surplus from Plaintiffs' other policies (Plaintiffs had previously entered into additional Prudential life insurance policies in 1951, 1952, 1981, 1982, and 1986). The amended complaint alleges that the agents advised that this policy could be converted to a "paid-up" policy at any time. The amended complaint further alleges that the agents submitted fraudulent statements to Prudential overstating Plaintiffs' net worth at $2,000,000 in order to show that Plaintiffs would be able to pay the premiums on this new

policy.

Over the course of the next four years Plaintiffs realized that the agents had greatly misrepresented numerous facts regarding payment of premiums, the value of their policies, and estimated returns on investments. Prudential charged Plaintiffs $900 for setting up the trust, and $1,000 annually for maintaining the trust, although the agents had told them they would only be charged a nominal fee. Plaintiffs also learned that they still had to pay annual premiums of $9,250 and $13,700 on their 1992 and 2000 policies (respectively) despite the agents' representations to the contrary. Additionally, a high-yield mutual fund, which Plaintiffs purchased upon the agents' advice in order to help pay the premiums, did not have the returns promised by the agents. In 2002 Prudential sent a notice of payment to the owner of the trust for the premium on the 1992 policy. Plaintiffs were not advised of this notice until 2003 after Prudential cancelled the policy for not receiving payment, and unilaterally converted the policy to a $210,014 paid-up policy. This was done contrary to the terms under which the selling agent sold Plaintiffs the policy in 1992.

In their complaint, Plaintiffs have alleged that the agents committed fraud and deceit, which resulted in Plaintiffs losing the benefit of the bargain they made when purchasing the 1992 policy. Plaintiffs also claim that Prudential: (1) committed negligence in failing to supervise and/or properly instruct its employees; and (2) is vicariously liable for the agents' fraud and deceit, which resulted in Plaintiffs losing the benefit of the bargain they made when purchasing the 1992 policy.

Prudential seeks to enjoin the amended complaint, insofar as it asserts claims or seeks damages based on, or relating to, the issues previously resolved in the Class Action Settlement,

including without limitation, engaging in motion practice, pursuing discovery, presenting evidence or undertaking any other action in furtherance of said action. Prudential argues that insofar as the amended complaint relates to policies originating during the class period or the benefits of the bargains made when negotiating those policies, Plaintiffs failed to opt out of the class action and should be enjoined pursuant to the resultant settlement agreement.[1]

## *DISCUSSION*

The Court of Appeals has repeatedly affirmed that this court is empowered under the All-Writs Act, 28 U.S.C. § 1651, and the exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283, to protect its jurisdiction in overseeing the administration of this class action and to prevent interference with its orders. E.g., In re The Prudential Ins. Co. of Am. Sales Practices Litig.: LaMarra, 314 F.3d 99 (3d Cir. 2002). The previous opinions in this case clearly illustrate why the Court is bound to enforce the agreement and must enjoin parties asserting claims covered by the settlement and corresponding order of the Court.[2] There is no need to repeat those reasons.

---

[1] See In re The Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450 (D.N.J. 1997). The settlement provided that class members were required to opt out by December 19, 1996, or be subject to the claims settlement and alternative dispute resolution ("ADR") process made part of the settlement. The court approved the class notice procedure provided in the settlement, and all class members are deemed to have received timely notice and be subject to the personal jurisdiction of the court regardless of whether they had actual notice or not. See generally In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 FRAT 216 (D.N.J. 1997). Plaintiff failed to opt out and was enjoined from pursuing any claims covered in the court's order.

[2]The Final Order and Judgment permanently enjoined all policyholders who had not timely excluded themselves from the Settlement Class, and those acting on their behalf, from bringing or pursuing individual claims against Prudential and its agents based on or relating to facts and circumstances underlying the claims and causes of action in the class action or the released transactions as defined in the stipulation of settlement. In re The Prudential Ins. Co. of

The question to be addressed in deciding Prudential's present motion is whether Plaintiffs' claims stemming from the 1992 and 2000 policies fall under the agreement by the parties in the class action settlement.

The claims described in the class action specifically dealt with misrepresentations by Prudential agents concerning:

> ...
>
> (ii) the number of out-of-pocket cash premium payments required to be paid for a policy and/or the benefits to be realized or paid based on a particular number of cash premium payments (sometimes referred to as "vanishing premiums");
>
> ...

