**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF JOHN GAVULA AND BEVERLY TANENHAUS PRESENTED TO THE NASD**

---

## INTRODUCTION

The parties agree that the *Benacquisto* class settlement applies to two of the investment products at issue in Claimants' arbitration. The only question for the Court is whether Claimants state a legally cognizable claim for post-settlement conduct relating to those two products. A cursory review of the Statement of Claim confirms that the primary conduct to which claimants object occurred before the parties entered into the

class settlement. To the extent that Claimants allege any post-settlement misconduct relating to these two products, they fail to establish any cognizable claim. Accordingly, the Court should enjoin Claimants from proceeding with their class-settlement-barred claims.

**Argument**

**Claimants' NASD Claim is Replete with Allegations of Settlement-Barred Claims.**

As class members, Claimants released certain claims against Ameriprise that related to their purchase of certain variable annuities, 0931-0632-1267-4 and 0931-0632-1235-7, in 1998 (hereinafter the "Variable Annuities"). (*See* Opening Mem. at 8-17.)[1] Notwithstanding this release, Claimants initiated an arbitration against Ameriprise in May 2006. Notwithstanding Claimants' concession that the class settlement applies to the Variable Annuities, the Statement of claim is replete with alleged misrepresentations and omissions by Ameriprise, which, allegedly induced Claimants to purchase the Variable Annuities. On their face, these allegations relate to settlement-barred conduct:

- "Variable annuities are simply not suitable investments for any family in Claimant's position. Annuities carry a surrender charge and an IRS early

---

[1] Contrary to the suggestion in Claimants' Opposition, Ameriprise does not dispute that the Statement of Claim does indeed raise claims relating to Claimants' purchase of non-class-barred products, e.g., certain mutual funds and a variable annuity purchased after the close of the Class Period. Ameriprise does not seek to bar the arbitration of claims related to these products. (*See* Proposed Order submitted to the Court on October 2, 2006 (expressly delineating the scope of the relief sought by Ameriprise and limiting it to claims related to the Variable Annuities).)

withdrawal penalty, making them wholly inappropriate for a family who needs access to its money." (Ex. 2 at 3.)[2]

- "The investments were very suitable for Respondents – guaranteeing substantial up-front commissions – but they were not at all suitable for Claimants." (Ex. 2 at 3-4.)

- "Respondents violated the NASD 'suitability' rule requiring registered representatives to explain the basic features and fees associated with variable annuities to their customers. They did not explain the differences between equity funds, bond funds, variable annuities and variable life insurance. They did not explain the nature of surrender charges in variable annuities, nor that the IRS assesses a 10% tax penalty for withdrawals from variable annuities before the age of 59 ½. (Ex. 2 at 5.)

- "[Claimants' Ameriprise Advisors] simply urged Claimants to put nearly all of their money, approximately 75% of the initial investment, into two- nine-year annuities without explaining anything about these investments." (Ex. 2 at 5.)

- "[I]n May 1999, shortly after the initial purchase, Respondents advised Claimants to move all of the sub-accounts from bond funds to more volatile equity funds." (Ex. 2 at 6.)

- "Respondents initially recommended that Claimants invest a disproportionate amount of their initial investment into annuities." (Ex. 2 at 12.)

- "Respondents did not review the negative features of annuities with Claimants in advance of the purchase." (Ex. 2 at 12.)

- "They had a duty to explain the relevant features of variable annuities, such as surrender charges and tax penalties. Respondents failed to fulfill their duties." (Ex. 2 at 13.)

- "These misrepresentations and omissions include: (1) Respondents' assertions in late 1998 and May 2000 that they would monitor the accounts; (2) Respondents' concealment of annuity surrender charges during the initial purchase in late 1998; (3) Respondents' concealment of IRS early withdrawal

---

[2] All references are made to the Exhibits submitted in support of Ameriprise's opening memorandum of law.

penalties during the initial purchases in late 1998 and May 2000[3] . . ." (Ex. 2 at 14.)

