Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of New Jersey,
Appellate Division.
ESTATE OF Helen V. PARR, Plaintiff,
v.
BUONTEMPO INSURANCE SERVICES, et. al.,
Defendants.

Sept. 8, 2006.

SYNOPSIS
Motion to Dismiss Complaint Pursuant to R. 4:6-2.

R. Ruggiero Williams, J.S.C.

I. ***Background***

***1** Joseph Buontempo ("Buontempo") is a registered securities br4oker and the principal of Buontempo Insurance Services ("BIS"). In December 1998, Helen Parr met with Buontempo regarding investing certain of her savings and estate planning. After discussing her issues with Buontempo, Ms. Parr invested $91,500 in a variable annuity contract administered by defendant Sun Life Financial ("Sun"). On January 26, 2000, Ms. Parr invested $60,056.99 in a second variable annuity contract from Sun.

By September 19, 2001, the combined value of the two annuities purchased had decreased in value to $103,048.66. At this time, Plaintiff elected to reallocate the funds within the two Sun Annuities into money market funds, which provided a consistent rate of interest to Ms. Parr. A year later, after further withdrawals by Ms. Parr from her account. She, through Mr. Buontempo, elected to sell her Sun annuities and purchased an entirely different variable annuity contract administered through American Investors ("AI") in the amount of approximately $92,000. Upon Ms. Parr's death on September 27, 2003, the AI annuity had a cash surrender value of $85,075.22 payable to Ms. Parr's beneficiaries. Upon Ms. Parr's beneficiaries' election to collect on the AI Annuity, the beneficiaries incurred termination penalties. After dividing the remainder into four shares, Ms. Parr's beneficiaries received approximately $20,000 each.

II. ***Discussion***

On a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accord Plaintiff's complaint a meticulous and indulgent exam. *Cusseaux v. Pickett,* 279 *N.J.Super.* 335, 338 (App.Div.1994). While this burden is high, nevertheless, "a defendant is as entitled to be speedily rid of baseless claims as a plaintiff is entitled to raise them." *Horton v. Am. Inst. for Mental Studies,* 145 *N.J.Super.* 550, 552 (Law Div.1976). A motion to dismiss should be granted if "even a generous reading of the allegation merely suggests a cause of action." *Camden County Energy Recovery Assoc. v. N.J. Dep't. of Envtl. Prot.,* 320 *N.J.Super.* 59, 64-65 (App.Div.1999), *aff'd* 170 *N.J.* 246 (2001).

**Statute of Limitations**

Plaintiff now proceeds on three theories: (1) breach of fiduciary duty, (2) the Consumer Fraud Act, and (3) professional malpractice. It is not disputed that the applicable statute of limitations for all claims in the current matter is six (6) years. *See N.J.S.A. 2A:14-1.* The statute of limitations begins to run when 'the right to institute and maintain a suit first arose,' or more specifically, when the act or injury occurs." *White v. Mattera,* 175 *N.J.* 158, 164 (2003) . New Jersey has adopted the Discovery Rule, which provides, "that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 1**

diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez v. Swyer,* 62 *N.J.* 267, 272 (1973). According to courts applying the Discovery Rule, the:

> ***2** [C]rucial inquiry is "whether the facts presented would alert a reasonable person exercising ordinary diligence that he [ ] was injured due to the fault of another. The standard is basically an objective one--whether Plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running.

*Szczuvelek v. Harborside Healthcare Woods Edge,* 182 N.J. 275, 281 (2005) (quoting *Martinez v. Cooper Hosp.,* 163 *N.J.* 45, 52 (2000)).

The issue raised in the current matter is establishing the event that triggered the running of the statute of limitations. BIS contends that the date on which Buontempo initially advised Parr to purchase the annuities in 1998 is the appropriate date. Plaintiff counters that the pertinent date is April 13, 2004 the date on which the Beneficiaries of Ms. Parr's estate learned of the final value of the investments. The court finds that neither of these dates are workable. Defendants argued convincingly at Oral Agrument that commencing the statute of limitations on the date the beneficiaries learned of the investment returns establishes a potentially limitless toll to the running of the statute. Plaintiff, however, argued convincingly that the date of the initial sale is likewise inoperable because a Plaintiff, by definition, is never aware of fraud as it happens.

In the current matter, Ms. Parr clearly did not have actual knowledge of an actionable wrong as late as October 30, 2002, the date on which Ms. Parr transferred her assets from a money market account to another variable annuity. Plaintiff's Complaint alleges that the actionable misrepresentation was that variable annuities were an appropriate investment for Ms. Parr. (See Complaint, ¶ 25). If Ms. Parr had actual knowledge of a wrong done to her, she would not have agreed to re-invest her assets in another variable annuity. If Ms. Parr did not have actual knowledge, the question then becomes on what date should Ms. Parr have known of an actionable wrong. As stated above, the standard is an objective one. *Szczuvelek, supra,* 182 *N.J.* at 281.

