**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

Case No. 00-1980 DSD/JMM

# FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT AND DISMISSING COMPLAINT

WHEREAS plaintiffs and defendants entered into a Stipulation of Settlement, with exhibits (collectively, the "Settlement Agreement"), dated September 18, 2000, to settle this class action litigation; and

WHEREAS on October 2, 2000, this Court and the Minnesota State Court for the County of Hennepin jointly entered an Order (the "Hearing Order") preliminarily certifying the putative class in this Action for settlement purposes under Minn. R. Civ. P. 23.01, 23.02(c), and 23.03(b) and Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2), ordering individual and publication notice to potential class members, scheduling a Fairness Hearing for March 6, 2001, and providing those persons with an opportunity either to exclude themselves from the settlement class or object to the proposed settlement; and

FILED 5-15-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd 5-15-01
Deputy Clerk's Initials ______

WHEREAS this Court and the Minnesota State Court for the County of Hennepin jointly held a Fairness Hearing on March 6, 2001 to determine whether to give final approval to the proposed settlement; and

WHEREAS this Court has issued Findings of Fact and Conclusions of Law Concering Class Action Settlement, dated MAY 15, 2001, granting final certification of the settlement class, approving the proposed settlement, and dismissing the settlement class members' claims (among other things); now, therefore,

Based on the submissions of the Parties and Class Members, on the evidence adduced at the Fairness Hearing, and on this Court's Findings of Fact and Conclusions of Law dated MAY 15, 2001, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. **Incorporation of Other Documents.** This Order and Judgment Approving Class Action Settlement incorporates and makes a part hereof:

(a) the Stipulation of Settlement dated September 18, 2000, and filed with the Courts on September 18, 2000 (the "Stipulation of Settlement");

(b) the following exhibits to the Stipulation of Settlement: (i) Exhibit A (Guidelines for Determining, Scoring and Awarding Relief in the Claim Review Process); (ii) Exhibit B (Class Notice Package); (iii) Exhibit C (Publication Notice); (iv) Exhibit D (Proposed Hearing Order); (v) Exhibit E (Confidentiality Agreement); (vi) Exhibit G (Statement to Accompany Post-Execution Date Responses to Customer Complaints); (vii) Exhibit H (Post-Settlement Claim Form Mailing); (viii) Exhibit I

(Post-Mailing Reminder); and (ix) Exhibit J (Claim Review Administrative Forms and Letters); and

(c) the Affidavit of Jeffrey D. Dahl, sworn to February 23, 2001, Exhibit __ to this Order and Judgment (describing the Class Notice Package, its distribution to Class Members, and the Publication Notice).

2. **Jurisdiction.** This Court has personal jurisdiction over all Class Members (as defined below) and has subject matter jurisdiction over this Action and all claims and causes of action resolved by this settlement, including all the Claims and Causes of Action referred to in the Release. Accordingly, this Court has jurisdiction to approve the proposed settlement, grant final certification of the Class, release Claims and Causes of Action as set forth in the Release, and dismiss this Action on the merits and with prejudice.

3. **Final Class Certification.** The Class that was previously certified preliminarily is hereby finally certified for settlement purposes under Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(2). The Class consists of (A) All persons or entities who, as of the Eligibility Date, have or had (i) an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") pursuant to an individual sale in the United States, including its territories and commonwealths, issued at any time during the Class Period; or (ii) an ownership interest in an individual deferred annuity contract or a participation interest in a Group Qualified Annuity issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company or American Partners Life Insurance Company in the United States, including its territories and

commonwealths, that was in force at any time during the Class Period; and (B) all Qualified Plans and Qualified Plan Representatives that purchased, owned, held or had any interest with respect to any Group Qualified Annuity. The Class does not include (i) any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants; or (ii) any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under Section 1035 of the Internal Revenue Code.

