UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1980(DSD/JMM)

Lesa Benacquisto, Daniel Benacquisto, Richard Thoresen, Elizabeth Thoresen, Arnold Mork, Isabella Mork, Ronald Melchert and Susan Melchert, on behalf of themselves and all others similarly situated,

Plaintiffs,

v. **ORDER**

American Express Financial Corporation, American Express Financial Advisors, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, American Partners Life Insurance Company, IDS Life Insurance Company and IDS Life Insurance Company of New York,

Defendants.

This matter is before the court upon the motion of defendant to enforce a class action settlement as to claims of John Gavula and Beverly Tanenhaus before the NASD. For the reasons that follow, the court grants defendant's motion.

**BACKGROUND**

On May 15, 2001, the court issued an order certifying the class, approving the proposed class settlement ("Benacquisto settlement"), dismissing the complaint and entering final judgment

in this consolidated class action. Claimants John Gavula and Beverly Tanenhaus ("Gavula and Tanenhaus") were unnamed class members in the action. Through the Benacquisto settlement and in exchange for their release of all claims, Gavula and Tanenhaus and other class members received general relief in the form of free accidental death benefit insurance.

On May 22, 2006, Gavula and Tanenhaus submitted an arbitration claim to the National Association of Securities Dealers ("NASD") against American Express Financial Advisors, Inc., now known as Ameriprise Financial Services, Inc. ("Ameriprise"), a defendant in the underlying litigation in this case. Gavula and Tanenhaus sought recovery of damages for losses involving Ameriprise annuity and mutual fund accounts. Ameriprise signed a modified submission agreement to arbitrate Gavula and Tanenhaus's claims that expressly excluded from arbitration any claims covered by the Benacquisto settlement. Ameriprise now seeks to enforce the settlement agreement as to Gavula and Tanenhaus's claims related to two Ameriprise annuities, arguing that these claims were previously resolved and released under the terms of the Benacquisto settlement. It is undisputed that Gavula and Tanenhaus purchased the two annuities at issue, 9310-6321235-7 and 9310-6321267-4, during the relevant class period.

**DISCUSSION**

In its final order, the court permanently enjoined class members who did not opt out of the Benacquisto settlement from bringing any subsequent action based on the policies and annuities that were the subject of the litigation. (See Order of May 15, 2001, ¶ 14.) The court expressly retained jurisdiction over "all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and [the] Order and Judgment." (Id. ¶ 19.) The court also specifically reserved jurisdiction to determine whether subsequent claims were barred by the final order. (Id. ¶ 19(a).) To that aim, the court has authority to issue injunctions to enforce its orders. Thompson v. Edward D. Jones & Co., 992 F.2d 187, 189 (8th Cir. 1993).

Pursuant to the "Release and Waiver" provision of the settlement, class members agreed to release all past or present claims "that are based upon, related to, or connected with, directly or indirectly, in whole or in part" the Benacquisto action or the "released conduct." (See Stip. of Settlement, Doc. No. 18, § XII.A.1.) The released conduct includes a variety of actions taken with respect to Ameriprise policies and annuities in force at any time between January 1, 1985, to February 29, 2000, the "class period." (See id. §§ II.8, II.26. II.60, XII.B.2.)

The released conduct specifically includes

> all direct or indirect acts, representations, omissions, suggestions, or communications ...

> related to or connected in any way with the ... sale, administration, servicing ... or performance of the Policies or Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with ... (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any ... Annuity; (ii) the application for or purchase of any ... Annuity; (iii) the suitability of any purchases, sales or replacements of any ... Annuity ... ; (vii) the investment choices made with respect to assets held in any ... Annuity ... ; (ix) the tax status, tax impact or tax consequences of any ... Annuity ... ; (x) the costs, commissions, terms or benefits or disadvantages of any Annuity compared to any other life insurance policy, ... annuity contract or investment; (xi) the comparison or lack of comparison of any ... Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any ... Annuity ... ; and (xiv) the administration or servicing of any ... Annuity after its purchase.

