**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE CLASS-ACTION SETTLEMENT AS TO CLAIMS OF BYRON L. POTTS AND NANCY C. POTTS PRESENTED TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

---

## INTRODUCTION

Byron L. Potts, and Nancy C. Potts ("Tennessee Plaintiffs") seek to relitigate claims that they already released under the class-action settlement in this case. Indeed, under the settlement, the Tennessee Plaintiffs already received relief for these claims. Because the Court has specifically barred the double recovery that the Tennessee Plaintiffs now seek before the United States District Court for the Eastern District of

Tennessee, the Court should enjoin them from relitigating these claims, which were previously resolved and released pursuant to the terms of the class-action settlement agreement approved and ordered by this Court.

## FACTS

### The Final Judgment and Order Included a Broad Release of Claims Relating to the Annuities at Issue in this Litigation.

By way of its current motion, Defendant Ameriprise Financial Services, Inc., formerly known as American Express Financial Advisors, Inc. ("Ameriprise"), seeks to enforce the terms of a class-action settlement that was approved by this Court in 2001. (Ex. 1 hereinafter ("Final Order and Judgment").) The Tennessee Plaintiffs were members of the class that settled their claims and are subject to the Final Order and Judgment. Nonetheless, they filed a Complaint in the Circuit Court of Hamilton County, Tennessee, and seek to relitigate claims against Ameriprise that are barred by the Final Order and Judgment. (Ex. 2 The Complaint.)[1] Because the Final Order and Judgment bars the Tennessee Plaintiffs from raising these claims, Ameriprise respectfully requests that the Court enter an Order enforcing the class-action settlement and barring the Tennessee Plaintiffs from proceeding in litigation with any and all claims against Ameriprise that were previously released.

On August 21, 2000, Plaintiffs filed the Complaint in this federal-court action, asserting numerous claims related to the marketing, sale, servicing, and administration of

---

[1] On April 23, 2007, the case was removed to the Federal District Court for the Eastern District of Tennessee. On August 23, 2007, the Tennessee Plaintiffs amended their original complaint. The Amended Complaint is attached as Exhibit 3.

certain cash-value insurance policies and deferred annuity contracts sold and serviced by numerous Defendants, including Ameriprise. (Docket # 1.) Less than a month later, the parties submitted a Stipulation of Settlement with exhibits to the Court. (Ex. 4 (hereinafter "Settlement Agreement").) After notifying the class, the Court entered the Final Order and Judgment, which certified the class, approved the settlement terms proposed by the parties in the Settlement Agreement, and dismissed with prejudice the claims of the class members. (Ex.1.)

The Final Order and Judgment permanently barred and enjoined Class Members like the Tennessee Plaintiffs from commencing any other lawsuit, arbitration, or administrative, regulatory or other proceeding in any jurisdiction relating to any claims released pursuant to the terms of the Settlement Agreement. (*See id.* at ¶ 14.) The Court "expressly retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment . . . ." (*Id.* at ¶ 15.) Pursuant to the Final Order and Judgment, all class members who failed to opt out of the class thereby agreed to a broad release wherein they released a wide variety of claims related to the Annuity that were at issue in the class action.

The Final Order and Judgment further provides that Plaintiffs and all other members of the certified class agree and acknowledge that they:

> shall not now or hereafter initiate, participate in, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions

(defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part:

> (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Monk, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681) and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or
>
> (b) that relate in any way to the Released Conduct.

(*Id.* at ¶ 13(A)(2).)

The "Released Conduct" includes:

any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the . . . Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with

(i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any . . . Annuity;

(ii) the application for or purchase of any . . . Annuity;

(iii) the suitability of any purchases, sales, or replacements of any . . . Annuity;

(iv) the taking of any loans, or the accumulation of any interest or cash values on any . . . Annuity;

* * * *

(vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and

expense fees, charges, contract charges, surrender charges, or expenses on any . . . Annuity;

(vii) the investment choices made with respect to assets held in any . . . Annuity;

(viii) the surrender, lapse, or termination of any . . . Annuity;

(ix) the tax status, tax impact or tax consequences of any . . . Annuity or any actions or inactions taken with respect thereto;

(x) the costs, commission, terms, or benefits or disadvantages of any . . . Annuity compared to any other life insurance policy, annuity contract, or investment;

(xi) the comparison or lack of comparison of any . . . Annuity to any other product;

(xii) the . . . provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of . . . Annuity; . . . and

* * * *

(xiv) the administration or servicing of any . . . Annuity after its purchase.

