**UNITED STATES DISTRICT COURT**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LESA BENACQUISTO, DANIEL BENACQUISTO, RICHARD THORESEN, ELIZABETH THORESEN, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT and SUSAN MELCHERT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN EXPRESS FINANCIAL ADVISORS, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY, and IDS LIFE INSURANCE COMPANY OF NEW YORK,

Defendants.

**Civil No. 00-1980 DSD/JMM**

---

**AFFIDAVIT OF BYRON POTTS**

I, Byron Potts, being duly sworn, makes oath as follows:

1. My name is Byron Potts. I am sixty-eight (68) years of age and am competent to give this affidavit.

2. I am a resident of Walker County, Georgia.

3. In 1993, my wife and I began receiving investment advice from American Express, which later became Ameriprise[1], through its agent, Maureen Sullivan.

4. Upon specific advice of Ameriprise, my wife and I gave funds monthly to Ameriprise as retirement investments.

5. Ameriprise's agent represented to my wife and me that our funds would be invested in safe investments.

6. I did not learn that the funds I had given to Ameriprise were used for purchasing life insurance policies and annuities until 2005 when Ameriprise contacted me regarding its investigation of Maureen Sullivan.

7. Combined, my wife and I gave more than $248,000 to Ameriprise for investing for our retirement.

8. In late summer/early fall of 2005, a representative of Ameriprise contacted my wife, daughter, and me and explained that Ameriprise was in the process of investigating Maureen Sullivan.

9. In the fall of 2005, I met with representatives of Ameriprise, who explained that I had been stolen from.

10. I learned from meetings and correspondence with Ameriprise that money my husband and I had given to Ameriprise for investment had been used to purchase many unauthorized life insurance and annuity policies. Much of our investment money had also gone to pay unauthorized surrender fees and unauthorized financial planning fees.

11. To date, I still do not know the total number of policies that were opened on my husband's and my behalf through Ameriprise without our consent or knowledge.

---

[1] For clarity sake, I will refer to both American Express and Ameriprise as just "Ameriprise."

12. I also discovered through communications with Ameriprise that two (2) appropriate life insurance policies that my husband and I had purchased were changed without our consent to second to die policies.

13. During these meetings with agents of Ameriprise in the fall of 2005, my wife, daughter, and I were told that Ameriprise was sorry for what happened and that Ameriprise was on our side.

14. During my dealings with Ameriprise's agent, Maureen Sullivan, Ms. Sullivan would often have me sign blank forms that she claimed would be completed later. She did not explain to me what these forms were that I was signing.

15. Throughout my numerous communications with Ameriprise in 2005 and 2006 regarding the fraud perpetrated by Ms. Sullivan, no one from Ameriprise ever informed me of any class action lawsuit involving Ameriprise that may relate to my claims against Ameriprise or me.

16. In November 2005, Ameriprise had my wife and me complete affidavits of forgery indicating that certain signatures contained in the files of Ameriprise were not my signature and were not authorized by me.

17. There are also many other documents in the possession of Ameriprise that contain forged signatures.

18. I now know that all of the money my wife and I invested with Ameriprise has been lost.

19. I first learned that there was a class action lawsuit regarding Ameriprise that may be related to me after my attorneys informed me of Ameriprise's Motion to Enforce the Class

Action Settlement that was filed in October 2007. I have not received any relief from any such class action settlement.

20. I have reviewed documents that my attorneys have received from Ameriprise regarding life insurance policies and annuities that were apparently opened on my behalf. From my review of these documents, I attest as follows:

a. For annuity policy 93106212303, the policy documents contained signatures that are not mine. Further, I did not know anything about this annuity being taken out on my behalf;

b. For annuity policy 930062837669, a signature on the documents for this policy is not mine and I did not know anything about this policy being issued;

c. For annuity policy 93106297841, the signature on the documents for this annuity is not mine and I did not know anything about this policy being taken out on my behalf;

d. For life insurance policy 090906227087, the signature in these policy documents is not mine and I did not know anything about this policy being taken out on my behalf.

Further this affiant sayeth not.

**SIGNATURE ON FOLLOWING PAGE**

Byron Potts

**BYRON POTTS**

Sworn to and subscribed before me
this 7th day of December 2007.

Linda Maynard

Notary Public

My commission expires: 2-6-08

LINDA MAYNARD
NOTARY
PUBLIC
AT
LARGE
HAMILTON COUNTY, TENNESSEE