**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA**

| | | |
|---|---|---|
| **CECILIA P. BENNETT, BYRON L. POTTS AND NANCY C. POTTS,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **NO. 1:07CV-90** |
| **AMERIPRISE FINANCIAL SERVICES, INC. f/k/a/ AMERICAN EXPRESS FINANCIAL SERVICES, INC. and IDS LIFE INSURANCE COMPANY,** | ) | **Judge Collier** **Magistrate Judge Carter** |
| **Defendant.** | ) | |

**ANSWER OF AMERIPRISE FINANCIAL SERVICES, INC.**

Defendant, Ameriprise Financial Services, Inc. f/k/a American Express Financial Services, Inc. ("Ameriprise Financial") submits the following Answer to the Complaint for damages ("Complaint"):

1-2. Ameriprise Financial admits the allegations in paragraphs 1 and 2.

3. Ameriprise Financial admits it is a Delaware corporation. Ameriprise Financial further admits that it has several franchisees doing business and maintaining offices in Hamilton County. IDS Life Insurance Company n/k/a RiverSource Life Insurance Company ("RiverSource") is a separate company incorporated under the laws of Minnesota. Ameriprise Financial denies any allegations in paragraph 3 inconsistent with the foregoing response.

4. Ameriprise Financial admits that this Court has personal jurisdiction over it and that venue is proper. Ameriprise Financial denies it is "located" in Hamilton

County, Tennessee. Ameriprise Financial denies any allegations in Paragraph 4 inconsistent with the foregoing response.

5. Ameriprise Financial admits that Mr. and Mrs. Potts are 68 and 66 years of age, respectively, and that they were the proprietors of Nanby Trucking. Ameriprise Financial further admits that the Potts began applying for products from Ameriprise Financial in 1993. Ameriprise Financial is without sufficient information to form a belief as to the truth of whether the Potts ever received formal investment advice prior to working with Maureen Sullivan ("Sullivan") or whether Sullivan gained the trust of the Potts.

6. Ameriprise Financial denies the allegations in paragraph 6. Nanby Trucking purchased a Term Life policy (Policy No. 9000-3952242-004) with an effective date of January 15, 1994, in which Mr. Potts was the insured and Mrs. Potts was named as the beneficiary. Mrs. Potts also purchased a Life Protection Plus policy (Policy No. 9090-3952267-004) with an effective date of December 30, 1993, in which Mrs. Potts was the insured and Mr. Potts was named as the beneficiary.

7. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations regarding the specific advice given by Sullivan to the Potts or Sullivan's representations. Ameriprise Financial denies that Sullivan was acting as an agent for Ameriprise Financial if she made any misrepresentations to Plaintiffs. Ameriprise Financial admits that the Potts made regular premium payments and received regular statements regarding their accounts and policies with Ameriprise Financial. Ameriprise Financial denies any allegations in paragraph 7 inconsistent with the forgoing response.

8. Ameriprise Financial admits that over a 12 year period the funds Mr. and Mrs. Potts invested were placed in accounts, insurance policies and annuities held at Ameriprise Financial or its subsidiaries. Ameriprise Financial is without sufficient information to know when the Potts purportedly discovered that money intended to be invested with Ameriprise Financial in two insurance policies had not been invested as represented. Ameriprise Financial admits that Plaintiffs' money had been used to purchase several life insurance policies and annuities and that approximately thirty-two such accounts were set up by Sullivan in the name of Mr. and Mrs. Potts. Ameriprise Financial denies misapplication of premiums caused the two insurance policies that Plaintiffs maintain were appropriate to lapse. The Life Protection Plus policy (Policy No. 9090-3952267-004) was not closed until March 1, 2006, after the Plaintiffs began investigating their insurance policies. Ameriprise Financial is without sufficient information to admit or deny the reasons Plaintiffs stated for the lapse of the Term Life policy (Policy No. 9000-3952242-004) purchased by Nanby Trucking. Ameriprise Financial also is without sufficient information to admit or deny if the two life insurance policies that Plaintiffs maintain were appropriate had been converted to 2nd to Die policies without authorization. Ameriprise Financial also is without sufficient information to admit or deny if the Potts' signatures on various insurance and annuity documents were forged. Ameriprise Financial admits that the insurance and annuity products purchased were products of Ameriprise Financial or its subsidiaries, but deny that they were purchased by an agent on behalf of Ameriprise Financial or RiverSource if she was acting outside the scope of her agency. Ameriprise Financial denies any allegations in paragraph 8 inconsistent with the foregoing response.

9. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint. Ameriprise Financial denies that Sullivan was acting as an agent of Ameriprise Financial.

10. Ameriprise Financial admits that Mr. and Mrs. Potts paid to Ameriprise Financial over $200,000 for financial planning analysis, investments and premiums. Ameriprise Financial denies that that money was not applied to the corresponding policies. The account histories reflect which account, insurance policy or annuity received premiums or investment. Ameriprise Financial denies that the Potts' paid $28,000 in fees for financial planning analysis – the amount for financial planning was approximately $21,650. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegation that all of the financial plans were unauthorized. Ameriprise Financial further denies that Sullivan was acting as an agent for Ameriprise Financial when she allegedly performed the acts set forth in the Complaint. Ameriprise Financial denies the allegations in paragraph 10 inconsistent with the foregoing response.

11. Ameriprise Financial denies that Sullivan was always acting as its agent or an agent of RiverSource.

12. Ameriprise Financial denies that its actions caused the Potts to file for bankruptcy protection or suffer damages.

13. Ameriprise Financial denies that Ms. Bennett began receiving investment advice from Maureen Sullivan in 2002. Ms. Bennett applied for Financial Plan assessment, number 0191-3096067, in February 2000. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial is without sufficient

information to form a belief as to the truth of the remaining allegations contained in paragraph 13.

14. Ameriprise Financial admits that Ms. Bennett invested $200,000 in May 2002 with Ameriprise Financial or its subsidiaries: Ms. Bennett invested $50,000 in Class A shares in an AXP Cash Management Fund, account 0113-8185194, and $50,000 in Class B shares in the Short Duration U.S. Government Fund, account 0124-8185194. Ms. Bennett also invested $50,000 in a Rate Advantage Annuity NQ, account 9300-6959703, and $50,000 in a Rate Advantage Variable Annuity NQ, account 9300-6959764. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations that these investments were made upon specific representations and advice of Sullivan and in direct reliance on these representations. Ameriprise Financial denies that Sullivan was acting an agent of Ameriprise Financial if she made such representations and advice. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations that Ms. Bennett requested the funds be invested in a manner that would provide funds for her children's education when need. Ms. Bennett did make withdrawals and surrenders from the two accounts and two annuities periodically. Ameriprise Financial denies that it used portions of the $200,000 investment to pay premiums. Ameriprise Financial admits that the $200,000 invested by Ms. Bennett was used by Plaintiffs or Sullivan to pay premiums on insurance policies, financial service agreements and surrenders, and also much of it was also redeemed to and placed into Bennett's account at Rossville Bank. Ameriprise Financial is without knowledge to admit or deny if the redemptions and surrender went to pay for unauthorized and inappropriate life insurance policies, service agreements and

unauthorized surrenders. Ameriprise Financial denies any allegations in paragraph 14 inconsistent with the foregoing response.

