event more frequently than every 60 days, provide Defendants and Co-Class Counsel with information concerning the status of the claims to be evaluated.

## X. REQUESTS FOR EXCLUSION

A. Consistent with section IV.C herein, any potential Class Member who wishes to be excluded from the Class with respect to a particular Policy or Annuity must mail a written request for exclusion to the Administrator specifying the applicable Policy or Annuity by its policy or annuity number (and in the case of a participation interest in a Group Qualified Annuity, providing sufficient information to identify the participation interest), to the address provided in the Class Notice, with a postmark no later than 30 days before the Fairness Hearing, or as the Courts otherwise may direct. A list reflecting all requests for exclusion shall be filed with the Courts by Defendants at or before the Fairness Hearing.

B. Any potential Class Member who is not excluded by the filing of a timely written request for exclusion with respect to a particular Policy or Annuity as provided in the preceding subsection and in section IV.C shall be bound with respect to that Policy or Annuity by all subsequent proceedings, orders and judgments in the Actions, even if he or she has pending, or subsequently initiates, litigation, arbitration or any other proceeding against Defendants, or any of them, relating to the claims released in these Actions.

## XI. OBJECTIONS TO SETTLEMENT

A. Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement, to the certification of the class, or to the award of Attorneys' Fees and Expenses, must deliver to Co-Class Counsel and Defendants' Counsel and file with the Courts, with a postmark no later than 30 days before the Fairness Hearing or as the Courts otherwise may

direct, a statement of his or her objection, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Courts' attention and any evidence the Class Member wishes to introduce in support of the objection. Class Members may so object either on their own or through an attorney hired at their own expense.

B. Class Members and their personal attorneys may obtain access, at their own expense, to review the documents the Defendants produced to Co-Class Counsel during the course of discovery in these Actions, and the deposition transcripts (and exhibits thereto) generated in these Actions; provided, however, that they first agree in writing to be bound by the Confidentiality Agreement attached as Exhibit E, as well as all orders, including protective orders, entered and to be entered in these Actions. These discovery documents shall be made available only by appointment during regular business hours at the offices of Lockridge Grindal Nauen, P.L.L.P. at 100 Washington Avenue South, Minneapolis, MN 55041. Co-Class Counsel shall inform Defendants' Counsel promptly of any requests by Class Members or their attorneys or other persons or entities for access to such documents.

C. If a Class Member hires an attorney to represent him or her, the attorney must (i) file a notice of appearance with the Clerks of the Courts no later than 30 days before the Fairness Hearing, or as the Courts otherwise may direct; and (ii) deliver to Co-Class Counsel and Defendants' Counsel with a postmark no later than 30 days before the Fairness Hearing a copy of the same.

D. Any Class Member who files and serves a written objection, as described in section XI.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's own expense, to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement, or to the award of Attorneys' Fees and Expenses. Class

Members or their attorneys intending to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to Co-Class Counsel and Defendants' Counsel and file it with the Courts, with a postmark no later than 30 days before the Fairness Hearing, or as the Courts otherwise may direct.

E. Any Class Member who fails to comply with the provisions of this section shall waive and forfeit any and all rights he or she may have to appear separately, object, and/or appeal, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in these Actions.

## XII. RELEASE AND WAIVER AND ORDER OF DISMISSAL

### A. Release and Waiver

1. In consideration for the relief set forth in this Agreement, Plaintiffs and all other Releasors (defined below) shall, as of the Final Settlement Date, release, acquit and forever discharge the Releasees (defined below) from any and all past or present Claims and Causes of Action (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681), and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) the Released Conduct (defined below).

2. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors also hereby contractually agree and acknowledge that, unless this settlement is ultimately disapproved, they shall not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the Releasees, or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, any Claims and Causes of Actions (defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part: (a) the allegations, facts or subjects set forth or otherwise raised in Benacquisto, et al. v. American Express Financial Corporation, et al., No. 96-18477, pending before the Minnesota State Court for the County of Hennepin (together with the actions consolidated therewith, also filed in the Minnesota State Court for the County of Hennepin and entitled Mork, et al. v. IDS Life Insurance Company, et al., No. 97-04742, and Thoresen, et al. v. American Express Financial Corporation, et al., No. 98-015681), and/or Benacquisto, et al. v. American Express Financial Corporation, et al., No. 00-1980 DSD/JMM, pending before the United States District Court for the District of Minnesota; or (b) that relate in any way to the Released Conduct.

3. Nothing in this Release shall be deemed to alter (i) a Class Member's right to make a claim for contractual benefits that will become payable in the future pursuant to the express written terms of an In Force Policy or In Force Annuity issued by any of Defendants; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances that occur for the first time after the last day of the Class Period; (iii) a Class Member's right to make a claim for theft or embezzlement in connection with a Policy or Annuity; (iv) a Class Member's right to assert any claim based on facts arising out of or relating to the administration or servicing of a Policy or Annuity after its purchase unless they arise out of or

relate to any of the matters described in sections XII.B.2.(i)-(xiii) herein; or (v) a Class Member's right to assert any claim peculiar to the Class Member that falls outside the general categories of claims or conduct described in the complaints in the Actions or the Release in this settlement and is based on facts that were not discovered and could not with reasonable care have been discovered by the Class Member before the deadline to submit an Election Form set forth in this Agreement.

4. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly agree that this Release will be, and may be raised as, a complete defense to, and will preclude any action or proceeding that relates in any way to, the Released Conduct.

5. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, expressly understand that certain principles of law, such as Section 1542 of the Civil Code of the State of California, provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release and which, if known by him, must have materially affected his settlement with the debtor. To the extent that these principles of law arguably may be applicable — notwithstanding that the parties have chosen Minnesota law to govern this Agreement — Plaintiffs and the Class Members hereby agree that these principles (including Cal. Civ. Code Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any jurisdiction that may be applicable herein) are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Class Members, and Plaintiffs and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

6. In connection with this Release, Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein that occurred prior to the last day of the Class Period. Nevertheless, subject to paragraph 3 above, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such matters that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies and Annuities.

7. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the Minnesota State Court for the County of Hennepin or the United States District Court for the District of Minnesota.

8. Plaintiffs and all other Class Members, on their own behalf and on behalf of all other Releasors, hereby agree and acknowledge that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

9. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability, wrongdoing or damages by the Company.

B. <u>Release and Waiver -- Definitions</u>

1. "Claims and Causes of Action" (as used in this section XII) means any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any

allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for rescission, reformation, restitution or all damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement.

2. "Released Conduct" means any and all direct or indirect acts, representations, omissions, suggestions, or communications that are related to or connected in any way with the design, development, marketing, sale, administration, servicing, underwriting, or performance of the Policies or the Annuities, including, without limitation, acts, representations, omissions, suggestions or communications in connection with (i) the explanation, description, marketing, sale, solicitation, illustration or replacement of any Policy or Annuity; (ii) the application for or purchase of any Policy or Annuity; (iii) the suitability of any purchases, sales or replacements of any Policy or Annuity; (iv) the taking of any loans, or the accumulation of any interest or cash values on any Policy or Annuity; (v) the setting, reduction, adjustment, payment, or lack of payment of any interest rates, purchase rates or renewal rates on any Policy or Annuity; (vi) the setting, charging or reducing of any cost of insurance, commissions, incentives, premiums, taxes, fees, mortality and expense fees, charges, contract charges, surrender charges, or expenses on any Policy or Annuity; (vii) the investment choices made with respect to assets held in any

Policy or Annuity; (viii) the surrender, lapse, or termination of any Policy or Annuity; (ix) the tax status, tax impact or tax consequences of any Policy or Annuity or any actions or inaction taken with respect thereto; (x) the costs, commissions, terms, or benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; (xi) the comparison or lack of comparison of any Policy or Annuity to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy or Annuity; (xiii) the effect that a Class Member's election and award of benefits in this Settlement Agreement may have on the value of any Policy or Annuity; and (xiv) the administration or servicing of any Policy or Annuity after its purchase.

