```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                 Civil No. 00-1980(DSD)
```

Lesa Benacquisto, Daniel
Benacquisto, Richard Thoresen,
Elizabeth Thoresen, Arnold
Mork, Isabella Mork, Ronald
Melchert and Susan Melchert, on
behalf of themselves and all
others similarly situated,

        Plaintiffs,

v.                                       **ORDER**

American Express Financial
Corporation, American Express
Financial Advisors, American
Centurion Life Assurance
Company, American Enterprise
Life Insurance Company,
American Partners Life
Insurance Company, IDS Life
Insurance Company and IDS Life
Insurance Company of New York,

        Defendants.

This matter is before the court upon the motion to enforce settlement by defendant Ameriprise Financial Services, Inc. (Ameriprise).[1]  Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

---

[1] Ameriprise Financial Services, Inc. is the successor in interest to American Express Financial Corporation.

**BACKGROUND**

This arbitration dispute arises out of the purchase of Flexible Adjustable Whole Life Insurance Policy number 90904979565 (Policy), which insured unnamed class member Pauline Duncavage. See Lake Aff. ¶ 2. Duncavage purchased the Policy in 1995. Duncavage's sons, David, Thomas and Daniel Duncavage, were listed as the Policy owners (Owners). See Willcuts Aff. Ex. A, at 3, 8.

The Owners received notice of the class action (Notice), which included the procedure for opting out of the action. See Sheeley Aff. Ex. 1, at ¶ 5; see also Lake Aff. ¶ 2. The Owners did not opt out of the class during the relevant period. Lake Aff. ¶ 10. On May 15, 2001, the court issued an order certifying the class, approving the proposed class settlement (Benacquisto Settlement), dismissing the complaint and entering final judgment in the consolidated class action (Benacquisto Action). See ECF No. 94. The Benacquisto Settlement included a broad release and waiver provision and covered the period of January 1, 1985, to February 29, 2000 (Class Period). See Sheeley Aff. Ex. 3, at ¶ 13(A); id. Ex. 6, at ¶¶ II(25)-(26), XII(A). In exchange for their release of all covered claims in the Benacquisto Settlement, Duncavage and other class members received free accidental death benefit insurance. See id. Ex. 6, at ¶ V(A).

On September 30, 2013, Duncavage submitted an arbitration claim against Ameriprise to the Financial Industry Regulatory

2

Authority (FINRA) (FINRA Action), alleging breach of contract, negligence and breach of fiduciary duty related to acts and omissions of financial advisors Herbert and Kurt Wischow. See id. Ex. 2, at 7-9. Thereafter, Ameriprise signed a modified agreement to arbitrate Duncavage's claims that expressly excluded any claims covered by the Benacquisto Settlement. See Willcutts Aff. Ex. F, at 2. Ameriprise moves for an order to enforce the settlement and bar arbitration of the claims related to the Benacquisto Settlement. In response, the court issued a briefing schedule, and Duncavage responded. See ECF No. 510.

**DISCUSSION**

In the Benacquisto Action, the court permanently enjoined class members who did not opt out of the settlement from bringing any subsequent action based on the policies and annuities that were the subject of the litigation. See Sheeley Aff. Ex. 1, at ¶ 14. Moreover, the court expressly retained jurisdiction over "all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and [the] Order and Judgment." Id. ¶ 19. Specifically, the court reserved jurisdiction to determine whether subsequent claims were barred by the order. Id. ¶ 19(a). The court possesses the authority to issue injunctions to enforce its final order. Thompson v. Edward D. Jones & Co., 992 F.2d 187, 189 (8th Cir. 1993).

The Benacquisto Settlement is interpreted according to Minnesota law. See Sheeley Aff. Ex. 6, at ¶ XVII(I). A settlement agreement is a contract and is subject to contractual rules of interpretation and enforcement. See Theis v. Theis, 135 N.W.2d 740, 744 (Minn. 1965). The primary purpose of construing a contract is to give effect to the parties' intent. River Valley Truck Ctr., Inc. v. Interstate Cos., 704 N.W.2d 154, 163 (Minn. 2005). The court construes the contract as a whole and attempts to harmonize all clauses. Id. Similarly, phrases and sentences are not to be read separately or "out of context" with the rest of the agreement. Id. (citation and internal quotation marks omitted). The court should avoid an interpretation that renders a provision within the contract meaningless. Id.

In the instant action, Ameriprise argues that the release of claims as set forth in the Benacquisto Settlement precludes Duncavage from pursuing her arbitration claims. Duncavage argues she should be permitted to proceed with the FINRA Action because (1) Ameriprise agreed to arbitrate her claims in its initial uniform submission agreement and (2) even if Ameriprise did not agree to arbitrate her claims, they are nonetheless outside the scope of the Benacquisto Settlement.