Additionally, Section J of the settlement agreement dated October 28, 1996 is entitled "Release and Waiver, Order of Dismissal." As part of the settlement agreement, Plaintiffs and all class members agreed to a release and waiver as follows:

> a. **Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees,** either directly or indirectly, on their own behalf, on behalf of the Class or any other person, **and release and discharge the Releasees from, any and all causes of action**, claims, damages, equitable, legal and administrative relief, interest, demands or rights, **of any kind or nature whatsoever**, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, **that** have been, **could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Members against the Releasees in the Actions** or in any other court action or before any administrative body (including any state Department of Insurance or other regulatory commission), tribunal or arbitration panel **on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transaction and servicing relating to the Released Transactions, which include without limitation:**
>
> ...
>
> (ii) **any or all acts omissions, facts, matters, transactions, occurrences, or any oral or written statements or representations**

---

Am. Sales Practices Litig., 962 F. Supp. at 566.

**allegedly made in connection with or directly or indirectly relating to the Released Transactions** including without limitation any acts, omissions, facts, matters, transactions, occurrences, or oral or written statements or representations relating to:

(a) the number of out-of-pocket payments that would need to be paid for the policies;

(b) the ability to keep or not to keep a Policy in force based on a fixed number and/or amount of premium payments... and/or the amount that would be realized or paid under a Policy based on a fixed number and/or amount of cash payments... in the form of (x) cash value;

(c) the nature, characteristics, terms, appropriateness, suitability, descriptions and operation of Policies;

...

(l) the use of loans or contract values from existing policies or Policies to pay premiums on new policies, or any representations, promotions or advertising regarding such matters;

(iii) any or all acts, omissions, facts, matters, transactions, occurrences **or oral or written statements or representations in connection with or directly or indirectly relating to the Stipulation or the settlement of the Actions**...

(f) It is the intention of Plaintiffs and Class Members in executing this Release fully, finally and forever to settle and release all matters, and all claims relating thereto, which exist, **hereafter may exist**, or might have existed pertaining to the Defendants' insurance sales practices (whether or not previously or currently asserted in any Actions) with regard to the Policies.

Settlement Agreement § J.1.

The above excerpts from the settlement agreement clearly prohibit claims relating to "vanishing premiums" on Policies which were entered into during the class period. Plaintiffs'

complaint, insofar as it alleges that the agents' misrepresentations and Prudential's negligence caused them to "lose the benefit of the bargain they made" when they entered into policies covered under the class period must be enjoined. The benefit of the bargain they made came in the form of vanishing premiums. This is exactly the type of "benefit" that the class action examined, rectified, and disposed of. Any further claims regarding these benefits are barred by the Settlement Agreement.

Although Plaintiffs may not have personally realized they had claims until years after the settlement agreement, this Court has previously ruled that all class claims not raised before the settlement agreement are not allowed. "If any misrepresentation or fraud occurred in the sale of a life insurance policy to a class member during the Class Period, the resultant injury now exists. Even if a policyholder was not aware prior to receiving the Class Notice that he or she had been injured, the policyholder now knows about his or her injuries by virtue of the Class Notice." In re Prudential, 962 F.Supp. at 521. Said notice to the class has been deemed adequate as a matter of law regardless of whether actual notice occurred. See Dickowski v. The Prudential Ins. Co. of Am. (In re The Prudential Ins. Co. of Am. Sales Practices Litig.), 2001 U.S. Dist. LEXIS 25228 (D.N.J. 2001). The court has previously rejected attempts by class members to commence independent actions relating to the implementation or administration of the class settlement and must do so here again. The permanent injunction bars Plaintiffs' actions because they failed to exclude themselves from the class and are presently asserting claims that are precluded by the settlement agreement and corresponding court order.

Plaintiffs also seek to discover and enter evidence of the class action and settlement in order to show that Prudential and its agents were aware that this type of conduct was wrongful

and constituted a continuing series of fraudulent activity. However, to do so would require the complete re-litigation of the class action as the parties to the class have stipulated that Prudential admits no wrongdoing. The settlement agreement clearly specified that "the Defendants make no admissions respecting the merits of the allegations made in the Actions nor any facts or claims that have been or could have been alleged against them in the Actions...." (at ¶ 14). If Prudential has never admitted wrongdoing, then the fact that it has been involved in a previous litigation concerning similar claims is irrelevant.