- "Respondents here made no concerted attempt to explain *any* of the tax features of annuities, nor explain the surrender charges, until well after Claimants were first induced to purchase the annuities. Claimants reasonably relied upon Respondents' representations and omissions, were induced to purchase securities and were thereby damaged, thus warranting an award of compensatory and punitive damages." (Ex. 2 at 15.)

Claimants attempt to rehabilitate these claims by recharacterizing their Variable-Annuity claims as occurring outside the class period. Their attempts fail, however, because, the Statement of Claim makes no specific allegations of post-settlement misconduct related to the Variable Annuities. Because Claimants have not alleged any cognizable claim for any post-settlement breach of duty related to the Variable Annuities, Ameriprise requests that the Court grant its Motion and enter and Order enjoining Claimants from proceeding with any claims related to the Variable Annuities.

In their Opposition, Claimants attempt to recast all of their arbitration claims as relating to non-class-barred investments such as mutual funds or as involving "post-settlement" conduct. (Pls.' Opp. at 2.) Such ex post facto explanations are not sufficient to defeat Ameriprise's Motion.

---

[3] Claimants purchased another variable annuity in May 2000. Ameriprise does not contend that this annuity is covered by the class-action settlement in this action. The allegations regarding representations in May 2000 relate to this second purchase and do not constitute post-settlement conduct relating to the Variable Annuities.

**1. Claimants Concede that Their Suitability and Misrepresentation-Based Claims are Barred.**

In their Opposition, Claimants concede that they do not have the right to bring any claims relating to their purchase of the Variable Annuities if such claims arose at the time of purchase or during the Class Period. Indeed, Claimants do not even argue that such claims are viable. Claimants do not deny receipt of the Class Notice or the general relief awarded under the class settlement in this action. Instead, the Variable-Annuities-based claims in the Statement of Claim include misrepresentation claims related to alleged failures to disclose the surrender penalties and the IRS penalty for early withdrawal of funds from the Variable Annuities. (Ex. 2 at 12-15.) Claimants further allege that the Variable Annuities were unsuitable investments because of the commissions, surrender penalties, and tax penalties. (*Id.* at 3.) Such misrepresentation and suitability claims are inherently "purchase-based" claims, i.e., they are claims that arise only at the time of purchase. *See* NASD Conduct Rule 2310(a) ("In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs."); (*see also* Pls.' Opp. at 2 (recognizing that the Statement of Claim "documents numerous instances of unsuitability, fraud and misrepresentation at the point-of-sale" in 1999).) Claimants released such claims under the Court's Final Order and Judgment. (*See* Ex. 1 ¶ 13.B.2(iii) (releasing claims related to the "suitability of any purchases, sales, or replacements of any . . . Annuity"); 13.B.2.(iv) (releasing

claims related to "the . . . charging . . . of any . . . surrender charges . . . on any Annuity"); and 13.B.2.(ix) (releasing claims related to the "tax status, tax impact or tax consequences of any . . . Annuity or any actions or inactions taken with respect thereto").) Accordingly, there can be no doubt that Claimants should be enjoined from seeking any relief from the NASD relating to these claims.

**2. Claimants Have Failed to Show They Have Cognizable Claims That Independently Arose After the Close of the Class Period.**

Despite the clear thrust of the Statement of Claim, Claimants deny that they seek to arbitrate settled claims. Instead, they attempt to recast their claims as involving "post-settlement" conduct. Claimants fail, however, to establish any factual or legal authority for viable, post-settlement claims.

**a. The Statement of Claim Specifically Seeks Relief for Pre-Settlement Non-Disclosures.**

In contrast to its detailed allegations of misconduct related to Claimants' purchase of the Variable Annuities, the Statement of Claim is all but silent regarding the specifics of any post-settlement claims relating to the Variable Annuities. Indeed, the claims detailed in the Statement of Claim are not post-settlement claims preserved under the Release but, instead, relate to alleged misrepresentations made about the Variable Annuities themselves, e.g., their death benefit features or surrender charges. Claimants released any claims related to such misrepresentations or omissions. (Ex. 1 ¶ 13.B.2.)