Plaintiff's Complaint alleges that Mr. Buontempo misrepresented the appropriateness of the investments to Ms. Parr. A variable annuity is "an annuity whose periodic payments depend upon some uncertain outcome, such as stock market prices." Black's Law Dictionary, $_5$th Ed. (1979). The New Jersey Division of Consumer Affairs has targeted variable annuities as one of the top ten investing scams garnering increased attention from seniors. (*See* "Avoid Being the Victim of Securities Fraud, Important Tips for Investors," at htt p://www.state.nj.us/oag/ca/erdos/investtips.htm, stating "[v]ariable annuities, in which some investors are misled with claims of guaranteed returns when variable annuity returns actually are vulnerable to the volatility of the stock market. Variable annuities, which offer tax deferral and death benefits among other incentives, come with strings attached and additional costs.") Thus, variable annuities are investment interests that bear a higher risk than a fixed annuity contract.

***3** Thus, a reasonable person before investing in variable annuity contracts would require some modicum of sophistication or document disclosure that provided the investor with the relevant information necessary to invest in such an instrument. Without the case proceeding to at least a *Lopez* hearing to ascertain Ms. Parr's knowledge of the investment instrument or the level of disclosure, it is impossible to discern whether she should have known that a wrong was being visited upon her.

At such a hearing, "[t]he burden of avoiding the bar of the statute rests upon the plaintiff." *Silverman v. Lathrop,* 168 *N.J.Super.* 333, 337 (App.Div.1979). It is important to note that the flexibility of the Discovery Rule allows the setting of "different dates for the accrual of a cause of action against different parties." *Szczuvelek, supra,* 182 *N.J.* at 283. Additionally, the Consumer Fraud Act does not narrowly construe the statute of limitations to the initial act, rather it applies to the entirety of the interactions between the parties. *Dreier Co., Inc. v. Unitronix Corp.,* 218 *N.J.Super.* 260, 273

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(App.Div.1986). Thus, it would be possible that not all Defendants would remain in the case upon a hearing to determine the level of Ms. Parr's knowledge.

**Scope of the Consumer Fraud Act**

The issue presented is whether the variable annuities are properly classified as a security or an insurance product, and if designated as a security or an insurance product, are they subject to the Consumer Fraud Act ("CFA"). The threshold inquiry is whether a variable annuity is a security or an insurance product. Plaintiff argues that the CFA is a unique creation of New Jersey law, and New Jersey Securities Law, specifically *N.J.S.A.* 49:3-49(m), does not classify variable annuities as a security. Defendants argue that federal jurisprudence has classified variable annuities as securities, and therefore exempt from the CFA.

Defendant cites *John Hancock Mutual Life Ins. Co. v. Harris Trust and Savings Bank,* 510 *U.S.* 86 (1993) in support of its position. There, the court held, [a] variable annuity ... is not an "insurance policy" within the meaning of the statutory exemption because the contract's entire investment risk remains with the policyholder inasmusch as 'benefit payments vary with the success of the [insurer's] investment policy.' " *Id.* at 102. The Court, however, construed the term variable annuity under the framework of the Securities Exchange Act of 1933. The Court did not make a sweeping declaration that variable annuities are by definition "securities." Furthermore, the Court's interpretation afforded prospective plaintiffs a greater measure of protection, rather than barring plaintiffs from proceeding. [FN1]

FN1. Additionally, the Supreme Courtbifurcated its analysis of variable annuities. If the variable annuity's purchaser was still in the accumulation phase, it was an investment security; if the annuity had begun making contractual payments already, it was an insurance product. *SEC v. United Benefit Life Ins. Co.,* 387 U.S. 202 (1987). The parties have failed to present to the court what phase the annuity contract is in.

Here, the court must construe the term "variable annuity" under New Jersey law in light of the CFA's fervent consumer protection policies. As has been oft recited, the CFA's guiding principle is to protect consumers "by eliminating the sharp practices and dealing in the marketing of merchandise." *Channel Cos. v. Britton,* 167 *N.J.Super.* 417, 418 (App.Div.1979). The CFA has been amended over the years with the "intent of giving 'New Jersey one of the strongest consumer protection laws in the nation.' " *Cox v. Sears Roebuck & Co.,* 138 *N.J.* 2, 15 (1994). To that end, the Cox court stated, "the Act should be construed liberally in favor of consumers." *Id.* at 17. Thus, it is clear that the CFA should be read expansively.

*4 Having satisfied the threshold question that a variable annuity may be an insurance product under New Jersey law, the next analytical step is whether a party may bring an action under the CFA for sale of an insurance product. In a recently decided case, the New Jersey Supreme Court held that Insurance Brokers are exempted from the CFA. *Plemmons v. Blue Chip Ins. Serv., Inc.,* 2006 N.J.Super. LEXIS 256, 18-19 (App.Div.2006). Employing the rationale that insurance brokers are semi-professionals that are regulated and licensed under separate regulatory regimes, insurance brokers are exempted from the CFA's provisions. *Id.* As such, Plaintiff's CFA claims against Mr. Buontempo is unsustainable.