Notwithstanding the foregoing, the Class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any persons or entities who make a timely election to be excluded from the proposed Class with respect to a particular Policy or Annuity otherwise included within the Class; (ii) any persons or entities who have an ownership interest in (a) a Policy that was terminated prior to the Eligibility Date due to the death of the insured and on which death benefits were paid; (b) an Annuity that was terminated prior to the Eligibility Date by reason of the death of the annuitant; (c) a Policy or Annuity that was issued, but not accepted or funded, or was returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; (d) a Policy or Annuity that was rescinded as part of a reissue of a new life insurance policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; (e) a Policy or Annuity that is the subject of a release signed by any person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity; (f) a life insurance policy that was a term life

insurance policy or graded premium whole life insurance policy; (g) an annuity contract that was settled (*i.e.*, annuitized) prior to the inception of the Class Period; or (h) an annuity contract that was issued as an immediate annuity. A list of those persons who have validly excluded themselves from the Class, and who therefore are not bound by this Order and Judgment, is on file with this Court as Plaintiffs' and Defendants' Joint Submission of Exclusions From Class, dated March 21, 2001, and is incorporated herein and made a part hereof. A small number of requests for exclusion were deficient and subject to "cure" letters. The Parties will supplement their submission once those outstanding issues are resolved.

4. **Appointment of Co-Class Counsel and Lead Counsel and Adequacy of Representation.** The law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Lockridge Grindal Nauen, P.L.L.P. are hereby appointed Co-Class Counsel; the law firm of Milberg Weiss Bershad Hynes & Lerach LLP is hereby appointed Lead Counsel; and the Class representatives have fully and adequately represented the Class for purposes of entering into and implementing the settlement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

5. **Class Notice.** Notice was provided to the Class in accordance with the Hearing Order. Individual notice was sent by first-class mail, postage prepaid, to the last known address of the Policy and Annuity Owners and, in the case of a Group Qualified Annuity, to persons or entities who hold or held a participation interest in the Group Qualified Annuity, all as reflected by Defendants' records as maintained at the Corporate Office or by the results of any searches performed by a vendor hired by Defendants to update addresses of such persons or entities. In cases of pending litigation against the Defendants, notice was also mailed to any legal

counsel known to represent the Class Member. Also in accordance with the Hearing Order, publication notice was published and notice was posted on the internet at the web sites for Defendants and Co-Class Counsel. This Court finds that the notice outlined above:

(a) constituted the best practicable notice to Class Members under the circumstances of this Action;

(b) was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this class action; (ii) their right to exclude themselves from the Class and the proposed settlement; (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class' representation by Plaintiffs or Plaintiffs' counsel, and/or the award of attorneys' fees); (iv) their right to appear at the Fairness Hearing -- either on their own or through counsel hired at their own expense — if they did not exclude themselves from the Class; and (v) the binding effect of the Order and Judgment in this Action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

(c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and

(d) fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

6 **Final Settlement Approval.** The terms and provisions of the Settlement Agreement, including all exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the Parties and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. **Early Implementation.** The Defendants are hereby authorized, in their sole discretion but in consultation with Co-Class Counsel, and without requiring further approval of this Court, to implement the settlement before the Final Settlement Date (as defined in the Settlement Agreement), in which case all provisions in the Settlement Agreement specifying actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date the Defendants elect to implement the settlement.

8. **Appeal After Early Implementation.** If the Defendants choose to exercise their discretion to implement the settlement before the Final Settlement Date, anyone seeking to appeal from this Court's rulings must first (i) request to intervene upon a representation of inadequacy of counsel; (ii) request a stay of implementation of the settlement; and (iii) post an appropriate bond. Unless a would-be appellant satisfies all three of these requirements, the Defendants are authorized to implement the settlement before the Final Settlement Date even if such implementation would moot any appeal.

9. **Post-Settlement Mailing**. The Parties are hereby directed to mail the Post-Settlement Mailing materials substantially in the form attached as Exhibit H to the Settlement Agreement, as provided by the Stipulation of Settlement.

10. **Securities Registration Not Required.** This Court hereby confirms that, to the extent that any rights provided under this settlement (including but not limited to the right to designate another person as eligible to receive the ADB under the Settlement Agreement) might be deemed to be a security under section 3(a)(10) of the Securities Act of 1933, as amended, registration of any such right would not be required by virtue of this Court's approval of the settlement.