(Id. at XII.B.2.) Despite the expansiveness of the released conduct, the settlement explicitly reserves a class member's right to assert various claims, including those that independently arise "from acts, facts or circumstances that occur for the first time after the last day of the Class Period." (Id. § XII.A.3(ii).) A class member also has the right to assert claims arising during the class period that relate to "the administration or servicing of a Policy or Annuity after its purchase," unless such administration or servicing arises out of or relates to the specific types of

released conduct listed in sections XII.B.2(i)-(xiii) of the agreement. (See id. §§ XII.A.3(iv) and XII.B.2(xiv).)

Gavula and Tanenhaus argue that certain Ameriprise advisor actions relating to the annuities in question occurred after the end of the class period. Specifically, they allege that Ameriprise and its representatives failed to monitor the accounts, failed to make meaningful contact with them and failed to take action to minimize future losses. Based on these actions, Gavula and Tanenhaus asserted claims of negligence, failure to supervise, breach of contract and breach of fiduciary duty against Ameriprise before the NASD. Ameriprise argues that because the actions and claims relate to annuities purchased during the class period, Gavula and Tanenhaus's claims were released by the Benacquisto settlement.

## I. Fiduciary Duty

Gavula and Tanenhaus allege that Ameriprise, through its registered brokers, owed them a fiduciary duty that it breached by failing to exercise good faith and protect their accounts. Ameriprise argues that it owed no fiduciary duty to Gavula and Tanenhaus because the annuities purchased during the class period were nondiscretionary[1] accounts. The question of whether a

---

[1] In a nondiscretionary account, the broker needs investor approval before making changes to the account. See Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 906 F.2d 1206, 1210 (8th Cir. 1990).

fiduciary relationship exists is a question of state law. See Horn v. Ray E. Friedman & Co., 776 F.2d 777, 779 (8th Cir. 1985). Under New Jersey law, a fiduciary relationship exists where one party is "under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." In re Cendant Corp. Sec. Litig., 139 F. Supp. 2d 585, 609 (D.N.J. 2001). A broker may have a "quasi-fiduciary duty toward his customer, depending on the facts of the individual relationship." Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1467 (D.N.J. 1986). However, a broker "will generally not owe a fiduciary duty to its client when the account held is non-discretionary." See McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 767 (3d Cir. 1990); Pine Belt Enters., Inc. v. SC & E Admin. Servs., Inc., No. 04-105, 2005 WL 2469672, at *4 (D.N.J. Oct. 6, 2005); Estate of Parr v. Buontempo Ins. Servs., 2006 WL 2620504, at *4 (N.J. Super. Ct. App. Div. Sept. 8, 2006).

Gavula and Tanenhaus argue that they were owed a fiduciary duty despite the nondiscretionary accounts because their brokers promised to monitor the accounts. Such a promise, however, falls within the conduct released in the Benacquisto settlement. (See Stip. of Settlement, Doc. No. 18, §§ XII.B.2.(i), (vii), (xii).) Accordingly, Gavula and Tanenhaus are barred from presenting a breach of fiduciary duty claim against Ameriprise to the NASD based on the two annuities purchased during the class period.

## II. Negligence, Breach of Contract and Failure to Supervise

Gavula and Tanenhaus allege that Ameriprise was negligent and breached its contract with them in failing to prevent account losses and provide competent and professional services. Gavula and Tanenhaus also allege that Ameriprise failed to supervise its registered brokers, allowing losses to increase unchecked. Gavula and Tanenhaus have not shown, however, that the claims independently arose from acts that occurred for the first time after the last day of the class period. (See id. § XII.A.3.(ii).) Instead, their claims are premised on acts and omissions related to conduct released by the terms of the Benacquisto settlement. (See id. §§ XII.B.2.(vii), (xii).) Accordingly, Gavula and Tanenhaus's negligence, breach of contract and failure to supervise claims were released under the Benacquisto settlement.

## CONCLUSION

Therefore, based upon a review of the file, record and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion to enforce the class action settlement as to the claims of John Gavula and Beverly Tanenhaus before the NASD related to annuities numbered 9310-6321235-7 and 9310-6321267-4 [Doc. No. 301] is granted.

Dated: May 14, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court