(*Id.* at ¶ 13(B)(2) (reformatted from original).)

The Released Conduct relates to communications related or connected to the sale, administration, servicing, or performance of policies and annuities issued by Ameriprise between January 1, 1985 and February 29, 2000. *Benacquisto v. American Express Financial Corp.*, Civ. No. 00-1080, 2007 U.S. Dist. LEXIS 6620, at *11-12 (Minn. Jan. 29, 2007).

**The Tennessee Plaintiffs Received Relief as Class Members Under the Final Order and Judgment.**

During the Class Period, on behalf of themselves and a company called Nanby Trucking, Inc., the Tennessee Plaintiffs purchased several annuities and life insurance

policies issued by IDS Life Insurance Company (the "Policies") that are subject to the terms of the Settlement Agreement and the Final Order and Judgment. (*See* Ex. 4 at § II.60.) Ameriprise sent Notice of Class Action, Proposed Settlement and Fairness Hearing ("Class Notice") to Nanby Trucking Co. in October, 2000, and to Nancy and Byron Potts in November and December, 2000. (Aff. of Amy Lake dated April 16, 2007 (hereinafter "Lake Aff.") ¶¶ 2-5 & Ex. 5.) The Tennessee Plaintiffs and Nanby Trucking, Inc. did not opt out of the class by the January 29, 2001 deadline set by the Court. (Docket # 14; Lake Aff. ¶ 12.) They therefore became members of the class, and received general relief in accordance with the terms of the Settlement Agreement. (*See* Lake Aff. ¶¶ 8-10; Ex. 4 at § V.) After the final approval of the settlement by this Court, notice of this grant of relief was mailed to the Tennessee Plaintiffs and Nanby Trucking, Co. (Lake Aff. ¶¶ 8-10.) There was no indication that the Tennessee Plaintiffs and Nanby Trucking, Inc. failed to receive the Notice of General Relief. (Lake Aff. ¶ 11.) By becoming members of the class, the Tennessee Plaintiffs and Nanby Trucking, Co. released all of their claims against Ameriprise related to the Policies in accordance with the terms set forth in the Final Judgment and Order.

**Even Though the Claims Are Barred,
The Tennessee Plaintiffs Seek Additional Relief by Litigation.**

Even though they previously released claims against Ameriprise based on the Policies, in March 2007, the Tennessee Plaintiffs filed a Complaint against Ameriprise, alleging a variety of claims related to their purchase of the Policies. Among the allegations in the Complaint are claims the Ameriprise advisor made misrepresentations

and omissions as to how the Tennessee Plaintiff's money would be invested. (Ex. 2 at 5 ("[T]he Ameriprise agent intentionally and deliberately made misrepresentations of material facts as to how the Potts' money would be invested..."); at 6 ("[T]he Ameriprise agent, acting in the course of her employment and profession, supplied false information to the Potts as to their investments…").) The Tennessee Plaintiffs further allege that Ameriprise breached its fiduciary duty and was negligent in the sale of the policies. (Ex. 3 at 3 ("As advisors to the Plaintiffs, Ameriprise was a fiduciary to the Plaintiffs and was required to act with the highest obligations of good faith, loyalty, fair dealing, due care and candor. Ameriprise, through its agent, breached its fiduciary duties to Plaintiffs."); Ex. 2 at 7 ("Ameriprise owed a duty of care to the Potts to see that their money was invested properly and as represented. Ameriprise breached its duty of care to the Potts. . . .").) In addition, the Tennessee Plaintiffs allege that Ameriprise violated Investment Advisor's Act and the Tennessee Consumer Protection Act. (Ex. 3 at 4 ("Ameriprise, through its agents, breached its fiduciary duties to Plaintiffs by engaged in a deceptive contrivance, scheme, practice and course of conduct. . . . Maureen Sullivan, financial advisor for Ameriprise, failed to disclose that she was motivated to steer clients to American Express proprietary products and that, therefore, her advice was not unbiased and objective as claimed."); Ex. 2 at 8 ("The Potts aver that the actions of Ameriprise were deceptive and unfair trade practices. . . .").) The Tennessee Plaintiffs also allege that Ameriprise negligently supervised its agent. (Ex. 2 at 8 ("Ameriprise failed to properly supervise its agent, resulting in significant monetary and emotional damage to the Potts.").)