15. Ameriprise denies Ms. Bennett did anything based on the advice of an Ameriprise Financial agent as alleged in the Complaint. Ameriprise Financial admits that Ms. Bennett authorized a monthly debit out of her bank checking account to be invested and pay for premiums at Ameriprise Financial, but Ameriprise Financial is without sufficient information to know if Mrs. Bennett intended the debit to be used for other investments. Ameriprise Financial denies that the monthly bank draft went from $300.00 to $1,200.00 per month at the direction of an Ameriprise Financial agent. As to the amount of the bank draft, Ameriprise admits only what the records reflect was debited from her bank account to her polices and other accounts. Ameriprise Financial admits that Ms. Bennett maintained five life insurance policies in her name. She owned five policies: (1) Life Protection Plus, policy no. 9090-3952267 in which Mrs. Potts was the insured and Ms. Bennett was the beneficiary; (2) Variable 2nd to Die, policy no. 9090-66887025 in which Mr. and Mrs. Potts are the insureds and Mrs. Bennett is the beneficiary; (3) Variable Universal Life, policy no. 9090-6736827 in which Mrs. and Mr. Bennett were the insureds and the survivor was the beneficiary; (4) Variable Universal Life, policy no. 9090-6736865 in which B. Callaway Bennett was the insured and Mrs. Bennett was the beneficiary; and (5) Variable Universal Life, policy no. 9090-6736887 in which Taylor L. Bennett was the insured and Mrs. Bennett was the insured. Ameriprise Financial admits that the products purchased by Mrs. Bennett were products of Ameriprise Financial or its subsidiaries, but denies that an Ameriprise agent purchased

the products. Ameriprise Financial denies any allegations in paragraph 15 inconsistent with the foregoing response.

16. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegation that Mrs. Bennett determined in 2006 that the funds she gave to Ameriprise Financial had not been invested as she understood. Ameriprise Financial denies any implication that the May 2002 investment of $200,000 was misappropriated from the accounts she invested and the policies she purchased. The account records reflect that Mrs. Bennett regularly withdrew that money from the two accounts and two policies over time until nothing remained. Ameriprise Financial admits that the monthly payments from Mrs. Bennett's checking account were being used to pay the premiums for life insurance policies and annuities. Ameriprise Financial is without sufficient information to admit or deny if the policies and annuities were unauthorized. Ameriprise Financial denies any allegations in paragraph 16 inconsistent with the foregoing response.

17. Ameriprise Financial denies that Sullivan was acting as an agent of Ameriprise Financial to the extent that she made misrepresentations to Ms. Bennett. Ameriprise Financial admits that Ms. Bennett invested and/or paid approximately $250,000 to Ameriprise Financial over the period of time at issue including approximately $16,000.00 or more in fees for financial planning analysis. Ameriprise Financial is without sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 17 of the Complaint.

18. Ameriprise Financial denies that its actions caused Bennett to suffer damages.

19. Ameriprise Financial denies that Sullivan was acting as an agent to the extent that she made misrepresentations to the Potts or Bennett. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 19.

20. Ameriprise Financial denies that Sullivan was acting as an agent to the extent she made misrepresentations or acted to the detriment of the Potts or Bennett. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 20.

21. Paragraph 21 requires no response.

22. Ameriprise Financial denies that Sullivan was acting as an agent of Ameriprise Financial if she intentionally and deliberately made misrepresentations. Ameriprise Financial is without sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 22.

23. Ameriprise Financial denies the allegations in paragraph 23.

24. Paragraph 24 requires no response.

25. Ameriprise Financial denies that Sullivan was acting as an agent of Ameriprise Financial if she intentionally and deliberately made misrepresentations. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 25.

26. Ameriprise Financial denies the allegations in paragraph 26.

27. Paragraph 27 requires no response.

28. Ameriprise Financial denies that any misrepresentations by Maureen Sullivan were made within the scope of her relationship with Ameriprise Financial.

Ameriprise Financial is without sufficient information to form a belief as to the truth of the remainder of the allegations contained in paragraph 28.

29. Ameriprise Financial denies the allegations in paragraph 29.

30. Paragraph 30 requires no response.

31. Ameriprise Financial is without sufficient information to know if the Potts held Ameriprise Financial in a position of trust. Ameriprise Financial denies that it has a broad fiduciary duty to the Potts, as they held a non-discretionary account. Ameriprise Financial has a transactional fiduciary obligation to perform the instructions provided by customers when those customers make decisions about their investments choices and insurance needs. Ameriprise Financial denies the remaining allegations of paragraph 31.

32. Paragraph 32 requires no response.

33. Ameriprise Financial denies that it has a broad duty of care to the Potts as they held a non-discretionary account. Ameriprise Financial has a transactional fiduciary obligation to perform the instructions given by customers when those customers make decisions about their investments choices and insurance needs. Ameriprise Financial denies the remaining allegations of paragraph 33.