3. "Releasees" means the Company and its past, present and future parents, subsidiaries, affiliates, partners, predecessors, successors and assigns, and each of their respective past, present and future officers, directors, shareholders, employees, general agents, agents, advisors, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf of, or at the direction of, any of them.

4. "Releasors" means, to the extent they are not excluded from the Class with respect to a Policy or Annuity, the Plaintiffs and all Class Members, on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, guardians, attorneys, trustees, qualified plans, fiduciaries, plan fiduciaries, plan trustees, plan sponsors, plan participants, plan beneficiaries, and representatives, and on behalf of the Policies' insureds and beneficiaries, the Annuities' annuitants and beneficiaries, and the Policies' and Annuities' nominal and beneficial owners.

C. Order of Dismissal. The Parties shall seek and obtain from the Courts the Final Order and Judgment (for which, as a condition of settlement, unless waived, the time for appeal has expired without any modifications in the Final Order and Judgment) as further described below in section XIV. The Final Order and Judgment shall, among other things, (i) approve this Settlement Agreement as fair, reasonable and adequate; (ii) dismiss the Actions with prejudice and on the merits; and (iii) set forth the terms of the Release.

## XIII. ATTORNEYS' FEES AND EXPENSES

A. Co-Class Counsel agree to make, and Defendants agree not to oppose, an application for an award of Attorneys' Fees and Expenses in the Actions not to exceed $28 million, which shall be the sole aggregate compensation for all attorneys representing the Class.

B. Subject to the provisions of section XVI.D herein, Defendants shall pay the Court-awarded amount of Attorneys' Fees and Expenses — whatever it may be — from their own funds, and not from any monies set aside pursuant to this Agreement for compensation of Class Members. Lead Counsel, in its sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among all of the counsel who have acted on behalf of the Class herein.

C. If Defendants elect not to exercise a right to terminate the Agreement under section XVI below, Defendants shall pay to Lead Counsel the entire Attorneys' Fees and Expenses awarded by the Courts within 10 days after the last date of entry of the Final Order and Judgment. Lead Counsel shall hold that sum until the Final Settlement Date in a joint signatory fiduciary account, which in turn will be maintained at a major financial institution to be agreed upon between Defendants and Lead Counsel. If the Final Order and Judgment is reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any

manner other than one resulting in an affirmance of the Final Order and Judgment (other than on the issue of attorneys' fees), or if Defendants or Class Counsel properly and timely terminate the Settlement Agreement in accordance with section XVI of this Agreement, then Lead Counsel shall, within 10 days thereafter, return to Defendants the full amount of Attorneys' Fees and Expenses paid by Defendants in connection with the settlement plus the interest earned thereon. If the award of Attorneys' Fees and Expenses is reduced after payment is made, then Lead Counsel shall, within 10 days, return to Defendants the amount by which the Attorneys' Fees and Expenses have been reduced plus interest earned on the returned amount.

D. Defendants' past, present and future parents (including intermediate and ultimate parents), subsidiaries, affiliates, predecessors, successors and assigns, and any of their respective past, present and future officers, directors, employees, advisors, general agents, agents, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, shall not be responsible for paying any attorneys' fees, expenses, costs or disbursements in connection with this settlement, nor will they be liable for any such expense in connection with the Actions. Defendants shall only be liable or obligated to pay attorneys' fees, expenses, costs or disbursements provided for by the Courts, and shall not be obligated to pay or be liable for any other such expense on behalf of any person, either directly or indirectly, in connection with these Actions, this Settlement Agreement, or the proposed settlement.

## XIV. ORDER OF NOTICE, SETTLEMENT HEARING AND ADMINISTRATION

A. The Parties have negotiated, drafted and agreed to the content and form of the following documents: the Guidelines for Determining, Scoring and Awarding Relief in the Claim Review Process (Exhibit A); the Class Notice Package (including the accompanying cover letter,

Notice of Class Action, Proposed Settlement and Fairness Hearing, Release and Waiver, Benefit Voucher, Statement of Eligibility, Election Form, Designation Form, Fact Sheet for Qualified Plans, Plan Participant Information Sheet, Change of Address Form, and Foreign Language Statement) (Exhibit B); the Publication Notice (Exhibit C); the Proposed Hearing Order (Exhibit D); the Confidentiality Agreement (Exhibit E); the Proposed Final Order and Judgment (Exhibit F); the Statement to Accompany Post-Execution Date Responses to Customer Complaints (Exhibit G); the Post-Settlement Claim Form Mailing (Exhibit H); the Post-Mailing Reminder (Exhibit I); and Claim Review Administrative Forms and Letters (Exhibit J). These documents are incorporated into, are an integral part of, and are material terms of this Agreement.

B. No later than September 18, 2000, the Parties shall submit this Agreement, including all attached exhibits, to the Courts and seek preliminary approval thereof. If the Courts preliminarily approve the settlement, the Parties shall move the Courts to set a Fairness Hearing, and shall proffer the proposed Hearing Order (Exhibit D).

C. No named Plaintiff (including Lesa Benacquisto, Daniel Benacquisto, Arnold Mork, Isabella Mork, Ronald Melchert, Susan Melchert, Richard Thoresen or Elizabeth Thoresen) shall request exclusion from the Class, object to the proposed settlement, or file an appeal from or otherwise seek review of any order approving the proposed settlement.

## XV. FINAL APPROVAL AND FINAL ORDERS AND JUDGMENTS

The Parties shall petition the Courts for the Final Order and Judgment, substantially in the form attached hereto as Exhibit F.

## XVI. MODIFICATION OR TERMINATION OF THIS AGREEMENT

A. The terms and provisions of this Agreement may be amended, modified or expanded only by agreement of the Parties and approval of the Courts; provided, however, that

after entry of the Final Order and Judgment the Parties may, by written agreement, effect such amendments, modifications or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or notice to or approval by the Courts if such changes are consistent with the Courts' Final Order and Judgment and do not limit the rights of Class Members under the Settlement Agreement.

B. Defendants, in consultation with Co-Class Counsel and without approval of the Courts, may implement the terms of the settlement after the last date on which the Final Order and Judgment is entered but before the Final Settlement Date, in which case all provisions in this Agreement that specify actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date on which Defendants elect to implement the settlement.

C. This Agreement shall terminate at the sole option and discretion of Defendants or Plaintiffs if (i) the Courts, or either of them, or any appellate court(s), rejects, modifies or denies approval of any portion of this Agreement or the proposed settlement that the terminating Party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings of the Courts, the provisions relating to notice, the definition of the Class and/or the terms of the Release; or (ii) the Courts, or either of them, or any appellate court(s), do not enter or completely affirm, or alter or expand, any portion of the Final Order and Judgment, or any of the Courts' findings of fact or conclusions of law as proposed by Defendants' Counsel and Co-Class Counsel, that the terminating Party in its (or their) sole judgment and discretion believe(s) is material. The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this subsection, no later than 20 days after receiving notice of the event prompting the termination.

D. Notwithstanding the preceding subsection, Plaintiffs may not terminate this Agreement solely because of the amount or distribution of Attorneys' Fees and Expenses awarded by the Courts or any appellate court(s). Defendants, however, may elect to terminate this Agreement if the amount of Attorneys' Fees and Expenses awarded by the Courts exceeds the maximum amount agreed upon by the Parties.