**A.   Arbitration Agreement**

Duncavage first argues that Ameriprise agreed to arbitrate her claims by submitting an initial uniform submission agreement

4

that failed to reserve jurisdiction for the court. An agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As such, a uniform submission agreement to arbitrate is a valid and binding contract that effectively modifies earlier agreements. See Dean Witter Reynolds, Inc. v. Fleury, 138 F.3d 1339, 1342 (11th Cir. 1998). Thus, the court must stay proceedings before it and permit arbitration notwithstanding the Benacquisto Settlement if the dispute falls within the scope of a valid arbitration agreement. Houlihan v. Offerman & Co., 31 F.3d 692, 694-95 (8th Cir. 1994); see also 9 U.S.C. §§ 3 & 4. The court remains mindful that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

Duncavage argues that Ameriprise's initial agreement to arbitrate precludes it from seeking an order to enforce settlement relating to the issues presented to the arbitration panel. Ameriprise responds - and Duncavage does not dispute - that the initial uniform submission agreement was filed in error and expressly related to a different matter involving non-party Matthew J. Pajestka. See Supp. Sheeley Aff. Ex. 6, at 1. Thus, the

5

initial uniform submission agreement was not an agreement between Ameriprise and Duncavage and is not binding on Ameriprise with regard to the FINRA Action.

Moreover, upon recognition of the error, Ameriprise submitted a modified uniform submission agreement expressly providing that the claims barred by the Benacquisto Settlement were not submitted to arbitration.  See Willcutts Aff. Ex. F, at 2.  Duncavage points to no authority suggesting that such a modified uniform submission agreement is invalid.  See, e.g., J.P. Morgan Sec. of Tex., Inc. (F/K/A Chase Sec. of Tex., Inc) v. Rea, No. 03-04396, 2003 WL 22951925, N.A.S.D. (2003) (permitting submission of modified uniform submission agreement).  Further, the court has previously recognized the validity of a modified uniform submission agreement. See, e.g., ECF No. 379, at 2.  As a result, the modified submission agreement is valid and enforceable.  Thus, the claims related to the Benacquisto Settlement are not arbitrable and remain within the court's jurisdiction.

**B.   Preclusion by the Settlement Agreement**

Dunvacage next argues that the FINRA Action should nevertheless be allowed to proceed because her claims are outside the scope of the Benacquisto Settlement.  Pursuant to the "Release and Waiver" provision of the Benacquisto Settlement, class members agreed to release all past or present claims "that are based upon, related to, or connected with, directly or indirectly, in whole or

in part ... the allegations, facts or subjects set forth or otherwise raised in" the Benacquisto Action or the "released conduct" therein. Sheeley Aff. Ex. 1, at ¶ 13(A)(1). The released conduct specifically includes:

> [A]ny and all direct or indirect acts, representations, omissions, suggestions, or communications ... related to or connected in any way with the ... administration, servicing ... or performance of the Policies ..., including, without limitation, acts, representations, omissions, suggestions or communications in connection with ... (iii) the suitability of any purchases, sales or replacements of any Policy ...; (x) the costs, commissions, terms or benefits or disadvantages of any Policy ... compared to any other life insurance policy, annuity or investment; (xi) the comparison or lack of comparison of any Policy ... to any other product; (xii) the preparation by any financial advisor acting for the Company of any financial plan or the provision of financial or investment advice insofar as it resulted in the sale, modification or maintenance of any Policy ...; and (xiv) the administration or servicing of any Policy ... after its purchase.

Id. ¶ 13(B)(2). It is undisputed that the Policy was purchased during the Class Period. Duncavage argues, however, that the claims asserted in the FINRA Action were not released because (1) the Policy was not covered by the Benacquisto Settlement and (2) some omissions alleged in the FINRA Action occurred after the close of the Class Period.

7

### 1. Policy Type

Duncavage argues that she can maintain the FINRA Action because the Policy was not a "cash value life insurance policy" covered by the Benacquisto Settlement. Id. Ex. 1, at ¶ 3. Notice of the class action, however, was mailed to all owners of covered policies, including the Owners of the Policy. The Notice expressly provided that recipients have "received this Notice because records indicate that you ... have or had ownership interest in a cash value life insurance policy" that was the subject of the Benacquisto Action. Id. Ex. 3, at 3. The court has previously observed that the Notice in the Benacquisto Action "was reasonably calculated to apprise class members of their rights and the binding effect of the settlement." ECF No. 454, at 5. As a result, the Notice is sufficient to demonstrate that the Policy was covered by the Benacquisto Settlement.