The Plaintiffs also seek through discovery and motion practice to obtain evidence involving the facts and circumstances underlying the released transactions in the class action. They argue that this information is relevant to the claims they assert that are based upon post settlement conduct. The relevance would be that such prior conduct might, for example, establish state of mind or provide a basis for punitive damages. However, this is precisely the kind of conduct that the class action settlement prevents class members from using. To permit such discovery and the use of such evidence would go far to deprive the class action defendants of the benefits for which they bargained when agreeing to the settlement.

The Court will therefore enjoin Plaintiffs complaint insofar as they allege conduct encompassed in the settlement agreement, and insofar as they seek damages for loss of any benefit "bargained for" and agreed to during the class period. The Court notes, and counsel for Prudential conceded during oral argument, that this injunction shall not prohibit Plaintiffs from asserting their claims for fraud and deception relating to the post-class 2000 policy, or relating to the agents' misrepresentations regarding the Deyter Family irrevocable life insurance trust, the high-yield mutual fund, or any of Plaintiffs' other pre/post-class accounts and policies.

## *CONCLUSION*

For the reasons stated above, the Court will grant Prudential's motion to permanently enjoin Plaintiffs from asserting the claims contained in the amended complaint, insofar as they assert claims or seek damages based on or relating to the issues previously resolved in the Class Action Settlement. The injunction will include, without limitation: engaging in motion practice, pursuing discovery, presenting evidence or undertaking any other action in furtherance of said action.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

May 26, 2006

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1980(DSD/JMM)

Lesa Benacquisto, Daniel Benacquisto, Richard Thoresen, Elizabeth Thoresen, Arnold Mork, Isabella Mork, Ronald Melchert and Susan Melchert, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**ORDER**

American Express Financial Corporation, American Express Financial Advisors, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company, IDS Life Insurance Company and IDS Life Insurance Company of New York,

Defendants.

This matter is before the court upon the motion of defendant American Express Financial Advisors to enforce a class action settlement as to claims of Paul and Tyva Russell before the NASD. For the reasons that follow, the court denies defendant's motion.

**BACKGROUND**

On May 15, 2001, the court issued an order certifying the class, approving the proposed class settlement ("Benacquisto settlement"), dismissing the complaint and entering final judgment in this consolidated class action.[1] Paul and Tyva Russell (the "Russells") were unnamed class members in that action. Through the class settlement and in exchange for their release of all claims, the Russells and other class members received general relief in the form of free accidental death benefit insurance.

On May 16, 2005, the Russells submitted an arbitration claim to the National Association of Securities Dealers ("NASD"), seeking relief against American Express Financial Advisors ("AEFA"), a defendant in the underlying matter. (See Hoogs Aff. Ex. 3.) The Russells seek recovery of damages for losses involving policies and annuities issued to them by AEFA. AEFA signed a "Uniform Submission Agreement" to arbitrate the Russells' claims, but expressly did not agree to submit to arbitration any claims covered by the Benacquisto settlement. (See Hoogs Decl. Ex. 2.)

---

[1] The Hennepin County Minnesota District Court and this court had previously issued a joint order consolidating several related actions and preliminarily certifying a class of plaintiffs. The claims in those actions focused on the alleged unsuitability of certain life insurance policies and deferred annuity plans issued by defendants American Express Financial Advisors ("AEFA"), American Express Financial Corporation, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company, IDS Life Insurance Company and IDS Life Insurance Company of New York.

Case 0:00-cv-01980-DSD-JMM Document 190 Filed 01/05/2006 Page 3 of 6

AEFA now moves the court to bar arbitration of the Russells' claims, arguing that they relate to policies and annuities covered by the Benacquisto class settlement.

**DISCUSSION**

In its final order, the court permanently enjoined class members who did not opt out of the settlement from bringing any subsequent action based on the policies and annuities that were the subject of the litigation. (Order of May 15, 2001 ¶ 14.) The court also expressly retained jurisdiction over "all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and [the] Order and Judgment." (Id. ¶ 19.) The court specifically reserved jurisdiction to determine whether subsequent claims were barred by the order. (Id. ¶ 19(a).) To that aim, the court possesses the authority to issue injunctions to enforce its final orders.[2] Thompson v. Edward D. Jones & Co., 992 F.2d 187, 189 (8th Cir. 1993).