The relief sought by Claimants in the arbitration, belies their claim that damages arise from post-settlement misconduct related to the Variable Annuities. Indeed, Claimants' requested order relating to the Variable Annuities would permit them to

surrender the investments without having to pay surrender charges or the IRS early-withdrawal penalties. (Ex. 2 at 2-3 (requesting "an order compelling [Ameriprise] to relinquish the remaining balance of their annuity sub-accounts without exacting the surrender charge and with an additional credit to offset the IRS penalty").) Such relief is solely designed to compensate Claimants for damages arising from Ameriprise's alleged misconduct at the time of purchase. (*See* Ex. 2 at 3, 5, 12 & 13.) Claimants already released and received relief for these claims pursuant to the terms of the class-action settlement. (Ex. 1 ¶ 13.B.2.) It is therefore disingenuous for Claimants to argue before that they seek nothing more than damages for post-settlement conduct. Claimants should be enjoined from arbitrating any Variable-Annuities-based claims.

**b. The Statement of Claim Does Not Establish Any Actionable Post-Settlement Claims.**

Claimants' arguments that the Statement of Claim includes unreleased claims for post-settlement misconduct should be rejected. (*Cf.* Opp. at 12-13.) Indeed, Claimants do not provide a single citation to the Statement of Claim or to any record evidence in support of their argument that the Statement of Claim raises any cognizable post-settlement-conduct claims. (*Id.*) Instead, Claimants delineate the following general allegations of post-settlement conduct that they argue create unreleased post-settlement claims: (1) the alleged failure to monitor the Variable Annuities; (2) the alleged failure to contact Claimants during the period of the decline in value of the Variable Annuities; (3) the alleged failure to supervise registered representatives during this period; and (4) a failure to supervise claim related to the handling of Claimants' grievance application to

Ameriprise. (Pl.'s Opp. at 7-8.) At its core, Claimants' opposition is predicated upon the assertion that they raised post-settlement conduct claims in their general allegations that Ameriprise failed to monitor the Variable Annuities after their purchase.[4] (*Id.*) Claimants then argue that they seek relief for this allegedly "post-settlement conduct" under theories of breach of contract, negligence, breach of fiduciary duty and failure to supervise. (*Id.* at 13.) As a matter of law, Claimants have not provided any factual or legal basis for any actionable post-settlement misconduct sufficient to support claims under any of these theories. Accordingly, Claimants should be enjoined from proceeding with the arbitration of any claims related to the Variable Annuities.

**i. Claimants Have Provided No Evidence of Breach of Contract.**

Claimants' breach-of-contract claim illustrates how they actually seek relief for released claims. The only contract at issue between the parties was executed at the time of purchase. Claimants do not identify any post-settlement contract that has been breached. Nor have claimants alleged that the Variable Annuities are not operating as set forth in the underlying contract documents. At most, Claimants allege that Ameriprise breached its duties to Claimants to operate in accordance with industry standards. (Ex. 2 at 15.) Even if this were a breach of contract, which it is not, neither the Statement of Claim nor Claimants' brief identifies what the duty was, how it was breach, and whether

---

[4] In addition, Claimants argue that Ameriprise mishandled the internal grievance submitted by Claimants. (Pls.' Opp. at 13.) As explained above, this claim relates not to the Variable Annuities but to a variable annuity not encompassed by the class-action settlement.

it was breached after the class settlement. Without any such detail, Claimants' breach-of-contract claim fails as a matter of law and should not be arbitrated before the NASD.