Plaintiff's claims against BIS, Sun Life ("Sun") and American Investor Life ("AIL") remain. In *Lemelledo v. Beneficial Management Corp. of Am. and Beneficial New Jersey, Inc.,* the Supreme Court stated, "our reading of the CFA convinces us that the statute's language is ample enough to encompass the sale of insurance policies as goods and services that are marketed to consumers." 150 *N.J.* 255, 265 (1997). *Plemmons* narrowed the *Lemelledo* court's reading of the CFA in stating, "it is clear under *Lemelledo* that financial institutions and insurance companies that sell insurance policies 'as goods and services that are marketed to consumers' are subject to the CFA." *Plemmons, supra,* 2006 *N.J.Super.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*LEXIS* 256 at 15.

Plaintiff's Complaint alleges that Defendants BIS, Sun, and AI misrepresented the nature of the variable annuities, and in so doing, violated SEC guidelines. First and foremost, it is clear that Plaintiff presents a stronger case against BIS for consumer fraud as BIS directly advised and sold the variable annuities to Ms. Parr. Recent reports, however, demonstrate that the SEC is concerned not only with the insurance brokers selling the variable annuity, but also with the Company selling the annuity to the consumer. *See Joint SEC/NASD Report on Examination Findings Regarding Broker/Dealer Sales of Variable Insurance Policies,* (June 2004). In recent NASD Enforcement Actions, the NASD has proceeded against firms failing to institute supervisory procedures for variable annuities suitability requirements. *See e.g. NASD v. First Union Brokerage Services, Inc.* (Case Number C05010010 (February 15, 2001)). As such, it would be premature to dismiss the actions against Sun and AIL at this juncture without conducting discovery to determine if the firms made proper disclosure to Ms. Parr.

**Breach of Fiduciary Duty**

Defendants claim that Plaintiff does not state a cause of action because Plaintiff entered into a discretionary account in which Plaintiff controlled the assets. While New Jersey courts do not appear to have directly passed on the issue of whether a fiduciary duty exists when an investment account is discretionary, the clear majority of states hold that a non-discretionary account is necessary to impose a fiduciary duty. *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 767 (3rd Cir.1990). Plaintiff argues that Defendant claims that Mr. Buontempo's advisory role throughout the applicable period is the breach of the fiduciary duty. However, Plaintiff improperly conflates the existence of a fiduciary duty with the breach of the fiduciary duty. Assuming that Defendant did improperly advise Ms. Parr, because Ms. Parr's account was discretionary, she ultimately decided to make the investment. In the absence of Mr. Buontempo's control of the account, Defendant does not have a fiduciary duty to breach. As such, Plaintiff is barred from recasting its professional malpractice, fraud and CFA claims as a breach of fiduciary duty claim.

**Particularity of Plaintiff's Fraud Allegations**

***5** According to *R.* 4:5-8(a), "[i]n all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence. Particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge and other condition of mind of a person may be alleged generally." When bringing a CFA action, a Plaintiff must demonstrate an ascertainable loss. *Weinberg v. Sprint Corp.,* 173 *N.J.* 233, 250 (2002). The ascertainable loss must be causally related to the offending act. *Id.* (citing *Ramanadham v. New Jersey Mfrs. Ins. Co.,* 188 *N.J.Super.* 30, 33 (App.Div.1982)

Defendants argue that Plaintiff's failure to set forth the particulars of the claim, specifically the nature of the misrepresentations and the dates that the misrepresentations took place is fatal to Plaintiff's claim. Defendant Sun adds that because Ms. Parr has passed away, Plaintiff's failure to plead with particularity is incurable and the Complaint must be dismissed. Plaintiff responds that the Complaint, insofar as it lists the policy numbers the dollar amounts lost, sets forth the dates of the sale, and the alleges that Defendants breached their own suitability guidelines, puts Defendant on sufficient notice as to the specifics of Plaintiff's claim. In essence, Plaintiff claims that the mere sale of the variable annuities to Ms. Parr constitutes an actionable wrong under the CFA.

While the Court recognizes that Plaintiff has a significant burden in proving its allegations of fraud, the Court's role is to afford the non-moving party all favorable inferences and give the Complaint a meticulous and indulgent exam. *Cusseaux, supra,* 279 *N.J.Super.* at 338. Plaintiff Complaint indicates that Ms. Parr suffered a definite loss of money which were causally related to Defendant's advice to buy questionable variable annuities given her situation. While Plaintiff's complaint may not be exemplary, it is sufficient. Furthermore, the better course in the current matter is to afford Plaintiff the opportunity to amend its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pleadings as opposed to dismissing its case. *See Rebish v. Great Gorge,* 224 *N.J.Super.* 619 (App.Div.1988).

***Decision:***

For the foregoing reasons, Defendant's Motion to Dismiss with respect to Counts II (Consumer Fraud) and III (Professional Malpractice) is hereby denied. As to Mr. Buontempo, Count II is dismissed. Count I (Fiduciary Duty) is hereby dismissed and Plaintiff has Withdrawn Count IV. A *Lopez v. Swyer,* 62 *N.J.* 267 (1973) hearing will be held at a mutually convenient time.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.