11. **No Tax Advice Being Given.** This Court hereby confirms that the Parties and their counsel are not making any representations or providing any opinions or advice concerning the tax consequences of the proposed settlement or the election of any remedies under the settlement to individual Class Members, and the Parties and their counsel shall not be held liable for any tax consequences or elections.

12. **Binding Effect.** The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors, assigns, guardians, attorneys, trustees, and representatives, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Release.

13. **Release.** The following Release, which is also set forth in Section XII of the Stipulation of Settlement, is expressly incorporated herein in all respects, is effective as of the Final Settlement Date, and forever discharges the Releasees from any Claims or Causes of Action that arise from or relate to the Released Conduct:

A. Release and Waiver

1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releasees (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).

2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or relate to any of the matters described in sections XII.B.2.(i)-(xiii) of the Stipulation of Settlement; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in the Stipulation of Settlement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable — notwithstanding that the parties have chosen Minnesota law to govern the Stipulation of Settlement — Plaintiffs and the Class Members hereby agree that these principles (including Cal. Civ. Code Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such

matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. Release and Waiver -- Definitions

1. "Claims and Causes of Action" (as used in this Release) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or

Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held in any Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company[1] and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

---

[1] "Company" means IDS Life Insurance Company, IDS Life Insurance Company of New York, the American Express Company, American Express Financial Corporation, American Express Financial Advisors, American Express Service Corporation, American Express Trust Company, American Centurion Life Assurance Company, American Enterprise Life Insurance Company and American Partners Life Insurance Company, collectively.

14. **Permanent Injunction.** All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct (as that term is defined in the Settlement Agreement) as to that Policy or Annuity, and (ii) organizing or soliciting the participation of any Class Members in a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit or other proceeding based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct as to that Policy or Annuity. This Court finds that issuance of this permanent injunction is necessary and appropriate in aid of this Court's jurisdiction over the Action and to protect and effectuate this Order and Judgment.

15. **Enforcement of Settlement.** Nothing in this Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement; nor shall anything in this Order and Judgment preclude Plaintiffs or Class Members from participating in the Claim Review Process described in the Settlement Agreement if they are entitled to do so under the terms of the Settlement Agreement.

16. **Attorneys' Fees and Expenses.** The Court hereby grants Co-Class Counsels' application for an award of attorneys' fees and reimbursement of their disbursements and expenses for their past and future work on the Actions in the amount of $28 million, to be paid by Defendants to Lead Counsel. The $28 million consists of approximately $27, 380, 000 in fees and $620,000 in reimbursement of expenses. Such fees and expenses are to be paid by Defendants within 10 days after the last date of entry of the Order and Judgment in the Actions, subject to the conditions set forth in the Stipulation of Settlement. Plaintiffs' counsel shall set aside in a Qualified Settlement Fund ten percent, or $2,738,000, of the fee award pending substantial completion of the administration of the Claim Review Process. Plaintiffs' counsel shall advise this Court when payments are made to Class Members in the Claim Review Process, and may draw down this final ten percent (plus any accumulated interest) at that time without further order of this Court. Lead Counsel, in its sole discretion, shall allocate and distribute this award of attorneys' fees and expenses among counsel for the Class.

17. **No Other Payments.** The preceding paragraph of this Order and Judgment covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Co-Class Counsel or any other counsel representing Plaintiffs or Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to the Actions, the settlement of the Actions, the administration of such settlement, and/or the Released Conduct except to the extent otherwise specified in this Order and Judgment and the Stipulation of Settlement.

18. **Modification of Settlement Agreement.** The Parties are hereby authorized, without needing further approval from this Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement -- including without limitation, the Post-Settlement Mailing materials and the forms to be used in the Claim Review Process -- as are consistent with this Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement.

19. **Retention of Jurisdiction.** This Court has jurisdiction to enter this Order and Judgment. Without in any way affecting the finality of this Order and Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,

(a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);

(b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining

Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

(c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

*provided, however,* that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under paragraphs 7 and 18 above.