The Tennessee Plaintiffs further allege that "Ameriprise engaged in a deceitful course of conduct whereby it pressured its financial advisors to invest clients' such as Plaintiffs' funds in American Express-related or managed funds or products without regard to the needs of the Plaintiffs or the existence of better suited non-American Express related or managed funds or products without disclosure to the Plaintiffs of the incentive arrangements offered to financial advisors for recommending and investing in American Express products." (Ex. 3 at 1-2.) They further allege "Maureen Sullivan, financial advisor for Ameriprise, failed to disclose that she was motivated to steer clients to American Express proprietary products and that, therefore, her advice was not unbiased and objective as claimed." (Ex. 3 at 4.)

The gravamen of all of these claims is that the Tennessee Plaintiffs' Ameriprise advisor made certain material misrepresentations and omissions in the sale of the Policies. This is precisely the type of conduct that was at issue in the class action and released under the terms of the Final Order and Judgment. (Ex. 1 at ¶ 13.B.2.) These claims are barred by the Settlement Agreement and the Court's Final Order and Judgment.

## ARGUMENT

### I. The Court Should Enjoin the Litigation of the Claims Raised in the Statement of Claim to the Extent They Have Already Been Released Under the Final Order and Judgment.

#### A. The Tennessee Plaintiffs Released Their Class Action Claims.

The Tennessee Plaintiffs' Complaint is based largely on claims that their Ameriprise financial advisor improperly induced them to purchase the Policies and that

this was not a suitable investment vehicle for their needs. (*See, e.g.,* Ex. 2 at 2-5.) The express terms of the Release in the Final Order and Judgment and the Settlement Agreement bar the Tennessee Plaintiffs from relitigating any claims predicated upon an advisor's alleged misrepresentations or omissions related to the purchase of the Policies. Under the Release, class members have agreed not to assert "any Claims or Causes of Actions . . . that are based upon, related to, or connected with, directly or indirectly, in whole or in part: . . . (b) that relate in any way to the Released Conduct." (Ex. 1 at ¶ 13.A, .B (emphasis added).) Part of the Tennessee Plaintiffs' misrepresentation, supervision, breach of fiduciary duty, and statutory claims are related to the Released Conduct under the Settlement Agreement, which encompasses

> any and all . . . representations, omissions, suggestions, or communications that are related to or connected in any way with the . . . marketing, sale . . . or performance of the . . . the Annuities including, without limitation . . . representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration . . . of any . . . Annuity; (ii) the application for or purchase of any . . . Annuity; (iii) the suitability of any purchases [or] sales . . . of any . . . Annuity; . . .(vi) the setting, charging or reducing of any . . . commissions . . . on any . . . Annuity; (vii) the investment choices made with respect to assets held in any . . . Annuity; . . . (ix) the tax status, tax impact or tax consequences of any . . . Annuity . . .; (x) the costs, commissions, terms, or benefits or disadvantages of any . . . Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any . . . Annuity to any other product; (xii) . . . the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any . . . Annuity . . . .

(Ex. 1 at ¶ 13.B.2 (emphasis added).) The Tennessee Plaintiffs' current claims of misrepresentation, negligent supervision, breach of fiduciary duty, negligence, and statutory violations relating to their purchase of the Policies fall squarely within the scope

of the Released Conduct as defined by the Final Order and Judgment. Accordingly, the Tennessee Plaintiffs are precluded from relitigating theses claims relating to policies and annuities issued prior to February 29, 2000 before the United States District Court for the Eastern District of Tennessee.

### B. The Tennessee Plaintiffs Received Notice of the Class Action, Chose Not to Opt Out of the Class, and Received Relief Under the Settlement Agreement.

By receiving the Class Notice, not opting out, and receiving relief pursuant to the terms of the Settlement Agreement and the Final Judgment and Order, the Tennessee Plaintiffs became class members, and they are bound by all of the provisions of the Settlement Agreement and the Final Order and Judgment. *See, e.g., Berardinelli v. Gen. Am. Life Ins. Co. (In re Gen. Am. Life Ins. Co. Sales Practices Litig.*), 357 F.3d 800, 804-05 (8th Cir. 2004); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 192 (8th Cir. 1993).