34. Paragraph 34 requires no response.

35-37. Ameriprise Financial denies the allegations in paragraphs 35-37.

38. Paragraph 38 requires no response.

39. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial further denies the remaining allegations in paragraph 39.

40. Paragraph 40 requires no response.

41. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial is without sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 41 of the Complaint and therefore denies the same.

40. (Misnumbered in Complaint). Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial further denies the remaining allegations in this paragraph 40.

41. (Misnumbered in Complaint). This paragraph requires no response.

42. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 42.

43. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial further denies the remaining allegations in paragraph 43.

44. Paragraph 44 requires no response.

45. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial denies that any misrepresentations by Maureen Sullivan were made within the scope of her employment. Ameriprise Financial is without sufficient information to form a belief as to the truth of the remainder of the allegations in paragraph 45.

46. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial further denies the remaining allegations in paragraph 46.

47. Paragraph 47 requires no response.

48. Ameriprise Financial is without sufficient information to know if Bennett held Ameriprise Financial in a position of trust. Ameriprise Financial denies that it has a broad fiduciary duty to Ms. Bennett as she held a non-discretionary account. Ameriprise Financial has a transactional fiduciary obligation to perform the instructions given by customers when those customers make decisions about their investments choices and insurance needs. Ameriprise Financial denies the remaining allegations of paragraph 48.

49. Paragraph 49 requires no response.

50. Ameriprise Financial denies that it has a broad duty of care to the Ms. Bennett as she held a non-discretionary account. Ameriprise Financial has a transactional fiduciary obligation to perform the instructions given by customers when those customers make decisions about their investments choices and insurance needs. Ameriprise Financial denies the remaining allegations of paragraph 50.

51. Paragraph 51 requires no response.

52-54. Ameriprise Financial denies the allegations of paragraphs 52-54.

55. Paragraph 55 requires no response.

56. Ameriprise Financial denies that Sullivan was always acting as its agent. Ameriprise Financial further denies the remaining allegations in paragraph 56.

57. Ameriprise Financial denies any allegations in the Complaint not specifically addressed.

## AFFIRMATIVE DEFENSES

1. Plaintiffs' claims are precluded by the equitable doctrines of estoppel, waiver, acquiescence, ratification and laches.

2. The wrongful conduct for which Plaintiffs seek redress purportedly began in 1993. Plaintiffs have a duty to exercise reasonable care in protecting their own interests. For fourteen years, Plaintiffs received regular statements notifying them of the activity in their accounts.

3. In the event Ameriprise Financial is found to be at fault for a claim grounded in negligence, Ameriprise Financial asserts that the fault of others, including the Plaintiffs, is equal to or greater than the fault of Ameriprise. Thus, under the doctrine of comparative fault, Plaintiffs are barred from recovery. Furthermore, if Plaintiffs' fault is found to be less than that of Ameriprise Financial, then any recovery by the Plaintiffs should be reduced in accordance with the fault attributable to Plaintiffs and others.

4. Plaintiffs' claims are barred by the applicable statutes of limitations and statutes of repose.

5. Plaintiffs' claims are barred by an accord and satisfaction reached with Ameriprise resulting from a prior lawsuit.

6. Plaintiffs fail to state a claim upon which relief may be granted.

Having answered the Complaint, Ameriprise Financial requests the following relief:

1. That the Complaint be dismissed; and

2. That the Court award such other further and general relief the Court deems appropriate.

Respectfully submitted,

s/ Salvador M. Hernandez
John R. Jacobson (#14365)
Salvador M. Hernandez (#20121)
Bowen Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700 / (615) 320-3737 Fax
jjacobson@bowenriley.com
shernandez@bowenriley.com

*Attorneys for Defendant Ameriprise Financial Services, Inc.*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been furnished via U.S. Mail and through the Court's ECF system to:

Gary R. Patrick
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street
Suite 202, Market Court
Chattanooga, TN 37402

this 31st day of May, 2007.

s/ Salvador M. Hernandez