E. Defendants also may unilaterally withdraw from and terminate this Agreement within 20 days of receiving notice of either of the following two triggering events:

1. The number of persons who have elected to exclude themselves from the Class together own or owned more than 1% of the number of Policies or, alternatively, 1% of the number of Annuities (counting each participation interest in a Group Qualified Annuity separately); or

2. Any state attorney general or regulatory or administrative authority institutes a Proceeding against Defendants, or any of them, arising out of or otherwise related to the Released Conduct.

F. If Class Members timely elect the Claim Review Process on the Election Form for more than 7.5% of the number of Policies or, alternatively, 7.5% of the number of Annuities (counting each participation interest in a Group Qualified Annuity separately), then either Defendants or Plaintiffs may argue to the Courts that the settlement is unreasonable or unfair.

G. If an option to withdraw from and terminate this Agreement arises under any of the subsections to this section XVI, (i) neither Defendants nor Plaintiffs will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith.

H. If this Agreement is terminated pursuant to any of the subsections above, then:

1. This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of section XIII.C and this section XVI, which include the obligation of Lead Counsel to return any funds paid by the Defendants for Attorneys' Fees and Expenses,

2. This Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of Defendants, Plaintiffs or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

3. Defendants and their current and former directors, officers, producers, employees, advisors, agents, attorneys and representatives expressly and affirmatively reserve all defenses, arguments and motions as to all claims that have been or might later be asserted in the Actions, including, without limitation, any applicable statutes of limitation, statutes of repose, or other prescription period and the argument that the Actions may not be litigated as class actions;

4. Plaintiffs and their current and former predecessors, successors, heirs, agents or assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Actions, including (without limitation) any argument concerning class certification and/or punitive damages;

5. Neither this Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever; and

6. Any order or judgment entered after the Execution Date shall be deemed vacated and will be without any force or effect.

## XVII. GENERAL MATTERS AND RESERVATIONS

A. The obligation of the Parties to conclude the proposed settlement is contingent upon each of the following:

1. Acceptance of this Agreement by the Company's Board of Directors;

2. The absence of any other Policy or Annuity owner demands or actions that arise out of or relate to the matters described in the Release and that would materially impair the benefits to the Releasees, or any of them, otherwise provided for by the Release but that would not be terminated or otherwise resolved by this Agreement;

3. The resolution of any Proceedings arising out of, or relating to the relief to be provided under, the proposed settlement, as described above in subsection XVI.E.2; and

4. Entry by the Courts of the Final Order and Judgment approving the settlement, as to which the time to appeal has expired or which has remained unmodified after any appeal(s).

B. The Parties and their counsel agree to keep the contents of this Agreement and all related negotiations confidential until the date of the first public announcement by Defendants; provided, however, that this subsection shall not prevent earlier disclosure of such information to regulators, rating agencies, financial analysts, Producers, or any other person or entity (such as experts, courts, and/or Administrators) to whom disclosure must be made to effectuate the terms and conditions of this Agreement.

C. One year after scoring has been completed as part of the Claim Review Process (unless the time is extended by agreement of the Parties), Plaintiffs and their counsel shall return to Defendants' Counsel all documents (and all copies of such documents in whatever form made or maintained) produced by Defendants in these Actions, as well as all transcripts of and exhibits

to any deposition testimony provided by Defendants or their current or former officers, employees or Producers (and all copies of such documents in whatever form made or maintained); provided, however, that this subsection shall not apply to any documents made part of the record in connection with a Claim made in the Claim Review Process, or to any documents made part of a Court filing, or to Co-Class Counsels' work product. Defendants agree to store and preserve all materials returned by Plaintiffs and their counsel pursuant to this subsection for at least one year after the awarding of relief in the Claim Review Process is finally concluded.

D. The Defendants' execution of this Agreement shall not be construed to release — and the Defendants expressly do not intend to release — any claim the Defendants may make against any insurer for any cost or expense incurred in connection with this settlement, including attorneys' fees and costs.

E. Melvyn I. Weiss, Brad N. Friedman, Janine L. Pollack, and Richard A. Lockridge represent that (i) they are authorized by each of the Plaintiffs to enter into this Agreement on behalf of Plaintiffs and any other attorneys who have represented or who now represent Plaintiffs in the Actions with respect to the claims in the Actions; and (ii) they are seeking to protect the interests of the entire Class.

F. Plaintiffs represent and certify that (i) they have agreed to serve as representatives of the Class proposed to be certified herein; (ii) they are willing, able and ready to perform all of the duties and obligations of a representative of the Class, including, but not limited to, being available for, and involved in, discovery and fact finding; (iii) they have read the pleadings in the Actions or have had the contents of such pleadings described to them; (iv) they are familiar with the results of the fact-finding undertaken by Co-Class Counsel; (v) they have been kept appraised of settlement negotiations among the Parties, and have either read this Agreement, including the

exhibits annexed hereto, or have received a detailed description of it from Co-Class Counsel, and they have agreed to its terms; (vi) they have consulted with Co-Class Counsel and/or other plaintiffs' counsel of record about the Actions, this Agreement and the obligations imposed on a representative of the Class, (vii) they have authorized Co-Class Counsel to execute this Agreement on their behalf; and (viii) they shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Courts at any time determine that said Plaintiffs cannot represent the Class.

G. Teresa Rasmussen represents that she is authorized, upon approval of the Board of the Company, to enter into this Agreement on behalf of Defendants.

H. This Agreement, complete with the exhibits attached hereto, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and may not be altered, amended, or modified except by written instrument executed by Co-Class Counsel and Defendants' Counsel. This Agreement, including its exhibits, supersedes any prior agreement, understanding, or undertaking (written or oral) by and between the Parties regarding the subject matter of this Agreement.

I This Agreement and any ancillary agreements shall be governed by and interpreted according to the law of the State of Minnesota, excluding its conflict of laws provisions.

J Any action to enforce this Agreement shall be commenced and maintained only in the Courts. The Courts shall retain jurisdiction over the implementation, administration and conduct of the settlement and the interpretation, construction and enforcement of this Agreement.

K. Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by facsimile and/or next business day express delivery service as follows:

If to Defendants, then to:

Charles C. Platt, Esq.
Randall M. Fox, Esq.
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, New York 10019
Telephone: (212) 428-8000
Facsimile: (212) 424-8500

and

George F. McGunnigle, Esq.
Leonard, Street and Deinard, P.A.
150 South Fifth Street
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657

If to Plaintiffs, then to:

Melvyn I. Weiss, Esq.
Brad N. Friedman, Esq.
Janine L. Pollack, Esq.
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

and

Richard A. Lockridge, Esq.
Lockridge Grindal Nauen, P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

L. All time periods set forth in this Agreement shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Agreement or by order of court, the day of the act, event, or default from which the

designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the offices of the Clerks of the Courts inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this subsection, "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by the President or the Congress of the United States, or by the State of Minnesota, where the Courts are located.

M. Where any deadlines provided for in this Agreement are measured by postmarks, the timeliness of submissions governed by such deadlines will be measured by the postmark on the envelope containing such submission or, if there is no postmark or the postmark is illegible, by receipt of such submission within seven days after the postmark deadline.

N. The Parties reserve the right, subject to the Courts' approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

O. All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence shall be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed.

P. In no event shall the Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in these Actions, any other action, or

any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Agreement. Without limiting the foregoing, neither this Agreement, nor any related negotiations, statements or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to Defendants, or as a waiver by Defendants of any applicable defense, including without limitation any applicable statute of limitations or statute of frauds, or as a waiver by Plaintiffs or the Class of any claims, causes of action or remedies, including punitive damages.

Q. Defendants expressly deny any wrongdoing alleged in the pleadings and do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Actions, but consider it desirable for the Actions to be settled and dismissed because this settlement will (i) provide substantial benefits to Defendants' present and former Policy and Annuity owners; and (ii) avoid the substantial expense and the further disruption of the management and operation of Defendants' business due to the pendency and defense of the Actions.