Duncavage argues, however, that Kurt Wischow told her that "the class action did not cover [her] insurance policy, such that [she] could ignore it." Duncavage Aff. ¶ 2. As a result, Duncavage contends, Ameriprise should be estopped from asserting that the FINRA Action is barred by the Benacquisto Settlement. The court disagrees.

Under Minnesota law, "[a] party seeking to invoke the doctrine of equitable estoppel has the burden of proving three elements: (1) that promises or inducements were made; (2) that it reasonably

relied upon the promises; and, (3) that it will be harmed if estoppel is not applied." Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990) (citation omitted). As an initial matter, Duncavage does not allege that such a statement was made after the Class Period, such that it would be excluded from the Benacquisto Settlement. See Sheeley Aff. Ex. 1, at ¶ 13(B)(2) (releasing "any and all ... representations ... that are related to or connected in any way with the ... administration ... of the Policies" made during the Class Period). Further, Duncavage was the insured, but not the owner, of the Policy, and she does not argue that she, rather than the Owners, was in a position to rely upon any such representation.

Moreover, reliance on such a statement was unreasonable as a matter of law. Kurt Wischow is not a lawyer. "When perplexed by terms in a legal document, a prudent investor does not ring up another layman. He calls a lawyer." In re VMS Ltd. P'ship Sec. Litig., 26 F.3d 50, 52 (7th Cir. 1994). Indeed, when Wischow's alleged statement directly contradicted the plain language of the Notice, Duncavage did not pursue the matter with her own attorney. See Wischow Aff. ¶ 5. Although the issue of reasonableness is at times a question of fact for the jury, reliance is unreasonable as a matter of law when oral statements are directly contradicted by a written expression of an agreement. See Clements Auto Co. v. Serv. Bureau Corp., 444 F.2d 169, 179 (8th Cir. 1971); Gen. Corp.

9

v. Gen. Motors Corp., 184 F. Supp. 231, 236-39 (D. Minn. 1960). Such is the case here. Because any reliance on the alleged statement was unreasonable, it does not provide a basis to release Duncavage from the Benacquisto Settlement. As a result, the alleged statement by Wischow does not estop Ameriprise from arguing that the Policy is covered by the Benacquisto Settlement.

### 2. Omissions

Finally, Duncavage argues that she may persist in her FINRA claims because they concern, in part, omissions of Kurt Wischow that occurred after the end of the Class Period.[2] Specifically, Duncavage argues that Kurt Wischow failed to inform her of changes in estate law exemptions that occurred between 2002 and 2012.

Here, Duncavage alleges that "[d]espite an increase in the estate tax exemption over the years (from $1 million in 2002 to $5 million in 2012) and a reduction in the rate of return of the life policy from 7.1% to 4%, Kurt Wischow never provided [her] with any updated in-force policy illustrations or any other type of analysis

---

[2] The Statement of Claims in the FINRA action largely relates to actions or omissions of Herbert and Kurt Wischow during the Class Period. See Sheeley Aff. Ex. 2, at 4-9. As already explained, the court finds that Ameriprise did not agree to arbitration of the FINRA claims and it is not estopped from arguing that the Policy was covered by the Benacquisto Settlement. Thus, such claims are barred by the Benacquisto Settlement. See id. Ex. 1, at ¶¶ 13(A)(1), 13(B)(2). Indeed, it appears that Duncavage concedes that such claims arising during the Class Period are barred. See Mem. Opp'n 9 (noting that "*some of* the Duncavage are outside the scope of the [Benacquisto] Settlement" (emphasis added)). As a result, the court considers only alleged conduct arising after the Class Period.

showing the advantages or disadvantages of continuing to maintain the policy." Sheeley Aff. Ex. 2, at 7. Indeed, despite the breadth of the released conduct, the Benacquisto Settlement explicitly reserved a class member's right to assert various claims, including those that "independently arise[] from acts, facts or circumstances that occur for the first time after the last day of the Class Period." Sheeley Aff. Ex. 1, at ¶ 13(A)(3). Such changes in the estate tax exemption from 2002 to 2012 constitute circumstances "that occur[red] for the first time after the last day of the Class Period," February 29, 2000, such that Duncavage retained her right to assert such independently-arising claims. As a result, Duncavage may persist only in her FINRA claims concerning omissions related to changes in the estate tax exemption from 2002 to 2012.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion to enforce settlement [ECF No. 500] is granted in part, consistent with this order.

Dated:  July 14, 2014

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court