[2] The Russells contend that the weight to be afforded the settlement agreement is a matter for the arbitrator. However, the court must defer to an arbitrator's decision only if the dispute falls within the scope of an arbitration agreement. See DVC-JPW Investors v. Gershman, 5 F.3d 1172, 1174 (8th Cir. 1993). Here, AEFA explicitly stated in the arbitration agreement that it did not agree to submit to arbitration any claims within the Benacquisto settlement. Therefore, the Russells' contention is without merit.

The Benacquisto settlement is to be interpreted according to Minnesota law. (See Hoogs Decl. Ex. 1, § XVII.I.) A settlement agreement is a contract, subject to contractual rules of interpretation and enforcement. See Theis v. Theis, 135 N.W.2d 740, 744 (Minn. 1965). The primary purpose of construing a contract is to give effect to the parties' intention. River Valley Truck Ctr., Inc. v. Interstate Cos., 704 N.W.2d 154, 163 (Minn. 2005). The court construes the contract as a whole and attempts to harmonize all clauses. Id. Similarly, phrases and sentences are not to be read separately or "out of context" with the rest of the agreement. Id. (citing Metro Office Parks Co. v. Control Data Corp., 205 N.W.2d 121, 124 (Minn. 1973)). The court should avoid an interpretation that renders a provision within the contract meaningless. Id.

AEFA argues that the release of claims as set forth in the Benacquisto settlement precludes the Russells from pursuing their arbitration claims. Pursuant to the "Release and Waiver" provision of the settlement, class members agreed to release all past or present claims related to the Benacquisto action or the "released conduct." (See Hoogs Decl. Ex. 1, § XII.A.1.) The released conduct includes a variety of actions taken with respect to policies and annuities issued by AEFA that were in force at any time during the "class period," which is January 1, 1985, to February 29, 2000. (See id. §§ II.8, II.26. II.60, XII.B.2.)

However, the settlement explicitly reserves a class member's right to assert various claims including those that independently arise "from acts, facts or circumstances that occur for the first time after the last day of the Class Period." (Id. § XII.A.3(ii).) A class member also has the explicit right to assert claims "relating to the administration or servicing of a Policy or Annuity after its purchase," unless such administration or servicing arises out of or relates to the specific types of released conduct listed in sections XII.B.2(i)-(xiii) of the agreement. (See id. §§ XII.A.3(iv) & XII.B.2(xiv).)

AEFA argues that the Russells cannot bring their claims because the annuities and policies at issue were purchased within the class period. It is true that most of the policies and annuities at issue in the Russells' arbitration claims were purchased and in force during the class period.[3] However, if the Russells' claims fall within one or more of the explicit exceptions to the released conduct, then they may nonetheless go forward.

---

[3] AEFA contends that all of the policies and annuities at issue are covered by the release and waiver provision, arguing that the release extended beyond the end of the class period to the final settlement date. AEFA points to the fact that class members agreed to release their claims "as of the Final Settlement Date." (See Hoogs Decl. Ex. 1, § XII.A.1.) However, the plain interpretation of that language is that the release became effective upon the final settlement date. By contrast, AEFA's interpretation would openly conflict with (1) the reserved right to pursue claims that arise after the class period and (2) the definitions of "Class Period," "Annuity," and "Policy." (See id. §§ II.8, II.26. II.60, XII.A.3.) Therefore, AEFA's interpretation is rejected.

Neither party has described the nature of the Russells' claims, including whether they independently arise from facts that occurred for the first time after February 29, 2000. For that reason, the court is unable to determine whether the claims involve Released Conduct or are otherwise precluded by the Benacquisto settlement. Therefore, the court declines to issue an order barring the Russells from pursuing their present claims. AEFA's motion to enforce the settlement agreement is denied.

**CONCLUSION**

Accordingly, based upon a review of the file, record and proceedings herein, **IT IS HEREBY ORDERED** that American Express Financial Advisors' motion to enforce class action settlement as to claims of Paul and Tyva Russell before the NASD [Doc. No. 169] is denied.