**ii. Claimants' Negligence and Fiduciary-Duty Claims Fail as a Matter of Law.**

Like the breach-of-contract claim, Claimant's negligence and fiduciary-duty claims make no specific mention of any post-settlement misconduct. (Ex. 2 at 13-15.) Claimants simply aver that Ameriprise "violated [its] fiduciary duty to exercise good faith towards their customers and to protect the customers' account" and was "negligent in failing to prevent the losses in . . . Claimants' holdings." (*Id.* at 15 & 15.) A necessary predicate to any claim for negligence is the existence of a duty. *Eklund v. Kapetas*, 11 N.W.2d 805, 807 (Minn. 1943) ("In order to charge defendant with negligence, it must appear that there was a duty on his part which was not discharged; that such breach resulted in injury to the plaintiff; and that she was a member of the class to whom the duty was owing."); *see also Ivins v. Town Tavern*, 762 A.2d 232, 235 (N.J. Super. Ct. App. Div. 2000) ("Proof of negligence requires, of course, establishment of a duty of care and a breach thereof proximately causing the harm."). Here, Claimants predicate their post-settlement claims upon Ameriprise's supposed failure to adhere to its "duty to monitor" the performance of the Variable Annuities. (Opp. at 12-13.) As a matter of law, Ameriprise had no such duty.

Any duty to monitor the performance of the Variable Annuities rested solely upon Claimants, who received monthly statements from Ameriprise detailing the performance of their investments. (*See, e.g.*, Pl.'s Ex. B at 3.) All of Claimants' accounts with Ameriprise,

including the Variable Annuities, were non-discretionary accounts. Because Ameriprise never had a duty to monitor these accounts, any claims based on Ameriprise's alleged failure to meet this duty fail as a matter of law. *See Parr v. Buontempo Insurance Servs.*, 2006 WL 2620504, at * 4 (N.J. Super. App. Div. Sept. 8, 2006) (attached hereto as Exhibit R-1.) (dismissing breach of fiduciary-duty claim against securities broker and noting that without control over the variable-annuity account securities broker "does not have a fiduciary duty to breach"); *see also DeKwiatowski v. Bear, Stearns* & *Co.,* 306 F.3d 1293, 1306 (2d Cir. 2002) (observing that there is "no authority for the view that, in the ordinary case, a broker may be held to an open-ended duty of reasonable care, to a nondiscretionary client, that would encompass anything more than limited transaction-by-transaction duties."); *see also Ray v. Friedman* & *Co.*, 738 F.2d 251, 254 (8th Cir. 1984) ("Since the account was non-discretionary and controlled by [the customer], there is . . . no merit in his contention that an instruction on fiduciary duty should have been given."); *Tapia v. Chase Manhattan Bank, NA.,* 149 F.3d 404, 412 (5th Cir. 1998) ("[W]here the investor controls a nondiscretionary account and retains the ability to make investment decisions, the scope of any duties owed by the broker will generally be confined to executing the investor's order."); *Bissell v. Merrill Lynch* & *Co.,* 937 F. Supp. 237, 246 (S.D.N.Y. 1996) ("In the absence of discretionary trading authority delegated by the customer to the broker. . . a broker does not owe a general fiduciary duty to his client."); *Merrill Lynch, Pierce, Fenner* & *Smith*, 377 N.W.2d 605, 608 (Wis. 1985) ("We agree that a broker does not have a fiduciary duty to a customer with a nondiscretionary account absent an express contract placing a greater obligation on the broker or other special circumstances."); *id.* at 609

("Recognizing the full implications of treating a broker as a fiduciary, we refuse to hold that a broker is liable as a fiduciary for representations to an investor with a nondiscretionary account. We would make a broker a guarantor of a customer's investments if we held otherwise.").

The duty to monitor the performance of the Variable Annuities belonged to Claimants alone; if they had wanted to make changes to the Variable Annuities, they were free to do so. Indeed, the Statement of Claim shows that Claimants did monitor their accounts and directed certain transfers in 2003. (Ex. 2 at 9-10 (noting that after a March 2003 meeting, Claimants "decided to leave most of the accounts with [Ameriprise]" and that they "liquidat[ed] two of the [Variable Annuity] sub-accounts and folding them over into the remaining sub-accounts.").) These specific allegations bely Claimants' contentions in the Opposition that Ameriprise failed to follow Claimants' directions and take action to minimize the losses in Claimants' accounts. (Pls.' Opp. at 13.) Furthermore, Claimants received monthly statements from Ameriprise detailing the performance of their investments. (*See, e.g.*, Pls.' Ex. B.) Indeed, these statements specifically set forth the performance of the Variable Annuities, and compared their performance to the prior month and the prior year. (*See, e.g.*, Pl.'s Ex. B at 3.) Ameriprise's practice of sending monthly statements to Claimants precludes any claim based upon Ameriprise's purported failure to inform Claimants of the decline in the value of the Variable Annuities.