20. **No Admissions.** This Order and Judgment, and the Settlement Agreement (and any other document referred to here, or any action taken to carry out this Order and Judgment) shall not be used or construed as an admission or concession by the Defendants of any actual or potential fault, wrongdoing, liability or damages whatsoever, and shall not be used as any evidence or inference of any fault, wrongdoing, liability or damage against the Defendants. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by Defendants as to any actual or potential fault, wrongdoing, liability or damages and shall not be offered or received in evidence or used for impeachment in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Order and Judgment and the Settlement Agreement; *provided, however,* that this Order and Judgment and the Settlement Agreement may be filed in any action against or by the Defendants or Releasees (as defined in the Stipulation of Settlement) to support a defense of *res judicata*, collateral estoppel, release,

waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

21. **Dismissal of Action.** The Action, including all individual and Class claims resolved in them, are hereby dismissed on the merits and with prejudice against Plaintiffs and all other Class Members, without fees or costs to any party except as otherwise provided in this Order and Judgment.

22. **Bond Requirement.** Any appeal of the orders and judgment of this Court in this action shall be conditioned upon the posting of a bond by the proposed appellant of $500,000.

SO ORDERED this 15TH day of MAY, 2001. LET THE JUDGMENT BE ENTERED ACCORDINGLY.

The Honorable David S. Doty
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

FORMS\APPEAL.NO CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

JOHN J. BLANCHARD
2150 Highway 35
Sea Girt, New Jersey 08750
(732)449-1660
Attorney for Claimant

| | |
|---|---|
| **MARGA BRUDEREK** | NATIONAL ASSOCIATION OF SECURITIES DEALERS |
| Claimant, | |
| vs. | Claim No. |
| **CARMELA MICHAELS, MARKETING ONE SECURITIES INC., AMERICAN EXPRESS FINANCIAL ADVISORS, INC., and IFMG SECURITIES INC.,** | |
| Respondents. | **COMPLAINT** |

Claimant, through her Attorney, John J. Blanchard, by way of Complaint against the Respondents herein, alleges and says:

**THE RESPONDENTS**

At all times pertinent hereto:

1. Upon information and belief, Carmela Michaels ("Michaels") was a registered representative and agent acting on behalf of herself, Marketing One Securities, Inc. and American Express Financial Advisors Inc. Her last known business address is 730 Jamaica Boulevard, Toms River, New Jersey 08757.

2. Upon information and belief, Marketing One Securities, Inc. ("Marketing One") was a broker dealer and member of the National Association of Securities Dealers, Inc. ("NASD") offering investment advice and products through Sovereign Bank, which held out Michaels as one of its agents. The last known business address for Marketing One was 2000 Route 70, Lakehurst, New Jersey 08733.

3. Upon information and belief, American Express Financial Advisors Inc. ("American Express") is a member firm of the NASD distributing investment products on behalf of American Enterprise Life Insurance Company.

4. Upon information and belief, IFMG Securities Inc. ("IFMG") is by operation of law the successor in interest to Marketing One and is located at 100 Manhattanville Road, Purchase, New York 10577. IFMG is a member firm of the NASD.

**STATEMENT OF FACTS**

On or about June 2005, the Claimant was made aware of the gross misrepresentations made to her in the sale of an American Enterprise Life Variable Annuity and the securities purchased in her annuity account. Claimant was unaware that the American Enterprise Life Variable Annuity and the securities purchased in the account established for her by Respondents Carmela Michaels, Marketing One Securities, Inc., and American Express Financial Advisors, Inc., had substantially damaged and impaired her retirement funds until after a family friend brought her substantial losses in her annuity account to her attention. Because the Claimant fully relied to her detriment that the Annuity sold to her and the securities purchased in the account

established for her was in her best interests and suitable for her investment objectives, she had no reason to doubt the suitability of the annuity investments sold to her by Respondents Carmela Michaels, Marketing One Securities, Inc., and American Express Financial Advisors, Inc.

Finally realizing the financial hardship caused by the unsuitable investment advice by the Respondents Carmela Michaels, Marketing One Securities, Inc., and American Express Financial Advisors Inc., the Claimant immediately contacted Respondent IFMG seeking to address the injustice caused by the unsuitable investment, but was told by Respondent IFMG that her claim was denied.

Only after this denial of restitution by Respondent IFMG did the Claimant seek out legal help. The losses sustained by the Claimant due to this unsuitable investment amounts to $200,000.00 in actual losses plus approximately $100,000.00 of compensatory losses in the form of lost investment opportunity, since the claimant has been in safe secure investments prior to the unsuitable annuity purchase.