Defendants issued both published and individual notice to the Tennessee Plaintiffs regarding the settlement, yet they chose not to opt out of the class. (Lake Aff. at ¶¶ 2-6, 12.) The Class Notice advised them, among other things, that they could contact a toll-free hotline in order to receive further information about the class settlement. (Ex. 5 at § N.) The Tennessee Plaintiffs were free to educate themselves about the class action and to explore any questions that they had about it. (*See id.*) They did not opt out of the class action, and the Tennessee Plaintiffs are bound by the terms of the class action. (Ex. 1 at ¶ 12 ("The terms of the Settlement Agreement and of this Order and Judgment shall be forever binding on Plaintiffs and all other Class Members . . . .").)

It is not inequitable or unjust to bind the Tennessee Plaintiffs to the Release and bar them from proceeding with the relitigation of claims that have already been released. The Tennessee Plaintiffs received relief in accordance with the Settlement Agreement. (Lake Aff. at ¶¶ 6-8.) They cannot now seek further relief for the same injuries before the United States District Court for the Eastern District of Tennessee. This Court's Final Order and Judgment expressly bars such an attempt to take a second bite of the apple. (Ex. 1 at ¶ 14 (permanently barring and enjoining Class Members from "filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration . . . based on or relating to the Claims and Causes of Action, or the facts and circumstances relating thereto, in the Action and/or the Released Conduct . . . as to that . . . Annuity")); *see also Mosberg v. Nat'l Prop. Analyst, Inc.*, 630 N.Y.S.2d 50, 52 (N.Y. App. Div. 1995) (recognizing that permitting a class member to proceed with claims for which he already received relief allows them to "eat his cake and have it too"). As a matter of law, the Tennessee Plaintiffs may not relitigate settled claims relating to the Annuity.

### C. As Class Members, the Tennessee Plaintiffs Are Bound by the Contractual Terms of the Settlement Agreement Adopted by the Final Judgment and Order.

As class members who received value for releasing their claims, the Tennessee Plaintiffs "contractually agree[d] and acknowledge[d] that . . . [they would] not . . . initiate, participate in, maintain, maintain a right to or assert against [Ameriprise] . . . any Claim[] or Cause[] of Action . . . that [was] <u>based upon, related to, or connected with,</u>

directly or indirectly, in whole or in part . . . (b) that relate[s] in any way to the Released Conduct." (Ex. 1 at ¶ 13.A.2 (emphasis added).) The Tennessee Plaintiffs may not avoid these contractual obligations under the Settlement Agreement by seeking to relitigate claims based upon alleged misrepresentations or omissions related to their purchase of the Policies. Preclusion of these claims was an "integral part of the settlement bargain" entered into by the parties to the class action, and "this Court cannot now modify the terms of that bargain at the insistence of one class member." *Thompson*, 992 F.2d at 191 n.5.

The Tennessee Plaintiffs accepted the benefits of class membership and agreed to any concomitant obligations imposed by class-member status, including releasing the right to relitigate claims against Ameriprise that relate to the Policies. *See In re VMS Ltd. P'ship Sec. Litig.*, 103 F.3d 1317, 1323 (7th Cir. 1996) (finding "failure to opt out manifested [class member's] consent to have the district court resolve matters involving the class action settlements"). As class members, the Tennessee Plaintiffs received both the benefits and the detriments of the settlement. Any injury that they suffered has already been remedied by the benefit that was received by virtue of her participation in the class-action settlement. Permitting the Tennessee Plaintiffs to proceed with the relitigation of their settlement-barred claims would allow them to seek double recovery for the same injury. *See Mosberg*, 630 N.Y.S.2d at 52. Under the circumstances of this case, the Tennessee Plaintiffs cannot now be heard to raise claims that have already been released.

## II. The Final Order and Judgment Authorizes this Court to Enjoin the Tennessee Plaintiffs from Relitigating Released Claims.

### A. This Court has Continuing Jurisdiction in this Matter.

The Final Order and Judgment makes clear that this Court has retained continuing jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and Judgment, and for any other necessary purpose, including, without limitation,"

> (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Order and Judgment, etc.);
>
> (b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Order and Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and
>
> (c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction;

(Ex. 1 at ¶ 19(a)-(c).) Thus, the terms of the Final Order and Judgment specifically authorize this Court to enter an Order enjoining the Tennessee Plaintiffs from pursuing released claims before a sister court. Entering such an Order is a proper method whereby the Court can ensure continued adherence to the terms of its final orders, including orders incorporating the terms of class-action settlement agreements. *See Thompson*, 992 F.2d at 189 (citing *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992)); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)).