R. Plaintiffs expressly affirm that the allegations asserted in the Actions were made in good faith and have a basis in fact, but consider it desirable for the Actions to be settled and dismissed because of the substantial benefits that the proposed settlement will provide to Class Members and the risk inherent in complex litigation such as the Actions.

S. Except as expressly provided in this Agreement, neither this Agreement nor any of the relief to be offered under the proposed settlement shall be interpreted to alter in any way the contractual terms of any Policy or Annuity, or to constitute a novation of any Policy or Annuity.

T. No opinion concerning the tax consequences of the proposed settlement to individual Class Members is being given or will be given by Defendants, Defendants' Counsel or Co-Class Counsel, nor is any representation or warranty made by virtue of this Agreement with respect to the tax consequences of any election or award of remedies under this settlement. The Class Notice shall direct Class Members to consult their own tax advisors regarding the tax consequences of the proposed settlement, including any payments, contributions or credits provided hereunder, and any tax reporting obligations they may have with respect thereto. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

U. The Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

V. The Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking court approval of this Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed settlement.

W. This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.

Agreed to this 18th day of September, 2000.

APPROVED AND AGREED TO BY AND ON BEHALF OF LESA BENACQUISTO, DANIEL BENACQUISTO, ARNOLD MORK, ISABELLA MORK, RONALD MELCHERT, SUSAN MELCHERT, RICHARD THORESEN, AND ELIZABETH THORESEN, IN THEIR INDIVIDUAL AND REPRESENTATIVE CAPACITIES.

By: ______________________
MELVYN I. WEISS
BRAD N. FRIEDMAN
JANINE L. POLLACK

______________________
RICHARD A. LOCKRIDGE

COUNSEL FOR PLAINTIFFS

APPROVED AND AGREED TO BY AND ON BEHALF OF IDS LIFE INSURANCE COMPANY, IDS LIFE INSURANCE COMPANY OF NEW YORK, AMERICAN EXPRESS FINANCIAL CORPORATION, AMERICAN CENTURION LIFE ASSURANCE COMPANY, AMERICAN ENTERPRISE LIFE INSURANCE COMPANY, AMERICAN PARTNERS LIFE INSURANCE COMPANY AND AMERICAN EXPRESS FINANCIAL ADVISORS.

By: ______________________
TERESA J. RASMUSSEN

VICE PRESIDENT & MANAGING COUNSEL
AMERICAN EXPRESS FINANCIAL CORPORATION
FOR DEFENDANTS

# EXHIBITS TO STIPULATION OF SETTLEMENT

Exhibit A: Guidelines for Determining, Scoring and Awarding Relief in Claim Review

Exhibit B: Class Notice Package

Cover Letter
Notice of Class Action, Proposed Settlement and Fairness Hearing
Release and Waiver (Appendix A to Notice)
Benefit Voucher
Statement of Eligibility
Designation Form
Election Form
Fact Sheet for Qualified Plans
Plan Participant Information Sheet
Change of Address Form
Foreign Language Statement

Exhibit C: Publication Notice

Exhibit D: Proposed Hearing Orders

Exhibit E: Confidentiality Agreement

Exhibit F: Proposed Final Orders and Judgments

Exhibit G: Statement to Accompany Post-Execution Date Responses to Customer Complaints

Exhibit H: Post-Settlement Claim Form Mailing

Exhibit I: Post-Mailing Reminder

Exhibit J: Claim Review Administrative Forms and Letters

350825.1

| STATE OF MINNESOTA<br>DISTRICT COURT, FOURTH DISTRICT | | UNITED STATES DISTRICT COURT<br>DISTRICT OF MINNESOTA | |
|---|---|---|---|
| BENACQUISTO, ET AL. | : Nos. 96-18477, | BENACQUISTO, ET AL. | No. 00-1980 DSD |
| v. | : 97-4742, 98-15681 | v. | : |
| AMERICAN EXPRESS | : | AMERICAN EXPRESS | |
| FINANCIAL CORP., ET AL. | : | FINANCIAL CORP., ET AL. | |

# NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT, AND FAIRNESS HEARING

**THIS NOTICE HAS BEEN SENT TO YOU BY ORDER OF THE COURT. PLEASE READ THIS ENTIRE NOTICE CAREFULLY.** It discusses the proposed settlement of class action lawsuits involving certain life insurance policies and deferred annuity contracts. **You have not been sued.** Nevertheless, the proposed settlement may affect your rights as a member of the class.

**YOU MUST MAKE CERTAIN DECISIONS NOW:**

**First**, you must decide whether you want to be part of the proposed settlement as to each applicable life insurance policy or deferred annuity contract you own or owned. If you do, you must make other decisions before January 29, 2001, about (1) certain settlement benefits that are described below and (2) whether you want to object to the proposed settlement or appear at the fairness hearing, following the procedures set forth in Part I of this Notice. The Courts will hold a hearing on March 6, 2001, to evaluate the fairness of the proposed settlement.

**Second**, if you do not want to be part of the settlement with respect to a life insurance policy or deferred annuity contract, you must request exclusion from the settlement for that policy or annuity by January 29, 2001, following the procedures set forth in Part H of this Notice. Otherwise, for each policy or annuity you do not exclude from the class, you will be bound by all of the terms of the proposed settlement if the Courts approve it.

If you do not exclude yourself from the class, the proposed settlement (if approved) may affect your right to start or continue any other lawsuit or proceeding involving your Policy or Annuity. In addition, you will give up any claims arising from the marketing, sale, servicing or administration of your Policy or Annuity. The Release of Claims, which addresses this issue, is reprinted in full as an appendix to this notice.

## TABLE OF CONTENTS FOR THIS NOTICE

PAGE NO.

PART A: WHY YOU HAVE RECEIVED THIS NOTICE .................... 3
PART B: DESCRIPTION OF THE CLASS .................... 4
PART C: DECISIONS YOU MUST MAKE NOW .................... 5
1. IF YOU DECIDE TO REMAIN IN THE CLASS .................... 6
2. IF YOU DECIDE TO EXCLUDE YOURSELF FROM THE CLASS .................... 7
PART D: DESCRIPTION OF THE LAWSUITS AND THE SETTLEMENT NEGOTIATIONS .................... 7
PART E: THE BENEFITS OF THE PROPOSED SETTLEMENT .................... 8
1. GENERAL RELIEF .................... 9
2. INTERNAL REPLACEMENT RELIEF .................... 10
3. THE CLAIM REVIEW PROCESS .................... 11
PART F: INCOME TAX CONSEQUENCES .................... 14
PART G: RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUITS .................... 15
PART H: INSTRUCTIONS FOR EXCLUDING YOURSELF FROM THE CLASS .................... 15
PART I: FAIRNESS HEARING, RIGHT TO OBJECT TO PROPOSED SETTLEMENT, AND THE RIGHT TO APPEAR .................... 17
1. THE FAIRNESS HEARING .................... 17
2. YOUR RIGHT TO OBJECT, AND INSTRUCTIONS FOR OBJECTING .................... 17
3. YOUR RIGHT TO APPEAR .................... 18
PART J: ATTORNEYS REPRESENTING THE SETTLEMENT CLASS .................... 19
PART K: ATTORNEYS' FEES AND EXPENSES .................... 19
PART L: RIGHT TO TERMINATE THE PROPOSED SETTLEMENT .................... 19
PART M: PRELIMINARY AND PERMANENT INJUNCTION, AND EFFECT ON PENDING AND FUTURE LAWSUITS, ARBITRATIONS AND OTHER PROCEEDINGS .................... 19
PART N: HOW TO GET ADDITIONAL INFORMATION .................... 20