Dated: January 5, 2006

s/David S. Doty
David S. Doty, Judge
United States District Court

# EXHIBIT E

From: Tracy L Nelson on 09/30/2004 02:38 PM

To: Ernie X Howard/Field/WH/AEFA@AMEX
cc: Christopher E Mlynarczyk@AMEX, Donald F Weaver/Field/WH/AEFA@AMEX
Subject: Sales complaint Tanenhaus 65750-0

Ernie,

Attached is the following: target letter, scanned client letter, and P2 Advisor Brochure. The clients' annuity contracts fall under the Class Action Lawsuit. Therefore, no additional relief can be provided on the contracts if the case is found to be justified. The clients may be entitled to settlement on the other products if the complaint is found justified. Launch each of these documents, and print a copy for the case file.
Your report is due on October 20, 2004.

The clients' letter states they want to liquidate their accounts. They should not delay liquidating their accounts due to our investigation. Please inform the clients if they wish to liquidate they should do so, but they will incur penalties.

Should you choose to send your response back via Lotus Notes; you must follow-up by sending the original signed statements from you and the advisor. Please contact me immediately if you are unable to open any of these documents.

- Target Letter 65750-0-3.doc
- P2 Advisor Brochure P2 Advisor's brochure-general.pdf
- Scanned Client letter Tanenhaus-Gavula1.pdf

Please contact me with any questions.

Thank You!

Tracy L Nelson H26/2923
Compliance Department
50031 AXP Financial Ctr
Minneapolis, MN 55474
(612) 671-0199
(612) 671-8947 (fax)

Autofile Code
**TAR**

# Memorandum

Date: September 30, 2004

To: AO: #456 - Philadelphia (p2)
Compliance Supervisor: Roy Howard

From: Tracy L Nelson, Compliance Department
(612) 671-0199
(612) 671-8947 (Fax)

| **IMPORTANT – Please ensure all of the information below is recorded in the Complaint Register as required by the SEC.** | |
|---|---|
| Client Name: | John J Gavula<br>Beverly Tanenhaus |
| Account #(s): | 01068023619 002<br>01138023619 002<br>01438023619 002<br>02138023619 002<br>93106321235 004<br>93106321267 004<br>93106629092 004<br>00016500852 021 |
| Advisor Involved: | Hema Joshi #95370 |
| Associated Person Involved: | None |
| Case #: | 65750-0 |
| Allegation(s): | Class Action Qualified<br>Sales Charge |
| Response Due Date: | October 20, 2004 |

Ernie:

Attached is a copy of a letter we received in the Compliance Department. Based on the letter, we have opened the sales complaint referenced above. The clients' annuity contracts fall under the Class Action Lawsuit. Therefore, no additional relief can be provided on the contracts if the case is found to be justified. The clients may be entitled to settlement on the other products if the complaint is found to be justified. The company procedure for handling sales complaints requires a member of your management team to contact the client to discuss the concerns raised.

Please give a copy of the client letter to the advisor listed above. As may be required by the NASD, advisors, both current and former, are requested to provide written, signed statements when clients file complaints.

**The advisor's written statement should include answers to the following questions:**

1. What were the clients' investment goals, objectives, time frame, risk tolerance, and investment experience when they purchased the investments? How were they determined?
2. What were the client's liquidity needs?
3. What were the client's retirement needs?
4. Were the investments suitable in light of the clients' financial situation? (E.g. income, net worth, medical bills)?

***Questions in regards to the Annuity contracts:***

5. Was the sale of the annuities consistent with the Client Profile and/or application?
6. Did the client complete the disclosure form? Did they understand what was on the form and why they were making the purchase?
7. How did you ensure the clients understood the features and risks associated with the investments?
8. When were the contracts received and delivered? How did you review the contracts with the clients at the time of delivery? How did you ensure the clients understood the contracts' provisions?
9. What alternative investment options were discussed with the client?
10. What was the source of funds used to purchase the annuities?
11. Did the client pay a fee or surrender charge to access the source of funds?
12. What was the rational around Mr. Gavula purchasing two different annuities?

***Questions in regards SPS investment for Mr. Gavula:***

13. What is the client's investment history and knowledge of securities products?
14. What sales literature and/or disclosure forms did you provide to the client? How did you ensure the client understood the terms and risks of the investment?
15. How did you verify the client understood the fees of the SPS account?
16. What alternative investment options were discussed with the client?
17. What discussion did you have with the client around the positions that were bought and sold within the account?
18. What service did you agree to provide for the SPS fee? Please explain in detail.