Claimants' negligence and breach-of-fiduciary duty claims fail for the separate reason that Claimants have not alleged, let alone provided any evidence, showing that they incurred any damages as a result of Ameriprise's alleged post-settlement omissions.

(Indeed, as noted above, the relief Claimants seek with respect to the Variable Annuities relates to pre-settlement conduct, i.e., a waiver of surrender fees and IRS penalties to remedy Ameriprise's alleged failure to disclose these fees and penalties.) Claimants should not be permitted to present their negligence or fiduciary-duty claims to NASD arbitration.

**iii. Claimants' Failure-to-Supervise Claims Fail As a Matter of Law.**

As explained above, Ameriprise and its agents met all of their duties to Claimants after the purchase of the Variable Annuities, they provided monthly statements to Claimants detailing the performance of their various Ameriprise accounts, and they were available to make changes in those accounts if Claimants so directed. Indeed, Claimants' only specific allegation of supervisory misconduct relates to Ameriprise's treatment of the 2000 variable annuity in its response to Claimants' grievance. By its own terms, this alleged failure to supervise does not involve the Variable Annuities, but, instead, relates to a non-class-barred annuity. (*See, e.g.*, Pls.' Opp. at 6 ("[P]ersonnel in Ameriprise's Compliance Department denied recovery for any losses in this annuity based in part on their inaccurate and indefensible conclusion that the release barred claims based on this August 2000 annuity."); 8 (discussing "claimants [sic] internal grievance for the August 2000 annuity").) Accordingly, and as a matter of law, Claimants have not shown any actionable failure-to-supervise on the part of Ameriprise relating to post-settlement losses in the Variable Annuities. Claimants should be barred from presenting any failure-to-supervise claim relating to the Variable Annuities to NASD arbitration.

**3. Claimants Should Not Be Permitted to Avoid the Preclusive Effect of the Final Order and Judgment Through Sloppy Pleading.**

Claimants seek to poison the well with the NASD by including allegations in their Statement of Claim that have already been litigated by this Court and for which they have already received value.[5] This they cannot do. Under the terms of the Final Order and Judgment, the Court retained jurisdiction to determine whether claims raised in subsequent proceedings had indeed been released. (Ex. 1 at ¶ 15.) Claimants cannot take an end-run around this provision, as they have here, by simply asserting, without providing specific allegations of, or evidentiary support for, specific post-settlement misconduct on the part of Ameriprise. Claimants should not be allowed a potential double recovery by submitting general allegations of misconduct in inartful arbitration pleadings. That should not be enough to avoid the force and effect of the Court's prior Orders and deprive Ameriprise of its right to not have to defend against further claims relating to the Released Conduct. (Ex. 1 ¶¶ 13 & 14.) The Court should enforce the Final Order and Judgment, which permanently barred and enjoined Claimants from commencing any other lawsuit, arbitration, administrative, regulatory, or other proceeding in any jurisdiction relating to any claims released pursuant to the terms of the Settlement Agreement. (*See id.* at ¶ 14.) The Court should not allow Claimants to sneak in settlement-barred claims by pleading them inartfully or in bad faith.

---

[5] Indeed, Claimants cited this class action in the Statement of Claim as support for their Variable-Annuities-based claims. (Ex. 2 at 2. n.3).

## CONCLUSION

For all of the reasons set forth above, Ameriprise respectfully requests that the Court enjoin Claimants from proceeding with the arbitration of any and all claims that were released by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: October 24, 2006

FAEGRE & BENSON LLP

s/Fiona B. Ruthven

Michael F. Cockson (#280549)
Fiona B. Ruthven (#333761)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone No. (612) 766-7000
Facsimile No. (612) 766-1600

**ATTORNEYS FOR DEFENDANT AMERIPRISE FINANCIAL SERVICES, INC. F/K/A AMERICAN EXPRESS FINANCIAL ADVISORS, INC.**

fb.us.61225067.03