Claimant is 75 years of age, has been a widow for 15 years, lives on her own and is totally dependant on Social Security of $1,300 per month and pension benefits of $300 per month. The Claimant was never employed in a profession or owned her own business and never attended college or any other schooling in which financial courses would have been available. In short, the Claimant is an older widow with meager sources of income, uneducated and by anyone's definition is someone who is not a sophisticated investor.

**JURISDICTION AND BACKGROUND**

1. This is an action for damages brought under the laws of the State of New Jersey before the National Association of Securities Dealers and in accordance with the Uniform Code of Arbitration and the National Association of Securities Dealers ("NASD") Rules and Regulations.

2. Claimant resides at 349 Kildare Drive, Toms River, New Jersey 08753.

3. At all times pertinent hereto, Respondent IFMG was a member firm of the NASD, operating various offices through its agents or employees, at 100 Manhattanville Road, Purchase, New York 10577.

4. At all times pertinent hereto, Respondent Marketing One was a member firm of the NASD, operating various offices through its agents or employees, including an office at 2000 Route 70 Lakehurst, New Jersey 08733.

5. Upon information and belief and at all times pertinent hereto, Respondent American Express was a distributor of annuities and various life insurance products for American Enterprise Life Insurance Company ("American Enterprise"). American Enterprise operated from offices located at Ameriprise Center, Minneapolis, Minnesota 55474.

6. Upon information and belief and at all times pertinent hereto, Respondent Michaels was an agent or employee of Respondents Marketing One (and, by operation of law, its successor in interest IFMG), and American Express.

7. Upon information and belief, Respondent Michaels was the registered representative employed by Respondents in personal charge of the annuity account of the Claimant herein (Account Number 9920-3363264).

8. At all times pertinent hereto, the Claimant lacked knowledge of, or experience in, securities and investment matters, was an unsophisticated investor, and, in particular, lacked any knowledge in the risks and effects of purchasing securities and annuities.

9. At all times pertinent hereto, the Claimant was without an advanced educational degree or special training in securities markets.

10. In connection with the maintenance of the Claimant's account, Respondents Marketing One (and, by operation of law, its successor in interest IFMG), American Express and Respondent Michaels intentionally misrepresented to the Claimant that: a) purchasing an annuity and maintaining the securities purchased in her annuity account was a safe and sure investment that would increase her retirement funds; b) that the purchasing of an annuity and maintaining the securities purchased in her annuity account were suitable investments in light of the Claimant's age, knowledge, net worth and investment objective.

11. In connection with the maintenance of the Claimant's securities in her annuity account, Marketing One (and, by operation of law, its successor in interest IFMG), American Express and Respondent Michaels intentionally failed to disclose to the Claimant material information concerning the nature and risks associated with purchasing an annuity and maintaining the securities purchased in her annuity account.

12. In connection with the maintenance of the Claimant's securities in her annuity account, Marketing One (and, by operation of law, its successor in interest IFMG), American Express and Respondent Michaels negligently failed to disclose to the Claimant material information concerning the nature and risks associated with purchasing an annuity and maintaining the securities purchased in her annuity account.

13. At all times pertinent hereto, Respondent Michaels exercised exclusive control over the account of the Claimant by virtue of the Claimant's reliance upon Respondent Michaels.

14. In the exercise of said control, Respondent Michaels advised the Claimant to make unsuitable investments resulting in substantial losses to the Claimant.

15. The Claimant relied, to her detriment, upon the representations made by Marketing One (and, by operation of law, its successor in interest IFMG), American Express and Respondent Michaels and upon the willful omissions by Marketing One (and, by operation of law, its successor in interest IFMG), American Express and Respondent Michaels, which

representations and willful omissions were of a material nature. In addition, the Respondents had a duty, but failed to disclose the willful omissions here and before set forth.

16. As a result of her reliance on Marketing One (and, by operation of law, its successor in interest IFMG), American Express and Respondent Michaels, the Claimant lost approximates $300,000.00.