The Eighth Circuit Court of Appeals has repeatedly recognized the propriety of a District Court issuing an injunction in order to enforce a final judgment dismissing claims settled pursuant to a class-action settlement agreement. A District Court has the authority to issue an injunction barring a class member from raising released claims in subsequent litigation. *Thompson*, 992 F.2d at 190; *see also Berardinelli*, 357 F.3d at 803. Because the Tennessee Plaintiffs seek to relitigate claims for which they have already received relief and that have already been released pursuant to the terms of the Settlement Agreement and the Final Order and Judgment, the Court should enjoin them from relitigating any released claims.

**B. Proceeding with the Relitigation of Released Claims Violates a Prior Order of this Court.**

The bar precluding the Tennessee Plaintiffs from relitigating released claims goes beyond a simple contractual agreement between the parties to this litigation; this Court has already decreed that they cannot proceed with the relitigation of these claims. The Court, in the Final Order and Judgment, enjoined class members from proceeding in such a fashion:

> All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in . . . or receiving any benefits or other relief from, any other <u>lawsuit</u>, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the Released Conduct . . . as to that Policy or Annuity.

(Ex. 1 at ¶ 14 (emphasis added).) Proceeding with the relitigation of released claims directly violates the Court's Final Order and Judgment.

The terms of the Final Order and Judgment are clear: by not opting out of the class and by receiving relief in accordance with the Settlement Agreement, the Tennessee Plaintiffs have released all of their claims related to the purchase of the Policies and agreed to forego the right to litigate these claims. (Ex. 1 at ¶ 13.) Indeed, the Court has ordered that they forego those claims. (*Id.* at ¶ 14.) Therefore, the Court should enjoin the Tennessee Plaintiffs from proceeding with any relitigation of claims relating in any way to any representations allegedly made to them that relate to the Policies. (*See id.* at ¶ 13.B.2 ("'Released Conduct' means any and all . . . representations, omissions, suggestions, or communications that are related to or connected in any way with the . . . marketing, sale, administration, . . . or performance of . . . the Annuities, including <u>without limitation</u>, acts, <u>representations, omissions, suggestions or communications in connection within (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any . . . Annuity"</u>) (emphasis added).) Relitigation of the claims set forth in the Complaint that are predicated upon claimed misrepresentations or omissions related to the Policies would be in direct contravention of this Court's prior orders.

### C. Permitting the Tennessee Plaintiffs to Proceed with the Relitigation of Released Claims Undermines the Finality of Class-Action Settlements.

Permitting the Tennessee Plaintiffs to pursue claims that have already been settled and released more than five years after this Court's entry of the Final Order and Judgment undermines the finality of class-action settlements. This would eviscerate the binding Settlement Agreement into which the Tennessee Plaintiffs voluntarily entered

and under which they received relief. Accordingly, authorizing the continued relitigation of any claims related to the Policies would be contrary to the strong public policy that supports class-action settlements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104-105 (3d Cir. 2002) (quoting *In re Prudential Ins. Co. Sales Practices Litig.: Lowe*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding preclusion of claims by nationwide settlement on grounds that, by allowing separate actions, defendants in large class actions "would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims" and this would "seriously undermine the possibility for settling any large, multi district class action")). As recognized by the Eighth Circuit,

> [W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action forseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.

*Thompson*, 992 F.2d at 191 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)). By enjoining the Tennessee Plaintiffs from proceeding with the relitigation of claims related to the Policies, the Court ensures not only that its Final Orders are respected, but that the "paramount policy" supporting settlement is upheld.

## **CONCLUSION**

For all of the reasons set forth above, Ameriprise respectfully requests that the Court enjoin the Tennessee Plaintiffs from proceeding with the relitigation of any and all

claims that were released by the Settlement Agreement and the Final Order and Judgment.

Respectfully submitted,

Dated: October 17, 2007

FAEGRE & BENSON LLP

s/ Erin A. Oglesbay
Michael F. Cockson (#280549)
Erin A. Oglesbay (#343092)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone No. (612) 766-7000
Facsimile No. (612) 766-1600

**ATTORNEYS FOR DEFENDANT AMERIPRISE FINANCIAL SERVICES, INC. F/K/A AMERICAN EXPRESS FINANCIAL ADVISORS, INC.**

fb.us.2242667.03