APPENDIX: RELEASE AND WAIVER .................... 21



## PART A: WHY YOU HAVE RECEIVED THIS NOTICE

You received this Notice because records indicate that you:

(1) have or had ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company ("IDS") or IDS Life Insurance Company of New York ("IDSNY") as a result of an individual sale in the United States, including its territories and commonwealths, issued at any time during the period of January 1, 1985 through and including February 29, 2000 (this Notice refers to such life insurance policies as "Policies");

(2) have or had an ownership interest in an individual deferred annuity contract or a participation or beneficial interest in a group deferred annuity contract, issued by IDS, IDSNY, American Centurion Life Assurance Company, American Enterprise Life Insurance Company, or American Partners Life Insurance Company in the United States, including its territories and commonwealths, that was in force at any time during the period of January 1, 1985 through and including February 29, 2000 (this Notice refers to those companies, along with their related companies, American Express Financial Corporation and American Express Financial Advisors, collectively, as the "Defendants"); or

(3) are a tax-qualified retirement plan, or a person acting on behalf of such plan or its participants and beneficiaries (with respect to the plan), and the plan purchased, owned, held or had any interest with respect to a group deferred annuity contract issued in the United States, including its territories and commonwealths, by one of the Defendants and that was in force at any time during the period of January 1, 1985 through and including February 29, 2000 (this Notice refers to such group contracts as "Group Qualified Annuities," and it refers to the deferred annuity contracts and participation and beneficial interests described in this paragraph and the previous paragraph as "Annuities.").

You may be eligible for certain benefits through the proposed settlement of these class action lawsuits, which were brought on behalf of a class of such Policy and Annuity owners against the Defendants. Although the Courts have not yet approved the proposed settlement, they have directed that this Notice be sent to you as a potential class member.

**You should read this Notice carefully, because it explains decisions you must make and actions you must take *now*. Those decisions and actions will affect your legal rights and any relief you may be eligible to receive under the proposed settlement.**

In return for resolving all claims involving the Policies and Annuities in the class, the proposed settlement offers class members a choice of relief: General Relief, Internal Replacement Relief (where eligibility criteria are met), and the Claim Review Process.

1. **General Relief**. General Relief is automatic and is available to all class members without requiring any showing that they were harmed in any way or that the Defendants did anything wrong. Class members who do not elect to participate in another form of relief will automatically receive free accidental death benefit coverage for a period of up to three years

as described below. **You need not do anything now if you want the General Relief.**

The General Relief is discussed at pages 9-10 below.

2. **Internal Replacement Relief**. Class members who purchased Policies from Defendants in order to replace earlier-purchased life insurance policies may be eligible, in certain circumstances described at pages 10-11 of this Notice, to receive relief directed to the costs or other consequences of that transaction. The enclosed Statement of Eligibility shows whether you may be eligible to participate in the Internal Replacement Relief. **If you are eligible and wish to participate in the Internal Replacement Relief, you must properly fill out the enclosed Election Form by electing the Internal Replacement Relief, and return it so that it is postmarked no later than January 29, 2001.** Your Election Form will only refer to the Internal Replacement Relief if, according to the Defendants' records, you may be eligible for this form of relief.

   The Internal Replacement Relief is discussed at pages 10-11 below.

3. **The Claim Review Process**. In contrast with General Relief and the Internal Replacement Relief, the Claim Review Process requires participants to support a claim that they were misled, or that wrongdoing with economic consequences otherwise occurred, with respect to the marketing, sale, administration or servicing of their Policies or Annuities. If you believe you were misled, or that wrongdoing with economic consequences otherwise occurred with respect to your Policy or Annuity, you may elect to participate in the Claim Review Process. A claim evaluator will review the strength or weakness of your claim, and the relief awarded, if any, will be based upon that review. **To participate in the Claim Review Process you must properly fill out the enclosed Election Form by electing the Claim Review Process, and return it so that it is postmarked no later than January 29, 2001.**

   The Claim Review Process is discussed at pages 11-14 below.

The total value of the settlement relief is estimated to be $215 million.

## PART B: DESCRIPTION OF THE CLASS

In Orders dated October 2, 2000, the Courts preliminarily certified a Class for purposes of a settlement.

The Class includes (a) all persons or entities who have or had an ownership interest in a cash value life insurance policy issued by IDS Life Insurance Company or IDS Life Insurance Company of New York as a result of an individual sale in the United States, including its territories and commonwealths, issued at any time during the period of January 1, 1985 through February 29, 2000; (b) all persons or entities who have or had an ownership interest in an individual deferred annuity contract or a participation or beneficial interest in a tax-qualified group deferred annuity contract issued by any of the Defendants in the United States, including its territories and commonwealths, that was in force at any time during the period of January 1, 1985 through February 29, 2000; and (c) all tax-qualified retirement plans and persons or entities acting on behalf of such a plan and its participants and beneficiaries (with respect to the plan), including but not limited to trustees, plan administrators and plan sponsors, that purchased, owned, held or had any interest with respect to a group deferred annuity contract issued in the United States, including its territories and commonwealths, by one of the Defendants and that was in force at any time during the period of January 1, 1985 through February 29, 2000. You can be a member of this Class even if your Policy or Annuity is no longer in force.



Notwithstanding the description above, the following persons and entities are not included in the proposed Class:

- any present officer, any former officer of grade 50 and above, or equivalent, or any financial advisor of Defendants;
- any insurance company that owns or owned a Policy or Annuity pursuant to an absolute assignment effected as part of an exchange under section 1035 of the Internal Revenue Code.

In addition, the proposed Class does not include persons or entities (unless such persons or entities are Class members by virtue of their ownership interest in another Policy or Annuity) who have or had an ownership interest in Policies or Annuities that:

- were timely excluded from the Class in accordance with the steps described in Part H (pp. 15-17) of this Notice; or
- were terminated by reason of death, and, in the case of a Policy, death benefits were paid; or
- were not accepted or funded, or were returned to the issuer, as part of the exercise of a free look provision in the Policy or Annuity; or
- were rescinded as part of a reissue of a new policy or annuity contract, or because of a material misrepresentation on a Policy or Annuity application, or where the Policy or Annuity was rescinded and the premiums or other monies paid were returned to the Policy or Annuity owner; or
- were the subject of a release signed by any person or entity while represented by counsel settling a claim or dispute and releasing the issuer from any further liability concerning such Policy or Annuity; or
- were term life insurance policies, graded premium whole life insurance policies, immediate annuities, or deferred annuities that were settled (that is, annuitized) prior to January 1, 1985.

If you satisfy the criteria described in this Part B, you are a Class Member.

## PART C: DECISIONS YOU MUST MAKE NOW

**You must decide *now* whether you want to remain in the Class or to exclude yourself from the Class.**

If you remain in the Class, you have two additional choices to make now, as described below in Parts E and I (pp. 8-9 and 17-19).

If you want to be excluded from the Class, you must notify the Courts as described below in Part H (pp. 15-17).

If you have or had an ownership interest in more than one Policy or Annuity covered by the definition of the Class, you must make a separate decision for each Policy or Annuity.

Where more than one person has or had an ownership interest in a Policy or Annuity, all owners will be presumed to be acting jointly with the person or entity whose Social Security number or taxpayer identification number appears in Defendants' records as the identifying owner of the Policy or Annuity. If one owner excludes a particular Policy or Annuity from the Class, then all co-owners will be presumed to be acting jointly, and all persons with an ownership interest in that Policy or Annuity are bound by that decision. Separate rules may apply if you have or had an interest in a Group Qualified Annuity — consult the Plan Participant Information Sheet, which should be enclosed with this Notice if you have a participation interest in a Group Qualified Annuity, or the Fact Sheet for Qualified Plans, which should be enclosed with this Notice if you are acting on behalf of a tax-qualified retirement plan and its participants and beneficiaries (with respect to the plan), which plan purchased, owned, held or had any interest in a Group Qualified Annuity. If you did not receive the Plan Participant Information Sheet or the Fact Sheet for Qualified Plans, and you believe you should have, call the IDS Life Class Action Information Center at 1-800-433-5314.