***Question in regards to the service you provided for the clients:***

19. How often did you meet/interact with the client? What was discussed? Provide a chronological summary of all contact with the clients including phone calls, meetings, etc. Include what was discussed/reviewed, what, if any action was to be taken and who was present or took part in discussions.
20. When did the clients make you aware of their concerns or dissatisfaction with your service or their investments with American Express prior to this complaint?
21. Please provide a copy of the following:
    a. Client's financial plan

File: ~7157250

b. Proof of delivery
c. Any disclosure forms
d. SPS Service agreement
e. Please provide any additional information you feel would assist us in this matter.

**Your interview with the client should obtain answers to the following questions:**

1. What were your investment goals, objectives, time frame, and investment experience when you purchased the investments? How were they determined? Have they changed?
2. What is your risk tolerance? How was it determined?
3. What communications did you have with your advisor about your investments? How did your advisor address any concerns you may have had?
4. Do you review your statements? What action do you take upon their review?
5. How did the advisor explain the SPS product including, fees and sales charges? Did you understand the investment?
6. What discussions did you have with your financial advisor around the positions that were bought and sold within the account?
7. What alternative investment options were discussed with your financial advisor?
8. After receiving the letter dated June 5, 2004, from your financial advisor responding to your questions, what action did you take?

**Please provide a summary report on the advisor's statement, your conversation with the client (answering each specific question asked and any additional questions that may arise) and your assessment of the situation. The complete report should also include your recommendation regarding the following:**

- Is the issue justified? If so, why?
- Is the client entitled to a settlement and/or adjustment? If yes, what settlement and/or adjustment would you recommend?
- If the advisor is in P2, how should any costs be allocated? Do they fall under the E&O Policy?
- What disciplinary action, if any, is warranted?
- Was the product(s) involved in the allegation sold by an advisor while he/she was working in the Market Group Alliance program?

Whenever possible, please submit all pieces of your report together.

Please record this complaint in your Sales Complaint Register (complaints only) and forward copies of all correspondence to your Group Vice President. We have enclosed a Complaint/Investigation Checklist to guide you in the complaint resolution process and a brochure for you to give to the advisor.

If you have any questions, please feel free to contact me.

File: ~7157250

Attachments: Copy of Client Letter
Complaint/Investigation Checklist
Client Relations Guide to the Complaint Handling Process

cc: Market Group: #265 - First States
GVP: Donald Weaver
FRM: Chris Mlynarczyk, AO 149 - Harrisburg, PA

File: ~7157250

# COMPLAINT/INVESTIGATION CHECKLIST

Client Name: John J Gavula
Date Recd: ____________
Case Handler: Tracy L Nelson

Case: #65750-0
Date due: 10/20/04

**UPON RECEIPT** - ***Within 24 hours of receipt of the case from Compliance***

____________ Arranged client interview
____________ Requested written statement from advisor
____________ Recorded case in Sales Complaint Register (complaints only)
____________ Reviewed complaint

**DATA GATHERING**

____________ Interviewed client
____________ Reviewed advisor's written statement
____________ Interviewed advisor
____________ Received advisor statement
____________ Gathered supporting documentation (FMP/illustrations/file notes)

**RESOLUTION**

____________ Reviewed advisor statement
____________ Prepared report and recommendations for Compliance to include:

- ☐ Summary of meeting with client
- ☐ Review of advisor's statement
- ☐ Recommendations regarding resolution
- ☐ Recommendations regarding cost allocation
- ☐ Recommendations regarding adjustments
- ☐ State required documents included, where required
- ☐ Disciplinary action recommendations

____________ Signature of Compliance Supervisor (required for P1; optional for P2)

*FAX (612) 671-8947 or mail the information to (this address is for both first class and overnight delivery):*

Tracy L Nelson
*American Express Financial Advisors*
*50031 AXP Financial Center*
*Minneapolis, MN 55474*

****This document can be used to assist the Compliance Supervisor in maintaining the timelines established for the complaint or investigation. The checklist is a mandatory tool for a P1 MPR, but a best practice for a P2 OSJ Branch Manager. It is a useful tool in documenting supervision on a case.***