## FIRST COUNT

17. Respondents engaged in acts and practices named in this Count which constituted violations of the Securities Exchange Act of 1934 and its rules and regulations, and the rules and regulations of the National Association of Securities Dealers in that the Respondents, in connection with the purchase and sale of the unsuitable annuity:

(a) Employed devices and schemes, including but not limited to, the activities alleged in this Count, to defraud the Claimant;

(b) Made untrue statements of material facts to the Claimant including, inter alia, those alleged herein, or omitted to state material facts, including, inter alia, those alleged herein, necessary in order to make the statements, in light of the circumstances under which they were made, not misleading;

(c) Engaged in acts, practices or courses of business, including but not limited to, activities alleged herein, and further including, but not limited to, solicitations and recommendations alleged herein, which operated as a fraud and deceit on the Claimant;

(d) At all times pertinent hereto, Respondents intentionally concealed the high risks involved with purchasing an annuity;

(e) At all times pertinent hereto, Respondents engaged in a fraudulent course of business in the management of the Claimant's account; and

(f) At all times pertinent hereto, the Claimant was fraudulently induced into maintaining an account with Respondents by the willful misrepresentations by Respondents of the benefits of purchasing an annuity but Respondents intentionally and negligently failed to fully disclose the risks in doing same.

18. The Claimant relied on the above misrepresentations to her eventual detriment including, but not limited to, the substantial losses in her account.

WHEREFORE, Claimant demands judgment, jointly and severally, against the Respondents as follows:

(a) Compensatory damages;
(b) Interest;
(c) Attorney's fees and cost.

## SECOND COUNT

19. Claimant realleges and incorporates by reference each and every allegation of paragraphs 1 through 18 of this Complaint as if fully set forth herein at length.

20. Respondents, or through its agents and representatives, acted in grossly negligent, careless and reckless manner and with complete indifference to, and wanton disregard of, the consequences to the Claimant.

WHEREFORE, Claimant demands judgment, jointly and severally, against the Respondents for:

(a) Compensatory damages;
(b) Interest;
(c) Attorney's fees and costs.

## THIRD COUNT

21. Claimant realleges and incorporates by reference each and every allegation of paragraph 1 through 20 of this Complaint as if fully set forth herein at length.

22. In recommending that the Claimant engage in purchasing an annuity in effecting transactions in the Claimant's account and in servicing the Claimant's account, the Respondents

intentionally, willfully, wantonly and maliciously engaged in acts and practices which constituted a fraud and deceit upon the Claimant by means of acts and omissions of material fact as specifically set forth in paragraphs 1 through 20 of this Complaint.

23. At all times mentioned herein, the Respondents knew or should have known the omissions of material fact and fraudulent acts and practices made in connection with the Claimant's account with Respondents.

24. In maintaining her account with the Respondents, the Claimant relied on the misleading statements, omissions and fraudulent acts and practices engaged in by the Respondents.

WHEREFORE, Claimant demands judgment, jointly and severally, against the Respondents for:

(a) Compensatory damages;
(b) Interest;
(c) Attorney's fees and costs.

FOURTH COUNT

25. Claimant realleges and incorporates by reference each and every allegation of paragraph 1 through 24 of this Complaint as if set forth herein at length.

26. Respondents went beyond giving advice to the Claimant on investment decisions. Instead, the Respondents were in complete control of the Claimant's investment for a number of years.

27. Maintaining such control over the Claimant's investments, Respondents served in a fiduciary role toward the Claimant. Claimant is an unsophisticated investor and relied on and trusted Respondents.

28. With the existence of a fiduciary relationship, Respondents were under a duty to consider the investment needs and objectives of the Claimant and conduct themselves accordingly.

29. Respondents breached their fiduciary duty toward Claimant by making various false and misleading statements of material facts to the Claimant as alleged in the Statement of Facts and the Jurisdiction and Background of this Complaint and bought and recommended an unsuitable annuity for the Claimant contrary to her investment needs.

30. The misrepresentations and omissions by Respondents were made by a fiduciary with intent to deceive the Claimant and with complete disregard of the Claimant's interest and bought and recommended unsuitable securities for Claimant contrary to her investment needs.

31. As a result of the breach of the fiduciary duty by Respondents, the Claimant sustained great financial injury.