**1. IF YOU DECIDE TO REMAIN IN THE CLASS:**

- You may receive one of three types of settlement relief available if the proposed settlement is approved. Unless you choose otherwise, you will automatically receive the General Relief. Alternatively, you may be eligible for and elect the Internal Replacement Relief, or you may apply for relief through the Claim Review Process. You must decide now which settlement benefit you want to receive. These three options are described in greater detail in Part E below.
- You also may object to any aspect of the proposed settlement by filing a written objection. Your written objection must be mailed to the Courts and separately to the parties postmarked no later than January 29, 2001. If you want to speak at the Fairness Hearing, you also must file and serve a Notice of Intention to Appear at the Fairness Hearing by that same date. The procedures for objecting and speaking at the Fairness Hearing are described in Part I (pp. 17-18) below.
- You will be bound by the Courts' rulings. If you remain in the Class, you will be bound by all orders and judgments in these cases, whether favorable or unfavorable. As set forth in the Release annexed as the Appendix to this Notice, you will not be able to start, continue or otherwise participate in certain other claims, lawsuits or other proceedings relating to any Policy or Annuity for which you choose to remain in the Class.



**2. IF YOU DECIDE TO EXCLUDE YOURSELF FROM THE CLASS:**

- You must submit a written request to exclude yourself from the Class with respect to a particular Policy or Annuity, which must be postmarked no later than January 29, 2001. The procedure for doing so is described at pages 15-17 below.
- If you exclude yourself from the Class with respect to a particular Policy or Annuity: (1) you will not be eligible for General Relief, the Internal Replacement Relief or the Claim Review Process for that Policy or Annuity; (2) you will not be able to object to the proposed settlement; and (3) you will not be bound, for the purposes of the Policy or Annuity you exclude from the proposed settlement, by any orders or judgments entered in these cases if the proposed settlement is approved.

## PART D: DESCRIPTION OF THE LAWSUITS AND THE SETTLEMENT NEGOTIATIONS

This litigation involves four lawsuits against the Defendants. Three cases were filed in the Minnesota State Court for the County of Hennepin and were later consolidated. A fourth case was filed in the United States District Court for the District of Minnesota. The cases are referred to collectively in this Notice as the "Actions."

All of the Plaintiffs styled their cases as class actions, seeking relief not only for themselves, but for all similarly-situated persons.

In the Actions, Plaintiffs allege that the Defendants made certain misrepresentations, failed to disclose certain facts and engaged in other wrongdoing in connection with the marketing, sale, administration, and servicing of their life insurance and deferred annuity products. The Defendants vigorously dispute these allegations.

The parties negotiated the proposed settlement with an understanding of the factual and legal issues that would affect the outcome of these Actions. During the course of the lawsuits, Plaintiffs, through their attorneys, thoroughly examined and investigated the facts and law relating to the issues in these cases. Plaintiffs' factual investigation included review of approximately 350,000 pages of documents from the Defendants' files, interviews and sworn depositions of Defendants' officers, employees and sales representatives, and consultations with various experts.

The Plaintiffs and the Defendants believe the final outcome of the lawsuit, if it were to proceed through trial and appeals, is uncertain. Based on their evaluation of the facts and law, the Plaintiffs, the Defendants and their attorneys have determined that this proposed settlement is fair, reasonable and adequate. They have reached this conclusion based on the substantial benefits the proposed settlement provides Class Members, the risks, uncertainties and costs inherent in this litigation, and the desirability of providing benefits to Class Members promptly, rather than continuing this protracted litigation.

The Courts have not determined the merits of the claims or defenses in these Actions, and they will not do so if they approve the proposed settlement. The proposed settlement does not suggest that the Defendants have or have not done anything wrong, or that Plaintiffs and the Class would or would not win their cases if they were to go to trial.

## PART E: THE BENEFITS OF THE PROPOSED SETTLEMENT

If you decide to remain in the Class, and if the Courts approve the proposed settlement, you may receive one form of settlement benefits for each of your Policies or Annuities. The specific benefits for which you are eligible depend on several factors, which are explained further below. You do not have to give up your Policy or Annuity to receive benefits under the proposed settlement.

**Enclosed with this Notice is a Statement of Eligibility for each of your Policies and Annuities, which identifies the benefits you are eligible to receive. Please consult your Statement of Eligibility as you review the benefits described below. If you have any questions about your Statement of Eligibility, please call 1-800-433-5314.**

There are three categories of benefits available under the proposed settlement: General Relief, the Internal Replacement Relief, and the Claim Review Process. Each of these categories is described below. **If you decide to remain in the Class, you must, for each Policy or Annuity you decide to keep in the Class, choose now among General Relief, Internal Replacement Relief (if you are eligible), and the Claim Review Process. You may only choose one form of settlement benefits for each Policy or Annuity.**

If you choose General Relief, you do not need to do anything now. You will receive the General Relief automatically if the Courts approve the proposed settlement.

If you are eligible to participate in the Internal Replacement Relief and you wish to receive this benefit instead of General Relief or the Claim Review Process, you must make this choice now, and submit an Election Form electing the Internal Replacement Relief so that it is postmarked no later than January 29, 2001.

If, instead of General Relief or the Internal Replacement Relief, you want to participate in the Claim Review Process, you must make this choice now, and submit an Election Form electing the Claim Review Process so that it is postmarked no later than January 29, 2001.

There will be only one award of relief per Policy or Annuity.

Benefits will become available under the proposed settlement only if and when two things happen. First, the Courts must approve the proposed settlement. The Courts will grant approval if they find that the proposed settlement is fair, reasonable and adequate and that these Actions meet all of the legal requirements of a class action. Second, the Courts' approval of the settlement must become final and no longer be subject to appeal. No one can say with certainty if or when these events will occur.



Please note: You will not be eligible for any relief under this settlement, nor will you release any claims, if the Courts do not approve the proposed settlement, or if one of the parties terminates the settlement.

### 1. GENERAL RELIEF

If you do not elect the Internal Replacement Relief (if you are eligible) or the Claim Review Process and do not exclude yourself from the Class with respect to a Policy or Annuity, you automatically will receive the General Relief. The General Relief consists of the Accidental Death Benefit (referred to in this Notice as the "ADB"), described below. The value of the General Relief will be $100 million, based on comparable insurance rates in the open market.

The ADB provides death benefit coverage as described below. This benefit will be provided free of charge to all Class Members who are to receive General Relief.

- *Payment of Benefit*. The ADB provides for payment of the death benefit when the Defendants receive due and timely proof of the accidental death of the "Measuring Life" (defined below) within the time period described below. The payment of the benefit will be made to the "Payee" (defined below).
- *Amount of Benefit*. The amount of the death benefit available under the ADB will be based on whether it relates to a Policy, Annuity, or tax-qualified Annuity, and the account value of or premiums paid on the Annuity, or the face amount of the Policy, as set forth in the Stipulation of Settlement. Please see the Benefit Voucher for the estimated amount. The estimated amount may be adjusted upward, depending upon the elections made by all Class Members.
- *Duration of the Benefit*. The duration of the benefit available under the ADB will depend on the attained age of the Measuring Life. The ADB will have the duration indicated on the Benefit Voucher.
- *"Measuring Life" and "Payee"*. The "Measuring Life," for purposes of the ADB, is the person upon whose accidental death the ADB will be paid, subject to the terms set forth in the enclosed Benefit Voucher. The person who will be paid the ADB is the "Payee." Unless changed, the Measuring Life and the Payee will be the persons listed on the Benefit Voucher.
- *Changing the Measuring Life or Payee*. If the person shown on your Benefit Voucher as your Default Measuring Life is deceased as of the date the settlement is implemented, before the date the settlement is implemented (or, if that is impossible due to the date of death of your Default Measuring Life, within 30 days of the death of the Default Measuring Life), you must choose an Alternate Measuring Life from among your spouse, parent, child or any other person in whom you have an insurable interest. You also may change the Payee at any time before the payment of a claim for the accidental death benefit. You should change the Payee if the person designated as Payee dies before the date the settlement is implemented or during the coverage period. To change the Measuring Life or the Payee, you must fill out the enclosed

Designation Form following its instructions and return it to:

IDS Life Class Action Information Center
P.O. Box 1595
Faribault, Minnesota 55021-1595
Re: Designation Form

## 2. INTERNAL REPLACEMENT RELIEF

You may be eligible for the Internal Replacement Relief if you owned a Policy issued by one of the Defendants, and you replaced it with another Policy issued by one of the Defendants, and if you meet the other criteria (described below) for this Relief.

The enclosed Statement of Eligibility indicates whether you may have a Policy that makes you eligible for the Internal Replacement Relief. Even if the Statement of Eligibility indicates that you may be eligible for the Internal Replacement Relief, the Defendants may, based on their records, determine that you are not eligible for the Internal Replacement Relief. If you are found to be ineligible, you will be given notice of your ineligibility and an opportunity to receive either the General Relief or the Claim Review Process.

If you believe you are entitled to the Internal Replacement Relief and the Statement of Eligibility does not indicate that you may be eligible for that form of relief, you may call 1-800-433-5314 to determine whether you are eligible for the Internal Replacement Relief.

The following describes the criteria for and the remedies available (if the Internal Replacement Relief is properly elected) through the Internal Replacement Relief:

- if you paid a surrender charge on a policy issued by one of the Defendants because you used the value of that policy to purchase the new Policy, you will receive an addition to the Policy's cash value equal to 50% of the surrender charge you actually paid (if the new Policy is still in force) or a cash payment of the same amount (if the new Policy is terminated).
- if you used the value of a policy issued by one of the Defendants to purchase a new Policy and the Underwriting Rate Class on the new Policy is higher than the one on the policy you replaced, then the original Underwriting Rate Class will be reinstated going forward, beginning within 120 days after the settlement is implemented, on the portion of your Policy equal to the original face amount of your original policy (if the new Policy is still in force), or you will have the opportunity to apply for an enhanced policy as provided below (if your Policy is terminated).
- if you used the value of a policy issued by one of the Defendants to purchase a new Policy and the new Policy was in a lower Cost of Insurance Rate Band (as a result of having a lower face amount than the original policy), meaning that the new Policy's cost of insurance deduction was higher per $1000 of coverage, then the original Cost of Insurance Rate Band will be reinstated going forward, beginning within 120 days after the settlement is implemented (if the new Policy is still in force), or you will have the opportunity to apply for an enhanced policy as provided below (if your Policy is terminated).



- if you used the value of a policy issued by one of the Defendants to purchase a new Policy that was identical to the original policy, then you will receive (within 90 days after the settlement is implemented) a one time 75 basis point bonus applicable to the new Policy's cash value at the time of the replacement, which will be credited to the Policy (if the new Policy is still in force) or you will have the opportunity to apply for an enhanced policy as provided below (if your Policy is terminated).

If you are entitled to apply for an enhanced policy as provided above, you will be given the opportunity for 120 days after the settlement is implemented to apply for a new individual universal life or variable universal life insurance policy on the life of the person designated as the insured under the now terminated Policy that was purchased using the value of an earlier policy issued by one of the Defendants. The enhanced policy must have a face amount that is no less than the minimum policy issue amount and that is equal to (or less than) the face amount of the now terminated Policy. Defendants will (after the first year) apply a policy credit of 100 basis points on premium payments received during the first year of the enhanced policy (up to the amount of premiums equal to the target premium for the enhanced policy). Favorable underwriting terms will apply and, if they are not met, you may choose an alternative insured for the enhanced policy from among your spouse, parents, children or others in whom you have an insurable interest.

If there is more than $2 million in unused funds in the Claim Review Process (described below), those unused funds will be distributed to all Class Members who will receive relief. If you are to receive the Internal Replacement Relief and there are such unused funds, you will receive that distribution in the form of accidental death benefits. Accordingly, you may need to change the Measuring Life or want to change the Payee listed on the enclosed Statement of Eligibility. You may use the enclosed Designation Form to make such changes.

**To elect the Internal Replacement Relief, you must properly fill out and return the enclosed Election Form electing the Internal Replacement Relief so that it is postmarked no later than January 29, 2001. Otherwise, you cannot participate in the Internal Replacement Relief.**

## 3. THE CLAIM REVIEW PROCESS

If you believe that you were misled, or that wrongdoing with economic consequences otherwise occurred, with respect to the marketing, sale, administration or servicing of your Policy or Annuity, you may elect to submit your claim to the Claim Review Process under the proposed settlement instead of receiving General Relief or the Internal Replacement Relief (if eligible). The Claim Review Process is provided at no cost to you.

In the Claim Review Process, the relief awarded can range from none at all to relief designed to redress any loss that may have resulted from the alleged wrongdoing, based on the particular facts of your claim as evidenced by your written description of your claim and any other documents or other materials

you submit, as well as the documents and information that the Defendants will assemble about your Policy or Annuity.

All relief awarded in the Claim Review Process will come from a fund, called the "Claim Review Relief Fund," established by the Defendants with an initial value of $85 million. Under the Claim Review Process, a Claim Evaluator appointed by the attorneys for the Class (referred to in this notice as "Class Counsel") will review the claims and award relief from the Claim Review Relief Fund based on criteria agreed upon by the parties and approved by the Court. The Defendants shall pay an amount, in addition to the above Claim Review Relief Fund, of at least $2 million and up to $3 million (depending on the number of Policies and Annuities for which claims are filed) for the fees and expenses of the Claim Evaluator. Any additional fees and expenses of the Claim Evaluator shall be paid from accrued interest on the Claim Review Relief Fund.

If, after all awards from the Claim Review Relief Fund have been determined, there are unused funds in the Claim Review Relief Fund of $2 million or less, those unused funds shall be used to increase proportionally awards in the Claim Review Process. If there are unused funds in excess of $2 million, those unused funds shall be used to increase the settlement benefits to all Class Members. If the value of the relief to be awarded through the Claim Review Process would exceed the value of the Claim Review Relief Fund (the $85 million plus available interest), each award in the Claim Review Process will be reduced on a pro rata basis.

**To elect the Claim Review Process, you must properly fill out and return the enclosed Election Form electing the Claim Review Process so that it is postmarked no later than January 29, 2001. Otherwise, you cannot participate in the Claim Review Process.**

At this point, you only need to elect whether or not to participate in the Claim Review Process. If you timely submit an Election Form electing the Claim Review Process, you will be sent a Claim Form later — after the Courts have finally approved the settlement and all appeals have been exhausted. When you receive the claim form, you must fill it out completely by, among other things, explaining the details of your claim, and attach all documents you have that relate to the Policy or Annuity and your claim. You may also, but need not, submit sworn statements or other information to support your claim.

After the Claim Form is sent to you, you will have 60 days to return your completed claim form along with supporting documents. If you fail to file the Claim Form on time, you no longer will be eligible for the Claim Review Process and you will receive the General Relief.

Listed below are examples of the types of claims that might be submitted in the Claim Review Process:

1. Replacement Claims: Any claim that, at the time you bought your Policy or Annuity, the Defendants or their sales representatives misrepresented to you the advantages, disadvantages or financial impact of using the cash or account value or interest from an existing policy or annuity — whether issued by one of the Defendants or by any other company — to purchase a new Policy or Annuity issued by one of the Defendants.



2. Performance Misrepresentation Claims: Any claim that the Defendants or their sales representatives misrepresented to you the manner in which a Policy or Annuity would accumulate value. Valid performance claims are not simply claims that the earnings on a Policy or Annuity did not meet your hopes or expectations, but rather, must be based on a claim that it was misrepresented to you by the Defendants or one of their sales representatives that the Policy or Annuity would perform in a certain way that ultimately did not happen. For example, one might seek to base a performance claim on a misrepresentation (1) that the cash or account value in a Policy would not be less than shown to you in an illustration created by the Defendants or one of their sales agents or would be maintained at a certain level over the life of the Policy; (2) that the interest crediting rate on a Policy or Annuity would not vary over the life of the Policy or Annuity or would be maintained at a certain level over the life of the Policy or Annuity; (3) that a Policy's mortality and expense charges, cost of insurance, administrative or other charges would stay lower than the maximum levels guaranteed in the Policy form; (4) that for a fixed number of payments a Policy was guaranteed to produce certain cash values; (5) that a Policy's surrender value would always exceed the amount of premiums paid or that the Policy would always show a positive rate of return; (6) that the account value of an Annuity would be maintained at a certain level over the life of the Annuity; or (7) that a variable Annuity's account value would, at the time of death, always exceed the purchase payments (or where applicable, the Annuity's cash value on the most recent six year anniversary of the Issue Date).

3. Life Insurance Accelerated Payment or "Vanishing Premium" Claims: Any claim that the Defendants or their sales representatives misrepresented to you at the time of purchase that they would issue a "fully paid up" or "paid up" Policy for the originally illustrated face amount of insurance without any further premium payments; or that, in return for a fixed number or amount of premium payments or for premiums paid until a specified age, the Defendants would issue a Policy for the illustrated death benefit without ever requiring any further out-of-pocket premiums; or that the Policy was a "single pay," "x-pay" (where x equals a number of years), "zero-pay" or "no-pay" policy.

4. Life Insurance Savings and Retirement Misrepresentation Claims: Any claim that the Defendants or their sales representatives made misrepresentations at the time of purchase (1) that a Policy was primarily a vehicle for investment, savings, capital, money accumulation, pension or a retirement plan, while not meaningfully disclosing that the product was a life insurance policy or the fact that the product was a life insurance policy was misleadingly disguised, de-emphasized or minimized; or (2) that life insurance was suitable solely to meet the applicant's savings and retirement goals; or (3) that the premiums were "deposits," "contributions" or "outlays" and this characterization was misleading.

5. Qualified Annuity Misrepresentation Claims: Any claim that the Defendants or their sales representatives made misrepresentations that misled you into purchasing an Annuity to fund a tax-qualified retirement plan or arrangement (under the Internal Revenue Code), such as an IRA or 401(k) plan, through misrepresentations regarding the tax-deferral benefits of that Annuity or the plan or arrangement, or that such an

Annuity was unconditionally appropriate for such plans or arrangements.

6. Annuity Tax Consequences Misrepresentation Claims: Any claim that the Defendants or their sales representatives misrepresented to you at the time of purchase the tax treatment of withdrawals from a variable Annuity concerning the application of ordinary income tax rates rather than capital gains tax rates. These claims will not apply to Annuities that were purchased to fund tax-qualified retirement plans or arrangements (under the Internal Revenue Code). You will only recover under these claims if you purchased your Annuity after August 5, 1997 as a result of a misrepresentation.

7. Annuity Age Misrepresentation Claims: Any claim that the Defendants or their sales representatives misrepresented to you at the time of purchase: (1) the liquidity of the Annuity, including the length of the surrender charge period, and you were at least 85 years old on the issue date of the Annuity; (2) the availability of the minimum death benefit guarantee of a variable Annuity, and you were at least 75 years old on the issue date of the Annuity; or (3) the estate tax consequences of an Annuity, and you were at least 75 years old on the issue date of the Annuity.

8. Other Marketing, Sales, Administration and Servicing Claims: Any claims that (i) the Defendants or their sales representatives made misrepresentations or otherwise misled you in connection with the marketing, sale, administration or servicing of your Policy or Annuity; (ii) the marketing, sale, administration or servicing of your Policy or Annuity violated any applicable statutes or regulations respecting product advertising or retail sales practices or the administration or servicing of Policies or Annuities; (iii) the administration or servicing of your Policy or Annuity violated the contractual provisions of the Policy or Annuity; (iv) you were the victim of forgery in connection with your Policy or Annuity; or (v) wrongdoing other than those set forth above in this paragraph occurred and had adverse economic consequences for the Applicant or the Claimant, and such wrongdoing related to the marketing, sale, administration or servicing of the Policy or Annuity, including the application for or purchase of any Policy or Annuity; the suitability of any Policy or Annuity; the setting of any interest rates, purchase rates or renewal rates on any Policy or Annuity; the setting of any cost of insurance, commissions, taxes, fees or surrender charges, or expenses on any Policy or Annuity or Annuity subaccount; the investment choices made with respect to assets held in any Policy or Annuity; the benefits or disadvantages of any Policy or Annuity compared to any other life insurance policy, annuity contract or investment; and the provision of financial or investment advice or the preparation of a financial plan insofar as either resulted in the sale, modification or maintenance of any Policy or Annuity.

## PART F: INCOME TAX CONSEQUENCES

Your receipt of benefits under the proposed settlement could have tax consequences for you. Those tax consequences may vary, depending on your individual circumstances. Accordingly, Class Counsel, the Defendants and the representatives at the toll-free telephone numbers listed in this Notice *CANNOT* advise you about the tax consequences of receiving settlement relie in your particular circumstances.



You should consult your own tax advisor to determine any federal, state, loca or foreign tax consequences that could result from accepting or pursuing any form of relief under the proposed settlement. Where appropriate, the Defendants will report any taxable amount on an IRS Form 1099 that will be sent to you and the IRS.

## PART G: RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUITS

If the Courts approve the proposed settlement, you must release (give up) all claims that have been or could have been asserted, as set forth in the Release attached as the Appendix, and the lawsuits will be dismissed on the merits and with prejudice. If you remain in the Class with respect to a Policy or Annuity, you may not assert any of those claims in any other lawsuit or proceeding with respect to that Policy or Annuity, including any other lawsuit or proceeding already in progress.

In addition, in exchange for the benefits provided under the proposed settlement, you must release the Defendants, their parents, affiliates, predecessors and subsidiaries, and others (including their sales representatives, agents and brokers) from liability for most claims relating to the Policies or Annuities involved in the settlement, including any claims for compensatory, exemplary or punitive damages.

The Release is a critical element of the proposed settlement. For that reason, it has been reprinted word-for-word in the Appendix to this Notice. You should READ THE RELEASE CAREFULLY, because it will affect your rights if you remain in the Class.

The settlement of these lawsuits does not change any of your contractual rights under the express terms of your existing Policy or Annuity. You will still be able to make a claim for any benefits that may be payable under the express terms of your Policy or Annuity.

## PART H: INSTRUCTIONS FOR EXCLUDING YOURSELF FROM THE CLASS

If you do not want to participate in the settlement for any particular Policy or Annuity, you must ask for that Policy or Annuity to be excluded from the Class to avoid being bound by the settlement and any order and judgment in these Actions. To request exclusion from the Class, you must mail a written request so that it is postmarked no later than January 29, 2001, to the following address:

IDS Life Class Action Information Center
P.O. Box 1602
Faribault, Minnesota 55021-1602
Re: Exclusion from the Class